Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
       hunt.peggy@dorsey.com
       thomson.michael@dorsey.com
       armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re:                          | Case No. _____ |
|---------------------------------|---------------------------|
| NAARTJIE CUSTOM KIDS, INC.,     | Chapter 11                |
| Debtor.                         | Judge _____    |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO (A) MAINTAIN EXISTING INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF; (II) DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS; AND (III) SCHEDULING A FINAL HEARING TO CONSIDER ENTRY OF A FINAL ORDER**

Naartjie Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above captioned bankruptcy case, by and through its proposed counsel, submits this motion (the "Motion") for entry of an emergency order substantially in the form submitted herewith (the "Order") pursuant to sections 105(a), 363(b), and 503(b) of title 11 of the United States Code, 11

U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Rules") (i) authorizing, but not directing the Debtor to (a) maintain the Debtor's existing insurance programs on an uninterrupted basis in accordance with its historical practices, and (b) pay all premiums, deductibles, fees, and other obligations in respect thereof, whether relating to the prepetition or post-petition period; (ii) directing financial institutions to honor and process all checks and electronic payment requests related to the foregoing; and (iii) scheduling a final hearing to consider entry of a final order. This Motion is supported by the *Notice of Hearing on First Day Motions* (the "Omnibus Notice"), and the *Declaration of Jeff Nerland in Support of Chapter 11 Petition and First Day Motions* (the "Omnibus Declaration"), filed concurrently herewith and incorporated by reference. In further support of the Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), and 503(b) of the Bankruptcy Code and Rules 6003 and 6004.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").

4.  No trustee, examiner, or official committee of unsecured creditors has been appointed in this case. The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  Founded in Cape Town, South Africa in 1989, Naartjie is a children's clothing brand that embraces bright, colorful, kid-friendly clothes. Naartjie designs, manufactures and sells children's clothing, accessories and footwear for ages newborn through 10 years old.

6.  Naartjie opened its first store in the United States in March 2001, currently owns and operates eighty-two retail stores in the United States and South Africa, and has a rapidly expanding e-commerce business serving customers in over thirty countries worldwide. Today, Naartjie's corporate headquarters are located in Salt Lake City, Utah, with merchandising headquartered in Burlingame, California and the Naartjie Design Studios and South African retail operations in Cape Town, South Africa. Naartjie's net sales for the fiscal year ended on February 1, 2014 were $54.4 Million.

7.  The events leading up to the Petition Date and additional facts and circumstances supporting the relief requested herein are set forth in the Omnibus Declaration.

## INSURANCE PROGRAMS AND RELATED OBLIGATIONS

8.  In connection with the operation of its business, the Debtor maintains comprehensive insurance programs (the "Insurance Programs") that include a variety of policies through several different insurance carriers (the "Insurance Carriers"). A detailed list of the Insurance Programs is annexed hereto as Exhibit A.

**A.  Insurance Programs**

9.      Debtor maintains the Insurance Programs to protect its stores, inventory, and company against risks that may arise in the course of its business. The Insurance Programs include the following types of coverage:

   a. General Liability – This policy provides $10,000,000 of general liability coverage and has a premium amount of $32,150 per year, payable in 10 monthly installments.

   b. Property - This policy provides $26,971,593 of various types of property coverage. The premium amount for this policy is $40,969 per year, payable in 10 monthly installments.

   c. Auto – This policy provides $2,000,000 of coverage which includes liability protection, personal injury protection, uninsured/underinsured motorist protection, comprehensive, and collision coverage. The premium amount for this policy is $4,422 per year, payable in 10 monthly installments.

   d. Umbrella – This policy provides $5,000,000 of coverage. The premium amount for this policy is $13,274 per year, payable as a 25% down payment upon renewal, and then 9 monthly installments.

   e. D&O – This policy provides $11,100,000 of coverage in the form of D&O insurance, employment practices insurance, crime protection, and Side A Only excess insurance. This policy has been temporarily extended for two months, through October 15, 2014, to avoid a lapse in coverage, with an annual policy renewal pending. The annual premium for August 15, 2013 – August 15, 2014

       was $33,963.  The premium amount for the extension from August 15, 2014 – October 15, 2014 is $5,672.  This premium is due annually.

   f. <u>International</u> - This policy provides a total of $12,725,555 of coverage in the form of general liability coverage, auto insurance, property insurance as well as other various types of insurance for Naartjie's international business operations.  The premium for this policy is $17,215 per year.  This premium is due annually.

**B.**    **Insurance Obligations**

    10.    Debtor has incurred and continues to incur certain obligations relating to the Insurance Programs (such obligations, including those which accrued prior to the Petition Date, are referred to herein as the "<u>Insurance Obligations</u>").  The different categories of Insurance Obligations include the following:  (i) fixed-rate premiums based on a rate established by each Insurance Carrier, which are generally payable in fixed monthly installments; (ii) deductibles and other fees related to the Insurance Programs; and (iii) payments to insurance agents and brokers, who assist Debtor with the procurement and negotiation of the Insurance Programs.

    11.    During the 12 months preceding the Petition Date, the Insurance Obligations paid by Debtor include approximately $141,993 in premiums.  As of the Petition Date, the Debtor is current on all premium payments for current and previous policy periods.

    12.    The Debtor expects to make further payments that are the direct obligations of the Debtor during the anticipated timeframe of the Chapter 11 Case.  Most of the insurance policies have premium payments remaining for the current policy period, which are payable on an installment basis. The Debtor expects such premiums to come due prior to the conclusion of this Chapter 11 Case.

## RELIEF REQUESTED

13. The Debtor respectfully requests entry of an Order (i) authorizing, but not directing, the Debtor to (a) maintain the Insurance Programs on an uninterrupted basis in accordance with its historical practices (including renewing or entering into new policies related to such programs), and (b) pay all Insurance Obligations, whether relating to the period prior to or after the Petition Date; (ii) directing financial institutions to honor and process all checks and electronic payment requests related to the Insurance Obligations; and (iii) scheduling a final hearing to consider entry of a final order.

## BASIS FOR RELIEF REQUESTED

**A.    Payment of Insurance Obligations Consistent with Cash Management Procedures**

14. The Debtor believes that Naartjie is current on all of its Insurance Obligations as of the Petition Date. Nevertheless, out of an abundance of caution, the Debtor requests authorization to pay, in accordance with historical cash management practices, any and all Insurance Obligations of the Debtor.

**B.    Ample Authority Exists to Continue to Maintain Insurance Coverage**

15. The Debtor submits that the continuation of the Insurance Programs and the payment of any Insurance Obligations is necessary and appropriate and may be authorized under sections 105(a), 363(b), and 503(b) of the Bankruptcy Code and pursuant to the "doctrine of necessity."

16. The Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the

Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[1]

17. Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the Court, after notice and a hearing, shall allow, as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."[2] In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business.[3] The use of estate funds for payment of undisputed post-petition Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

18. Here, continuation of the Insurance Programs is imperative to Naartjie's continued operation and ability to restructure, and payment of the Insurance Obligations is essential to ensure that the value of the Debtor's estate is maintained. The Debtor needs to minimize the risks associated with operating its business. Even a brief delay or suspension in the Debtor's ability to pay the Insurance Obligations could create significant risk that the Debtor would void or otherwise lose the benefits of the Insurance Programs.

---

[1] 11 U.S.C. § 105(a); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 824 (acknowledging that "[c]ertain pre-petition claims…may need to be paid to facilitate a successful reorganization" and that "[s]ection 105(a) of the [Bankruptcy] Code provides a statutory basis for the payment of pre-petition claims"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

[2] 11 U.S.C. § 503(b)(1)(A).

[3] *See* 11 U.S.C. § 363(b)(1)

7

19. Risks to the Debtor posed by any disruption of its insurance coverage include, among other things: (i) possible incurrence of direct liability for payment of claims that would otherwise have been payable by the Insurance Carriers under the Insurance Programs; (ii) possible incurrence of material costs or losses that would otherwise have been reimbursed by the Insurance Carriers under the Insurance Programs; (iii) consequences to the Debtor's ability to conduct business in jurisdictions that require the Debtor to maintain certain insurance coverage; (iv) the possible inability to obtain equivalent coverage from alternative sources; and (v) possible incurrence of higher costs in order to re-establish lapsed insurance policies or obtain new insurance coverage.

20. Finally, although the Debtor is current on all premium payments for the current and previous policy periods, the Debtor pays the majority of its Insurance Obligations in monthly installments. Therefore, the Debtor seeks authority to pay any such obligations to the extent they arise. In light of the foregoing, the Court should invoke its equitable power to authorize the Debtor to satisfy the prepetition claims as contemplated herein.

21. Accordingly, the Court should grant the relief requested herein because maintenance of the Insurance Programs and payment of all Insurance Obligations is warranted and is in the best interests of the Debtor's estate, creditors, and all parties in interest.

**C.   Cause Exists to Authorize Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers Related to Insurance Obligations.**

22. To facilitate implementation of the above-requested relief, the Debtor further requests that the Court authorize and direct all applicable banks and financial institutions to receive, process, honor, and pay any and all checks drawn or electronic fund transfers from their accounts, whether such checks were presented prior to or after the Petition Date with respect to

the Insurance Obligations, to the extent such checks or electronic fund transfers relate to the authorized payments of Insurance Obligations, regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition date, provided however, that (i) funds are available in the Debtor's accounts to cover the checks and fund transfers, and (ii) all the banks and other financial institutions are authorized to rely on the Debtor's designation of any particular check as approved by the Order, as applicable. Furthermore, the Court should authorize the Debtor to issue new post-petition checks, or effect new electronic fund transfers, on account of such claims and to replace any prepetition checks or electronic fund transfer requests on account of the Insurance Obligations that may be dishonored or rejected as a result of the commencement of the Chapter 11 Case.

## **RESERVATION OF RIGHTS**

23. To the extent that any contract or agreement in connection with any of the Insurance Programs is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtor does not at this time intend to assume such contract or agreement. As such, the Court's authorization of payment shall not be deemed to constitute an assumption of such contract or agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is currently in the process of reviewing all of its contracts and agreements and reserves all of its rights with respect thereto.

24. Additionally, nothing contained herein is intended or should be construed as (i) an agreement or admission by the Debtor as to the validity of any claim against its estate, (ii) a waiver or impairment of the Debtor's rights to dispute any claim on any grounds, (iii) a promise

by the Debtor to pay any claim, or (iv) an implication or admission by the Debtor that such claim is payable pursuant to an order granting the relief requested in this Motion.

### DEBTOR SATISFIES BANKRUPTCY RULE 6003

25.     Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting…a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate…."[4]  The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy 6003 has been satisfied.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

26.     To implement the foregoing successfully, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

---

[4]    Fed. R. Bankr. P. 6003(b).

10

## CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b), the Debtor respectfully requests the entry of an Order (i) authorizing, but not directing, the Debtor to (a) maintain the Insurance Programs on an uninterrupted basis in accordance with its historical practices (including renewing or entering into new policies related to such programs), and (b) pay all Insurance Obligations, whether relating to the period prior to or after the Petition Date; (ii) directing financial institutions to honor and process all checks and electronic payment requests related to the Insurance Obligations; and (iii) scheduling a final hearing to consider entry of a final order. The Debtor also requests such other relief as is just and proper.

DATED this 12th day of September, 2014.

**DORSEY & WHITNEY LLP**

*/s/ Annette W. Jarvis*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

# **EXHIBIT A**

# Naartjie Custom Kids, Inc.

| Travelers | | | | | |
|---|---|---|---|---|---|
| 8/15/2014 - 8/15/2015 | | | | | |
| **Coverage** | **Limit** | **Deductible** | **Exposure** | **Rate** | **Premium** |
| GENERAL LIABILITY | | | | | |
| General Aggregate | $10,000,000 | | $39,500,000 | 0.79 | $30,040 |
| Products/ Completed Operations Aggregate | $2,000,000 | | 5000 Sq. Ft | 42.34 | $212 |
| Personal and Advertising Injury | $1,000,000 | | 28,000 Sq. Ft | 55.841 | $1,564 |
| Each Occurrence Limit | $1,000,000 | | | | |
| Rented To You Limit | $100,000 | | | | |
| Medical Expense | $5,000 | | | | |
| Employee Benefits - Aggregate | $2,000,000 | | | | $300 |
| Employee Benefits - Each | $1,000,000 | | | | |
| Taxes & Surcharges | | | | | $34 |
| **Total Estimated GL & Employee Benefits Premium** | | | | | **$32,150** |
| PROPERTY | | | | | |
| Business Personal Property Blanket | $14,721,976 | $5,000 | | | |
| Business Income & Extra Expense Blanket | $3,927,870 | 72Hours | | | |
| Scheduled BPP | $7,629,530 | $5,000 | | | |
| Scheduled BI | $692,217 | 72Hours | | | |
| | | | | | |
| **Total Estimated Property Premium** | | | $ 26,971,593 | 0.152 | **$40,969** |
| AUTO | | | | | |
| All Autos - Liability | $1,000,000 | | 2 Autos | | |
| Personal Injury Protection | Statutory Minimum | | | | |
| Uninsured/ Underinsured Moterist | $1,000,000 | | | | |
| Comprehensive - Owned, Hired | ACV | $1,000 | | | |
| Collision - Owned, Hired | ACV | $1,000 | | | |
| | | | | | |
| **Total Estimated Auto Premium** | | | | | **$4,422** |
| UMBRELLA | | | | | |
| Limit of Liability | $5,000,000 | $10,000 | | | |
| | | | | | |
| **Total Estimated Umbrella Premium** | | | | | **$13,274** |

| ACE - Extension | | | | | |
|---|---|---|---|---|---|
| **8/15/2013 - 10/15/2014** | **Limit** | **Deductible** | **Exposure** | **Rate** | **Premium** |
| D&O, EPL, CRIME | | | | | |
| Directors & Officers | $5,000,000 | $50,000 | | | |
| Employment Practices | $5,000,000 | $75,000 | | | |
| Crime -A,B,D,E,F,G,H - Per Occurrence | $100,000 | $10,000 | | | |
| Side A Only Excess | $1,000,000 | | | | |
| | | | | | |
| **Total Estimated D&O, EPL, Crime Premium** | | | | | **$39,635** |

| ACE | | | | | |
|---|---|---|---|---|---|
| 8/15/2014 - 8/15/2015 | **Limit** | **Deductible** | **Exposure** | **Rate** | **Premium** |
| INTERNATIONAL | | | | | |
| GL - General Aggregate | $2,000,000 | | $15,000,000 | | $5,400 |
| GL - Employee Benefits | $1,000,000 | $1,000 | | | |
| Auto- Liability Coverage | $1,000,000 | | | | $100 |
| Contingent Empl. Liability | $1,000,000 | | | | $750 |
| Accidental Death & Dismemberment - Agg. | $1,500,000 | | | | Included |
| Commercial Property - Property | $5,225,555 | $5,000 | | | $8,465 |
| Commercial Property - Business Income | | | | | |
| South Africa- GL Admitted | $1,000,000 | | | | $2,500 |
| | | | | | |
| **Total Estimated International Premium** | | | | | **$17,215** |
| | | | | | |
| **Total Estimated Premium w/o D&O** | | | | | **$108,030** |

Christian Deputy
cdeputy@buckner.com

The Buckner Company

9/12/2014