Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
       hunt.peggy@dorsey.com
       thomson.michael@dorsey.com
       armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>NAARTJIE CUSTOM KIDS, INC.,<br><br>Debtor. | Case No. _____<br><br>Chapter 11<br><br>Judge _____ |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO HONOR CERTAIN PREPETITION CUSTOMER OBLIGATIONS AND TO CONTINUE PREPETITION CUSTOMER PROGRAMS AND PRACTICES IN THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING PAYMENT OF CREDIT CARD PROCESSING FEES; AND (III) SCHEDULING A FINAL HEARING TO CONSIDER ENTRY OF A FINAL ORDER**

Naartjie Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above captioned bankruptcy case, by and through its proposed counsel, submits this motion (the "Motion") for entry of an emergency order substantially in the form submitted herewith (the "Order") pursuant to sections 105(a), 363(b), 363(c), 1107(a) and 1108 of title 11 of the United

States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Rules") (i) authorizing, but not directing, the Debtor to honor certain prepetition customer obligations and to continue prepetition customer programs and practices in the ordinary course of business; (ii) authorizing payment of certain credit card processing fees; and (iii) scheduling a final hearing to consider entry of a final order. This Motion is supported by the *Notice of Hearing on First Day Motions* (the "Omnibus Notice"), and the *Declaration of Jeff Nerland in Support of Chapter 11 Petition and First Day Motions* (the "Omnibus Declaration"), filed concurrently herewith and incorporated by reference. In further support of the Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), 363(c), 1107(a) and 1108 of the Bankruptcy Code and Rule 6003.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").

4. No trustee, examiner, or official committee of unsecured creditors has been appointed in this case. The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      Founded in Cape Town, South Africa in 1989, Naartjie is a children's clothing brand that embraces bright, colorful, kid-friendly clothes. Naartjie designs, manufactures and sells children's clothing, accessories and footwear for ages newborn through 10 years old.

6.      Naartjie opened its first store in the United States in March 2001, currently owns and operates eighty-two retail stores in the United States and South Africa, and has a rapidly expanding e-commerce business serving customers in over thirty countries worldwide. Today, Naartjie's corporate headquarters are located in Salt Lake City, Utah, with merchandising headquartered in Burlingame, California and the Naartjie Design Studios and South African retail operations in Cape Town, South Africa. Naartjie's net sales for the fiscal year ended on February 1, 2014 were $54.4 Million.

7.      The events leading up to the Petition Date and additional facts and circumstances supporting the relief requested herein are set forth in the Omnibus Declaration.

## RELIEF REQUESTED

8.      The Debtor respectfully requests the entry of an Order (i) authorizing, but not directing, the Debtor to honor certain prepetition customer obligations and to continue prepetition customer programs and practices in the ordinary course of business; (ii) authorizing payment of certain credit card processing fees; and (iii) scheduling a final hearing to consider entry of a final order.[1]

---

[1] Notwithstanding anything to the contrary in this Motion or order, nothing herein constitutes, or shall be deemed to constitute, a request to assume or adopt any executory contract under any customer program. The Debtor expressly reserves all rights with respect to the continuation or termination of any contract with any customer, and expressly reserve the right to contest, in the ordinary course of business, any amounts claimed to be due, if any, by any customer.

## THE DEBTOR'S CUSTOMER PROGRAMS

9. In the ordinary course of its business, the Debtor engages in certain practices (the "Customer Programs") to develop and sustain a positive reputation with its customers. The Debtor's Customer Programs are typical in its industry, and has been a part of the Debtor's normal business operations for many years. In general, the Customer Programs are designed to address competitive pressures, encourage sales, ensure customer satisfaction, and generate goodwill for the Debtor. As such, the Debtor believes that the Customer Programs play an important role in enabling the Debtor to retain existing customers, to attract new customers, and ultimately, to enhance the Debtor's overall profitability. An overview of the Customer Programs is provided below.

**A.     Gift Card Program**

10. In the ordinary course of its business, the Debtor offers various gift certificates and gift cards which may be redeemed and applied towards a future purchase of the Debtor's goods (the "Gift Card Program"). These certificates and cards are offered for sale to customers; they may also be used as an alternative to a cash refund to customers who are returning purchases. As of the Petition Date, the Debtor believes that approximately $233,600 in gift cards and certificates had been purchased by or provided to customers but not yet redeemed. By this Motion, the Debtor requests the authority, but not the direction, to honor all outstanding gift certificates and gift cards, whether the Debtor's obligations arose before or after the Petition Date, and to continue to offer and honor such gift certificates and gift cards during the Chapter 11 Case in the ordinary course of business.

### B.      Credit Card Processing Fees

11. In the ordinary course of business, the Debtor is a party to certain agreements with merchant banks that act as third party credit card processors (the "Credit Card Processors") under which the Credit Card Processors accept and process credit card payments made by customers for purchases at Naartjie. The Credit Card Processors disburse to the Debtor the amounts received from the Debtor's customers, subject to certain adjustments, returns, and refunds, and are compensated by the Debtor through a "net fee" transaction in an ongoing manner (the "Credit Card Processing Fees"). The Credit Card Processing Fees total, on average, about 2% of the sales transaction. In addition to the "net fee" transactions which are closed out daily, the Credit Card Processing Fees include a monthly fee to provide credit card processing services. As of the Petition Date, the Debtor believes that approximately $55,000 in Credit Card Processing Fees is outstanding.

12. By this Motion, the Debtor requests the authority to pay prepetition Credit Card Processing Fees to the Credit Card Processors in the ordinary course of business to avoid interruption of its credit card processing services and maintain and maximize the value of its estate, and to continue utilizing its credit card processing services during the Chapter 11 Case in the ordinary course of business.

### C.      Customer Returns and Store Credit

13. In the ordinary course of business, the Debtor allows its customers to return or exchange merchandise purchased from the Debtor in accordance with its return policies ("Customer Returns"). Customers are reimbursed for these Customer Returns either by a refund of monies paid to the Debtor (the "Cash Refund"), or by giving the customer an in-store credit

5

for the amount of the purchase price (the "Store Credit") that they can redeem from the Debtor at a later time. As of the Petition Date, the Debtor estimates the amount of potential outstanding Customer Returns to be approximately $118,000.

14. Cash Refunds. When completing a Customer Return, customers can elect to receive a Cash Refund of monies previously paid. Cash Refunds are completed either by refunding the purchase price to the customer in cash, or by crediting the customer's credit card for the amount of the purchase.

15. Store Credit. In lieu of receiving a Cash Refund as reimbursement for the Customer Return, customers may elect instead to receive a Store Credit. These Store Credits may be redeemed and applied towards a future purchase of the Debtor's goods. As of the Petition Date, the Debtor estimates the amount of outstanding Store Credits to be approximately $3,000.

16. By this Motion, the Debtor requests the authority, but not the direction, to honor the existing outstanding Store Credits, whether the Debtor's obligations arose before or after the Petition Date, and to continue to offer Customer Returns and provide customers with either Cash Refunds or Store Credits during the Chapter 11 Case in the ordinary course of business.

**BASIS FOR RELIEF REQUESTED**

17. It is appropriate and necessary for the Court to allow the Debtor to continue to honor the Customer Programs as set forth above to continue the Debtor's business operations and to avoid jeopardizing the Debtor's customer relationships and goodwill. Payment of those obligations is warranted pursuant to 11 U.S.C. §§ 105(a), 363(b), 363(c), 1107(a), and 1108.

18. First, 11 U.S.C. 363(c) of the Bankruptcy Code authorizes a debtor-in-possession to operate its business and to use property of the estate in the ordinary course of business without having to provide notice or obtain a court hearing.[2]

19. The Bankruptcy Code does not provide guidance as to whether a particular transaction was conducted "in the ordinary course of business," but courts have applied a two-step "horizontal and vertical test" that considers the reasonableness of a particular transaction from both an industry-wide perspective and from the viewpoint of a creditor.[3] "The inquiry deemed horizontal is whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry….The inquiry deemed vertical, analyzes the transactions from the vantage point of a hypothetical creditor and the inquiry is whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit."[4]

20. The Debtor's Customer Programs are typical in its industry, has been a part of the Debtor's business operations for many years and is a program offered in the ordinary course of the Debtor's business. Accordingly, continuing, renewing, replacing, initiating, and/or terminating such Customer Programs falls well within the scope of permitted activities under Section 363(c) of the Bankruptcy Code.

---

[2] *See In re Roth American*, 975 F.2d 949, 952 (3rd Cir. 1992) (stating that "the framework of section 363 is designed to allow a [debtor in possession] the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary; *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (explaining that "the discretion for a debtor in possession to act with regard to ordinary business matters without prior court approval has been said to be at the heart of the powers of a debtor in possession, and courts have shown a reluctance to interfere, in the making of routine, day-to-day business decisions") (citations omitted).

[3] *In re Blitz U.S.A., Inc.*, 475 B.R. 209, 214 (Bankr. D. Del. 2012).

[4] *In re Roth American, Inc.*, 975 F.2d at 953 (citations omitted).

7

21. To the extent that payment of prepetition obligations owed pursuant to the Customer Programs would be deemed to constitute a use of property outside of the ordinary course of business, the Court may also authorize continuation of the Customer Programs under section 363(b) of the Bankruptcy Code. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[5] Courts have held that use of property outside the ordinary course of business is proper when the debtor articulates "some business justification, other than the mere appeasement of major creditors."[6]

22. As noted above, the Customer Programs are an important part of the Debtor's business and strategy. The Debtor operates in a competitive market and its business depends on the quality and strength of its customer relationships, as well as its ability to attract new customers. The continuation of the Customer Programs is critical to maintain such customer support and loyalty, and is therefore necessary for the maximization of value in the Chapter 11 case. The Debtor believes that any failure to honor its existing obligations under the Customer Programs will undermine the Debtor's relationships with its customers and impair the Debtor's ongoing ability to effectively participate in a competitive marketplace.

23. Second, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary "holding the bankruptcy estate and operating the business for the

---

[5] 11 U.S.C. § 363(b)(1).

[6] *In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that section 363(b) gives the court "broad flexibility" in authorizing the use of funds outside the ordinary course of business but noting that the debtor must articulate some business justification, other than mere appeasement of major creditors for doing so.)

8

benefit of its creditors and (if the value justifies) equity owners."[7] Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."[8] There are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."[9] The pre-plan satisfaction of prepetition claims is one such instance if the payment "is the only means to effect a substantial enhancement of the estate."[10]

24. Here, for the Debtor to fulfill its fiduciary duty to "protect and preserve the estate," it must develop and maintain customer relationships. The continuation of the Customer Programs is critical to maintain such customer support and loyalty and is therefore necessary for the maximization of value in the Chapter 11 Case. The Debtor believes that any failure to honor their existing obligations under the Customer Programs will undermine the Debtor's relationships with its customers and impair the Debtor's ongoing ability to effectively participate in a competitive marketplace. Any failure to honor the existing obligations under the Customer Program could have significant negative effects on the Debtor's reorganization to the detriment of all parties. Further, if the Debtor fails to pay the Credit Card Processing Fees, the credit card processing services may be interrupted to the detriment of the Debtor's customers and its estate.

---

[7] *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

[8] *Id.*

[9] *Id.*

[10] *Id.*

25. Third, 11 U.S.C. § 105(a) permits courts to approve immediate payment of pre-petition claims where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.[11]

26. Finally, courts have allowed immediate payment of certain pre-petition obligations pursuant to 11 U.S.C. § 363(b) of the Bankruptcy Code under the "doctrine of necessity."[12] The rationale for the necessity of payment rule – the rehabilitation of a debtor in reorganization cases – is "the paramount policy and goal of Chapter 11."[13]

27. Debtors frequently invoke the necessity of payment doctrine early in a chapter 11 case when preservation of the estate proves most critical. Bankruptcy courts, in turn, routinely invoke their equitable powers to authorize a debtor to pay certain critical prepetition claims under section 105(a) of the Bankruptcy Code if "authorizing the payment of the prepetition debt creates 'the greatest likelihood of… payment of creditors in full or at least proportionately.'"[14]

---

[11] 11 U.S.C. § 105(a); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 824 (acknowledging that "[c]ertain pre-petition claims…may need to be paid to facilitate a successful reorganization" and that "[s]ection 105(a) of the [Bankruptcy] Code provides a statutory basis for the payment of pre-petition claims"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

[12] *See Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) ("unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that bankruptcy court can authorize payment of pre-petition claims if necessary to continued operation of the debtor); *Ionosphere*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (relying on 11 U.S.C. § 363 to allow contractor to pay prepetition claims of suppliers because the payments were necessary).

[13] *Ionosphere*, 98 B.R. at 176; *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.")

[14] *In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988); *See also Ionosphere*, 98 B.R. at 176.

10

28. Prepetition claims arising from or related to the Customer Programs meet the requirements for post-petition payment because, if they are not satisfied, the Debtor's goodwill will be adversely impacted. The success and viability of the Debtor's business depends upon the development and maintenance of customer loyalty. The commencement of a Chapter 11 Case may create some apprehension on the part of certain customers or potential customers regarding their willingness to continue or commence doing business with the Debtor. The Debtor believes that the requested relief will ease these concerns, thus helping the Debtor stabilize its business and preserve the loyalty of its customers. Similarly, authorizing the payment of the Credit Card Processing Fees will prevent any interruption in the Debtor's ability to process credit card transactions, which if interrupted, could adversely impact the Debtor's ability to complete transactions and generate sales revenue.

## DEBTOR SATISFIES BANKRUPTCY RULE 6003

29. Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting…a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate…."[15] The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy 6003 has been satisfied.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

30. To implement the foregoing successfully, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an

---

[15] Fed. R. Bankr. P. 6003(b).

order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 105(a), 363(b). 363(c), 1107(a), and 1108, the Debtor respectfully requests the entry of an Order (i) authorizing, but not directing, the Debtor to honor certain prepetition customer obligations and to continue prepetition customer programs and practices in the ordinary course of business; (ii) authorizing payment of certain credit card processing fees; and (iii) scheduling a final hearing to consider entry of a final order. The Debtor also requests such other relief as is just and proper.

DATED this 12th day of September, 2014.

**DORSEY & WHITNEY LLP**

*/s/ Annette W. Jarvis*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*