Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
          hunt.peggy@dorsey.com
          thomson.michael@dorsey.com
          armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re: | Case No. _____ |
|---|---|
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | Judge _____ |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO PAY CERTAIN PRE-PETITION SALES, USE, CUSTOMS, INCOME, PROPERTY, AND OTHER MISCELLANEOUS TAXES AND FEES, (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING A FINAL HEARING TO CONSIDER ENTRY OF A FINAL ORDER**

Naartjie Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above captioned bankruptcy case, by and through its proposed counsel, submits this motion (the "Motion") for entry of an emergency order substantially in the form submitted herewith (the "Order") pursuant to sections 105(a), 363(b), and 507(a)(8), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Rules") authorizing but not directing the Debtor to (a) pay certain pre-petition sales, use, customs, income, property, and other miscellaneous taxes and fees, (b) granting related relief, and (c) scheduling a hearing to consider entry of a final order.  This Motion is supported by the *Notice of Hearing on First Day Motions* (the "Omnibus Notice"), and the *Declaration of Jeff Nerland in Support of Chapter 11 Petition and First Day Motions* (the "Omnibus Declaration"), filed concurrently herewith and incorporated by reference. In further support of the Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8) and 541 of the Bankruptcy Code and Rules 6003 and 6004.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").

4. No trustee, examiner, or official committee of unsecured creditors has been appointed in this case.  The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  Founded in Cape Town, South Africa in 1989, Naartjie is a children's clothing brand that embraces bright, colorful, kid-friendly clothes.  Naartjie designs, manufactures and sells children's clothing, accessories and footwear for ages newborn through 10 years old.

6.  Naartjie opened its first store in the United States in March 2001, currently owns and operates eighty-two retail stores in the United States and South Africa, and has a rapidly expanding e-commerce business serving customers in over thirty countries worldwide.  Today, Naartjie's corporate headquarters are located in Salt Lake City, Utah, with merchandising headquartered in Burlingame, California and the Naartjie Design Studios and South African retail operations in Cape Town, South Africa.  Naartjie's net sales for the fiscal year ended on February 1, 2014 were $54.4 Million.

7.  The events leading up to the Petition Date and additional facts and circumstances supporting the relief requested herein are set forth in the Omnibus Declaration.

## THE DEBTOR'S TAXES AND FEES

8.  In connection with the operation of its business, the Debtor (i) incurs and/or collects taxes, including sales, use, income, property and other miscellaneous taxes (collectively, the "Taxes"); (ii) incurs business license and permit fees in connection with obtaining licenses and permits necessary to operate its business, miscellaneous fees, and other similar assessments (collectively, the "Fees"); and (iii) remits such Taxes and Fees to various taxing, licensing, and other regulatory authorities (collectively, the "Taxing Authorities"; each a "Taxing Authority") as they become due.

9.  The Debtor is current on substantially all of the Taxes and Fees that have become due as of the Petition Date.  However, because certain of the Taxes and Fees are paid on a

periodic basis (and in arrears), there is, in many instances, a delay between the time when the Debtor incurs an obligation to pay the Taxes and Fees and the date such Taxes and Fees become due. Various Taxing Authorities may, therefore, have claims against the Debtor for Taxes and Fees that have accrued but remain unpaid as of the Petition Date or that will come due during the pendency of the Chapter 11 Case. The Debtor's obligations on account of these Taxes and Fees are discussed in greater detail below.

**A.** **Sales and Use Taxes**

10. The Debtor, at the time of in-store and online sales of its merchandise, is required to collect a variety of sales and other similar taxes (collectively, the "Sales Taxes") from its customers on behalf of the applicable Taxing Authorities, and periodically remit the Sales Taxes to the applicable Taxing Authorities.

11. Typically, Sales Taxes accrue as products are sold, and are collected as a statutory percentage of the sale price. The process by which the Debtor remits Sales Taxes varies depending on the particular Taxing Authority to be paid. Sales Taxes are remitted to the relevant Taxing Authorities either on the basis of estimated sales tax collections for the coming period, or on the basis of Sales Taxes actually collected from customers, in each case depending on the method required by the relevant Taxing Authority. Generally, the Debtor pays significant Sales Taxes on a monthly or quarterly basis, depending on the jurisdiction. Certain jurisdictions require the Debtor to prepay estimated Sales Taxes, generally on a monthly basis. In an average month, the Debtor remits approximately $191,000 to numerous Taxing Authorities, although the amount remitted in any given month varies.

12. Use Taxes ("Use Taxes") arise when items or services are purchased from vendors who are not registered to collect Sales Taxes for states where such vendors deliver property to or perform services for the Debtor. In this circumstance, such vendors are not obligated to charge or remit Sales Taxes. Upon information and belief, the Debtor does not believe that it incurs or remits any Use Taxes in the course of its business, as the Debtor does not routinely purchase tangible personal property or services from vendors that have no nexus to states in which the Debtor operates and does business. Various state laws governing Use Taxes obligate the Debtor to self-asses and pay Use Taxes. Accordingly, the Debtor seeks authority to pay such Use Tax as required by the applicable Taxing Authorities.

13. During the calendar year 2013, the Debtor collected and remitted approximately $2.3 Million of Sales Tax. The Debtor estimates that, as of the Petition Date, approximately $224,000 of Sales Taxes have accrued and are owing to various Taxing Authorities.

**B.     U.S. Customs Tax**

14. The Debtor pays certain base taxes to the U.S. Customs Office ("Customs Taxes"). By agreement with U.S. Customs these taxes total on average approximately $2,000 per month, and are subject to a year-end true up for actual activity. These U.S. Customs Taxes are generally paid in arrears annually in the ordinary course of the Debtor's business. In addition, the Debtor pays taxes which are assessed as a percentage of the value of goods imported from the Debtor's international vendors. The Debtor accrues these Customs Taxes on a monthly basis. The Debtor estimates that, as of the Petition Date, approximately $148,000 of Customs Taxes have accrued and remain owing to the U.S. Customs Office.

**C.     Personal Property Taxes**

15. Under applicable law, state and local governments in certain jurisdictions where the Debtor operates are granted the authority to levy taxes against the Debtor's personal property (the "Personal Property Taxes"). The Personal Property Taxes are generally paid in arrears annually or semi-annually in the ordinary course of the Debtor's business. The Debtor estimates that approximately $108,000 of Personal Property Taxes have accrued and remain unpaid as of the Petition Date, based upon personal property owed during calendar years 2013 and 2014.

**D.   Business License/Permit Fees, Annual Report Fees, and Other Miscellaneous Taxes and Fees**

16. The Debtor must obtain various business licenses, permits, and certificates, and pay corresponding fees in many jurisdictions in which it operates. In addition, in various jurisdictions the Debtor pays annual reporting fees to state governments to remain in good standing for purposes of conducting business within the state. The Debtor must also pay miscellaneous business taxes in certain states, including commercial rent taxes, gross receipts taxes, occupancy taxes and business privilege taxes. Certain jurisdictions also impose "false alarm" fees and other similar charges for responding to fire and/or burglar alarms inadvertently triggered in the Debtor's retail stores. The Debtor estimates that, as of the Petition Date, there is a de-minimum amount of miscellaneous taxes and fees have accrued and remain owing to various Taxing Authorities.

## **RELIEF REQUESTED**

17. The Debtor respectfully requests entry of an order (i) authorizing, but not directing, the Debtor to pay the relevant Taxing Authorities any Taxes and Fees that have accrued, but were not yet due and owing or were not paid in full as of the Petition Date, in the ordinary course of its business in an aggregate amount not to exceed $500,000; (ii) directing all

banks to honor and pay (to the extent that sufficient funds are available in the Debtor's accounts) all checks and transfers for payment of such pre-petition Taxes and Fees; and (iii) scheduling a final hearing to consider entry of a final order.

### BASIS FOR RELIEF REQUESTED

18. There are several bases for allowing the Debtor to pay the Taxes and Fees in the ordinary course of business. First, certain of the Taxes and Fees are not property of the Debtor's estate pursuant to section 541(d) of the Bankruptcy Code. Second, portions of the Taxes and Fees may be entitled to secured or priority status pursuant to section 507(a)(8) of the Bankruptcy Code. Third, governmental entities may sue the Debtor's directors and officers for unpaid Taxes and Fees, distracting them unnecessarily from the Debtor's restructuring efforts. Finally, sections 363 and 105 of the Bankruptcy Code and the Court's general equitable powers permit the Court to grant the relief sought herein.

**A.**     **Certain of the Taxes and Fees are Not Property of the Debtor's Estate**

19. Section 541 of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."[1]

20. Many of the Taxes and Fees constitute trust fund taxes that the Debtor is required to collect from its customers and hold in trust for payment to the Taxing Authorities.[2] As a

---

[1]     11 U.S.C. § 541(d).

[2]     *In re Calabrese*, 689 F.3d 312 (3d Cir. 2012).

result, courts have held that such taxes are not part of a debtor's estate under section 541(d) of the Bankruptcy Code.[3] A constructive trust may be imposed on collected taxes where there exists a reasonable nexus between the funds and the taxes in question.[4] The Debtor, therefore, may not have a legally cognizable interest in funds held on account of such trust fund taxes, and the Debtor should be permitted to pay those funds to the Taxing Authorities as they become due.

**B.    Certain of the Taxes and Fees May be Entitled to Priority or Secured Claim Status**

21.    A portion of the Taxes and Fees are likely entitled to priority status under section 507(a)(8) of the Bankruptcy Code and would therefore have to be paid in full under any plan of reorganization proposed in this case.[5] The Debtor's payment of such Taxes and Fees would thus affect only the timing of the payments and not the amounts to be paid to the Taxing Authorities. Therefore, other creditors and parties-in-interest will not be prejudiced if the relief sought herein is granted.

22.    In addition, in some or all of the states in which the Debtor does business, liens can attach to real and personal property with respect to which the Debtor has unpaid property taxes, thus potentially entitling the relevant Taxing Authorities to secured claims against property of the Debtor's estate and the payment of post-petition interest and penalties. Payment of such taxes would, therefore, affect only the timing of the payments, and not the amounts that

---

[3]    *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 57-60 (1990) (holding that any pre-petition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *DuCharmes & Co., Inc. v. Mich.*, 852 F.2d 194 (6th Cir. 1998) (per curiam) (same); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a trust fund tax and not released by bankruptcy discharge); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983) (same).

[4] *See Integrated Health Servs., Inc.*, 344 B.R. 262, 270 (Bankr. D. Del. 2006).

[5]    *See* 11 U.S.C. § 1129(a)(9)(C).

would ultimately be payable to the applicable Taxing Authorities, and may, in some instances, allow the Debtor to avoid the payment of unnecessary interest and penalties.

### C. Governmental Entities May Sue the Debtor's Directors and Officers for Unpaid Taxes and Fees

23. In some instances, Taxing Authorities may assert that the Debtor's directors and officers are personally liable if the Debtor fails to meet its obligation to remit Taxes and Fees.[6] To the extent such accrued Taxes and Fees were unpaid as of the Petition Date, the Debtor's directors and officers may be personally subject to lawsuits in certain jurisdictions during the pendency of this Chapter 11 Case, even if the failure to pay such Taxes and Fees was not a result of any malfeasance on their part. Such potential litigation would prove distracting for the Debtor, the named directors and officers, and this Court, which may be asked to entertain various motions seeking injunctions relating to potential court actions. Therefore, it is in the best interest of the Debtor's estate to eliminate the possibility of such distractions.

### D. Sections 363 and 105 of the Bankruptcy Code and the Court's Equitable Powers Permit the Court to Grant the Relief Sought.

24. Courts have authorized payment of pre-petition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.[7]

---

[6] *See, e.g., In re Cobb*, 431 B.R. 23 (Bankr. E.D. Va. 2010) (former vice president of a corporation found liable for nonpayment of certain taxes and denied discharge in her personal bankruptcy case for amounts related to same).

[7] *See, e.g., In In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay pre-petition claims); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 106 is used to fill in the blanks").

25. In addition, the Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the Bankruptcy Courts, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of a Debtor's business.[8] Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of pre-petition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").[9] A Bankruptcy Court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."[10]

26. Courts have allowed immediate payment of certain pre-petition obligations pursuant to 11 U.S.C. § 363(b) of the Bankruptcy Code under the "doctrine of necessity."[11] The rationale for the necessity of payment rule – the rehabilitation of a debtor in reorganization cases – is "the paramount policy and goal of Chapter 11."[12] Bankruptcy courts routinely invoke their

---

[8] *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).

[9] *See Ionosphere Clubs*, 98 B.R. at 176.

[10] *Id.* At 175-76 (citing *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286 (1882)).

[11] *See Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) ("unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that bankruptcy court can authorize payment of pre-petition claims if necessary to continued operation of the debtor); *Ionosphere*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (relying on 11 U.S.C. § 363 to allow contractor to pay prepetition claims of suppliers because the payments were necessary).

[12] *Ionosphere*, 98 B.R. at 176; *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is

10

equitable powers to authorize a debtor to pay certain critical prepetition claims under section 105(a) of the Bankruptcy Code if "authorizing the payment of the prepetition debt creates 'the greatest likelihood of… payment of creditors in full or at least proportionately.'"[13]

27.     As discussed herein, paying the Taxes and Fees will benefit the Debtor's estate and its creditors by allowing the Debtor's operations to continue without interruption, and paying the taxes will not harm the Debtor's estate or stakeholders.  Absent the relief requested herein, the Debtor's business could be significantly disrupted.  Thus, granting the relief requested in this Motion will enhance the likelihood of the Debtor's successful rehabilitation, and maximize the value of the estate assets for the benefit of the Debtor's creditors.  Accordingly, the timely payment of the Taxes and Fees in the ordinary course of business is necessary and in the best interest of the Debtor, its estate and creditors.

28.     In numerous chapter 11 cases, bankruptcy courts have exercised their equitable powers under section 105(a) of the Bankruptcy Code to authorize debtors to pay their pre-petition tax obligations.[14]  The Debtor respectfully submits that similar relief is warranted in this Chapter 11 Case.

**E.     Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers**

---

generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.")

[13]   *In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988); *See also Ionosphere*, 98 B.R. at 176.

[14]   *See*, *e.g.*, *In re KidBrands, Inc., C*ase No. 14-22582 (DHS) (Bankr. D.N.J. June 20, 2014)*; In re Dots, LLC,* Case No. 14-11016 (DHS) (Bankr. D.N.J. Jan. 22, 2014); *In re Big M, Inc.*, Case No. 13-10233 (DHS) (Bankr. D.N.J. Jan.8, 2013) (authorizing debtors to pay pre-petition taxes and fees); *In re Adamar of New Jersey,Inc.*, Case No. 09-20711 (JHW) (Bankr. D.N.J. May 1, 2009) (same); *In re TCI 2 Holdings, LLC*, Case No. 09-13654 (JHW) (Bankr. D.N.J. Feb. 19, 2009) (same).

11

29. The Debtor has sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, and anticipated post-petition financing and access to cash collateral. Also, under the Debtor's existing cash management system, the Debtor can readily identify checks, wire transfers, drafts, ACH debits, and other transfers drawn on the Debtor's bank accounts as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtor believes that pre-petition payments not authorized by the Court will not be honored inadvertently. Therefore, the Debtor respectfully requests that the Court authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks, wire transfers, drafts, ACH debits, and other transfers drawn on the Debtor's bank accounts in respect of the relief requested herein.

## RESERVATION OF RIGHTS

30. Nothing contained herein is intended or should be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an assumption or rejection of any agreement, contract or lease, pursuant to section 365 of the Bankruptcy Code; or (v) otherwise affecting the Debtor's rights under the Bankruptcy Code or applicable non-bankruptcy law. The Debtor expressly reserves its right to contest any claim related to the relief requested herein in accordance with applicable non-bankruptcy law.

## DEBTOR SATISFIES BANKRUPTCY RULE 6003

31. Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

filing of the petition, issue an order granting…a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate…."[15] The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

### **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

32. To implement the foregoing successfully, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen- (14-) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

---

[15] Fed. R. Bankr. P. 6003(b).

## **CONCLUSION**

WHEREFORE, pursuant to 11 U.S.C. §§ 105(a), 363(b), 507(a)(8), and 541, the Debtor respectfully requests the entry of an Order (i) authorizing, but not directing, the Debtor to pay certain pre-petition sales, use, customs, income, property, and other miscellaneous taxes and fees and (ii) scheduling a final hearing to consider entry of a final order. The Debtor also requests such other relief as is just and proper.

DATED this 12th day of September, 2014.

**DORSEY & WHITNEY LLP**

*/s/ Annette W. Jarvis*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*