*Prepared and submitted by*:
Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
          hunt.peggy@dorsey.com
          thomson.michael@dorsey.com
          armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507
(I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH
COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE
PROTECTION, (V) MODIFYING AUTOMATIC STAY, AND
<u>(VI) SCHEDULING A FINAL HEARING</u>**

THIS MATTER having come before the Court upon the motion filed by Naartjie Custom Kids, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court District of Utah (the "Local Rules"), seeking entry of an interim (this "Interim Order") and final order (the "DIP Motion") *inter alia*:

(i)      authorizing, under section 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtor (the "Borrower") to obtain, secured, superpriority post-petition loans, advances and other financial accommodations (the "DIP Facility") on an interim basis for a period through and including the date of the Final Hearing (as defined below), in accordance with this Order and the Budget (as defined herein) and pursuant to the terms and conditions of that certain Term Sheet for a Senior Secured Debtor-In-Possession Credit Facility dated September 16, 2014 (the "DIP Term Sheet"), substantially in the form of Exhibit A attached to the DIP Motion, as the same may be modified and superceded by any *Debtor-In-Possession Credit Agreement* (as amended, supplemented, restated, or otherwise modified from time to time, the "Debtor-In-Possession Credit Agreement") and related documents and agreements, including security agreements, deposit account control accounts, pledge agreements, guaranties and promissory notes (collectively, with the Debtor-In-Possession Credit Agreement, the "DIP Credit Agreement" or "DIP Credit Documents," which term shall include, prior to the execution of the Debtor-In-Possession Credit Agreement, the DIP Term Sheet) which may be entered into by and among the Debtor, the Lenders party thereto (the "DIP Lenders" and each a "DIP Lender"), and Salus Capital Partners, LLC, as Administrative and Collateral Agent (the "DIP Agent") for the DIP Lenders; and

(ii)     authorizing the Debtor to execute and deliver the DIP Credit Agreement and to perform such other acts as may be necessary or desirable in connection with the DIP Credit Agreement;[1] and

(iii)    granting the DIP Facility and all obligations owing thereunder and under the DIP Credit Agreement to the DIP Agent and DIP Lenders (collectively, and including all obligations in respect of advances made by the DIP Lenders pursuant to the DIP Term Sheet and all "Obligations" as described in the DIP Credit Agreement, respectively, and, together, the "DIP Obligations") allowed superpriority administrative expense claim status pursuant to Bankruptcy Code section 364(c)(1) in the Chapter 11 Case and any Successor Case (as defined herein), subject to the priorities set forth herein; and

(iv)    authorizing the Debtor to use "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, that the Debtor is holding or may obtain, pursuant to Bankruptcy Code section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(v)     granting to the DIP Agent automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein; and

(vi)    authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Credit Agreement as they become due, including, without limitation, continuing commitment or unused line fees, collateral audit fees, monitoring and exit fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Agent, all to the extent provided by and in accordance with the terms of the respective DIP Credit Agreement; and

---

[1]     Capitalized terms used but not defined have the meanings given to them in the Term Sheet, as the same may be modified and superceded by the DIP Credit Agreement.

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Agreement and this Interim Order; and

(viii)    granting the Prepetition Agent the Adequate Protection Liens and the Adequate Protection Superpriority Claims based on the priming of its liens and subordination of its claims to those of the DIP Agent and DIP Lenders; and

(ix)    waiving any applicable stay as provided in the Bankruptcy Rules and providing for the immediate effectiveness of this Interim Order; and

(x)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, *the Declaration of Jeff Nerland in Support of the Debtor's Chapter 11 Petition and First Day Motions* and the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the hearing held on the DIP Motion (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014; and the Local Rules; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE

REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  *Petition Date*.  On September 12, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court") commencing the Case.

B.  *Debtor in Possession*.  The Debtor is continuing in the management and operation of its businesses and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

C.  *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  *Committee Formation*.  As of the date hereof, the Office of the United States Trustee (the "U.S. Trustee") has not yet appointed any official committee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (each, a "Statutory Committee").

E.  *Debtor's Stipulations*.  After consultation with its attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 33 herein, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E(v) below are referred to herein as the "Debtor's Stipulations"):

(i)  *Prepetition Credit Documents*.  As of the Petition Date, the Debtor had outstanding secured debt pursuant to that certain *Credit Agreement*, dated as of October 17, 2013 (as amended, modified and supplemented from time to time, the "Prepetition Credit Agreement" and together with all related documents, guaranties and agreements, the "Prepetition Credit Documents"), among the Debtor, the lenders from time to time party thereto (the "Prepetition

Secured Lenders"), and Salus Capital Partners, LLC, as administrative agent and collateral agent (in such capacity, the "Prepetition Agent"); the Prepetition Agent and the Prepetition Secured Lenders are collectively referred to herein as the "Prepetition Creditors" or the "Prepetition Secured Parties") and certain other parties thereto.

(ii)     *Prepetition Obligations*.   As of September 12, 2014, the aggregate outstanding principal amount owed by the Debtor under the Prepetition Credit Documents was not less than $3,722,300 (collectively, together with any interest, fees, costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Agreement, including all "Obligations" as described in the Prepetition Senior Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Secured Obligations").   As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted first-priority security interests in and liens on substantially all of its personal property, including accounts, inventory, equipment and general intangibles (as more fully set forth in the Prepetition Credit Agreement, the "Prepetition Collateral") to the Prepetition Agent, for the benefit of the Prepetition Secured Parties (collectively, the "Prepetition Secured Liens") to secure repayment of the Prepetition Secured Obligations.

(iii)     *Validity, Perfection and Priority of Prepetition Liens and Obligations*. The Debtor (for itself only, and without limiting the rights of other parties in interest under paragraphs 33 and 34 of this Interim Order), and the Prepetition Secured Parties acknowledge and agree that:   (a) as of the Petition Date, the Prepetition Secured Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) as of the Petition Date, the Prepetition Secured Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Agreement and only to the extent any such other liens otherwise permitted by

6

the Prepetition Senior Credit Documents were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Secured Liens as of the Petition Date (the "Prepetition Permitted Liens")[2] (d) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Secured Liens or the Prepetition Secured Obligations exist, and no portion of the Prepetition Secured Liens or the Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtor and its estate has no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Agreement or otherwise; (g) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Secured Obligations exceeded the amount of those obligations, and accordingly the Prepetition Secured Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, of not less than $3,722,300 as of September 12, 2014, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, attorneys' fees and related expenses), costs and other charges.

(iv)     *Cash Collateral.*  The Debtor acknowledges and stipulates that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original

---

[2]     Subject to paragraph 33, nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable.  Moreover, subject to paragraph 33, nothing shall prejudice the right of any party in interest including, but not limited, to the Debtor, the DIP Agent, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien.

collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Parties.

(v)    *Default by the Debtor*.  The Debtor acknowledges and stipulates that it is in default under the Prepetition Credit Agreement.

F.    <u>*Findings Regarding the Postpetition Financing*</u>.

(i)    *Request for Postpetition Financing*.  The Debtor has requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, the DIP Facility (and the Petition Agent consents to the priming of the Prepetition Secured Liens) on the terms and conditions described herein and in the DIP Credit Agreement and to permit use of Cash Collateral on the terms and conditions described herein to permit the Debtor to administer this Chapter 11 Case and fund its operations.  At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "<u>Final Order</u>"), which shall be in form and substance acceptable to the DIP Agent and the DIP Lenders.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Immediate Need for Postpetition Financing and Use of Cash Collateral*. The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, maintain business relationships, to pay its employees, protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders, and the possibility for a successful administration of the Case.  The Debtor does not have sufficient available sources of working

capital and financing to operate its businesses or to maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iii)     *No Credit Available on More Favorable Terms*.     Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Agent on terms more favorable than the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.   The Debtor has also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.   Financing on a postpetition basis is not otherwise available without granting the DIP Agent and DIP Lenders, (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

(iv)     *Use of Proceeds of the DIP Facility*.   As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent requires, and the Debtor has agreed, that proceeds of the DIP Facility shall only be used in a manner consistent with the terms and conditions of the DIP Credit Agreement and in accordance with the Debtor's budget (a copy of which is attached as Exhibit B hereto, as the same may be modified from time to time consistent with the terms of the DIP Credit Agreement, and subject to such variances as may be permitted thereby, the "Budget"), solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Case, including professional fees, and (iv) as otherwise permitted under the DIP Credit Agreement, as applicable.

(v)     *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtor and the DIP Agent have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 18 of this Interim Order.

G.     *Adequate Protection*.

(i)     Adequate protection shall be provided to the Prepetition Agent and the Prepetition Secured Lenders, by the Adequate Protection Liens (as defined herein) to secure the Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Secured Obligations.  For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to the DIP Liens and the DIP Carve Out, and the Adequate Protection Superpriority Claims are junior in all respects to the DIP Superpriority Claim (as defined herein).

H.     *Sections 506(c) and 552(b)*.  In light of the DIP Agent's and the Prepetition Secured Lender's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined herein), upon entry of the Final Order, the DIP Agent and the Prepetition Secured Lenders are entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code.

I.     *Good Faith of the DIP Agent*.

(i)     *Willingness to Provide Financing*.  The DIP Agent has indicated a willingness to provide financing to the Debtor subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Credit Agreement; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Agent and DIP Lenders are extending credit to the Debtor pursuant to the

DIP Credit Agreement in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Credit Agreement will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to section 364(e)*.  The terms and conditions of the extension of credit under the DIP Facility and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor-in-possession, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor and the DIP Agent, with all parties being represented by counsel.  The use of Cash Collateral and credit to be extended under the DIP Credit Agreement shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

J.    *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, by email to certain parties in interest, including: (i) the U.S. Trustee for the District of Utah; (iii) the Internal Revenue Service; and (iii) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors for whom the Debtor had email addresses. Under the circumstances, where the Debtor previously provided notice of its original motion for debtor-in-possession financing and the related hearing on said motion, the notice provided by the Debtor of the Motion, the Interim Hearing and the relief

11

granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c), and the Local Rules, and no other or further notice is or shall be required.

K.      *Immediate Entry*.   Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Interim Financing Approved.  The DIP Motion is granted on an interim basis, the Interim Financing (as defined herein) is authorized and approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled.  All objections to the Interim Financing to the extent not withdrawn or resolved are hereby overruled.

### DIP FACILITY AUTHORIZATION

3.      Authorization of the DIP Financing and DIP Credit Agreement.  The Debtor is expressly and immediately authorized and empowered to execute and deliver the DIP Credit Agreement, to incur and to perform the DIP Obligations in accordance with, and subject to the terms of this Interim Order, the DIP Credit Agreement and the Budget, to deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Credit Agreement, and, subject to the rights of third parties pursuant to paragraphs 33 and 34 below.  A copy of the executed DIP Credit Agreement shall be filed with this Court no later than five (5) business days after the entry of this Interim Order.  The

Debtor is hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement as such become due and without need to obtain further Court approval, including, without limitation, unused facility fees, continuing commitment fees, monitoring and exit fees, collateral audit fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the DIP Credit Agreement, with invoices to be provided in accordance with paragraph 47 below.  All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Credit Agreement.  Upon entry of this Interim Order, the DIP Term Sheet shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms, and upon execution and delivery and DIP Credit Agreement shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.     _Authorization to Borrow_.  Until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Credit Agreement, the DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request extensions of credit under the DIP Facility (the "_Interim Financing_").

5.     _DIP Obligations_.  The DIP Credit Agreement and this Interim Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case (collectively, "_Successor Case_").  Upon entry of this Interim Order, the DIP Obligations will

include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Agent, the DIP Lenders and their related parties under the DIP Credit Agreement or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses, reimbursement and indemnity obligations and other amounts owed pursuant to the DIP Credit Agreement.

      6.    <u>Postpetition Liens and Collateral</u>.

      (a)    Effective immediately upon the entry of this Interim Order, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the DIP Lenders party to the DIP Credit Agreement) is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens (collectively, the "<u>DIP Liens</u>") on any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, including, without limitation, the following (the "<u>DIP Collateral</u>"):

      (i)    all Accounts[3];

      (ii)    all Goods, including Equipment, Inventory and Fixtures;

      (iii)    all Documents, Instruments and Chattel Paper;

      (iv)    all Letters of Credit and Letter-of-Credit Rights;

      (v)    all Securities Collateral;

      (vi)    all Investment Property;

      (vii)    all Intellectual Property Collateral;

      (viii)    all Commercial Tort Claims;

---

[3]    All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Credit Agreement; provided, that prior to execution of the Debtor-In-Possession Credit Agreement, all such terms shall have the meanings set forth in the Uniform Commercial Code.  All terms not specifically defined in the DIP Credit Agreement shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(ix)    all General Intangibles (including, without limitation, all Payment

Intangibles);

(x)    all Deposit Accounts (including, without limitation, the Concentration

Account);

(xi)    all Supporting Obligations;

(xii)    all money, cash or cash equivalents;

(xiii)    all credit balances, deposits and other property now or hereafter held or

received by or in transit to the DIP Agent or at any other depository or other institution from or

for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection

or otherwise;

(xiv)    all proceeds of leases of real property and all owned real property;[4]

(xv)    effective upon the entry of the Final Order, the Debtor's rights under

section 506(c) of the Bankruptcy Code and the proceeds thereof;

(xvi)    to the extent not otherwise described above, all receivables and all present

and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor,

excluding causes of action under Chapter 5 of the Bankruptcy Code;

(xvii)    all books, records, and information relating to any of the foregoing and/or

to the operation of the Debtor's business, and all rights of access to such books, records, and

information, and all property in which such books, records and information are stored, recorded

and maintained; and

(xviii)    to the extent not otherwise included, all Proceeds, tort claims, insurance

claims, contract rights, rights to the payment of money, and other rights to payment not

---

[4]    For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property ("Leased Premises") and are not direct liens on the Debtor's leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

(b)     Effective upon the entry of the Interim Order, all DIP Liens and the DIP Carve Out (as defined herein) shall each be and remain at all times senior to the Prepetition Secured Liens, and all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements, freight forwarder agreements constituting the Prepetition Credit Agreement, all Uniform Commercial Code financing statements, mortgages, collateral assignments, notices of lien, all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtor which were filed by the Prepetition Agent, and all other similar documents, instruments or agreements granting, establishing or evidencing a lien on Prepetition Collateral, shall be deemed to be delivered and/or filed in connection with the DIP Facility, shall constitute DIP Credit Documents and shall remain in full force and effect without any further action by the Debtor, the DIP Agent or any other person, and any and all references in any such agreements or documents to the "Credit Agreement" shall hereafter be deemed to mean and refer to the Prepetition Credit Agreement and the DIP Credit Agreement, and any and all references in any such agreements or documents to the "Loan Documents" shall hereafter be deemed to mean and refer to the Prepetition Loan Documents and the DIP Credit Documents, in each case as amended, modified, supplemented or restated and in effect from time to time.

7.     <u>DIP Lien Priority</u>.

(a)     *DIP Liens*.  The DIP Liens shall be junior only to the (i) DIP Carve Out, and (ii) the Prepetition Permitted Liens (as and to the extent such Prepetition Permitted Liens are

senior to the Prepetition Secured Liens immediately prior to the Petition Date), shall otherwise be senior in priority and superior to the Prepetition Secured Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b)      Other than as set forth herein or as further ordered by the Court, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Case or any Successor Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Chapter 11 Case or any Successor Case.  The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(c)      *Prepetition Secured Liens*.  For the avoidance of doubt, the Prepetition Secured Liens shall be junior to the (i) DIP Carve Out; (ii) DIP Liens; (iii) the Adequate Protection Liens described in paragraph 12(b) below; (iv) the Adequate Protection Superpriority Claims; and (v) Prepetition Permitted Liens (as and to the extent that such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date).

8.      DIP Superpriority Claim.

(a)      *DIP Agent Superpriority Claim*.  Upon entry of this Interim Order, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case (collectively, the "DIP Superpriority Claim") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the DIP Liens,

17

the DIP Carve Out as defined in paragraph 33 below, and Prepetition Permitted Liens (as and to the extent such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date), and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 503(b) and 507(b), as provided under section 364(c)(1) of the Bankruptcy Code.

(b)     *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations, the DIP Carve Out and amounts secured by the Prepetition Permitted Liens (as and to the extent that such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date).

9.     <u>No Obligation to Extend Credit</u>.  The DIP Agent and the DIP Lenders shall not have any obligation to make any loan or advance under the DIP Credit Agreement unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Credit Agreement and this Interim Order have been satisfied in full or waived by the DIP Agent in its sole discretion.

10.     <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Credit Agreement, and in compliance with the Budget.

**<u>AUTHORIZATION TO USE CASH COLLATERAL</u>**

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the DIP Credit Agreement, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral until the Termination Date; <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein) the Debtor may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and to pay expenses critical to

the preservation of the Debtor and its estate as agreed by the DIP Agent, in its sole discretion. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business (which shall be subject to further Orders of this Court), or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Credit Agreement, and in accordance with the Budget.  The Debtor may also, in its discretion, honor prepetition gift cards and customer credits for a period of two-weeks after the Petition Date.

12.  <u>Adequate Protection Liens</u>.

(a)  *Prepetition Agent – Adequate Protection Liens*.  The Prepetition Agent (for itself and the ratable benefit of the Prepetition Secured Parties) is hereby granted, pursuant to Bankruptcy Code sections 361 and 363, valid and perfected replacement and additional security interests in, and liens on all of the Debtor's right, title and interest in, to and under all DIP Collateral (the "<u>Adequate Protection Liens</u>").  The Adequate Protection Liens granted to the Prepetition Agent shall secure the Prepetition Secured Obligations.  The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject to (i) the DIP Liens, (ii) the Prepetition Permitted Liens (as and to the extent such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date), and (iii) the DIP Carve Out.

(b)  *Treatment of Adequate Protection Liens.*  Other than as set forth herein or as further ordered by the Court, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law in the Chapter 11 Case or any Successor Case.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Case or any Successor Case, upon the conversion of the Chapter 11 Case to a case

under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Chapter 11 Case or any Successor Case.

13. _Adequate Protection Superpriority Claims_.

(a) *Superpriority Claim of Prepetition Agent*. As further adequate protection of the interests of the Prepetition Agent and Prepetition Secured Parties with respect to the Prepetition Secured Obligations, the Prepetition Agent is hereby granted (for itself and the ratable benefit of the Prepetition Secured Parties) an allowed administrative claim against the Debtor's estate under sections 503 and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Agent's interests in the Prepetition Collateral.

(b) *Priority of Adequate Protection Superpriority Claims*. The Adequate Protection Superpriority Claim granted to the Prepetition Agent and Prepetition Secured Parties shall be junior to the DIP Carve Out, Prepetition Permitted Liens (as and to the extent such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date), the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens, and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b), and 507(b) of the Bankruptcy Code.

**PROVISIONS COMMON TO DIP FINANCING AND USE OF CASH COLLATERAL AUTHORIZATIONS**

14. _Amendments_. The DIP Credit Agreement may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (i) in the reasonable judgment of the Debtor and the DIP Agent, the amendment, modification, or supplement (A) is in accordance with the DIP Credit Agreement, (B) is not prejudicial in any material respect to the rights of third parties, and (C) has been consented to by the DIP Agent, and (ii) a copy (which may be provided through electronic mail or facsimile) of the amendment,

modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee at least one (1) Business Day prior to the effective date of the amendment, modification or supplement.

15.    Budget Maintenance.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to the DIP Agent and the Prepetition Agent and approved by the DIP Agent and the Prepetition Agent in their sole discretion.  The Debtor shall comply with and update the Budget from time to time in accordance with the DIP Credit Agreement (provided that any update shall be in form and substance reasonably acceptable to the DIP Agent and the Prepetition Agent and approved by the DIP Agent and the Prepetition Agent in their sole discretion), but in any event not less than on a weekly basis (with delivery to the DIP Agent and the Prepetition Agent on or before Thursday of each week and to the United States Trustee and the Statutory Committee, if any, each week after delivery to the DIP Agent and the Prepetition Agent).

16.    Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; and (b) authorize the Debtor to pay, and the DIP Agent and Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

17.    Perfection of DIP Liens and Adequate Protection Liens.

(a)    *Automatic Perfection of Liens*.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be

required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent or the Prepetition Secured Parties to the priorities granted herein (including, for the avoidance of doubt, entering into any blocked, lockbox or deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement and/or taking possession of original instruments or securities, specifically describing any commercial tort claim or similar actions required under applicable non-bankruptcy law to establish or perfect any security interest or lien). Notwithstanding the foregoing, the DIP Agent is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and take all such other action deemed necessary or desirable by the DIP Agent to establish or perfect the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing, recordation or other action shall be necessary or required in order to create, perfect or enforce the DIP Liens.  The Debtor is authorized to execute and deliver promptly upon demand to the DIP Agent all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent may reasonably request.  The DIP Agent, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Should the DIP Agent choose and attempt to file, record or perform an act to perfect the liens or security interests granted herein, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

(b)       *Application to Depository Banks*.  Upon entry of this Interim Order all of the Debtor's depository banks are directed to honor all DIP Credit Documents and all documents relating to the Prepetition Secured Liens including, without limitation, all directives by the DIP Agent to sweep the collected funds in the Debtor's bank accounts to accounts controlled by the DIP Agent.

18.       <u>Application of Proceeds of DIP Collateral</u>.  As a condition to the entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtor has agreed that the proceeds of DIP Collateral shall be applied as follows:

(a)       (i) all payments received by the DIP Agent in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtor at Wells Fargo, National Association and (ii) all net proceeds from any Disposition of DIP Collateral, each shall be applied:  *first*, to payment of fees, costs and expenses, including Credit Party Expenses payable and reimbursable by the Debtor under the DIP Credit Agreement; *second*, to payment of interest with respect to the DIP Obligations, *third*, to payment of all other DIP Obligations in accordance with the DIP Credit Agreement; *fourth*, to payment of the Pepetition Secured Obligations (subject to the rights of Challenge Parties to bring a Challenge to the Prepetition Secured Obligations or the Prepetition Secured Liens during the Challenge Period, as provided in Paragraph 33 of this Interim Order); and *fifth*, to the Debtor's operating account, or for the account of and paid to whoever may be lawfully entitled thereto.

(b)       The Debtor shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Secured Obligations (each in accordance with the DIP Credit Agreement and this Interim Order) and obligations authorized under the Debtor's "first-day" orders.

19.     Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Chapter 11 Case or any Successor Case shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Credit Agreement at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and the Debtor's estate, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18(a) herein;

20.     Maintenance of DIP Collateral.  Until the payment in full in cash of all DIP Obligations, the Prepetition Secured Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtor shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Credit Agreement.

21.     Disposition of DIP Collateral; Rights of DIP Agent.  Unless otherwise authorized by the Court, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Credit Agreement.  Nothing provided herein shall limit the right of the DIP Agent or the DIP Lenders to object to any proposed disposition of the DIP Collateral.

22.     Termination Date.  On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will automatically terminate, and (ii) all authority to use Cash Collateral derived from the proceeds of DIP Collateral and/or Prepetition Collateral shall cease, provided, however, that during the

Remedies Notice Period (as defined herein), the Debtor may use Cash Collateral solely as set forth in paragraph 11 herein.

23. <u>Events of Default</u>. The occurrence of an "Event of Default" under the DIP Credit Agreement (unless the DIP Agent, in its sole discretion, elects to waive such Event of Default in writing) shall constitute an event of default under this Interim Order (each, an "<u>Event of Default</u>").

24. <u>Rights and Remedies Upon Event of Default</u>.

(a) *DIP Facility Termination.* Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its discretion (i) declare the DIP Facility terminated (such declaration, a "<u>Termination Declaration</u>") or (ii) send a written reservation of rights notice to the Debtor, which notice may advise the Debtor that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent. Upon the issuance of a Termination Declaration, at the DIP Agent's option: (I) all or any portion of the commitments of the DIP Lenders to make loans or otherwise extend credit may be suspended or terminated; (II) all DIP Obligations may be deemed immediately due and payable; and (III) after three (3) Business Days from the Termination Declaration Date, any right or ability of the Debtor to use any Cash Collateral (other than as expressly set forth in this Interim Order during the Remedies Notice Period) may be terminated, reduced or restricted by the DIP Agent, provided that, during such three (3) Business Day period, the Debtor may use Cash Collateral in accordance with the Budget solely to meet payroll and to pay expenses critical to the preservation of the Debtor and its estate as agreed by the DIP Agent, in its sole and absolute discretion. With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period, the DIP Agent and the DIP Lenders may exercise all rights and remedies available to them under the DIP Credit Agreement or applicable law against the DIP Collateral. Without limiting the foregoing, the DIP Agent and the DIP Lenders may, subject to

the Remedies Notice Period, (i) enter onto the premises of the Debtor in connection with an orderly liquidation of the DIP Collateral; and/or (ii) exercise any rights and remedies provided to DIP Agent and the DIP Lenders under the DIP Credit Agreement or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and the Final Order.  Following the termination of the Remedies Notice Period, the DIP Agent may require the Debtor to seek authority from the Court to retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of the DIP Collateral and, if Debtor refuses to seek such authority, the DIP Agent shall be entitled to seek such authority directly.

(b)    *Notice of Termination*.  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtor, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraphs 11 and 33 of this Interim Order.  Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that three (3) business days after the Termination Declaration Date (the "Remedies Notice Period"), the DIP Agent and the DIP Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Credit Agreement and this Interim Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject only to the DIP Carve Out and Prepetition Permitted Liens (as and to the extent such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date).  During the Remedies Notice Period, the Debtor shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing.  Unless the Court determines during the

Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent with respect thereto pursuant to the DIP Credit Agreement, or this Interim Order.

(c)     *Access to Leased Premises*. The DIP Agent's exercise of its remedies pursuant to this paragraph 24 shall be subject to: (x) pre-existing rights of the DIP Agent and the applicable landlord under applicable nonbankruptcy law, (y) consent of the applicable landlord, or (z) further order of the Court following notice and a hearing.

25.     <u>Good Faith Under section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  The DIP Agent and each DIP Lender have acted in good faith in connection with the DIP Credit Facility and this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP Agent and each of the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made under the DIP Credit Facility, or lien, claim or priority authorized or created hereby, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Agent at the time the advances were made or the liens,

claims or priorities were authorized and/or created.  Any liens or claims granted to the DIP

Agent and the DIP Lenders hereunder arising prior to the effective date of any such modification,

amendment or vacatur of this Interim Order shall be governed in all respects by the original

provisions of this Interim Order, including entitlement to all rights, remedies, privileges and

benefits granted herein, provided that the Interim Order was not stayed by court order after due

notice had been given to the DIP Agent and each DIP Lender at the time the advances were made

or the liens, claims or priorities were authorized and/or created.

26.   <u>DIP and Other Expenses</u>.  The Debtor is authorized and directed to pay all

reasonable out-of-pocket expenses of the DIP Agent and the DIP Lenders in connection with the

DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), to the

extent provided in the DIP Credit Agreement, whether or not the transactions contemplated

hereby are consummated, including, without limitation, legal, accounting, collateral examination,

monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants,

and indemnification and reimbursement of fees and expenses, upon the Debtor's receipt of

invoices for the payment thereof.  Payment of all such fees and expenses shall not be subject to

allowance by the Court and professionals for the DIP Agent and the DIP Lenders shall not be

required to comply with the U.S. Trustee fee guidelines.  Notwithstanding the foregoing, at the

same time such invoices are delivered to the Debtor, the professionals for the DIP Agent and the

DIP Lenders shall deliver a copy of their respective invoices to counsel for any Statutory

Committee and the U.S. Trustee, redacted as necessary with respect to any privileged or

confidential information contained therein.  Any objections raised by the Debtor, the U.S.

Trustee or any Statutory Committee with respect to such invoices within ten (10) days of the

receipt thereof will be resolved by the Court.  In the event of any objection, the provisions of

section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy

Procedure shall apply.  Pending such resolution, the undisputed portion of any such invoice will

be paid promptly by the Debtor.  Notwithstanding the foregoing, the Debtor is authorized and directed to pay on the Closing Date all reasonable fees, costs and expenses of the DIP Agent, the DIP Lenders and the Prepetition Agent incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition Agent to first deliver a copy of its invoice as provided for herein.

27.    Indemnification.

(a)    The Debtor shall indemnify and hold harmless the DIP Agent and the DIP Lenders and each of their respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Credit Agreement, the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Credit Agreement and as further described therein and herein, or in connection with the Case, any plan, or any action or inaction by the Debtor, in each case except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for each of the DIP Agent's and the DIP Lenders' exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation therefor, each of the DIP Agent and the DIP Lenders shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel.

(b)      *DIP Indemnity Account*.   Upon the conclusion of the Remedies Notice
Period, the Debtor shall pay $100,000 from proceeds of the DIP Collateral into an indemnity
account (the "DIP Indemnity Account") subject to first priority liens of the DIP Agent.  The DIP
Indemnity Account shall be released and the funds applied in accordance with paragraph 18 of
this Interim Order upon the earlier to occur of (a) the receipt by the DIP Agent and each DIP
Lender of a release from the Debtor and its estate acceptable to the DIP Agent and each DIP
Lender in its sole discretion and (b) the closing of an "exit financing" or similar financing or
transaction to which the Debtor and the DIP Agent are parties on terms and conditions
acceptable to the DIP Agent in its sole discretion.

28.      Proofs of Claim.  Any order entered by the Court in relation to the establishment
of a bar date for any claims (including without limitation administrative claims) in the Chapter
11 Case or any Successor Case shall not apply to the DIP Agent, the DIP Lenders or Prepetition
Secured Parties.  None of the DIP Agent, the DIP Lenders and Prepetition Secured Parties will
be required to file proofs of claim or requests for approval of administrative expenses in the
Chapter 11 Case or any Successor Case, and the provisions of this Interim Order relating to the
amount of the DIP Obligations, the DIP Superpriority Claim and the Prepetition Secured
Obligations shall constitute timely filed proofs of claim and/or administrative expense requests.

29.      Rights of Access and Information.  Without limiting the rights of access and
information afforded the DIP Agent and the DIP Lenders under the DIP Credit Agreement, the
Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the
DIP Agent and the DIP Lenders reasonable access to the Debtor's premises and its books and
records in accordance with the DIP Credit Agreement, and shall reasonably cooperate, consult
with, and provide to such persons all such information as may be reasonably requested.  In
addition, the Debtor authorizes its independent certified public accountants, financial advisors,
investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and

the DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

       30.    <u>DIP Carve Out</u>.

       (a)    As used in this Interim Order, the "<u>DIP Carve Out</u>" means, collectively, the following fees and expenses: (i) all statutory fees required to be paid to (a) the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930(a), and (b) to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), as determined by agreement of the United States Trustee or by final order of the Court; (ii) reasonable fees and expenses of a Chapter 7 trustee under section 726(b) of the Bankruptcy Code and professionals retained by the Chapter 7 trustee in an aggregate amount not to exceed $25,000; and (iii) the aggregate amount of accrued and unpaid professional fees and expenses of the Debtor and any Statutory Committee, retained by either of them by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under sections 327, 328, or 1103(a) of the Bankruptcy Code (the "<u>Case Professionals</u>"), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("<u>Allowed Professional Fees</u>") and the reimbursement of out-of-pocket expenses allowed by the Bankruptcy Court incurred by the Statutory Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) ("<u>Committee Member Expenses</u>"), which amounts shall be equal to the sum of (a) $175,000 for the Case Professionals retained by the Debtor (the "<u>Debtor's Case Professionals</u>") (which is being deposited into the IOLTA trust account of Dorsey & Whitney LLP, proposed counsel to the Debtors (the "<u>Debtor Professional Fee Escrow Account</u>") on the Closing Date in accordance with the Budget) and (b) amounts which shall be funded (I) for the Debtor's Case Professionals into the Debtor Professional Fee Escrow Account and (II) for the Case Professionals retained by any Statutory Committee (the "<u>Statutory Committee Case Professionals</u>") into a separate trust account of the Debtor (the "<u>Committee Professional Fee Escrow Account</u>") on Thursday of each week (or such other day of the week selected by the Debtor) pursuant to and in accordance with the Budget (together, the "<u>Periodic Compensation Fees</u>"), provided that (x) the Debtor has sufficient availability of funds on such date, (y) the Termination Date has not occurred, and (z)

no Event of Default has occurred or is continuing.  No portion of the DIP Carve Out, any Cash Collateral or proceeds of the DIP Facility may be used in violation of this Interim Order, including paragraph 33 hereof.  Notwithstanding anything to the contrary contained in this Interim Order, (A) so long as an Event of Default or the Termination Date has not occurred, the Debtor shall be permitted to borrow under the DIP Credit Agreement on a weekly basis to fund the Debtor Professional Fee Escrow Account and the Committee Professional Fee Escrow Account in the respective amounts contemplated under clause (b) of this paragraph and in the Budget, subject to there being sufficient availability for such borrowings, and (B) the Debtor shall be permitted to pay, from the Debtor Professional Fee Escrow Account or the Committee Professional Fee Escrow Account, as the case may be, as and when the same may become due and payable, fees and expenses of the respective Debtor's Case Professionals or Statutory Committee Case Professionals payable under 11 U.S.C. § 330 and § 331 pursuant to Court order, regardless of whether an Event of Default has occurred and is continuing at such time.  Any amounts in the Debtor Professional Fee Escrow Account and the Committee Professional Fee Escrow Account after the payment in full of all Allowed Professional Fees of Case Professionals pursuant to final fee applications and orders shall be returned to the DIP Agent for application in accordance with paragraph 19 of this Interim Order.  The DIP Liens are hereby deemed to attach to the Debtor's residual interest in such exce*s*s.

(b)        *No Direct Obligation to Pay Professional Fees or Committee Expenses*. Except for funding the DIP Carve Out, as provided herein, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the DIP Carve Out if actual (i) Allowed Professional

Fees of any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget.

(c)     *Payment of DIP Carve Out*. The funding of the DIP Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Credit Agreement, the Bankruptcy Code and applicable law.

31.     <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals DIP Carve Out</u>.  The DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of any Prepetition Secured Parties, the DIP Agent or the DIP Lenders or their respective rights and remedies under the DIP Credit Agreement, the Prepetition Credit Agreement or this Interim Order or the Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, any DIP Obligations or Prepetition Secured Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Agent, any DIP Lender or any Prepetition Secured Parties, or their respective collateral, (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent or any DIP Lender, any DIP Lender or any Prepetition Secured Parties of any rights and remedies under this Interim Order or the Final Order, the DIP Credit Agreement, the Prepetition Credit Agreement or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or

otherwise) by the DIP Agent upon any of the DIP Collateral or by the Prepetition Agent with

respect to its Adequate Protection Liens upon any of its Prepetition Collateral, (v) asserting that

the value of the Prepetition Collateral is less than the Prepetition Secured Obligations, or (vi) to

pursue litigation against any Prepetition Secured Parties; (b) to make any distribution under a

plan of reorganization in any Chapter 11 Case; (c) to make any payment in settlement of any

claim, action or proceeding, before any court, arbitrator or other governmental body without the

prior written consent of the DIP Agent unless otherwise ordered by this Court; (d) to pay any

fees or similar amounts to any person who has proposed or may propose to purchase interests in

the Debtor without the prior written consent of the DIP Agent; (e) objecting to, contesting, or

interfering with, in any way, the DIP Agent's or the DIP Lenders' enforcement or realization

upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in

his Interim Order or the Final Order, or seeking to prevent the DIP Agent from credit bidding in

connection with any proposed plan or reorganization or liquidation or any proposed transaction

pursuant to section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while

the DIP Obligations remain outstanding, without the consent of the DIP Agent, in a manner

inconsistent with the Budget; (g) using or seeking to use any insurance proceeds constituting DIP

Collateral without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the

DIP Credit Agreement) outside the ordinary course of business without the prior consent of the

DIP Agent, except as permitted under the DIP Credit Agreement; (i) objecting to or challenging

in any way the claims, liens, or interests held by or on behalf of the DIP Agent, the DIP Lenders

or any Prepetition Secured Party; (j) asserting, commencing or prosecuting any claims or causes

of action whatsoever, including, without limitation, any actions under Chapter 5 of the

Bankruptcy Code, against the DIP Agent, the DIP Lenders or any Prepetition Senior Secured

Creditor; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to,

the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations,

the Prepetition Secured Obligations, the DIP Liens or the Prepetition Secured Liens or any other

rights or interests of the DIP Agent, Prepetition Agent or the Prepetition Secured Parties;

provided, however, that the Statutory Committee may use up to $20,000 of such amounts to

investigate any claims or causes of action against the Prepetition Secured Parties in respect of the

Prepetition Secured Obligations or the Prepetition Secured Liens securing the Prepetition

Secured Obligations.

32.     <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the

allowance of any professional fees or expenses of any Case Professionals or shall affect the right

of the DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees

and expenses.  So long as an Event of Default or the Termination Date has not occurred and is

continuing, the Debtor shall be permitted to pay fees and expenses allowed and payable by order

(that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and

331 of the Bankruptcy Code, as the same may be due and payable, and to the extent set forth in

the Budget.

33.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)     The stipulations, findings, representations and releases contained in this

Interim Order or the Payoff Letter with respect to the Prepetition Secured Parties and the

Prepetition Secured Obligations shall be binding upon all parties-in-interest, any trustee

appointed in the Chapter 11 Case and any Successor Case, any Chapter 7 trustee, any successor

trustee, examiner, or estate representative, and any Statutory Committee (each, a "<u>Challenge

Party</u>") and solely with respect to any trustee appointed in the Chapter 11 Case and any

Successor Case, any Chapter 7 trustee, any successor trustee, examiner, or estate representative, and any Statutory Committee (each, an "Estate Representative Challenge Party"), unless and solely to the extent that (i) the Debtor received from a Challenge Party notice of a potential Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  For purposes of this paragraph 33:  (a) "Challenge" means any claim against any of the Prepetition Secured Parties on behalf of the Debtor or the Debtor's creditors and interest holders, or any objecting to or challenging of the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity, extent, priority, or perfection of the security interests and liens of any Prepetition Secured Party; (ii) the validity, allowability, priority, or amount of the Prepetition Secured Obligations (including any fees included therein); (iii) the secured status of the Prepetition Secured Obligations; or (iv) any liability of any of the Prepetition Secured Parties with respect to anything arising from any of the respective Prepetition Credit Agreement; and (b) the "Challenge Period" means (i) with respect to any party-in-interest other than an Estate Representative Challenge Party, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of this Interim Order and (ii) with respect to an Estate Representative Challenge Party, the period from the date such Estate Representative Challenge Party is formed or appointed until the date that is forty-five (45) calendar days thereafter.

(b)     During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtor, the DIP Agent and the Prepetition Secured Parties during the Challenge Period of its demand that the Debtor initiate an action or adversary proceeding relating thereto and from the date that the Debtor, the DIP Agent and the Prepetition Secured Parties are so notified, the Debtor shall have five (5) days to notify the Challenge Party

of whether the Debtor intends to initiate such action (or a settlement in lieu of an adversary proceeding) and ten (10) days to initiate such action.  If the Debtor notifies such Challenge Party that the Debtor does not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to seek standing to initiate an action or adversary proceeding.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  The Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

       (c)     Upon the expiration of the Challenge Period (subject to such ten (10) day periods described above) (the "Challenge Period Termination Date"), without the filing of a Challenge:  (A) any and all such Challenges and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in the Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Secured Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in the Chapter 11 Case and any Successor Case; and (C) any and all claims or causes of action against the Debtor or the Prepetition Secured Parties relating in any way to the Debtor or the Prepetition Credit Agreement shall be forever waived and released by the Debtor's estate, all creditors, interest holders and other parties in interest in the Chapter 11 Case and any Successor Case.

       34.    Reservation of Rights:  Notwithstanding anything to the contrary contained in this Interim Order, in the event there is a timely and successful Challenge by any party in interest (in

accordance with paragraph 33 hereof), this Court may unwind the repayment of the Prepetition Secured Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Secured Obligations consisting of an unsecured claim or other amount not allowable under section 502 of the Bankruptcy Code. Notwithstanding the foregoing, a successful challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens.

35.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

36.     Section 506(c) Claims.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or any Successor Case at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP Collateral, the Prepetition Agent, the Prepetition Secured Parties or the Prepetition Secured Liens pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

37.     No Marshaling/Applications of Proceeds.  Upon entry of the Final Order, neither the DIP Agent, the Prepetition Agent, nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral and/or Prepetition Collateral.  Nothing in this Interim Order shall modify the terms of any agreement solely between the DIP Agent and the DIP Lenders with respect to any rights, priorities and obligations set forth thereunder.

38.     Section 552(b).  The DIP Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Subject to the entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the DIP Agent, Prepetition Agent, or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

39.     Discharge Waiver.   The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.   The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.   The Debtor shall not propose or support any plan or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations, Prepetition Secured Obligations (if any), and Adequate Protection Superpriority Claims.   The DIP Superpriority Claim and the DIP Liens, and the Adequate Protection Superpriority Claims and Adequate Protection Liens, shall not be affected in any manner by the entry of an order confirming a plan in the Chapter 11 Case or any Successor Case.

40.     Rights Preserved.   Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:   (a) DIP Agent's or the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtor (including the right to seek additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Parties); (b) the rights of any of the Prepetition Secured Parties to seek the payment by the Debtor of post-petition interest or fees pursuant to section

506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Agent or the Prepetition Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case or any Successor Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code or a Chapter 11 plan.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent and the DIP Lenders.

41.    <u>No Waiver by Failure to Seek Relief</u>.   The failure of the DIP Agent, the Prepetition Agent, the DIP Lenders or the Prepetition Secured Parties to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Credit Agreement, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent or the DIP Lenders.

42.    <u>Binding Effect of Interim Order</u>.   Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, all other creditors of the Debtor, any Statutory Committee or any other court appointed committee, appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Chapter 11 Case or any Successor Case.

43.    <u>No Modification of Interim Order</u>.   Until and unless the DIP Obligations and the Prepetition Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their

terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent and the Prepetition Agent (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Chapter 11 Case or any Successor Case, equal or superior to the DIP Superpriority Claim, other than the DIP Carve Out and the Prepetition Permitted Liens (as and to the extent such Prepetition Permitted Liens are senior to the Prepetition Secured Liens immediately prior to the Petition Date); (b) any order allowing use of Cash Collateral resulting from DIP Collateral or the Prepetition Collateral; and (c) any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens and the Adequate Protection Liens.  The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

44.     <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Credit Agreement or this Interim Order, the provisions of this Interim Order shall govern and control.

45.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in the Case; (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing of the Chapter 11 Case or any Successor Case.  The terms

and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Agent and Prepetition Secured Parties pursuant to this Interim Order and/or the DIP Credit Agreement, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Agent shall continue in the Chapter 11 Case and in any Successor Case, following dismissal of the Chapter 11 Case or any Successor Case, following termination of the DIP Credit Agreement and/or the repayment of the DIP Obligations.

46.   Final Hearing.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for October 1, 2014 at 10:00 a.m. (Mountain) before the Honorable William T. Thurman, United States Bankruptcy Judge, Courtroom 376, at the United States Bankruptcy Court for the District of Utah, 350 South Main Street, Salt Lake City, Utah (84101).

47.   Notice of Final Hearing:  Within three (3) days of the entry of this Interim Order, the Debtor shall serve, by United States mail, first-class postage prepaid, a copy of the DIP Motion and this Interim Order upon:  (a) the Office of the United States Trustee for the District of Utah; (b) the Internal Revenue Service; (c) the twenty (20) largest unsecured creditors of the Debtor at their last known addresses; (d) Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf), and Durham Jones & Pinegar, P.C. (Attn:  Kenneth L. Cannon II), attorneys for the DIP Agent and the Prepetition Agent; and (e) any party which has filed prior to such date a request for notices under Bankruptcy Rule 2002 with this Court; (f) counsel for any Statutory Committee.

48.   Objection Deadline: Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of

position, shall be filed with the clerk of the Bankruptcy Court, and personally served upon (a) Dorsey & Whitney LLP (Attn:  Annette W. Jarvis and Jeffrey M. Armington) attorneys for the Debtor, (b) the Office of the United States Trustee for the District of Utah; (c) Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf), and Durham Jones & Pinegar, P.C. (attn.:  Kenneth L. Cannon II), attorneys for the DIP Agent and the Prepetition Agent; and (d) counsel to any Statutory Committee so that such objections are filed with the Court and received by said parties on or before **4:00 p.m. (Mountain)** on **September 29, 2014** with respect to entry of the Final Order.

49.     <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

50.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.