Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 06060)
Michael F. Thomson (Utah State Bar No. 09707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | Judge William T. Thurman |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) A 90-DAY EXTENSION OF TIME FOR THE DEBTOR TO ASSUME OR REJECT LEASES OF NONRESIDENTIAL REAL PROPERTY; (II) PROCEDURES AND FORM OF NOTICE FOR THE DEBTOR'S REJECTION OF NONRESIDENTIAL REAL PROPERTY LEASES; AND (III) PROCEDURES FOR ABANDONMENT OF *DE MINIMUS* OR BURDENSOME PROPERTY REMAINING AT LEASED PREMISES**

Pursuant to sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C.

§§ 101 *et seq.* (the "Bankruptcy Code"), rules 6004, 6006 and 6007 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of this Court, Naartjie

Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above-captioned

bankruptcy case, by and through its proposed counsel, submits this motion (the "Motion") for entry of an Order authorizing: (1) a 90-day extension of time for the Debtor to assume, assume and assign, or reject its leases of nonresidential real property in which the Debtor is a lessee (individually, a "Lease" and collectively the "Leases"); (2) the procedures and form of notice for the Debtor's rejection of Leases; and (3) the procedures for abandonment of *de minimus* or burdensome property remaining at leased premises after rejection of a Lease.  In support of the Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 365 and 554, as well as Bankruptcy Rules 6004, 6006 and 6007.

## GENERAL BACKGROUND

### *General Case Background*

3.      On September 12, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").  The Debtor continues to operate its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

4.      An official committee of unsecured creditors was appointed in this case on September 22, 2014.

2

5.     Pursuant to Bankruptcy Code section 365(d)(4), all of the Debtor's unexpired Leases are set to be automatically rejected as of January 10, 2015 (the "Current Lease Rejection Deadline").

### *The Debtor's History*

6.     Founded in Cape Town, South Africa in 1989, Naartjie is a children's clothing brand that embraces bright, colorful, kid-friendly clothes.  Naartjie designs, manufactures and sells children's clothing, accessories and footwear for ages newborn through 10 years old.

7.     Naartjie opened its first store in the United States in March 2001, currently owns and operates 82 retail stores in the United States and South Africa, and has an e-commerce business serving customers in over 30 countries worldwide.  Today, Naartjie's corporate headquarters are located in Salt Lake City, Utah, with merchandising headquartered in Burlingame, California, and the Naartjie Design Studios and South African retail operations in Cape Town, South Africa.  Naartjie's net revenue for the fiscal year ending on February 1, 2014 was $54.4 million.

8.     Additional information about the Debtor's business, the events leading up to the Petition Date and the facts and circumstances surrounding the Debtor's chapter 11 case can be found in the *Declaration of Jeff Nerland in Support of Chapter 11 Petition and First Day Motions* [Docket No. 10] (the "First Day Declaration").  The First Day Declaration is incorporated by reference as if fully set forth herein.

### *Facts Relating to the Present Motion*

9.     After a history of declining sales and failed refinancing processes, the Debtor has concluded that the best way to maximize value for the benefit of all interested parties is to

conduct a prompt and orderly closing of all its retail stores in the United States (but not its stores in South Africa or its e-commerce business)—a total of 55 stores (the "Retail Stores")—through the retention of a professional liquidator (the "Liquidation").  The decision to liquidate its retail stores in the United States was reached after a lengthy process in which the Debtor considered and explored all reasonable alternatives.  This partial liquidation does not affect the Debtor's South African stores, which remain open, nor its e-commerce business, which remains intact.

10.     As part of the proposed Liquidation, the Debtor anticipates that it will close its Retail Stores at various times during the Liquidation as the inventory and assets from one Retail Store is either completely liquidated or moved to another Retail Store, as the case may be.

11.      The Debtor intends to conduct the proposed Liquidation as expeditiously as possible to preserve and maximize the value of the estate, including by rejecting individual Leases as Retail Stores, distributions centers and/or other operations are closed during the Liquidation, which process will avoid and minimize unnecessary administrative costs.

12.     In conjunction with the proposed Liquidation, on September 22, 2014, the Debtor filed its *Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales; and (III) Granting Related Relief* (the "Liquidation Motion").  The Liquidation Motion seeks, among other things, approval of that certain Agency Agreement, an executed copy of which was filed on September 24, 2014 [Docket No. 79] (the "Agency Agreement"), pursuant to which the proposed Agent (defined therein) will conduct the proposed Liquidation.   The Agency Agreement is the product of intense, but good-faith and arms'-length negotiation by all parties.

4

13.     Section 4.1 of the Agency Agreement states:

Agent shall be unconditionally responsible for all "Expenses", which expenses shall be paid by Agent in accordance with Section 4.2 below. . . . In addition, Agent agrees that it shall pre-fund an amount equal to fourteen (14) days per diem Occupancy Expenses on the second business day after the Sale Commencement Date, which amount Merchant and Lender agree shall be applied to and credited against any per diem Occupancy Expense obligation for the month of October.

14.     Section 6.1 of the Agency Agreement states that the "Sale Term" (as defined in the Agency Agreement) shall commence not later than October 3, 2014 and terminates on January 15, 2015 (the "Sale Termination Date"), though the Sale Termination Date may be extended by mutual consent, which may occur if additional time is needed to liquidate the Debtor's inventory and assets to maximize the value of the Debtor's estate.

15.     Section 6.2 of the form Agency Agreement States:

Agent shall provide Merchant and Lender with not less than seven (7) days' advance written notice of its intention to vacate any Store or Distribution Center . . . (the "Vacate Date"). . . .  Agent's obligations to pay all Expenses, including Occupancy Expenses, for each Store or Distribution Center subject to Vacate Notice shall continue until the earlier of the (a) applicable Vacate Date for such Store or Distribution Center, or (b) Sale Termination Date.

## ARGUMENT

I.     **A 90-DAY EXTENSION OF THE CURRENT LEASE REJECTION DEADLINE IS APPROPRIATE**

16.     Section 365(d)(4) of the Bankruptcy Code provides, in relevant part, that an unexpired lease of nonresidential real property shall be deemed rejected if the Debtor does not assume or reject the unexpired lease within 120 days after the date of the order for relief.  Such period may be extended, prior to expiration of the 120-day period, for 90 days on the motion of the Debtor "for cause."  As set forth above, the Current Lease Rejection Deadline is January 10, 2015.

17.     Courts typically consider several factors in determining whether "cause" exists to extend the period to assume or reject nonresidential real property leases.  These factors include: (a) the effects that an extension will have on the debtor's operations; (b) whether the debtor has had sufficient time to assess the value of the leases; (c) the debtor's performance of post-petition obligations under the leases; (d) the complexity of the case; and (e) any other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease.[1]

18.     Here, the requested extension of time to assume or reject the Leases is necessary to fully effectuate the proposed Liquidation in a manner that maximizes the value of the Debtor's estate.  As set forth above, the Sale Termination Date currently expires on January 15, 2015, which is after the Current Lease Rejection Deadline.  Additionally, if the Current Lease Rejection Deadline is not extended, then any further extension of the Sale Termination Date to provide additional time for liquidation of the Debtor's assets at its Retail Stores would not be possible.  And, because the Debtor is not able to determine at this point when each individual Retail Store, distribution center or other place of business will be closed—which timing is dependent on the success of the proposed Liquidation—a global 90-day extension of the Current Lease Rejection Deadline is appropriate and will conserve estate and Court resources.

19.     In sum, if the Debtor is forced to assume the Leases at this time, the estate may be unnecessarily burdened with administrative expenses.  On the other hand, premature rejection of the Leases may leave the Debtor without a Retail Store location to conduct the proposed

---

[1]     *See In re Gateway Apparel, Inc.*, 210 B.R. 567, 571 (Bankr. E.D. Mo. 1997); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979-80 (Bankr. E.D. Wash. 1997); *In re 611 Sixth Avenue Corp.*, 191 B.R. 295, 298 (Bankr. S.D.N.Y. 1996).

Liquidation, thereby crippling the Debtor's ability to effectively liquidate its assets to maximize

recovery for the benefit of creditors.

20.     Additionally, because the landlords of the leased premises will be paid for the

Debtor's post-petition use of the leased premises (as set forth below), the landlords of the leased

premises will not be prejudiced by the requested 90-day extension of the Current Lease Rejection

Deadline.

21.     Therefore, the 90-day extension of the Current Lease Rejection Deadline, through

and including April 11, 2015, is warranted.

## II.    THE DEBTOR'S PROPOSED LEASE REJECTION AND ABANDONMENT PROCEDURES ARE APPROPRIATE AND SHOULD BE AUTHORIZED

22.     The Debtor seeks entry of an Order approving streamlined procedures to reject the

Leases during the pendency of this Chapter 11 case and the proposed Liquidation, which

procedures are attached hereto as Exhibit A (the "Rejection Procedures").  The Debtor also seeks

entry of an Order authorizing the proposed rejection notice to be sent to parties-in-interest, which

form rejection notice is attached hereto as Exhibit B (the "Rejection Notice").

23.     The Rejection Procedures provide that, once the Debtor determines to reject a

Lease, the Debtor shall file a written notice with this Court, in a form substantially similar to the

Rejection Notice.  The Debtor will also serve a copy of the Rejection Notice by email, facsimile

and/or United States First Class Mail, postage prepaid, upon the applicable parties-in-interest.

24.     The Rejection Notice shall set forth information related to each Lease, including:

(a) the date as of which the Lease will be rejected (the "Rejection Date), which date shall be the

later of the date (i) the underlying property is vacated by the Debtor; or (ii) the Rejection Notice

is filed with the Court; and (b) whether the Debtor intends to abandon certain Related Property

(defined below) associated with the Lease on the Rejection Date.  By adopting the Rejection

Procedures, expenses associated with the various Leases, such as rent and utilities, will only

accrue on a per diem basis while the leased premises are being used to liquidate the Debtor's

inventory and assets, thereby decreasing large and unnecessary administrative expenses that do

not benefit the estate after the Debtor has vacated the leased premises.

25.     The Rejection Procedures also provide that any party-in-interest that asserts a

claim arising out of, or related to, the rejection of Leases and/or the removal or disposition of

Related Property, must file a proof of claim by: (a) the deadline established in this Chapter 11

Case for the filing of proofs of claim (the "Claims Bar Date"); or (b) 30 days after the Rejection

Date (the "Rejection Bar Date" and, together with the Claims Bar Date, the "Bar Date"), if such

date is later than the Claims Bar Date.  If a claim is not filed by the applicable Bar Date, the

claim shall be barred from receiving any distribution in the Chapter 11 Case.

26.     The Rejection Procedures shall also afford a counter party to a Lease and/or all

interested parties an opportunity to object to the Rejection Notice.  Moreover, should a mutual

resolution not be obtained by the Debtor with respect to any objection filed, the Rejection

Procedures provide for the scheduling of a hearing before this Court to consider the matter.

27.     Further, the Debtor has determined that certain *de minimis* personal property that

may consist of, but will not be limited to, inventory, furniture, fixtures, and equipment may

remain after the Debtor exits a particular Retail Store or leased premises (the "Related

Property").  The Debtor believes that the Related Property will be burdensome and have no value

for the estate.  Accordingly, the Debtor requests the authority to abandon the Related Property, in

its sole discretion and business judgment, and provide notice of the same pursuant to the

Rejection Notice.  The Debtor also requests that the objection period set forth in Bankruptcy Rule 6007(a) related to abandonment of estate property be shortened to ten calendar days to be consistent with the proposed Rejection Procedures.

### A.   The Court Should Authorize the Debtor's Proposed Rejection Procedures

28.    The Rejection Procedures, if approved, will create an efficient process for the Debtor to reject Leases during the proposed Liquidation and will reduce the accrual of administrative expenses, thereby preserving the Debtor's time and resources.

29.    As set forth above, the Debtor anticipates that it will reject its Leases on a continuing basis during the Liquidation to ensure that the estate does not incur unnecessary and burdensome administrative expenses.  Due to the number of Retail Stores and places of business currently in existence, the Debtor will incur substantial expenses for the preparation, filing, and service of formal and individual motions to reject the Leases if the Rejection Procedures and Rejection Notice are not approved.  Moreover, valuable Court time and resources would be used to consider each of these individual and formal pleadings.  Thus, the Rejection Procedures and Rejection Notice should be approved.

30.    A court may rely on its general equitable powers to grant the relief requested as codified in section 105(a) of the Bankruptcy Code.  Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of the [Bankruptcy Code]."[2]  Application of section 105(a) in this context is appropriate because the relief requested herein is consistent with the policy of the Bankruptcy Code to reduce waste and preserve the

---

[2]    11 U.S.C. § 105(a).

Debtor's (and Court's) resources.  Moreover, numerous bankruptcy courts in other Circuits have granted similar relief.[3]

31.      Accordingly, the Debtor respectfully requests that the Court approve the Rejection Procedures and the Rejection Notice in the form attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively.

**B.      The Court Should Authorize the Debtor's Proposed Procedures for Abandonment of the Related Property**

32.      Section 554(a) of the Bankruptcy Code provides that a debtor-in-possession may abandon, subject to Court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate."[4]  Before authorizing abandonment of estate property, the bankruptcy court must find either: (a) the property is burdensome to the estate; or (b) the property is both of inconsequential value and inconsequential benefit to the estate.[5]

33.      Here, the Related Property, if any, will primarily consist of obsolete materials, inventory, fixtures, or equipment that, in the Debtor's business judgment, will be (a) of no value

---

[3]    *See, e.g., In re B. Moss Clothing Co., Ltd.*, Case No. 08-33980 (NLW) (Bankr. D. N.J. Dec. 23, 2008) (order establishing procedures for lease rejections); *In re Ormet Corporation*, Case No. 13-10334 (MFW) (Bankr. D. Del. Nov. 21, 2013) (approving procedures for rejection of leases and executory contracts and abandonment of personal property related thereto); *In re LCI Holding Co., Inc. et al.*, Case No. 12-13319 (KG) (Bankr. D. Del. May 6, 2013) (same); *In re Old HB, Inc. (f/k/a Hostess brands, Inc.) et al.*, Case No. 12-22052 (RDD) Bankr. S.D.N.Y. Nov. 30, 2012 (approving lease rejection procedures in context of a wind down order); *In re Roomstore, Inc.*, Case No. 1-37790 (KLP) (Bankr. E.D. Va. Jan. 5, 2012); *In re Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re S & K Famous Brands, Inc.*, No. 09-30805 (KRH) (Bankr. E.D. Va. July 10, 2009).

[4]    *See* 11 U.S.C. § 554.

[5]    *See, e.g., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); reh'g denied, 475 U.S. 1091 (1986).

or benefit to the Debtor's estate; and/or (b) burdensome to the estate insofar as the costs of

removal and storage of such property will likely exceed the net proceeds realizable from its sale.[6]

34.     Moreover, numerous other courts around the country have entered orders granting

similar relief.[7]  Accordingly, the Debtor submits that the Court approve the proposed procedures

relating to abandonment of the Related Property.

### C.     The Rejection Date of a Lease Should Serve as the Effective Date for the Rejection of such Lease

35.     Bankruptcy courts may, in their discretion, authorize rejection of leases to be

effective *nunc pro tunc* to the petition date or to any other specified date.[8]  Similarly, bankruptcy

courts have also approved the rejection of nonresidential real property leases to be effective as of

the date of the filing of the rejection motion.[9]

---

[6]     *See Adelphi Hospital Corp. v. N.Y. State Department of Health (In re Adelphi Hospital Corp.)*, 579 F.2d 726 (2d Cir. 1978) (affirming order authorizing debtor to abandon records that would not benefit the estate); *In re US Airways Group, Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002) (noting that abandonment of property is governed by the sound business judgment standard).

[7]     *See, e.g., In re Dots, Inc., et al.*, Case No. 14-11016 (DHS) (Bankr. D.N.J. Jan. 20, 2014); *In re Ormet Corporation, et al.*, Cas No. 13-10334 (MFW) (Bankr. D. Del. Nov. 21, 2013) (approving procedures for rejection of leases and executory contracts and abandonment of personal property related thereto); *In re LCI Holding Co., Inc. et al.*, Case No. 12-13319 (KG) (Bankr. D. Del. May 6, 2013) (same); *In re Roomstore, Inc.*, Case No. 11-37790 (KLP) (bankr. E.D. Va. Jan 5, 2012); *In re Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (Bankr. E.D. Va. Nov. 10, 2008); *In re Rowe Furniture, Inc.*, Case No. 06-111-43 (Bankr. E.D. Va. Nov. 21, 2006); and *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (MI) (Bankr. S.D. Tex. June 21, 2013).

[8]     *See In re O'Neil Theaters, Inc.*, 257 B.R. 806, 807 (Bankr. E.D. La. 2000); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that rejection of lease retroactive to the petition date was warranted as debtor turned over the keys and vacated the premises pre-petition, and served the motion to reject leases as soon as possible).  *See also, Thinking Machines Corp. v. Mellon Financial Services Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (holding that, in the section 365 context, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *In re Adelphia Business Solutions, Inc.*, 322 B.R. 51 (Bankr. S.D.N.Y. 2005), *aff'd*, 482 F.3d 682 (2d Cir. 2007) (permitting retroactive rejection of a non-residential real property lease); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion or when the premises were surrendered).

[9]     *See, e.g., In re Great Atlantic & Pacific Tea Co.*, No. 10-24549 (Bankr. S.D.N.Y. Dec. 15, 2010) (authorizing rejection of leases for facilities closed pre-petition effective as of the Petition Date); *In re Jamesway Corp.*, 179

36.    In this case, allowing the Debtor's rejection of a Lease to be effective as of the Rejection Date will save substantial administrative costs and expenses to the estate because rent, utilities and other expenses associated with a Lease will only accrue on a per diem basis while the Debtor is occupying the premises during the proposed Liquidation (i.e., only during the period that the Lease is providing value to the estate).

37.    This per diem approach is consistent with the decision in *El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*,[10] whereby the Bankruptcy Appellate Panel for the Tenth Circuit adopted the "proration rule," as opposed to the "performance rule" relating to lease payments, albeit in a case decided under 11 U.S.C. § 365(d)(3).

38.    Moreover, upon receiving notice of this Motion, and subsequently a Rejection Notice, counterparties will have the opportunity to object and be heard concerning the Debtor's rejection of the Lease.

39.    Accordingly, it is fair and equitable for the Court to order that the Leases are deemed rejected as of the Rejection Date, and that administrative expenses associated with the Lease only accrue through the Rejection Date.

---

B.R. 33, 36-37 (S.D.N.Y. 1995) (stating that section 365 of the Bankruptcy Code does not include "restrictions as to the manner in which the court can approve rejection"); *In re The Reader's Digest Ass'n, Inc.*, No. 09-23529 (Bankr. S.D.N.Y. Sept. 17, 2009) (approving retroactive rejection of eight leases); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude…that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33 (S.D.N.Y. 1995) (same); *See also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection, cert. denied sub nom. *Pac. Shores Dev., LLC v. Home Corp.*, 546 U.S. 814 (2005); *In re Thinking Machs., Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (D. Colo. 2003) (holding that "because section 365 does not, as a matter of law, prohibit selection of a retroactive date for rejection, the bankruptcy court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject.").

[10]    283 B.R. 60, 62, 68 (B.A.P. 10th Cir. 2002).

**D.      Waiver of the 14-Day Stay of Order Set forth in Bankruptcy Rule 6004 Should Be Waived**

40.      The hearings on the Liquidation Motion are set to be heard by this Court on October 1, 2014 at 10:00 a.m., and October 3, 2014 at 10:00 a.m., and if approved, the proposed Liquidation could commence as early as October 3, 2014.  The closing and vacating of Retail Stores and other leased premises pursuant to this Motion, the Rejection Procedures and the Rejection Notice are an integral part of the proposed Liquidation to reduce large and burdensome administrative costs that provide no value to the estate.  Accordingly, the Debtor respectfully requests that the 14-day stay of order set forth in Bankruptcy Rule 6004(h) be waived so that this Order may be deemed effective immediately, thereby permitting the Debtor to utilize the cost-saving measures herein as quickly as possible.

## RESERVATION OF RIGHTS

41.      The Debtor may have claims against the counterparties to the Leases.  The Debtor does not waive any such claims or related defenses by filing this Motion, serving a Rejection Notice, and/or rejecting any Lease.  Rather, the Debtor hereby expressly reserves all of its rights with respect thereto.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of an Order (1) approving a 90-day extension of time to assume, assume and assign, or reject its executory contracts and unexpired nonresidential leases, through and including April 11, 2015; (2) authorizing the procedures and form of notice for rejecting unexpired leases of non-residential real property; and (3) authorizing the procedures for abandonment of *de minimus* or burdensome property remaining at the leased premises.

13

DATED this 26th day of September, 2014.

**DORSEY & WHITNEY LLP**

*/s/* Michael F. Thomson
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Proposed Attorneys for Debtor Naartjie*
*Custom Kids, Inc.*

# EXHIBIT A

Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 06060)
Michael F. Thomson (Utah State Bar No. 09707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
          hunt.peggy@dorsey.com
          thomson.michael@dorsey.com
          armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | Judge William T. Thurman |

## PROCEDURES FOR (I) REJECTING UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY, (II) ABANDONMENT OF RELATED PROPERTY, AND (III) ESTABLISHING A CLAIMS BAR DATE FOR REJECTIONS OF LEASES

On September 12, 2014, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), filed a voluntary petition commencing a case under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Utah (the "Court").

On September 26, 2014, the Debtor filed a motion seeking an order, pursuant to sections 105(a), 365, and 554 of the Bankruptcy Code, and Bankruptcy Rules 6004, 6006 and

6007, authorizing, among other things: (i) procedures and form of notice for the Debtor's rejection of non-residential real property leases; and (ii) the procedures for abandonment of *de minimus* or burdensome property remaining at leased premises after rejection of a lease [Docket No. __]. On October __ 2014, the Court approved the Rejection Procedures (defined below) [Docket No. ___ ] (the "Procedures Order").

Pursuant to the Procedures Order, the following procedures (the "Rejection Procedures") were approved by the Court for the rejection of any of the Debtor's executory contracts and/or unexpired leases of nonresidential real property during the pendency of this Chapter 11 Case:

**I.**   The Debtor shall file a written notice (each, a "Rejection Notice") to reject any unexpired lease of non-residential real property or executory contract (individually, a "Lease" and collectively, the "Leases").

**II.**   The Debtor shall serve the Rejection Notice via electronic mail, facsimile, and/or United States First Class Mail, postage prepaid, upon the parties described in A.–C. below (collectively, the "Non-Parties"):

    **A.**   each counterparty to a Lease sought to be rejected in the Rejection Notice;

    **B.**   any other interested party to each Lease; and

    **C.**   (i) the Office of the United States Trustee for the District of Utah; (ii) the Official Committee of Unsecured Creditors; and (iii) any party requesting notice pursuant to Bankruptcy Rule 2002.

**III.**   In connection with its turnover of a Lease property, the Debtor shall provide the applicable landlord with keys to the underlying property, and building access or security codes, if any, on or before the Rejection Date (as defined below).[1]

**IV.**   The Rejection Notice shall set forth the following information to the best of the Debtor's knowledge, as applicable:

    **A.**   the name and address of each counterparty and/or other party-in-interest to each Lease;

---

[1] The Debtor's mailing of keys and/or building access or security codes, if any, on or before the Rejection Date by overnight mail shall satisfy its obligations hereunder

2

**B.**    the effective date of the rejection of each Lease (the "Rejection Date") shall be the date set forth on the Rejection Notice, which date shall be the later of (i) the date the underlying property is vacated by the Debtor; and (ii) the date the Rejection Notice is filed with the Court.  As such, administrative expenses associated with the various Leases, such as rent and utilities, will only accrue on a per diem basis until the Rejection Date;

**C.**    a description of each Lease, including the street address, mall name and/or center name of any real property that is the subject of such Lease; and

**D.**    that (i) any Related Property will be deemed abandoned if not removed by the Rejection Date; (ii) Related Property may include such property in which a third-party has an interest; and (iii) a party-in-interest may, in its sole discretion and without further notice, dispose of such Related Property without liability to the Debtor or third parties.

**V.**    An objection, if any, to the Rejection Notice (the "Objection") must be filed with the Court and served upon the Debtor and any other parties-in-interest within ten (10) days from date the Rejection Notice is filed with the Court (the "Objection Deadline").

**A.**    If an Objection is not timely filed and served by the Objection Deadline, the applicable Lease shall be deemed automatically rejected without further order of the Court as of the Rejection Date set forth on the Rejection Notice.

**B.**    If an Objection is timely filed and served in accordance with these Rejection Procedures by the Objection Deadline, the Debtor shall schedule a hearing on such Objection for the next regularly scheduled hearing date (the "Objection Hearing") that will permit the Debtor to provide at least fourteen (14) days' notice of the Objection Hearing to the party who filed the Objection, as well as any other parties-in-interest.

**C.**    If the Court upholds the Debtor's determination to reject a Lease, the Rejection Date for the Lease shall be (i) the Rejection Date set forth in the Rejection Notice; or (ii) the date otherwise determined by the Court.

**VI.**    If the Debtor has deposited property with a counterparty to a Lease as a security deposit or other arrangement, such counterparty may not set off or otherwise use such deposit without prior authority of the Court.

**VII.**    If a claim arises out of, or is related to the rejection of a Lease identified on the Rejection Notice and/or the removal or disposition of Related Property identified in the Rejection Notice, a proof of claim must be filed by: (i) the deadline established in this Chapter 11 Case for the filing of proofs of claim (the "Claims

3

Bar Date"); or (ii) thirty (30) days after the Rejection Date (the "<u>Rejection Bar Date</u>" and, together with the Claims Bar Date, the "<u>Bar Date</u>"), if such date is later than the Claims Bar Date.  If a claim is not filed by the applicable Bar Date, the claim shall be barred from receiving any distribution in this Chapter 11 Case.

**VIII.**    The rights of all parties, including those of the Debtor, to contest all claims arising out of, or related to, the rejection of Leases and/or the removal or disposition of Related Property are fully preserved.

# EXHIBIT B

Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 06060)
Michael F. Thomson (Utah State Bar No. 09707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | Judge William T. Thurman |

## NOTICE OF  (I) REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY, (II) ABANDONMENT OF PERSONAL PROPERTY, AND (III) CLAIMS BAR DATE

**PLEASE TAKE NOTICE** that on _____, 2014 the United States Bankruptcy Court for the District of Utah (the "Court") entered an order [Docket No. ___ ] (the "Procedures Order") in the above-referenced Chapter 11 Case of Naartjie Custom Kids, Inc. (the "Debtor") which, among other things, approved procedures (the "Rejection Procedures") for the Debtor's rejection of unexpired leases of nonresidential real property (individually, a "Lease" and collectively, the "Leases").

**PLEASE TAKE FURTHER NOTICE THAT** a copy of the Rejection Procedures are enclosed herewith for your review.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Procedures Order, the Debtor hereby provides notice of its intent to reject the below-referenced Leases pursuant to 11 U.S.C. §§ 365 and 554, effective as of the date noted below (the "Rejection Date"):

# DESIGNATED LEASES

| Address of Subject Property | Landlord Name/Address | Related Property[1] (if applicable) | Contact Name/Address for Related Property (if applicable) | Rejection Date |
|---|---|---|---|---|
| | | | | |

**PLEASE TAKE FURTHER NOTICE THAT** if the Debtor has deposited property with the counterparty of a Lease as a security deposit or other arrangement, such party may not set off or otherwise use such deposit without prior authority of the Court; provided however, that the Rejection Procedures shall not impair the right of a landlord or counterparty to seek appropriate relief from the Court.

**PLEASE TAKE FURTHER NOTICE THAT** if a claim against the Debtor's estate arises out of, or is related to, the rejection of a Lease identified herein or the removal or disposition of Related Property identified herein, a proof of claim must be filed with the Court by: (i) the deadline established in this Chapter 11 Case for the filing of proofs of claim (the "Claims Bar Date"); or (ii) thirty (30) days after the Rejection Date (the "Rejection Bar Date" and, together with the Claims Bar Date, the "Bar Date"), if such date is later than the Claims Bar Date. If a claim is not filed by the applicable Bar Date, the claim shall be barred from receiving any distribution in this Chapter 11 Case. The rights of all parties, including those of the Debtor, to contest all claims arising out of, or related to, the rejection of Leases and/or the removal or disposition of Related Property are fully preserved.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor is deemed to have abandoned the Related Property as of the Rejection Date. A party in interest may, in its sole discretion and without further notice, dispose of such Related Property without liability to the Debtor and third parties. To the extent applicable, the automatic stay is modified to allow such a disposition.

**PLEASE TAKE FURTHER NOTICE THAT** the right of any party in interest to assert a claim against the Debtor's estate for costs associated with the removal or disposition of Related Property is fully preserved; provided that any such claim must be filed on or before the Bar Date or such claim shall be barred from receiving any distribution in this Chapter 11 Case; provided further that the rights of all parties, including that of the Debtor to contest any such claim are fully preserved.

---

[1] Please be on notice that the Related Property being abandoned by the Debtor may include such property in which a third party has an interest.