Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Tel:    (801) 933-7360
Fax:    (801) 933-7373
Email: jarvis.annette@dorsey.com
           hunt.peggy@dorsey.com
           thomson.michael@dorsey.com
           armington.jeff@dorsey.com

*Proposed Attorneys for Naartjie Custom Kids, Inc.*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | : | Chapter 11 |
| | : | Hon. William T. Thurman |
| Debtor. | : | |

---

## ORDER PURSUANT TO SECTIONS 105(A), 363, 365 AND 554 OF THE BANKRUPTCY CODE (I) APPROVING THE DEBTOR'S ENTRY INTO AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTOR TO SELL CERTAIN MERCHANDISE THROUGH GOING OUT OF BUSINESS SALES, (III) AUTHORIZING THE DEBTOR AND THE AGENT TO ABANDON UNSOLD PROPERTY, (IV) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES <u>AND INTERESTS, AND (V) GRANTING RELATED RELIEF</u>

Naartjie Custom Kids, Inc., debtor and debtor in possession herein (the "Debtor"),having filed its "*Motion For Entry Of Orders (I) (A) Approving Auction Procedures, (B) Approving The Form And Manner Of Notice Of Sale, and (C) Scheduling an Auction and Sale Hearing; and (ii) (A) Approving The Sale Or Sale Of The Debtor's Assets, (B) Authorizing The Debtor To Abandon Unsold Property, and (C) Waiving Stay Provisions Pursuant To Bankruptcy Rules 6004(H) And 6006(D)*" [Docket No. 70] (the "Sale Motion"); and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over the matters raised by the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Sale Motion and the relief requested therein is a "core" proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Sale Motion having been given, and it appearing that no other notice need be given; and the Debtor and Great American Group, LLC (the "Agent") having agreed upon terms and conditions, as set forth in that certain Agency Agreement, dated as of October 2, 2014, substantially in the form attached hereto as Exhibit "A" (the "Agency Agreement"), for, inter alia, the Agent to act as the Debtor's exclusive agent to conduct "going out of business", "store closing", "sale on everything", "everything must go", or similarly themed sale or other disposition (as further described below, the "Sale") of all of Debtor's Merchandise[1] located at (or to be shipped to) the Debtor's Stores and Distribution Centers, each as identified in the Agency Agreement (collectively defined herein as the "Closing Locations"), with each such sale to be free and clear of any and all liens, claims and encumbrances of any kind or nature, and further subject to the terms and provisions of the Agency Agreement and this

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Sale Motion or the Agency Agreement, as applicable. In the event of a conflict between any of the terms and provisions of this Order, on the one hand, and any of the terms and provisions of the Agency Agreement, on the other hand, the terms and provisions of this Order shall control.

Order; and the transactions represented by the Agency Agreement having been determined to be the highest and best offer for the right to conduct the Sale; and a hearing having been held on October 1, 2014 (the "<u>Bidding Procedures Hearing</u>"), whereupon the Court entered its *Order (1)(A) Authorizing Entry Into Agency Agreement, (B) Auhtorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction (D) Scheduling Sale Hearing and Approving Notice Thereof and (II) Granting Related Relief* (the "<u>Bidding Procedures Order</u>") [Docket No. 107]; and the Debtor having conducted an auction on October 2, 2014 ("<u>Auction</u>") among Qualified Bidders (as defined in the Bidding Procedures Order); and an approval and sale hearing having been held on October 3, 2014 (the "<u>Approval Hearing</u>") to consider the relief requested in the Sale Motion and approval of the Agency Agreement and the transactions set forth therein (collectively, the "<u>Transactions</u>"); and appearances of all interested parties having been noted on the record of the Approval Hearing; and upon all of the proceedings had before the Court (including, but not limited to, the testimony and other evidence proffered or adduced at the Bidding Procedures Hearing, and the Approval Hearing); and the Court having found and determined that (i) the relief sought in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest, and (ii) that the legal and factual bases set forth in the Sale Motion establish good, sufficient and just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**[2]:

A.    **Jurisdiction:** This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134. Approval of the Debtor's entry

---

[2]    The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

into the Agency Agreement, and the transactions contemplated thereby is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.      **Venue:** Venue of this chapter 11 case in this District is proper pursuant to 28 U.S.C. § 1409(a).

C.      **Statutory Predicates:** The statutory predicates for the approval of the Agency Agreement and Transactions contemplated therein are Sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.      **Notice:** Proper, timely, adequate and sufficient notice of the Sale Motion and the Approval Hearing has been provided in accordance with Sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 6006, and in compliance with the Bidding Procedures Order. No other or further notice is required.

E.      **Opportunity to be Heard:** A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and the Transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Official Committee of Unsecured Creditors (the "Committee"); (ii) Salus Capital Partners, LLC, as Debtor's pre-petition and post-petition senior secured lender (the "Lender"); (iii) the United States Trustee for the District of Utah; (iv) the Offices of the Attorney General for each state where the Debtor operates a Closing Location; (v) the Internal Revenue Service; (vi) the Agent; (vii) all landlords for the Closing Locations; (viii) all parties identified by the Debtor as potentially interested purchasers; (ix) all parties who are known to possess or assert an interest in the assets that are the subject of the Agency Agreement (collectively, the "Assets"); (x) all parties who are known to possess or assert a secured claim against the Assets; (xi) the relevant

taxing authorities having jurisdiction over any of the Assets; (xii) all related government entities that have an interest in regulating the Sale ((i) through (xii) collectively, the "Notice Parties"). The notice provided constitutes good and sufficient notice of the Sale Motion and the Approval Hearing, and no other or further notice of the Sale Motion or the Approval Hearing or the entry of this Order need be given.

F.    **Objections Resolved, etc.:**  Objections, if any, to the Sale Motion have been withdrawn, resolved or adjourned and, to the extent not withdrawn, resolved or adjourned, are hereby overruled.

G.    **The Bidding Procedures**: As set forth in the Bidding Procedures Orders, and as demonstrated at the Bidding Procedures Hearing, the best interests of the Debtor will be served by this Court granting the relief requested in the Sale Motion, including the approval of the Auction Procedures and the Bid Protections.

H.    **Marketing Process:** As demonstrated by: (i) testimony and other evidence proffered or adduced at the Bidding Procedures Hearing and the Approval Hearing, and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Approval Hearing, the Debtor having thoroughly marketed the Assets and having conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or who the Debtor believed may have an interest in acquiring or liquidating the Assets, to submit competing bids. The Debtor and the Agent have respectively negotiated and undertaken its roles leading to the Sale and the Transactions and entry into the Agency Agreement in a diligent, non-collusive, fair and good faith manner.

I.    **Highest and Best Offer:** The Agency Agreement, substantially in the form attached hereto as Exhibit "A", including the form and total consideration to be realized by the

Debtor pursuant to the Agency Agreement, is (i) the highest and best offer received by the Debtor for the Assets, (ii) fair and reasonable, and (iii) in the best interests of the Debtor, its estate, its creditors and all other parties in interest. There is no legal or equitable reason to delay entry into the Agency Agreement and the Transactions contemplated therein.

J.      **Business Judgment:** The Debtor's decisions to (i) enter into the Agency Agreement and (ii) perform under and make payments required by the Agency Agreement are reasonable exercises of the Debtor's sound business judgment consistent with its fiduciary duties and are in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

K.      **Personally Identifiable Information:**   The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing personally identifiable information).

L.      **Time of the Essence:** Time is of the essence in effectuating the Agency Agreement and proceeding with the Transactions contemplated therein without interruption. Based on the record of the Bidding Procedures Hearing and the Approval Hearing, and for the reasons stated on the record at the Approval Hearing, the conduct of the Sale in accordance with the terms of the Agency Agreement and this Order must be commenced rapidly following entry of this Order to maximize the value that the Agent may realize from the Sale and concomitantly the value that the Debtor may realize from entering into the Agency Agreement. Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h) and 6006(d) and permit the immediate effectiveness of this Order.

M.      **Sale Free and Clear:** The Debtor is the sole and lawful owner of the Merchandise and the Assets. The Merchandise and the Assets constitute property of the Debtor's

6

estate and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of
the Bankruptcy Code. A sale of the Merchandise and the Assets other than one free and clear
(subject to the terms of the Agency Agreement, and this Order) of liens, claims, encumbrances,
defenses (including, without limitation, rights of setoff and recoupment) and interests, including,
without limitation, security interests of whatever kind or nature, mortgages, conditional Sale or
title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances,
assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery,
judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes
(including foreign, state, local and ad valorem taxes), licenses, covenants, restrictions,
indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution,
indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter
ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the
law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in
Section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-
petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled,
perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or
unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,
matured or unmatured, legal or equitable (collectively, "<u>Liens</u>") and without the protections of
this Order would hinder the Debtor's ability to obtain the consideration provided for in the
Agency Agreement, and thus, would impact materially and adversely the value that the Debtor's
estate would be able to obtain for the sale of such Merchandise and Assets. But for the
protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would
not have offered to pay the consideration contemplated in the Agency Agreement. In addition,

each entity with a Lien or other encumbrance upon the Merchandise and/or the Assets, (a) has consented to the Sale, the sale and disposition of the Assets in the manner contemplated by the Agency Agreement and this Order or is deemed to have consented to the Sale, the sale of the Merchandise and Assets, (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (c) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens who did not object, or who withdrew its objections, to the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sale and the Transactions free and clear of Liens are appropriate pursuant to Section 363(f) of the Bankruptcy Code and are in the best interests of the Debtor's estate, its creditors and other parties in interest.

N.    **Arms-Length Sale:** The Guaranteed Amount and other consideration to be paid by the Agent under the Agency Agreement were negotiated at arm's-length and constitute reasonably equivalent value and fair and adequate consideration for the right to serve as the Debtor's exclusive agent to conduct the Sale of the Merchandise and other Assets, respectively, under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtor or its creditors under any applicable laws.

8

O.      **Good Faith:** The Debtor, its members, management and board of directors and, the Agent, its members and its officers, directors, employees, agents and representatives actively participated in the bidding process and acted in good faith. The Agency Agreement was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in Section 363(m) of the Bankruptcy Code. The Agent shall be protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The Debtor was free to deal with any other party interested in buying or selling on behalf of the Debtor's estate some or all of the Merchandise and/or the Assets. Neither the Debtor nor the Agent have engaged in any conduct that would cause or permit the Sale or the Transactions, the Agency Agreement or any related action or the transactions contemplated thereby to be avoided under Section 363(n) of the Bankruptcy Code, or that would prevent the application of Section 363(m) of the Bankruptcy Code. The Agent has not violated Section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. The Agent's prospective performance and payment of amounts owing under the Agency Agreement are each in good faith and for valid business purposes and uses.

P.      **Insider Status:** The Agent is not an "insider" or "affiliate" of the Debtor as those terms are defined in Section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtor.

Q.      **Security Interests:** The liens provided for in the Agency Agreement and this Order to secure the obligations of the Debtor under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtor's estate. The absence of such protections would impact materially and adversely

9

the value available to the Debtor in the liquidation of Merchandise in partnership with a liquidation agent. But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtor the compensation provided for under the Agency Agreement. In addition, the secured lenders, which hold security interests in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in this Order.

R.     **Corporate Authority:** Subject to the entry of this Order, the Debtor (i) has full corporate or other power to execute, deliver and perform its obligations under the Agency Agreement and all other transactions contemplated thereby, and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) has all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) has taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby. No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtor to consummate such Transactions.

S.     **No Successor Liability:** No sale, transfer or other disposition of the Merchandise, the Assets or otherwise pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Liens asserted against the Debtor or the Debtor's interests in such Merchandise or Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtor or its estate.

**T.**      **No Sub Rosa Plan:** Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

**U.**      **Approval Order:** This Order shall constitute the Approval Order as contemplated under the Agency Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**A.**      **Sale Motion Granted; Objections Overruled**

1.      The relief requested in the Sale Motion is **GRANTED** as set forth herein.

2.      Any remaining objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

**B.**      **The Bidding Procedures and Bid Protections**

3.      The Bidding Procedures and Bid Protections are hereby ratified and approved on a final basis.

**C.**      **The Agency Agreement Is Approved and Authorized**

5.      Subject to the provisions of this Order, the Agency Agreement is approved pursuant to Sections 105 and 363 of the Bankruptcy Code. The Debtor is hereby authorized, empowered and directed to enter into and perform under the Agency Agreement and each of the transactions contemplated therein (including, without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement (following appropriate consultation with the Lender), which Agency Agreement and resolutions shall be binding on all parties (including, without limitation, the Debtor, the Committee, any successor

11

chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of the Court) is hereby approved in its entirety and is incorporated herein by reference. The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in its entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

6.      The Debtor is authorized, pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, to retain the Agent to conduct the Sale and to sell the Assets in the manner contemplated by the Agency Agreement.

7.      Each of the Transactions provided for under the Agency Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, but not limited to the laws of each state in which the Assets are located. The Transactions approved by this Order are not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

8.      All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

9.      Subject to the provisions of this Order, the Debtor and the Agent are hereby authorized, pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale and consummate the sale of the Assets in accordance with the Agency Agreement and the sale guidelines (the "Guidelines") attached hereto as Exhibit "B", which Guidelines are hereby approved in its entirety.

10.     Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor, the Agent and each of its respective officers, employees and agents are hereby authorized and directed to execute such documents and to take any and all such actions as may be necessary or desirable to carry out the Sale, consummate the sale of the Assets and effectuate or implement the Agency Agreement and each of the transactions and related actions contemplated or set forth therein. The Agent is specifically authorized to act on behalf of the Debtor in connection with the Sale and the sale of the Assets and no other consents or approvals are necessary or required for the Debtor to carry out the Sale, consummate the sale of the Assets, effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

11.     The Agent shall not assume, or in any way be liable or responsible for, any claim or liability against any of the Debtor, whether known or unknown, whether asserted or unasserted, whether accrued or unaccrued, whether contingent or not, whether at law or in equity or otherwise, whether existing on the Sale Commencement Date or arising thereafter and whether relating to or arising out of the Debtor's business, the Merchandise, the Assets, any excluded assets or otherwise (including, without limitation, (x) liabilities based on any successor liability theory and (y) liabilities relating to the pre-petition or post-petition operation of the Debtor's business, the Merchandise or the Assets (or the use of the Merchandise and/or the Assets). The Agent shall have no successor liability whatsoever with respect to any Liens or claims of any nature that may exist against the Debtor (or any predecessor or affiliate of any of the Debtor), including, without limitation, the Agent shall not be and shall not be deemed to be: (i) a successor in interest within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental product

line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtor, and except as may be provided in the Agency Agreement with regard to the payment of "expenses" of the Sale under Section 4.1 thereof, the Agent shall have no obligation to pay the Debtor's wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtor, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise; provided, that the foregoing shall in no way limit the indemnification obligations of the Agent under Section 13.2 of the Agency Agreement.

## D.    **Conduct of the Sale and the Transaction**

12.    Except as otherwise provided in the Agency Agreement, pursuant to Section 363(f) of the Bankruptcy Code the Agent shall be authorized to sell all of the Merchandise located or to be located at the Closing Locations and shall be entitled to sell the Assets, in each case free and clear of any and all Liens, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Lender (but only to the extent allowed in and pursuant to the Agency Agreement and this Order, as applicable) whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing Liens (including, but not limited to, the DIP Liens, the Prepetition Liens, and the Adequate Protection Liens) [3] encumbering all or any portion of the Merchandise, the Assets, or the Proceeds thereof attaching only to the Guaranteed Amount, and other amounts payable by Agent to the Debtor under the Agency Agreement, with the same validity, priority, force and effect as the same had with

---

[3] As such terms are defined in the Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (I) Approving Postpetition Financing, (Ii) Authorizing Use Of Cash Collateral, (Iii) Granting Liens And Providing Superpriority Administrative Expense Status, (Iv) Granting Adequate Protection, (V) Modifying Automatic Stay, And (Vi) Scheduling A Final Hearing entered by this Court on September 18, 2014, docket entry no. 66 (the "Interim DIP Financing Order").

respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or

setoffs that may exist.  For the sake of clarity, however, nothing in this paragraph is intended to

diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order,

that attach to the Proceeds (as defined in the Agency Agreement) of the Sale.

13.     If any person or entity that has filed financing statements, mortgages, construction

or mechanic's liens, *lis pendens* or other documents or agreement evidencing liens on or interests

in the Merchandise or the Assets shall not have delivered to the Debtor, in proper form for filing

and executed by the appropriate parties, termination statements, instruments of satisfaction, or

releases of any Liens that the person or entity, except the Lender (subject to Paragraph 35

below), has with respect to the Merchandise and the Assets, each such person or entity is hereby

directed to deliver all such statements, instruments, and releases and the Debtor and the Agent

are hereby authorized to execute and file such statements, instruments, releases and other

documents on behalf of the person or entity asserting the same. The Agent is authorized to file a

copy of this Order which, upon filing, shall be conclusive evidence of the release and termination

of such interest. Each and every federal, state and local governmental unit is hereby directed to

accept any and all documents and instruments necessary or appropriate to give effect to the Sale,

the sale of the Assets and the related transactions contemplated by the Agency Agreement.

14.     All entities that are presently in possession of some or all of the Merchandise, the

Assets or other property in which the Debtor holds an interest that are or may be subject to the

Agency Agreement hereby are directed to surrender possession of such Assets or other property

to the Agent.

15.     Unless otherwise ordered by the Court, all newspapers and other advertising

media in which the Sale may be advertised and all landlords are directed to accept this Order as

binding authority so as to authorize the Debtor and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency Agreement.

16.     During the Sale Term, Agent shall be granted a royalty-free license to use the Debtor's trade names, trademarks, logos, and customer, mailing and e-mail lists, websites and social media relating to and used in connection with the operation of the Closing Locations, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement; provided, however, the Agent shall not receive Personally Identifiable Information (as defined in Section 101(41A) of the Bankruptcy Code) from the Debtor.

17.     Pursuant to Section 554(a) of the Bankruptcy Code, the Debtor and the Agent, as applicable, are permitted to abandon property of the Debtor's estate in accordance with the terms and provisions of the Agency Agreement, without the Agent incurring liability to any person or entity that may claim an interest in such abandoned property; provided, however, that unless the Agent otherwise consents, the Debtor may only abandon property located in any Closing Location on or after the applicable Vacate Date. In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtor or other party in interest to object thereto.

18.     Before any sale, abandonment or other disposition of the Debtor's computers (including software) and/or cash registers and any other point of sale Owned FF&E located at the Closing Locations (collectively, "POS Equipment") which may contain customer lists,

identifiable personal and/or confidential information about the Debtor's employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtor (and not the Agent) shall take such steps as shall be necessary and/or appropriate to remove or cause to be removed the Confidential Information from the POS Equipment, and unless otherwise notified by Debtor in writing to the contrary, the Agent shall be entitled to assume and presume that the Debtor have satisfactorily completed such steps at or prior to the time of any such sale, abandonment or other disposition.

19.     Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtor to comply with environmental laws consistent with its rights and obligations as Debtor in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Further, nothing herein permits the Debtor or the Agent to conduct any Sale at a Closing Location beyond the stated expiration under the lease for such Closing Location or extends the term of the lease for such Closing Location. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in

this Order shall alter or affect the Debtor's and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

### E.   Disputes Between Government Units and the Debtor or the Agent

20.   To the extent that the conduct of the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation Sale, or bulk sale laws (each a "GOB Law", and together the "GOB Laws"), including certain fast pay laws and laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the Sale (collectively, the "Liquidation Laws"), the following provisions shall apply:

a. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtor and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to

conduct, advertise, post signs and banners, and otherwise promote the Sale as a "going out of business", "store closing", "sale on everything", "total liquidation", "everything must go", or similarly themed sale (including, without limitation, by means of media advertising, interior and exterior banners, A-frames, and similar signage and the use of sign walkers and street signage) without further consent of any person (other than the Debtor as expressly provided for in the Agency Agreement), in accordance with the terms and conditions of the Agency Agreement, the Guidelines and this Order and without further compliance with the GOB Laws and the Liquidation Laws, except those designed to protect public health and safety.

b.   Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to the provisions of this Order, are authorized to conduct the Sale in accordance with the terms of this Order and the Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

c.   Within five (5) business days of entry of this Order, the Debtor shall serve copies of this Order, the Agency Agreement and the Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, and (iii) the division of consumer protection for each state where the Sale will be held.

d.   To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the

Reserved Dispute. Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtor and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter. If the Debtor, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

  e. In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtor, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtor's or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtor's or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court. The Court grants authority for the Debtor and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency Agreement, and/or the Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

f.  If, at any time, a dispute arises between the Debtor and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

21.  Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner advertising and the Debtor and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

22.  Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtor and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" or similar provisions. The Agent and landlords of the Closing Locations are authorized to enter into separate agreements and/or side letters ("Side Letters") between themselves modifying the Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords; provided that nothing in such Side Letters affects the provisions of

Paragraphs 20-21; and provided, further, that nothing in any Side Letter shall impose any obligation or liability upon the Debtor or its estate that is not in accordance with the terms of the Agency Agreement or this Order without the express written agreement of the Debtor. In the event of any conflict between the Guidelines and any Side Letter, the terms of such Side Letter shall control. In the event of a dispute regarding the Guidelines or any Side Letter, counsel for each of the Debtor, the applicable landlord, and the Agent shall meet and confer to resolve the dispute. In the event that the parties are unable to resolve the dispute, any party seeking relief may request a prompt hearing before the Court to resolve such dispute.

23. Except as expressly provided for herein or in the Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 20-21 shall apply), no person or entity, including but not limited to any utility company, internet service provider, landlord, licensor, creditor or other interested party or any person acting for or on behalf of the foregoing, shall take any action to directly or indirectly prevent, interfere with, impede or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor, the Agent, or the landlords at the Closing Locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other liquidation sales at the Closing Stores and/or seek to recover damages for

breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

24.    The Agent shall have the right to use the Closing Locations and all related services, furniture, fixtures, equipment and other assets of the Debtor for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the Guidelines, the Agency Agreement and this Order.

25.    The Agent shall be permitted to include in the Sale Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement. Any transactions relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from Agent to Debtor.   Debtor acknowledges that the Additional Agent Merchandise shall be consigned to Debtor as a true consignment under Article 9 of the Uniform Commercial Code in effect in the State of Utah (the "UCC").  Agent is hereby granted a first priority security interest (subject to the subordination provisions set forth below in Paragraph 35 of this Order) in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise Proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtor as the consignee therefor, and Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise Proceeds). Subject to the terms of the Agency Agreement, and solely to the extent applicable, the proceeds of the sales of Additional Agent

Merchandise sold at a particular Closing Location shall be taken into account when calculating any percentage rent due pursuant to the terms of the applicable lease agreement.

26.    Nothing in this Order shall (a) alter or affect the Debtor's obligations to comply with Section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtor to file an appropriate motion or otherwise seek appropriate relief if the Debtor fails to comply with Section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sale in accordance with the Guidelines shall not be a violation of Section 365(d)(3) of the Bankruptcy Code.

27.    The Agent shall accept as payment gift certificates, gift cards and store merchandise credits validly issued by the Debtor prior to the Sale Commencement Date in any transaction conducted in connection with the Sale pursuant to the provisions of Section 8.6 of the Agency Agreement; provided, however, the Agent shall not be required to accept any mall and/or landlord-issued gift cards, gift certificates, merchandise credits or other similar items unless satisfactory arrangements (as determined in the sole and exclusive discretion of Agent) are made between and among the Agent and the issuer of such items for reimbursement to the Agent for all such amounts honored during the Sale Term; provided, further, however, that notwithstanding anything to the contrary in this Order, the Debtor shall not be obligated to reimburse the Agent for any amounts honored in connection with any gift cards, gift certificates, merchandise credits or other similar items that were issued by any party other than the Debtor without the express written agreement of the Debtor.  The Debtor shall reimburse Agent for the amounts honored as part of the weekly reconciliation provided for and subject to the limitations set forth in Sections 8.6 and 8.7(a) of the Agency Agreement and this paragraph.

28.    The Agent shall accept returns of merchandise sold by the Debtor prior to the Sale
Commencement Date for the first ten (10) days of the Sale pursuant to the provisions of Section
8.5 of the Agency Agreement, provided that such return is otherwise in compliance with the
Debtor's return policies in effect as of the date such item was purchased and the customer is not
repurchasing the same item so as to take advantage of the sale price being offered by the Agent.
The Debtor shall reimburse Agent for the amounts honored as part of the weekly reconciliation
provided for and subject to the limitations set forth in Sections 8.5 and 8.7(a) of the Agency
Agreement.

29.    To the extent applicable, all state and federal laws relating to implied warranties
for latent defects shall be complied with and are not superseded by the sale of said goods or the
use of the terms "as is" or "final sale." The Debtor and/or the Agent shall accept return of any
goods purchased during the Sale that contain a defect which the lay consumer could not
reasonably determine was defective by visual inspection prior to purchase for a full refund,
provided that the consumer must return the merchandise within twenty-one (21) days of their
purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent"
defect. The Debtor shall promptly reimburse Agent in cash for any refunds Agent is required to
issue to customers in respect of any goods purchased during the Sale that contain such a latent
defect.

30.    Except as expressly provided for in the Agency Agreement, nothing in this Order
or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale, the sale
of the Assets or the transactions contemplated by the Agency Agreement shall be deemed to
constitute an assumption by the Agent of any of the Debtor's obligations relating to any of the
Debtor's employees. Moreover, the Agent shall not become liable under any collective

25

bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

31.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the collection, reporting and the payment of any and all sales taxes is the sole responsibility of the Debtor. The Debtor is directed to remit all taxes arising from the Sale to the applicable taxing authorities as and when due, provided that in the case of a bona fide dispute the Debtor is only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the taxing authority. For the avoidance of doubt, sales taxes collected and held in trust by the Debtor shall not be used to pay any creditor or any other party, other than the taxing authority for which the sales taxes are collected. The Agent shall collect, remit to the Debtor and account for sales taxes as and to the extent provided in the Agency Agreement. This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

32.    Subject to the terms set forth in the Agency Agreement, the Agent is authorized and empowered to transfer the Merchandise and Additional Agent Merchandise between and among the Closing Locations.

**F.    <u>Superpriority Claims and Liens Granted To Agent</u>**

34.    Any amounts owed by Debtor to the Agent under the Agency Agreement shall be granted the status of superpriority claims in this case pursuant to Section 364(c) of Bankruptcy Code senior to all other superpriority claims.

35.    Pursuant to Section 364(d) of the Bankruptcy Code, the Agent shall have, effective upon payment by the Agent of the Initial Guaranty Payment on the Payment Date and

delivery of the Letter of Credit, a valid, duly perfected first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 of the Agency Agreement; (v) in the event the Debtor elect the FF&E Guaranty Option, the proceeds realized from the sale or other disposition of Owned FF&E after payment of the FF&E Guaranty Amount; or alternatively, the FF&E Commission; (vi) all "proceeds" (within the meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of the Debtor to the Agent under the Agency Agreement. For the avoidance of doubt, the Agent Collateral shall not include the Guaranteed Amount or any other amount payable by the Agent to the Debtor under the Agency Agreement or any proceeds thereof. Upon entry of this Order, payment of the Initial Guaranty Payment and delivery of the Letter of Credit, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation. Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Lender and the Debtor), the Agent's security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests; provided, however, that (x) until the Debtor receives payment in full of the Guaranteed Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and all other amounts due to the Debtor under the Agency Agreement, the security interest granted to the

Agent hereunder shall be junior and subordinate in all respects to the security interests of the Lender in the Agent Collateral but solely to the extent and amount of the unpaid portion of the Guaranteed Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and other amounts due to the Debtor under the Agency Agreement and (y) upon payment in full of the Guaranteed Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and all other amounts due to the Debtor under the Agency Agreement, any security interest or lien of the Lender in the Agent Collateral shall be junior and subordinate in all respects to the security interest and liens of the Agent in the Agent Collateral. The Debtor shall cooperate with the Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by the Agent in connection with the security interests and liens granted under the Agency Agreement. In the event of a Default by any Debtor under the Agency Agreement, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code as the same may be in effect from time to time in the State of Utah.

36.     During the Sale Term applicable to any Closing Location and for purposes of conducting the Sale at such Closing Location, Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, such Closing Location and the assets currently located at such Closing Location, in each case subject to the extent of the Debtor's rights and entitlement to use the same, and the services provided at such Closing Location to the extent the Debtor is entitled to such services, and, subject to the terms of the

Agency Agreement, the Debtor shall not assume and assign, reject or otherwise terminate any

real property lease or vacate any Closing Location until the applicable Sale Termination Date or

Vacate Date.

37. The Debtor is authorized and directed to execute such documents and take all

other actions as may be necessary to release any Liens of any kind against the Assets as such

Liens may have been recorded or may otherwise exist, in accordance with the terms of this

Order. Any liens, Liens, interests, liabilities, obligations, claims, charges and interests of any

kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp,

transfer tax or similar tax arising from the transfer of the Assets to the Agent shall be filed

against the Debtor's estate and shall not be asserted against the Agent. Pursuant to Sections

105(a) and 363 of the Bankruptcy Code, all persons and Governmental Units (as defined in

Sections 101(27) and 101(41) of the Bankruptcy Code) are hereby enjoined from taking any

action against the Agent to recover any claim which such person or Governmental Unit has or

may assert against the Debtor (as such claims exist immediately prior to the closing). The Agent

has not assumed or otherwise become obligated for any of the Debtor's liabilities. Consequently,

all holders of liabilities retained by the Debtor are hereby enjoined from asserting or prosecuting

any claim, encumbrance or cause of action against the Agent to recover on account of any such

liabilities. Pursuant to Sections 105 and 363 of the Bankruptcy Code, all persons and entities,

including, but not limited to, all parties holding any claim, encumbrance or cause of action

against the Debtor, its estate or its assets, the Debtor's employees, former employees and

members, administrative agencies, governmental departments, secretaries of state, federal, state

and local officials, including such officials maintaining any authority relating to environmental,

labor and health and safety laws, and its respective successors or assigns, are hereby permanently

and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind or the employment of any process or any act to collect, offset or recover such claim, encumbrance or cause of action against the Agent, or that seeks to impose liability upon the  Agent or any affiliate, successor or assign thereof, or against the Assets under the laws of the United States, any state, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee liability or any liability for pre- or post-petition claim, encumbrance or cause of action against the Debtor by reason of the disposition of the Assets in the manner contemplated by the Agency Agreement and this Order, including, without limitation, pre- and post-petition claims, Liens or causes of action of any federal, state or local governmental entities, of any current or former employee for claims arising out of employment and termination of employment, including, without limitation, claims for wages, bonuses, commissions, accrued vacation, severance, continuation of coverage under COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without limitation, obligations in respect of retiree medical coverage or benefits.

38.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agency Agreement and this Order.

39.     The provisions of this Order shall be self-executing, and neither the Debtor nor the Agent shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtor and the Agent and each of its respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any

and all documents and instruments that either the Debtor or the Agent deem necessary or appropriate to implement and effectuate the terms of the Agency Agreement and this Order.

40.     The Agency Agreement and any related agreement may be waived, modified, amended, or supplemented by agreement of the Debtor, the Agent, and the Lender, without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates this Order and the Agency Agreement and any related agreement; provided further that the Sale Termination Date shall not be later than January 15, 2015, unless either: (a) extended by further order of the Court, or (b) the Debtor, Agent, the Lender, and the applicable landlord agree in writing to extend the Sale Termination Date at such landlord's location.

41.     The Agent shall not be obligated to (i) continue or maintain in effect, or assume any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreement to which any Debtor is a party or has any responsibility therefor, including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee pension plan or the termination of any such plan.

**G.     Order Binding**

42.     This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of its office, or contract,

31

to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

43.     This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtor's creditors (whether known or unknown), the Debtor, the Agent and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Merchandise and the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of reorganization/liquidation for the Debtor or converting the Debtor's case from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding case and shall be binding upon the Debtor, the Agent and their respective successors and permitted assigns, including any trustees or other fiduciaries hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in the Debtor's case shall be and hereby is authorized  and directed to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and any such trustee shall be and hereby are authorized and directed to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

**H.**     **Good Faith.**

44.     Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and Agent shall be protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The reversal or modification on appeal of the authorization provided herein to enter into the Agency Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal. The Agent is entitled to all of the benefits and protections afforded by Section 363(m) of the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

**I.     <u>Other Provisions</u>**

45.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sale, the Transactions and the Agency Agreement.

46.     Nothing contained in any plan confirmed in the Debtor's chapter 11 case or any order of this Court confirming such plan or in any other order in these chapter 11 case (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or this Order.

47.     Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 20-21 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any

way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtor, the landlords and/or the Agent for protection from interference with the Sale and the Transactions, (iii) any other disputes related to the Sale and the Transactions, and (iv) to protect the Debtor and/or the Agent against any assertions of Liens. No such parties or person shall take any action against the Debtor, the Agent, landlords of the Closing Locations, the Sale or the Transactions until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

48.     Notwithstanding Bankruptcy Rules 4001, 6004 and 6006, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Agent are free to perform under the Agency Agreement at any time, subject to the respective terms thereof.

49.     Any and all bulk sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Sale Motion and the jurisdiction of the Court.

50.     This Order constitutes an authorization of the conduct of the Debtor and the Agent in connection herewith.

51.     All utilities, landlords, creditors and all persons acting for or on its behalf shall not interfere with or otherwise impede the conduct of the Sale and the Transactions or institute any action in any court (other than in the Bankruptcy Court) or before any administrative body

which in any way directly or indirectly interferes with or obstructs or impedes the conduct of the Sale and the Transactions.

52.     The Debtor shall retain sufficient funds, or make other arrangements satisfactory to the Debtor and the Agent, to enable the Debtor to fully satisfy and perform its obligations under the Agency Agreement and this Order and the Debtor shall be authorized and directed to use those funds to fully satisfy and perform its obligations under the Agency Agreement and this Order.

53.     Immediately upon the Payment Date and on each other date on which payment is to be made by the Agent to or for the benefit of the Debtor, the Debtor is authorized and directed to repay, or cause to be repaid, the Lender's pre- and post-petition senior secured claims, indefeasibly and in cash, by making one or more payments to the Lender.

54.     Except as modified hereby, the Interim DIP Financing Order shall remain in full force and effect.

55.     Notwithstanding any provisions to the contrary in the any order of the Bankruptcy Court authorizing the Debtor's use of cash collateral order, amounts paid to the Debtor by the Agent in respect of Central Service Expenses may be used by Debtor solely to pay for Central Services.

56.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement, the Guidelines, or the Interim DIP Financing Order, this Order shall govern and control.

---

(END OF DOCUMENT)

# **<u>EXHIBIT A</u>**

# AGENCY AGREEMENT

This Agency Agreement (the "Agreement") is entered into as of this 3rd day of October, 2014, by and between **NAARTJIE CUSTOM KIDS, INC.**, a Utah corporation and debtor and debtor in possession ("Merchant"), and **GREAT AMERICAN GROUP, LLC**, a California limited liability company (the "Agent"; and collectively with Merchant, the "Parties").

## RECITALS

WHEREAS, on September 12, 2014 , Merchant filed a voluntary petition for relief under chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Utah, Central Division (the "Bankruptcy Court"). Merchant's chapter 11 case is currently pending before the Bankruptcy Court under case number 14-29666 (the "Bankruptcy Case").

WHEREAS, Merchant operates certain retail stores in the United States and desires that Agent act as Merchant's exclusive agent for the limited purpose of (a) selling all of the Merchandise (as hereinafter defined) located in Merchant's retail store location(s) identified on Exhibit A-1 attached hereto (each individually a "Store", and collectively the "Stores") and in Merchant's Distribution Centers identified on Exhibit A-2 attached hereto (each individually a "Distribution Center", and collectively the "Distribution Centers"), and (b) selling all of the Owned FF&E (as hereinafter defined) located in the Stores, Merchant's Distribution Center and Merchant's corporate offices (subject to Section 15 below), in each case by means of a "going out of business", "store closing", "sale on everything", "everything must go", or similarly themed sale (as further described below, the "Sale").

WHEREAS, on September 22, 2014, Merchant filed the *Debtor's Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof, (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief* (the "Sale Motion"), pursuant to which it sought authorization of bidding procedures (including an auction (the "Auction") in connection with the Sale;

WHEREAS, on October 1 2014, the Bankruptcy Court entered an order approving such bid procedures and scheduling the Auction for October 2, 2014; and

WHEREAS, at the Auction, Agent was named the successful bidder;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent and Merchant hereby agree as follows:

Section 1.     Definitions and Exhibits

1.1     Defined Terms.  The terms set forth below are defined in the Sections referenced of this Agreement:

| Defined Term | Section Reference |
|---|---|
| Additional Agent Merchandise | Section 8.9(a) |
| Additional Taxes and Penalties | Section 8.3(a) |
| Adjustment Amount | Section 3.3(a) |
| Agency Accounts | Section 3.3(c)(ii) |
| Agency Documents | Section 11.1(b) |
| Agent | Preamble |
| Agent's FF&E Commission | Section 15(a) |
| Agent Claim | Section 12.5 |
| Agent Collateral | Section 16.11(a) |
| Agent Indemnified Parties | Section 8.3(a) |
| Agreement | Preamble |
| Applicable General Laws | Section 2(c) |
| Approval Order | Section 2(b) |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Benefits Cap | Section 4.1(c) |
| Bid Protections | Section 16.12(b) |
| Bidding Procedures Order | Section 10.1(b) |
| Break-Up Fee | Section 16.12(b) |
| Central Services | Section 4.1 |
| Committee | Section 3.1(a) |
| Competing Bid | Section 16.12(a) |
| Cost Factor | Section 3.1(e) |
| Cost Factor Threshold | Section 3.1(e) |
| Cost File | Section 5.3(a) |
| Cost Value | Section 5.3(a) |
| Defective Merchandise | Section 5.2(b) |
| Designated Deposit Accounts | Section 3.3(c)(i) |
| Distribution Center | Recitals |
| Distribution Center Merchandise | Section 5.2(b) |
| Distribution Center Services | Section 4.1 |
| Estimated Guaranteed Amount | Section 3.3(a) |
| Events of Default | Section 14 |
| Excluded Benefits | Section 4.1 |
| Excluded Defective Merchandise | Section 5.2(b) |
| Excluded Pricing Adjustments | Section 3.1(c)(ii) |
| Existing Vendors | Section 8.9(a) |
| Expenses | Section 4.1 |
| Expense Reimbursement | Section 16.12(b) |
| E-Commerce Platform | Section 8.10 |
| Final Inventory Report | Section 3.3(a) |
| Final Reconciliation | Section 8.7(b)(i) |
| Final Reconciliation Settlement Date | Section 8.7(b)(i) |

| | |
|---|---|
| Force Majeure Event | Section 8.8 |
| FF&E Commission Option | Section 15(a) |
| FF&E Disposition Budget | Section 15(a) |
| FF&E Disposition Expenses | Section 15(a) |
| FF&E Guaranty Amount | Section 15(a) |
| FF&E Guaranty Option | Section 15(a) |
| FF&E Sale Election Deadline | Section 15(a) |
| FF&E Sale Option | Section 15(a) |
| Gross Rings | Section 5.3(b)(vi) |
| Gross Rings Period | Section 5.3(b)(vi) |
| Guaranteed Amount | Section 3.1(a) |
| Guaranty Percentage | Section 3.1(a) |
| Hazardous Materials | Section 15(d) |
| Initial Guaranty Payment | Section 3.3(a) |
| Inventory Date | Section 5.1(a) |
| Inventory Reconciliation Date | Section 3.3(a) |
| Inventory Taking | Section 5.1(a) |
| Inventory Taking Instructions | Section 5.1(a) |
| Inventory Taking Service | Section 5.1(a) |
| Lease Extension Motion | Section 10.1(d) |
| Lender | Section 3.3(f) |
| Letter of Credit | Section 3.1(h) |
| Liquidation Sale Laws | Section 2(c) |
| Lowest Location Price | Section 3.1(e)(i) |
| Membership Program Discount | Section 8.6(b) |
| Merchandise | Section 5.2(a) |
| Merchandise Ceiling | Section 3.1(d) |
| Merchandise Threshold | Section 3.1(d) |
| Merchant | Preamble |
| Merchant's Designated Account | Section 3.3(a) |
| Merchant Consignment Goods | Section 5.4 |
| Merchant Indemnified Parties | Section 8.3(a) |
| Net FF&E Proceeds | Section 15(a) |
| Non-CAM Trash Removal Charges | Section 4.1 |
| Occupancy Expenses | Section 4.1 |
| Owned FF&E | Section 15(a) |
| Owned FF&E Guaranty Amount | Section 15(a) |
| Parties | Preamble |
| Payment Date | Section 3.3(a) |
| POS | Section 3.1(e)(i) |
| Per Store Lowest Price | Section 5.3(a) |
| Prevailing Discount Adjustment | Section 5.3(b)(iii) |
| Proceeds | Section 3.3(b) |
| Remaining Merchandise | Section 3.2 |
| Retail Price | Section 3.1(e)(i) |
| Retained Employee | Section 9.1 |

| | |
|---|---|
| Retention Bonus | Section 9.4 |
| Returned Merchandise | Section 8.5 |
| Sale | Recitals |
| Sale Commencement Date | Section 6.1 |
| Sale Guidelines | Section 8.1 |
| Sale Term | Section 6.1 |
| Sale Termination Date | Section 6.1 |
| Sales Taxes | Section 8.3(a) |
| Sales Tax Account | Section 8.3(a) |
| Signage Costs | Section 16.12(b) |
| Store(s) | Recitals |
| Third Party | Section 4.1 |
| Third Party Vendors | Section 8.9(a) |
| UCC | Section 8.9(c) |
| Vacate Date | Section 6.2 |
| WARN Act | Section 9.1 |

1.2     Exhibits.  The Exhibits and Schedules annexed to this Agreement, as listed below, are an integral part of this Agreement:

| Exhibit | Section Reference | Description |
|---|---|---|
| Exhibit A-1 | Recitals | Stores |
| Exhibit A-2 | Recitals | Distribution Center |
| Exhibit 3.1(d) | Section 3.1(d) | Merchandise Ceiling/Threshold Adjustment |
| Exhibit 3.1(e) | Section 3.1(e) | Cost Factor Adjustment |
| Exhibit 3.3(a) | Section 3.3(a) | Merchant's Designated Account |
| Exhibit 3.3(h) | Section 3.3(h) | Form of Letter of Credit |
| Exhibit 4.1(a) | Section 4.1(a) | Store Occupancy Expense Schedule |
| Exhibit 5.1(a) | Section 5.1 | Inventory Taking Instructions |
| Exhibit 5.2(b)(1) | Section 5.1(b) | Distribution Center Merchandise |
| Exhibit 8.1 | Section 8.1 | Sale Guidelines |
| Exhibit 10.1(b) | Section 10.1(b) | Form of Bidding Procedures Order |
| Exhibit 10.1(c) | Section 10.1(c) | Form of Approval Order |
| Exhibit 11.1(d) | Section 11.1(c) | Pre-Existing Liens |
| Exhibit 11.1 (l) | Section 11.1(l) | Pending Matters |
| Exhibit 11.1 (o) | Section 11.1(o) | Extraordinary POS Activity |

Section 2.     Appointment of Agent/Liquidation Sale Laws/Approval Order

(a)     Appointment of Agent.  Effective on the date hereof and subject to the entry of the Approval Order, Merchant hereby irrevocably appoints Agent, and Agent hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting the Sale and disposing of Merchant's Owned FF&E at the Stores and Distribution Center, in accordance with the terms and conditions of this Agreement.

(b)      Approval Order. Immediately after the execution of this Agreement, Merchant shall notify the Bankruptcy Court of the designation of Agent as the successful bidder at the Auction and seek entry of an order, inter alia, approving this Agreement and authorizing Merchant and Agent to conduct the Sale in accordance with the terms hereof (the "Approval Order"). The Approval Order shall be in substantially the form annexed hereto as Exhibit 10.1(c), and otherwise be reasonably satisfactory to the Merchant and Agent, and provide, inter alia, that:

(i)      this Agreement (and each of the transactions contemplated hereby) is approved in its entirety;

(ii)      Merchant and Agent shall be authorized to continue to take any and all actions as may be necessary or desirable to implement this Agreement and each of the transactions contemplated hereby;

(iii)      Agent shall be entitled to sell all Merchandise, Additional Agent Merchandise, Merchant Consignment Goods and Owned FF&E hereunder free and clear of all liens, claims or encumbrances thereon, with any presently existing liens encumbering all or any portion of the Merchandise, Additional Agent Merchandise, Merchant Consignment Goods, Owned FF&E, the Proceeds or any proceeds of the foregoing attaching only to the Guaranteed Amount and other amounts to be received by Merchant under this Agreement;

(iv)      Agent shall have the right to use the Stores and/or the Distribution Center and all related Store and/or Distribution Center services, furniture, fixtures, equipment and other assets of Merchant as designated hereunder for the purpose of conducting the Sale, free of any interference from any entity or person subject to compliance with the Sale Guidelines and Approval Order with respect to the Assets;

(v)      Agent, as agent for Merchant, is authorized to conduct, advertise, post signs and otherwise promote the Sale as a "going out of business", "store closing," "sale on everything," "everything must go," or similar themed sale, in accordance with the Sale Guidelines (as the same may be modified and approved by the Bankruptcy Court) and without compliance with the Liquidation Sale Laws, subject to compliance with the Sale Guidelines and Approval Order;

(vi)      Agent shall be granted a limited royalty-free license and right to use until the Sale Termination Date the trademarks, trade names, logos, customer lists, website, URL, mailing lists and email lists relating to and used in connection with the operation of the Stores and the E-Commerce Platform, solely for the purpose of advertising the Sale in accordance with the terms of this Agreement;

(vii)      all newspapers and other advertising media in which the Sale is advertised shall be directed to accept the Approval Order as binding and to allow Merchant and Agent to consummate the transactions provided for in this Agreement, including, without

5

limitation, the conducting and advertising of the Sale in the manner contemplated by this Agreement;

(viii) all utilities, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct or advertising of the Sale, institute any action in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the conduct or advertising of the Sale;

(ix)  the Bankruptcy Court shall retain jurisdiction over the parties to enforce this Agreement;

(x)  Agent shall not be liable for any claims against the Merchant other than as expressly provided for in this Agreement;

(xi)  Agent shall be authorized to include Additional Agent Merchandise in the Sale;

(xii)  subject to Agent having satisfied its obligations hereunder, any amounts owed by Merchant to Agent under this Agreement shall be granted the status of superpriority claims in Merchant's Bankruptcy Case pursuant to section 364(c) of Bankruptcy Code senior to all other superpriority claims, including, without limitation, to the superpriority claims of the Lender; provided that until the Merchant receives payment in full of the Guaranteed Amount, , Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, any superpriority claim granted to Agent hereunder shall be junior and subordinate in all respects to the security interests and superpriority claims of Lender but solely to the extent of the amount of the unpaid portion of the Guaranteed Amount, , Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder;

(xiii) Agent shall be granted a valid, binding, enforceable and perfected security interest as provided for in Section 16.11 hereof without the necessity of filing financing statements to perfect the security interests;

(xiv) the Bankruptcy Court finds that time is of the essence in effectuating this Agreement and proceeding with the Sale at the Stores uninterrupted;

(xv) Merchant's decisions to (a) enter into this Agreement and (b) perform under and make payments required by this Agreement is a reasonable exercise of the Merchant's sound business judgment consistent with its fiduciary duties and is in the best interests of the Merchant, its estate, its creditors, and other parties in interest;

(xvi) this Agreement was negotiated in good faith and at arms' length between the Merchant and Agent and that Agent is entitled to the protection of Section 363(m) of the Bankruptcy Code;

(xvii)   Agent's performance under this Agreement will be, and payment of the Guaranteed Amount, under this Agreement will be made, in good faith and for valid business purposes and uses, as a consequence of which Agent is entitled to the protection and benefits of Sections 363(m) and 364(e) of the Bankruptcy Code;

(xviii) this Agreement is approved pursuant to Section 363 of the Bankruptcy Code; and

(xix) in the event any of the provisions of the Approval Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, Agent shall be entitled to the protections provided in Sections 363(m) and 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the sale or the liens or priority authorized or created under this Agreement or the Approval Order.

(c)   Subject to entry of the Approval Order, Agent shall be authorized to advertise the Sale as a "going out of business", "store closing", "sale on everything", "everything must go", or similar-themed sale, and the Approval Order shall provide that Agent shall be required to comply with applicable federal, state and local laws, regulations and ordinances, including, without limitation, all laws and regulations relating to advertising, permitting, privacy, consumer protection, occupational health and safety and the environment, together with all applicable statutes, rules, regulations and orders of, and applicable restrictions imposed by, governmental authorities (collectively, the "Applicable General Laws"), other than all applicable laws, rules and regulations in respect of "going out of business," "store closing" or similar-themed sales (collectively, the "Liquidation Sale Laws"), provided that such Sale is conducted in accordance with the terms of this Agreement, the Sale Guidelines and Approval Order.

(d)   Authority.  Except as otherwise specifically provided in this Agreement, Agent shall have no authority, and shall not represent that it has any authority, to enter into any contract, agreement, or other arrangement or take any other action by or on behalf of Merchant, that would have the effect of creating any obligation or liability, present or contingent, on behalf of or for the account of Merchant without Merchant's prior written consent.

Section 3.   Guaranteed Amount and Other Payments

3.1   Payments to Merchant and Agent.

(a)   As a guaranty of Agent's performance hereunder, in addition to the payment of Expenses (as provided for in Section 4.1 hereof), Agent guarantees that Merchant shall receive an amount (the "Guaranteed Amount") equal to one-hundred sixteen and eight tenths on one percent (116.8%) (the "Guaranty Percentage") of the aggregate Cost Value of Merchandise.  The Guaranteed Amount will be calculated based upon the product of (x) the

Guaranty Percentage *multiplied by* (y) the aggregate Cost Value of the Merchandise (in the case of (y), as determined by (A) the Final Inventory Report at the conclusion of the Inventory Taking by the Inventory Taking Service after verification and reconciliation thereof by Agent and Merchant, in consultation with Lender and the Official Committee of Unsecured Creditors (the "Committee"), (B) the aggregate amount of Gross Rings (as adjusted for shrinkage per this Agreement), and (C) the aggregate Cost Value of Returned Merchandise not otherwise included in the Inventory Taking. Agent shall pay to Merchant (or its designee) the Guaranteed Amount in the manner and at the times specified in Section 3.3 below.

(b)    Intentionally omitted.

(c)    The Guaranteed Percentage has been fixed based upon the Merchant's representation that (i) the  aggregate Cost Value of the Merchandise is not less than $6.8 million (the "Merchandise Threshold") and not greater than $7.5 million (the "Merchandise Ceiling"); provided that, solely for purposes of determining whether the aggregate Cost Value of the Merchandise included in the Sale is less than the Merchandise Threshold or greater than the Merchandise Ceiling, no adjustment shall be made to the applicable Cost Value to account for the effect of any Prevailing Discount Adjustment or Excluded Pricing Adjustment. To the extent that the aggregate Cost Value of the Merchandise included in the Sale is less than or greater than the Merchandise Threshold or Merchandise Ceiling, as applicable, then such deviation shall not constitute a breach of any representation or warranty, or an Event of Default; provided, however, that, the Guaranteed Percentage shall be adjusted in accordance with Exhibit 3.1(d) attached hereto. Any adjustment to the Guaranteed Percentage provided for under this Section 3.1(d) shall be cumulative with, and in addition to, any other adjustment provided for under this Agreement, including, but not limited to, any adjustment provided for under Section 3.1(e) hereof.

(d)    The Guaranty Percentage has also been fixed based upon the assumption that the aggregate Cost Value of the Merchandise included in the Sale as a percentage of Retail Price of the Merchandise included in the Sale (without taking into account any Prevailing Discount Adjustment and/or Excluded Price Adjustments) (the "Cost Factor") shall not be greater than thirty-five percent (35%) (the "Cost Factor Threshold").  In the event that the Cost Factor is greater than the Cost Factor Threshold, then such deviation shall not constitute a breach of any representation or warranty, or an Event of Default; provided, however, that, the Guaranty Percentage shall be adjusted (in addition to any applicable adjustment hereunder) in accordance with Exhibit 3.1(e). Any adjustment to the Guaranteed Percentage provided for under this Section 3.1(e) shall be cumulative with, and in addition to, any other adjustment provided for under this Agreement, including, but not limited to, any adjustment provided for under Section 3.1(d) hereof. For purposes of this Agreement:

(i)    "Retail Price" means, with respect to each item of Merchandise, determined as of the Sale Commencement Date, the lowest of the lowest ticketed, file price, marked, shelf price, hang-tag, stickered, PLU, or other hard-marked price, excluding in all instances any and all temporary point of sale ("POS") activity and Excluded Price Adjustments. For purposes of calculating Retail Price, if an item of Merchandise has more than one ticketed, file price, marked, shelf price, hang-tag, stickered, PLU, or other hard-marked price, or if multiple items of the same SKU are have different ticketed, file, marked, shelf, hang-tag,

stickered, PLU, or other hard-marked prices and such pricing does not otherwise qualify as an Excluded Price Adjustment, the lowest ticketed, file price, marked, shelf price, hang-tag, stickered, PLU, or other hard-marked price on any such item shall prevail for such item or for all such items within the same SKU, as the case may be, that are located within the same location (as the case may be, the "Lowest Location Price"), unless it is reasonably determined by Merchant and Agent that the applicable Lowest Location Price was mismarked, normal course markdowns had not been reflected or taken, or such item was priced because it was damaged or marked as "as is," in which case the correct price shall control; provided, however, in determining the Lowest Location Price with respect to any item of Merchandise at a Store, the Lowest Location Price shall be determined based upon the lowest Retail Price for such item on a per Store basis.  No adjustment to Retail Price shall be made with respect to different Retail Prices for items located in different Stores.

(ii)   "Excluded Price Adjustments" means the following discounts or price adjustments offered by the Merchant: (i) point of sale discounts or similar adjustments regardless of duration; (ii)  employee discounts; (iii) member or customer appreciation points or coupons; (iv) multi-unit purchase discounts; (v) adjustments for damaged, defective or "as-is" items; (vi) coupons (Merchant's or competitors'), catalog, website, or circular prices, or "buy one get one" type discounts; (vii) customer savings pass discounts or "bounce back" coupons, or discounts for future purchases based on dollar value of past purchases; (viii) obvious ticketing or marking errors; (ix) instant (in-store) or mail in rebates; or (x) similar customer specific, temporary, or employee non-product specific discounts or pricing accommodations.

(e)   To ensure accurate sales audit functions, Agent shall use Merchant's existing point-of-sale system for recording all sales (including any sales of Additional Agent Merchandise) in the Stores.

3.2   Payments to Agent.  Subject to Agent's obligation to pay in full the Guaranteed Amount, and all Expenses, Agent shall be entitled to retain any remaining Proceeds (.  Provided that no Event of Default has occurred and continues to exist on the part of Agent, all Merchandise and Additional Agent Merchandise remaining at the conclusion of the Sale ("Remaining Merchandise") shall become the property of Agent, free and clear of all liens, claims, and encumbrances of any kind or nature.. Agent and its affiliates shall be authorized to sell or otherwise dispose of the Remaining Merchandise with all logos, brand names, and other intellectual property on the Merchandise intact, and shall be authorized to advertise the sale of the Remaining Merchandise using Merchant's name and logo.

3.3   Time of Payments; Proceeds; Control of Proceeds

(a)   On the first business day after entry of the Approval Order (the "Payment Date"), Agent shall pay to Merchant an amount (the "Initial Guaranty Payment") equal to eighty percent (80%) of the product of (i) the Guaranty Percentage multiplied by (ii) the estimated aggregate Cost Value of the Merchandise to be included in the Sale as reflected on Merchant's books and records at the close of business on the last business day immediately preceding the Sale Commencement Date (the "Estimated Guaranteed Amount"); provided that, the Estimated Guaranteed Amount payable by Agent on the Payment Date shall be calculated based on Merchandise located in the Stores and the Distribution Centers as of the close of business on the

last business day immediately preceding the Sale Commencement Date. On the Payment Date, the Initial Guaranty Payment shall be made by wire transfer of immediately available funds to the account designated on Exhibit 3.3(a) attached hereto (the "Merchant's Designated Account"). The balance of the Guaranteed Amount, shall be paid by Agent by wire transfer of immediately available funds to the Merchant's Designated Account on the earlier of: (x) the second business day following the issuance of the final report of the aggregate Cost Value of the Merchandise counted by the Inventory Taking Service following the completion of the Inventory Taking, after review, reconciliation and mutual written verification thereof by Agent and Merchant, in consultation with Lender (the "Final Inventory Report"), and (y) the date that is thirty (30) days after the Sale Commencement Date (in the case of (y) above, Agent shall tender payment of the undisputed portion only on account of any remaining portion of the Guaranteed Amount). In the event of a dispute as to the calculation of the portion of the Guaranteed Amount, any such dispute shall be resolved in the manner and at the times set forth in Section 8.7(b)(ii) hereof, and Agent's failure to pay such balance or undisputed portion shall entitle the Merchant and the Lender (individually or collectively) to draw upon the Letter of Credit in accordance with Section 3.3(i) hereof to the extent of such balance or undisputed portion.  Merchant and Agent shall exercise reasonable best efforts to reconcile the Inventory Taking within ten (10) days after its completion. In the event that the Initial Guaranty Payment is either less than or exceeds the Guaranteed Amount, as applicable, Agent or Merchant, as the case may be, shall pay to Merchant or Agent, as the case may be, the amount (the "Adjustment Amount") by which the actual Guaranteed Amount exceeds or is less than the sum of the Initial Guaranty Payment.

For purposes of this Agreement, "Proceeds" shall mean the aggregate of (i) the total amount (in dollars) of all sales of Merchandise made under this Agreement whether in the Stores or through Merchant's E-Commerce Platform site pursuant to Section 8.10 hereof, and all service revenue received by Merchant from the Stores and/or through the E-Commerce Platform, in each case during the Sale Term and exclusive of Sales Taxes; (ii) the total amount (in dollars) of all sales of Additional Agent Merchandise (exclusive of Sales Taxes); (iii) all proceeds of Merchant's insurance for loss or damage to Merchandise arising from events occurring during the Sale Term relating to the Merchandise and Additional Agent Merchandise; (iv) any and all proceeds received by Agent from the disposition of Remaining Merchandise. For the avoidance of doubt: (1) proceeds from the sales at Merchant's Stores or through the E-Commerce Platform for periods prior to the Sale Commencement Date; (2) the proceeds from the sale of Merchant Consignment Goods pursuant to Section 5.4 hereof (subject to Agent's right to receive the commission under Section 5.4 below); (3) all proceeds of Merchant's insurance for loss or damage to Merchandise arising from events occurring prior to the Sale Commencement Date; (4) proceeds from the sale or other disposition of Owned FF&E (subject to Agent's right to receive the FF&E Commission under Section 15 below) or the FF&E Guaranty Amount, as applicable; and (5) payments made by Agent on account of the Guaranteed Amount,, Expenses, the Letter of Credit, shall, in each case, not constitute "Proceeds" hereunder.

(b)     All Proceeds shall be controlled by Agent in the manner provided for below:

(i)     Prior to the date Agent establishes the Agency Accounts (see clause (ii) below), all Proceeds (including credit card Proceeds) shall be collected by Merchant and deposited on a daily basis into depository accounts designated by, owned and in the name of,

Merchant for the Stores, which accounts shall be designated for the deposit of Proceeds (including all cash, credit card payments, checks and similar items of payment, deposits and any other amounts contemplated by this Agreement (including proceeds from the sale of Additional Agent Merchandise)), and the disbursement of amounts payable to or by Agent hereunder (the "Designated Deposit Accounts"). Subject to the provisions of Section 16.11 hereof, the Approval Order shall provide (a) that Merchant grants to Agent a first priority security interest in and lien upon each Designated Deposit Account to the extent of any Proceeds and any other amounts payable to Agent deposited therein, and (b) for turnover to Agent of any such Proceeds (and any other amounts payable to Agent deposited therein) in accordance with the terms and provisions of this Agreement and the Approval Order, as applicable. If, notwithstanding the provisions of this Section, Merchant or Lender receives or otherwise has dominion over or control of any Proceeds, or other amounts due to Agent (including proceeds from the sale of Additional Agent Merchandise), Merchant and Lender shall hold the same and other amounts in trust for Agent, and shall not deposit such Proceeds or other amounts due Agent hereunder in any account except a Designated Deposit Account or as otherwise instructed by Agent. Until such time as Agent establishes the Agency Accounts (see clause (ii) below), Merchant, Agent, the Committee and Lender shall cooperate with each other to establish and implement appropriate steps and procedures to accomplish a daily reconciliation, and remittance to Agent, of all Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement that are deposited into the Designated Deposit Accounts.

(ii)    After payment of the Initial Guaranty Payment and delivery of the Letter of Credit, Agent may establish its own accounts (including without limitation credit card accounts and systems), dedicated solely for the deposit of the Proceeds (including credit card Proceeds), and the disbursement of amounts payable to Agent hereunder (the "Agency Accounts"), and Merchant shall promptly, upon Agent's reasonable request, execute and deliver all necessary documents to open and maintain the Agency Accounts; provided, however, Agent may elect to continue to use Merchant's Designated Deposit Accounts as the Agency Accounts. The Agency Accounts shall be dedicated solely to the deposit of Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement, and the distribution of amounts payable hereunder; provided that, in the event (a) Agent elects to continue to use Merchant's Designated Deposit Accounts as the Agency Accounts, and (b) such accounts have amounts deposited therein by Merchant that do not constitute Proceeds and/or other amounts payable to Agent under this Agreement, then Merchant, Agent, the Committee and Lender shall cooperate with each other to establish and implement appropriate steps and procedures to accomplish a daily reconciliation, and remittance to Agent, of all Proceeds (including credit card Proceeds) and other such amounts. Upon request, Agent shall deliver to Merchant and Lender copies of all bank statements and other information relating to the Agency Accounts; provided that, in the event Agent elects to continue to use Merchant's Designated Deposit Accounts as the Agency Accounts, Merchant shall deliver to Agent copies of all bank statements and other information relating to such accounts to enable Agent to track and trace deposited funds that constitute Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement. The Merchant shall not be responsible for, and Agent shall pay as an Expense hereunder, all bank fees and charges, including wire transfer charges, related to the Sale and Agency Accounts, whether received during or after the Sale Term. Upon Agent's notice to Merchant of Agent's

designation of the Agency Accounts, all Proceeds of the Sale (including credit card Proceeds) shall be deposited into the Agency Accounts.

(iii)     Agent shall have the right to use Merchant's credit card facilities, including Merchant's credit card terminals and processor(s), credit card processor coding, and Merchant identification number(s) and existing bank accounts for credit card Proceeds solely for purposes of the Sale, and for processing transactions relating to Additional Agent Merchandise. In the event that Agent elects to use Merchant's credit card facilities, Merchant shall process credit card transactions on behalf of Agent and for Agent's account, applying customary practices and procedures. Without limiting the foregoing, Merchant shall cooperate with Agent to download data from all credit card terminals each day during the Sale Term to effect settlement with Merchant's credit card processor(s), and shall take such other actions necessary to process credit card transactions on behalf of Agent under Merchant's identification number(s). At Agent's request, Merchant shall cooperate with Agent to establish Merchant's identification numbers under Agent's name to enable Agent to process all such credit card Proceeds (and proceeds from Additional Agent Merchandise) for Agent's own account. Merchant shall not be responsible for, and Agent shall pay as an Expense hereunder, all credit card fees, charges, and chargebacks related to Merchandise and Additional Agent Merchandise sold during the Sale, whether received during or after the Sale Term. Agent shall not be responsible for, as an Expense or otherwise, any credit card fees, charges, or chargebacks that do not relate to the Sale, whether received, prior to, during or after the Sale Term.

(iv)     Commencing on the first business day following the Payment Date, and continuing on each business day thereafter, Merchant shall promptly pay to Agent by wire transfer of immediately available funds all funds constituting Proceeds (including, without limitation, Proceeds from credit card sales), and proceeds from Additional Agent Merchandise that are deposited into the Designated Deposit Accounts for the prior day. Agent shall, within a reasonable period of time after the date of each such payment by Merchant, notify Merchant and Lender of any shortfall in such payment, in which case, Merchant shall promptly pay to Agent funds in the amount of any undisputed shortfall.

(c)     Merchant and Agent further agree that if at any time during the Sale Term, (i) Agent holds any amounts due to Merchant under this Agreement, Agent may, in its discretion, after two (2) business days' notice to Merchant, offset such amounts being held by Agent against any undisputed amounts due and owing by, or required to be paid by, Merchant hereunder, and (ii) Merchant holds any amounts due to Agent under this Agreement, Merchant may, in its discretion, after two (2) business days' notice to Agent, offset such amounts being held by Merchant against any undisputed amounts due and owing by, or required to be paid by, Agent hereunder.

(d)     All amounts required to be paid by Agent or Merchant under any provision of this Agreement shall be made by wire transfer of immediately available funds which shall be wired by Agent or Merchant, as applicable, no later than 2:00 p.m. (prevailing Eastern Time) on the date that such payment is due; provided that, that all of the information necessary to complete the wire transfer has been received by Agent or Merchant, as applicable, by 10:00 a.m. (prevailing Eastern Time) on the date that such payment is due. In the event that the date on

which any such payment is due is not a business day, then such payment shall be made by wire transfer on the next business day.

(e)    Upon Agent's failure to timely pay (i) the Adjustment Amount in the event the Guaranteed Amount exceeds the Initial Guaranty Payment, (ii) the , (iii) Expenses, or (iv) other undisputed amounts due by Agent under this Agreement, Lender or Merchant, as applicable, shall be entitled to immediately draw upon the Letter of Credit to the extent of such undisputed amount.

(f)    If, and to the extent, the Agent over-funds any amounts in respect of the Guaranteed Amount hereunder (as determined pursuant to the express terms of this Agreement) and such funding or payment cannot be recovered by the Agent from Merchant under Section 3.3(a) or Section 3.3(d), by means of an offset or otherwise, then Merchant agrees (or if Merchant shall be unable to or otherwise for any reason fails to, and Salus Capital Partners, LLC, in its capacity as administrative agent and collateral agent (the "Lender"), has received such payment, the Lender agrees) to reimburse such undisputed amount of such overfunded amount to Agent within two (2) business days of written demand thereof by Agent.

(g)    Guaranty Security.  To secure payment of the balance of any unpaid portion of the Guaranteed Amount, , Expenses and other amounts due to Merchant hereunder, Agent shall deliver to Merchant, an irrevocable standby letter of credit, substantially in the form of Exhibit 3.3(h) attached hereto, in an original stated amount equal to the aggregate of (x) twenty percent (20%) of the estimated Guaranteed Amount (based upon Merchant's books and records maintained in the ordinary course as of the date immediately preceding the Payment Date), and (y) three (3) weeks' estimated Expenses (the "Letter of Credit"). The Letter of Credit shall name Merchant as beneficiary. The Letter of Credit shall be delivered Merchant, no later than the second business day following the Sale Commencement Date, and shall be issued by a U.S. national bank selected by Agent and reasonably acceptable to Merchant, Lender and the Committee.  In the event that Agent fails to timely pay any undisputed amount hereunder in respect of the Guaranteed Amount, and/or Expenses as required under this Agreement, Merchant shall be entitled to draw on the Letter of Credit to fund such undisputed amount or obligation after five (5) business days' written notice to Agent. Merchant and Agent agree that, from time to time upon Agent's request, the face amount of the Letter of Credit shall be reduced by the aggregate amount of payments made by Agent on account of the Guaranteed Amount; provided, however, until the Final Reconciliation has been completed, under no circumstances shall the face amount of the Letter of Credit be reduced to an amount less than two (2) weeks' estimated Expenses (and Merchant shall cooperate with respect to each such request). The Letter of Credit shall expire no earlier than sixty (60) days after the Sale Termination Date; provided that, if, as of the tenth (10th) business day prior to the scheduled expiration date of the Letter of Credit, there remains any unresolved dispute as to the Guaranteed Amount and/or Expenses, Agent shall cause the expiration date of the Letter of Credit to be extended for successive thirty (30) day intervals (or such other longer duration as Merchant and Agent may agree) until the subject dispute has been resolved and any additional amounts due hereunder on account of the Guaranteed Amount and/or Expenses have been paid to Merchant. If Agent has for any reason not so extended the expiration date of the Letter of Credit by the date that is ten (10) business days prior to the expiration date of the Letter of Credit (as may have been extended previously), Merchant shall have the right to make a drawing under the Letter of Credit in an amount equal to

the amount(s) Merchant asserts are then owing to Merchant. After completion of the Final Reconciliation and payment in full of all amounts owing by Agent (including but not limited to the Guaranteed Amount and Expenses), Merchant shall surrender the original Letter of Credit to the issuer thereof together with written notification that the Letter of Credit may be terminated.

Section 4.        Expenses of the Sale

4.1        Expenses.  Agent shall be unconditionally responsible for all "Expenses", which expenses shall be paid by Agent in accordance with Section 4.2 below.  Agent and/or Merchant and/or Lender may review or audit the Expenses at any time.  Agent shall be obligated to pre-fund any payroll-related expenses consistent with Merchant's customary payroll funding practices and timing. In addition, Agent agrees that it shall pre-fund an amount equal to fourteen (14) days per diem Occupancy Expenses on the second business day after the Sale Commencement Date, which amount Merchant and Lender agree shall be applied to and credited against any per diem Occupancy Expense obligation for the month of October. As used herein, "Expenses" shall mean the Store-level and where expressly applicable, Distribution Center-level operating expenses of the Sale which arise during the Sale Term and are attributable to the Sale, limited to the following:

(a)        (i) actual Occupancy Expenses for the Stores on a per location and per diem basis in an amount up to the aggregate per diem per location amount set forth on Exhibit 4.1(a) hereto; provided, however, in the event there are any non-cash items included in Exhibit 4.1(a), such items shall not be available to Merchant to offset any per diem shortfall(s) in any other category/line item, plus (ii) the portion of any percentage rent obligations allocable to the sale of Merchandise during the Sale to the extent set forth on Exhibit 4.1(a), plus (iii) the portion of any percentage rent obligations attributable to the sale of Additional Agent Merchandise during the Sale to the extent set forth on Exhibit 4.1(a) (in each case as determined in the manner described in the definition of "Occupancy Expenses" below in this Section 4.1);

(b)        actual wages and commissions for all Store-level and Distribution Center-level Retained Employees used in conducting the Sale; provided that, Agent shall only be obligated to pay 50% of the payroll wages for Store-level Retained Employees used during the Inventory Taking, and Merchant shall pay the remaining 50% of the wages for Retained Employees used during the Inventory Taking;

(c)        actual amounts payable by Merchant for benefits for Retained Employees (including payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits, but excluding Excluded Benefits) for Store-level and Distribution Center-level Retained Employees used in the Sale, in an amount up to sixteen and two-tenths percent (16.2%) of base payroll (including commissions) for all Retained Employees in the Stores and the Distribution Centers (the "Benefits Cap");

(d)        Retention Bonuses for Retained Employees, as provided for in Section 9.4 below;

(e)        all costs and expenses associated with Agent's on-site supervision of the Stores and Distribution Center, including but not limited to any and all fees, wages, bonuses, deferred compensation, taxes, and third party payroll costs and expenses of Agent's field personnel, travel to, from or between the Stores and Distribution Center, and all out-of-pocket and commercially reasonable expenses relating thereto;

(f)      banners, sign walkers, and in-Store signs that are produced for the Sale;

(g)      promotional costs including, without limitation, email blasts, television, ROP, other advertising and direct mail attributable to the Sale and ordered or requested by Agent;

(h)      the costs and expenses of obtaining additional supplies used at the Stores and Distribution Centers as may be required by Agent in the conduct of the Sale;

(i)      Intentionally omitted;

(j)      postage/overnight delivery/courier charges to and from or among the Stores to the extent relating to the Sale;

(k)      credit card and bank card fees, chargebacks, and discounts attributable to the Sale at the Stores or through the E-Commerce Platform;

(l)      any and all costs of moving, transferring, or consolidating Merchandise and/or Additional Agent Merchandise between the Stores;

(m)      a pro rata portion for the Sale Term of Merchant's premiums in respect of general liability, casualty, property, inventory, and other insurance policies attributable to the Merchandise and the Stores and Distribution Centers ;

(n)      third-party payroll processing fees for the Stores and the E-Commerce Platform;

(o)      armored car service and security personnel;

(p)      actual cost of Agent's capital, reasonable legal expenses, letter of credit fees and insurance (as provided in Section 12.4 hereof);

(q)      Intentionally omitted;

(r)      Agent's 50% of the third party fees and costs of the Inventory Taking

(s)      Central Service Expenses in an amount equal to $5,000.00 per week (pro-rated for partial weeks) for the Sale Term (payable to Merchant) in respect of the cost of Merchant providing Central Services in accordance with Section 8.1 hereof;

(t)      Store cash thefts and other Store cash shortfalls in registers;

(u)      Intentionally omitted;

(v)      any costs and expenses incurred in connection with the acquisition (including costs of goods) and delivery of any Additional Agent Merchandise;

16

(w)   the E-Commerce Expense Reimbursement provided for in Section 8.10 below;

(x)   costs and expenses associated with temporary labor requested or obtained by Agent for purposes of the Sale;

(y)   Costs and expenses postage, overnight delivery or other shipping charges related to the operation of the E-Commerce Platform and delivery of  Merchandise and Additional Agent Merchandise to the consumers; and

(z)   the actual costs and expenses of Agent providing such additional services as the Agent deems appropriate for the Sale.

"Expenses" shall not include: (i) Central Service Expenses in excess of the amount set forth in Section 4.1(s); (ii) Excluded Benefits; (ii) any rent or other occupancy expenses other than Occupancy Expenses in accordance with Section 4.1(a) hereof; (iii) costs associated with providing Distribution Center Services in excess of the amounts set forth in Section 4.1 E-Commerce Expense Reimbursement provided for under Section 8.10 below; (iv) costs of maintaining and operating Merchant's website in connection with the E-Commerce Platform in excess of E-Commerce Expense Reimbursement in excess of the amounts provided for under Section 8.10 below; or (v) any costs, expenses or liabilities arising during the Sale Term, other than the Expenses listed above.  All costs or expenses related to the Sale not included as Expenses shall be paid by Merchant promptly when due during the Sale Term.  Notwithstanding anything to the contrary herein, (x) to the extent that any Expense listed in Section 4.1 is also included on Exhibit 4.1(a), then Exhibit 4.1(a) shall control and such Expense shall not be double counted. Except as provided in this Section 4.1 and Section 8.10, no Expenses shall be paid with respect to any distribution center/warehouses other than the E-Commerce Expense Reimbursement provided for in Section 8.10.

As used herein, the following terms have the following meanings:

"Central Service Expenses" means costs and expenses for Merchant's Central Services.

"Central Services" means those Merchant central administrative services necessary for the conduct and support of the Sale, including, but not limited to, use or and access to Merchant's: (i) inventory control system, (ii) payroll system, (iii ) accounting system, (iv) office facilities, (v) central MIS and POS services, (vi) cash reconciliation, (vii) central administrative services and personnel to process and perform sales audit, banking, and other normal course administrative services customarily provided to or for the benefit of operating the Distribution Centers and/or the Stores, (viii) such other central office services reasonably necessary for the Sale, and (ix) to use reasonably sized offices located at Merchant's central office facility to effect the Sale.

"Distribution Center Services" means those services customarily performed by Merchant in operating and maintaining the Distribution Centers in the ordinary course of business and in the course of receiving and distributing Merchandise and supplies to the Stores, as more fully described in Section 8.10, including, but not limited to, with respect to (i) payroll and related employee benefits of all Distribution Center employees as may be designated from time to time by Agent; (ii) the handling, receiving, in-take, storage, ticketing and processing of any Merchandise and Distribution Center Merchandise (but excluding incremental costs incurred in connection with Additional Agent Merchandise), (ii) any required supplies in connection with the foregoing; (iii) any Central Services required to operate and maintain the Distribution Centers during the Sale Term applicable thereto to the extent not provided for in Section 8.10; and (iv) the costs of moving, transferring, or consolidating Merchandise between the Distribution Centers and the Stores.

"Excluded Benefits" means (i) the following benefits arising, accruing or attributable to the period prior to, during, or after the Sale Term: (w) vacation days or vacation pay, (x) sick days or sick leave or any other form of paid time off, (y) maternity leave or other leaves of absence and (z) ERISA coverage and similar contributions and/or (ii) any other benefits in excess of the Benefits Cap, including, without limitation, any payments due under the WARN Act.

"Occupancy Expenses" means rent, percentage rent, common-area maintenance, landlord promotional fees, real estate and use taxes, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, routine repairs and maintenance, taxes and licenses, costs of all local, long-distance, and international telephone, satellite broadband connections, T-1 lines, broadband internet, and other telecommunications services, trash removal (to the extent excluded as a fixed charge component of lease obligation), snow removal, and ordinary course third-party cleanings, pest control services, and all other categories of expenses at the Stores as set forth on Exhibit 4.1(a) attached hereto and in an amount up to the specific amounts set forth on Exhibit 4.1(a) attached hereto and calculated in accordance with Section 4.1(a), plus any percentage rent obligations incurred by Merchant under applicable leases or occupancy agreements that are allocable to the sales as part of the Sale during the Sale Term of: (x) Merchandise and (y) Additional Agent Merchandise included in the Sale. Merchant and Agent agree that Exhibit 4.1(a) shall specify the actual applicable percentage and any applicable sales thresholds in respect of percentage rent under any applicable Store lease(s) or other occupancy agreement(s). Merchant and Agent further agree that in the event Exhibit 4.1(a) does not specify the actual applicable percentage and/or the applicable sales thresholds in respect of percentage rent under any applicable Store lease(s) or other occupancy agreement(s), Agent shall have no obligation to pay percentage rent other than as set forth on Exhibit 4.1(a). Notwithstanding anything to the contrary set forth in this Agreement, Merchant and Agent further agree that to the extent that, in connection with the conduct of the Sale and/or Agent's vacating of the Stores (but not in connection with the disposition of any unsold Owned FF&E or other non-Merchandise assets being abandoned or otherwise disposed of by Merchant), Merchant incurs additional trash removal charges at a Store, other than the fixed charge component of Merchant's lease obligation for a particular Store provided for on Exhibit 4.1(a) (the "Non-CAM Trash Removal Charges"), such Non-CAM Trash Removal Charges shall be paid by

Agent as an Expense of the Sale, in addition to any trash removal charges as may be set forth in Exhibit 4.1(a) hereof.

"Third-party" means, with reference to any Expenses, a party that is not affiliated with or related to Merchant.

4.2     Payment of Expenses.  From and after the Sale Commencement Date, Agent shall be responsible for the payment of all Expenses, whether or not there are sufficient Proceeds collected to pay such Expenses after the payment of the Guaranteed Amount. All Expenses incurred during each week of the Sale (i.e., Sunday through Saturday) shall be paid by Agent to or on behalf of Merchant immediately following the weekly Sale reconciliation by Merchant and Agent pursuant to Section 8.7(a) below, based upon invoices and other documentation reasonably satisfactory to Merchant and Agent.

Section 5.     Inventory Valuation; Merchandise.

5.1     Inventory Taking.

(a)     Commencing on the Sale Commencement Date, Merchant and Agent shall cause to be taken a SKU-level and Retail Price physical inventory of the Merchandise located in the Stores and the Distribution Centers (collectively, the "Inventory Taking"). Subject to the availability of the Inventory Taking Service, Merchant and Agent shall use commercially reasonable efforts to complete the Inventory Taking as follows: (x) as to Merchandise located in the Stores, in each Store no later than twenty one (21) days after the Sale Commencement Date; (y) with regard to Distribution Center Merchandise, on a date and in accordance with counting procedures that shall be mutually agreeable to the Parties (the date of the Inventory Taking at each location being the "Inventory Date" for such location). Merchant and Agent shall jointly employ RGIS or another mutually acceptable independent inventory taking service (the "Inventory Taking Service") to conduct the Inventory Taking in the Stores and the Distribution Center. The Inventory Taking shall be conducted in accordance with the procedures and instructions to be mutually agreed upon by Merchant (in consultation with the Lender) and Agent and made a part of this Agreement as Exhibit 5.1(a) (the "Inventory Taking Instructions"). As an Expense, Agent shall be responsible for fifty percent (50%) of the fees and expenses of the Inventory Taking Service.  The balance of such fees and expenses shall be paid by Merchant. Except as provided in the immediately preceding sentence, Merchant and Agent shall each bear their respective costs and expenses related to the Inventory Taking; provided that, Agent shall be obligated to pay fifty percent (50%) of the payroll and related benefit costs (subject to the Benefits Cap) for Retained Employees used during the Inventory Taking, and Merchant shall pay the remaining fifty percent (50%) of the payroll and related benefit costs for Retained Employees used during the Inventory Taking. Merchant, Agent, the Committee and Lender shall each have the right to have representatives present during the Inventory Taking, and shall each have the right to review and verify the listing and tabulation of the Inventory Taking Service.  Merchant agrees that during the Inventory Taking in each of the Stores, the applicable Store shall be closed to the public and no sales or other transactions shall be conducted until the Inventory Taking has been completed, as agreed by Merchant and Agent.  Merchant and Agent further agree that until the Inventory Taking in each particular Store is complete, Agent shall not (i) transfer any Merchandise to or from that Store, (ii) deliver any Additional Agent Merchandise to such Store,

(iii) move Merchandise within or about the Stores, or (iv) remove any Merchant hang tags, price tickets, inventory control tags, or other indicia of pricing affixed to or related to any Merchandise.  Agent and Merchant (in consultation with the Lender) shall use their reasonable best efforts to reconcile the Inventory Taking (including, but not limited to, the determination of the aggregate Cost Value of the Merchandise), within ten (10) days after its completion.  In the event there is any dispute with respect to the reconciliation of the aggregate Cost Value of the Merchandise following completion of the Inventory Taking, then any such dispute shall be resolved in the manner and at the times set forth in Section 8.7(b)(ii) hereof.

(b)      [Intentionally Omitted]

5.2      <u>Merchandise Subject to this Agreement</u>.

(a)      For purposes of this Agreement, including but not limited to the calculation of the Guaranteed Amount, "<u>Merchandise</u>" means all new, first quality (other than as expressly set forth below), finished goods inventory that is owned by Merchant and customarily sold to customers in the ordinary course of Merchant's business, including, but not limited to, (i) Merchandise subject to Gross Rings; (ii) Merchandise located in the Stores and the Distribution Centers on the Sale Commencement Date; and (iii) Defective Merchandise (to the extent Merchant and Agent can mutually agree on the Cost Value applicable thereto). Notwithstanding the foregoing, "Merchandise" shall not include (i) goods that belong to sublessees, licensees, or concessionaires of Merchant; (ii) goods held by Merchant on memo, on consignment, or as bailee; (iii) Excluded Defective Merchandise; (iv) Additional Agent Merchandise; and (v) furnishings, trade fixtures furniture, and equipment and improvements to real property that are located in the Stores and Distribution Center.

(b)      As used in this Agreement, the following terms have the respective meanings set forth below:

"<u>Defective Merchandise</u>" means any item of Merchandise identified and agreed upon by Merchant and Agent as defective in that it is damaged, defective, scratched, soiled, ripped, torn, stained, faded, discolored, dented, out of box (if normally sold as new in-the-box), missing pieces, mismatched, mis-mated or near-sized, parts, items typically sold as a set which are incomplete, or gift with purchase items, or otherwise affected by other similar defenses rendering it not first quality.  Sample merchandise and merchandise on display in the Stores shall not <u>per se</u> be deemed to be Defective Merchandise.

"<u>Distribution Center Merchandise</u>" means those items of inventory identified on <u>Exhibit 5.2(b)(1)</u> that were located in Merchant's Distribution Centers on the Sale Commencement Date.

"<u>Excluded Defective Merchandise</u>" means (a) any item of Defective Merchandise that is not saleable in the ordinary course because it is so damaged or defective that it cannot reasonably be used for its intended purpose, (b) any item of Defective Merchandise for which the parties cannot mutually agree upon a Cost Value, and/or (c) packaway merchandise. Excluded Defective Merchandise located in the Stores shall be identified and counted during the

Inventory Taking and thereafter removed from the sales floor and segregated. To the extent that goods in the Distribution Centers or in transit to the Stores constitute Excluded Defective Merchandise and such goods arrive at the Stores despite Merchant's covenant not to ship such goods to the Stores, such goods shall be identified during the Inventory Taking or, to the extent such goods arrive in a Store after the Inventory Date for such Store, such goods shall be reasonably identified by Agent within five (5) business days of receipt of at such Store.

5.3    <u>Valuation</u>.

(a)    For purposes of this Agreement, "Cost Value" shall mean, with respect to each item of Merchandise, other than the Additional Agent Merchandise, the lower of (i)(x) the lower of the Merchant's actual cost of such item and (y) the cost of such item as reflected in the SKU for such item of Merchandise as reflected on Merchant's inventory item master cost file, entitled "invStr-SKU_20141002" (together with all updated files received on or prior to the Sale Commencement Date, the "Cost File") and (ii) the Retail Price.

(b)    Anything in Section 5.3(a) to the contrary notwithstanding, Merchant and Agent further agree as follows:

(i)    Defective Merchandise shall be valued by mutual agreement of the parties; if the parties are unable to so agree, or if an item is determined to be Excluded Defective Merchandise, such goods shall be excluded from the Sale and treated as Excluded Defective Merchandise for all purposes hereunder, including, without limitation, calculation of the Guaranteed Amount and Proceeds;

(iii)    Excluded Pricing Adjustments shall not be taken into account in determining the Cost Value of any item of Merchandise;

(iv)    If the Sale commences prior to the completion of the Inventory Taking at any Store or the Distribution Center, then for the period from the Sale Commencement Date until the Inventory Date for such Store (the "Gross Rings Period"), Agent and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable Sales Taxes but excluding any prevailing discounts ("Gross Rings") and (ii) cash reports of sales within such Store and or E-Commerce Platform utilized by the subject Distribution Center. Agent and Merchant shall keep a strict count of register receipts and reports to determine the actual Cost Value and Retail Price of the Merchandise sold by SKU.  All such records and reports shall be made available to Merchant and Agent during regular business hours upon reasonable notice.   Any Merchandise included in the Sale using the Gross Rings method shall be included in Merchandise using the actual Cost Value of the Merchandise sold plus one and one-half percent (1.5%) shrink provision.

5.4    <u>Excluded Goods</u>.  Merchant shall retain all rights and responsibility for any goods not included as "Merchandise" hereunder and shall remove, at Merchant's expense, such goods

from the Stores and the Distribution Centers prior to the Sale Commencement Date, or as soon thereafter as reasonably practicable. If Merchant so elects at the beginning of the Sale Term, Agent shall accept those goods not included as "Merchandise" hereunder and as identified by Merchant for sale as "Merchant Consignment Goods". Merchant Consignment Goods shall be sold at prices mutually agreed upon by Merchant and Agent. Agent shall retain twenty percent (20%) of the sale price (less applicable Sales Taxes) for all sales of Merchant Consignment Goods, and Merchant shall receive eighty percent (80%) of the sale price (less applicable Sales Taxes) in respect of sales of Merchant Consignment Goods. Merchant shall receive its share of the receipts of sales of Merchant Consignment Goods on a weekly basis, immediately following the weekly reconciliation by Merchant and Agent pursuant to Section 8.7(a) below. Except as expressly provided in this Section 5.4, Agent shall have no cost, expense, or responsibility in connection with any goods not included in Merchandise, including but not limited to sales commissions and percentage rent.

      5.5    [Intentionally Omitted].

Section 6.    Sale Term.

      6.1    Term. The Sale shall commence at each of the Stores on the first calendar day after the entry of the Approval Order, but not later than October 3, 2014 (the "Sale Commencement Date"). Agent shall complete the Sale and vacate the premises of each Store and Distribution Centers in favor of Merchant or its representative or assignee on or before January 15, 2015 (the "Sale Termination Date"). The period beginning on the Sale Commencement Date through and including the Sale Termination Date shall be referred to herein as the "Sale Term". The Sale Termination Date as to any Store or the Distribution Centers may be (a) extended by mutual written agreement of Agent and Merchant, in consultation with the Lender or (b) accelerated by Agent, in which case Agent shall provide Merchant and the Lender with not less than seven (7) days' advance written notice of any such planned accelerated Sale Termination Date (each such notice being a "Vacate Notice"). If Agent fails to provide Merchant and the Lender with timely notice of an acceleration of the Sale Termination Date for a Store, Agent shall be liable for and shall pay any Occupancy Expenses resulting from such untimely notice.

      6.2    Vacating the Closing Stores and Distribution Center. Subject to the terms of Section 6.1 hereof, Agent shall provide Merchant and the Lender with not less than seven (7) days' advance written notice of its intention to vacate any Store or Distribution Centers (as to each such Store and/or Distribution Center, as applicable, the "Vacate Date"). On the Vacate Date, Agent shall vacate such Store and/or Distribution Centers in favor of Merchant or its representatives or assignee, (subject to Agent's right to abandonment) remove all Remaining Merchandise (including any unsold Additional Agent Merchandise) from the Store and/or Distribution Center, and leave such Store and Distribution Center in "broom clean" condition (ordinary wear and tear excepted) subject to the right to abandon, neatly in place, any unsold Owned FF&E. Agent's obligations to pay all Expenses, including Occupancy Expenses, for each Store or the Distribution Center subject to Vacate Notice shall continue only until the earlier of the (a) applicable Vacate Date for such Store or Distribution Center, or (b) Sale Termination

22

Date.  All assets of Merchant used by Agent in the conduct of the Sale (*e.g.*, FF&E, supplies, etc.) shall be returned by Agent to Merchant or left at the Stores and/or Distribution Center, to the extent same have not been used in the conduct of the Sale or have not been otherwise disposed of through no fault of Agent.  Any reference in this Section 6 to vacating the Stores and/or Distribution Centers means vacating the Stores and/or Distribution Center, as applicable, in favor of Merchant, its representatives, or assignee and shall not mean vacating possession or disclaimer of lease in favor of the landlord or owner of the Store and/or Distribution Centers premises.  Agent agrees that it shall be obligated to repair any damage caused by Agent (or any representative, agent, or licensee thereof) to any Store and/or Distribution Centers during the Sale Term, ordinary wear and tear excepted.  Agent shall have the right to abandon in place any asset of Merchant.

Section 7.    Intentionally Omitted.

Section 8.    Conduct of the Sale.

    8.1    Rights of Agent and Merchant.  Subject to the Approval Order and the Sale Guidelines, Agent shall be permitted to conduct a "going out of business", "store closing" or similarly themed sale at the Stores and the Distribution Centers throughout the Sale Term.  Agent shall conduct the Sale in the name of and on behalf of Merchant in a commercially reasonable manner and in compliance with the terms of this Agreement and, except as modified by the Approval Order, all governing laws and applicable agreements to which Merchant is a party.  Agent shall conduct the Sale in accordance with the Sale Guidelines annexed hereto as Exhibit 8.1 and approved by the Approval Order, whether by in-store promotion, media advertising, or other promotional materials.  Merchant shall have the right to monitor the Sale and activities attendant thereto and to be present in the Stores during the hours when the Stores are open for business, so long as Merchant's presence does not unreasonably disrupt the conduct of the Sale.  Merchant shall also have a right of access to the Stores at any time in the event of an emergency situation and shall promptly notify Agent of such emergency.  In addition to any other rights granted to Agent hereunder, in conducting the Sale, Agent, in the exercise of its sole discretion, shall have the following rights, limited by the Sale Guidelines:

        (a)    except as otherwise provided in the Approval Order, to establish Stores' hours, which are consistent with the terms of applicable leases, mortgages, or other occupancy agreements and local laws or regulations, including, without limitation, Sunday closing laws; provided, however, to the extent that Agent extends the hours of operation at one or more of the Stores beyond the hours historically operated by Merchant, which results in additional utilities charges and increased Occupancy Expenses in excess of the average utilities charges and Occupancy Expenses for such Stores over the twelve (12) months preceding the Sale Commencement Date, Agent shall reimburse Merchant the amounts, if any, of such additional costs and such additional costs shall constitute Expenses;

        (b)    to use without charge during the Sale Term (except where otherwise designated as an Expense pursuant to Section 4.1 hereof), (i) all furniture, fixtures and equipment, (ii) bank accounts, (iii) Store-level and/or Distribution Center-level (and to the extent available, corporate) computer hardware and software, (iv) customer lists, mailing lists, email

lists, and web and social networking sites utilized by Merchant in connection with its business (but solely in connection with the Sale and pursuant to such reasonable restrictions requested by Merchant in order for Merchant to comply with its privacy policy and applicable laws governing the use and dissemination of confidential consumer personal data), (v) existing supplies located at the Stores and/or Distribution Center, (vi) intangible assets (including Merchant's names, logos, and tax identification numbers), (vii) Stores' and/or Distribution Centers keys, case keys, security codes, and safe and lock combinations required to gain access to and operate the Stores and the Distribution Center, and (viii) any other assets of Merchant located at the Stores and/or Distribution Centers (whether owned, leased, or licensed) consistent with applicable terms of leases or licenses. Agent shall exercise due care and return to Merchant immediately at the end of the Sale all materials and supplies except materials or supplies expended;

(c)     subject to Agent's payment (if applicable) in accordance with Sections 4.1(s) and (w) above in respect of Central Services and Distribution Center Services, Merchant agrees and covenants that it shall be responsible for performing and providing to Agent such Central Services necessary or incident to the conduct of the Sale, including, but not limited to, use of Merchant's central office facilities, central administrative services, and personnel to process payroll, perform MIS, and provide other central office services necessary for the Sale to the extent that such services are normally provided by Merchant in house; provided, however, that, in the event Agent expressly requests Merchant to provide services other than those normally provided to the Stores and/or Distribution Center and relating to the sale of Merchandise by Merchant in the ordinary course of business and as expressly contemplated by this Agreement, Agent shall be responsible to reimburse Merchant for the actual incremental cost of such services incurred by Merchant as an Expense of the Sale hereunder;

(d)     to establish Sale prices and implement advertising, signage (including exterior banners and signs and sign walkers), and promotional programs consistent with the sale theme described herein, and as otherwise provided in the Approval Order and the Sale Guidelines, as and where applicable (including, without limitation, by means of media advertising, A-frame, interior and exterior banners, use of sign walkers and similar signage).

(e)     once the Inventory Taking is complete at both the transferring Store and the receiving Store, to transfer Merchandise between and among the Stores;

(f)     to supplement the Merchandise at the Stores with Additional Agent Merchandise in accordance with Section 8.9 hereof; and

(g)     to conduct the Sale in accordance with the Sale Guidelines attached hereto as Exhibit 8.1.

8.2     Terms of Sales to Customers.  Subject to Agent's compliance with applicable law (as determined with reference to the Approval Order), all sales of Merchandise will be "final sales" and "as is" and all advertisements and sales receipts will reflect the same.  Agent shall not warrant the Merchandise in any manner, but will, to the extent legally permissible, pass on all manufacturers' warranties to customers.  All sales will be made only for cash or nationally recognized credit and debit cards.  Agent shall accept and honor coupons during the Sale Term,

if any, as well as groupons and Merchant's employee discount terms as are in effect immediately prior to the commencement of the Sale Term. Merchant shall reimburse Agent in cash for all amounts related to coupons, as well as groupons and Merchant's employee discount terms, during each weekly sale reconciliation provided for in Section 8.7; provided that, Merchant shall only be obligated to reimburse Agent for Merchant's coupons, as well as groupons and Merchant's employee discount terms, honored by Agent during the first thirty (30) days of the Sale. Agent shall clearly mark all receipts for the Merchandise sold at the Stores during the Sale Term, so as to distinguish such Merchandise from the merchandise sold prior to the Sale Commencement Date.

   8.3   Sales Taxes. (a)  During the Sale Term, all sales, excise, gross receipts, and other taxes attributable to sales of Merchandise, Additional Agent Merchandise, Merchant Consignment Goods, and/or Owned FF&E as indicated on Merchant's point of sale equipment (other than taxes on income, but specifically including, without limitation, gross receipts taxes) payable to any taxing authority having jurisdiction (collectively, "Sales Taxes") shall be added to the sales price of Merchandise, Additional Agent Merchandise, Merchant Consignment Goods, and/or Owned FF&E and collected by Agent in trust for Merchant at time of sale and paid over to Merchant. All Sales Taxes shall be deposited into a segregated account designated by Merchant and Agent solely for the deposit of such Sales Taxes (the "Sales Taxes Account").  If Agent does not timely remit Sales Taxes to Merchant, Merchant shall be permitted to immediately draw on the Letter of Credit in the full amount of Sales Taxes collected by Agent in the preceding week.   Provided that Agent has collected all Sales Taxes during the Sale and remitted the proceeds thereof to Merchant, Merchant shall promptly pay all Sales Taxes and file all applicable reports and documents required by the applicable taxing authorities. Notwithstanding anything to the contrary herein, Agent shall reimburse Merchant for any additional Sales Taxes, interest, fines, penalties, and similar amounts payable to any taxing authority as the result of a Sales Tax audit conducted by or on behalf of such authority which discloses that the Sales Taxes collected by Agent and paid over to Merchant for any period during the Sale Term were less than those mandated by applicable law for the sale of Merchandise, Additional Agent Merchandise, Merchant Consignment Goods, and/or Owned FF&E, if any, that is sold by Agent under this Agreement (any such additional Sales Taxes and other amounts are collectively referred to herein as "Additional Taxes and Penalties").  Merchant will be given access to the computation of gross receipts for verification of all such Sales Tax collections.  Agent shall add Sales Tax to the sales price of all Additional Agent Merchandise sold and Agent shall collect Sales Taxes attributable to the sales of Additional Agent Merchandise and deposit such amounts into existing accounts, trust accounts, or other accounts designated by Agent, for remittance by Merchant, on behalf of Agent, to the appropriate taxing authority.  If Agent fails to perform its responsibilities in accordance with this Section 8.3, and provided Merchant complies with its obligations in accordance with this Section 8.3, Agent shall indemnify and hold harmless Merchant and its officers, directors, employees, agents and independent contractors (collectively, "Merchant Indemnified Parties") from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines, or penalties (including but not limited to all Additional Taxes and Penalties) that Merchant sustains or incurs as a result or consequence of the failure by Agent to collect Sales Taxes and remit them to Merchant and/or, to the extent Agent is required hereunder to prepare reports and other documents, the failure by Agent to promptly deliver any and all reports and other documents

required to enable Merchant to file any requisite returns with such taxing authorities. Provided that Agent performs its responsibilities in accordance with this Section 8.3, Agent shall have no further obligation to the Merchant, the Lender, any taxing authority, or any other party, and Merchant (and Lender to the extent it has received any funds on account of Sales Taxes) shall indemnify and hold harmless Agent and its officers, directors, employees, agents and Supervisors (collectively, "Agent Indemnified Parties") from and against all claims, demands, assessments, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to the failure by Merchant to promptly pay such taxes to the proper taxing authorities and/or the failure by Merchant to promptly file with such taxing authorities all reports and other documents required by applicable law to be filed with or delivered to such taxing authorities.

(b)    Without limiting the generality of Section 8.3(a) hereof, the Parties agree that because Agent will conduct the Sale solely as agent for Merchant, the various payments that this Agreement contemplates (including the payment by Agent of the Guaranteed Amount) do not represent the sale of tangible personal property and, accordingly, are not subject to Sales Taxes.

8.4    Supplies.   Agent shall have the right to use all existing supplies necessary to conduct the Sale (e.g., boxes, bags, and twine, but not gift certificates, rain checks, merchandise credits, or the like) located at the Stores and/or the Distribution Centers at no charge to Agent.  In the event that additional supplies are required in any of the Stores or, subject to Agent's election under Section 8.10, the E-Commerce Platform, during the Sale Term, the acquisition of such additional supplies shall be the responsibility of Agent as an Expense; provided, however, that if reasonably requested by Agent, Merchant shall assist Agent in obtaining supplies, at Agent's expense, from Merchant's vendors at Merchant's usual and customary costs for such supplies. Merchant does not warrant that Merchant's existing supplies as of the Sale Commencement Date are adequate for purposes of the Sale.

8.5    Returns of Merchandise.   During the first ten (10) days of the Sale, Agent shall accept returns of Merchandise sold by Merchant prior to the Sale Commencement Date in accordance with Merchant's return policies in effect at the time of purchase (to the extent presented in accordance with the foregoing terms, each such item being defined herein as "Returned Merchandise").   Agent shall maintain and deliver to Merchant a detailed Returned Merchandise log, including copies of all relevant merchandise receipts and credits, and shall mark the Returned Merchandise in such a fashion so as to render such merchandise readily identifiable by Merchant and Agent.   Merchant shall reimburse Agent in cash or credit against the following week's payment for the amount of any store credit or refund given to any customer in respect of Returned Merchandise. To the extent Returned Merchandise is salable as first quality merchandise, it shall be included in Merchandise and for purposes of the calculation of the Guaranteed Amount and shall be valued at the Cost Value and Retail Price applicable to such item. Subject to Merchant's reimbursement to Agent of the amount of any store credit or refund granted for any such Returned Merchandise, the aggregate Cost Value of the Merchandise shall be increased by the Cost Value of any Returned Merchandise, and the Guaranteed Amount shall be adjusted accordingly. If the Returned Merchandise is not first quality goods, Merchant and Agent shall negotiate in good faith to determine an appropriate Cost Value applicable to such

merchandise for purposes of determining the Cost Value attributable thereto; provided that, in the event Merchant and Agent cannot agree on the Cost Value to be attributed to any particular item(s) of Returned Merchandise, than such item(s) shall be segregated form Merchandise and excluded from the Sale and treated as Excluded Defective Merchandise for all purposes hereunder. Any reimbursements due to Agent as a result of Returned Merchandise shall be accounted for and paid by Merchant immediately following the weekly Sale reconciliation pursuant to Section 8.7(a) hereof.  Any increases in payment on account of the Guaranteed Amount as a result of Returned Merchandise shall be paid by Agent as part of the final Sale reconciliation provided for under Section 8.7(b) hereof.

      8.6.   Gift Cards; Merchandise Credits; Membership Program.

      (a)   During the first thirty (30) days of the Sale, Agent shall accept Merchant's gift cards, gift certificates, merchandise credits and other similar Merchant-issued credits, if any. Merchant shall reimburse Agent in cash for gift card, gift certificate, merchandise credit, and other similar Merchant issued credit amounts redeemed during the Sale Term as part of the weekly sale reconciliation provided for in Section 8.7(a).

      (b)   To the extent Merchant maintains any customer membership or customer loyalty discount programs, said customers may take advantage of discounts afforded customers in connection with Merchant's customer membership or customer loyalty discount programs ("Membership Program Discounts") in addition to the then-prevailing Sale discounts being offered by Agent (for example, a "take an additional 10% off" Membership Program Discount" may be combined with Agent's 30% prevailing sale discount, such that the affected customer would receive an effective  discount of 37%); provided further that, Merchant shall reimburse Agent in cash for the incremental increased discount received as a consequence of the recognition of such Membership Program Discounts (on a weekly basis as part of each weekly reconciliation).

      8.7.   Sale Reconciliation.

      (a)   Weekly Reconciliation.  On each Wednesday during the Sale Term, commencing on the second Wednesday after the Sale Commencement Date, Agent and Merchant (in consultation with Lender) shall cooperate to reconcile Expenses, Gross Rings, and such other Sale-related items as either party shall reasonably request, in each case for the prior week or partial week (i.e., Sunday through Saturday), pursuant to procedures agreed upon by Merchant (in consultation with Lender) and Agent.  On a weekly basis, Agent shall also provide Merchant (and a copy to Lender) with a report (in electronic format acceptable to Merchant) of all sales of Additional Agent Merchandise, which report shall detail by Store, at a minimum, gross and net sales and type of items sold. To ensure accurate sales audit functions,  Agent shall use Merchant's existing point-of-sale system for recording all sales (including any sales of Additional Agent Merchandise) in the Stores.

      (b)   Final Reconciliation.

      (i)   Within thirty (30) days after the Sale Termination Date applicable

to the last Store in which the Sale is concluded, Agent and Merchant (in consultation with the Lender) shall jointly prepare a final reconciliation of the Sale including, without limitation, a summary of Proceeds, Sales Taxes, Expenses, and any other accountings required hereunder (the "Final Reconciliation"). Within five (5) days after completion of the Final Reconciliation, any undisputed and unpaid Expenses shall be paid by Agent (the "Final Reconciliation Settlement Date"). In the absence of an order of the Bankruptcy Court to the contrary, no disputed amounts owing hereunder shall be paid until the dispute has been resolved by agreement of the parties or as determined in the manner prescribed in Section 8.7(b)(ii) hereof. During the Sale Term, and until all of Agent's obligations under this Agreement have been satisfied, Merchant (in consultation with the Lender) and Agent shall have reasonable access to Merchant's and Agent's records with respect to Proceeds, Sales Taxes, Expenses, and other Sale-related items to review and audit such records.

(ii)    In the event that there is any dispute with respect to either (x) the determination of the aggregate Cost Value of the Merchandise as reflected in the Final Inventory Report and/or (y) the Final Reconciliation, such dispute shall be promptly (and in no event later than the fifth (5th) business day following a request by either Merchant or Agent) submitted to the Bankruptcy Court for resolution. In the event of a dispute as to (x) or (y) above, Agent shall extend the Letter of Credit in accordance with the provisions of Sections 3.4 or 4.2(b) hereof, as applicable. If Agent has for any reason not so extended the expiration date of the Letter of Credit by the date that is ten (10) business days prior to the applicable expiration date (as may have been extended previously), Merchant and/or Lender shall have the right to make a drawing under the Letter of Credit in an amount or amounts equal to the undisputed amounts Merchant asserts are then owing to Merchant.

8.8    Force Majeure. If any casualty, act of war or terrorism, or act of God prevents the conduct of business in the ordinary course at any Store and/or Distribution Center for a period in excess of ten (10) consecutive days (a "Force Majeure Event"), such Store and/or Distribution Center and the Merchandise located at such Store and/or Distribution Center shall be eliminated from the Sale and considered to be deleted from this Agreement as of the first date of such event, and Agent and Merchant shall have no further rights or obligations hereunder with respect thereto; provided, however, that (i) the proceeds of any insurance attributable to such Merchandise shall constitute Proceeds hereunder, and (ii) the Guaranteed Amount shall be reduced to account for any Merchandise eliminated from the Sale that is not the subject of insurance proceeds or consolidated by Agent into another Store(s) and/or Distribution Centers and, to the extent Agent has paid the Guaranteed Amount, Merchant (or Lender, to the extent Lender has received such amount(s)), to the extent such insurance proceeds are actually received, shall reimburse Agent for the amount by which the Guaranteed Amount is so reduced prior to the end of the Sale Term. If a Store and/or Distribution Center is eliminated from the Sale due to a Force Majeure Event, Agent will use its commercially reasonable efforts to transfer therefrom all Merchandise that is not the subject of insurance proceeds and include such Merchandise in the Sale at other Stores and/or Distribution Center.

8.9    Additional Agent Merchandise.

(a)    Agent shall be entitled to include in the Sale additional merchandise

procured by Agent which is of like kind, and no lesser quality to the Merchandise located in the Stores ("Additional Agent Merchandise").  Agent agrees that Additional Agent Merchandise, if any, shall be procured from either Merchant's existing vendors ("Existing Vendors") or third party vendors who are not Existing Vendors ("Third Party Vendors") that sell merchandise of like kind, and no lesser quality to the Merchandise; provided that, Additional Agent Merchandise, if any, procured from Third Party Vendors shall not exceed an amount equal to ten percent (10%) of the Merchandise (calculated at original invoice cost); provided further that, in the event Agent desires to include Additional Agent Merchandise that is not of like kind and of equal quality to the Merchandise, the inclusion of any such  merchandise shall be subject to the mutual agreement of Agent and Merchant. Agent shall be responsible for payment of the costs associated with procuring any Additional Agent Merchandise. Agent shall pay for all costs and expenses related to, or incurred in connection with, the marketing and sale of the Additional Agent Merchandise as an Expense of the Sale.  Agent further agrees that if it elects to include Additional Agent Merchandise in the Sale, Agent shall not utilize the Distribution Center for the receipt, processing, handling and distribution of such Additional Agent Merchandise as part of the Sale.

(b)     The Additional Agent Merchandise shall be at all times subject to the control of Agent.  If requested by Agent, Merchant shall, at Agent's expense as an Expense, insure the Additional Agent Merchandise and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers.

(c)     Any transactions relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from Agent to Merchant.  Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Merchandise shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code in effect in the State of Utah (the "UCC"). Agent is hereby granted a first priority security interest in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise proceeds, which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise proceeds).

(d)     Lender hereby consents to the payments to Agent of Additional Agent Merchandise proceeds.

(e)     In order to distinguish the Additional Agent Merchandise from the Merchandise located in the Stores, Agent shall affix distinctive tags and/or other identifying markings on all items of Additional Agent Merchandise, which shall enable Merchant and Agent to distinguish sales of the Additional Agent Merchandise from sales of the Merchandise. Additionally, Agent shall provide signage in the Stores notifying customers that the Additional Agent Merchandise has been included in the Sale.

8.10     E-Commerce Platform. In addition to, and without limiting, any other provision of this Agreement, Merchant hereby grants Agent a royalty-free license (exclusive during the Sale Term) to use Merchant's E-Commerce platform and related platform ("E-Commerce Platform"), to the extent available, to fulfill customer orders for purchases/sales of Merchandise (in Agent's capacity as Agent hereunder).  All proceeds of such sales shall constitute Proceeds under this Agreement. Merchant shall provide Agent with reasonable assistance with respect to the functionality of the site and the fulfillment of Merchandise sales; provided, however, that Agent shall reimburse Merchant for the following expenses incurred in connection with providing Distribution Center Services and  the use and operation of the E-Commerce platform: the fixed costs incurred for the following categories: (a) payroll and related employee benefits of managerial employees of the Distribution Centers and E-Commerce Platform, including: (i) vice president of E-Commerce Platform;: (ii) marketing manager; (iii) chief merchant; (iv) merchandise office manager; (v) internet sales manager; and (vi) assistant sale managers; (b) marketing expenses related to the E-Commerce Platform related to forwarding sites; and (c) amounts payable to third party providers in connection with maintaining the E-Commerce Platform and keeping it on-line, in an aggregate amount not to exceed $15,000 per week (collectively, the "E-Commerce Expense Reimbursement") (which shall be in addition to all other Expenses contemplated by this Agreement).  Agent shall use the E-Commerce Platform as a sales platform, and Merchant and Agent shall mutually agree on the date and procedures required to complete the Inventory Taking at the affected Distribution Center(s).

Section 9.     Employee Matters.

9.1     Merchant's Employees.  Subject to the applicable provisions of the Approval Order and any other provisions in this Agreement relating to employees, Agent may use Merchant's Store employees and at the Distribution Centers in the conduct of the Sale to the extent Agent deems expedient, and Agent may select and, with Merchant, schedule the number and type of Merchant's employees required for the Sale.  Agent shall identify any such Store employees and Distribution Center Employees to be used in connection with the Sale (each such employee, a "Retained Employee") prior to the Sale Commencement Date.  Retained Employees shall at all times remain employees of Merchant, and shall not be considered or deemed to be employees of Agent.  Merchant and Agent agree that except to the extent that wages, payroll taxes, benefits, and other costs relating to the employment of Retained Employees constitute Expenses hereunder and except as otherwise expressly provided in this Agreement, nothing contained in this Agreement and none of Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of Merchant's obligations relating to any of Merchant's employees including, without limitation, Excluded Benefits, Worker Adjustment Retraining Notification Act ("WARN Act") claims, and other termination-type claims and obligations, or any other amounts required to be paid by statute or law (except to the extent such items are amounts for which Merchant is entitled to indemnification pursuant hereto), nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.  Merchant shall not, without Agent's prior written consent, raise the salary or wages or increase the benefits for, or pay any bonuses or make any other extraordinary payments to, any of the Retained Employees, except as otherwise provided in this Agreement.

9.2     Termination of Employees by Merchant.  Agent may in its discretion stop using any Retained Employee at any time during the Sale.  In the event Agent determines to discontinue its use of any Retained Employee in connection with the conduct of the Sale, Agent will provide written notice to Merchant at least seven (7) days prior thereto, except for termination "for cause" (such as dishonesty, fraud, or breach of employee duties), in which case the seven (7) day notice period shall not apply; provided, however, that Agent shall immediately notify Merchant of the basis for such "cause".  During the Sale Term, Merchant shall not transfer or dismiss employees of the Stores except "for cause" without Agent's prior consent (which consent shall not be unreasonably withheld). Notwithstanding any other provision hereof, Agent will indemnify Merchant with respect to any claims by Retained Employees arising from Agent's treatment of such Retained Employees.

9.3     Payroll Matters.  Subject to Section 4.1 hereof, during the Sale Term Merchant shall process the payroll for all Retained Employees and any former employees and temporary labor engaged for the Sale.  Each Wednesday prior to the date on which such payroll is payable (or such other date as may be reasonably requested by Merchant to permit the funding of the payroll accounts before such payroll is due and payable) during the Sale Term, Agent shall transfer to Merchant's payroll accounts an amount equal to the base payroll for Retained Employees plus related payroll taxes, workers' compensation and benefits for such week, in the amount up to the Benefits Cap.

9.4     Employee Retention Bonuses.  Agent shall pay, as an Expense hereunder, retention bonuses ("Retention Bonuses") (which bonuses shall be inclusive of payroll taxes but as to which no benefits shall be payable) up to a maximum of approximately ten percent (10%) of base payroll, to certain Retained Employees who do not voluntarily leave employment and are not terminated "for cause", as Agent shall determine in its sole discretion.  The amount of such Retention Bonuses, which will be payable within thirty (30) days after the Sale Termination Date, shall be in an amount to be determined by Agent, in its discretion, and shall be processed through Merchant's payroll system. Agent shall provide Merchant with a copy of Agent's Retention Bonus plan within two (2) business days after the Sale Commencement Date.  Agent shall not utilize the Retention Bonus as a mechanism to encourage Retained Employees to act contrary to Merchant's best interests.

Section 10.     Conditions Precedent.

10.1     Conditions to Agent's Obligations.  The willingness of Agent to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Agent:

          (a)     All representations and warranties of Merchant hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and as of the Sale Commencement Date;

(b)     On No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated by this Agreement (including, without limitation, the Sale);

(c)     The Bankruptcy Court shall have entered the Approval Order, in substantially the form annexed hereto as Exhibit 10.1(c), on or before October 3, 2014;

(d)     The Bankruptcy Court shall have entered one or more interim and/or final orders, inter alia, approving a debtor-in-possession financing or cash collateral facility sufficient, in the opinion of Agent, to enable Merchant to perform its obligations under this Agreement during the Sale Term;

(e)     The Lender shall have executed this Agreement in the space provided therefor; and

(f)     Merchant shall have filed a motion  ("Lease Extension Motion") with the Bankruptcy Court seeking issuance of an order, pursuant to Section 365(d)(4) of the Bankruptcy Code, inter alia, extending the Merchant's time to assume or reject the leases for the Stores to a date not sooner that the applicable Sale Termination Date.

10.2   Conditions to Merchant's Obligations. The willingness of Merchant to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Merchant:

(a)     All representations and warranties of Agent hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and as of the Sale Commencement Date;

(b)     Notwithstanding anything in this Agreement or any Agency Document to the contrary, the enforceability of this Agreement is subject in all respects to Merchant's express written approval and acceptance of any Exhibit or Agency Document not fully executed by the parties and attached hereto; and

(c)     The Bankruptcy Court shall have entered the Approval Order.

Section 11.   Representations, Warranties and Covenants.

11.1   Merchant's Representations, Warranties, and Covenants.   Merchant hereby represents, warrants, and covenants in favor of Agent as follows:

(a)     Merchant (i) is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware; (ii) has all requisite power and authority to own, lease, and operate its assets and properties and to carry on its business as presently conducted; and (iii) is, and during the Sale Term will continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the

nature of its business or properties requires such qualification, including all jurisdictions in which the Distribution Centers and each Store is/are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)     Subject to the entry of the Approval Order, Merchant has the right, power, and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations hereunder.  Subject to the entry of the Approval Order, Merchant has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval on the part of Merchant is required for Merchant to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale.  Subject to the issuance and entry of the Approval Order, each of the Agency Documents has been duly executed and delivered by Merchant and constitutes the legal, valid, and binding obligation of Merchant, enforceable in accordance with its terms.  Subject to the entry of the Approval Order, no court order or decree of any federal, state, local, or provincial governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for Merchant's consummation of, the transactions contemplated by this Agreement, and no consent of any third party that has not been obtained is required therefor, other than as shall be obtained prior to the Sale Commencement Date, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.  Other than for any consent as shall be obtained prior to the Sale Commencement Date, and any contracts or agreements identified by Merchant to Agent on or prior to the Sale Commencement Date, no contract or other agreement to which Merchant is a party or by which Merchant is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

(c)     Effective as of September 1, 2014, Merchant ceased normal replenishment of Merchandise and supplies in and to the Stores, except Merchant represents that some limited, non-normal course replenishment has been done since September 1, 2014.

(d)     Merchant (i) except as set forth on Exhibit 11.1(d), owns and will own at all times during the Sale Term, good and marketable title to all of the Merchandise free and clear of all liens, claims, and encumbrances of any nature; provided that, the liens identified in Exhibit 11.1(d) shall attach to the Guaranteed Amount, and such other amounts due Merchant hereunder in the same extent and priority that such liens had in the Merchandise and Owned FF&E; and (ii) Merchant shall not create, incur, assume, or suffer to exist any security interest, lien, or other charge or encumbrance upon or with respect to any of the Merchandise or the Proceeds, in each case, except for such pre-existing liens and security interests as shall have been disclosed by Merchant to Agent and identified in Exhibit 11.1(d) hereof, which liens and security interests shall, pursuant to the Approval Order, attach only to the Guaranteed Amount, the Additional Agent Merchandise Fee, Expenses, and any other amounts payable to Merchant hereunder.

(e)     Merchant has maintained its pricing files at all Stores in the ordinary course of business, and prices charged to the public for goods (whether in-store, by advertisement, or otherwise) are the same in all material respects as set forth in such pricing files for the periods indicated therein (without consideration of any point of sale markdowns, advertised sales, and other customary in-store promotional or clearance activities).  All pricing files and records relative to the Merchandise have been made available to Agent and Agent has acknowledged that the current pricing files provided as of October 2, 2014, contains certain adjustments related to the discontinuance of POS markdowns in the ordinary course of business and Agent waives and releases Merchant from any purported breach of this representation related thereto.

(f)     Merchant shall ticket or mark all items of inventory received at the Stores prior to the Sale Commencement Date in a manner consistent with similar Merchandise located at the Stores and in accordance with Merchant's past practices and policies relative to pricing and marking inventory.

(g)     To the best of Merchant's knowledge, all Merchandise is in material compliance with all applicable federal, state, and local product safety laws, rules, and standards. Merchant shall provide Agent with its historic policies and practices, if any, regarding product recalls prior to the Sale Commencement Date.

(h)     Subject to the provisions of the Approval Order, Agent shall have the right during the Sale Term to the unencumbered use and occupancy of, and peaceful and quiet possession of, the Stores and the Distribution Center, the assets currently located at the Stores and Distribution Center, and the utilities and other services provided at the Stores and Distribution Center. Merchant shall, throughout the Sale Term, maintain in good working order, condition and repair all cash registers, heating systems, air conditioning systems, elevators, escalators and all other mechanical devices necessary or appropriate for the conduct of the Sale at the Stores.  Except as otherwise restricted by the Bankruptcy Code or as provided herein and absent a bona fide dispute, throughout the Sale Term Merchant shall remain current on all expenses and payables necessary for the conduct of the Sale.

(i)     Subject to the Approval Order, Merchant has paid and shall continue to pay throughout the Sale Term, all self-insured or Merchant-funded employee benefit programs for Stores' employees, including health and medical benefits and insurance and all proper claims made or to be made in accordance with such programs.

(j)     Supplies have not been, since September 1, 2014, and shall not be, prior to the Sale Commencement Date, transferred by Merchant to or from the Stores so as to alter the mix or quantity of supplies at the Stores from that existing on such date, other than in the ordinary course of business.

(k)     Since September 1, 2014, Merchant (i) has not (and shall not, up to the Sale Commencement Date) marked up or raised the price of any items of Merchandise, (ii) has not reduced has the price of any items of Merchandise, (iii) has sold inventory during such period at customary prices consistent with the ordinary course of business, and has not promoted

34

or advertised any sales or in-store promotions (including POS promotions) to the public other than as described on Exhibit 11.1(k) (in all cases whether or not consistent with Merchant's ordinary course of business consistent with historic periods), and (iv) has not removed or altered any tickets or any indicia of clearance merchandise or POS promotion, except in the ordinary course of business.

(l)     Except for (i) the Bankruptcy Case and (ii) the matters set forth on Exhibit 11.1(l), no action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Merchant, or has been settled or resolved, or to Merchant's knowledge, is threatened against or affects Merchant, relative to Merchant's business or properties, or which questions the validity of this Agreement, or that if adversely determined, would adversely affect the conduct of the Sale.

(m)     Merchant is not a party to any collective bargaining agreements with its employees. No labor unions represent Merchant's employees at the Distribution Centers or at any Store. There are currently no strikes, work stoppages, or other labor disturbances affecting the Distribution Centers or any Store, or Merchant's central office facilities.

(n)     Since September 1, 2014, Merchant has not taken, and shall not throughout the Sale Term take, any actions with the intent of increasing the Expenses of the Sale, including without limitation increasing salaries or other amounts payable to employees; except to the extent an employee was due an annual raise in the ordinary course.

(o)     Since September 1, 2014, Merchant has operated, and, except as otherwise restricted by the Bankruptcy Code or as provided herein (including as described in Section 11.1(c)), through the Sale Commencement Date Merchant covenants to continue to operate, the Stores in all material respects in the ordinary course of business including without limitation by: (i) selling inventory during such period at customary prices consistent with the ordinary course of business and not promoting or advertising any sales or in-store promotions (including POS promotions) to the public other than as described on Exhibit 11.1(o) (in all cases whether or not consistent with Merchant's ordinary course of business consistent with historic periods); (ii) not returning inventory to vendors and not transferring inventory or supplies out of or to the Stores; and (iii) except as may occur in the ordinary course of business, not making any management personnel moves or changes at the Stores.

(p)     To Merchant's knowledge, formed after reasonable inquiry, all documents, information and supplements provided by Merchant to Agent in connection with Agent's due diligence and the negotiation of this Agreement were true and accurate in all material respects at the time provided.

(q)     No Store lease or similar occupancy agreement has expired, nor shall expire at any time until the conclusion of the Sale Term in such Store (by its terms or otherwise).

(r)     As of the Sale Commencement Date, the mix of goods (as to type (e.g., clearance or regular) and as to category shall in all material respects be consistent with the respective levels and mixes set forth in the Cost File.

(s)     Merchant has not since September 1, 2014 shipped any Excluded Defective Merchandise from the Distribution Centers to the Stores.  Merchant will not ship any Excluded Defective Merchandise from the date of this Agreement from the Distribution Centers to the Stores.

(t)     Merchant (i) at the Sale Commencement Date will have, sufficient internal funds (without giving effect to any unfunded financing regardless of whether any such financing is committed) to consummate the transactions contemplated by this Agreement and the other Agency Documents, (ii) at the Sale Commencement Date will have, the resources and capabilities (financial or otherwise) to perform its obligations hereunder and under the other Agency Documents, and (iii) at the Sale Commencement Date, will not have incurred any obligation, commitment, restriction or liability of any kind which would impair or adversely affect such funds, resources and capabilities.

(u)     Merchant shall not, prior to the Sale Termination Date, offer any promotions or discounts at the Stores except as detailed on Exhibit 11.1(u).

(v)     Merchant shall use its good faith best efforts to prosecute the Lease Extension Motion and obtain the relief contemplated thereby.

11.2   Agent's Representations, Warranties and Covenants.  Agent hereby represents, warrants, and covenants in favor of Merchant as follows:

(a)     Agent (i) is a limited liability company duly and validly existing and in good standing under the laws of the State of California; (ii) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby; and (iii) is and during the Sale Term will continue to be duly authorized and qualified as a foreign company to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

(b)     Agent has the right, power, and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale.  Each of the Agency Documents has been duly executed and delivered by Agent and constitutes the legal, valid, and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, provincial, state, or local governmental authority or regulatory body is in effect that would prevent or impair or is required for Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor other than as provided herein.  No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

(c)      No action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved, or to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement, or which if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

(d)      Agent has acknowledged that the current pricing files provided as of October 2, 2014, contains certain adjustments related to the discontinuance of POS markdowns in the ordinary course of business and Agent waives and releases Merchant from any purported breach of this representation related thereto.

<u>Section 12</u>.    <u>Insurance</u>.

12.1    <u>Merchant's Liability Insurance</u>.  Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, all of its liability insurance policies including, but not limited to, products liability, comprehensive public liability, auto liability, and umbrella liability insurance, covering injuries to persons and property in, or in connection with Merchant's operation of the Stores, and shall use best efforts to cause Agent to be named an additional insured with respect to all such policies.    Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof and naming Agent as an additional named insured, in form reasonably satisfactory to Agent.  All such policies shall require at least thirty (30) days prior notice to Agent of cancellation, non-renewal, or material change.  In the event of a claim under any such policies, (a) Merchant shall be responsible for the payment of all deductibles, retentions, or self-insured amounts to the extent such claim arises from or relates to the alleged acts or omissions of Merchant or its employees (other than Retained Employees), agents (other than Agent's employees), or independent contractors (other than Agent and Supervisors hired by Agent in conjunction with the Sale) and (b) Agent shall be responsible for the payment of all deductibles, retentions, or self-insured amounts (which amounts shall constitute Expenses) to the extent such claim arises from or relates to the alleged acts or omissions of Agent or its employees, agents, or independent contractors, including Retained Employees.

12.2    <u>Merchant's Casualty Insurance</u>.  Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, fire, flood, theft, and extended coverage casualty insurance covering the Merchandise in a total amount equal to no less than the Cost Value thereof, which coverage shall be reduced from time to time to take into account the sale of Merchandise. In the event of a loss to the Merchandise on or after the date of this Agreement, the proceeds of such insurance attributable to the Merchandise and/or Additional Agent Merchandise (net of any deductible) shall constitute Proceeds. Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof, in form and substance reasonably satisfactory to Agent.  All such policies shall require at least thirty (30) days prior notice to Agent of cancellation, non-renewal, or material change. Merchant shall not make any change in the amount of any deductibles or self-insurance amounts prior to the Sale Termination Date (as may be extended from time to time as set forth herein) without Agent's prior written consent.

12.3    Worker's Compensation Insurance.    Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, worker's compensation insurance (including employer liability insurance) covering all Retained Employees in compliance with all statutory requirements.  Prior to the Sale Commencement Date, Merchant shall deliver to Agent a certificate of its insurance broker or carrier evidencing such insurance.

12.4    Agent's Insurance.    As an Expense of the Sale, Agent shall maintain throughout the Sale Term, in such amounts as it currently has in effect, comprehensive public liability and automobile liability insurance policies covering injuries to persons and property in or in connection with Agent's agency at the Stores, and shall cause Merchant to be named an additional insured with respect to such policies. Prior to the Sale Commencement Date, Agent shall deliver to Merchant certificates evidencing such insurance policies, setting forth the duration thereof and naming Merchant as an additional insured, in form and substance reasonably satisfactory to Merchant.  In the event of a claim under such policies, Agent shall be responsible for the payment of all deductibles, retentions, or self-insured amounts thereunder, to the extent such claim arises from or relates to the alleged acts or omissions of Agent or Agent's employees, agents or Supervisors.

12.5    Risk of Loss.    Without limiting any other provision of this Agreement, Merchant acknowledges that Agent is conducting the Sale on behalf of Merchant solely in the capacity of an agent, and that in such capacity (i) Agent shall not be deemed to be in possession or control of the Stores or the assets located therein or associated therewith, or of Merchant's employees located at the Stores, and (ii) except as expressly provided in this Agreement, Agent does not assume any of Merchant's obligations or liabilities with respect to any of the foregoing.  Agent shall not be deemed to be a successor employer.  Merchant and Agent agree that, subject to the terms of this Agreement, Agent shall bear all responsibility for liability claims of customers, employees, and other persons arising from events occurring at the Stores during and after the Sale Term (an "Agent Claim").  In the event of any liability claim other than an Agent Claim, Merchant shall administer such claim and shall present such claim to Merchant's liability insurance carrier in accordance with Merchant's policies and procedures existing immediately prior to the Sale Commencement Date, and shall provide a copy of the initial documentation relating to such claim to Agent at the address listed in this Agreement.  To the extent that Merchant and Agent agree that a claim constitutes an Agent Claim, Agent shall administer such claim and shall present such claim to its liability insurance carrier, and shall provide copies of the initial documentation relating to such claim to Merchant.  In the event that Merchant and Agent cannot agree whether a claim constitutes an Agent Claim, each party shall present the claim to its own liability insurance carrier, and a copy of the initial claim documentation shall be delivered to the other party to the address designated for delivery of notices hereunder.

Section 13.    Indemnification.

13.1    Merchant Indemnification.    Merchant shall indemnify and hold Agent and each Agent Indemnified Party harmless from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Agent resulting from or related to:

(a)      Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document;

(b)      any failure of Merchant to pay to its employees any wages, salaries, or benefits due to such employees during the Sale Term or other claims asserted against Agent by Merchant's employees resulting from Merchant's (and not Agent's) treatment of its employees;

(c)      subject to Agent's compliance with its obligations under Section 8.3 hereof, any failure by Merchant to pay any Sales Taxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable law to be filed in respect thereof;

(d)      any consumer warranty or products liability claims relating to Merchandise and/or Additional Agent Merchandise;

(e)      any liability or other claims asserted by customers, any of Merchant's employees, or any other person against any Agent Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the WARN Act);

(f)      any harassment or any other unlawful, tortious, or otherwise actionable treatment of any customers, employees or agents of Agent by Merchant or any of its representatives; and

(g)      the gross negligence or willful misconduct of Merchant or any of its officers, directors, employees, agents (other than Agent), or representatives.

The indemnification obligations set forth in this Section 13.1 shall be in addition to (and shall not limit) any other indemnification obligations of Merchant set forth in this Agreement, including without limitation those set forth in Section 8.3(a).

13.2    <u>Agent Indemnification</u>.  Agent shall indemnify and hold harmless Merchant and the Merchant Indemnified Parties from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Merchant resulting from or related to (including acts or omissions of persons or entities affiliated with or acting on behalf of Agent):

(a)      Agent's material breach of or failure to comply with any Safety Laws (as defined in the Approval Order) or any of its agreements, covenants, representations, or warranties contained in any Agency Document;

(b)      any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any employees or agents of Merchant by Agent or any of its employees, agents, independent contractors, Supervisors, or other officers, directors, or representatives of Agent;

(c)     any claims by any party engaged by Agent as an employee or independent contractor arising out of such engagement;

(d)     any Agent Claims;

(e)     any Additional Taxes and Penalties arising out of Agent's failure to collect and/or remit to Merchant correct amounts of Sales Taxes (including any such failure resulting from Agent's use of any system other than Merchant's point of sale system to compute Sales Taxes relating to the Sale);

(h)     the gross negligence, willful misconduct, or fraud of Agent or any of its officers, directors, employees, agents, or representatives; and

(i)     any consumer warranty or products liability claims arising out of or related to the sale of Additional Agent Merchandise.

The indemnification obligations set forth in this Section 13.2 shall be in addition to (and shall not limit) any other indemnification obligations of Agent set forth in this Agreement, including without limitation those set forth in Section 8.3(a).

Section 14.     Defaults.

The following shall constitute "Events of Default" hereunder:

(a)     Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

(b)     Any representation or warranty made by Merchant or Agent proves untrue in any material respect as of the date made or at any time and throughout the Sale Term;

(c)     The filing of a motion by any party to covert or the conversion of the Merchant's bankruptcy case to a case under another chapter of the Bankruptcy Code (other than chapter 11) or the filing of a motion by any party to appoint or the appointment of a chapter 11 trustee; or

(d)     Subject to Section 8.8 hereof, the Sale is terminated or materially interrupted or impaired at any Store for any reason other than (i) an Event of Default by Agent or (ii) any other material breach or action by Agent not authorized hereunder.

In the event of an Event of Default, the non-defaulting party (in the case of (a) or (b) above, or the Agent in the case of (c) or (d) above) may, in its discretion, elect to terminate this Agreement upon seven (7) business days' written notice to the other party and pursue any and all rights and remedies and damages resulting from such default hereunder in the event such cure is not effected by the defaulting party.

40

Section 15.    Fixtures.

(a)    With respect to any furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking owned by Merchant and located at the Stores, Distribution Centers and Merchant's corporate offices (collectively, the "Owned FF&E"), Agent shall, at Merchant's election (the "FF&E Sale Option"), either (i) sell the Owned FF&E strictly on a commission basis (the "FF&E Commission Option"), or (ii) sell the Owned FF&E on a guaranteed fee basis (the "FF&E Guaranty Option"); provided that, the FF&E Guaranty Option shall be subject to the Merchant and Agent agreeing on a mutually acceptable FF&E/asset listing. Merchant shall exercise the aforementioned FF&E Sale Option by written notice to Agent by the date that is not later than ten (10) calendar days after the Sale Commencement Date (such date being defined as the "FF&E Sale Election Deadline"). In the event Merchant elects the FF&E Commission Option, Agent shall be entitled to receive a commission equal to twenty percent (20%) of the gross proceeds from the sale of such Owned FF&E ("Agent's FF&E Commission"); provided, however, in such case Merchant shall be responsible for payment of expenses incurred in connection with the disposition of the Owned FF&E ("FF&E Disposition Expenses") in accordance with a budget to be mutually agreed upon between Merchant and Agent, in consultation with Lender ("FF&E Disposition Budget"), and all proceeds realized from the disposition of the Owned FF&E, after deduction of applicable sales taxes, Agent's FF&E Commission, and the FF&E Disposition Expenses (collectively, the "Net FF&E Proceeds"), shall be paid to Lender, as Merchant's designee. In the event Merchant elects the FF&E Guaranty Option, Agent shall pay Merchant a lump sum payment in an amount to be agreed upon between Agent and Merchant, in consultation with Lender (hereinafter, the "FF&E Guaranty Amount"), in which case all costs and expenses associated with the disposition of Owned FF&E shall be borne by Agent, and all proceeds realized from the sale or other disposition of the Owned FF&E (after payment of the applicable FF&E Guaranty Amount and net of any applicable sales taxes) shall be retained by Agent for its sole account. In the event that Merchant elects to have someone other than the Agent dispose of the Owned FF&E at one or more of the Distribution Center, corporate offices, and Stores, it is understood that such third party's efforts shall not interfere in any way with Agent's conduct of the Sale.

(b)    Anything in this Agreement to the contrary notwithstanding, Agent shall be authorized to abandon any and all unsold Owned FF&E (and all other furniture, fixtures, and equipment at the Stores, Distribution Centers and corporate headquarters) in place without any cost or liability to Agent. Agent shall have no responsibility whatsoever with respect to furniture, fixtures, and equipment located at the Stores, Distribution Centers and/or corporate offices which are not owned by Merchant.

(c)    Merchant hereby represents to Agent that: (i) subject to the Approval Order, all Owned FF&E may be sold by Agent on Merchant's behalf, free and clear of all claims, liens and encumbrances of any kind; and (ii) all such Owned FF&E is devoid of Hazardous Materials.

(d)    Anything in this Agreement to the contrary notwithstanding, Agent will not have any obligation whatsoever to purchase, sell, make, store, handle, treat, dispose, generate,

41

transport or remove any Hazardous Materials that may be located at the Stores, Distribution Centers and/or Merchant's corporate offices or otherwise. Agent shall have no liability to any party for any environmental action brought: (i) that is related to the storage, handling, treatment, disposition, generation, or transportation of Hazardous Materials, or (ii) in connection with any remedial actions associated therewith or the Stores, Distribution Centers and/or Merchant's corporate offices. Merchant (and not Agent) shall be solely responsible to remove from the Stores, Distribution Centers and Merchant's corporate offices all Hazardous Materials. For purposes of this Agreement, the term "Hazardous Materials" means, collectively, any chemical, solid, liquid, gas, or other substance having the characteristics identified in, listed under, or designated pursuant to (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C.A. 9601(14), as a "hazardous substance", (ii) the Resource Conservation and Recovery Act, 42 U.S.C.A. 6903(5) and 6921, as a "hazardous waste", or (iii) any other laws, statutes or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public health or welfare or to the environment or as otherwise requiring special handling, collection, storage, treatment, disposal, or transportation.

Section 16.    Miscellaneous.

16.1    Notices.    All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, by e-mail, and/or a recognized overnight delivery service, as follows:

If to Agent:

Great American Group, LLC
21860 Burbank Blvd., Suite 300 South
Woodland Hills, CA 91367
Attn:    Mark P. Naughton
Tel:    847 943 2086
Email: mnaughton@greatamerican.com

If to Merchant:

Naartjie Custom Kids, Inc.
3676 W California Ave., Suite D-100
Salt Lake City, UT 84104
Attn:    _____
Tel:    _____
Email: _____

With a copy to (which shall not constitute notice):

Dorsey & Whitney LLP
136 South Main Street
Suite 1000

Salt Lake City, UT 84101-1655
Attn:   Annette W. Jarvis, Esq.
Tel:     (801) 933-7360
Email: jarvis.annette@dorsey.com


If to Lender:

Salus Capital Partners, LLC
197 First Avenue, suite 250
Needham Heights, MA 02494
Attn:   Kyle C. Shonak
Tel:     617.420.2663
Email:  kshonak@saluscapital.com


With a copy to (which shall not constitute notice):

Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Attn:   Jeffrey M. Wolf, Esq.
Tel:     617.310.6041
Email:  wolfje@gtlaw.com

If to the Official Committee of Unsecured Creditors:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA  90067-4003
Attn:   Jeffrey N. Pomerantz
Tel:     310-277-6910
Email: jpomerantz@pszjlaw.com


16.2    Governing Law; Consent to Jurisdiction.  This Agreement shall be governed and construed in accordance with the laws of the State of Utah, without regard to conflicts of laws principles thereof.  The parties hereto agree that the Bankruptcy Court (and the District Court and Circuit Court of Appeal with appellate jurisdiction over the Bankruptcy Court) shall retain exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.

16.3    Entire Agreement.  This Agreement, the Exhibits hereto, and the Agency Documents (subject, in each instance, to the Approval Order) contain the entire agreement

between the Parties with respect to the transactions contemplated hereby and supersede and cancel all prior agreements, including but not limited to all proposals, letters of intent, or representations, written or oral, with respect thereto.

16.4    Amendments.  This Agreement, the Exhibits hereto, and the Agency Documents may not be modified except in a written instrument executed by each of the Merchant and Agent; provided, however, that no modification may be made to Sections 3.3(e), 3.3(f), 3.3(g), and 8.8 without the express consent of the Lender.

16.5    No Waiver.  No party's consent to or waiver of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party.  Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

16.6    Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the successors and assigns of Agent and Merchant, including but not limited to any chapter 11 or chapter 7 trustee.  No party to this Agreement shall be permitted to assign its obligations under this Agreement.

16.7    Execution in Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one agreement.  This Agreement may be executed by facsimile, and such facsimile signature shall be treated as an original signature hereunder.

16.8    Section Headings.  The headings of sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

16.9    Survival.  All representations, warranties, covenants and agreements made herein shall be continuing, shall be considered to have been relied upon by the Parties and shall survive the execution, delivery, and performance of this Agreement.

16.10.  Termination.  This Agreement shall remain in full force and effect until the first to occur of (i) receipt by Merchant of written notice from Agent that any of the conditions specified in Section 10 hereof have not been satisfied or (ii) termination upon the occurrence of an Event of Default in accordance with Section 14 of this Agreement, or (iii) the expiration of the Sale Term and completion and certification by Merchant and Agent of the Final Reconciliation pursuant to Section 8.7(b) above.  Notwithstanding the foregoing, (a) the representations, warranties, and indemnities of Merchant and Agent contained herein and the provisions of Section 11 above, and (b) any claim arising from a breach of this Agreement prior to its termination, shall survive the termination of this Agreement pursuant to this Section 16.10.

16.11   Agent's Security Interest.

44

(a)    In consideration of and subject to payment by Agent of the Initial Guaranty Payment on the Payment Date and delivery of the Letter of Credit to the Merchant, Merchant hereby grants to Agent first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 hereof; (v) in the event Merchant elects the FF&E Guaranty Option, the Owned FF&E and the proceeds realized from the sale or other disposition of Owned FF&E after payment of the FF&E Guaranty Amount; or, alternatively, the FF&E Commission; and (vii) all "proceeds" (within the meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of Merchant to Agent hereunder. Upon entry of the Approval Order, payment of the Initial Guaranty Payment on the Payment Date, and delivery of the Letter of Credit to the Lender, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

(b)    Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Lender and Merchant), the Agent's security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests, provided, however, that (x) until the Merchant receives payment in full of the Guaranteed Amount, the Additional Agent Merchandise Fee, the , Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, the security interest granted to Agent hereunder shall be junior and subordinate in all respects to the security interests of Lender in the Agent Collateral but solely to the extent and amount of the unpaid portion of the any of the Guaranteed Amount, the Additional Agent Merchandise Fee (if any), the , Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, and (y) upon payment in full of the Guaranteed Amount, the Additional Agent Merchandise Fee (if any), the , Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, any security interest or lien of the Lender in the Agent Collateral shall be junior and subordinate in all respects to the security interest and liens of Agent in the Agent Collateral.  Merchant shall cooperate with Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under this Agreement.

(c)    Merchant will not sell, grant, assign or transfer any security interest in, or permit to exist any encumbrance on, any of the Agent Collateral other than in favor of the Agent and Lender.

(d)    In the event of a Default by the Merchant hereunder, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC.

16.12   Any notice required to be provided to Lender under the terms of this Agreement shall also be provided to counsel for the Committee of Creditors Holding General Unsecured Claims (the "Committee").  Any time the Debtor is required to consult with the Lender under the terms of this Agreement it shall also be required to consult with the Committee.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Agent and Merchant hereby execute this Agency Agreement as of the day and year first written above.

**AGENT:**

**GREAT AMERICAN GROUP, LLC**

By: _____
Name: _Andy Gumaer_____
Title: _CEO_____

**MERCHANT:**

**NAARTJIE CUSTOM KIDS, INC.,**
Debtor and Debtor in Possession

By: _____
Name: _Jeff Nevland_____
Title: _CRO_____

**THE PROVISIONS OF THIS AGREEMENT
ARE HEREBY CONSENTED AND AGREED TO,
INCLUDING SECTIONS 3.3(c), 3.3(d), 3.3(g), 3.3(h),
4.1, 8.3, 8.8, 8.9, 15, 16.11 and 16.12:**

**SALUS CAPITAL PARTNERS, LLC**,
As Lender

By: _____
　　　　Name:　Kyle Shonak
　　　　Title:　Executive Vice President-Special Opportunities

# EXHIBIT A-1

**Naartjie Custom Kids, Inc.**

**Exhibit A-1**

| Store List |
| --- |

| Store # | Name | Address | City | State | Zip | Phone | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1 | Valley Fair Mall | 2855 Stevens Creek Blvd., Suite 1285 | Santa Clara | CA | 95050 | 408-244-2911 | 1,618 |
| 4 | Glendale Galleria | 1305 Glendale Galleria, Suite B004 | Glendale | CA | 91210 | 818-662-9070 | 1,248 |
| 6 | Roseville Galleria | 1151 Galleria Blvd., Suite 169A | Roseville | CA | 95678 | 916-787-0707 | 1,245 |
| 7 | UTC | 4525 La Jolla Village Drive, Suite D-21 | San Diego | CA | 92122 | 858-625-0940 | 1,456 |
| 8 | Sherman Oaks | 14006 Riverside Drive, Space 115 | Sherman Oaks | CA | 91423 | 818-990-9614 | 1,306 |
| 9 | Mission Viejo | 660 The Shops at Mission Viejo, Floor 2 Space 66 | Mission Viejo | CA | 92691 | 949-365-1791 | 1,297 |
| 10 | Santa Barbara | 933 State Street | Santa Barbara | CA | 93101 | 805-965-9870 | 1,471 |
| 11 | Rancho Cucamonga | 12512 North Main Street | Rancho Cucamonga | CA | 91739 | 909-803-2888 | 1,142 |
| 12 | Fashion Place | 6191 South State Street, Unit 262 | Murray | UT | 84107 | 801-747-2123 | 1,785 |
| 14 | South Towne | 10450 South State Street, Suite 1232 | Sandy | UT | 84070 | 801-523-8778 | 1,670 |
| 15 | Century City | 10250 Santa Monica Blvd., Suite 1230 | Los AngeleS | CA | 90067 | 310-284-5740 | 1,406 |
| 16 | Washington Square | 9390 SW Washington Sq. Rd., Suite R09 | Tigard | OR | 97223 | 503-620-2697 | 1,646 |
| 17 | Anthem | 4250 West Anthem Way, Suite 560 | Phoenix | AZ | 85086 | 623-465-9949 | 1,407 |
| 18 | Irvine Spectrum | 95 Fortune Drive, Suite 621 | Irvine | CA | 92618 | 949-450-1439 | 1,374 |
| 20 | Topanga | 6600 Topanga Canyon Blvd., Suite 1017 | Cangoa Park | CA | 91303 | 818-704-7187 | 1,353 |
| 21 | SanTan | 2174 E. Williams Field Rd., Suite 114 | Gilbert | AZ | 85296 | 480-786-9966 | 1,239 |
| 22 | Redmond | 7335 164th Avenue NE, Space I-125 | Redmond | WA | 98052 | 425-556-9700 | 1,446 |
| 23 | Flatiron | One West Flatiron Crossing Dr., Suite 2202 | Broomfield | CO | 80021 | 303-466-1357 | 1,258 |
| 24 | Oxmoor | 7900 Shelbyville Road, Space E-14 | Louisville | KY | 40222 | 502-425-7713 | 1,600 |
| 25 | Danbury | 7 Backus Avenue, Suite #C212 | Danbury | CT | 06810 | 203-739-0787 | 1,210 |
| 26 | Tysons Corner | 7964L Tysons Corner Center, Suite D-6L | McLean | VA | 22102 | 703-288-0067 | 1,560 |
| 27 | Fair Oaks | 11823U Fair Oaks Mall, Suite H-230 | Fairfax | VA | 22033 | 703-865-7320 | 1,290 |
| 28 | Wellington | 10300 W. Forest Hill Blvd., Suite #169 | Wellington | FL | 33414 | 561-798-5593 | 1,203 |
| 29 | La Cantera | 15900 La Cantera Parkway, Suite #9895 | San Antonio | TX | 78256 | 210-561-8845 | 1,563 |
| 31 | Natick | 1245 Worcester, Suite #2078 | Natick | MA | 01760 | 508-655-0733 | 1,427 |
| 32 | Bridgewater | 400 Commons Way, Suite #2240 | Bridgewater | NJ | 08807 | 908-707-2445 | 1,447 |
| 33 | Mall of Georgia | 3333 Buford Dr., Suite 1017A | Buford | GA | 30519 | 770-831-9182 | 1,219 |
| 34 | Houston Galleria | 5135 West Alabama, Space 5290 | Houston | TX | 77056 | 713-850-7992 | 1,387 |
| 35 | Montgomery | 7101 Democracy Blvd., Space #2476 | Bethesda | MD | 20817 | 301-365-0322 | 1,328 |
| 36 | Southlake | 120 State Street | Southlake | TX | 76092 | 817-488-2859 | 1,491 |
| 37 | Riverhead | 1770 West Main Street, Suite #404 | Riverhead | NY | 11901 | 631-208-2912 | 2,250 |
| 38 | Garden State | 1 Garden State Plaza, Space #L7D | Paramus | NJ | 07652 | 201-712-7905 | 1,142 |
| 39 | Alderwood | 3000 184th Street SW, Space #0438 | Lynnwood | WA | 98037 | 425-673-6215 | 1,097 |
| 40 | Sevierville | 1645 Parkway, Suite 1130 | Sevierville | TN | 37862 | 865-429-4445 | 1,709 |
| 41 | West County | 53 W. County Center, Suite #1161 | Des Peres | MO | 63131 | 314-822-0950 | 1,539 |
| 42 | Deer Park | 1520 The Arches Circle | Deer Park | NY | 11729 | 631-667-2683 | 1,756 |
| 43 | Eastview | 7979 Pittsford-Victor Road, Suite #436 | Victor | NY | 14564 | 585-223-0011 | 1,171 |
| 44 | North Star | 7400 San Pedro, Space #460 | San Antonio | TX | 78216 | 210-366-0435 | 1,273 |
| 45 | Stanford | 180 El Camino Real, Suite #210 | Palo Alto | CA | 94304 | 650-473-6974 | 1,269 |
| 46 | Woodburn | 1001 Arney Rd., Suite #308 | Woodburn | OR | 97071 | 503-981-9021 | 1,843 |
| 47 | San Marcos | 4015 I-35 South, Suite #920 | San Marcos | TX | 78666 | 512-392-5851 | 3,000 |
| 48 | Oak Park | 11413 West 95th Street, Suite #45 | Overland Park | KS | 66214 | 913-599-3743 | 1,208 |
| 49 | Myrtle Beach | 10835 Kings Rd., Suite #704 | Myrtle Beach | SC | 29572 | 843-497-4700 | 1,606 |
| 50 | Great Mall | 210 Great Mall Drive, Suite #210 | Milpitas, CA | CA | 95035 | 408-942-5437 | 1,557 |
| 51 | Stonebriar | 2601 Preston Rd., Suite #1022 | Frisco | TX | 75034 | 214-705-9376 | 1,252 |
| 52 | Mall of America | 230 S. Avenue, Suite #S230 | Bloomington | MN | 55425 | 952-854-4714 | 1,178 |
| 53 | Towson Town Center | 825 Dulaney Valley Rd., Suite #3360 | Towson | MD | 21204 | 410-828-0333 | 1,294 |
| 54 | Streets at Southpoint | 6910 Fayetteville Road, Suite #261 | Durham | NC | 27713 | 919-806-1661 | 1,503 |
| 55 | Friendly Center | 806 Friendly Center Road | Greensboro | NC | 27408 | 336-854-2882 | 1,500 |
| 56 | Staten Island | 2655 Richmond Avenue, Suite #1305 | Staten Island | NY | 10314 | 718-983-6100 | 1,500 |
| 57 | North Point Mall | 1094 North Point Circle, Space #1094 | Alpharetta | GA | 30022 | 678-762-0088 | 1,863 |
| 58 | Carolina Place | 11025 Carolina Place Parkway, Space #D-12 | Pineville | NC | 28134 | 704-542-7222 | 1,215 |
| 59 | Outlets at OKC | 7628 West Reno Avenue, Suite #105 | Oklahoma City | OK | 73127 | 405-491-2577 | 2,116 |
| 61 | Fashion Outlets | 5220 Fashion Outlet Way, Suite #1083 | Rosemont | IL | 60018 | 847-928-2692 | 1,555 |
| 62 | Outlets at ATL | 915 Ridgewalk Parkway, Suite #402 | Woodstock | GA | 30188 | 770-592-1641 | 1,494 |
| **55** | | | | | | *Average Selling Sq. Ft.* | **1,472** |

# EXHIBIT A-2

**Naartjie Custom Kids, Inc.**

**Exhibit A-2**

| Distribution Center List |
|---|

| Store # | Name | Address | | City | State | Zip | Phone | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|---|
| 30 | WEB DC | 3676 California Avenue | Suite #D 101 | Salt Lake City | UT | 84104 | 801-973-7988 | 28,000 |
| 60 | CAN DC | 2880 Argentia Road | Unit #5 | Mississauga | ON | L5N 7X8 | 905-567-1414 | 3,054 |
| **2** | | | | | | | *Average Selling Sq. Ft.* | **15,527** |

# EXHIBIT 3.1(d)

**Naartjie Custom Kids, Inc.**
**Exhibit 3.1(d)**

**Merchandise Threshold Schedule**

| Cost Value | Adjustment Points | Adjusted Guaranty |
|---|---|---|
| 8,100,000 | 0.39% | 109.90% |
| 8,070,000 | 0.39% | 110.29% |
| 8,040,000 | 0.39% | 110.68% |
| 8,010,000 | 0.39% | 111.07% |
| 7,980,000 | 0.39% | 111.46% |
| 7,950,000 | 0.36% | 111.85% |
| 7,920,000 | 0.36% | 112.21% |
| 7,890,000 | 0.36% | 112.57% |
| 7,860,000 | 0.36% | 112.93% |
| 7,830,000 | 0.36% | 113.29% |
| 7,800,000 | 0.33% | 113.65% |
| 7,770,000 | 0.33% | 113.98% |
| 7,740,000 | 0.33% | 114.31% |
| 7,710,000 | 0.33% | 114.64% |
| 7,680,000 | 0.33% | 114.97% |
| 7,650,000 | 0.30% | 115.30% |
| 7,620,000 | 0.30% | 115.60% |
| 7,590,000 | 0.30% | 115.90% |
| 7,560,000 | 0.30% | 116.20% |
| 7,530,000 | 0.30% | 116.50% |
| 7,500,000 | | 116.80% |
| 6,800,000 | | 116.80% |
| 6,770,000 | 0.23% | 116.57% |
| 6,740,000 | 0.23% | 116.34% |
| 6,710,000 | 0.23% | 116.11% |
| 6,680,000 | 0.23% | 115.88% |
| 6,650,000 | 0.23% | 115.65% |
| 6,620,000 | 0.26% | 115.39% |
| 6,590,000 | 0.26% | 115.13% |
| 6,560,000 | 0.26% | 114.87% |
| 6,530,000 | 0.26% | 114.61% |
| 6,500,000 | 0.26% | 114.35% |
| 6,470,000 | 0.29% | 114.06% |
| 6,440,000 | 0.29% | 113.77% |
| 6,410,000 | 0.29% | 113.48% |
| 6,380,000 | 0.29% | 113.19% |
| 6,350,000 | 0.29% | 112.90% |

| 6,320,000 | 0.32% | 112.58% |
| 6,290,000 | 0.32% | 112.26% |
| 6,260,000 | 0.32% | 111.94% |
| 6,230,000 | 0.32% | 111.62% |
| 6,200,000 | 0.32% | 111.30% |

Note(s):

1. Adjustments between the increments shall be on a prorata basis

2. In the event that the Cost value of the Merchandise is greater than $8,100,000, each $30,000 (or pro rata portion thereof) increment shall decrease the Guaranty by 0.43%.

3. In the event that the Cost value of the Merchandise is less than $6,200,000, each $30,000 (or pro rata portion thereof) increment shall decrease the Guaranty by 0.36%.

# EXHIBIT 3.1(e)

## Naartjie Custom Kids, Inc.

### Exhibit 3.1(e)

| Cost Factor | | |
| --- | --- | --- |
| Cost Factor | Adjustment Points | Adjusted Guaranty |
| **35.00%** | | **116.80%** |
| 35.05% | 0.24% | 116.56% |
| 35.10% | 0.24% | 116.32% |
| 35.15% | 0.24% | 116.08% |
| 35.20% | 0.24% | 115.84% |
| 35.25% | 0.24% | 115.60% |
| 35.30% | 0.24% | 115.36% |
| 35.35% | 0.24% | 115.12% |
| 35.40% | 0.24% | 114.88% |
| 35.45% | 0.24% | 114.64% |
| 35.50% | 0.24% | 114.40% |
| 35.55% | 0.24% | 114.16% |
| 35.60% | 0.24% | 113.92% |
| 35.65% | 0.24% | 113.68% |
| 35.70% | 0.24% | 113.44% |
| 35.75% | 0.24% | 113.20% |
| 35.80% | 0.24% | 112.96% |
| 35.85% | 0.24% | 112.72% |
| 35.90% | 0.24% | 112.48% |
| 35.95% | 0.24% | 112.24% |
| 36.00% | 0.24% | 112.00% |

*Notes:*

*1. Adjustments between the increments shall be on a prorata basis.*

*2. In the event that the Cost Factor of Merchandise is greater than 36%, each 0.05% (or pro rata portion thereof) increment shall decrease the Guaranty by 0.24%.*

# EXHIBIT 3.3(a)

# Merchant's Designated Account

Account Name:              Salus Capital Partners, LLC

Account Number:            75860051418

Account ABA:               011 075 150

Bank Name:                 Santander Bank

                           Boston, MA 02109

RE:                        **Naartjie**

# EXHIBIT 3.3(h)

## **FORM OF AGENT LETTER OF CREDIT**[1]

### [NAME OF ISSUING BANK]

### [ADDRESS]

Date: _____, 2014

Irrevocable Standby Letter of Credit Number: _____

BENEFICIARY:      _____
                       _____
                       _____
                       _____

                       _____
                       _____
                       _____
                       _____

Credit No.: _____
Opener's Reference No.: _____

Gentlemen:

BY ORDER OF:      _____

We hereby open in your favor our Irrevocable Standby Letter of Credit (the "Letter of Credit")
for the account of _____ (the "Agent") for a sum or sums not exceeding a total of
_____ U.S. Dollars (_____) available by your draft(s) at SIGHT
on OURSELVES effective immediately and expiring at OUR COUNTERS on _____,
2014, or such earlier date on which the beneficiaries shall notify us in writing that this Letter of
Credit shall be terminated accompanied by the original Letter of Credit (the "Expiry Date").

Draft(s) must be accompanied by the original of this Letter of Credit and a signed statement in
the form attached hereto as **Exhibit A** signed by an officer of _____ or an officer of
_____ (the "Beneficiaries").

---

[1]    **This Form of Agent Letter of Credit remains subject to further review by the Debtor
and the Agent.**

1744485.1

This Letter of Credit may be reduced from time to time when accompanied by a signed statement from the Beneficiaries in the form attached as **Exhibit B**.

If a drawing is received by _____ at or prior to 12:00 noon, Eastern Time, on a Business Day, and provided that such drawing conforms to the terms and conditions hereof, payment of the drawing amount shall be made to the Beneficiaries, as directed below, in immediately available funds on the next Business Day.  If however, a drawing is received by _____ after 12:00 noon, Eastern Time, on a Business Day, and provided that such drawing conforms with the terms and conditions hereof, payment of the drawing amount shall be made to the Beneficiaries in immediately available funds on the second succeeding Business Day.

As used in this Letter of Credit, "Business Day" shall mean any day other than Saturday, Sunday or a day on which banking institutions in _____ are required or authorized to close.

Partial and/or multiple drawings are permitted.

Each draft must bear upon its face the clause, "Drawn under Letter of Credit No. _____, dated _____, 20[  ] of [NAME AND ADDRESS OF ISSUING BANK]."

Except so far as otherwise expressly stated herein, this Letter of Credit is subject to the Uniform Customs and Practices for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600.

We hereby agree that drafts drawn under and in compliance with the terms of this Letter of Credit will be duly honored if presented to the above mentioned drawee bank on or before the Expiry Date.

Kindly address all correspondence regarding this Letter of Credit to the attention of our Letter of Credit Operations, [ADDRESS OF L/C DEPARTMENT OF ISSUING BANK] attention _____, mention our reference number as it appears above.  Telephone inquiries can be made to _____ at _____.

Very truly yours,

Authorized official

1744485.1

## EXHIBIT A

IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____

Re:    Drawing for Amounts Due to:

_____

_____

_____

_____


_____

_____

_____

_____

Ladies and Gentlemen:

The undersigned refer to your Letter of Credit No. _____ (the "Letter of Credit"). Capitalized terms used but not defined herein, shall have the meaning assigned to them in the Letter of Credit. The undersigned, duly authorized officers of Naartjie Custom Kids Inc. and/or of Salus Capital Partners, LLC, each in its respective capaciy as Beneficiary of the Letter of Credit hereby certifies to you that:

(i)    _____ (the "Agent") has not made a payment when due of or for the Guaranteed Amount, Sharing Amount, Expenses or any other amount due by the Agent to Naartjie Custom Kids Inc. (the "Merchant'), pursuant to, and as such terms are defined in that certain Agency Agreement, dated as of _____, 2014, by and between the Merchant on the one hand, and the Agent, on the other.

(ii)    The amount to be drawn is $_____ (the "Amount Owing").

(iii)    Payment is hereby demanded in an amount equal to the lesser of (a) the Amount Owing and (b) the face amount of the Letter of Credit as of the date hereof.

(iv)    The Letter of Credit has not expired prior to the delivery of this letter and the accompanying sight draft.

(v)    In accordance with the terms of the Letter of Credit, the payment hereby demanded is requested to be made by wire transfer to the following account:

[_____]

[_____]

[_____]

Further Credit to: [Account Title]

[Account No. _____]

IN WITNESS WHEREOF, the undersigned have executed and delivered this certificate as of this _____ day of _____, 20[  ].


_____


By: _____
Name: _____
Title: _____


_____


By: _____
Name: _____
Title: _____

1744485.1

## **EXHIBIT B**

IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____

Re:     Reduction of Face Amount

_____

_____

_____

_____

_____

_____

_____

_____

Ladies and Gentlemen:

The undersigned refer to your Letter of Credit No. _____ (the "Letter of Credit"). Capitalized terms used but not defined herein, shall have the meaning assigned to them in the Letter of Credit. The undersigned, duly authorized officers of _____ and of _____, in their respective capacities as Beneficiaries of the Letter of Credit hereby confirms to you that the face amount of the Letter of Credit No. _____ shall be reduced from its original face amount to a new face amount of $_____.

IN WITNESS WHEREOF, the undersigned have executed and delivered this certificate as of this _____ day of _____, 20[  ].

_____

By: _____

Name: _____

Title: _____

_____

By: _____

Name: _____

Title: _____

1744485.1

# EXHIBIT 4.1(a)

DRAFT
9/22/2014

**Naanjie Custom Kids, Inc.**
Exhibit 4.1(a)
Occupancy Expenses

| | | Base Rent | Deferred Rent | Signing Commission | CAM | Promotional Fees | RE Tax | HVAC | Utilities[1] | Telecom[2] | Equipment Rental | Security | R&M | Taxes & Licenses | CAM Insurance | Janitorial | Total per diem Occupancy | % Rent | Annual Breakpoint |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | Valley Fair | 284.11 | 13.95 | - | 131.16 | 21.15 | 61.81 | - | 33.03 | 6.97 | 0.77 | - | 3.07 | 1.40 | - | - | 557.41 | 6.0% | 1,761,476 |
| 5 | Glendale Galleria | 315.81 | 21.25 | - | 59.58 | 7.59 | 39.22 | - | 22.45 | 6.27 | 0.77 | - | 10.67 | 4.06 | - | 0.32 | 381.28 | 6.0% | 877,393 |
| 6 | Roseville | 192.64 | - | - | 60.82 | 5.73 | 39.75 | 11.59 | 9.38 | 5.11 | 0.76 | - | 0.21 | 0.42 | - | - | 326.81 | 6.0% | 1,194,375 |
| 7 | UTC | 128.54 | - | - | 101.05 | 13.02 | 27.26 | - | 29.32 | 6.00 | 0.77 | - | 13.11 | 5.71 | - | - | 262.33 | 6.0% | 1,396,500 |
| 8 | Sherman Oaks | 100.81 | - | - | 98.71 | 10.37 | 35.79 | - | 23.60 | 8.74 | 0.77 | - | 3.88 | 0.62 | - | 2.58 | 288.97 | 6.0% | 871,533 |
| 9 | Mission Viejo | 131.04 | - | - | 43.26 | - | 25.13 | 0.28 | 34.59 | 5.59 | 0.76 | - | - | 5.58 | 7.77 | - | 329.89 | 6.0% | 812,456 |
| 10 | Santa Barbara | 270.94 | - | - | 55.76 | - | 22.86 | - | 20.58 | 7.06 | 0.76 | - | 3.04 | 3.02 | - | - | 380.46 | NA | NA |
| 11 | Rancho Cucamonga | 163.72 | - | - | 106.41 | 6.96 | 17.35 | - | 33.54 | 7.50 | 0.76 | - | 2.28 | 2.16 | - | 0.48 | 286.01 | 6.0% | 1,015,867 |
| 12 | Fashion Place | 200.33 | - | 3.36 | 180.00 | 8.83 | 27.77 | - | 20.10 | 7.30 | 0.76 | - | 3.04 | 0.55 | - | - | 356.33 | 6.0% | 1,242,083 |
| 13 | South Towne | 158.26 | - | - | 69.86 | - | 74.39 | - | 15.05 | 7.78 | 0.76 | - | 2.28 | 0.66 | - | - | 289.40 | 5.0% | 1,224,024 |
| 14 | Century City | 272.13 | - | - | 180.00 | 8.83 | 19.45 | 10.77 | 23.50 | 20.52 | 0.77 | - | 3.36 | 1.26 | - | - | 584.77 | 6.0% | 1,687,200 |
| 15 | Washington Square | 270.43 | - | 3.36 | 82.37 | 29.17 | 12.39 | - | 10.38 | 7.73 | 0.71 | - | 1.21 | 1.21 | 3.56 | - | 435.19 | 6.0% | 769,714 |
| 16 | Outlets at Anthem | 136.35 | - | - | 38.60 | 22.28 | 7.64 | 1.06 | 19.88 | 8.07 | 0.76 | 1.87 | 0.95 | 7.92 | - | - | 259.97 | 6.0% | 850,000 |
| 17 | Irvine Spectrum | 147.12 | - | 3.54 | 114.63 | 26.82 | 22.85 | 21.65 | 11.57 | 8.07 | 0.76 | - | 0.99 | 1.05 | - | 1.65 | 329.68 | 7.0% | 773,838 |
| 20 | Topanga | 222.13 | - | 3.33 | 89.09 | 9.38 | 45.53 | 22.85 | - | 6.62 | 0.76 | - | 1.39 | 1.29 | - | 0.32 | 417.05 | 6.0% | 1,311,625 |
| 21 | San Tan | 233.11 | - | 3.33 | 61.59 | 10.17 | 22.65 | - | - | 7.71 | 0.77 | - | 5.22 | 8.07 | - | - | 366.33 | 6.0% | 1,403,898 |
| 22 | Redmond | 208.63 | - | 3.25 | 73.02 | 7.09 | 21.30 | - | 15.34 | 6.93 | 0.75 | - | 6.67 | 4.42 | - | - | 343.51 | 6.0% | 1,318,627 |
| 23 | Flatiron | 210.88 | - | 3.25 | 101.33 | 10.09 | 46.87 | - | - | 8.60 | 0.75 | - | 0.90 | 3.06 | - | 0.87 | 407.99 | 6.0% | 1,289,863 |
| 24 | OmniCorp | 159.65 | - | 3.25 | 191.62 | - | 20.52 | - | 8.51 | 9.54 | 0.75 | - | 1.09 | 7.94 | - | - | 399.06 | 6.0% | 951,762 |
| 25 | Danbury | 172.39 | - | 3.36 | 92.25 | 4.66 | 60.74 | 21.09 | 14.29 | 6.77 | 0.75 | 1.40 | 1.08 | 9.43 | 0.91 | - | 381.76 | 6.0% | 1,038,091 |
| 26 | Tysons Corner | 337.53 | - | 3.36 | 147.84 | 6.08 | 51.00 | 13.26 | 34.30 | 6.29 | 0.75 | 1.49 | 3.24 | 4.94 | 4.27 | - | 686.13 | 6.0% | 2,032,472 |
| 27 | Fair Oaks | - | - | 3.28 | 121.08 | 28.84 | 42.56 | 14.07 | 6.98 | 6.60 | 0.77 | - | 3.24 | 3.86 | - | - | 247.76 | 6.0% | |
| 28 | Washington Green | 404.68 | 1.43 | 3.28 | 115.77 | 23.71 | - | 22.21 | 6.69 | 5.21 | 0.77 | - | 4.86 | 12.97 | 3.03 | - | 247.58 | 6.0% | 1,403,830 |
| 29 | La Cantera | 150.85 | 1.35 | 3.33 | 200.53 | - | 8.53 | 24.42 | 32.29 | 5.81 | 0.78 | 1.31 | 8.91 | 5.65 | 8.77 | - | 459.50 | 5.0% | 1,052,873 |
| 31 | Natick | 126.59 | 0.44 | 3.33 | 293.55 | - | 28.55 | 19.36 | 6.40 | 7.93 | 0.77 | - | 6.29 | 0.17 | - | - | 398.60 | 6.0% | 1,286,844 |
| 32 | Bridgewater | 238.46 | 0.45 | 3.25 | 79.53 | 9.01 | 55.36 | 23.84 | 8.88 | 6.53 | 0.77 | 1.52 | 2.63 | 2.02 | 4.67 | - | 464.98 | 6.0% | 1,435,388 |
| 33 | Mall of Georgia | 345.53 | - | 3.25 | 85.05 | 11.13 | 67.54 | 17.72 | 0.94 | 6.64 | 0.77 | - | 3.67 | 9.99 | - | - | 379.32 | 6.0% | 2,079,915 |
| 34 | Houston Galleria | 164.59 | - | 3.31 | 90.12 | 4.61 | 33.77 | 17.38 | 18.88 | 6.49 | 0.76 | - | 7.97 | 14.34 | 5.90 | 0.39 | 574.31 | 5.0% | 819,545 |
| 35 | Montgomery Mall | 156.31 | - | 3.31 | 7.74 | 1.11 | 30.29 | 7.70 | 20.60 | 6.27 | 0.71 | - | 6.61 | 11.75 | - | - | 352.24 | 5.0% | 1,088,430 |
| 36 | Southlake Town Sq. | 230.25 | 1.09 | 3.36 | 65.79 | 14.00 | 35.84 | - | 13.00 | 5.15 | 0.77 | 1.56 | 3.28 | - | - | 0.52 | 237.93 | 5.0% | 1,528,818 |
| 37 | Southern Park | 199.61 | - | 3.28 | 119.76 | 8.02 | 83.86 | 15.75 | 16.62 | 5.94 | 0.77 | 1.37 | 10.54 | 6.68 | 3.13 | 1.61 | 418.46 | 6.0% | 1,213,314 |
| 38 | Coastland | 91.22 | 0.77 | - | 207.24 | - | - | - | 14.28 | 6.38 | 1.42 | 1.40 | 8.33 | 0.68 | - | - | 463.25 | 6.0% | 843,648 |
| 39 | Garden State | 266.25 | 3.02 | 3.33 | 37.77 | 13.69 | 8.53 | - | 23.77 | 5.39 | 0.77 | - | 4.86 | 2.32 | - | - | 331.03 | 6.0% | 1,528,818 |
| 40 | Alderwood | 119.52 | - | 3.33 | 84.60 | - | 28.55 | - | 21.65 | 11.17 | 0.78 | - | 8.91 | 6.68 | - | 0.17 | 270.08 | 6.0% | 1,425,557 |
| 41 | Sevierville Outlets | 179.50 | 1.82 | 3.33 | 135.11 | 13.07 | 55.36 | - | 35.87 | 7.86 | 0.77 | 1.52 | 6.29 | - | - | - | 271.63 | 5.0% | 1,339,000 |
| 42 | Deer Park Outlet | 203.60 | 3.75 | 3.31 | 62.92 | 4.10 | 37.46 | 19.62 | 19.42 | 5.49 | 0.76 | - | 2.63 | 2.38 | 5.90 | - | 441.44 | 5.0% | 1,262,322 |
| 43 | West County | 315.44 | 15.35 | 3.31 | - | - | 28.81 | - | 12.62 | 7.09 | 0.76 | - | 3.67 | 4.18 | - | - | 344.85 | 6.0% | 1,466,746 |
| 45 | Stanford | 312.33 | 7.15 | - | 110.59 | 17.67 | 15.43 | - | 19.25 | 6.49 | 0.71 | 1.56 | 0.81 | 22.71 | - | - | 382.60 | 6.0% | 1,880,016 |
| 46 | Woodburn Co. outlet | 249.06 | - | - | 31.71 | 22.31 | 20.81 | 25.95 | 40.80 | 8.06 | 0.77 | 1.37 | 2.02 | 4.66 | 3.13 | 0.52 | 530.75 | 5.0% | 1,544,200 |
| 47 | San Marcos Outlet | 220.32 | 8.47 | 3.33 | 44.24 | 18.67 | 4.25 | - | 0.65 | 8.06 | 0.77 | 1.40 | 8.07 | 8.33 | 6.29 | 1.61 | 356.14 | 5.0% | 1,365,909 |
| 48 | Oak Park Mall | 138.39 | 1.65 | - | 63.66 | 0.73 | 4.31 | 22.75 | 15.38 | 9.55 | 0.77 | - | 1.20 | 5.95 | 4.09 | - | 391.78 | 5.0% | 1,256,636 |
| 49 | Myrtle Beach outlet | 168.92 | 6.87 | 3.33 | 40.41 | 20.88 | 4.25 | - | 15.38 | 5.25 | 0.77 | 1.30 | 3.23 | 0.39 | - | - | 281.60 | 5.0% | 954,810 |
| 50 | Great Mall outlet | 177.20 | 5.49 | - | 106.59 | 10.43 | 29.24 | - | 22.21 | 5.15 | 0.75 | - | 0.21 | 6.21 | - | - | 380.42 | 6.0% | 1,189,760 |
| 51 | Mall of America | 170.92 | 8.30 | 3.28 | 161.74 | 8.14 | - | 6.88 | 20.30 | 5.94 | 0.75 | - | 2.82 | 13.98 | - | 0.17 | 380.44 | 6.0% | 1,185,720 |
| 52 | Towson Town Center | 170.33 | 6.22 | 3.28 | 165.37 | - | 99.35 | - | 6.34 | 6.38 | 0.76 | - | 3.24 | 7.84 | - | - | 448.80 | 6.0% | 900,000 |
| 53 | Streets at Southpoint | 148.28 | - | 3.31 | 159.96 | - | 24.49 | - | 11.10 | 5.39 | 0.75 | 1.26 | 0.14 | 7.09 | - | - | 401.12 | 6.0% | 1,441,458 |
| 54 | Friendly Center | 205.40 | 3.70 | 3.31 | 58.06 | - | 16.28 | - | 11.17 | 6.36 | 0.76 | - | - | 2.38 | - | - | 356.17 | 6.0% | 1,379,100 |
| 55 | Staten Island Mall | 370.73 | 33.94 | 3.97 | - | - | 10.08 | - | 28.34 | 7.86 | 0.77 | - | - | 7.09 | - | - | 334.45 | 6.0% | 700,000 |
| 56 | North Point Mall | 140.23 | 22.96 | 3.87 | 159.78 | - | 31.65 | 12.11 | 14.98 | 5.49 | 0.76 | - | 2.71 | 2.38 | - | - | 469.18 | 6.0% | 650,000 |
| 57 | Carolina Place | 120.97 | 18.68 | 3.90 | 94.10 | - | 20.69 | 20.83 | 10.08 | 7.34 | 0.76 | 1.51 | 2.46 | 4.18 | - | - | 398.06 | 6.0% | 650,000 |
| 58 | Fashion Outlets at Oklahoma City | 174.06 | 13.74 | 3.67 | 46.58 | 13.01 | 34.81 | - | 23.41 | 5.05 | 0.77 | - | 0.44 | 6.21 | 3.82 | - | 306.28 | 6.0% | 875,250 |
| 59 | Fashion Outlets Of Chicago | 174.06 | 16.90 | 3.75 | 84.54 | 17.41 | - | - | 7.68 | 4.81 | 0.75 | - | 0.44 | - | - | 0.97 | 346.14 | 5.0% | 346,000 |
| 62 | The Outlet Shoppes at Atlanta | 142.80 | 13.71 | 3.75 | 36.98 | 12.36 | 16.44 | - | 20.15 | 7.75 | 0.75 | 1.43 | 0.55 | 2.31 | - | 2.58 | 261.56 | 5.0% | 858,206 |
| | TOTAL | 10,763.51 | 232.27 | 96.44 | 5,097.47 | 472.28 | 1,642.25 | 414.87 | 1,015.38 | 394.95 | 42.51 | 17.42 | 195.50 | 256.49 | 58.79 | 9.88 | 20,710.44 | | |

Notes
1 Utilities includes: CAM-Utilities, CAM-Electricity, CAM-Water, CAM-Fire Detection, CAM-Trash, and Utilities - Electricity/Gas. Excludes non-CAM Waste Removal
2 Telecom includes: Basic Services, Long Distance, and Internet Service

# EXHIBIT 5.1(a)

# <u>Inventory Taking Instructions</u>

- To be agreed to by the parties.

# EXHIBIT 5.2(b)(1)

# Distribution Center Merchandise

Inventory as of 9/23/14 in Salt Lake City, UT Dist Center aka Internet Store

| C$ | Desc1 | Desc2 | O/H 1 Qty | O/H 1 Ext P$ | O/H 1 Ext C$ |
|---|---|---|---|---|---|
| 5.11 | BKB5435WT14 | ESS FLEECE KNEE PCD PANT | 7,978 | 71,802.00 | 40,767.58 |
| 6.94 | BKB5437WT14 | ESS WALE CORD KNEE PANT | 7,123 | 64,107.00 | 49,433.62 |
| 4.2 | GKB5679WT14 | ESS 2X2 RIB LEGGING W NET | 4,601 | 41,409.00 | 19,324.20 |
| 3.83 | GKB5273FL24 | ESS SPOTTY LEGGING | 4,182 | 37,638.00 | 16,017.06 |
| 4.07 | GKB5863WT14 | ESS SPOT LEGGING W BOWS | 3,721 | 33,489.00 | 15,144.47 |
| 5.09 | BKB5003FL14 | ESS PIECED TWILL PANT | 3,344 | 30,096.00 | 17,020.96 |
| 4.13 | GKT5673WT14 | ESS 2X2 YOKE TUNIC | 3,235 | 29,115.00 | 13,360.55 |
| 3.83 | GKB5682WT14 | ESS STRIPED LEGGING | 3,087 | 27,783.00 | 11,823.21 |
| 5.56 | GKT5392WT14 | ESS SPOT TOP | 3,077 | 27,693.00 | 17,108.12 |
| 5.34 | GKB5540COR4 | ESS STRETCH SKINNY DENIM | 3,031 | 27,279.00 | 16,185.54 |
| 3.75 | GKT5677WT14 | ESS SPOT-FLORAL TUNIC | 2,884 | 25,956.00 | 10,815.00 |
| 4.08 | GKT5248FL24 | ESS ROCOCCO FLORAL TUNIC | 2,744 | 24,696.00 | 11,195.52 |
| 6.38 | GKB5468FL24 | ESS STRETCH CORD PANT | 2,583 | 23,247.00 | 16,479.54 |
| 5.57 | BKB5005FL14 | ESS PCD BANDED FLC PANT | 2,562 | 23,058.00 | 14,270.34 |
| 3.83 | GKB5250FL24 | ESS ROYAL ROSE LEGGING | 2,518 | 22,662.00 | 9,643.94 |
| 3.92 | GKB5087FL14 | ESS SCRUNCHED LEGGING | 2,458 | 22,122.00 | 9,635.36 |
| 3.97 | GKT4642FL14 | ESS TAPESTRY TUNIC | 2,341 | 21,069.00 | 9,293.77 |
| 3.88 | GKT5675WT14 | ESS STRIPED TUNIC | 2,334 | 21,006.00 | 9,055.92 |
| 7.32 | GKD5701WT14 | SPOTTY BALLERINA DRESS | 2,328 | 69,723.60 | 17,040.96 |
| 5.38 | GKB5687COR4 | ESS DENIM PANT | 2,315 | 20,835.00 | 12,454.70 |
| 7.78 | GKD5734WT14 | 2X2 RIB DRESS | 2,277 | 68,196.15 | 17,715.06 |
| 3.95 | GKB5710WT14 | 2X2 RIB PANT W PRINT TRIM | 2,166 | 41,045.70 | 8,555.70 |
| 9.65 | GKD5264FL24 | 5X2 DRESS W ROYAL ROSE SK | 2,149 | 70,809.55 | 20,737.85 |
| 4.24 | GKB5765WT24 | GLITTER STAR LEGGING | 2,148 | 36,408.60 | 9,107.52 |
| 6.83 | GKD5714WT24 | OFF THE SHOULDER DRESS | 2,107 | 63,104.65 | 14,390.81 |
| 3.85 | GKT4949FL14 | ESS LACE TRIM TUNIC | 2,035 | 18,315.00 | 7,834.75 |
| 7.5 | GKD5181FL14 | PIECED HOODED DRESS | 2,005 | 46,094.95 | 15,037.50 |
| 4.07 | GKB5261FL24 | 5X2 LEG WARMER LEGGING | 1,977 | 35,487.15 | 8,046.39 |
| 5.12 | BBB5438WT14 | ESS WALE CORD KNEE PANT | 1,956 | 17,604.00 | 10,014.72 |
| 6.43 | GKT5708WT14 | 2X2 HOODED TUNIC | 1,897 | 37,845.15 | 12,197.71 |
| 3.95 | BBB5436WT14 | ESS FLEECE KNEE PCD PANT | 1,895 | 17,055.00 | 7,485.25 |
| 4.56 | BKT5419WT14 | ESS RELAY STRIPE HOODY | 1,792 | 16,128.00 | 8,171.52 |
| 8.7 | GKD5704WT14 | LX FLOCKED POPLIN DRESS | 1,755 | 61,337.25 | 15,268.50 |
| 3.68 | GKB4936FL14 | ESS TAPESTRY LEGGING | 1,745 | 15,705.00 | 6,421.60 |
| 3.95 | GKB5725WT14 | BALLERINA DANCE LEGGING | 1,744 | 33,048.80 | 6,888.80 |
| 3.85 | BKT5306FL24 | ESS SOLID THERMAL PCD TEE | 1,704 | 15,336.00 | 6,560.40 |
| 4.8 | GKB5218FL24 | SPOT PANT W/ PRINT FRILLS | 1,697 | 32,158.15 | 8,145.60 |
| 6.46 | BKB5001COR4 | ESS ONE POCKET DENIM PANT | 1,640 | 14,760.00 | 10,594.40 |
| 5.43 | GKB5727WT14 | LX FLOCKED FRILL PANT | 1,622 | 40,468.90 | 8,807.46 |
| 3.83 | GKT5768WT14 | MIXED PRINT TUNIC | 1,606 | 28,827.70 | 6,150.98 |
| 5.33 | GKT5720WT24 | SPOT-STRIPE-STAR TUNIC | 1,586 | 30,054.70 | 8,453.38 |
| 4.13 | GKT5760WT24 | GLITTER STAR TEE | 1,576 | 28,289.20 | 6,508.88 |
| 8.83 | GKD5210FL24 | PIECED PRNT DRESS W/APPLQ | 1,564 | 46,841.80 | 13,810.12 |
| 5.72 | GKB5259FL24 | CURVED PIECING SKIRT | 1,538 | 35,297.10 | 8,797.36 |

| 4.53 | GKB5168FL14 | LACE TRIM BELL | 1,526 | 19,822.74 | 6,912.78 |
| 9.95 | GKB5228FL24 | BELTED 16 W CORD PANT | 1,501 | 41,952.95 | 14,934.95 |
| 7.9 | GKD5225FL24 | 16 WALE CORD DRESS | 1,412 | 42,289.40 | 11,154.80 |
| 4.29 | GKB4664FL14 | ROMY FLORAL PATCH LEGGING | 1,321 | 17,159.79 | 5,667.09 |
| 7.88 | GKT5736WT14 | LX FLOCKED VELOUR TUNIC | 1,310 | 33,994.50 | 10,322.80 |
| 3.68 | GKB4647FL14 | ESS STRIPED LYCRA LEGGING | 1,298 | 11,682.00 | 4,776.64 |
| 4.94 | GKT5470FL24 | ROYAL ROSE TUNIC | 1,296 | 23,263.20 | 6,402.24 |
| 5.34 | GKT5099FL14 | 3/4 SLV HEART APPLQ TUNIC | 1,294 | 16,809.06 | 6,909.96 |
| 3.38 | GKO5578FL24 | ESS SPOT CARDIGAN | 1,271 | 11,439.00 | 4,295.98 |
| 6.11 | GKT5216FL24 | SLUB TUNIC W/ FRL FRILLS | 1,209 | 24,119.55 | 7,386.99 |
| 4.16 | GKT5183FL14 | SS LACE TRIM TOP | 1,200 | 11,988.00 | 4,992.00 |
| 5.91 | GKT5214FL24 | SLUB HOODED TOP | 1,187 | 23,680.65 | 7,015.17 |
| 4.56 | BKT4999FL14 | ESS SLUB HOODY | 1,171 | 10,539.00 | 5,339.76 |
| 5.13 | GKT5220FL24 | SLUB TUNIC WITH LACE | 1,102 | 19,780.90 | 5,653.26 |
| 7.79 | GKB5690WT24 | GLITTER STAR MESH SKIRT | 1,058 | 26,397.10 | 8,241.82 |
| 4.31 | GKB5103FL14 | SOLID PANT W/ RIBBON TRIM | 1,040 | 13,509.60 | 4,482.40 |
| 3.46 | GBB5681WT14 | ESS 2X2 RIB LEGGING W NET | 1,024 | 9,216.00 | 3,543.04 |
| 3.85 | BKT5295FL24 | ESS WEAVE STRIPE TEE | 987 | 8,883.00 | 3,799.95 |
| 8.99 | GKD5166FL14 | SOLID LACE TRIM DRESS | 984 | 22,622.16 | 8,846.16 |
| 3.6 | GKT5091FL14 | ESS BFLY TUNIC | 982 | 8,838.00 | 3,535.20 |
| 3.81 | BKT5431WT14 | ESS PIECED THERMAL TEE | 959 | 8,631.00 | 3,653.79 |
| 4.29 | GBB5543COR4 | ESS STRETCH SKINNY DENIM | 959 | 8,631.00 | 4,114.11 |
| 8.44 | GKB5689WT14 | RUCHED CORD PANT | 952 | 24,704.40 | 8,034.88 |
| 4.38 | GKD4136SU14 | STRIPED RUFFLE MAXI DRESS | 936 | 9,350.64 | 4,099.68 |
| 3.91 | GKO4651FL14 | ESS LACE TRIM CARDIGAN | 930 | 8,370.00 | 3,636.30 |
| 3.78 | GKB4120SU14 | ESS WATER STRIPE PEDAL | 925 | 7,390.75 | 3,496.50 |
| 3.46 | GBB5864WT14 | ESS SPOT LEGGING W BOWS | 907 | 8,163.00 | 3,138.22 |
| 4.73 | GKB5254WT14 | JAZZY SPOT SKATER SKIRT | 903 | 18,014.85 | 4,271.19 |
| 4.1 | GKT4933FL14 | ESS MIXED PRINT TUNIC | 893 | 8,037.00 | 3,661.30 |
| 4.1 | GKAX031WT14 | GK JAZZY SPOT TIGHT | 857 | 11,098.15 | 3,513.70 |
| 4.1 | GKAX030WT14 | GK BALLERINA TIGHT | 850 | 11,007.50 | 3,485.00 |
| 3.33 | GBT5674WT14 | ESS 2X2 YOKE TUNIC | 839 | 7,551.00 | 2,793.87 |
| 8.2 | GKB4938FL14 | STRETCHED COLORED DENIM | 839 | 10,898.61 | 6,879.80 |
| 3.33 | GBB5683WT14 | ESS STRIPED LEGGING | 836 | 7,524.00 | 2,783.88 |
| 4.53 | BBB5006FL14 | ESS PCD BANDED FLC PANT | 818 | 7,362.00 | 3,705.54 |
| 7.62 | GKD5212FL24 | ROYAL ROSE HOODED DRESS | 818 | 24,499.10 | 6,233.16 |
| 5.26 | GKT5763WT24 | GLITTER STAR WRAP CARD | 810 | 15,349.50 | 4,260.60 |
| 8.51 | GKB5107FL14 | KNIT JEGGING | 798 | 14,356.02 | 6,790.98 |
| 3.18 | HMA0037CORE | LADYBUG REUSE SWATCH BAG | 786 | 7,820.70 | 2,499.48 |
| 3.06 | HMA0038CORE | MOONRISE REUSE SWATCH BAG | 780 | 7,761.00 | 2,386.80 |
| 9.29 | BKB4496FL24 | E WAIST HERRINGBONE PANT | 775 | 21,661.25 | 7,199.75 |
| 4.9 | GKT5386FL14 | GLITTER PRINT TOP W/CUFFS | 765 | 6,877.35 | 3,748.50 |
| 5.71 | GKB4714FLT4 | STRETCH FLEECE PANT | 761 | 12,168.39 | 4,345.31 |
| 3.88 | BKT5426WT14 | ESS HELICOPTER RAGLAN | 760 | 6,840.00 | 2,948.80 |
| 3.66 | GKB4112SU14 | ESS MESH TRIM SOLID PEDAL | 751 | 6,000.49 | 2,748.66 |
| 8 | GKO5172FL14 | LACE TRIM FLC HOODY | 732 | 10,972.68 | 5,856.00 |
| 3.09 | GBT5676WT14 | ESS STRIPED TUNIC | 725 | 6,525.00 | 2,240.25 |

| | | | | |
|---|---|---|---|---|
| 11.63 | GKB5712WT14 | LX ADJ WAIST FLOCKED PANT | 722 | 25,233.90 | 8,396.86 |
| 7.03 | GKD4658FL14 | LS ROMY FLORAL DRESS | 711 | 14,212.89 | 4,998.33 |
| 12.09 | GKO5775WT24 | SWEATER TRIM F/T HOODY | 702 | 23,130.90 | 8,487.18 |
| 6.92 | BKB5322FL24 | E WAIST FRENCH TERRY PANT | 684 | 17,065.80 | 4,733.28 |
| 8.05 | GKB5482FL24 | JIE JIE EMB MESH SKIRT | 670 | 16,716.50 | 5,393.50 |
| 10.15 | GKO5331FL24 | PIECED LACE TRIM COAT | 657 | 22,962.15 | 6,668.55 |
| 4.78 | GBT5330FL24 | ESS SPOT TOP | 653 | 5,877.00 | 3,121.34 |
| 8.65 | GKB4162SU14 | BLEACHED TWILL W/ANGLAISE | 638 | 6,373.62 | 5,518.70 |
| 3.41 | GBT5249FL24 | ESS ROCOCCO FLORAL TUNIC | 630 | 5,670.00 | 2,148.30 |
| 4.85 | GKT5479FL24 | DANCING JIE JIE | 625 | 10,593.75 | 3,031.25 |
| 6.06 | GKO5244FL24 | SLUB FRENCH TERRY VEST | 618 | 12,329.10 | 3,745.08 |
| 4.96 | BBB5002COR4 | ESS ONE POCKET DENIM PANT | 613 | 5,517.00 | 3,040.48 |
| 5.38 | GKT5718WT14 | SPARKLY STAR  GRAPHIC TEE | 608 | 10,305.60 | 3,271.04 |
| 4 | BKT5429WT14 | ESS DEER CHEST STRIPE TEE | 599 | 5,391.00 | 2,396.00 |
| 3.33 | GBB5274FL24 | ESS SPOTTY LEGGING | 594 | 5,346.00 | 1,978.02 |
| 6.67 | GKD5291FL14 | SS ROMY FLORAL DRESS | 592 | 11,834.08 | 3,948.64 |
| 3.21 | GBT5678WT14 | ESS SPOT-FLORAL TUNIC | 576 | 5,184.00 | 1,848.96 |
| 3.06 | HMA0036CORE | CHEVRON ZOO SWATCH BAG | 571 | 5,681.45 | 1,747.26 |
| 8.37 | GKO4712FLT4 | STRETCH FLEECE HOODY | 570 | 11,394.30 | 4,770.90 |
| 7.26 | GKB5412FL14 | METALLIC NETTING SKIRT | 569 | 10,236.31 | 4,130.94 |
| 4.06 | GKA5868WT14 | FLORAL STRIPE SPOT UNDIES | 567 | 7,342.65 | 2,302.02 |
| 3.25 | GBT4950FL14 | ESS LACE TRIM TOP | 562 | 5,058.00 | 1,826.50 |
| 5.51 | GBD5715WT24 | OFF THE SHOULDER DRESS | 557 | 16,682.15 | 3,069.07 |
| 3.69 | GBB5766WT24 | GLITTER STAR LEGGING | 551 | 9,339.45 | 2,033.19 |
| 5.9 | GKB4364SU24 | SOLID BELL W WOVEN DETAIL | 547 | 5,464.53 | 3,227.30 |
| 4.1 | GKAX016FL14 | GK ROMANY FLORAL TIGHT | 546 | 5,454.54 | 2,238.60 |
| 4.41 | BKT4985FL14 | ESS COMPASS STRIPE TEE | 544 | 4,896.00 | 2,399.04 |
| 6.21 | GBD4380SU34 | JIE JIE DIPPED DYE DRESS | 527 | 5,264.73 | 3,272.67 |
| 4.01 | BBT5420WT14 | ESS RELAY STRIPE HOODY | 526 | 4,734.00 | 2,109.26 |
| 2.45 | GKAX033COR4 | GK 3PK CORE WTRLILY SOCK | 525 | 4,173.75 | 1,286.25 |
| 3.19 | GBT4644FL14 | ESS TAPESTRY TUNIC | 517 | 4,653.00 | 1,649.23 |
| 5.4 | GKT5538FL14 | SS PIECED PRINT TUNIC | 513 | 6,663.87 | 2,770.20 |
| 3.39 | GBB5711WT14 | 2X2 RIB PANT W PRINT TRIM | 508 | 9,626.60 | 1,722.12 |
| 3.39 | GBB5726WT14 | BALLERINA DANCE LEGGING | 504 | 9,046.80 | 1,708.56 |
| 13.75 | GKO4968WT24 | FT HOODED PULLOVER SWTR | 502 | 14,532.90 | 6,902.50 |
| 16.93 | HMA0043CORE | MOONRISE MOBILE | 500 | 19,975.00 | 8,465.00 |
| 16.75 | HMA0044CORE | LADYBUG ROSE MOBILE | 499 | 19,935.05 | 8,358.25 |
| 7.81 | GKO5473FL24 | ROYAL ROSE HOODY | 480 | 15,816.00 | 3,748.80 |
| 17.36 | HMA0046CORE | ORIGAMI SAFARI MOBILE | 480 | 19,176.00 | 8,332.80 |
| 4.07 | GBT5471FL24 | ROYAL ROSE TUNIC | 475 | 8,526.25 | 1,933.25 |
| 14.78 | GKAS059WT14 | COLETTE WEDGE LX SHOE | 473 | 18,896.35 | 6,990.94 |
| 4.93 | GKT4758FLT4 | SS SPOTTED LOVE TUNIC | 470 | 5,635.30 | 2,317.10 |
| 16.75 | HMA0045CORE | CHEVRON ZOO MOBILE | 470 | 18,776.50 | 7,872.50 |
| 3.49 | GBB5088FL14 | ESS SCRUNCHED LEGGING | 469 | 4,221.00 | 1,636.81 |
| 4.69 | GBB5729WT14 | LX FLOCKED FRILL PANT | 466 | 11,626.70 | 2,185.54 |
| 3.43 | BBT5305FL24 | ESS SOLID THERMAL PCD TEE | 450 | 4,050.00 | 1,543.50 |
| 3.44 | GKA4156SU14 | SEABREEZE SUNHAT | 438 | 4,375.62 | 1,506.72 |

| | | | | |
|---|---|---|---|---|
| 3.25 | GBB4937FL14 | ESS TAPESTRY PRINT BELL | 437 | 3,933.00 | 1,420.25 |
| 6.06 | GKT4716FLT4 | SS MELANGE TUNIC | 437 | 5,676.63 | 2,648.22 |
| 7.28 | GKB5746WT24 | FRENCH TERRY PANT W CUFFS | 435 | 10,853.25 | 3,166.80 |
| 3.33 | GBB5251FL24 | ESS ROYAL ROSE LEGGING | 427 | 3,843.00 | 1,421.91 |
| 6.9 | GKB5477FL24 | ROYAL ROSE REVERSE PANT | 418 | 10,429.10 | 2,884.20 |
| 9.44 | GKO4411SU24 | 3D FLOWER BIKINI | 415 | 4,145.85 | 3,917.60 |
| 3.08 | HMA0049CORE | ORIGAMI REUSE SWATCH BAG | 415 | 4,129.25 | 1,278.20 |
| 5.56 | GKB5097FL14 | PIECED PRINT SKIRT | 413 | 7,429.87 | 2,296.28 |
| 4.32 | GBB5688COR4 | ESS DENIM PANT | 405 | 3,645.00 | 1,749.60 |
| 6.91 | GKD5179FL14 | 3/4 SLV STRIPED DRESS | 403 | 6,040.97 | 2,784.73 |
| 3.69 | BKT5660FL24 | ESS SS ELEPHANT SLUB TEE | 401 | 3,609.00 | 1,479.69 |
| 7.2 | GBO4900FLT4 | POLKA DOT SWIMSUIT | 394 | 3,936.06 | 2,836.80 |
| 3.46 | GBT5762WT24 | GLITTER STAR TEE | 394 | 7,072.30 | 1,363.24 |
| 3.25 | GBT5092FL14 | ESS BFLY TUNIC | 392 | 3,528.00 | 1,274.00 |
| 6.43 | GBD5182FL14 | PIECED HOODED DRESS | 391 | 8,989.09 | 2,514.13 |
| 4.74 | BKT5317FL24 | 2FER CAMEL SADDLE TEE | 390 | 6,610.50 | 1,848.60 |
| 2.45 | GKAX028COR4 | GK 3PK CORE BALLERINA SCK | 388 | 3,084.60 | 950.6 |
| 7.5 | GKAS034SU24 | SUGAR FLIP FLOP | 381 | 3,806.19 | 2,857.50 |
| 4.1 | GKAX023FL24 | GK SOLID FOOTLESS TIGHT | 381 | 4,933.95 | 1,562.10 |
| 5.37 | GBT5709WT14 | 2X2 HOODED TUNIC | 381 | 7,600.95 | 2,045.97 |
| 5.96 | GKT5101FL14 | LS PIECED PRINT TUNIC | 379 | 4,923.21 | 2,258.84 |
| 3.55 | GBB4667FL14 | ROMY FLORAL PATCH LEGGING | 375 | 4,871.25 | 1,331.25 |
| 18.05 | GKO5548WT14 | LX LONG SWEATER CARDIGAN | 375 | 17,231.25 | 6,768.75 |
| 4.53 | GBT5721WT24 | SPOT-STRIPE-STAR TUNIC | 374 | 7,087.30 | 1,694.22 |
| 4.81 | GBB5469FL24 | ESS STRETCH CORD PANT | 369 | 3,321.00 | 1,774.89 |
| 21.16 | GKAS053FL24 | ROWENA PINK SLOUCH BOOT | 368 | 14,701.60 | 7,786.88 |
| 8.4 | GTD3015WT14 | SPOTTY BELLERINA DRESS | 368 | 12,861.60 | 3,091.20 |
| 6.58 | GBD5735WT14 | 2X2 RIB DRESS | 364 | 10,901.80 | 2,395.12 |
| 3.85 | BKT4989FL14 | ESS SLUB BLIMP BIKE TEE | 362 | 3,258.00 | 1,393.70 |
| 4.05 | BKT5303FL24 | ESS GEO STRIPE HOODY TEE | 361 | 3,249.00 | 1,462.05 |
| 13.39 | GTD2058FLT4 | LS HOODED DRESS | 360 | 10,076.40 | 4,820.40 |
| 7.1 | GBB5229FL24 | BELTED 16 W CORD PANT | 356 | 9,950.20 | 2,527.60 |
| 7.35 | LGG5697WT14 | LX VELOUR FRILL LACE BG | 356 | 8,170.20 | 2,616.60 |
| 1.85 | GKA5475FL24 | ROCOCCO FLORAL HEADBAND | 353 | 2,806.35 | 653.05 |
| 8.46 | GTD2089FL14 | PIECED HOODED DRESS | 348 | 6,956.52 | 2,944.08 |
| 3.29 | GBB4121SU14 | ESS WATER STRIPE CAPRI | 347 | 2,772.53 | 1,141.63 |
| 13.17 | GKO5374FL24 | HOODED LACE CARDIGAN | 347 | 13,862.65 | 4,569.99 |
| 4.04 | GKT4809SU34 | HOLA FLOWER TANK | 344 | 3,436.56 | 1,389.76 |
| 5.34 | GTB2055FLT4 | SPOTTED LEGGING | 343 | 5,141.57 | 1,831.62 |
| 4.43 | BKT5313FL24 | THERMAL SLV MAP ART TEE | 337 | 5,712.15 | 1,492.91 |
| 6.28 | GBD5702WT14 | SPOTTY BALLERINA DRESS | 337 | 10,093.15 | 2,116.36 |
| 7.61 | GBD5266FL24 | 5X2 DRESS W ROYAL ROSE SK | 334 | 11,005.30 | 2,541.74 |
| 9.75 | BKO5318FL24 | REVERSE FRNCH TERRY HOODY | 333 | 9,973.35 | 3,246.75 |
| 4.81 | GTB2105FL24 | SPOTTY LEGGING | 333 | 5,644.35 | 1,601.73 |
| 3.33 | GBB5262FL24 | 5X2 LEG WARMER LEGGING | 332 | 5,959.40 | 1,105.56 |
| 6.78 | GBD5706WT14 | LX FLOCKED POPLIN DRESS | 332 | 11,603.40 | 2,250.96 |
| 3.3 | GKB4391SU24 | ESS MACAW FLORAL SHORT | 331 | 2,644.69 | 1,092.30 |

| | | | | | |
|---|---|---|---|---|---|
| 7.25 | GTT3005WT14 | SPARKLY STAR GRAPHIC TEE | 331 | 6,603.45 | 2,399.75 |
| 1.83 | GKA5740WT24 | GLITTER STAR HEADBAND | 330 | 2,623.50 | 603.9 |
| 12.23 | GTD2111FL24 | 5X2 RIB DRESS | 328 | 12,447.60 | 4,011.44 |
| 3.88 | BKT5302FL24 | ESS TRIBAL PRINT SLUB TEE | 326 | 2,934.00 | 1,264.88 |
| 3.43 | GBT4935FL14 | ESS MIXED PRINT TUNIC | 324 | 2,916.00 | 1,111.32 |
| 4.06 | GBB5219FL24 | SPOT PANT W/ PRINT FRILLS | 318 | 6,026.10 | 1,291.08 |
| 8.62 | GTD3036WT24 | OFF THE SHOULDER DRESS | 318 | 11,114.10 | 2,741.16 |
| 3.68 | BKT5298FL24 | ESS GIRAFFE SPEEDY SJ TEE | 315 | 2,835.00 | 1,159.20 |
| 4.1 | GKAX032WT14 | GK STAR FOOTLESS TIGHT | 312 | 4,040.40 | 1,279.20 |
| 4.74 | BKT5307FL24 | PCD THRML COLORBLOCK TEE | 310 | 6,184.50 | 1,469.40 |
| 4.18 | GKT4730FLT4 | 3/4 SLV SNOWDROPS TUNIC | 307 | 3,987.93 | 1,283.26 |
| 4 | BKT5422WT14 | ESS FIRETRUCK SLUB TEE | 305 | 2,745.00 | 1,220.00 |
| 5.61 | GTB3014WT14 | JAZZY SPOT SKATER SKIRT | 303 | 7,559.85 | 1,699.83 |
| 3.83 | GBT5769WT14 | MIXED PRINT TUNIC | 300 | 5,385.00 | 1,149.00 |
| 6.94 | GTB2108FL24 | CURVED PIECING SKIRT | 296 | 8,273.20 | 2,054.24 |
| 5.43 | GTB2107FL24 | 5X2 LEG WARMER LEGGING | 293 | 6,724.35 | 1,590.99 |
| 8.94 | BKB4457FL14 | EWAIST CRACKER LINED PANT | 292 | 6,713.08 | 2,610.48 |
| 9.04 | BKB4498FL24 | ADJ WAIST CHECK PANT | 291 | 8,715.45 | 2,630.64 |
| 4.17 | BBB5004FL14 | ESS PIECED TWILL PANT | 290 | 2,610.00 | 1,209.30 |
| 3.47 | BKT5526FL14 | ESS SLUB SS DIP DYE TEE | 289 | 2,601.00 | 1,002.83 |
| 5.18 | GBT5217FL24 | SLUB TUNIC W/ FRL FRILLS | 289 | 5,765.55 | 1,497.02 |
| 8.89 | GKS5865WT14 | SNOWY DAY PJ'S | 289 | 7,210.55 | 2,569.21 |
| 6.79 | LGT5694WT14 | LX VELOUR LACE TUNIC | 289 | 7,210.55 | 1,962.31 |
| 5.18 | LGB5695WT14 | LX VELOUR LACE PANT | 288 | 4,881.60 | 1,491.84 |
| 5.92 | GTB2054FLT4 | ANGL TRIM MELANGE LEGGING | 287 | 3,441.13 | 1,699.04 |
| 1.91 | GKA5738WT14 | SPOTTY HEADBAND WITH BOW | 282 | 1,959.90 | 538.62 |
| 2.1 | GKAX019FL14 | GK LACE SOLID SOCK | 281 | 1,671.95 | 590.1 |
| 8.94 | GKB5095FL14 | ADJ WAIST PIECED DENIM | 277 | 4,983.23 | 2,476.38 |
| 4.1 | GBT5764WT24 | GLITTER STAR WRAP CARD | 276 | 5,230.20 | 1,131.60 |
| 5.93 | BKT5311FL24 | MODE STRIPE THERMAL HOODY | 274 | 4,918.30 | 1,624.82 |
| 3.25 | GBB4649FL14 | ESS STRIPED LYCRA LEGGING | 274 | 2,466.00 | 890.5 |
| 3.27 | BBT5432WT14 | ESS PIECED THERMAL TEE | 273 | 2,457.00 | 892.71 |
| 7.76 | GTB2086FL14 | STRETCH SKINNY DENIM | 273 | 3,546.27 | 2,118.48 |
| 7.68 | LGD5698WT14 | LX VELOUR LACE DRESS | 273 | 6,811.35 | 2,096.64 |
| 8.88 | BKB5466WT14 | ADJ WAIST YOKE TWILL PANT | 272 | 8,146.40 | 2,415.36 |
| 3.51 | GKA4928FL14 | SWEATER HEADBAND | 272 | 1,901.28 | 954.72 |
| 5.61 | GKB4360SU24 | TEXTURED WOVEN PEDAL | 271 | 2,707.29 | 1,520.31 |
| 3.81 | BBB4274SU24 | ESS CRACKER DOT SHORT | 270 | 2,157.30 | 1,028.70 |
| 3.43 | BBT5296FL24 | ESS WEAVE STRIPE TEE | 270 | 2,430.00 | 926.1 |
| 3.55 | GBB5104FL14 | SOLID PANT W/ RIBBON TRIM | 269 | 3,494.31 | 954.95 |
| 5.36 | GBT5215FL24 | SLUB HOODED TOP | 269 | 5,366.55 | 1,441.84 |
| 8.61 | GKB5686WT14 | SEQUIN PATCH DENIM PANT | 268 | 6,954.60 | 2,307.48 |
| 8.42 | BKB5013FL14 | EWAIST DENIM PANT | 267 | 5,337.33 | 2,248.14 |
| 7.05 | GTT2102FL24 | SLUB HOODED TOP | 267 | 6,661.65 | 1,882.35 |
| 3.19 | HMA0016CORE | LADYBUG ROSE BUNTING | 267 | 5,326.65 | 851.73 |
| 8.95 | GKO4926FL14 | EMB SOLID/STRIPE CARDIGAN | 265 | 4,767.35 | 2,371.75 |
| 4.9 | BKT5007FL14 | ONE POCKET GML HOODY | 264 | 3,429.36 | 1,293.60 |

| | | | | |
|---|---|---|---|---|
| 3.68 | GBB5169FL14 | LACE TRIM BELL | 262 | 3,403.38 | 964.16 |
| 11.54 | HMA0039CORE | MOONRISE 3PC WALL ART | 262 | 9,156.90 | 3,023.48 |
| 11.35 | HMA0040CORE | LADYBUG ROSE 3PC WALL ART | 261 | 9,121.95 | 2,962.35 |
| 8.94 | GKB5652FL24 | KNIT WAIST DENIM PANT | 260 | 7,007.00 | 2,324.40 |
| 3.19 | HMA0007CORE | MOONRISE BUNTING | 260 | 5,187.00 | 829.4 |
| 4.5 | GBT5221FL24 | SLUB TUNIC WITH LACE | 259 | 4,649.05 | 1,165.50 |
| 7.85 | GTT3006WT14 | 2X2 HOODED TUNIC | 257 | 6,412.15 | 2,017.45 |
| 7.4 | LGG5706WT14 | 2X2 RIB MESH SKIRTED BG | 257 | 5,898.15 | 1,901.80 |
| 4.25 | BKT5445WT14 | ARGYLE PRINT SLEEVE HOODY | 255 | 5,087.25 | 1,083.75 |
| 7.51 | GBB5691WT24 | GLITTER STAR SKIRT W LEGS | 253 | 6,312.35 | 1,900.03 |
| 10.32 | GKO5376FL24 | SPOT STRIPE P/O SWEATER | 253 | 8,842.35 | 2,610.96 |
| 6.66 | GBT5737WT14 | LX FLOCKED VELOUR TUNIC | 250 | 6,487.50 | 1,665.00 |
| 12.18 | HMA0041CORE | CHEVRON ZOO 3 PC WALL ART | 250 | 9,987.50 | 3,045.00 |
| 6.47 | GKB4718FLT4 | MELANGE SKIRT | 248 | 4,213.52 | 1,604.56 |
| 12.28 | HMA0042CORE | ORIGAMI 3 PC CANVAS ART | 248 | 9,907.60 | 3,045.44 |
| 34.65 | HMB0035CORE | 3 TIER ANGLAISE BESKIRT | 248 | 19,827.60 | 8,593.20 |
| 3.31 | GKB4536SU24 | ESS LACE INSET BIKE SHORT | 247 | 1,973.53 | 817.57 |
| 3.3 | GBB4022SU24 | ESS TROPIC PEDAL | 245 | 1,957.69 | 808.64 |
| 8.01 | GBO4412SU24 | 3D FLOWER BIKINI | 245 | 2,447.55 | 1,962.45 |
| 7.82 | GTB3010COR4 | DENIM PANT W STAR BUTTON | 239 | 4,768.05 | 1,868.98 |
| 3.54 | GBB4135SU14 | APPLQ/EMB CAPRI W/ RUFFLE | 238 | 2,377.62 | 842.52 |
| 3.31 | GBO4652FL14 | ESS LACE TRIM CARDIGAN | 238 | 2,142.00 | 787.78 |
| 27.16 | HMB0015CORE | LADYBUG ROSE FLR BUMPER | 238 | 19,028.10 | 6,464.08 |
| 7.5 | BKAS037SU24 | SCOTT FLIP FLOP | 237 | 1,182.63 | 1,777.50 |
| 7.3 | GBD5211FL24 | PIECED PRNT DRESS W APPLQ | 237 | 7,098.15 | 1,730.10 |
| 1.97 | GKA5722WT14 | LX VELOUR HEADBAND | 236 | 2,112.20 | 464.92 |
| 9.63 | GTT3007WT14 | LX FLOCKED VELOUR TUNIC | 236 | 7,068.20 | 2,272.68 |
| 26.19 | HMB0023CORE | CHEVRON ZOO BUMPER | 235 | 18,788.25 | 6,154.65 |
| 4.5 | GKA5867WT14 | FLORAL STRIPE CAMIS | 234 | 3,030.30 | 1,053.00 |
| 5.25 | GKAW023FL14 | ROYAL ROSE WATCH | 234 | 3,732.30 | 1,228.50 |
| 26.41 | HMB0031CORE | ORIGAMI BUMPER | 234 | 18,708.30 | 6,179.94 |
| 27.16 | HMB0006CORE | MOONRISE FLORAL BUMPER | 233 | 18,628.35 | 6,328.28 |
| 6.88 | GTT2101FL24 | SLUB TUNIC WITH LACE | 232 | 5,324.40 | 1,596.16 |
| 7.76 | BKB4529FLT4 | EWAIST STRIPE FLEECE PANT | 231 | 4,155.69 | 1,792.56 |
| 3.7 | GKA4444SU24 | MACAW FLORAL SUNHAT | 230 | 2,297.70 | 851 |
| 4.87 | GTB3009WT14 | STRIPED LEGGING | 229 | 3,881.55 | 1,115.23 |
| 8.41 | GBO5332FL24 | PIECED LACE TRIM COAT | 227 | 7,933.65 | 1,909.07 |
| 3.55 | GBT5184FL14 | SS LACE TRIM TOP | 227 | 2,267.73 | 805.85 |
| 3.79 | GKB4023SU24 | ESS ORINOKO PEDAL | 226 | 1,805.74 | 856.54 |
| 4.13 | BKT5439WT14 | 2-FER FIERY STRIPE TEE | 224 | 4,244.80 | 925.12 |
| 20 | GKAS065WT14 | STACIA MOTO BOOT | 224 | 10,292.80 | 4,480.00 |
| 6.49 | GBO5173FL14 | LACE TRIM FLC HOODY | 223 | 3,342.77 | 1,447.27 |
| 7.25 | GBAS036SU24 | LIL SUGAR FLIP FLOP | 221 | 2,207.79 | 1,602.25 |
| 4.1 | GKAX018FL14 | GK TEXTURED LACE TIGHT | 221 | 2,207.79 | 906.1 |
| 6.45 | BKT5034FL14 | REVERSE FRENCH TERRY TEE | 220 | 2,637.80 | 1,419.00 |
| 4.93 | GKB4720FLT4 | ANGL TRIM MELANGE LEGGING | 219 | 2,844.81 | 1,079.67 |
| 2.68 | LGA5699WT14 | LX VELOUR PARISIAN BEANIE | 219 | 1,960.05 | 586.92 |

| | | | | |
|---|---|---|---|---|
| 5.6 | GBB5260FL24 | CURVE PIECE SKIRT W/LEGS | 213 | 4,888.35 | 1,192.80 |
| 4.53 | GTB2085FL14 | TAPESTRY PRINT LEGGINGS | 210 | 2,727.90 | 951.3 |
| 6.36 | HMA0009CORE | MOONRISE PIECED PILLOW | 210 | 4,189.50 | 1,335.60 |
| 6.36 | HMA0018CORE | LADYBUG ROSE PILLOW | 208 | 4,149.60 | 1,322.88 |
| 2.84 | GBO5579FL24 | ESS SPOT CARDIGAN | 206 | 1,854.00 | 585.04 |
| 6.36 | HMA0026CORE | CHEVRON ZOO ANIMAL PILLOW | 206 | 4,109.70 | 1,310.16 |
| 3.25 | GBT4810SU34 | HOLA FLOWER TANK | 205 | 2,047.95 | 666.25 |
| 1.87 | LGA5862WT14 | BLUEBELL FLORAL HEADBAND | 203 | 1,207.85 | 379.61 |
| 5.5 | GKT4722FLT4 | SS MELANGE STRIPE TUNIC | 202 | 2,017.98 | 1,111.00 |
| 3.19 | HMA0024CORE | CHEVRON ZOO BUNTING | 202 | 4,029.90 | 644.38 |
| 4.02 | GKB4134SU14 | APPLQ/ EMB CAPRI W/RUFFLE | 200 | 1,998.00 | 804 |
| 5.62 | BKT4520FLT4 | SS COOL NERD APPLIQUE TEE | 198 | 2,572.02 | 1,112.76 |
| 3.28 | GBA4929FL14 | SWEATER HEADBAND | 198 | 1,384.02 | 649.44 |
| 1.83 | GKA5279FL14 | SOLID LACE TRIM HEADBAND | 198 | 988.02 | 362.34 |
| 7.5 | GKAS026SU14 | PEARL FLIP FLOP | 198 | 1,978.02 | 1,485.00 |
| 4.45 | BKB4192SU14 | ESS CRACKER SHORT | 197 | 1,574.03 | 876.65 |
| 4.4 | GTB2030SU24 | TROPIC PEDAL | 197 | 1,968.03 | 866.8 |
| 6.99 | GTT2051FLT4 | SS MELANGE STRIPE TUNIC | 197 | 2,953.03 | 1,377.03 |
| 4.44 | BKB4198SU14 | ESS BRUSHED FLEECE SHORT | 196 | 1,566.04 | 870.24 |
| 2.45 | GBAX004COR4 | GB 3 PK CORE SCALLOP SOCK | 195 | 1,550.25 | 477.91 |
| 4.1 | GBAX034WT14 | GB BALLERINA TIGHT | 195 | 2,525.25 | 799.5 |
| 10.96 | GTB2087FL14 | KNIT JEGGING | 194 | 3,878.06 | 2,126.24 |
| 47.95 | HMB0027CORE | ORIGAMI 3 PC CRIB SET | 194 | 29,090.30 | 9,302.30 |
| 4 | BKT5424WT14 | ESS VERTICAL FLAG TEE | 193 | 1,737.00 | 772 |
| 6.74 | GBB4939FL14 | STRETCHED COLORED DENIM | 191 | 1,719.00 | 1,287.34 |
| 5.92 | GBB5747WT24 | FRENCH TERRY PANT W CUFFS | 191 | 4,765.45 | 1,130.72 |
| 7.2 | GBAS029SU14 | LIL MONSONG CLOG | 190 | 1,328.10 | 1,368.00 |
| 2.45 | GBAX036COR4 | GB 3PK CORE WTRLILY SOCK | 189 | 1,502.55 | 463.05 |
| 9.19 | GTB3034WT24 | GLITTER STAR MESH SKIRT | 189 | 5,660.55 | 1,736.91 |
| 5.2 | GKA5550WT14 | LX TEXTURED SWTR HAT | 188 | 2,998.60 | 977.6 |
| 4.1 | GKAX024FL24 | GK ROYAL ROSE SPOT TIGHT | 185 | 2,395.75 | 758.5 |
| 7.65 | GKD4379SU34 | JIE JIE DIPPED DYE DRESS | 184 | 1,838.16 | 1,407.60 |
| 5.69 | LBG4737SU24 | SLUB WAVE PALM PCD BG | 184 | 1,838.16 | 1,046.96 |
| 21.4 | GKAS063WT14 | PAULINA QUILTED BOOT | 182 | 8,362.90 | 3,894.80 |
| 5.17 | GBO5245FL24 | SLUB FRENCH TERRY VEST | 182 | 3,630.90 | 940.94 |
| 5.9 | GTT2084FL14 | GLITTER PRINT TOP W/CUFFS | 182 | 2,728.18 | 1,073.80 |
| 2.24 | BKAX001COR4 | BK 3 PK CORE STP SOCK | 181 | 1,438.95 | 405.44 |
| 3.8 | BBT4986FL14 | ESS COMPASS STRIPE TEE | 181 | 1,629.00 | 687.8 |
| 23 | GKO5744WT14 | GLITTER STAR PUFFA JACKET | 181 | 9,040.95 | 4,163.00 |
| 12.89 | GTB3012WT14 | LX ADJ WAIST FLOCKED PANT | 181 | 7,230.95 | 2,333.09 |
| 5 | GTT3031WT24 | GLITTER STAR TEE | 181 | 3,972.95 | 905 |
| 62.61 | HMB0010CORE | LADYBUG ROSE 3PC CRIB SET | 181 | 28,950.95 | 11,332.41 |
| 2.84 | LGA5700WT14 | SOLID FRILLY MESH BOOTIES | 181 | 1,800.95 | 514.04 |
| 11.67 | BKO5263FL14 | QUILTED FLEECE HOOD VEST | 180 | 4,138.20 | 2,100.60 |
| 9.86 | GBO5776WT24 | SWEATER TRIM F/T HOODY | 180 | 5,931.00 | 1,774.80 |
| 18.29 | BKAS049FL14 | SAM SNEAKER WITH VELCRO | 179 | 3,578.21 | 3,273.91 |
| 4.06 | GKA5871FL24 | 3 PIECE UNDIES | 179 | 2,318.05 | 726.74 |

| | | | | | |
|---|---|---|---|---|---|
| 6.65 | GBB5483FL24 | JIE JIE EMB MESH SKIRT | 179 | 4,466.05 | 1,190.35 |
| 5.02 | GBT5102FL14 | LS PIECED PRINT TUNIC | 179 | 2,325.21 | 898.58 |
| 4.49 | BKB4273SU24 | ESS CRACKR DOT WAVE SHORT | 177 | 1,414.23 | 794.73 |
| 4.05 | GBT5480FL24 | DANCING JIE JIE | 177 | 3,000.15 | 716.85 |
| 44.62 | HMB0019CORE | CHEVRON ZOO 3 PC CRIB SET | 177 | 26,541.15 | 7,897.74 |
| 3.72 | GKA5382FL24 | SOLID SWEATER BEANIE | 176 | 2,631.20 | 654.72 |
| 6.52 | GBD4165SU14 | CRUSH DYE SLUB DRESS | 176 | 1,758.24 | 1,147.52 |
| 4.31 | BBT5308FL24 | PCD THRML COLORBLOCK TEE | 174 | 3,123.30 | 749.94 |
| 6.28 | GBD5213FL24 | ROYAL ROSE HOODED DRESS | 174 | 5,211.30 | 1,092.72 |
| 59.05 | HMB0001CORE | MOONRISE FLR 3PC CRIB SET | 174 | 27,831.30 | 10,274.70 |
| 6.3 | GTT2100FL24 | ROYAL ROSE TUNIC | 173 | 3,970.35 | 1,089.90 |
| 10.33 | BKO5803WT14 | REVERSE FRNCH TERRY HOODY | 172 | 5,151.40 | 1,776.76 |
| 4.64 | GBB4361SU24 | TEXTURED SLD WOVEN PEDAL | 171 | 1,708.29 | 793.44 |
| 4.53 | GBT5387FL14 | GLITTER PRINT TOP W/CUFFS | 169 | 1,519.31 | 765.57 |
| 1.97 | GTA2112FL24 | ROCOCCO  FLORAL HEADBAND | 169 | 1,681.55 | 332.93 |
| 5.76 | GKA5380FL24 | SPOT/STRIPE SCARF | 168 | 3,351.60 | 967.68 |
| 4.53 | GBT5100FL14 | 3/4 SLV HEART APPLQ TUNIC | 168 | 2,182.32 | 761.04 |
| 10.6 | GTO2053FLT4 | STRETCH FLEECE HOODY | 168 | 3,862.32 | 1,780.80 |
| 14.43 | GKO4741FLT4 | CANDACE SPOT JACKET | 167 | 5,008.33 | 2,409.81 |
| 9.77 | BKO5458WT14 | FLEECE HOODY VEST | 164 | 4,911.80 | 1,602.28 |
| 4.5 | BKT5441WT14 | COLORBLOCKED SNOW TEE | 164 | 3,107.80 | 738 |
| 4.9 | GBB5255WT14 | JAZZY SPOT SKATER SKIRT | 164 | 3,271.80 | 803.6 |
| 10.19 | BKO5080WT14 | MARLED COLLAR SWEATER | 163 | 6,022.85 | 1,660.97 |
| 5.19 | GBT4416SU24 | KNOTTED STRAP TOP | 162 | 1,618.38 | 840.78 |
| 4.1 | GBAX025FL24 | GB SOLID FOOTLESS TIGHT | 161 | 2,084.95 | 660.1 |
| 6.01 | GKA5378FL24 | SOLID SWEATER SCARF | 161 | 3,211.95 | 967.61 |
| 5.25 | GKAW019FL14 | LACE WATCH | 161 | 2,091.39 | 845.25 |
| 4.18 | BBT5316FL24 | 2FER CAMEL SADDLE TEE | 160 | 2,712.00 | 668.8 |
| 4.57 | GBT5719WT14 | SPARKLY STAR GRAPHIC TEE | 160 | 2,712.00 | 731.2 |
| 6.07 | GBD4662FL14 | LS ROMY FLORAL DRESS | 159 | 3,178.41 | 965.13 |
| 6.08 | GBT4359SU24 | TEXTURED LINEN LOOK TUNIC | 159 | 1,588.41 | 966.72 |
| 8.83 | GKS5481FL24 | PRINCESS 2 PC PJ'S | 159 | 3,649.05 | 1,403.97 |
| 5.48 | GTB3033WT24 | GLITTER STAR LEGGING | 158 | 3,152.10 | 865.84 |
| 27.17 | HMB0014CORE | LADYBUG ROSE QUILT | 158 | 12,632.10 | 4,292.86 |
| 3.93 | LBB4739SU24 | CRACKER PALM SHORT | 158 | 1,104.42 | 620.94 |
| 4.1 | BKT4997FL14 | ESS HIDE & SEEK TEE | 157 | 1,413.00 | 643.7 |
| 3.98 | GTA2090FL14 | SWEATER HEADBAND | 157 | 1,097.43 | 624.86 |
| 3.62 | BKT4515FLT4 | SS CLEVER PLANET TEE | 156 | 1,558.44 | 564.72 |
| 3.22 | HMA0032CORE | ORIGAMI BUNTING | 156 | 3,112.20 | 502.32 |
| 25.57 | HMB0005CORE | MOONRISE QUILT | 156 | 12,472.20 | 3,988.92 |
| 3.56 | LGT4736SU24 | PEACOCK MESH SLEEVE TUNIC | 156 | 1,402.44 | 555.36 |
| 7.02 | GBB5188FL14 | METALLIC NET SKIRT W/LEGS | 155 | 2,788.45 | 1,088.10 |
| 8.65 | GKB4160SU14 | BLEACHED DENIM SHORT | 154 | 1,538.46 | 1,332.10 |
| 3.33 | BBT5428WT14 | ESS HELICOPTER RAGLAN | 153 | 1,377.00 | 509.49 |
| 5.25 | GKAW020FL14 | FLORAL WATCH | 153 | 1,987.47 | 803.25 |
| 6.78 | HMA0034CORE | ORIGAMI GIRAFFE PILLOW | 153 | 3,052.35 | 1,037.34 |
| 7.23 | LGG5659WT14 | BLUEBELL FLORAL BUBBLE BG | 153 | 3,511.35 | 1,106.19 |

| 4.23 | BKT4286SU24 | WAIKIKI PATCH TEE | 152 | 1,518.48 | 642.96 |
| 3.78 | GBB4153SU14 | CONTRAST SPARKLE CAPRI | 152 | 1,518.48 | 574.56 |
| 4.2 | BKT4203SU14 | APPLIQUE PARROT TEE | 151 | 1,508.49 | 634.2 |
| 5.81 | GTB2002SU14 | DENIM SHORT W/ MESH | 146 | 1,458.54 | 848.26 |
| 4.09 | GBB4365SU24 | SOLID BELL W WOVEN DETAIL | 145 | 1,448.55 | 593.05 |
| 5.72 | GBD5292FL14 | SS ROMY FLORAL DRESS | 145 | 2,898.55 | 829.4 |
| 3.41 | GKB4118SU14 | ESS SBREEZE SHORT W/ MESH | 145 | 1,158.55 | 494.45 |
| 6.92 | GTT2032SU24 | KNOTTED STRAP TOP RUFFLE | 145 | 1,448.55 | 1,003.40 |
| 14.26 | GKAS047FL14 | SHAE LOW TOP | 144 | 2,878.56 | 2,053.44 |
| 8.46 | GBO5377FL24 | SPOT STRIPE P/O SWEATER | 144 | 5,032.80 | 1,218.24 |
| 17.12 | GBAS062WT14 | LIL PENNY STAR COZY BOOT | 143 | 5,712.85 | 2,448.16 |
| 8.3 | GTB2088FL14 | METALLIC NETTING SKIRT | 142 | 2,838.58 | 1,178.60 |
| 3.97 | BKT4991FL14 | ESS SLUB LS DIP DYE TEE | 140 | 1,260.00 | 555.8 |
| 2.44 | LBA5256FL24 | PUPPY ART SPACE BEANIE | 139 | 966.05 | 339.16 |
| 4.07 | LBB5246FL24 | SPACE STRIPE FLEECE PANT | 138 | 2,063.10 | 561.66 |
| 16.37 | GKAS042FLT4 | REVEL SHORTIE BOOT | 137 | 4,108.63 | 2,242.69 |
| 1.68 | GBA5280FL14 | SOLID LACE TRIM HEADBAND | 136 | 678.64 | 228.48 |
| 6.56 | LGG5282FL24 | ANIMAL HOLLY SPOT TRIM BG | 136 | 3,121.20 | 892.16 |
| 6.17 | GBB4402SU24 | MUSLN SKRT W MACAW RUFFLE | 135 | 1,348.65 | 832.95 |
| 6.04 | LBG4689SU24 | SLUB RIBBIT POLO BG | 135 | 1,348.65 | 815.4 |
| 8.05 | GTB2056FLT4 | MELANGE SKIRT | 134 | 2,410.66 | 1,078.70 |
| 6.65 | LBG5110WT14 | CRITTER STRIPE ANIMAL BG | 134 | 3,075.30 | 891.1 |
| 2.44 | LGA5786WT14 | CHARACTER FASHION BEANIE | 134 | 1,199.30 | 326.96 |
| 14.9 | GBAS033SU24 | LIL SANETA SANDAL | 133 | 1,328.67 | 1,981.70 |
| 8.44 | GKB5485FL24 | FLORAL STRETCH TWILL | 133 | 3,983.35 | 1,122.52 |
| 4.1 | GBAX021FL14 | GB ROMANY FLORAL TIGHT | 132 | 1,318.68 | 541.2 |
| 3.9 | GKA5384FL24 | SPOT/STRIPE BEANIE | 132 | 1,973.40 | 514.8 |
| 5.93 | GBD4131SU14 | EMB TRIPLE TIER KNT DRESS | 132 | 1,318.68 | 782.76 |
| 6.62 | GBD5226FL24 | 16 WALE CORD DRESS | 132 | 3,953.40 | 873.84 |
| 17.06 | BKO5078WT14 | MARLED STRIPE SWEATER | 131 | 5,233.45 | 2,234.86 |
| 12.21 | GTO2104FL24 | SPOT STRIPE P/O SWEATER | 131 | 5,233.45 | 1,599.51 |
| 17.12 | GKAS061WT14 | PENNY STAR COZY BOOT | 130 | 5,193.50 | 2,225.60 |
| 4.27 | GBT4145SU14 | MERMAID OVRLAY TANK TUNIC | 130 | 1,298.70 | 555.1 |
| 5.35 | GTT2041SU34 | HOLA FLOWER TANK | 130 | 1,298.70 | 695.5 |
| 4.76 | BKA5464WT14 | BK CORD HOUND SHERPA HAT | 129 | 2,057.55 | 614.04 |
| 2.82 | GBB4538SU14 | ESS LACE INSET BIKE SHORT | 128 | 1,022.72 | 360.96 |
| 4.76 | GBT4410SU34 | SLUB EMB CONTRAST TANK | 128 | 1,278.72 | 609.28 |
| 14.86 | GTO2103FL24 | HOODED LACE CARDIGAN | 128 | 5,753.60 | 1,902.08 |
| 8.85 | BKB5456WT14 | RIB WAIST FLEECE PANT | 127 | 3,168.65 | 1,123.95 |
| 6.54 | GBB5693WT14 | RUCHED CORD PANT | 127 | 3,295.65 | 830.58 |
| 2.45 | GBAX029COR4 | GB 3PK CORE BALLERINA SCK | 126 | 1,001.70 | 308.7 |
| 7.44 | GBD5167FL14 | SOLID LACE TRIM DRESS | 126 | 2,896.74 | 937.44 |
| 7.25 | GBAS027SU14 | LIL PEARL FLIP FLOP | 125 | 1,248.75 | 906.25 |
| 4.73 | GKB4356SU24 | TEXTURED WOVEN SHORT | 125 | 1,248.75 | 591.25 |
| 5.84 | LBG5023FL14 | SIDE SNAP 2 FER BABYGROW | 124 | 1,610.76 | 724.16 |
| 2.84 | LGB3978SU24 | MESH BROEKI | 124 | 990.76 | 352.16 |
| 4.6 | GBB4715FLT4 | STRETCH FLEECE PANT | 123 | 1,966.77 | 565.8 |

| | | | | |
|---|---|---|---|---|
| 6.56 | GBB5692WT14 | SEQUIN PATCH DENIM PANT | 123 | 3,191.85 | 806.88 |
| 15.19 | GTT3032WT24 | SWEATER TRIM F/T HOODY | 123 | 4,544.85 | 1,868.37 |
| 4.1 | BKT4987FL14 | ESS LANDING ZONE TEE | 122 | 1,098.00 | 500.2 |
| 4.51 | GBB4406SU24 | SOLID PEDAL WITH  FRILLS | 122 | 1,218.78 | 550.22 |
| 20.18 | GKAS050FL14 | NATASHA PRINTED MOTO BOOT | 121 | 3,991.79 | 2,441.78 |
| 9.93 | GTO2082FL14 | LACE TRIM FLC HOODY | 121 | 2,176.79 | 1,201.53 |
| 9.26 | BKB5453WT14 | EWAIST CORD CARGO PANT | 120 | 3,474.00 | 1,111.20 |
| 3.36 | BKT4280SU24 | 3 COLOR BEACH SHACK TANK | 120 | 1,198.80 | 403.2 |
| 4.87 | GTB3011WT14 | 2X2 RIB PANT W PRINT TRIM | 120 | 2,754.00 | 584.4 |
| 7.08 | LBG5771WT14 | FLEECE PATCH BABYGROW | 119 | 2,731.05 | 842.52 |
| 3.63 | BBT5304FL24 | ESS GEO STRIPE HOODY TEE | 118 | 1,062.00 | 428.34 |
| 11.04 | BKO5037FL14 | CABLE KNIT FLEECE SWEATER | 118 | 3,302.82 | 1,302.72 |
| 3.7 | GBA4445SU24 | MACAW FLORAL SUNHAT | 118 | 1,178.82 | 436.6 |
| 4.23 | BBT5008FL14 | ONE POCKET GML HOODY | 117 | 1,519.83 | 494.91 |
| 8.49 | GBO4927FL14 | EMB SOLID/STRIPE CARDIGAN | 117 | 2,104.83 | 993.33 |
| 7.81 | BBO5804WT14 | REVERSE FRNCH TERRY HOODY | 116 | 3,474.20 | 905.96 |
| 19.4 | GKAS039FLT4 | ASTORIA WRESTLER SNEAKER | 116 | 3,478.84 | 2,250.40 |
| 5.06 | GBB4133SU14 | ASSYM PRINT SKIRT W LEGS | 116 | 1,158.84 | 586.96 |
| 5.46 | GKB4405SU24 | SLD PEDAL W PRINT FRILLS | 116 | 1,158.84 | 633.36 |
| 6.19 | LBG5025FL14 | BIG BIKE STRIPE BABYGROW | 116 | 1,970.84 | 718.04 |
| 3.56 | LBT3964SU24 | PALM BEETLE ROADTRIP TANK | 115 | 1,148.85 | 409.4 |
| 7.33 | BBO5319FL24 | REVERSE FRNCH TERRY HOODY | 114 | 3,414.30 | 835.62 |
| 2.45 | GKAX003COR4 | GK 3 PK CORE SCALLOP SOCK | 114 | 906.3 | 279.14 |
| 1.75 | BKA5658FL24 | BK WEAVE STRIPE BEANIE | 113 | 1,124.35 | 197.75 |
| 8.81 | BKS5324FL24 | SLEEPY DOG 2PC SET | 113 | 2,593.35 | 995.53 |
| 5.96 | GBD5180FL14 | 3/4 SLV STRIPED DRESS | 113 | 1,693.87 | 673.48 |
| 4.48 | BKT4522FLT4 | SS ARGYLE ROCK HENLEY | 112 | 1,118.88 | 501.76 |
| 6.59 | BBB4494FL24 | E WAIST HERRINGBONE PANT | 111 | 3,102.45 | 731.49 |
| 5.11 | BBT5310FL24 | MODE STRIPE THERMAL HOODY | 110 | 1,974.50 | 562.1 |
| 7.31 | GTT2050FLT4 | SS MELANGE TUNIC | 110 | 1,758.90 | 804.1 |
| 3.66 | GBT4125SU14 | MERMAID APPLQ TANK | 109 | 1,088.91 | 398.94 |
| 3.87 | BBT5315FL24 | THERMAL SLV MAP ART TEE | 108 | 1,830.60 | 417.96 |
| 10.32 | BKB5449WT14 | RIB WAIST CRACKER PANT | 107 | 3,204.65 | 1,104.24 |
| 4 | BKT4511FLT4 | LS REVERSE SLV STRIPE TEE | 106 | 1,164.94 | 424 |
| 2.02 | GTA2038SU24 | MACAW FLORAL WIDE HBAND | 106 | 634.94 | 214.12 |
| 5.66 | GBB5478FL24 | ROYAL ROSE REVERSE PANT | 106 | 2,644.70 | 599.96 |
| 10.79 | GTO2083FL14 | EMB SOLID/STRIPE CARDIGAN | 106 | 2,436.94 | 1,143.74 |
| 15.41 | GKAS056FL24 | OATMEAL WEDGE SHOE | 105 | 3,144.75 | 1,618.05 |
| 7.53 | HMA0008CORE | MOONRISE DIAPER STACKER | 105 | 3,144.75 | 790.65 |
| 6.56 | LGG5286FL24 | 2FER BUGS PRINT BABYGROW | 105 | 2,409.75 | 688.8 |
| 6.04 | GBB4378SU34 | TIE DYE TIERED SKIRT | 104 | 830.96 | 628.16 |
| 23.71 | HMB0022CORE | CHEVRON ZOO ANIMAL QUILT | 104 | 8,314.80 | 2,465.84 |
| 4.16 | BKT4993FL14 | ESS IMAGINARY FRIEND TEE | 103 | 927 | 428.48 |
| 7.43 | HMA0017CORE | LADYBUG ROSE DIAPER STACK | 103 | 3,084.85 | 765.29 |
| 7.43 | HMA0025CORE | CHEVRON ZOO DIAPER STACKR | 103 | 3,084.85 | 765.29 |
| 8.33 | HMB0020CORE | CHEVRON CRIB SHEET | 103 | 2,054.85 | 857.99 |
| 4.13 | LBT5242FL24 | NOVA STAR STRIPE SLV TEE | 103 | 1,333.85 | 425.39 |

| | | | | |
|---|---|---|---|---|
| 5.69 | LBG4443SU24 | SLUB WAVE MIXED BG | 102 | 1,018.98 | 580.38 |
| 0.95 | BKAX05COR1 | BK CORE SOCK | 101 | 297.95 | 95.95 |
| 1.87 | GBA5723WT14 | VELOUR HEADBAND | 101 | 903.95 | 188.87 |
| 3.29 | GBB4113SU14 | ESS MESH TRIM SOLID CAPRI | 101 | 806.99 | 332.29 |
| 6.65 | LGO5696WT14 | LX VELOUR LACE CARDIGAN | 101 | 2,014.95 | 671.65 |
| 1.74 | GBA5741WT24 | GLITTER STAR HEADBAND | 100 | 795 | 174 |
| 8.39 | GBB5716WT14 | LX E-WAIST FLOCKED PANT | 100 | 2,995.00 | 839 |
| 2.68 | LGA5289FL24 | PEARL KNOT HEART BEANIE | 100 | 995 | 268 |
| 5.38 | LGD5281FL24 | RIB BODY HOLLY SPOT DRESS | 100 | 2,295.00 | 538 |
| 3.54 | BBT4213SU14 | LIZARD APPLIQUE TEE | 99 | 989.01 | 350.46 |
| 3.27 | BBT5300FL24 | ESS SS ELEPHANT SLUB TEE | 99 | 891 | 323.73 |
| 1.72 | GTA2039SU24 | SKINNY HIPPIE GIRL HBAND | 99 | 494.01 | 170.28 |
| 5.34 | LGG3982SU24 | MESH DOUBLE RUFFLE BSUIT | 98 | 979.02 | 523.32 |
| 2.24 | BBAX002COR4 | BB 3 PK CORE STRIPE SOCK | 97 | 771.15 | 217.28 |
| 1.72 | GKA4089SU24 | TEXTURED BOW HEADBAND | 97 | 484.03 | 166.84 |
| 3.54 | LGT4488SU14 | ZIGGY RUFFLE SLEEVE TOP | 97 | 969.03 | 343.38 |
| 2.84 | LBA5373FL24 | SPACE STRIPE BOOTIES | 96 | 859.2 | 272.64 |
| 2.84 | LGA5370FL24 | HOLLY SPOT BUG BOOTIE | 96 | 859.2 | 272.64 |
| 17.29 | GBO5745WT14 | GLITTER STAR PUFFA JACKET | 95 | 4,745.25 | 1,642.55 |
| 5.25 | GKAW026WT14 | DANCE FLORAL WATCH | 94 | 1,499.30 | 493.5 |
| 3.79 | GKB4021SU24 | ESS TROPIC PEDAL | 94 | 751.06 | 356.26 |
| 26.82 | HMB0030CORE | ORIGAMI ANIMAL QUILT | 94 | 7,515.30 | 2,521.08 |
| 2.15 | LGA5348FL24 | HOLLY SPOT BEANIE | 94 | 653.3 | 202.1 |
| 5.25 | BKAW024FL14 | SAFARI ANIMAL WATCH | 93 | 1,483.35 | 488.25 |
| 7.94 | BKB5451WT14 | EWAIST CUFF DENIM PANT | 93 | 2,599.35 | 738.42 |
| 21.52 | GKAS043FL14 | ANGELA SHORT COWBOY BOOT | 93 | 2,789.07 | 2,001.36 |
| 12.48 | GBO5375FL24 | HOODED LACE CARDIGAN | 93 | 3,715.35 | 1,160.64 |
| 7 | LGG5662WT14 | THUMPER STRIPE RUFFLE BG | 93 | 2,134.35 | 651 |
| 6.31 | LGG4940FL14 | ELEPHANT FRIEND BABYGROW | 92 | 1,379.08 | 580.52 |
| 3.86 | BBT5000FL14 | ESS SLUB HOODY | 90 | 810 | 347.4 |
| 2.21 | LBA5116WT14 | CRITTER STRIPE BEANIE | 90 | 805.5 | 198.9 |
| 6.41 | LBG4631FLT4 | BARNYARD STRIPE 2 IN 1 BG | 90 | 1,619.10 | 576.9 |
| 7.49 | HMA0033CORE | ORIGAMI DIAPER STACKER | 89 | 2,665.55 | 666.61 |
| 5.25 | GKAW025WT14 | SPARKLY STAR WATCH | 88 | 1,403.60 | 462 |
| 7.4 | GBS5484FL24 | PRINCESS 2 PC PJS | 88 | 2,019.60 | 651.2 |
| 4.54 | GBT4394SU24 | ORINOKO LAYER LOOK TUNIC | 88 | 879.12 | 399.52 |
| 15.93 | GBO5552WT14 | LX LONG SWEATER CARDIGAN | 87 | 3,997.65 | 1,385.91 |
| 6.83 | LGG4977FL14 | HOLLY SPOT BABYGROW | 87 | 1,478.13 | 594.21 |
| 14.78 | GBAS060WT14 | LIL COLETTE WEDGE LX SHOE | 86 | 3,435.70 | 1,271.08 |
| 6.27 | LBG5252FL24 | SPACE STRIPE HENLEY BG | 86 | 1,973.70 | 539.22 |
| 8.51 | GBD4733FLT4 | LS HOODED DRESS | 84 | 2,099.16 | 714.84 |
| 6.42 | BBB5467WT14 | EWAIST YOKE TWILL PANT | 83 | 2,402.85 | 532.86 |
| 3.52 | BBT5430WT14 | ESS DEER CHEST STRIPE TEE | 83 | 747 | 292.16 |
| 7.23 | BKB4292SU24 | ADJ WAIST BALI SHORT | 82 | 819.18 | 592.86 |
| 8.88 | GTB3035WT24 | FRENCH TERRY PANT W CUFFS | 82 | 2,291.90 | 728.16 |
| 6.27 | LBG5247FL24 | 01 ART CHAMBRAY BABYGROW | 82 | 1,881.90 | 514.14 |
| 2.44 | LBA5117WT14 | CRITTER STRIPE BOOTIES | 81 | 724.95 | 197.64 |

| | | | | | |
|---|---|---|---|---|---|
| 6.45 | BBB4497FL24 | E WAIST CHECK PANT | 80 | 2,236.00 | 516 |
| 5.57 | BKB4296SU24 | YINGYANG BOARDSHORT | 80 | 799.2 | 445.6 |
| 2.03 | GTA3020WT14 | SPOTTY HEADBAND WITH BOW | 80 | 716 | 162.4 |
| 11.76 | GTB2109FL24 | KNIT WAIST DENIM PANT | 80 | 2,396.00 | 940.8 |
| 6.41 | LBG4645FLT4 | HORSE POUCH PCKT BABYGROW | 80 | 1,439.20 | 512.8 |
| 5.25 | BKAW021FL14 | CAMO & FRIEND WATCH | 79 | 1,026.21 | 414.75 |
| 3.46 | BBT5425WT14 | ESS VERTICAL FLAG TEE | 79 | 711 | 273.34 |
| 12.41 | BKT4500FL24 | CHECK CORD WOVEN SHIRT | 79 | 2,366.05 | 980.39 |
| 6.49 | GBB5108FL14 | KNIT JEGGING | 79 | 1,421.21 | 512.71 |
| 3.2 | BKA5082WT14 | BK SWEATER BEANIE | 78 | 1,322.10 | 249.6 |
| 7.75 | BBO5459WT14 | FLEECE HOODY VEST | 78 | 2,336.10 | 604.5 |
| 1.81 | GBA5739WT14 | SPOTTY HEADBAND WITH BOW | 78 | 542.1 | 141.18 |
| 8.97 | GTO2052FLT4 | DENIM MOTO VEST | 78 | 1,247.22 | 699.66 |
| 8.4 | HMB0028CORE | ORIGAMI CRIB SHEET | 78 | 1,556.10 | 655.2 |
| 4.01 | LGT5663WT14 | SWAN MESH SLEEVE TOP | 78 | 1,010.10 | 312.78 |
| 3.8 | GBT4127SU14 | UNDER THE SEA HI-LO TUNIC | 77 | 615.23 | 292.6 |
| 4.44 | GBT4723FLT4 | SS MELANGE STRIPE TUNIC | 77 | 769.23 | 341.88 |
| 7.56 | GTB2057FLT4 | STRETCH FLEECE PANT | 77 | 1,385.23 | 582.12 |
| 6.81 | GTT3030WT24 | GLITTER STAR WRAP CARD | 77 | 1,767.15 | 524.37 |
| 3.29 | LGB4489SU14 | ABBY FLORAL RUFFLE SHORT | 77 | 615.23 | 253.33 |
| 8.84 | BKB4217SU14 | ADJWAIST TIGER STRIPE DNM | 76 | 759.24 | 671.84 |
| 4.08 | BKT4211SU14 | PRINTED LIZARD APPLQE TEE | 76 | 759.24 | 310.08 |
| 3.98 | BKT4278SU24 | SURF 4 PRINT TEE | 76 | 759.24 | 302.48 |
| 18.97 | GTO3001WT14 | LX LONG SWEATER CARDIGAN | 76 | 3,796.20 | 1,441.72 |
| 3.44 | BKA4342SU14 | CRACKER LEAF CAMO SUNHAT | 75 | 749.25 | 258 |
| 3.82 | GBT4759FLT4 | SS SPOTTED LOVE TUNIC | 75 | 899.25 | 286.5 |
| 2.82 | LBA5039FL14 | HARLEY STRIPE BOOTIE | 75 | 524.25 | 211.5 |
| 1.5 | GBA5278FL14 | PRINT HEADBAND | 74 | 369.26 | 111 |
| 3.29 | GBB4117SU14 | ESS PEBBLE CAPRI W/MESH | 74 | 591.26 | 243.46 |
| 5.49 | GBT4155SU14 | SPLIT BODICE LAWN TUNIC | 74 | 739.26 | 406.26 |
| 8.33 | HMB0002CORE | MOONRISE FLR CRIB SHEET | 74 | 1,476.30 | 616.42 |
| 4.79 | LGD3985SU24 | LAWN HULA PRINT DRESS | 74 | 739.26 | 354.46 |
| 3.66 | BBT4204SU14 | APPLIQUE PARROT TEE | 73 | 729.27 | 267.18 |
| 3.55 | BBT4990FL14 | ESS SLUB AIR BOX TEE | 73 | 657 | 259.15 |
| 15.19 | GKAS054FL24 | MILLLIE CANVAS FLAT | 73 | 2,186.35 | 1,108.87 |
| 2.21 | BKA4545FLT4 | BK HEADPHONE BEANIE | 72 | 575.28 | 159.12 |
| 5.43 | BBB5323FL24 | E WAIST FRENCH TERRY PANT | 72 | 1,796.40 | 390.96 |
| 4.1 | GBAX035WT14 | GB JAZZY SPOT TIGHT | 72 | 932.4 | 295.2 |
| 10.92 | GTB3013WT14 | SEQUIN PATCH RIB DENIM | 72 | 2,156.40 | 786.24 |
| 3.49 | BBT5301FL24 | ESS TRIBAL PRINT SLUB TEE | 71 | 639 | 247.79 |
| 7.66 | GBB5096FL14 | EWAIST PIECED DENIM | 71 | 1,135.29 | 543.86 |
| 6.88 | LBG5109WT14 | FLEECE CRITTER BABYGROW | 71 | 1,629.45 | 488.48 |
| 3.69 | BBT4287SU24 | WAIKIKI PATCH TEE | 70 | 699.3 | 258.3 |
| 3.55 | BBT4988FL14 | ESS LANDING ZONE TEE | 70 | 630 | 248.5 |
| 3.61 | BBT4994FL14 | ESS IMAGINARY FRIEND TEE | 70 | 630 | 252.7 |
| 3.81 | GKA4448SU24 | SOLID TEXTURED HAT | 70 | 699.3 | 266.7 |
| 6.68 | GBO5474FL24 | ROYAL ROSE ZIP HOODY | 70 | 2,306.50 | 467.6 |

| | | | | | |
|---|---|---|---|---|---|
| 3.83 | LBT5414WT14 | CRITTERS GRAPHIC TEE | 70 | 906.5 | 268.1 |
| 3.49 | LGB5285FL24 | BUG PRINT HOLLY SPOT PANT | 70 | 906.5 | 244.3 |
| 3.78 | BBB4193SU14 | ESS CRACKER SHORT | 69 | 551.31 | 260.82 |
| 3.76 | BBT5446WT14 | ARGYLE PRINT SLEEVE HOODY | 69 | 1,376.55 | 259.44 |
| 1.72 | GKA4087SU24 | SKINNY HIPPY HEADBAND | 69 | 344.31 | 118.68 |
| 2.45 | GKAX026COR4 | GK 3 PK CORE SCALLOP SOCK | 69 | 548.55 | 169.05 |
| 3.46 | BBT5423WT14 | ESS FIRETRUCK SLUB TEE | 68 | 612 | 235.28 |
| 16.23 | BKO5460WT14 | FLEECE PUFFY JACKET | 68 | 3,396.60 | 1,103.64 |
| 1.75 | GBA5476FL24 | ROCOCCO FLORAL HEADBAND | 67 | 532.65 | 117.25 |
| 5.2 | GBA5554WT14 | LX TEXTURED SWTR HAT | 67 | 1,068.65 | 348.4 |
| 5.93 | GKA5556WT14 | LX TEXTURED SWTR SCARF | 67 | 1,336.65 | 397.31 |
| 3.67 | GKA5767WT14 | FLOCKED FLOWER VELOUR BAG | 67 | 1,001.65 | 245.89 |
| 14.9 | GKAS032SU24 | SANETA SANDAL | 67 | 669.33 | 998.3 |
| 7.11 | GKB4401SU24 | MUSLN SKRT W MACAW RUFFLE | 66 | 659.34 | 469.26 |
| 6.86 | BBB4218SU14 | EWAIST TIGER STRIPE SHORT | 65 | 649.35 | 445.9 |
| 14.95 | BBO5079WT14 | MARLED ARM STRIPE SWEATER | 65 | 2,596.75 | 971.75 |
| 21.16 | GBAS055FL24 | LIL LUISA RIDING BOOT | 65 | 2,986.75 | 1,375.40 |
| 6.73 | GBB5653FL24 | KNIT WAIST DENIM PANT | 65 | 1,751.75 | 437.45 |
| 3.47 | LBA4740SU24 | CRACKER PALM SUNHAT | 65 | 649.35 | 225.55 |
| 3.8 | LBB5960WT14 | 1X1 RIB SHERPA FEET PANT | 65 | 971.75 | 247 |
| 7.72 | BBB4459FL14 | EWAIST CRACKER LINED PANT | 63 | 1,448.37 | 486.36 |
| 3.54 | BBT4215SU14 | LEAF BLOCK WITH GEIKO TEE | 63 | 377.37 | 223.02 |
| 5.88 | BBB4746FL14 | EWAIST CAMO TWILL PANT | 62 | 1,239.38 | 364.56 |
| 10.77 | BKT5443WT14 | BUFFALO CHECK WOVEN SHIRT | 62 | 1,856.90 | 667.74 |
| 10.8 | GBO4969WT24 | FT HOODED PULLOVER SWTR | 61 | 1,765.95 | 658.8 |
| 13.41 | HMB0021CORE | CHEVRON ZOO  BEDSKIRT | 61 | 3,656.95 | 818.01 |
| 6.73 | BBB5452WT14 | EWAIST CUFF DENIM PANT | 60 | 1,677.00 | 403.8 |
| 2.93 | GBB4119SU14 | ESS SBREEZE SHORT W/ MESH | 60 | 479.4 | 175.8 |
| 7.31 | GBB4161SU14 | BLEACH DENIM SHORT | 60 | 599.4 | 438.6 |
| 4.41 | BBA5465WT14 | BB CORD HOUND SHERPA HAT | 59 | 941.05 | 260.19 |
| 5.25 | GKAW015SU24 | ORINOKO FLORAL WATCH | 59 | 589.41 | 309.75 |
| 5.01 | LGB5651WT14 | BLUEBELL FLORAL PANT | 59 | 1,000.05 | 295.59 |
| 3.82 | BBT4521FLT4 | LS 2 IN 1 HEADPHONE HOODY | 58 | 811.42 | 221.56 |
| 10.45 | GTB2110FL24 | FLORAL STRETCH TWILL | 58 | 2,027.10 | 606.1 |
| 3.03 | BBA5083WT14 | BB SWEATER BEANIE | 57 | 966.15 | 172.71 |
| 8.4 | BBO5081WT14 | MARLED COLLAR SWEATER | 57 | 2,106.15 | 478.8 |
| 3.64 | BBT5440WT14 | 2-FER FIERY STRIPE TEE | 57 | 1,080.15 | 207.48 |
| 4.01 | BBT5442WT14 | COLORBLOCKED SNOW TEE | 57 | 1,080.15 | 228.57 |
| 5.25 | GKAW022FL14 | JIE JIE DANCING WATCH | 57 | 909.15 | 299.25 |
| 5.98 | GBB5486FL24 | FLORAL STRETCH TWILL | 57 | 1,707.15 | 340.86 |
| 4.2 | GKT4124SU14 | MERMAID APPLQ TANK | 57 | 569.43 | 239.4 |
| 12.57 | GTB2106FL24 | BELTED 16 W CORD PANT | 57 | 1,878.15 | 716.49 |
| 19.4 | GBAS040FLT4 | LIL ASTORIA SNEAKER | 56 | 1,679.44 | 1,086.40 |
| 4.1 | GKAX017FL14 | GK HEART FLORAL TIGHT | 56 | 559.44 | 229.6 |
| 5.04 | GBD4729FLT4 | SS MIXED PRINT DRESS | 56 | 1,287.44 | 282.24 |
| 3.19 | GBT4474SU24 | ESS BATIK PRT GRAPHIC TOP | 56 | 335.44 | 178.64 |
| 9.31 | BBO5265FL14 | QUILTED FLEECE HOOD VEST | 55 | 1,264.45 | 512.05 |

| | | | | |
|---|---|---|---|---|
| 7.58 | BKB4745FL14 | ADJ WST CAMO TWILL PANT | 55 | 1,264.45 | 416.9 |
| 7.46 | GBS5866WT14 | SNOWY DAY PJ'S | 55 | 1,372.25 | 410.3 |
| 4.7 | GKT4049SU24 | PANEL PRINT TEE | 55 | 549.46 | 258.51 |
| 2.08 | LBA5034FL14 | NOVA STAR BEANIE | 55 | 274.45 | 114.4 |
| 3.92 | LGT5275FL24 | SNAIL HOLLY SPOT TEE | 55 | 712.25 | 215.6 |
| 5.5 | GKA4533SU14 | DENIM HAT WITH ANGLAISE | 54 | 539.46 | 297 |
| 4.07 | GBB4721FLT4 | ANGL TRIM MELANGE LEGGING | 54 | 701.46 | 219.78 |
| 5.32 | GBB5098FL14 | PIECED PRINT SKIRT W/LEGS | 54 | 701.46 | 287.28 |
| 6.87 | GKD4381SU24 | MIXED PRT LAWN MAXI DRESS | 54 | 539.46 | 370.98 |
| 4.04 | LBT4975FL14 | ALIGATOR CAR TEE | 54 | 539.46 | 218.16 |
| 5.06 | BBT4517FLT4 | SS COOL NERD APPLIQUE TEE | 53 | 688.47 | 268.18 |
| 4.96 | BBT5012FL14 | 2 IN 1 SLING SHOT TEE | 53 | 476.47 | 262.88 |
| 5.25 | GKAW014SU24 | JIE JIE WATCH | 53 | 529.47 | 278.25 |
| 3.54 | LBT4503SU14 | PIRATE HIPPO TEE | 53 | 264.47 | 187.62 |
| 6.52 | LGG4551FLT4 | TRIPLE RUFFLE BABYGROW | 53 | 953.47 | 345.56 |
| 1.7 | GKA4174SU14 | SLD HEADBAND W/MESH SPRKL | 51 | 254.49 | 86.7 |
| 8.33 | HMB0012CORE | ASTON FLORAL CRIB SHEET | 51 | 1,017.45 | 424.83 |
| 27.94 | HMB0013CORE | LADYBUG ROSE BEDSKIRT | 51 | 3,567.45 | 1,424.94 |
| 13.52 | HMB0029CORE | ORIGAMI BED SKIRT | 51 | 3,057.45 | 689.52 |
| 7.97 | BKB4225SU14 | E-WAIST LEAF CAMO SHORT | 50 | 499.5 | 398.5 |
| 3.71 | BKT4180SU14 | ESS SLUB FLORA BLEACH TEE | 50 | 299.5 | 185.5 |
| 3.7 | GBA5385FL24 | SPOT/STRIPE BEANIE | 50 | 747.5 | 185 |
| 25.95 | HMB0004CORE | MOONRISE TIERED BEDSKIRT | 50 | 3,497.50 | 1,297.50 |
| 4.37 | GTA2113FL24 | SPOT/STRIPE BEANIE | 49 | 928.55 | 214.13 |
| 8.88 | GTT2034SU24 | TEXTURED LINEN LOOK TUNIC | 49 | 489.51 | 435.12 |
| 8.33 | HMB0003CORE | CARAVAN STRIPE SHEET | 49 | 977.55 | 408.17 |
| 8.4 | HMB0048CORE | SUKI FLORAL CRIB SHEET | 49 | 977.55 | 411.6 |
| 3.06 | BBT5527FL14 | ESS SLUB SS DIP DYE TEE | 48 | 432 | 146.88 |
| 5.77 | BKT5011FL14 | 2 IN 1 SLING SHOT TEE | 48 | 431.52 | 276.96 |
| 8.33 | HMB0047CORE | KNYSNA CRIB SHEET | 48 | 957.6 | 399.84 |
| 5.47 | BBT5010FL14 | THERMAL SLUB KANGA HENLEY | 47 | 610.53 | 257.09 |
| 5.77 | GKT4415SU24 | KNOTTED STRAP TOP | 47 | 469.55 | 271.21 |
| 4.31 | GTA2116FL24 | SOLID SWEATER BEANIE | 47 | 890.65 | 202.57 |
| 10.29 | BKB4535FLT4 | ADJ WAIST ROLLUP PANT | 46 | 1,149.54 | 473.34 |
| 4.81 | LBB5959WT14 | WALE CORD FLEECE PANT | 46 | 687.7 | 221.26 |
| 6.1 | BBB4227SU14 | EWAIST LEAF CAMO SHORT | 45 | 449.55 | 274.5 |
| 9.27 | BKS5462WT14 | BK MOOSE ARGYLE PJS | 45 | 1,122.75 | 417.15 |
| 6.65 | BKA5084WT14 | BK SWEATER SCARF | 44 | 877.8 | 292.6 |
| 3.55 | BBT4998FL14 | ESS HIDE & SEEK TEE | 44 | 396 | 156.2 |
| 3.7 | GBA4449SU24 | SOLID TEXTURED HAT | 44 | 439.56 | 162.8 |
| 3.66 | GBB4149SU14 | TRIPLE TIER CAPRI | 44 | 439.56 | 161.04 |
| 8.05 | GKO4166SU14 | TIE DYE NET SKRT SWIMSUIT | 44 | 439.56 | 354.2 |
| 6.42 | BBB5455WT14 | EWAIST CORD CARGO PANT | 43 | 1,244.85 | 276.06 |
| 3.26 | BBT5297FL24 | ESS GIRAFFE SPEEDY SJ TEE | 43 | 387 | 140.18 |
| 5.68 | BKT4207SU14 | SOUTH AMERICAN WORLD TEE | 43 | 429.57 | 244.24 |
| 3.26 | GBA5383FL24 | SOLID SWEATER BEANIE | 43 | 642.85 | 140.18 |
| 6.76 | LBO5112WT14 | FLEECE SHERPA HOOD JACKET | 43 | 986.85 | 290.68 |

| | | | | | |
|---|---|---|---|---|---|
| 4.22 | BKA5021FL14 | BK CABLE SWEATER BEANIE | 42 | 419.58 | 177.24 |
| 13.01 | LBO5575WT14 | SWEATER WITH FLEECE HOOD | 42 | 1,509.90 | 546.42 |
| 1.71 | GTA2091FL14 | PRINT HEADBAND | 41 | 204.59 | 70.11 |
| 4.14 | GKB4148SU14 | TRIPLE TIER PEDAL | 41 | 409.59 | 169.74 |
| 6.17 | LGG4586FLT4 | SIDE SNAP CAT BABYGROW | 41 | 737.59 | 252.97 |
| 6.31 | LGG4933FL14 | ELLIE FLORAL BOW BABYGROW | 41 | 696.59 | 258.71 |
| 1.75 | BBA5657FL24 | BB WEAVE STRIPE BEANIE | 40 | 398 | 70 |
| 3.44 | GBA4157SU14 | SEABREEZE SUNHAT | 40 | 399.6 | 137.6 |
| 7.28 | BBB5457WT14 | RIB WAIST FLEECE PANT | 39 | 973.05 | 283.92 |
| 4.54 | LGB5287FL24 | FRILL TRIM CORD PANT | 39 | 583.05 | 177.06 |
| 3.55 | BBT4996FL14 | ESS TREE HOUSE TEE | 38 | 342 | 134.9 |
| 6.13 | LBG4982FL14 | NOVA STAR HOODY BABYGROW | 38 | 683.62 | 232.94 |
| 3.74 | LGT4912FL14 | QUIRKY RAT SPOT SLV TEE | 38 | 379.62 | 142.12 |
| 15.28 | GKAS048FL14 | BONNIE WEDGED BALLET | 37 | 739.63 | 565.36 |
| 6.18 | GBD4408SU34 | APPLQ DRESS W/ FRILLS | 37 | 369.63 | 228.66 |
| 3.45 | GBT4731FLT4 | 3/4 SLV SNOWDROPS TUNIC | 37 | 480.63 | 127.65 |
| 3.71 | GKT4106SU14 | ESS SS STRP SBREEZE TUNIC | 37 | 221.63 | 137.27 |
| 3.97 | BBT4523FLT4 | SS ARGYLE ROCK HENLEY | 36 | 359.64 | 142.92 |
| 8.33 | HMB0011CORE | LADYBUG SPOTTY CRIB SHEET | 36 | 718.2 | 299.88 |
| 5.34 | LGD5654WT14 | BLUEBELL FLORAL DRESS | 36 | 826.2 | 192.24 |
| 5.24 | BKA5573WT14 | BK BEAR SWEATER BEANIE | 35 | 593.25 | 183.4 |
| 6.41 | BBB4528FLT4 | EWAIST DENIM PANT | 35 | 699.65 | 224.35 |
| 7.31 | GBB4163SU14 | BLEACH TWILL W/ ANGLAISE | 35 | 349.65 | 255.85 |
| 7.63 | GTT2080FL14 | LS PIECED PRINT TUNIC | 35 | 629.65 | 267.05 |
| 10.17 | BBO5038FL14 | CABLE KNIT FLEECE SWEATER | 34 | 951.66 | 345.78 |
| 5.95 | GBD4382SU24 | MIXED PRINT LAWN DRESS | 34 | 339.66 | 202.3 |
| 4.41 | GKB4726FLT4 | SPOTTED LEGGING | 33 | 461.67 | 145.53 |
| 5.25 | BKAW027WT14 | FIRE ENGINE WATCH | 32 | 510.4 | 168 |
| 12.07 | BBO5461WT14 | FLEECE PUFFY JACKET | 32 | 1,598.40 | 386.24 |
| 5.74 | GBT4400SU24 | RUFFLED PRINT TUNIC W EMB | 32 | 319.68 | 183.68 |
| 7.96 | GKB4526SU24 | ADJ WST EMB CRACKER SHORT | 32 | 319.68 | 254.72 |
| 4.94 | GKT4128SU14 | ASYM MIXED PRINT TUNIC | 32 | 319.68 | 158.08 |
| 6.36 | LBB4654FLT4 | CRACKER DUNGAREE | 31 | 557.69 | 197.16 |
| 6.42 | BBB5014FL14 | EWAIST DENIM PANT | 30 | 599.7 | 192.6 |
| 6.65 | BBS5325FL24 | SLEEPY DOG BABYGROW | 30 | 688.5 | 199.5 |
| 4.37 | BKT4506FLT4 | LS 2 IN 1 HEADPHONE HOODY | 30 | 419.7 | 131.1 |
| 7.59 | LBT5777WT14 | 2FER BUFFALO CHECK TEE | 30 | 598.5 | 227.7 |
| 2.45 | GBAX027FL24 | GB 3PK CORE SCALLOP SOCK | 29 | 230.55 | 71.05 |
| 7.42 | GTA2114FL24 | SOLID SWEATER SCARF | 29 | 665.55 | 215.18 |
| 2.82 | LGA4948FL14 | ELLIE FLORAL BOOTIE | 29 | 202.71 | 81.78 |
| 7.48 | LGA5861WT14 | LX VELOUR LACE BLANKET | 29 | 723.55 | 216.92 |
| 4.88 | LGG4434SU24 | WAIKIKI FLORAL ROMPER BG | 29 | 289.71 | 141.52 |
| 6.59 | LGO5288FL24 | FLEECE MIXED SWEATER | 29 | 810.55 | 191.11 |
| 1.9 | GBAX022FL14 | GB LACE SOLID SOCK | 28 | 166.6 | 53.2 |
| 6.16 | GBD4151SU14 | SPRKLY LWN DRESS W RUFFLE | 28 | 279.72 | 172.48 |
| 3.17 | GBT4107SU14 | ESS SS STRP-SBREEZE TUNIC | 28 | 167.72 | 88.76 |
| 8.14 | BBT5444WT14 | BUFFALO CHECK WOVEN SHIRT | 27 | 808.65 | 219.78 |

| | | | | | |
|---|---|---|---|---|---|
| 5.06 | GBT4717FLT4 | SS MELANGE TUNIC | 27 | 350.73 | 136.62 |
| 2.83 | BBT4281SU24 | 3 COLOR PRINT TANK | 26 | 259.74 | 73.58 |
| 4.66 | BBT5036FL14 | REVERSE FRENCH TERRY TEE | 26 | 311.74 | 121.16 |
| 3.87 | BBA5022FL14 | BB CABLE SWEATER BEANIE | 25 | 249.75 | 96.75 |
| 7.68 | BBB4536FLT4 | EWAIST CHECK ROLLUP PANT | 25 | 549.75 | 192 |
| 7.28 | BBB5450WT14 | RIB WAIST CRACKER PANT | 25 | 748.75 | 182 |
| 7.58 | BBS5463WT14 | BB MOOSE ARGYLE PJS | 25 | 623.75 | 189.5 |
| 3.45 | BBT4514FLT4 | LS SCIENCE RULES TEE | 25 | 224.75 | 86.25 |
| 9.5 | GBAS017SP24 | LIL BIRDIE W/STRAP JELLY | 25 | 174.75 | 237.5 |
| 3.3 | GBB4024SU24 | ESS ORINOKO PEDAL | 25 | 199.75 | 82.5 |
| 5.16 | GBB4414SU34 | APPLQ PANT W/ FRILLS | 25 | 249.75 | 129 |
| 3.95 | GBB4727FLT4 | SPOTTED LEGGING | 25 | 349.75 | 98.75 |
| 3 | GBT4388SU24 | ESS FLOWER GRAPHIC TANK | 25 | 149.75 | 75 |
| 8.13 | GKB4710FLT4 | DENIM PATCH PANT | 25 | 499.75 | 203.25 |
| 5.99 | LGG3958SU14 | HOUSE APPLQ SKRT BODYSUIT | 25 | 249.75 | 149.75 |
| 3.44 | BKA4417SU24 | BALI CANVAS HAT | 24 | 167.76 | 82.56 |
| 6.94 | BBB4532FLT4 | EWAIST CRACKER LINED PANT | 24 | 527.76 | 166.56 |
| 5.58 | GBD4398SU24 | MIXED PRT TIERED SJ DRESS | 24 | 239.76 | 133.92 |
| 4.02 | GBT4129SU14 | ASYM MIXED PRINT TUNIC | 24 | 239.76 | 96.48 |
| 2.14 | LGA4945FL14 | ELLIE FLORAL BEANIE | 24 | 119.76 | 51.36 |
| 5.25 | GKAW010SU14 | PEBBLE JELLYFISH WATCH | 23 | 229.77 | 120.75 |
| 1.86 | LBA4656FLT4 | BARNYARD STRIPE BEANIE | 22 | 109.78 | 40.92 |
| 2.43 | LBA4657FLT4 | BARNYARD STRIPE BOOTIE | 22 | 131.78 | 53.46 |
| 16.26 | BKO4543FLT4 | CANVAS FLAP JACKET | 21 | 629.79 | 341.46 |
| 10.55 | BKO5321FL24 | DENIM VEST W/ SLV JACKET | 21 | 754.95 | 221.55 |
| 5.25 | GKAW016SU24 | MACAW FLORAL WATCH | 21 | 209.79 | 110.25 |
| 8.29 | GTT2031SU24 | RUFFLED TUNIC W/ EMB | 21 | 209.79 | 174.09 |
| 5.45 | LBO5030FL14 | UNBRUSHED FLEECE JACKET | 21 | 251.79 | 114.45 |
| 6.52 | LGG4566FLT4 | MOYA SPOT BABYGROW | 21 | 377.79 | 136.92 |
| 5.25 | BKAW018SU24 | YINYANG FISH WATCH | 20 | 199.8 | 105 |
| 5.12 | GBB4477SU24 | LAWN PEBBLE CAPRI | 20 | 159.8 | 102.4 |
| 8.12 | LBB5032FL14 | DENIM GML CUFF DUNGAREE | 20 | 339.8 | 162.4 |
| 2.43 | LGA3976SU24 | MESH ROSE BOOTIES | 20 | 119.8 | 48.6 |
| 3.17 | BBT4181SU14 | ESS CHEST FLORA TEE | 19 | 113.81 | 60.23 |
| 6.1 | GKO4901SU14 | POLKA DOT SWIMSUIT | 19 | 189.81 | 115.9 |
| 6.06 | LBO4655FLT4 | FLEECE PEEK A BOO JACKET | 19 | 265.81 | 115.14 |
| 3.45 | BBT4512FLT4 | LS REVERSE SLV STRIPE TEE | 18 | 197.82 | 62.1 |
| 3.55 | BBT4992FL14 | ESS SLUB LS DIP DYE TEE | 18 | 162 | 63.9 |
| 5.4 | LGD4567FLT4 | TRIPLE RUFFLE DRESS | 18 | 305.82 | 97.2 |
| 10.11 | BKO4541FLT4 | QUILTED FLEECE JACKET | 17 | 339.83 | 171.87 |
| 4.48 | BKT3306SPT4 | 3D GLASSES RAGLAN | 17 | 101.83 | 76.16 |
| 13.5 | GKAS011SP24 | RUBY LACE SANDAL | 17 | 169.83 | 229.5 |
| 3.8 | GBT4372SU24 | MACAW FLORAL TANK | 17 | 169.83 | 64.6 |
| 3.7 | LBT4925FLT4 | 2 IN 1 ROOSTER TEE | 17 | 118.83 | 62.9 |
| 6.95 | BKT5009FL14 | THERMAL KANGA HENLEY TEE | 16 | 207.84 | 111.2 |
| 2.63 | LBA3642SU14 | PIRATE STRIPE BOOTIES | 16 | 111.84 | 42.08 |
| 4.62 | BKA5655FL24 | BK FLANNEL CHK SHERPA HAT | 15 | 224.25 | 69.3 |

| | | | | | |
|---|---|---|---|---|---|
| 7.5 | BKAS018SP24 | JOSH LTHR BRAID FLIP FLOP | 15 | 89.85 | 112.5 |
| 3.98 | BKT4282SU24 | CROSS SURF BOARD TEE | 15 | 149.85 | 59.7 |
| 3.47 | GKA4509SU24 | TROPICAL UNDIES | 15 | 149.85 | 52.05 |
| 3.7 | LBB4624FLT4 | BARNYARD STRIPE RIB PANT | 15 | 149.85 | 55.5 |
| 3.44 | BBA4418SU24 | BALI CANVAS HAT | 14 | 97.86 | 48.16 |
| 3.52 | BKA4232SU14 | CRACKER DENIM SUNHAT | 14 | 139.86 | 49.28 |
| 11.95 | BBO4544FLT4 | CANVAS FLAP JACKET | 14 | 419.86 | 167.3 |
| 4.69 | GKA4451SU24 | REUSABLE FLORAL BAG | 14 | 125.86 | 65.66 |
| 5.25 | GKAW017SU24 | TRIBAL PRINT WATCH | 14 | 139.86 | 73.5 |
| 7.96 | GBD4370SU24 | EMB LAWN TROPIC DRESS | 14 | 139.86 | 111.44 |
| 2.43 | LBA3972SU24 | SLUB PALM WAVE BOOTIES | 14 | 83.86 | 34.02 |
| 3.56 | LBT3965SU24 | PENGUIN SURF TEE | 14 | 139.86 | 49.84 |
| 3.2 | BBT4272SU24 | ESS SLUB FUN VERBIAGE TEE | 13 | 77.87 | 41.6 |
| 3.99 | GKB3124SPT4 | SOLID/SUKI FLRL PCD BELL | 13 | 103.87 | 51.87 |
| 10.55 | GKD4732FLT4 | LS HOODED DRESS | 13 | 324.87 | 137.15 |
| 3.37 | LGB4930FL14 | HOLLY SPOT RUFFLE PANT | 13 | 129.87 | 43.81 |
| 3.3 | GBB4386SU24 | MACAW FLORAL PEDAL | 12 | 119.88 | 39.6 |
| 6.59 | GBO4709FLT4 | DENIM MOTO VEST | 12 | 155.88 | 79.08 |
| 5.53 | GKB4413SU34 | APPLQ PANT W/ FRILLS | 12 | 119.88 | 66.36 |
| 10.99 | HMA0051CORE | CHEV ZOO DISPLAY MOBILE | 12 | 0 | 131.88 |
| 4.04 | LBB5031FL14 | FLEECE NOVA STAR PANT | 12 | 119.88 | 48.48 |
| 4.68 | LBB5033FL14 | DENIM PANT | 12 | 107.88 | 56.16 |
| 5.42 | LGD4981FL14 | HOLLY SPOT BOW DRESS | 12 | 203.88 | 65.04 |
| 16 | GKAS030SU24 | JANEY SANDAL | 11 | 109.89 | 176 |
| 6.09 | GBO4713FLT4 | STRETCH FLEECE HOODY | 11 | 219.89 | 66.99 |
| 3.7 | LBT4607FLT4 | 2 IN 1 COW TEE | 11 | 76.89 | 40.7 |
| 4.83 | BBA5574WT14 | BB BEAR SWEATER BEANIE | 10 | 169.5 | 48.3 |
| 3.44 | BBT4260SU24 | ESS TIE DYE STRIPE TEE | 10 | 59.9 | 34.4 |
| 3.44 | BBT4279SU24 | SURF 4 PRINT APPLIQUE TEE | 10 | 99.9 | 34.4 |
| 3.08 | BBT4516FLT4 | SS CLEVER PLANET TEE | 10 | 99.9 | 30.8 |
| 4 | BKT4513FLT4 | LS SCIENCE RULES TEE | 10 | 89.9 | 40 |
| 9.5 | GKAS016SP24 | BIRDY JELLY SANDAL | 10 | 69.9 | 95 |
| 9.57 | GKD4369SU24 | EMB LAWN TROPIC DRESS | 10 | 99.9 | 95.7 |
| 6.81 | GTB2036SU24 | TEXTURED SLD WOVEN PEDAL | 10 | 99.9 | 68.1 |
| 4.14 | LGB4490SU14 | CINCHED DIP DYE PANT | 10 | 49.9 | 41.4 |
| 3.95 | LGB4549FLT4 | KITTY KNEE PATCH PANT | 10 | 99.9 | 39.5 |
| 3.82 | LGB4550FLT4 | KITKAT STRIPE PANT | 10 | 99.9 | 38.2 |
| 3.37 | LGB4931FL14 | ELLE FLORAL PANT | 10 | 99.9 | 33.7 |
| 6.2 | BBB4530FLT4 | EWAIST STRIPE FLEECE PANT | 9 | 161.91 | 55.8 |
| 8.88 | BKB4524FLT4 | ADJ WAIST DENIM PANT | 9 | 179.91 | 79.92 |
| 2.77 | GBT4390SU24 | ESS TROPIC/ORINOKO TANK | 9 | 53.91 | 24.93 |
| 3.54 | LBB4504SU14 | SLUB PIRATE STRIPE PANT | 9 | 89.91 | 31.86 |
| 5.52 | LBG4169SU14 | PIRATE HIPPO APPLIQUE BG | 9 | 89.91 | 49.68 |
| 3.47 | LGA3974SU24 | PANEL HULA WAIKIKI SUNHAT | 9 | 80.91 | 31.23 |
| 14.5 | BBAS050SU14 | LIL RUEBEN SPORTS SANDAL | 8 | 79.92 | 116 |
| 5.25 | BKAW012SU14 | PARROT STRIPE WATCH | 8 | 79.92 | 42 |
| 8.07 | BBO4542FLT4 | QUILTED FLEECE JACKET | 8 | 159.92 | 64.56 |

| | | | | | |
|---|---|---|---|---:|---:|
| 9.37 | BBO5320FL24 | DENIM VEST W SLV JACKET | 8 | 287.6 | 74.96 |
| 6.84 | GBB4396SU24 | E-WAIST EMB DENIM SHORT | 8 | 79.92 | 54.72 |
| 3.28 | GBO3208SP14 | ESS SLUB CARDIGAN | 8 | 47.92 | 26.24 |
| 6.63 | GBO4167SU14 | TIE DYE NET SKRT SWIMSUIT | 8 | 79.92 | 53.04 |
| 8.38 | GKD4366SU24 | TEXTURED WOVEN MAXI DRESS | 8 | 79.92 | 67.04 |
| 11.6 | HMA0053CORE | ORIGAMI DISPLAY MOBILE | 8 | 0 | 92.8 |
| 2.78 | LGA4583FLT4 | KITKAT STRIPE BOOTIE | 8 | 55.92 | 22.24 |
| 5.85 | BBT4210SU14 | YARN STRIPE W/ DIPDYE TEE | 7 | 69.93 | 40.95 |
| 9.72 | BBT4499FL24 | CHECK CORD WOVEN SHIRT | 7 | 209.65 | 68.04 |
| 3.09 | GKA4450SU24 | MIXED PRINT BAG | 7 | 69.93 | 21.63 |
| 6.33 | GBB4376SU34 | RUFFLED DENIM SHORTALL | 7 | 69.93 | 44.31 |
| 7.95 | GBD308HLD3 | 2X2 / CORD TIERED DRESS | 7 | 69.93 | 55.65 |
| 4.06 | GBT3653SPT4 | SS ZIP GRAPHIC TOP | 7 | 69.93 | 28.42 |
| 11.24 | GKB922HLD3 | PIN SPT E-WAIST CORD PANT | 7 | 69.93 | 78.68 |
| 6.45 | GKD903WT13 | 2X2 RIB DRESS/BOBBIN FLRL | 7 | 69.93 | 45.15 |
| 9.46 | GKO3271SPT4 | FR TERRY VEST/ PLT DETAIL | 7 | 69.93 | 66.22 |
| 4.43 | GKT3815SP24 | SPOTTY NETTING TRM TOP | 7 | 69.93 | 31.01 |
| 5.94 | GKT4409SU34 | SLUB EMB CONTRAST TANK | 7 | 69.93 | 41.58 |
| 7.21 | GTB2042SU34 | TIE DYE TIERED SKIRT | 7 | 69.93 | 50.47 |
| 0.95 | BKAX44COR2 | BK STRIPED CORE SOCK | 6 | 17.7 | 6.02 |
| 3.2 | BBT4266SU24 | ESS ISLAND PARADISE TEE | 6 | 35.94 | 19.2 |
| 9.79 | BKB4531FLT4 | EWAIST CRACKER LINED PANT | 6 | 131.94 | 58.74 |
| 4.5 | GBAX014FLT4 | SNOW DROP FOOTLESS TIGHT | 6 | 59.94 | 27 |
| 16 | GKAS025SU14 | PEPPER SANDAL | 6 | 59.94 | 96 |
| 4.51 | GBB4123SU14 | ESS DENIM SHORT W/ MESH | 6 | 47.94 | 27.06 |
| 3.28 | GBT3626SP14 | ESS CAMPING SCENE TEE | 6 | 35.94 | 19.68 |
| 5.07 | GKB4132SU14 | ASSYM PRINT | 6 | 59.94 | 30.42 |
| 3.81 | GKO3207SP14 | ESS SLUB CARDIGAN | 6 | 35.94 | 22.86 |
| 3.96 | GKT3586SPT4 | SS PIECED SUKI FLRL TUNIC | 6 | 59.94 | 23.76 |
| 3.6 | GKT4472SU24 | ESS BATIK PRT GRAPHIC TOP | 6 | 35.94 | 21.6 |
| 3.01 | LGB3980SU24 | HULA PRINT PANT | 6 | 41.94 | 18.06 |
| 2.43 | BBA5020FL14 | BB STRIPED BEANIE | 5 | 34.95 | 12.15 |
| 0.95 | BBAX06COR1 | BB BASIC SOCK | 5 | 14.75 | 4.75 |
| 5.16 | BBB4293SU24 | E WAIST BALI CAVAS SHORT | 5 | 49.95 | 25.8 |
| 8.62 | BKB3441SP14 | ADJ WST HBONE CRACKR PANT | 5 | 39.95 | 43.1 |
| 7.05 | BKB4219SU14 | E-WAIST CRACKER SHORT | 5 | 49.95 | 35.25 |
| 4.1 | BKT4995FL14 | ESS TREE HOUSE TEE | 5 | 45 | 20.5 |
| 1.94 | GKA3829SP24 | GK SPOT-SWIRL HEADBAND | 5 | 24.95 | 9.7 |
| 15.48 | GKAS66WT13 | MIRIAM MARYJANE | 5 | 49.95 | 77.4 |
| 4.06 | GKB906HLD3 | 2X2 RIB BELL/ PRINT RUFFL | 5 | 49.95 | 20.3 |
| 4.25 | GKT4371SU24 | MACAW FLORAL TANK | 5 | 49.95 | 21.25 |
| 2.4 | LGA4493SU14 | ABBY ZIGGY BOOTIES | 5 | 34.95 | 12 |
| 4.18 | BBA5656FL24 | BB FLANNEL CHK SHERPA HAT | 4 | 59.8 | 16.72 |
| 3.76 | BBB3583SP14 | ESS FLC SHORT | 4 | 31.96 | 15.04 |
| 3.2 | BBT4262SU24 | ESS SLUB DRAGON PRINT TEE | 4 | 23.96 | 12.8 |
| 18.28 | GBAS71WT13 | LIL RUTH BOOT WITH LACE | 4 | 39.96 | 73.12 |
| 17.82 | GKAS996SPT4 | MAILA WRESTLER | 4 | 39.96 | 71.28 |

| | | | | | |
|---|---|---|---|---|---|
| 5.25 | GKAW011SU14 | SEA BREEZE FLORAL WATCH | 4 | 39.96 | 21 |
| 4.12 | GBB3284SPT4 | SUKI FLRL PANT/LAWN PLEAT | 4 | 39.96 | 16.48 |
| 5.5 | GBB3924SP14 | JIEJIE LACE/NET SKT W/LEG | 4 | 27.96 | 22 |
| 12.01 | GBO4742FLT4 | CANDACE SPOT JACKET | 4 | 119.96 | 48.04 |
| 3.83 | GBT3146SPT4 | LS PIECED SUKI FLRL TUNIC | 4 | 23.96 | 15.32 |
| 4.42 | GBT3301SPT4 | LS ZIP GRAPHIC TOP | 4 | 39.96 | 17.68 |
| 3.28 | GBT3628SPT4 | ESS STP MOONRISE FL TUNIC | 4 | 23.96 | 13.12 |
| 3.52 | GBT3730SP14 | ESS SLUB GYPSY FLR TUNIC | 4 | 23.96 | 14.08 |
| 4.88 | GBT4141SU14 | SEQUIN HEART TUNIC W/MESH | 4 | 39.96 | 19.52 |
| 4.36 | GKB3269SPT4 | PLEAT DETAIL PANT | 4 | 39.96 | 17.44 |
| 6.64 | GKB918HLD3 | SWTR TRIM LEGWARM LEGGING | 4 | 23.96 | 26.56 |
| 0.95 | BBAX45COR2 | BB STRIPED CORE SOCK | 3 | 8.85 | 2.85 |
| 2.54 | BKA5019FL14 | BK STRIPED BEANIE | 3 | 20.97 | 7.62 |
| 11.61 | BKAS60FL23 | HENRY SLIP ON WITH SHERPA | 3 | 23.97 | 34.83 |
| 5.73 | BBB4221SU14 | EWAIST CRACKER SHORT | 3 | 29.97 | 17.19 |
| 3.56 | BBT3395SPT4 | SS GML TWL SUPER 8 APP T | 3 | 29.97 | 10.68 |
| 3.2 | BBT4264SU14 | ESS SUMMER ISLAND TEE | 3 | 17.97 | 9.6 |
| 3.44 | BBT4283SU24 | CROSS SURF BOARD TEE | 3 | 29.97 | 10.32 |
| 3.74 | BKT4265SU24 | ESS ISLAND PARADISE TEE | 3 | 17.97 | 11.22 |
| 13.5 | GBAS012SP24 | LIL RUBY LACE SANDAL | 3 | 29.97 | 40.5 |
| 1.68 | GKAX013FLT4 | GK EYELET RUFFLE SOCK | 3 | 11.97 | 5.04 |
| 4.15 | GKAX87WT13 | GK FLRL SOLID TEXTR TIGHT | 3 | 23.97 | 12.45 |
| 4.31 | GBB3776SP14 | CONTRST 3D FLR PANT W/PRT | 3 | 20.97 | 12.93 |
| 3.18 | GBB992WT13 | ESS DOILY LACE LEGGING | 3 | 29.97 | 9.54 |
| 5.19 | GBD3820SP24 | STRIPE/SPOT HOODED DRESS | 3 | 29.97 | 15.57 |
| 4.55 | GBT3288SPT4 | LS GRPHIC TUNIC/ANG FRILL | 3 | 23.97 | 13.65 |
| 2.97 | GBT3769SP24 | ESS BIRDY TUNIC TOP | 3 | 17.97 | 8.91 |
| 3.28 | GBT3806SP24 | EMB MESH HI-LO TUNIC | 3 | 29.97 | 9.84 |
| 7.09 | GKB3280SPT4 | FR TERRY EMB TIERED SKIRT | 3 | 29.97 | 21.27 |
| 6.87 | GKB871WT13 | VELOUR SKIRT | 3 | 17.97 | 20.61 |
| 4.92 | GKB921HLD3 | EMB STRETCH FLEECE PANT | 3 | 29.97 | 14.76 |
| 5.54 | GKB966WT23 | ANML PRT JIEJIE NET SKIRT | 3 | 29.97 | 16.62 |
| 9.17 | GKO3604SP14 | LACE TRIM DENIM JACKET | 3 | 29.97 | 27.51 |
| 4.73 | GKT3652SPT4 | S/S ZIP GRAPHIC TOP | 3 | 29.97 | 14.19 |
| 5.35 | GKT919HLD3 | PINNY SPOT FLC APPLQ TUNI | 3 | 29.97 | 16.05 |
| 9.13 | GTA032WT13 | SPARKLY SCARF | 3 | 29.97 | 27.39 |
| 4.37 | GTB1023SP24 | SWIRL CAPRI | 3 | 29.97 | 13.11 |
| 3.58 | LGB3168SP14 | ANGL SKIRTED PANT | 3 | 20.97 | 10.74 |
| 5.21 | LGG3169SP14 | LAWN SPLTR SPOT SOLID BG | 3 | 29.97 | 15.63 |
| 4.95 | LGG3659SU14 | ZIGGY PRINT TANK BABYGROW | 3 | 29.97 | 14.85 |
| 5.38 | LGO4942FL14 | UNBRUSHED FLC OUTERWEAR | 3 | 35.97 | 16.14 |
| 4.81 | LGT4547FLT4 | CATS MEOW ART TUNIC | 3 | 29.97 | 14.43 |
| 3.47 | BBA3882SPT4 | BB TWILL FISHERMAN HAT | 2 | 17.98 | 6.94 |
| 3.44 | BBA4343SU14 | CRACKER LEAF CAMO SUNHAT | 2 | 19.98 | 6.88 |
| 13.1 | BBAS42FL13 | LIL ACE SNEAKER W/ ZIPPER | 2 | 19.98 | 26.2 |
| 20.43 | BBAS72WT13 | LIL CARL HIKER | 2 | 19.98 | 40.86 |
| 4.95 | BKA061WT13 | SHERPA TRIM SWTR STOCKING | 2 | 19.98 | 9.9 |

| | | | | | |
|---|---|---|---|---|---|
| 3.81 | BKA159FL23 | BK CHECK SHERPA HAT | 2 | 19.98 | 7.62 |
| 5.46 | BBB3596SP14 | ESS DENIM PANT | 2 | 15.98 | 10.92 |
| 5.73 | BBB4224SU14 | EWAIST BIRDS TWILL SHORT | 2 | 19.98 | 11.46 |
| 4.41 | BBB895WT13 | ESS WALE CORD PANT | 2 | 11.98 | 8.82 |
| 6.43 | BBB973WT13 | E-WST DENIM PANT | 2 | 19.98 | 12.86 |
| 4.39 | BBT3432SP14 | 2FER WEB STP THML SLV TEE | 2 | 15.98 | 8.78 |
| 10.96 | BKB200HLD3 | KNIT WST WEAVE TWILL PANT | 2 | 19.98 | 21.92 |
| 7.11 | BKB3445SP14 | SIDE PCKTS FLC PANT | 2 | 15.98 | 14.22 |
| 6.07 | BKB3513SU14 | SOUTH COAST BOARDSHORT | 2 | 19.98 | 12.14 |
| 7.54 | BKB4288SU24 | ADJ WAIST CRACKER SHORT | 2 | 19.98 | 15.08 |
| 11.1 | BKO3450SP14 | CHEST PCKT FLC ZIP HOODY | 2 | 19.98 | 22.2 |
| 12.23 | BKO4294SU24 | BEACH STRIPE HOODY | 2 | 19.98 | 24.46 |
| 4.36 | BKT207HLD3 | THRML SLV MUSTACHE RAGLAN | 2 | 11.98 | 8.72 |
| 3.81 | BKT3077SP14 | ESS SCOOTER MACHINE TEE | 2 | 11.98 | 7.62 |
| 4.18 | BKT3672SP24 | ESS ALLOVER GEO TEE | 2 | 11.98 | 8.36 |
| 3.74 | BKT4263SU24 | ESS SUMMER ISLAND TEE | 2 | 11.98 | 7.48 |
| 7.53 | BKT4275SU24 | WAVE STRIPE DOT POLO | 2 | 19.98 | 15.06 |
| 3.76 | GBA3926SP14 | PIECED SUNHAT | 2 | 19.98 | 7.52 |
| 1.61 | GBA4175SU14 | SLD HEADBAND W/MESH SPRKL | 2 | 9.98 | 3.22 |
| 1.7 | GBA4694SU34 | CONTRAST FRILLED HBAND | 2 | 9.98 | 3.4 |
| 17.82 | GBAS995SPT4 | LIL MAILA WRESTLER | 2 | 19.98 | 35.64 |
| 1.68 | GBAX015FLT4 | GB EYELET RUFFLE SOCK | 2 | 7.98 | 3.36 |
| 1.77 | GKA3278SPT4 | BIG BOW HEADBAND | 2 | 7.98 | 3.54 |
| 1.72 | GKA4446SU24 | MACAW FLORAL HEADBAND | 2 | 9.98 | 3.44 |
| 1.78 | GKA4690SU34 | CONTRAST FRILLED HBAND | 2 | 9.98 | 3.56 |
| 1.59 | GKA5277FL14 | PRINT HEADBAND | 2 | 9.98 | 3.18 |
| 21.16 | GKAS051FL24 | LUISA RIDING BOOT | 2 | 91.9 | 42.32 |
| 5.33 | GKAW003SP14 | CAMPING SCENE WATCH | 2 | 19.98 | 10.66 |
| 4.15 | GKAX005SPT4 | GK FLRL STP FTLESS TIGHT | 2 | 19.98 | 8.3 |
| 4.42 | GKAX008SP14 | GK FOOTLESS TIGHT | 2 | 9.98 | 8.84 |
| 4.15 | GKAX88WT13 | GK FLORAL ROSE DOT TIGHT | 2 | 15.98 | 8.3 |
| 2.06 | GTA1027SP24 | GT SPOT-SWIRL HEABAND | 2 | 5.98 | 4.12 |
| 7.48 | GBB3599SP14 | ADJ WST DENIM CPRI W/RUFF | 2 | 19.98 | 14.96 |
| 6.02 | GBB3812SP24 | LWN SKRT W/PRT FRL & LEGS | 2 | 19.98 | 12.04 |
| 6.31 | GBD4367SU24 | TEXTURED WOVEN LAWN DRESS | 2 | 19.98 | 12.62 |
| 4.42 | GBT290HLD3 | PINNY SPOT FLC APPLQ TUNI | 2 | 19.98 | 8.84 |
| 5.44 | GBT3707SP14 | 3/4 SLV EMB TUNIC W/FLR | 2 | 19.98 | 10.88 |
| 5.84 | GBT3826SP24 | 3/4 SLV STP TUN W/PR TIER | 2 | 15.98 | 11.68 |
| 3.28 | GBT3922SP14 | JIEJIE CORSG LACE TRM TOP | 2 | 19.98 | 6.56 |
| 3.81 | GKB3122SPT4 | ORIGAMI LEGGING | 2 | 15.98 | 7.62 |
| 7.01 | GKB4375SU34 | RUFFLED DENIM SHORTALL | 2 | 19.98 | 14.02 |
| 6.28 | GKB4377SU34 | TIE DYE TIERED SKIRT | 2 | 15.98 | 12.56 |
| 5.98 | GKB819FL23 | ESS STRETCH CORD LEGGING | 2 | 11.98 | 11.96 |
| 4.21 | GKB868WT13 | BOBBIN FLORAL CUFFED LEG | 2 | 19.98 | 8.42 |
| 7.69 | GKB879WT23 | FRENCH TERRY PANT/ LACE | 2 | 19.98 | 15.38 |
| 8.94 | GKB896WT13 | STRETCH CORD PANT W/ LACE | 2 | 11.98 | 17.88 |
| 4.18 | GKB910HLD3 | BIRD APPLQ/ PINNY LEGGING | 2 | 19.98 | 8.36 |

| | | | | |
|---|---|---|---|---|
| 7.82 | GKB945WT13 | RUFFLED DENIM PANT | 2 | 19.98 | 15.64 |
| 9.32 | GKD3290SPT4 | LS ORIGAMI HOODED DRS/PLT | 2 | 19.98 | 18.64 |
| 7.17 | GKD788FL23 | FUR DRESS | 2 | 19.98 | 14.34 |
| 6.81 | GKD796FL23 | STRIPED SLV W/ ASSYM DRSS | 2 | 19.98 | 13.62 |
| 4.39 | GKT3140SPT4 | LS PIECED SUKI FLRL TUNIC | 2 | 11.98 | 8.78 |
| 4.06 | GKT3729SP14 | ESS SLB GYPSY FLR TUNIC | 2 | 11.98 | 8.12 |
| 7.21 | GKT4358SU24 | TEXTURED LINEN LOOK TUNIC | 2 | 19.98 | 14.42 |
| 4.3 | GKT911HLD3 | ESS TWEETY LEAVES TUNIC | 2 | 19.98 | 8.6 |
| 8.44 | GTD1017SP14 | SS STP EMB DRESS W/FL RUF | 2 | 19.98 | 16.88 |
| 5.33 | GTD2008SU14 | STRIPED RUFFLE MAXI DRESS | 2 | 15.98 | 10.66 |
| 4.69 | LBB4629FLT4 | DENIM GML WAISTBAND PANT | 2 | 23.98 | 9.38 |
| 5.52 | LBG4103SU14 | ART&APPLIQUE KNEE BG | 2 | 19.98 | 11.04 |
| 3.08 | LGA4018SP24 | LAWN FANCY BOOTIES | 2 | 13.98 | 6.16 |
| 2.44 | LGA4577FLT4 | KITKAT STRIPE BEANIE | 2 | 11.98 | 4.88 |
| 5.32 | LGB448WT13 | VLR PANT W/ LACE SKIRT | 2 | 19.98 | 10.64 |
| 3.42 | BBA3705SP24 | BB CRACKER HAT | 1 | 9.99 | 3.42 |
| 3.42 | BKA3704SP24 | BK CRACKER HAT | 1 | 9.99 | 3.42 |
| 5.25 | BKAW013SU14 | PIRANHA WATCH | 1 | 9.99 | 5.25 |
| 5.71 | BBB3444SP14 | E WAIST CRKR SHORT | 1 | 5.99 | 5.71 |
| 5.42 | BBB3512SU14 | SOUTH COAST BOARDSHORT | 1 | 9.99 | 5.42 |
| 6.56 | BBB3601SP14 | KNIT WST RIB STOP PANT | 1 | 9.99 | 6.56 |
| 4.27 | BBB4197SU14 | ESS ARROW TWILL SHORT | 1 | 7.99 | 4.27 |
| 5.59 | BBB4289SU24 | E WAIST CRACKER PCD SHORT | 1 | 9.99 | 5.59 |
| 6.51 | BBB840FL23 | CORD WALE PANT | 1 | 9.99 | 6.51 |
| 4.65 | BBB896WT13 | ESS FLC SIDE CRACKER PANT | 1 | 5.99 | 4.65 |
| 7.62 | BBB978HLD3 | KNIT WST WEAVE TWILL PANT | 1 | 9.99 | 7.62 |
| 8.21 | BBO4230SU14 | STRIPE SNOW WASH HOODY | 1 | 9.99 | 8.21 |
| 9.75 | BBO4295SU24 | FRENCH TERRY STRIPE HOODY | 1 | 9.99 | 9.75 |
| 9.87 | BBO969HLD3 | FRENCH TERRY CORD HOODY | 1 | 9.99 | 9.87 |
| 3.16 | BBT3049SP14 | ESS INVENT STRIPE TEE | 1 | 5.99 | 3.16 |
| 3.2 | BBT3309SPT4 | SS CHEST STRIPE REEL | 1 | 6.99 | 3.2 |
| 3.64 | BBT3434SP14 | SLUB LEAVE CAR APPLQ TEE | 1 | 5.99 | 3.64 |
| 4.98 | BBT3439SP14 | PCD HBONE PCKT WASH TEE | 1 | 5.99 | 4.98 |
| 3.28 | BBT3478SP14 | ESS VERT GEO STRIPE TEE | 1 | 5.99 | 3.28 |
| 3.52 | BBT3480SP14 | ESS LS PCD SLB THML PIQ T | 1 | 5.99 | 3.52 |
| 3.52 | BBT3679SP24 | ESS SLUB PENGUIN FLP TEE | 1 | 5.99 | 3.52 |
| 6.56 | BBT3691SP24 | CHKD GEO JMP TRM WVN SHRT | 1 | 9.99 | 6.56 |
| 6.83 | BBT4206SU14 | LEAF CAMO WOVEN SHIRT | 1 | 5.99 | 6.83 |
| 5.12 | BBT4208SU14 | S AMERICAN WORLD TEE | 1 | 5.99 | 5.12 |
| 3.2 | BBT4268SU24 | ESS TAHITI PRINT TEE | 1 | 5.99 | 3.2 |
| 3.44 | BBT961HLD3 | ESS MIX FISH TEE | 1 | 7.99 | 3.44 |
| 8.41 | BKB091FL23 | CORD WALE PANT | 1 | 9.99 | 8.41 |
| 5.83 | BKB138WT13 | ESS WALE CORD PANT | 1 | 5.99 | 5.83 |
| 6.21 | BKB175FL23 | CARGO FLEECE | 1 | 9.99 | 6.21 |
| 3.98 | BKT204HLD3 | ESS SLUB ARGYLE CHEST TEE | 1 | 5.99 | 3.98 |
| 4.48 | BKT209HLD3 | 2FER WWW PANDA THERM TEE | 1 | 9.99 | 4.48 |
| 3.69 | BKT3065SP14 | ESS INVENT STRIPE TEE | 1 | 5.99 | 3.69 |

| | | | | |
|---|---|---|---|---|
| 8.81 | BKT3312SPT4 | CHK ELBOW GML PATCH SHIRT | 1 | 9.99 | 8.81 |
| 4.18 | BKT3476SP14 | ESS RECYCLED DENIM TEE | 1 | 5.99 | 4.18 |
| 4.06 | BKT3674SP24 | ESS PHOTO PRNT TEE | 1 | 5.99 | 4.06 |
| 3.81 | BKT3681SP24 | ESS CMPS BAY TEE | 1 | 5.99 | 3.81 |
| 7.45 | BKT3686SP24 | SLB DIP DYE WHLE POLO | 1 | 7.99 | 7.45 |
| 4.31 | BKT3696SP24 | PRKR STRPSPRYSCN PTCHTEE | 1 | 7.99 | 4.31 |
| 6.42 | BKT4209SU14 | YARN STRIPE W/ DIP DYE | 1 | 9.99 | 6.42 |
| 3.74 | BKT4271SU24 | ESS SLUB FUN VERBIAGE TEE | 1 | 5.99 | 3.74 |
| 7.41 | BKT4284SU24 | SQUARE SOLID POCKET SHIRT | 1 | 9.99 | 7.41 |
| 4.06 | GBA301HLD3 | GB FAIRISLE BEANIE | 1 | 9.99 | 4.06 |
| 1.69 | GBA3279SPT4 | BIG BOW HEADBAND | 1 | 3.99 | 1.69 |
| 1.68 | GBA3814SP24 | GB LAWN HEADBAND | 1 | 4.99 | 1.68 |
| 1.85 | GBA3830SP24 | GB SPOT-SWIRL HEABAND | 1 | 4.99 | 1.85 |
| 1.97 | GBA3936SP14 | LCE OVRLY HBAND W/3D ROSE | 1 | 5.99 | 1.97 |
| 3.53 | GBA3943SP24 | GB SPOT SUNHAT | 1 | 9.99 | 3.53 |
| 1.66 | GBA3947SP24 | GB JIE JIE CONFETTI HBAND | 1 | 1.99 | 1.66 |
| 1.64 | GBA4447SU24 | MACAW FLORAL WIDE HBAND | 1 | 4.99 | 1.64 |
| 19.35 | GBAS69WT13 | LIL ELSIE BOOT WITH FUR | 1 | 9.99 | 19.35 |
| 4.15 | GBAX94WT13 | GB FLORAL ROSE DOT TIGHT | 1 | 7.99 | 4.15 |
| 4.11 | GKA3151SPT4 | FLEECE EMB BAG | 1 | 9.99 | 4.11 |
| 3.1 | GKA3944SP24 | BIRDY BAG | 1 | 9.99 | 3.1 |
| 1.76 | GKA3946SP24 | GK JIE JIE CONFETTI HBAND | 1 | 1.99 | 1.76 |
| 8.25 | GKA846WT13 | SPARKLY SCARF | 1 | 9.99 | 8.25 |
| 2.01 | GKA875WT13 | GK VELOUR HEADBAND | 1 | 4.99 | 2.01 |
| 4.4 | GKA931HLD3 | GK FAIRISLE BEANIE | 1 | 9.99 | 4.4 |
| 15.44 | GKAS004SP14 | AZALEA T STRAP | 1 | 9.99 | 15.44 |
| 16 | GKAS023SU14 | TRISSA SANDAL | 1 | 9.99 | 16 |
| 3.35 | GKAS53FL13 | MARLEY HEADBAND | 1 | 2.99 | 3.35 |
| 18.36 | GKAS55FL23 | EMMA SLOUCH BOOT | 1 | 9.99 | 18.36 |
| 18.28 | GKAS70WT13 | RUTH BOOT WITH LACE | 1 | 9.99 | 18.28 |
| 5.33 | GKAW002SP14 | DAISY SWIRL WATCH | 1 | 9.99 | 5.33 |
| 5.33 | GKAW007SP24 | SCATTER FLORAL WATCH | 1 | 9.99 | 5.33 |
| 5 | GKAW08SU23 | PINEAPPLE GIRL WATCH | 1 | 9.99 | 5 |
| 5 | GKAW27HLD3 | JOLLY JUMPER WATCH | 1 | 9.99 | 5 |
| 5 | GKAW28HLD3 | EMBROIDERY LEAVES WATCH | 1 | 9.99 | 5 |
| 1.65 | GKAX009SP24 | GK TEXTURE SLCH CRW W/BOW | 1 | 2.99 | 1.65 |
| 4.3 | GBB202FL23 | ESS STRETCH CORD LEGGING | 1 | 5.99 | 4.3 |
| 7.04 | GBB265WT13 | STRETCH CORD PANT W/ LACE | 1 | 5.99 | 7.04 |
| 4.06 | GBB292HLD3 | EMB STRETCH FLEECE PANT | 1 | 9.99 | 4.06 |
| 3.41 | GBB915FL13 | ESS 2/2 PANT/JEWEL BUTTON | 1 | 5.99 | 3.41 |
| 3.69 | GBB969FL23 | RAINDROP MINI W/ LEGGING | 1 | 7.99 | 3.69 |
| 3.18 | GBB993WT13 | ESS TEA STRIPE LEGGING | 1 | 9.99 | 3.18 |
| 9.87 | GBO309HLD3 | SPOTTED FLC SWEATER VEST | 1 | 9.99 | 9.87 |
| 7.82 | GBO3605SP14 | LACE TRIM DENIM JACKET | 1 | 9.99 | 7.82 |
| 6.16 | GBO4355SU24 | TEXTURED U/B FLEECE HOODY | 1 | 9.99 | 6.16 |
| 2.82 | GBO4593SU24 | ESS SJ CARDI | 1 | 5.99 | 2.82 |
| 3.12 | GBT271WT13 | ESS BOBBN FLRL/ASYM TUNIC | 1 | 7.99 | 3.12 |

| | | | | | |
|---|---|---|---|---|---|
| 3.32 | GBT279HLD3 | ESS PINNY DOT SHORT TUNIC | 1 | 5.99 | 3.32 |
| 5.07 | GBT311WT13 | STP/FLRL CORD SKIRT TUNIC | 1 | 9.99 | 5.07 |
| 3.47 | GBT3590SPT4 | SS PIECED SUKI FLRL TUNIC | 1 | 9.99 | 3.47 |
| 4.27 | GBT3619SP14 | MIX PRT LACE TRM TANK TUN | 1 | 9.99 | 4.27 |
| 8.85 | GKB3274SPT4 | FRENCH TERRY ZIP FLY PANT | 1 | 9.99 | 8.85 |
| 3.55 | GKB671SU13 | ESS STRIPE CAPRI/BFLY FRL | 1 | 5.99 | 3.55 |
| 8.47 | GKB804FL23 | STRETCH CORD CARGO PANT | 1 | 9.99 | 8.47 |
| 3.55 | GKB810WT13 | ESS TEA STRIPE LEGGING | 1 | 9.99 | 3.55 |
| 3.69 | GKB936HLD3 | ESS JOLLY JUMPER LEGGING | 1 | 5.99 | 3.69 |
| 8.11 | GKD535SU13 | CROCHET LACE/ZIGZAG DRESS | 1 | 9.99 | 8.11 |
| 6.93 | GKD792FL23 | RUFFLED HEART DRESS | 1 | 9.99 | 6.93 |
| 5.82 | GKD813FL23 | FUNTASIA CORD DRESS | 1 | 9.99 | 5.82 |
| 7.74 | GKO4708FLT4 | DENIM MOTO VEST | 1 | 12.99 | 7.74 |
| 10.21 | GKO803FL23 | FLC CORD ZIP UP HOODY | 1 | 9.99 | 10.21 |
| 3.53 | GKT851WT13 | ESS PEPLUM TOP | 1 | 5.99 | 3.53 |
| 4.59 | GKT897WT13 | STUDDED APPLIQUE TOP | 1 | 9.99 | 4.59 |
| 5.04 | GKT938HLD3 | PIECED PRINT TUNIC | 1 | 9.99 | 5.04 |
| 5.78 | GKT942WT13 | STP/FLRL CORD SKIRT TUNIC | 1 | 9.99 | 5.78 |
| 6.96 | GTA2115FL24 | SPOT/STRIPE SCARF | 1 | 22.95 | 6.96 |
| 7.14 | GTT1020SP24 | 3D ROSE TANK TUNIC | 1 | 9.99 | 7.14 |
| 7.66 | GTT2003SU14 | SEQUIN HEART TUNIC W/MESH | 1 | 9.99 | 7.66 |
| 2.31 | LBA3389SPT4 | EXPRESS STRIPE BOOTIES | 1 | 2.99 | 2.31 |
| 1.72 | LBA3420SP24 | AZTX BEANIE | 1 | 4.99 | 1.72 |
| 1.85 | LBA471HLD3 | HOP CHECK BEANIE | 1 | 4.99 | 1.85 |
| 2.19 | LBA473HLD3 | HOP CHECK BOOTIES | 1 | 4.99 | 2.19 |
| 7.18 | LBB3186SP14 | TWILL RHYTHM STP DUNGAREE | 1 | 5.99 | 7.18 |
| 4.73 | LBB3416SP24 | DENIM CUFF PANT | 1 | 9.99 | 4.73 |
| 6.68 | LBO3424SP24 | S/LS PCKT AZTX HOODY | 1 | 9.99 | 6.68 |
| 5.27 | LBO3646SP14 | SLVLESS CRCKR FLC HOODY | 1 | 9.99 | 5.27 |
| 5.52 | LBO4168SU14 | PIRATE STRIPE HOODY | 1 | 9.99 | 5.52 |
| 3.64 | LBT3414SP24 | APLQE ELPHNT AZTX TEE | 1 | 7.99 | 3.64 |
| 3.19 | LGA3917SP24 | LAWN FANCY SUNHAT | 1 | 8.99 | 3.19 |
| 1.74 | LGA3977SU24 | MESH ROSE HEADBAND | 1 | 4.99 | 1.74 |
| 1.75 | LGA4582FLT4 | FLORAL CAT HEADBAND | 1 | 4.99 | 1.75 |
| 6.85 | LGG3302SPT4 | SPLNDID STRP VERY FRLY BG | 1 | 9.99 | 6.85 |
| 5.69 | LGG491HLD3 | VELOUR MIX MESH FRILLS BG | 1 | 9.99 | 5.69 |
| 4.81 | LGO4568FLT4 | RUFFLE CARDIGAN | 1 | 9.99 | 4.81 |
| | | | 273,559 | 4,452,427.44 | 1,624,056.99 |

Inventory as of 9/23/14 in Canada Dist Center aka Internet Store

| C$ | Desc1 | Desc2 | O/H 1 Qty | O/H 1 Ext P$ | O/H 1 Ext C$ |
|---|---|---|---|---|---|
| 3.83 | GKB5273FL24 | ESS SPOTTY LEGGING | 721 | 6,489.00 | 2,761.43 |
| 5.34 | GKB5540COR4 | ESS STRETCH SKINNY DENIM | 581 | 5,229.00 | 3,102.54 |
| 4.2 | GKB5679WT14 | ESS 2X2 RIB LEGGING W NET | 547 | 4,923.00 | 2,297.40 |
| 3.68 | GKB4936FL14 | ESS TAPESTRY LEGGING | 524 | 4,716.00 | 1,928.32 |
| 7.5 | GKD5181FL14 | PIECED HOODED DRESS | 496 | 11,403.04 | 3,720.00 |
| 3.88 | GKT5675WT14 | ESS STRIPED TUNIC | 488 | 4,392.00 | 1,893.44 |
| 4.1 | GKT4933FL14 | ESS MIXED PRINT TUNIC | 462 | 4,158.00 | 1,894.20 |
| 7.62 | GKD5212FL24 | ROYAL ROSE HOODED DRESS | 437 | 13,088.15 | 3,329.94 |
| 4.07 | GKB5261FL24 | 5X2 LEG WARMER LEGGING | 436 | 7,826.20 | 1,774.52 |
| 7.78 | GKD5734WT14 | 2X2 RIB DRESS | 429 | 12,848.55 | 3,337.62 |
| 4.07 | GKB5863WT14 | ESS SPOT LEGGING W BOWS | 417 | 3,753.00 | 1,697.19 |
| 6.38 | GKB5468FL24 | ESS STRETCH CORD PANT | 384 | 3,456.00 | 2,449.92 |
| 6.43 | GKT5708WT14 | 2X2 HOODED TUNIC | 378 | 7,541.10 | 2,430.54 |
| 3.83 | GKB5682WT14 | ESS STRIPED LEGGING | 374 | 3,366.00 | 1,432.42 |
| 5.38 | GKB5687COR4 | ESS DENIM PANT | 350 | 3,150.00 | 1,883.00 |
| 5.09 | BKB5003FL14 | ESS PIECED TWILL PANT | 343 | 3,087.00 | 1,745.87 |
| 3.83 | GKB5250FL24 | ESS ROYAL ROSE LEGGING | 340 | 3,060.00 | 1,302.20 |
| 4.94 | GKT5470FL24 | ROYAL ROSE TUNIC | 329 | 5,905.55 | 1,625.26 |
| 3.75 | GKT5677WT14 | ESS SPOT-FLORAL TUNIC | 327 | 2,943.00 | 1,226.25 |
| 7.32 | GKD5701WT14 | SPOTTY BALLERINA DRESS | 326 | 9,763.70 | 2,386.32 |
| 4.13 | GKT5760WT24 | GLITTER STAR TEE | 324 | 5,815.80 | 1,338.12 |
| 6.94 | BKB5437WT14 | ESS WALE CORD KNEE PANT | 304 | 2,736.00 | 2,109.76 |
| 3.68 | GKB4647FL14 | ESS STRIPED LYCRA LEGGING | 292 | 2,628.00 | 1,074.56 |
| 4.13 | GKT5673WT14 | ESS 2X2 YOKE TUNIC | 281 | 2,529.00 | 1,160.53 |
| 3.95 | GKB5710WT14 | 2X2 RIB PANT W PRINT TRIM | 267 | 5,059.65 | 1,054.65 |
| 5.56 | GKT5392FL24 | ESS SPOT TOP | 262 | 2,358.00 | 1,456.72 |
| 3.95 | GKB5725WT14 | BALLERINA DANCE LEGGING | 228 | 4,320.60 | 900.6 |
| 9.65 | GKD5264FL24 | 5X2 DRESS W ROYAL ROSE SK | 228 | 7,512.60 | 2,200.20 |
| 4.18 | GKT4730FLT4 | 3/4 SLV SNOWDROPS TUNIC | 216 | 2,805.84 | 902.88 |
| 6.11 | GKT5216FL24 | SLUB TUNIC W/ FRL FRILLS | 215 | 4,289.25 | 1,313.65 |
| 5.11 | BKB5435WT14 | ESS FLEECE KNEE PCD PANT | 207 | 1,863.00 | 1,057.77 |
| 7.79 | GKB5690WT24 | GLITTER STAR MESH SKIRT | 194 | 4,840.30 | 1,511.26 |
| 4.08 | GKT5248FL24 | ESS ROCOCCO FLORAL TUNIC | 193 | 1,737.00 | 787.44 |
| 6.87 | GKD4381SU24 | MIXED PRT LAWN MAXI DRESS | 192 | 1,918.08 | 1,319.04 |
| 5.72 | GKB5259FL24 | CURVED PIECING SKIRT | 188 | 4,314.60 | 1,075.36 |
| 3.92 | GKB5087FL14 | ESS SCRUNCHED LEGGING | 187 | 1,683.00 | 733.04 |
| 8.99 | GKD5166FL14 | SOLID LACE TRIM DRESS | 186 | 4,276.14 | 1,672.14 |
| 8.7 | GKD5704WT14 | LX FLOCKED POPLIN DRESS | 186 | 6,500.70 | 1,618.20 |
| 4.93 | GKB4720FLT4 | ANGL TRIM MELANGE LEGGING | 184 | 2,390.16 | 907.12 |
| 3.38 | GKO5578FL24 | ESS SPOT CARDIGAN | 181 | 1,629.00 | 611.78 |
| 5.71 | GKB4714FLT4 | STRETCH FLEECE PANT | 169 | 2,702.31 | 964.99 |
| 6.06 | GKT4716FLT4 | SS MELANGE TUNIC | 169 | 2,195.31 | 1,024.14 |
| 5.13 | GKT5220FL24 | SLUB TUNIC WITH LACE | 167 | 2,997.65 | 856.71 |
| 5.57 | BKB5005FL14 | ESS PCD BANDED FLC PANT | 162 | 1,458.00 | 902.34 |

| | | | | | |
|---|---|---|---|---|---|
| 4.24 | GKB5765WT24 | GLITTER STAR LEGGING | 161 | 2,728.95 | 682.64 |
| 8.51 | GKB5107FL14 | KNIT JEGGING | 160 | 2,878.40 | 1,361.60 |
| 7.7 | GKD4150SU14 | LONG SEQUIN LAWN DRESS | 160 | 1,598.40 | 1,232.00 |
| 10.15 | GKO5331FL24 | PIECED LACE TRIM COAT | 157 | 5,487.15 | 1,593.55 |
| 9.95 | GKB5228FL24 | BELTED 16 W CORD PANT | 155 | 4,332.25 | 1,542.25 |
| 3.97 | GKT4642FL14 | ESS TAPESTRY TUNIC | 155 | 1,395.00 | 615.35 |
| 6.46 | BKB5001COR4 | ESS ONE POCKET DENIM PANT | 153 | 1,377.00 | 988.38 |
| 7.41 | GKD4397SU24 | MIXED PRT TIERED SJ DRESS | 150 | 1,498.50 | 1,111.50 |
| 3.85 | BKT5306FL24 | ESS SOLID THERMAL PCD TEE | 138 | 1,242.00 | 531.3 |
| 4.56 | BKT5419WT14 | ESS RELAY STRIPE HOODY | 138 | 1,242.00 | 629.28 |
| 8.83 | GKD5210FL24 | PIECED PRNT DRESS W/APPLQ | 131 | 3,923.45 | 1,156.73 |
| 9.57 | GKD4369SU24 | EMB LAWN TROPIC DRESS | 130 | 1,298.70 | 1,244.10 |
| 6.83 | GKD5714WT24 | OFF THE SHOULDER DRESS | 130 | 3,893.50 | 887.9 |
| 5.91 | GKT5214FL24 | SLUB HOODED TOP | 130 | 2,593.50 | 768.3 |
| 7.35 | GKB4130SU14 | EMB TRIPLE TIER KNT DRESS | 126 | 1,258.74 | 926.1 |
| 4.29 | GKB4664FL14 | ROMY FLORAL PATCH LEGGING | 126 | 1,636.74 | 540.54 |
| 6.67 | GKD5291FL14 | SS ROMY FLORAL DRESS | 126 | 2,518.74 | 840.42 |
| 4.53 | GKB5168FL14 | LACE TRIM BELL | 123 | 1,597.77 | 557.19 |
| 3.88 | BKT5426WT14 | ESS HELICOPTER RAGLAN | 119 | 1,071.00 | 461.72 |
| 5.33 | GKT5720WT24 | SPOT-STRIPE-STAR TUNIC | 118 | 2,236.10 | 628.94 |
| 4.8 | GKB5218FL24 | SPOT PANT W/ PRINT FRILLS | 117 | 2,217.15 | 561.6 |
| 3.85 | GKT4949FL14 | ESS LACE TRIM TUNIC | 117 | 1,053.00 | 450.45 |
| 12.09 | GKO5775WT24 | SWEATER TRIM F/T HOODY | 116 | 3,822.20 | 1,402.44 |
| 3.6 | GKT5091FL14 | ESS BFLY TUNIC | 115 | 1,035.00 | 414 |
| 8.38 | GKD4366SU24 | TEXTURED WOVEN MAXI DRESS | 112 | 1,118.89 | 938.57 |
| 7.88 | GKT5736WT14 | LX FLOCKED VELOUR TUNIC | 112 | 2,906.40 | 882.56 |
| 5.34 | GKT5099FL14 | 3/4 SLV HEART APPLQ TUNIC | 111 | 1,441.89 | 592.74 |
| 5.46 | GKB4405SU24 | SLD PEDAL W PRINT FRILLS | 108 | 1,078.92 | 589.68 |
| 7.65 | GKD4379SU34 | JIE JIE DIPPED DYE DRESS | 107 | 1,068.93 | 818.55 |
| 4.93 | GKT4758FLT4 | SS SPOTTED LOVE TUNIC | 107 | 1,282.93 | 527.51 |
| 3.66 | GKB4112SU14 | ESS MESH TRIM SOLID PEDAL | 106 | 846.94 | 387.96 |
| 6.24 | GKT4154SU14 | SPLIT BODICE LAWN TUNIC | 106 | 1,058.94 | 661.44 |
| 14.43 | GKO4741FLT4 | CANDACE SPOT JACKET | 105 | 3,148.95 | 1,515.15 |
| 13.75 | GKO4968WT24 | FT HOODED PULLOVER SWTR | 102 | 2,952.90 | 1,402.50 |
| 3.3 | GKB4391SU24 | ESS MACAW FLORAL SHORT | 101 | 806.99 | 333.3 |
| 5.4 | GKT5538FL14 | SS PIECED PRINT TUNIC | 101 | 1,311.99 | 545.4 |
| 5.61 | GKB4360SU24 | TEXTURED WOVEN PEDAL | 100 | 999 | 561 |
| 5.43 | GKB5727WT14 | LX FLOCKED FRILL PANT | 100 | 2,495.00 | 543 |
| 8 | GKO5172FL14 | LACE TRIM FLC HOODY | 100 | 1,499.00 | 800 |
| 6.9 | GKB5477FL24 | ROYAL ROSE REVERSE PANT | 99 | 2,470.05 | 683.1 |
| 13.17 | GKO5374FL24 | HOODED LACE CARDIGAN | 98 | 3,915.10 | 1,290.66 |
| 4.9 | GKT5386FL14 | GLITTER PRINT TOP W/CUFFS | 98 | 881.02 | 480.2 |
| 4.16 | GKT5183FL14 | SS LACE TRIM TOP | 96 | 959.04 | 399.36 |
| 7.28 | GKB5746WT24 | FRENCH TERRY PANT W CUFFS | 94 | 2,345.30 | 684.32 |
| 4.73 | GKB5254WT14 | JAZZY SPOT SKATER SKIRT | 93 | 1,855.35 | 439.89 |
| 4.27 | GKB4152SU14 | CONTRAST SPARKLE CAPRI | 92 | 919.08 | 392.84 |
| 5.38 | GKT5718WT14 | SPARKLY STAR  GRAPHIC TEE | 92 | 1,559.40 | 494.96 |

| | | | | | |
|---|---|---|---|---|---|
| 7.26 | GKB5412FL14 | METALLIC NETTING SKIRT | 91 | 1,637.09 | 660.66 |
| 8.05 | GKO4166SU14 | TIE DYE NET SKRT SWIMSUIT | 91 | 909.09 | 732.55 |
| 18.05 | GKO5548WT14 | LX LONG SWEATER CARDIGAN | 91 | 4,181.45 | 1,642.55 |
| 4.1 | GKAX030WT14 | GK BALLERINA TIGHT | 90 | 1,165.50 | 369 |
| 8.37 | GKO4712FLT4 | STRETCH FLEECE HOODY | 89 | 1,779.11 | 744.93 |
| 4.41 | GKB4726FLT4 | SPOTTED LEGGING | 88 | 1,231.12 | 388.08 |
| 3.85 | BKT5295FL24 | ESS WEAVE STRIPE TEE | 87 | 783 | 334.95 |
| 4.31 | GKB5103FL14 | SOLID PANT W/ RIBBON TRIM | 84 | 1,091.16 | 362.04 |
| 3.83 | GKT5768WT14 | MIXED PRINT TUNIC | 83 | 1,489.85 | 317.89 |
| 3.46 | GBB5681WT14 | ESS 2X2 RIB LEGGING W NET | 82 | 738 | 283.72 |
| 6.18 | GKB4476SU14 | LAWN PEBBLE PEDAL | 82 | 655.18 | 506.76 |
| 6 | GKD4728FLT4 | SS MIXED PRINT DRESS | 81 | 1,862.19 | 486 |
| 5.5 | GKT4722FLT4 | SS MELANGE STRIPE TUNIC | 81 | 809.19 | 445.5 |
| 6.47 | GKB4718FLT4 | MELANGE SKIRT | 80 | 1,359.20 | 517.6 |
| 11.63 | GKB5712WT14 | LX ADJ WAIST FLOCKED PANT | 77 | 2,691.15 | 895.51 |
| 9.29 | BKB4496FL24 | E WAIST HERRINGBONE PANT | 76 | 2,124.20 | 706.04 |
| 3.81 | BKT5431WT14 | ESS PIECED THERMAL TEE | 75 | 675 | 285.75 |
| 4.1 | GKAX023FL24 | GK SOLID FOOTLESS TIGHT | 74 | 958.3 | 303.4 |
| 6.06 | GKO5244FL24 | SLUB FRENCH TERRY VEST | 74 | 1,476.30 | 448.44 |
| 8.05 | GKB5482FL24 | JIE JIE EMB MESH SKIRT | 73 | 1,821.35 | 587.65 |
| 8.44 | GKB5689WT14 | RUCHED CORD PANT | 73 | 1,894.35 | 616.12 |
| 7.03 | GKD4658FL14 | LS ROMY FLORAL DRESS | 73 | 1,459.27 | 513.19 |
| 3.33 | GBB5683WT14 | ESS STRIPED LEGGING | 72 | 648 | 239.76 |
| 8.94 | GKB5095FL14 | ADJ WAIST PIECED DENIM | 72 | 1,295.28 | 643.68 |
| 3.49 | GBB5088FL14 | ESS SCRUNCHED LEGGING | 71 | 639 | 247.79 |
| 4.14 | GKB4148SU14 | TRIPLE TIER PEDAL | 71 | 709.29 | 293.94 |
| 6.91 | GKD5179FL14 | 3/4 SLV STRIPED DRESS | 71 | 1,064.29 | 490.61 |
| 8.94 | BKB4457FL14 | EWAIST CRACKER LINED PANT | 70 | 1,609.30 | 625.8 |
| 6.92 | BKB5322FL24 | E WAIST FRENCH TERRY PANT | 70 | 1,746.50 | 484.4 |
| 5.77 | BKT5011FL14 | 2 IN 1 SLING SHOT TEE | 70 | 629.3 | 403.9 |
| 7.9 | GKD5225FL24 | 16 WALE CORD DRESS | 70 | 2,096.50 | 553 |
| 1.91 | GKA5738WT14 | SPOTTY HEADBAND WITH BOW | 68 | 472.6 | 129.88 |
| 3.09 | GBT5676WT14 | ESS STRIPED TUNIC | 68 | 612 | 210.12 |
| 4.1 | GKAX016FL14 | GK ROMANY FLORAL TIGHT | 64 | 639.36 | 262.4 |
| 10.55 | GKD4732FLT4 | LS HOODED DRESS | 64 | 1,599.36 | 675.2 |
| 4.94 | GKT4128SU14 | ASYM MIXED PRINT TUNIC | 64 | 639.36 | 316.16 |
| 4.41 | BKT4985FL14 | ESS COMPASS STRIPE TEE | 62 | 558 | 273.42 |
| 6.28 | GBD5702WT14 | SPOTTY BALLERINA DRESS | 62 | 1,856.90 | 389.36 |
| 8.44 | GKB5485FL24 | FLORAL STRETCH TWILL | 61 | 1,826.95 | 514.84 |
| 7.37 | GKD4407SU34 | APPLQ DRESS W/ FRILLS | 61 | 609.39 | 449.57 |
| 4.7 | GKT4049SU24 | PANEL PRINT TEE | 61 | 609.39 | 286.7 |
| 4.1 | GKAX031WT14 | GK JAZZY SPOT TIGHT | 60 | 777 | 246 |
| 6.23 | GKB4142SU14 | 2 TONED NETTING SKIRT | 60 | 359.4 | 373.8 |
| 5.53 | GKB4413SU34 | APPLQ PANT W/ FRILLS | 60 | 599.4 | 331.8 |
| 5.26 | GKT5763WT24 | GLITTER STAR WRAP CARD | 60 | 1,137.00 | 315.6 |
| 4.02 | GKB4134SU14 | APPLQ/ EMB CAPRI W/RUFFLE | 59 | 589.41 | 237.18 |
| 4.38 | GKD4136SU14 | STRIPED RUFFLE MAXI DRESS | 59 | 589.41 | 258.42 |

| | | | | |
|---|---|---|---|---|
| 8.2 | GKB4938FL14 | STRETCHED COLORED DENIM | 58 | 753.42 | 475.6 |
| 5.96 | GKT5101FL14 | LS PIECED PRINT TUNIC | 58 | 753.42 | 345.68 |
| 3.33 | GBT5674WT14 | ESS 2X2 YOKE TUNIC | 57 | 513 | 189.81 |
| 5.77 | GKT4415SU24 | KNOTTED STRAP TOP | 57 | 569.45 | 328.91 |
| 5.92 | GTB2054FLT4 | ANGL TRIM MELANGE LEGGING | 57 | 683.43 | 337.44 |
| 9.04 | BKB4498FL24 | ADJ WAIST CHECK PANT | 55 | 1,647.25 | 497.2 |
| 4.43 | BKT5313FL24 | THERMAL SLV MAP ART TEE | 55 | 932.25 | 243.65 |
| 4.74 | BKT5317FL24 | 2FER CAMEL SADDLE TEE | 55 | 932.25 | 260.7 |
| 3.85 | BKT4989FL14 | ESS SLUB BLIMP BIKE TEE | 54 | 486 | 207.9 |
| 2.45 | GKAX033COR4 | GK 3PK CORE WTRLILY SOCK | 54 | 429.3 | 132.3 |
| 7.81 | GKO5473FL24 | ROYAL ROSE HOODY | 54 | 1,779.30 | 421.74 |
| 5.43 | GTB2107FL24 | 5X2 LEG WARMER LEGGING | 54 | 1,239.30 | 293.22 |
| 4.56 | BKT4999FL14 | ESS SLUB HOODY | 53 | 477 | 241.68 |
| 4.74 | BKT5307FL24 | PCD THRML COLORBLOCK TEE | 53 | 1,057.35 | 251.22 |
| 1.5 | GKA002COR1 | NAARTJIE GIFT BOX | 53 | 103.35 | 79.5 |
| 1.05 | GBAX60COR2 | GK DBL SCALLOPED CORE SOC | 52 | 103.48 | 54.6 |
| 3.19 | GBT4644FL14 | ESS TAPESTRY TUNIC | 52 | 468 | 165.88 |
| 5.56 | GKB5097FL14 | PIECED PRINT SKIRT | 52 | 935.48 | 289.12 |
| 4.96 | BBB5002COR4 | ESS ONE POCKET DENIM PANT | 51 | 459 | 252.96 |
| 6.45 | BKT5034FL14 | REVERSE FRENCH TERRY TEE | 51 | 611.49 | 328.95 |
| 4 | BKT5429WT14 | ESS DEER CHEST STRIPE TEE | 51 | 459 | 204 |
| 6.58 | GBD5735WT14 | 2X2 RIB DRESS | 51 | 1,527.45 | 335.58 |
| 3.79 | GKB4385SU24 | MACAW FLORAL PEDAL | 51 | 509.49 | 193.29 |
| 8.61 | GKB5686WT14 | SEQUIN PATCH DENIM PANT | 51 | 1,323.45 | 439.11 |
| 5.12 | BBB5438WT14 | ESS WALE CORD KNEE PANT | 50 | 450 | 256 |
| 10.32 | GKO5376FL24 | SPOT STRIPE P/O SWEATER | 50 | 1,747.50 | 516 |
| 8.42 | BKB5013FL14 | EWAIST DENIM PANT | 49 | 979.51 | 412.58 |
| 3.39 | GBB5711WT14 | 2X2 RIB PANT W PRINT TRIM | 49 | 928.55 | 166.11 |
| 3.46 | GBB5864WT14 | ESS SPOT LEGGING W BOWS | 49 | 441 | 169.54 |
| 7.96 | GKB4526SU24 | ADJ WST EMB CRACKER SHORT | 49 | 489.51 | 390.04 |
| 3.95 | BBB5436WT14 | ESS FLEECE KNEE PCD PANT | 48 | 432 | 189.6 |
| 7.51 | GBB5691WT24 | GLITTER STAR SKIRT W LEGS | 48 | 1,197.60 | 360.48 |
| 3.21 | GBT5678WT14 | ESS SPOT-FLORAL TUNIC | 47 | 423 | 150.87 |
| 3.41 | GKB4118SU14 | ESS SBREEZE SHORT W/ MESH | 47 | 375.53 | 160.27 |
| 5.9 | GKB4364SU24 | SOLID BELL W WOVEN DETAIL | 47 | 469.53 | 277.3 |
| 3.71 | GKT4106SU14 | ESS SS STRP SBREEZE TUNIC | 47 | 281.53 | 174.37 |
| 4.01 | BBT5420WT14 | ESS RELAY STRIPE HOODY | 46 | 414 | 184.46 |
| 8.65 | GKB4160SU14 | BLEACHED DENIM SHORT | 46 | 459.54 | 397.9 |
| 7.56 | GTB2057FLT4 | STRETCH FLEECE PANT | 46 | 827.54 | 347.76 |
| 1.85 | GKA5475FL24 | ROCOCCO FLORAL HEADBAND | 45 | 357.75 | 83.25 |
| 3.39 | GBB5726WT14 | BALLERINA DANCE LEGGING | 45 | 807.75 | 152.55 |
| 3.31 | GKB4536SU24 | ESS LACE INSET BIKE SHORT | 45 | 359.55 | 148.95 |
| 3.91 | GKO4651FL14 | ESS LACE TRIM CARDIGAN | 44 | 396 | 172.04 |
| 4.85 | GKT5479FL24 | DANCING JIE JIE | 44 | 745.8 | 213.4 |
| 0.95 | BBAX45COR2 | BB STRIPED CORE SOCK | 43 | 126.85 | 41.75 |
| 4 | BKT5422WT14 | ESS FIRETRUCK SLUB TEE | 43 | 387 | 172 |
| 3.79 | GKB4021SU24 | ESS TROPIC PEDAL | 43 | 343.57 | 162.97 |

| | | | | | |
|---|---|---|---|---|---|
| 6.31 | GKT4399SU24 | RUFFLED PRINT TUNIC W EMB | 43 | 429.27 | 271.33 |
| 8.85 | BKB5456WT14 | RIB WAIST FLEECE PANT | 42 | 1,047.90 | 371.7 |
| 4 | BKT5424WT14 | ESS VERTICAL FLAG TEE | 42 | 378 | 168 |
| 4.25 | BKT5445WT14 | ARGYLE PRINT SLEEVE HOODY | 42 | 837.9 | 178.5 |
| 7.31 | GTT2050FLT4 | SS MELANGE TUNIC | 42 | 671.58 | 307.02 |
| 10.33 | BKO5803WT14 | REVERSE FRNCH TERRY HOODY | 41 | 1,227.95 | 423.53 |
| 4.5 | GKAX011FLT4 | SNOW DROP FOOTLESS TIGHT | 41 | 409.59 | 184.5 |
| 3.69 | GBB5766WT24 | GLITTER STAR LEGGING | 41 | 694.95 | 151.29 |
| 6.78 | GBD5706WT14 | LX FLOCKED POPLIN DRESS | 41 | 1,432.95 | 277.98 |
| 10.29 | BKB4535FLT4 | ADJ WAIST ROLLUP PANT | 40 | 999.6 | 411.6 |
| 1.97 | GKA5722WT14 | LX VELOUR HEADBAND | 40 | 358 | 78.8 |
| 4.1 | GKAX032WT14 | GK STAR FOOTLESS TIGHT | 40 | 518 | 164 |
| 4.69 | GBB5729WT14 | LX FLOCKED FRILL PANT | 40 | 998 | 187.6 |
| 5.37 | GBT5709WT14 | 2X2 HOODED TUNIC | 40 | 798 | 214.8 |
| 10.6 | GTO2053FLT4 | STRETCH FLEECE HOODY | 40 | 919.6 | 424 |
| 3.97 | BKT4991FL14 | ESS SLUB LS DIP DYE TEE | 39 | 351 | 154.83 |
| 12.48 | GBO5375FL24 | HOODED LACE CARDIGAN | 39 | 1,558.05 | 486.72 |
| 7.05 | GTT2102FL24 | SLUB HOODED TOP | 39 | 973.05 | 274.95 |
| 3.43 | BBT5296FL24 | ESS WEAVE STRIPE TEE | 38 | 342 | 130.34 |
| 1.05 | GKAX59COR2 | GK DBL SCALLOP CORE SOCK | 38 | 75.62 | 39.9 |
| 2.24 | BKAX001COR4 | BK 3 PK CORE STP SOCK | 37 | 294.15 | 82.88 |
| 1.59 | GKA5277FL14 | PRINT HEADBAND | 37 | 184.63 | 58.83 |
| 4.6 | GBB4715FLT4 | STRETCH FLEECE PANT | 37 | 591.63 | 170.2 |
| 3.68 | GBB5169FL14 | LACE TRIM BELL | 37 | 480.63 | 136.16 |
| 6.21 | GBD4380SU34 | JIE JIE DIPPED DYE DRESS | 37 | 369.63 | 229.77 |
| 4.17 | BBB5004FL14 | ESS PIECED TWILL PANT | 36 | 324 | 150.12 |
| 9.79 | BKB4531FLT4 | EWAIST CRACKER LINED PANT | 36 | 791.64 | 352.44 |
| 4.13 | BKT5439WT14 | 2-FER FIERY STRIPE TEE | 36 | 682.2 | 148.68 |
| 3.69 | BKT5660FL24 | ESS SS ELEPHANT SLUB TEE | 36 | 324 | 132.84 |
| 5.07 | GKB4132SU14 | ASSYM PRINT | 36 | 359.64 | 182.52 |
| 8.94 | GKB5652FL24 | KNIT WAIST DENIM PANT | 36 | 970.2 | 321.84 |
| 7.35 | GKD4164SU14 | CRUSH DYE SLUB DRESS | 36 | 359.64 | 264.6 |
| 3.88 | BKT5302FL24 | ESS TRIBAL PRINT SLUB TEE | 35 | 315 | 135.8 |
| 2.45 | GKAX028COR4 | GK 3PK CORE BALLERINA SCK | 35 | 278.25 | 85.75 |
| 6.25 | GKT3706SP14 | 3/4 SLV EMB TUNIC WITH FL | 35 | 349.65 | 218.75 |
| 3.6 | GKT4472SU24 | ESS BATIK PRT GRAPHIC TOP | 35 | 209.65 | 126 |
| 5.34 | GTB2055FLT4 | SPOTTED LEGGING | 35 | 524.65 | 186.9 |
| 3.83 | GBT5769WT14 | MIXED PRINT TUNIC | 34 | 610.3 | 130.22 |
| 13.39 | GTD2058FLT4 | LS HOODED DRESS | 34 | 951.66 | 455.26 |
| 4.9 | BKT5007FL14 | ONE POCKET GML HOODY | 33 | 428.67 | 161.7 |
| 3.25 | GBB4937FL14 | ESS TAPESTRY PRINT BELL | 33 | 297 | 107.25 |
| 4.32 | GBB5688COR4 | ESS DENIM PANT | 33 | 297 | 142.56 |
| 3.25 | GBT5092FL14 | ESS BFLY TUNIC | 33 | 297 | 107.25 |
| 8.05 | GTB2056FLT4 | MELANGE SKIRT | 33 | 593.67 | 265.65 |
| 5.72 | GBD5292FL14 | SS ROMY FLORAL DRESS | 32 | 639.68 | 183.04 |
| 3.78 | GKB4116SU14 | ESS PEBBLE CAPRI W/ MESH | 32 | 255.68 | 120.96 |
| 8.95 | GKO4926FL14 | EMB SOLID/STRIPE CARDIGAN | 32 | 575.68 | 286.4 |

| | | | | | |
|---|---|---|---|---|---|
| 9.93 | GTO2082FL14 | LACE TRIM FLC HOODY | 32 | 575.68 | 317.76 |
| 6.99 | GTT2051FLT4 | SS MELANGE STRIPE TUNIC | 32 | 479.68 | 223.68 |
| 3.68 | BKT5298FL24 | ESS GIRAFFE SPEEDY SJ TEE | 31 | 279 | 114.08 |
| 4.1 | GKAX018FL14 | GK TEXTURED LACE TIGHT | 31 | 309.69 | 127.1 |
| 5.18 | GBT5217FL24 | SLUB TUNIC W/ FRL FRILLS | 31 | 618.45 | 160.58 |
| 3.41 | GBT5249FL24 | ESS ROCOCCO FLORAL TUNIC | 31 | 279 | 105.71 |
| 3.78 | GKB4120SU14 | ESS WATER STRIPE PEDAL | 31 | 247.69 | 117.18 |
| 4.05 | BKT5303FL24 | ESS GEO STRIPE HOODY TEE | 30 | 270 | 121.5 |
| 3.47 | BKT5526FL14 | ESS SLUB SS DIP DYE TEE | 30 | 270 | 104.1 |
| 4.1 | GBAX034WT14 | GB BALLERINA TIGHT | 30 | 388.5 | 123 |
| 3.55 | GBB4667FL14 | ROMY FLORAL PATCH LEGGING | 30 | 389.7 | 106.5 |
| 6.49 | GBO5173FL14 | LACE TRIM FLC HOODY | 30 | 449.7 | 194.7 |
| 7.11 | GKB4401SU24 | MUSLN SKRT W MACAW RUFFLE | 30 | 299.7 | 213.3 |
| 4.08 | GKO4584SU14 | SPARKLE TRIM CARDIGAN | 30 | 299.7 | 122.4 |
| 5.94 | GKT4409SU34 | SLUB EMB CONTRAST TANK | 30 | 299.7 | 178.2 |
| 6.27 | LBG5252FL24 | SPACE STRIPE HENLEY BG | 30 | 688.5 | 188.1 |
| 7.68 | LGD5698WT14 | LX VELOUR LACE DRESS | 30 | 748.5 | 230.4 |
| 7.35 | LGG5697WT14 | LX VELOUR FRILL LACE BG | 30 | 688.5 | 220.5 |
| 7.4 | LGG5706WT14 | 2X2 RIB MESH SKIRTED BG | 30 | 688.5 | 222 |
| 4.53 | BBB5006FL14 | ESS PCD BANDED FLC PANT | 29 | 261 | 131.37 |
| 17.06 | BKO5078WT14 | MARLED STRIPE SWEATER | 29 | 1,158.55 | 494.74 |
| 9.77 | BKO5458WT14 | FLEECE HOODY VEST | 29 | 868.55 | 283.33 |
| 6.95 | BKT5009FL14 | THERMAL KANGA HENLEY TEE | 29 | 376.71 | 201.55 |
| 6.01 | GKA5378FL24 | SOLID SWEATER SCARF | 29 | 578.55 | 174.29 |
| 6.42 | GKT4140SU14 | SEQUIN HEART TUNIC W/MESH | 29 | 289.71 | 186.18 |
| 6.27 | LBG5247FL24 | 01 ART CHAMBRAY BABYGROW | 29 | 665.55 | 181.83 |
| 6.56 | LGG5286FL24 | 2FER BUGS PRINT BABYGROW | 29 | 665.55 | 190.24 |
| 5.43 | BBB5323FL24 | E WAIST FRENCH TERRY PANT | 28 | 698.6 | 152.04 |
| 10.19 | BKO5080WT14 | MARLED COLLAR SWEATER | 28 | 1,034.60 | 285.32 |
| 3.71 | BKT4180SU14 | ESS SLUB FLORA BLEACH TEE | 28 | 167.72 | 103.88 |
| 4.5 | BKT5441WT14 | COLORBLOCKED SNOW TEE | 28 | 530.6 | 126 |
| 4.06 | GKA5871FL24 | 3 PIECE UNDIES | 28 | 362.6 | 113.68 |
| 3.59 | GKT4387SU24 | ESS FLOWER GRAPHIC TANK | 28 | 167.72 | 100.52 |
| 12.21 | GTO2104FL24 | SPOT STRIPE P/O SWEATER | 28 | 1,118.60 | 341.88 |
| 5.84 | LBG5023FL14 | SIDE SNAP 2 FER BABYGROW | 28 | 363.72 | 163.52 |
| 6.56 | LGG5282FL24 | ANIMAL HOLLY SPOT TRIM BG | 28 | 642.6 | 183.68 |
| 0.97 | BKAX44COR2 | BK STRIPED CORE SOCK | 27 | 79.65 | 25.79 |
| 3.8 | BBT4986FL14 | ESS COMPASS STRIPE TEE | 27 | 243 | 102.6 |
| 3.43 | BBT5305FL24 | ESS SOLID THERMAL PCD TEE | 27 | 243 | 92.61 |
| 4.06 | GKA5868WT14 | FLORAL STRIPE SPOT UNDIES | 27 | 349.65 | 109.62 |
| 4.53 | GBT5721WT24 | SPOT-STRIPE-STAR TUNIC | 27 | 511.65 | 122.31 |
| 8.65 | GKB4162SU14 | BLEACHED TWILL W/ANGLAISE | 27 | 269.73 | 233.55 |
| 10.96 | GTB2087FL14 | KNIT JEGGING | 27 | 539.73 | 295.92 |
| 8.88 | BKB5466WT14 | ADJ WAIST YOKE TWILL PANT | 26 | 778.7 | 230.88 |
| 3.98 | BKT4278SU24 | SURF 4 PRINT TEE | 26 | 259.74 | 103.48 |
| 2.45 | GBAX004COR4 | GB 3 PK CORE SCALLOP SOCK | 26 | 206.7 | 64.18 |
| 6.04 | GBB4378SU34 | TIE DYE TIERED SKIRT | 26 | 207.74 | 157.04 |

| | | | | | |
|---|---|---|---|---|---|
| 4.81 | GBB5469FL24 | ESS STRETCH CORD PANT | 26 | 234 | 125.06 |
| 7.21 | GKT4358SU24 | TEXTURED LINEN LOOK TUNIC | 26 | 259.74 | 187.46 |
| 4.81 | GTB2105FL24 | SPOTTY LEGGING | 26 | 440.7 | 125.06 |
| 4.2 | BKT4203SU14 | APPLIQUE PARROT TEE | 25 | 249.75 | 105 |
| 3.98 | BKT4282SU24 | CROSS SURF BOARD TEE | 25 | 249.75 | 99.5 |
| 3.25 | GBB4649FL14 | ESS STRIPED LYCRA LEGGING | 25 | 225 | 81.25 |
| 4.76 | BKA5464WT14 | BK CORD HOUND SHERPA HAT | 24 | 382.8 | 114.24 |
| 3.78 | BBB4193SU14 | ESS CRACKER SHORT | 24 | 191.76 | 90.72 |
| 5.93 | BKT5311FL24 | MODE STRIPE THERMAL HOODY | 24 | 430.8 | 142.32 |
| 4.1 | GBAX035WT14 | GB JAZZY SPOT TIGHT | 24 | 310.8 | 98.4 |
| 2.1 | GKAX019FL14 | GK LACE SOLID SOCK | 24 | 142.8 | 50.4 |
| 4.1 | GKAX024FL24 | GK ROYAL ROSE SPOT TIGHT | 24 | 310.8 | 98.4 |
| 7.44 | GBD5167FL14 | SOLID LACE TRIM DRESS | 24 | 551.76 | 178.56 |
| 6.43 | GBD5182FL14 | PIECED HOODED DRESS | 24 | 551.76 | 154.32 |
| 6.63 | GBO4167SU14 | TIE DYE NET SKRT SWIMSUIT | 24 | 239.76 | 159.12 |
| 2.84 | GBO5579FL24 | ESS SPOT CARDIGAN | 24 | 216 | 68.16 |
| 3.43 | GBT4935FL14 | ESS MIXED PRINT TUNIC | 24 | 216 | 82.32 |
| 4.73 | GKB4356SU24 | TEXTURED WOVEN SHORT | 24 | 239.76 | 113.52 |
| 6.28 | GKB4377SU34 | TIE DYE TIERED SKIRT | 24 | 191.76 | 150.72 |
| 4.25 | GKT4371SU24 | MACAW FLORAL TANK | 24 | 239.75 | 101.99 |
| 1.87 | LGA5862WT14 | BLUEBELL FLORAL HEADBAND | 24 | 142.8 | 44.88 |
| 6.52 | LGG4551FLT4 | TRIPLE RUFFLE BABYGROW | 24 | 431.76 | 156.48 |
| 7.72 | BBB4459FL14 | EWAIST CRACKER LINED PANT | 23 | 528.77 | 177.56 |
| 1.75 | GBA5476FL24 | ROCOCCO FLORAL HEADBAND | 23 | 182.85 | 40.25 |
| 4.06 | GBB5219FL24 | SPOT PANT W/ PRINT FRILLS | 23 | 435.85 | 93.38 |
| 7.3 | GBD5211FL24 | PIECED PRNT DRESS W APPLQ | 23 | 688.85 | 167.9 |
| 7.61 | GBD5266FL24 | 5X2 DRESS W ROYAL ROSE SK | 23 | 757.85 | 175.03 |
| 3.31 | GBO4652FL14 | ESS LACE TRIM CARDIGAN | 23 | 207 | 76.13 |
| 10.32 | BKB5449WT14 | RIB WAIST CRACKER PANT | 22 | 658.9 | 227.04 |
| 7.94 | BKB5451WT14 | EWAIST CUFF DENIM PANT | 22 | 614.9 | 174.68 |
| 9.75 | BKO5318FL24 | REVERSE FRNCH TERRY HOODY | 22 | 658.9 | 214.5 |
| 4.08 | BKT4214SU14 | LEAF BLOCK WITH SNAKE TEE | 22 | 131.78 | 89.76 |
| 4.78 | GBT5330FL24 | ESS SPOT TOP | 22 | 198 | 105.16 |
| 10.89 | GKO4185SU14 | BLEACHED DENIM JACKET | 22 | 219.78 | 239.58 |
| 6.83 | LGG4977FL14 | HOLLY SPOT BABYGROW | 22 | 373.78 | 150.26 |
| 8.4 | BBO5081WT14 | MARLED COLLAR SWEATER | 21 | 775.95 | 176.4 |
| 11.04 | BKO5037FL14 | CABLE KNIT FLEECE SWEATER | 21 | 587.79 | 231.84 |
| 4 | BKT4513FLT4 | LS SCIENCE RULES TEE | 21 | 188.79 | 84 |
| 6.74 | GBB4939FL14 | STRETCHED COLORED DENIM | 21 | 189 | 141.54 |
| 6.28 | GBD5213FL24 | ROYAL ROSE HOODED DRESS | 21 | 628.95 | 131.88 |
| 3.45 | GBT4731FLT4 | 3/4 SLV SNOWDROPS TUNIC | 21 | 272.79 | 72.45 |
| 3.79 | GKB4023SU24 | ESS ORINOKO PEDAL | 21 | 167.79 | 79.59 |
| 8.3 | GTB2088FL14 | METALLIC NETTING SKIRT | 21 | 419.79 | 174.3 |
| 8.88 | GTT2034SU24 | TEXTURED LINEN LOOK TUNIC | 21 | 209.79 | 186.48 |
| 6.42 | BBB5467WT14 | EWAIST YOKE TWILL PANT | 20 | 579 | 128.4 |
| 3.71 | BKT4188SU14 | ESS IQUITOS HUT TEE | 20 | 119.8 | 74.2 |
| 1.81 | GBA5739WT14 | SPOTTY HEADBAND WITH BOW | 20 | 139 | 36.2 |

| | | | | | |
|---|---|---|---|---|---|
| 1.83 | GKA5279FL14 | SOLID LACE TRIM HEADBAND | 20 | 99.8 | 36.6 |
| 1.83 | GKA5740WT24 | GLITTER STAR HEADBAND | 20 | 159 | 36.6 |
| 3.33 | GBB5262FL24 | 5X2 LEG WARMER LEGGING | 20 | 359 | 66.6 |
| 6.16 | GBD4151SU14 | SPRKLY LWN DRESS W RUFFLE | 20 | 199.8 | 123.2 |
| 3.25 | GBT4810SU34 | HOLA FLOWER TANK | 20 | 199.8 | 65 |
| 4.53 | GBT5100FL14 | 3/4 SLV HEART APPLQ TUNIC | 20 | 259.8 | 90.6 |
| 6.1 | GKO4901SU14 | POLKA DOT SWIMSUIT | 20 | 199.8 | 122 |
| 1.82 | GTA2010SU14 | SEABREEZE PEBBLE HEADBAND | 20 | 39.8 | 36.4 |
| 5.81 | GTB2002SU14 | DENIM SHORT W/ MESH | 20 | 199.8 | 116.2 |
| 7.76 | GTB2086FL14 | STRETCH SKINNY DENIM | 20 | 259.8 | 155.2 |
| 7.25 | GTT3005WT14 | SPARKLY STAR GRAPHIC TEE | 20 | 399 | 145 |
| 6.88 | LBG5109WT14 | FLEECE CRITTER BABYGROW | 20 | 459 | 137.6 |
| 6.65 | LBG5110WT14 | CRITTER STRIPE ANIMAL BG | 20 | 459 | 133 |
| 7.08 | LBG5771WT14 | FLEECE PATCH BABYGROW | 20 | 459 | 141.6 |
| 4.13 | LBT5242FL24 | NOVA STAR STRIPE SLV TEE | 20 | 259 | 82.6 |
| 2.84 | LGA5700WT14 | SOLID FRILLY MESH BOOTIES | 20 | 199 | 56.8 |
| 5.18 | LGB5695WT14 | LX VELOUR LACE PANT | 20 | 339 | 103.6 |
| 5.34 | LGD5654WT14 | BLUEBELL FLORAL DRESS | 20 | 459 | 106.8 |
| 7.23 | LGG5659WT14 | BLUEBELL FLORAL BUBBLE BG | 20 | 459 | 144.6 |
| 6.79 | LGT5694WT14 | LX VELOUR LACE TUNIC | 20 | 499 | 135.8 |
| 6.59 | BBB4494FL24 | E WAIST HERRINGBONE PANT | 19 | 531.05 | 125.21 |
| 7.76 | BKB4529FLT4 | EWAIST STRIPE FLEECE PANT | 19 | 341.81 | 147.44 |
| 12.41 | BKT4500FL24 | CHECK CORD WOVEN SHIRT | 19 | 569.05 | 235.79 |
| 4.37 | BKT4506FLT4 | LS 2 IN 1 HEADPHONE HOODY | 19 | 265.81 | 83.03 |
| 1.5 | GBA5278FL14 | PRINT HEADBAND | 19 | 94.81 | 28.5 |
| 2.93 | GBB4119SU14 | ESS SBREEZE SHORT W/ MESH | 19 | 151.81 | 55.67 |
| 3.54 | GBB4135SU14 | APPLQ/EMB CAPRI W/ RUFFLE | 19 | 189.81 | 67.26 |
| 5.51 | GBD5715WT24 | OFF THE SHOULDER DRESS | 19 | 569.05 | 104.69 |
| 3.66 | GBT4125SU14 | MERMAID APPLQ TANK | 19 | 189.81 | 69.54 |
| 3.46 | GBT5762WT24 | GLITTER STAR TEE | 19 | 341.05 | 65.74 |
| 7.01 | GKB4375SU34 | RUFFLED DENIM SHORTALL | 19 | 189.81 | 133.19 |
| 5.9 | GTT2084FL14 | GLITTER PRINT TOP W/CUFFS | 19 | 284.81 | 112.1 |
| 3.81 | BBB4274SU24 | ESS CRACKER DOT SHORT | 18 | 143.82 | 68.58 |
| 4.96 | BBT5012FL14 | 2 IN 1 SLING SHOT TEE | 18 | 161.82 | 89.28 |
| 3.46 | BBT5423WT14 | ESS FIRETRUCK SLUB TEE | 18 | 162 | 62.28 |
| 3.33 | BBT5428WT14 | ESS HELICOPTER RAGLAN | 18 | 162 | 59.94 |
| 3.52 | BBT5430WT14 | ESS DEER CHEST STRIPE TEE | 18 | 162 | 63.36 |
| 3.27 | BBT5432WT14 | ESS PIECED THERMAL TEE | 18 | 162 | 58.86 |
| 3.62 | BKT4515FLT4 | SS CLEVER PLANET TEE | 18 | 179.82 | 65.16 |
| 2.45 | GBAX036COR4 | GB 3PK CORE WTRLILY SOCK | 18 | 143.1 | 44.1 |
| 1.72 | GKA4087SU24 | SKINNY HIPPY HEADBAND | 18 | 89.82 | 30.96 |
| 4.5 | GKA5867WT14 | FLORAL STRIPE CAMIS | 18 | 233.1 | 81 |
| 2.45 | GKAX003COR4 | GK 3 PK CORE SCALLOP SOCK | 18 | 143.1 | 44.1 |
| 3.78 | GBB4153SU14 | CONTRAST SPARKLE CAPRI | 18 | 179.82 | 68.04 |
| 7.1 | GBB5229FL24 | BELTED 16 W CORD PANT | 18 | 503.1 | 127.8 |
| 3.33 | GBB5274FL24 | ESS SPOTTY LEGGING | 18 | 162 | 59.94 |
| 5.74 | GBT4400SU24 | RUFFLED PRINT TUNIC W EMB | 18 | 179.82 | 103.32 |

| | | | | | |
|---|---|---|---|---|---|
| 4.44 | GBT4723FLT4 | SS MELANGE STRIPE TUNIC | 18 | 179.82 | 79.92 |
| 3.25 | GBT4950FL14 | ESS LACE TRIM TOP | 18 | 162 | 58.5 |
| 3.55 | GBT5184FL14 | SS LACE TRIM TOP | 18 | 179.82 | 63.9 |
| 4.07 | LBB5246FL24 | SPACE STRIPE FLEECE PANT | 18 | 269.1 | 73.26 |
| 5.38 | LGD5281FL24 | RIB BODY HOLLY SPOT DRESS | 18 | 413.1 | 96.84 |
| 6.65 | LGO5696WT14 | LX VELOUR LACE CARDIGAN | 18 | 359.1 | 119.7 |
| 9.26 | BKB5453WT14 | EWAIST CORD CARGO PANT | 17 | 492.15 | 157.42 |
| 6.54 | GBB5693WT14 | RUCHED CORD PANT | 17 | 441.15 | 111.18 |
| 6.31 | GBD4367SU24 | TEXTURED WOVEN LAWN DRESS | 17 | 169.83 | 107.27 |
| 8.49 | GBO4927FL14 | EMB SOLID/STRIPE CARDIGAN | 17 | 305.83 | 144.33 |
| 3.19 | GBT4474SU24 | ESS BATIK PRT GRAPHIC TOP | 17 | 101.83 | 54.23 |
| 5.02 | GBT5102FL14 | LS PIECED PRINT TUNIC | 17 | 220.83 | 85.34 |
| 3.79 | GBT533SP13 | ESS STRIPED TOP | 17 | 84.83 | 64.43 |
| 5.61 | GTB3014WT14 | JAZZY SPOT SKATER SKIRT | 17 | 424.15 | 95.37 |
| 8.46 | GTD2089FL14 | PIECED HOODED DRESS | 17 | 339.83 | 143.82 |
| 8.4 | GTD3015WT14 | SPOTTY BELLERINA DRESS | 17 | 594.15 | 142.8 |
| 10.79 | GTO2083FL14 | EMB SOLID/STRIPE CARDIGAN | 17 | 390.83 | 183.43 |
| 14.86 | GTO2103FL24 | HOODED LACE CARDIGAN | 17 | 764.15 | 252.62 |
| 5 | GTT3031WT24 | GLITTER STAR TEE | 17 | 373.15 | 85 |
| 2.24 | BBAX002COR4 | BB 3 PK CORE STRIPE SOCK | 16 | 127.2 | 35.84 |
| 3.06 | BBT5527FL14 | ESS SLUB SS DIP DYE TEE | 16 | 144 | 48.96 |
| 4.48 | BKT4522FLT4 | SS ARGYLE ROCK HENLEY | 16 | 159.84 | 71.68 |
| 3.51 | GKA4928FL14 | SWEATER HEADBAND | 16 | 111.84 | 56.16 |
| 3.9 | GKA5384FL24 | SPOT/STRIPE BEANIE | 16 | 239.2 | 62.4 |
| 4.1 | GKAX017FL14 | GK HEART FLORAL TIGHT | 16 | 159.84 | 65.6 |
| 5.06 | GBB4133SU14 | ASSYM PRINT SKIRT W LEGS | 16 | 159.84 | 80.96 |
| 6.49 | GBB5108FL14 | KNIT JEGGING | 16 | 287.84 | 103.84 |
| 3.33 | GBB5251FL24 | ESS ROYAL ROSE LEGGING | 16 | 144 | 53.28 |
| 4.9 | GBB5255WT14 | JAZZY SPOT SKATER SKIRT | 16 | 319.2 | 78.4 |
| 5.6 | GBB5260FL24 | CURVE PIECE SKIRT W/LEGS | 16 | 367.2 | 89.6 |
| 5.92 | GBB5747WT24 | FRENCH TERRY PANT W CUFFS | 16 | 399.2 | 94.72 |
| 9.86 | GBO5776WT24 | SWEATER TRIM F/T HOODY | 16 | 527.2 | 157.76 |
| 4.07 | GBT5471FL24 | ROYAL ROSE TUNIC | 16 | 287.2 | 65.12 |
| 4.57 | GBT5719WT14 | SPARKLY STAR GRAPHIC TEE | 16 | 271.2 | 73.12 |
| 4.87 | GTB3009WT14 | STRIPED LEGGING | 16 | 271.2 | 77.92 |
| 5.48 | GTB3033WT24 | GLITTER STAR LEGGING | 16 | 319.2 | 87.68 |
| 12.23 | GTD2111FL24 | 5X2 RIB DRESS | 16 | 607.2 | 195.68 |
| 8.62 | GTD3036WT24 | OFF THE SHOULDER DRESS | 16 | 559.2 | 137.92 |
| 6.13 | LBG4982FL14 | NOVA STAR HOODY BABYGROW | 16 | 287.84 | 98.08 |
| 3.37 | LGB4931FL14 | ELLE FLORAL PANT | 16 | 159.84 | 53.92 |
| 2.21 | BKA4545FLT4 | BK HEADPHONE BEANIE | 15 | 119.85 | 33.15 |
| 3.86 | BBT5000FL14 | ESS SLUB HOODY | 15 | 135 | 57.9 |
| 8.88 | BKB4524FLT4 | ADJ WAIST DENIM PANT | 15 | 299.85 | 133.2 |
| 3.71 | BKT4182SU14 | ESS CAMO CHAMELEON TEE | 15 | 89.85 | 55.65 |
| 4 | BKT4511FLT4 | LS REVERSE SLV STRIPE TEE | 15 | 164.85 | 60 |
| 4.16 | BKT4993FL14 | ESS IMAGINARY FRIEND TEE | 15 | 135 | 62.4 |
| 1.66 | GKA001HLD3 | HOLIDAY REUSABLE POLY BAG | 15 | 29.85 | 24.9 |

| | | | | | |
|---|---|---|---|---|---|
| 6.09 | GBO4713FLT4 | STRETCH FLEECE HOODY | 15 | 299.85 | 91.35 |
| 4.5 | GBT5221FL24 | SLUB TUNIC WITH LACE | 15 | 269.25 | 67.5 |
| 7.21 | GTB2042SU34 | TIE DYE TIERED SKIRT | 15 | 149.85 | 108.15 |
| 6.3 | GTT2100FL24 | ROYAL ROSE TUNIC | 15 | 344.25 | 94.5 |
| 2.21 | LBA5116WT14 | CRITTER STRIPE BEANIE | 15 | 134.25 | 33.15 |
| 2.44 | LBA5256FL24 | PUPPY ART SPACE BEANIE | 15 | 104.25 | 36.6 |
| 2.84 | LBA5373FL24 | SPACE STRIPE BOOTIES | 15 | 134.25 | 42.6 |
| 2.84 | LGA5370FL24 | HOLLY SPOT BUG BOOTIE | 15 | 134.25 | 42.6 |
| 2.68 | LGA5699WT14 | LX VELOUR PARISIAN BEANIE | 15 | 134.25 | 40.2 |
| 5.42 | LGD4981FL14 | HOLLY SPOT BOW DRESS | 15 | 254.85 | 81.3 |
| 6.31 | LGG4940FL14 | ELEPHANT FRIEND BABYGROW | 15 | 224.85 | 94.65 |
| 3.2 | BBT4264SU24 | ESS SUMMER ISLAND TEE | 14 | 83.86 | 44.8 |
| 3.55 | BBT4992FL14 | ESS SLUB LS DIP DYE TEE | 14 | 126 | 49.7 |
| 8.84 | BKB4217SU14 | ADJWAIST TIGER STRIPE DNM | 14 | 139.86 | 123.76 |
| 16.26 | BKO4543FLT4 | CANVAS FLAP JACKET | 14 | 419.86 | 227.64 |
| 3.74 | BKT4265SU24 | ESS ISLAND PARADISE TEE | 14 | 83.86 | 52.36 |
| 4.1 | GBAX021FL14 | GB ROMANY FLORAL TIGHT | 14 | 139.86 | 57.4 |
| 5.16 | GBB4414SU34 | APPLQ PANT W/ FRILLS | 14 | 139.86 | 72.24 |
| 5.12 | GBB4477SU14 | LAWN PEBBLE CAPRI | 14 | 111.86 | 71.68 |
| 5.95 | GBD4382SU24 | MIXED PRINT LAWN DRESS | 14 | 139.86 | 83.3 |
| 5.04 | GBD4729FLT4 | SS MIXED PRINT DRESS | 14 | 321.86 | 70.56 |
| 5.96 | GBD5180FL14 | 3/4 SLV STRIPED DRESS | 14 | 209.86 | 83.44 |
| 7.2 | GBO4900FLT4 | POLKA DOT SWIMSUIT | 14 | 139.86 | 100.8 |
| 4.53 | GBT5387FL14 | GLITTER PRINT TOP W/CUFFS | 14 | 125.86 | 63.42 |
| 4.1 | GBT5764WT24 | GLITTER STAR WRAP CARD | 14 | 265.3 | 57.4 |
| 23 | GKO5744WT14 | GLITTER STAR PUFFA JACKET | 14 | 699.3 | 322 |
| 3.36 | GKT4108SU14 | ESS FLORAL FRILL TOP | 14 | 83.86 | 47.04 |
| 4.53 | GTB2085FL14 | TAPESTRY PRINT LEGGINGS | 14 | 181.86 | 63.42 |
| 6.94 | GTB2108FL24 | CURVED PIECING SKIRT | 14 | 391.3 | 97.16 |
| 12.89 | GTB3012WT14 | LX ADJ WAIST FLOCKED PANT | 14 | 559.3 | 180.46 |
| 6.92 | GTT2032SU24 | KNOTTED STRAP TOP RUFFLE | 14 | 139.86 | 96.88 |
| 3.7 | LBT4925FLT4 | 2 IN 1 ROOSTER TEE | 14 | 97.86 | 51.8 |
| 4.04 | LBT4975FL14 | ALIGATOR CAR TEE | 14 | 139.86 | 56.56 |
| 2.44 | LGA4577FLT4 | KITKAT STRIPE BEANIE | 14 | 83.86 | 34.16 |
| 2.44 | LGA5786WT14 | CHARACTER FASHION BEANIE | 14 | 125.3 | 34.16 |
| 6.52 | LGG4566FLT4 | MOYA SPOT BABYGROW | 14 | 251.86 | 91.28 |
| 6.31 | LGG4933FL14 | ELLIE FLORAL BOW BABYGROW | 14 | 237.86 | 88.34 |
| 3.28 | GBA4929FL14 | SWEATER HEADBAND | 13 | 90.87 | 42.64 |
| 1.68 | GBA5280FL14 | SOLID LACE TRIM HEADBAND | 13 | 64.87 | 21.84 |
| 5.99 | GBB4143SU14 | 2 TONED NET SKIRT W/LEGS | 13 | 77.87 | 77.87 |
| 4.07 | GBB4721FLT4 | ANGL TRIM MELANGE LEGGING | 13 | 168.87 | 52.91 |
| 12.01 | GBO4742FLT4 | CANDACE SPOT JACKET | 13 | 389.87 | 156.13 |
| 3.76 | GKB4013SP14 | ESS CARAVAN STRP LEGGING | 13 | 103.87 | 48.88 |
| 5.4 | GKB444SP23 | LAWN TRIBAL SPOT CAPRI | 13 | 103.87 | 70.2 |
| 6.81 | GTB2036SU24 | TEXTURED SLD WOVEN PEDAL | 13 | 129.87 | 88.53 |
| 11.76 | GTB2109FL14 | KNIT WAIST DENIM PANT | 13 | 389.35 | 152.88 |
| 4.87 | GTB3011WT14 | 2X2 RIB PANT W PRINT TRIM | 13 | 298.35 | 63.31 |

| | | | | | |
|---|---|---|---|---|---|
| 7.85 | GTT3006WT14 | 2X2 HOODED TUNIC | 13 | 324.35 | 102.05 |
| 3.7 | LBB4624FLT4 | BARNYARD STRIPE RIB PANT | 13 | 129.87 | 48.1 |
| 6.41 | LBG4631FLT4 | BARNYARD STRIPE 2 IN 1 BG | 13 | 233.87 | 83.33 |
| 2.15 | LGA5348FL24 | HOLLY SPOT BEANIE | 13 | 90.35 | 27.95 |
| 3.01 | LGB3980SU24 | HULA PRINT PANT | 13 | 90.87 | 39.13 |
| 4.88 | LGG4434SU24 | WAIKIKI FLORAL ROMPER BG | 13 | 129.87 | 63.44 |
| 5.99 | LGG4491SU14 | ICE CREAM BUS ABBY FLR BG | 13 | 129.87 | 77.87 |
| 1.75 | BBA5657FL24 | BB WEAVE STRIPE BEANIE | 12 | 119.4 | 21 |
| 5.24 | BKA5573WT14 | BK BEAR SWEATER BEANIE | 12 | 203.4 | 62.88 |
| 1.75 | BKA5658FL24 | BK WEAVE STRIPE BEANIE | 12 | 119.4 | 21 |
| 6.41 | BBB4528FLT4 | EWAIST DENIM PANT | 12 | 239.88 | 76.92 |
| 5.88 | BBB4746FL14 | EWAIST CAMO TWILL PANT | 12 | 239.88 | 70.56 |
| 3.55 | BBT4990FL14 | ESS SLUB AIR BOX TEE | 12 | 108 | 42.6 |
| 7.23 | BKB4292SU24 | ADJ WAIST BALI SHORT | 12 | 119.88 | 86.76 |
| 10.11 | BKO4541FLT4 | QUILTED FLEECE JACKET | 12 | 239.88 | 121.32 |
| 16.23 | BKO5460WT14 | FLEECE PUFFY JACKET | 12 | 599.4 | 194.76 |
| 3.74 | BKT4263SU24 | ESS SUMMER ISLAND TEE | 12 | 71.88 | 44.88 |
| 4.1 | BKT4987FL14 | ESS LANDING ZONE TEE | 12 | 108 | 49.2 |
| 10.77 | BKT5443WT14 | BUFFALO CHECK WOVEN SHIRT | 12 | 359.4 | 129.24 |
| 5.27 | GBA4534SU14 | DENIM HAT WITH ANGLAISE | 12 | 119.88 | 63.24 |
| 1.87 | GBA5723WT14 | VELOUR HEADBAND | 12 | 107.4 | 22.44 |
| 1.74 | GBA5741WT24 | GLITTER STAR HEADBAND | 12 | 95.4 | 20.88 |
| 1.78 | GKA4690SU34 | CONTRAST FRILLED HBAND | 12 | 59.88 | 21.36 |
| 21.6 | GKAS88HLD3 | NESSA BOOT WITH DOTS | 12 | 119.88 | 259.2 |
| 1.72 | GTA2039SU24 | SKINNY HIPPIE GIRL HBAND | 12 | 59.88 | 20.64 |
| 2.82 | GBB4538SU14 | ESS LACE INSET BIKE SHORT | 12 | 95.88 | 33.84 |
| 3.55 | GBB5104FL14 | SOLID PANT W/ RIBBON TRIM | 12 | 155.88 | 42.6 |
| 7.02 | GBB5188FL14 | METALLIC NET SKIRT W/LEGS | 12 | 215.88 | 84.24 |
| 3.41 | GBB915FL13 | ESS 2/2 PANT/JEWEL BUTTON | 12 | 71.88 | 40.92 |
| 6.52 | GBD4165SU14 | CRUSH DYE SLUB DRESS | 12 | 119.88 | 78.24 |
| 10.8 | GBO4969WT24 | FT HOODED PULLOVER SWTR | 12 | 347.4 | 129.6 |
| 5.2 | GKA5550WT14 | LX TEXTURED SWTR HAT | 12 | 191.4 | 62.4 |
| 5.42 | GKT4393SU24 | ORINOKO LAYER LOOK TUNIC | 12 | 119.88 | 65.04 |
| 2.03 | GTA3020WT14 | SPOTTY HEADBAND WITH BOW | 12 | 107.4 | 24.36 |
| 12.57 | GTB2106FL24 | BELTED 16 W CORD PANT | 12 | 395.4 | 150.84 |
| 8.97 | GTO2052FLT4 | DENIM MOTO VEST | 12 | 191.88 | 107.64 |
| 6.41 | LBG4645FLT4 | HORSE POUCH PCKT BABYGROW | 12 | 215.88 | 76.92 |
| 6.17 | LGG4586FLT4 | SIDE SNAP CAT BABYGROW | 12 | 215.88 | 74.04 |
| 3.44 | BKA4342SU14 | CRACKER LEAF CAMO SUNHAT | 11 | 109.89 | 37.84 |
| 6.45 | BBB4497FL24 | E WAIST CHECK PANT | 11 | 307.45 | 70.95 |
| 6.42 | BBB5014FL14 | EWAIST DENIM PANT | 11 | 219.89 | 70.62 |
| 3.2 | BBT4266SU24 | ESS ISLAND PARADISE TEE | 11 | 65.89 | 35.2 |
| 3.45 | BBT4514FLT4 | LS SCIENCE RULES TEE | 11 | 98.89 | 37.95 |
| 5.06 | BBT4517FLT4 | SS COOL NERD APPLIQUE TEE | 11 | 142.89 | 55.66 |
| 4.23 | BBT5008FL14 | ONE POCKET GML HOODY | 11 | 142.89 | 46.53 |
| 7.58 | BKB4745FL14 | ADJ WST CAMO TWILL PANT | 11 | 252.89 | 83.38 |
| 1.72 | GKA4446SU24 | MACAW FLORAL HEADBAND | 11 | 54.89 | 18.92 |

| | | | | | |
|---|---|---|---|---|---|
| 3.66 | GBB4149SU14 | TRIPLE TIER CAPRI | 11 | 109.89 | 40.26 |
| 5.32 | GBB5098FL14 | PIECED PRINT SKIRT W/LEGS | 11 | 142.89 | 58.52 |
| 6.62 | GBD5226FL24 | 16 WALE CORD DRESS | 11 | 329.45 | 72.82 |
| 5.36 | GBT5215FL24 | SLUB HOODED TOP | 11 | 219.45 | 58.96 |
| 4.2 | GKT4124SU14 | MERMAID APPLQ TANK | 11 | 109.89 | 46.2 |
| 10.45 | GTB2110FL24 | FLORAL STRETCH TWILL | 11 | 384.45 | 114.95 |
| 8.88 | GTB3035WT24 | FRENCH TERRY PANT W CUFFS | 11 | 307.45 | 97.68 |
| 6.81 | GTT3030WT24 | GLITTER STAR WRAP CARD | 11 | 252.45 | 74.91 |
| 15.19 | GTT3032WT24 | SWEATER TRIM F/T HOODY | 11 | 406.45 | 167.09 |
| 3.7 | LBT4607FLT4 | 2 IN 1 COW TEE | 11 | 76.89 | 40.7 |
| 2.82 | LGA4948FL14 | ELLIE FLORAL BOOTIE | 11 | 76.89 | 31.02 |
| 4.41 | BBA5465WT14 | BB CORD HOUND SHERPA HAT | 10 | 159.5 | 44.1 |
| 4.83 | BBA5574WT14 | BB BEAR SWEATER BEANIE | 10 | 169.5 | 48.3 |
| 4.22 | BKA5021FL14 | BK CABLE SWEATER BEANIE | 10 | 99.9 | 42.2 |
| 7.28 | BBB5450WT14 | RIB WAIST CRACKER PANT | 10 | 299.5 | 72.8 |
| 6.73 | BBB5452WT14 | EWAIST CUFF DENIM PANT | 10 | 279.5 | 67.3 |
| 6.42 | BBB5455WT14 | EWAIST CORD CARGO PANT | 10 | 289.5 | 64.2 |
| 7.28 | BBB5457WT14 | RIB WAIST FLEECE PANT | 10 | 249.5 | 72.8 |
| 14.95 | BBO5079WT14 | MARLED ARM STRIPE SWEATER | 10 | 399.5 | 149.5 |
| 7.75 | BBO5459WT14 | FLEECE HOODY VEST | 10 | 299.5 | 77.5 |
| 12.07 | BBO5461WT14 | FLEECE PUFFY JACKET | 10 | 499.5 | 120.7 |
| 7.81 | BBO5804WT14 | REVERSE FRNCH TERRY HOODY | 10 | 299.5 | 78.1 |
| 3.66 | BBT4204SU14 | APPLIQUE PARROT TEE | 10 | 99.9 | 36.6 |
| 3.2 | BBT4272SU24 | ESS SLUB FUN VERBIAGE TEE | 10 | 59.9 | 32 |
| 3.55 | BBT4998FL14 | ESS HIDE & SEEK TEE | 10 | 90 | 35.5 |
| 5.47 | BBT5010FL14 | THERMAL SLUB KANGA HENLEY | 10 | 129.9 | 54.7 |
| 3.64 | BBT5440WT14 | 2-FER FIERY STRIPE TEE | 10 | 189.5 | 36.4 |
| 4.01 | BBT5442WT14 | COLORBLOCKED SNOW TEE | 10 | 189.5 | 40.1 |
| 8.14 | BBT5444WT14 | BUFFALO CHECK WOVEN SHIRT | 10 | 299.5 | 81.4 |
| 8.44 | BKB3320SPT4 | SNOW WASH FLC CUFFED PANT | 10 | 99.9 | 84.4 |
| 4.45 | BKB4192SU14 | ESS CRACKER SHORT | 10 | 79.9 | 44.5 |
| 10.55 | BKO5321FL24 | DENIM VEST W/ SLV JACKET | 10 | 359.5 | 105.5 |
| 4.08 | BKT4211SU14 | PRINTED LIZARD APPLQE TEE | 10 | 99.9 | 40.8 |
| 3.74 | BKT4267SU24 | ESS TAHITI PRINT TEE | 10 | 59.9 | 37.4 |
| 5.62 | BKT4520FLT4 | SS COOL NERD APPLIQUE TEE | 10 | 129.9 | 56.2 |
| 1.9 | GBAX022FL14 | GB LACE SOLID SOCK | 10 | 59.5 | 19 |
| 3.81 | GKA4448SU24 | SOLID TEXTURED HAT | 10 | 99.9 | 38.1 |
| 3.29 | GBB4113SU14 | ESS MESH TRIM SOLID CAPRI | 10 | 79.9 | 32.9 |
| 4.09 | GBB4365SU24 | SOLID BELL W WOVEN DETAIL | 10 | 99.9 | 40.9 |
| 7.66 | GBB5096FL14 | EWAIST PIECED DENIM | 10 | 159.9 | 76.6 |
| 6.08 | GBT4359SU24 | TEXTURED LINEN LOOK TUNIC | 10 | 99.9 | 60.8 |
| 5.06 | GBT4717FLT4 | SS MELANGE TUNIC | 10 | 129.9 | 50.6 |
| 8.97 | GKB4395SU24 | ADJ WAIST EMB DENIM SHORT | 10 | 99.9 | 89.7 |
| 3.97 | GKT434SP23 | ESS ELEPHANT FLOWER TEE | 10 | 59.9 | 39.7 |
| 4.39 | GTB2001SU14 | PEBBLE CAPRI W/ MESH | 10 | 79.9 | 43.9 |
| 4.75 | GTB2006SU14 | APPLQ/EMB CAPRI W/ RUFFLE | 10 | 99.9 | 47.5 |
| 5.33 | GTD2008SU14 | STRIPED RUFFLE MAXI DRESS | 10 | 79.9 | 53.3 |

| | | | | | |
|---|---|---|---|---|---|
| 8.89 | GTD2009SU14 | CRUSH DYE SLUB DRESS | 10 | 99.9 | 88.9 |
| 7.98 | GTD2037SU24 | MXD PRINT LAWN MAXI DRESS | 10 | 99.9 | 79.8 |
| 7.63 | GTT2080FL14 | LS PIECED PRINT TUNIC | 10 | 179.9 | 76.3 |
| 9.63 | GTT3007WT14 | LX FLOCKED VELOUR TUNIC | 10 | 299.5 | 96.3 |
| 2.44 | LBA5117WT14 | CRITTER STRIPE BOOTIES | 10 | 89.5 | 24.4 |
| 3.8 | LBB5960WT14 | 1X1 RIB SHERPA FEET PANT | 10 | 149.5 | 38 |
| 6.19 | LBG5025FL14 | BIG BIKE STRIPE BABYGROW | 10 | 169.9 | 61.9 |
| 3.83 | LBT5414WT14 | CRITTERS GRAPHIC TEE | 10 | 129.5 | 38.3 |
| 2.78 | LGA4583FLT4 | KITKAT STRIPE BOOTIE | 10 | 69.9 | 27.8 |
| 2.14 | LGA4945FL14 | ELLIE FLORAL BEANIE | 10 | 49.9 | 21.4 |
| 3.29 | LGB4489SU14 | ABBY FLORAL RUFFLE SHORT | 10 | 79.9 | 32.9 |
| 5.01 | LGB5651WT14 | BLUEBELL FLORAL PANT | 10 | 169.5 | 50.1 |
| 4.95 | LGG3659SU14 | ZIGGY PRINT TANK BABYGROW | 10 | 99.9 | 49.5 |
| 7 | LGG5662WT14 | THUMPER STRIPE RUFFLE BG | 10 | 229.5 | 70 |
| 4.01 | LGT5663WT14 | SWAN MESH SLEEVE TOP | 10 | 129.5 | 40.1 |
| 3.78 | BBB4199SU14 | ESS BRUSHED FLEECE SHORT | 9 | 71.91 | 34.02 |
| 6.2 | BBB4530FLT4 | EWAIST STRIPE FLEECE PANT | 9 | 161.91 | 55.8 |
| 3.17 | BBT4181SU14 | ESS CHEST FLORA TEE | 9 | 53.91 | 28.53 |
| 3.44 | BBT4260SU24 | ESS TIE DYE STRIPE TEE | 9 | 53.91 | 30.96 |
| 3.46 | BBT5425WT14 | ESS VERTICAL FLAG TEE | 9 | 81 | 31.14 |
| 3.71 | BKT4184SU14 | ESS PARROT ON A BIKE TEE | 9 | 53.91 | 33.39 |
| 3.71 | BKT4186SU14 | ESS AMAZON VERTICAL TEE | 9 | 53.91 | 33.39 |
| 3.36 | BKT4280SU24 | 3 COLOR BEACH SHACK TANK | 9 | 89.91 | 30.24 |
| 1.61 | GBA4175SU14 | SLD HEADBAND W/MESH SPRKL | 9 | 44.91 | 14.49 |
| 4.5 | GBAX014FLT4 | SNOW DROP FOOTLESS TIGHT | 9 | 89.91 | 40.5 |
| 3.98 | GTA2090FL14 | SWEATER HEADBAND | 9 | 62.91 | 35.82 |
| 3.29 | GBB4121SU14 | ESS WATER STRIPE CAPRI | 9 | 71.91 | 29.61 |
| 6.56 | GBB5692WT14 | SEQUIN PATCH DENIM PANT | 9 | 233.55 | 59.04 |
| 3.43 | GBB839SU13 | SOLID CAPRI/B-FLY FRILLS | 9 | 71.91 | 30.87 |
| 6.18 | GBD4408SU34 | APPLQ DRESS W/ FRILLS | 9 | 89.91 | 55.62 |
| 5.17 | GBO5245FL24 | SLUB FRENCH TERRY VEST | 9 | 179.55 | 46.53 |
| 15.93 | GBO5552WT14 | LX LONG SWEATER CARDIGAN | 9 | 413.55 | 143.37 |
| 17.29 | GBO5745WT14 | GLITTER STAR PUFFA JACKET | 9 | 449.55 | 155.61 |
| 3.17 | GBT4107SU14 | ESS SS STRP-SBREEZE TUNIC | 9 | 53.91 | 28.53 |
| 5.49 | GBT4155SU14 | SPLIT BODICE LAWN TUNIC | 9 | 89.91 | 49.41 |
| 6.66 | GBT5737WT14 | LX FLOCKED VELOUR TUNIC | 9 | 233.55 | 59.94 |
| 4.89 | GKB403SP23 | SJ/LAWN WD LEG LACE PANT | 9 | 89.91 | 44.01 |
| 6.03 | GKD641FLT3 | STRETCH FLEECE PINNY | 9 | 89.91 | 54.27 |
| 3.3 | GKT4389SU24 | ESS TROPIC/ORINOKO TANK | 9 | 53.91 | 29.7 |
| 7.66 | GTT2003SU14 | SEQUIN HEART TUNIC W/MESH | 9 | 89.91 | 68.94 |
| 6.88 | GTT2101FL24 | SLUB TUNIC WITH LACE | 9 | 206.55 | 61.92 |
| 2.08 | LBA5034FL14 | NOVA STAR BEANIE | 9 | 44.91 | 18.72 |
| 4.81 | LBB5959WT14 | WALE CORD FLEECE PANT | 9 | 134.55 | 43.29 |
| 4.6 | LBG3635SU14 | SAILBOAT PIRATE BODYSUIT | 9 | 89.91 | 41.4 |
| 6.04 | LBG4689SU24 | SLUB RIBBIT POLO BG | 9 | 89.91 | 54.36 |
| 6.76 | LBO5112WT14 | FLEECE SHERPA HOOD JACKET | 9 | 206.55 | 60.84 |
| 13.01 | LBO5575WT14 | SWEATER WITH FLEECE HOOD | 9 | 323.55 | 117.09 |

| | | | | | |
|---|---|---|---|---|---|
| 7.59 | LBT5777WT14 | 2FER BUFFALO CHECK TEE | 9 | 179.55 | 68.31 |
| 3.95 | LGB4549FLT4 | KITTY KNEE PATCH PANT | 9 | 89.91 | 35.55 |
| 5.38 | LGO4942FL14 | UNBRUSHED FLC OUTERWEAR | 9 | 107.91 | 48.42 |
| 5.71 | BBB3446SP14 | SIDE PCKTS FLC PANT | 8 | 63.92 | 45.68 |
| 5.73 | BBB4221SU14 | EWAIST CRACKER SHORT | 8 | 79.92 | 45.84 |
| 9.31 | BBO5265FL14 | QUILTED FLEECE HOOD VEST | 8 | 183.92 | 74.48 |
| 4.04 | BBT294WTR2 | THERMAL "R" APPLQ TEE | 8 | 15.92 | 32.32 |
| 3.17 | BBT4179SU14 | ESS SOUTH STRIPE TEE | 8 | 47.92 | 25.36 |
| 5.12 | BBT4208SU14 | S AMERICAN WORLD TEE | 8 | 47.92 | 40.96 |
| 3.2 | BBT4262SU24 | ESS SLUB DRAGON PRINT TEE | 8 | 47.92 | 25.6 |
| 3.27 | BBT5300FL24 | ESS SS ELEPHANT SLUB TEE | 8 | 72 | 26.16 |
| 4.31 | BBT5308FL24 | PCD THRML COLORBLOCK TEE | 8 | 143.6 | 34.48 |
| 4.49 | BKB4273SU24 | ESS CRACKR DOT WAVE SHORT | 8 | 63.92 | 35.92 |
| 7.54 | BKB4288SU24 | ADJ WAIST CRACKER SHORT | 8 | 79.92 | 60.32 |
| 3.74 | BKT4271SU24 | ESS SLUB FUN VERBIAGE TEE | 8 | 47.92 | 29.92 |
| 4.1 | BKT4997FL14 | ESS HIDE & SEEK TEE | 8 | 72 | 32.8 |
| 3.44 | GBA4157SU14 | SEABREEZE SUNHAT | 8 | 79.92 | 27.52 |
| 1.68 | GBAX015FLT4 | GB EYELET RUFFLE SOCK | 8 | 31.92 | 13.44 |
| 2.45 | GBAX027FL24 | GB 3PK CORE SCALLOP SOCK | 8 | 63.6 | 19.6 |
| 1.7 | GKA4174SU14 | SLD HEADBAND W/MESH SPRKL | 8 | 39.92 | 13.6 |
| 5.93 | GKA5556WT14 | LX TEXTURED SWTR SCARF | 8 | 159.6 | 47.44 |
| 3.67 | GKA5767WT14 | FLOCKED FLOWER VELOUR BAG | 8 | 119.6 | 29.36 |
| 1.68 | GKAX013FLT4 | GK EYELET RUFFLE SOCK | 8 | 31.92 | 13.44 |
| 3.3 | GBB4022SU24 | ESS TROPIC PEDAL | 8 | 63.93 | 26.41 |
| 6.65 | GBB5483FL24 | JIE JIE EMB MESH SKIRT | 8 | 199.6 | 53.2 |
| 5.98 | GBB5486FL24 | FLORAL STRETCH TWILL | 8 | 239.6 | 47.84 |
| 6.73 | GBB5653FL24 | KNIT WAIST DENIM PANT | 8 | 215.6 | 53.84 |
| 7.41 | GBD3591SPT4 | SS ORIGAMI HOODED DRS/PLT | 8 | 79.92 | 59.28 |
| 5.93 | GBD4131SU14 | EMB TRIPLE TIER KNT DRESS | 8 | 79.92 | 47.44 |
| 8.51 | GBD4733FLT4 | LS HOODED DRESS | 8 | 199.92 | 68.08 |
| 3.11 | GBT4109SU14 | ESS FLORAL FRILL TOP | 8 | 47.92 | 24.88 |
| 2.77 | GBT4390SU24 | ESS TROPIC/ORINOKO TANK | 8 | 47.92 | 22.16 |
| 3.29 | GKB4114SU14 | ESS MESH FRILL SLD SHORT | 8 | 63.92 | 26.32 |
| 4.34 | GKT409SP23 | FLR GRAPHC/TRIBL SPT BAND | 8 | 63.92 | 34.72 |
| 1.97 | GTA2112FL24 | ROCOCCO  FLORAL HEADBAND | 8 | 79.6 | 15.76 |
| 18.97 | GTO3001WT14 | LX LONG SWEATER CARDIGAN | 8 | 399.6 | 151.76 |
| 4.06 | GTT2000SU14 | FLORAL FRILL TOP | 8 | 79.92 | 32.48 |
| 4.68 | LBB5033FL14 | DENIM PANT | 8 | 71.92 | 37.44 |
| 5.69 | LBG4737SU24 | SLUB WAVE PALM PCD BG | 8 | 79.92 | 45.52 |
| 1.75 | LGA4582FLT4 | FLORAL CAT HEADBAND | 8 | 39.92 | 14 |
| 1.45 | LGA4947FL14 | SMOCKED ELLIE HEADBAND | 8 | 39.92 | 11.6 |
| 3.49 | LGB5285FL24 | BUG PRINT HOLLY SPOT PANT | 8 | 103.6 | 27.92 |
| 4.54 | LGB5287FL24 | FRILL TRIM CORD PANT | 8 | 119.6 | 36.32 |
| 5.4 | LGD4567FLT4 | TRIPLE RUFFLE DRESS | 8 | 135.92 | 43.2 |
| 3.54 | LGT4488SU14 | ZIGGY RUFFLE SLEEVE TOP | 8 | 79.92 | 28.32 |
| 3.92 | LGT5275FL24 | SNAIL HOLLY SPOT TEE | 8 | 103.6 | 31.36 |
| 3.44 | BBA4343SU14 | CRACKER LEAF CAMO SUNHAT | 7 | 69.93 | 24.08 |

| | | | | | |
|---|---|---|---|---|---|
| 3.44 | BKA4417SU24 | BALI CANVAS HAT | 7 | 48.93 | 24.08 |
| 7.33 | BBO5319FL24 | REVERSE FRNCH TERRY HOODY | 7 | 209.65 | 51.31 |
| 3.17 | BBT4191SU14 | ESS BABY PIRANHA TEE | 7 | 41.93 | 22.19 |
| 3.54 | BBT4213SU14 | LIZARD APPLIQUE TEE | 7 | 69.93 | 24.78 |
| 3.2 | BBT4268SU24 | ESS TAHITI PRINT TEE | 7 | 41.93 | 22.4 |
| 9.72 | BBT4499FL24 | CHECK CORD WOVEN SHIRT | 7 | 209.65 | 68.04 |
| 3.82 | BBT4521FLT4 | LS 2 IN 1 HEADPHONE HOODY | 7 | 97.93 | 26.74 |
| 3.26 | BBT5297FL24 | ESS GIRAFFE SPEEDY SJ TEE | 7 | 63 | 22.82 |
| 3.87 | BBT5315FL24 | THERMAL SLV MAP ART TEE | 7 | 118.65 | 27.09 |
| 4.18 | BBT5316FL24 | 2FER CAMEL SADDLE TEE | 7 | 118.65 | 29.26 |
| 4.94 | BKB4196SU14 | ESS ARROW TWILL SHORT | 7 | 55.93 | 34.58 |
| 5.98 | BKB4290SU24 | EWAIST YARN STRIPE SHORT | 7 | 69.93 | 41.86 |
| 5.68 | BKT4207SU14 | SOUTH AMERICAN WORLD TEE | 7 | 69.93 | 39.76 |
| 6.42 | BKT4209SU14 | YARN STRIPE W/ DIP DYE | 7 | 69.93 | 44.94 |
| 1.61 | GBA842SU13 | ZIG ZAG HEADSCARF | 7 | 34.93 | 11.27 |
| 5.5 | GKA4533SU14 | DENIM HAT WITH ANGLAISE | 7 | 69.93 | 38.5 |
| 1.71 | GTA2091FL14 | PRINT HEADBAND | 7 | 34.93 | 11.97 |
| 3.3 | GBB4024SU24 | ESS ORINOKO PEDAL | 7 | 55.93 | 23.1 |
| 5.66 | GBB5478FL24 | ROYAL ROSE REVERSE PANT | 7 | 174.65 | 39.62 |
| 6.59 | GBO4709FLT4 | DENIM MOTO VEST | 7 | 90.93 | 46.13 |
| 3 | GBT4388SU24 | ESS FLOWER GRAPHIC TANK | 7 | 41.93 | 21 |
| 4.18 | GKB910HLD3 | BIRD APPLQ/ PINNY LEGGING | 7 | 69.93 | 29.26 |
| 6.18 | GKO402SP23 | SJ/LAWN CARDIGAN | 7 | 55.93 | 43.26 |
| 9.44 | GKO4411SU24 | 3D FLOWER BIKINI | 7 | 69.93 | 66.08 |
| 4.62 | GKT429SP23 | TIERED LAWN TUNIC | 7 | 55.93 | 32.34 |
| 7.82 | GTB3010COR4 | DENIM PANT W STAR BUTTON | 7 | 139.65 | 54.74 |
| 10.92 | GTB3013WT14 | SEQUIN PATCH RIB DENIM | 7 | 209.65 | 76.44 |
| 1.86 | LBA4656FLT4 | BARNYARD STRIPE BEANIE | 7 | 34.93 | 13.02 |
| 2.82 | LBA5039FL14 | HARLEY STRIPE BOOTIE | 7 | 48.93 | 19.74 |
| 3.54 | LBB4504SU14 | SLUB PIRATE STRIPE PANT | 7 | 69.93 | 24.78 |
| 6.36 | LBB4654FLT4 | CRACKER DUNGAREE | 7 | 125.93 | 44.52 |
| 5.45 | LBO5030FL14 | UNBRUSHED FLEECE JACKET | 7 | 83.93 | 38.15 |
| 3.56 | LBT3965SU24 | PENGUIN SURF TEE | 7 | 69.93 | 24.92 |
| 3.82 | LGB4550FLT4 | KITKAT STRIPE PANT | 7 | 69.93 | 26.74 |
| 4.88 | LGG4590SU24 | MIX HENLEY RUFFLE BSUIT | 7 | 69.93 | 34.16 |
| 6.59 | LGO5288FL24 | FLEECE MIXED SWEATER | 7 | 195.65 | 46.13 |
| 3.44 | BBA4418SU24 | BALI CANVAS HAT | 6 | 41.94 | 20.64 |
| 2.43 | BBA5020FL14 | BB STRIPED BEANIE | 6 | 41.94 | 14.58 |
| 3.2 | BKA5082WT14 | BK SWEATER BEANIE | 6 | 101.7 | 19.2 |
| 6.65 | BKA5084WT14 | BK SWEATER SCARF | 6 | 119.7 | 39.9 |
| 9.37 | BBO5320FL24 | DENIM VEST W SLV JACKET | 6 | 215.7 | 56.22 |
| 3.17 | BBT4187SU14 | ESS AMAZON VERTICAL TEE | 6 | 35.94 | 19.02 |
| 6.83 | BBT4206SU14 | LEAF CAMO WOVEN SHIRT | 6 | 35.94 | 40.98 |
| 5.85 | BBT4210SU14 | YARN STRIPE W/ DIPDYE TEE | 6 | 59.94 | 35.1 |
| 3.2 | BBT4270SU24 | ESS SUN SKY SAND TEE | 6 | 35.94 | 19.2 |
| 3.97 | BBT4523FLT4 | SS ARGYLE ROCK HENLEY | 6 | 59.94 | 23.82 |
| 3.55 | BBT4988FL14 | ESS LANDING ZONE TEE | 6 | 54 | 21.3 |

| | | | | | |
|---|---|---|---|---|---|
| 3.61 | BBT4994FL14 | ESS IMAGINARY FRIEND TEE | 6 | 54 | 21.66 |
| 3.55 | BBT4996FL14 | ESS TREE HOUSE TEE | 6 | 54 | 21.3 |
| 4.66 | BBT5036FL14 | REVERSE FRENCH TERRY TEE | 6 | 71.94 | 27.96 |
| 3.63 | BBT5304FL24 | ESS GEO STRIPE HOODY TEE | 6 | 54 | 21.78 |
| 5.11 | BBT5310FL24 | MODE STRIPE THERMAL HOODY | 6 | 107.7 | 30.66 |
| 4.44 | BKB4198SU14 | ESS BRUSHED FLEECE SHORT | 6 | 47.94 | 26.64 |
| 3.71 | BKT4178SU14 | ESS SOUTH STRIPE TEE | 6 | 35.94 | 22.26 |
| 3.7 | GBA4449SU24 | SOLID TEXTURED HAT | 6 | 59.94 | 22.2 |
| 3.7 | GBA5385FL24 | SPOT/STRIPE BEANIE | 6 | 89.7 | 22.2 |
| 4.1 | GBAX025FL24 | GB SOLID FOOTLESS TIGHT | 6 | 77.7 | 24.6 |
| 2.45 | GBAX029COR4 | GB 3PK CORE BALLERINA SCK | 6 | 47.7 | 14.7 |
| 8.06 | GKAS79WT13 | FRANCES HANDBAG | 6 | 59.94 | 48.36 |
| 5.91 | GKAS80WT13 | MAUDE EAR MUFFS | 6 | 17.94 | 35.46 |
| 2.02 | GTA2038SU24 | MACAW FLORAL WIDE HBAND | 6 | 35.94 | 12.12 |
| 3.3 | GBB4386SU24 | MACAW FLORAL PEDAL | 6 | 59.94 | 19.8 |
| 4.51 | GBB4406SU24 | SOLID PEDAL WITH  FRILLS | 6 | 59.94 | 27.06 |
| 4.02 | GBT4129SU14 | ASYM MIXED PRINT TUNIC | 6 | 59.94 | 24.12 |
| 4.88 | GBT4141SU14 | SEQUIN HEART TUNIC W/MESH | 6 | 59.94 | 29.28 |
| 4.76 | GBT4410SU34 | SLUB EMB CONTRAST TANK | 6 | 59.94 | 28.56 |
| 5.19 | GBT4416SU24 | KNOTTED STRAP TOP | 6 | 59.94 | 31.14 |
| 3.88 | GKB3782SP24 | ESS FR TRRY RUF LONG SHRT | 6 | 47.94 | 23.28 |
| 3.86 | GKB436SP23 | ESS ELLY CAPRI LEGGING | 6 | 35.94 | 23.16 |
| 8.13 | GKB4710FLT4 | DENIM PATCH PANT | 6 | 119.94 | 48.78 |
| 4.06 | GKB786FL23 | RUCHED STRIPE LEGGING | 6 | 59.94 | 24.36 |
| 8.93 | GKD360SP13 | LS DRESS/ASYM PRINT RUFFL | 6 | 59.94 | 53.58 |
| 4.4 | GKT446SP23 | FLR APPLQ TOP/ RUFFL SLVS | 6 | 47.94 | 26.4 |
| 6.23 | GTB2007SU14 | ASSYM PRINT SKIRT | 6 | 59.94 | 37.38 |
| 10.15 | GTB2035SU24 | ADJ WAIST EMB DENIM SHORT | 6 | 59.94 | 60.9 |
| 5.35 | GTT2041SU34 | HOLA FLOWER TANK | 6 | 59.94 | 32.1 |
| 2.64 | LBA3640SU14 | STRIPE CAP | 6 | 47.94 | 15.84 |
| 7.16 | LBB4587SU24 | DENIM CONTRAST DUNGAREE | 6 | 59.94 | 42.96 |
| 4.69 | LBB4629FLT4 | DENIM GML WAISTBAND PANT | 6 | 71.94 | 28.14 |
| 5.52 | LBG4103SU14 | ART&APPLIQUE KNEE BG | 6 | 59.94 | 33.12 |
| 6.06 | LBO4655FLT4 | FLEECE PEEK A BOO JACKET | 6 | 83.94 | 36.36 |
| 3.56 | LBT3964SU24 | PALM BEETLE ROADTRIP TANK | 6 | 59.94 | 21.36 |
| 3.54 | LBT4503SU14 | PIRATE HIPPO TEE | 6 | 29.94 | 21.24 |
| 2.68 | LGA5289FL24 | PEARL KNOT HEART BEANIE | 6 | 59.7 | 16.08 |
| 7.48 | LGA5861WT14 | LX VELOUR LACE BLANKET | 6 | 149.7 | 44.88 |
| 5.84 | LGB4932FL14 | DENIM MIXED DUNGAREE | 6 | 95.94 | 35.04 |
| 4.79 | LGD3985SU24 | LAWN HULA PRINT DRESS | 6 | 59.94 | 28.74 |
| 3.74 | LGT4912FL14 | QUIRKY RAT SPOT SLV TEE | 6 | 59.94 | 22.44 |
| 3.03 | BBA5083WT14 | BB SWEATER BEANIE | 5 | 84.75 | 15.15 |
| 2.03 | BBA843FL23 | BB RIB BEANIE | 5 | 29.95 | 10.15 |
| 10.17 | BBO5038FL14 | CABLE KNIT FLEECE SWEATER | 5 | 139.95 | 50.85 |
| 3.17 | BBT4183SU14 | ESS CAMO CHAMELEON TEE | 5 | 29.95 | 15.85 |
| 3.17 | BBT4189SU14 | ESS BINOCULARS TEE | 5 | 29.95 | 15.85 |
| 9.89 | BKB073SU23 | BELTED CHECKED SHORT | 5 | 49.95 | 49.45 |

| | | | | | |
|---|---|---|---|---|---|
| 4.84 | BKB098SU13 | ESS CRACKER SHORT | 5 | 29.95 | 24.2 |
| 6.43 | BKB122FL13 | ESS DENIM PANT | 5 | 49.95 | 32.15 |
| 4.94 | BKB4194SU14 | ESS DENIM SHORT | 5 | 39.95 | 24.7 |
| 11.67 | BKO5263FL14 | QUILTED FLEECE HOOD VEST | 5 | 114.95 | 58.35 |
| 3.98 | BKT3394SPT4 | SS GML TWL SUPER 8 APP T | 5 | 49.95 | 19.9 |
| 3.69 | BKT3676SP24 | ESS CHST GEO STRPE TEE | 5 | 29.95 | 18.45 |
| 3.98 | BKT4259SU24 | ESS TIE DYE STRIPE TEE | 5 | 29.95 | 19.9 |
| 3.74 | BKT4261SU24 | ESS SLUB DRAGON PRINT TEE | 5 | 29.95 | 18.7 |
| 7.53 | BKT4275SU24 | WAVE STRIPE DOT POLO | 5 | 49.95 | 37.65 |
| 5.2 | GBA5554WT14 | LX TEXTURED SWTR HAT | 5 | 79.75 | 26 |
| 1.5 | GBA841SU13 | JIE JIE HEADBAND | 5 | 14.95 | 7.5 |
| 8.5 | GBAS28SU23 | LIL SUZY ATHLETIC SANDAL | 5 | 49.95 | 42.5 |
| 1.61 | GKA650SU13 | ZIG ZAG HEADSCARF | 5 | 24.95 | 8.05 |
| 2.83 | GBB4115SU14 | ESS MESH FRILL SLD SHORT | 5 | 39.95 | 14.15 |
| 3.29 | GBB4117SU14 | ESS PEBBLE CAPRI W/MESH | 5 | 39.95 | 16.45 |
| 6.17 | GBB4402SU24 | MUSLN SKRT W MACAW RUFFLE | 5 | 49.95 | 30.85 |
| 6.24 | GBD522SPT3 | STRPE/FLORA BIG BOW DRESS | 5 | 49.95 | 31.2 |
| 3.8 | GBT4127SU14 | UNDER THE SEA HI-LO TUNIC | 5 | 39.95 | 19 |
| 3.82 | GBT4759FLT4 | SS SPOTTED LOVE TUNIC | 5 | 59.95 | 19.1 |
| 3.35 | GKO4592SU24 | ESS SJ CARDI | 5 | 29.95 | 16.75 |
| 4.46 | GKT365SP13 | PIECED TUNIC/SIDE RUCHING | 5 | 39.95 | 22.3 |
| 4.4 | GKT412SP23 | ESS TRIBAL SPT LAWN TUNIC | 5 | 24.95 | 22 |
| 4.23 | GKT811FL23 | FITTED TOP WITH BOWS | 5 | 49.95 | 21.15 |
| 4.4 | GTB2030SU24 | TROPIC PEDAL | 5 | 49.95 | 22 |
| 4.04 | LBB5031FL14 | FLEECE NOVA STAR PANT | 5 | 49.95 | 20.2 |
| 8.12 | LBB5032FL14 | DENIM GML CUFF DUNGAREE | 5 | 84.95 | 40.6 |
| 5.69 | LBG4443SU24 | SLUB WAVE MIXED BG | 5 | 49.95 | 28.45 |
| 2.84 | LGB3978SU24 | MESH BROEKI | 5 | 39.95 | 14.2 |
| 4.14 | LGB4490SU14 | CINCHED DIP DYE PANT | 5 | 24.95 | 20.7 |
| 3.37 | LGB4930FL14 | HOLLY SPOT RUFFLE PANT | 5 | 49.95 | 16.85 |
| 5.34 | LGG3982SU24 | MESH DOUBLE RUFFLE BSUIT | 5 | 49.95 | 26.7 |
| 4.81 | LGT4547FLT4 | CATS MEOW ART TUNIC | 5 | 49.95 | 24.05 |
| 2.21 | BBA4546FLT4 | BB HEADPHONE BEANIE | 4 | 31.96 | 8.84 |
| 4.62 | BKA5655FL24 | BK FLANNEL CHK SHERPA HAT | 4 | 59.8 | 18.48 |
| 4.27 | BBB4197SU14 | ESS ARROW TWILL SHORT | 4 | 31.96 | 17.08 |
| 6.86 | BBB4218SU14 | EWAIST TIGER STRIPE SHORT | 4 | 39.96 | 27.44 |
| 5.73 | BBB4224SU14 | EWAIST BIRDS TWILL SHORT | 4 | 39.96 | 22.92 |
| 6.94 | BBB4532FLT4 | EWAIST CRACKER LINED PANT | 4 | 87.96 | 27.76 |
| 7.62 | BBB978HLD3 | KNIT WST WEAVE TWILL PANT | 4 | 39.96 | 30.48 |
| 3.17 | BBT4185SU14 | ESS PARROT ON A BIKE TEE | 4 | 23.96 | 12.68 |
| 3.45 | BBT4512FLT4 | LS REVERSE SLV STRIPE TEE | 4 | 43.96 | 13.8 |
| 6.07 | BKB3513SU14 | SOUTH COAST BOARDSHORT | 4 | 39.96 | 24.28 |
| 4.31 | BKT3694SP24 | PRKR APLQE TEE | 4 | 31.96 | 17.24 |
| 8.87 | BKT4205SU14 | LEAF CAMO GML WOVEN SHIRT | 4 | 23.96 | 35.48 |
| 1.87 | GBA3929SP14 | MOONRISE FLR HEADBAND | 4 | 19.96 | 7.48 |
| 3.7 | GBA4445SU24 | MACAW FLORAL SUNHAT | 4 | 39.96 | 14.8 |
| 3.14 | GBA769SU13 | MIXED PRINT LAWN SUNHAT | 4 | 39.96 | 12.56 |

| | | | | | |
|---|---|---|---|---|---|
| 12.36 | GBAS91SP23 | LIL LISA TEXT BALLET | 4 | 39.96 | 49.44 |
| 3.09 | GKA4450SU24 | MIXED PRINT BAG | 4 | 39.96 | 12.36 |
| 4.25 | GBB0002COR4 | ESS SKINNY STRETCH DENIM | 4 | 31.96 | 17 |
| 3.2 | GBB305HLD3 | ESS JOLLY JUMPER LEGGING | 4 | 23.96 | 12.8 |
| 4.51 | GBB4123SU14 | ESS DENIM SHORT W/ MESH | 4 | 31.96 | 18.04 |
| 8.01 | GBO4412SU24 | 3D FLOWER BIKINI | 4 | 39.96 | 32.04 |
| 8.41 | GBO5332FL24 | PIECED LACE TRIM COAT | 4 | 139.8 | 33.64 |
| 8.46 | GBO5377FL24 | SPOT STRIPE P/O SWEATER | 4 | 139.8 | 33.84 |
| 6.68 | GBO5474FL24 | ROYAL ROSE ZIP HOODY | 4 | 131.8 | 26.72 |
| 4.07 | GBT494SPT3 | STRIPED/FLORAL TUNIC | 4 | 31.96 | 16.28 |
| 3.37 | GBT835SU13 | LACE TRIM TUNIC TOP | 4 | 31.96 | 13.48 |
| 3.86 | GKB359SP13 | ESS CARNIVAL SPOT CAPRI | 4 | 19.96 | 15.44 |
| 3.77 | GKT4110SU14 | ESS FRILLY SLV SLUB TUNIC | 4 | 23.96 | 15.08 |
| 5.07 | GKT4144SU14 | MERMAID OVRLAY TANK TUNIC | 4 | 39.96 | 20.28 |
| 4.4 | GKT533SU13 | EMB TUNIC/ZIGZAG BORDER | 4 | 31.96 | 17.6 |
| 4.36 | GKT818FL23 | RNDROP STP TOP/TWILL TAPE | 4 | 39.96 | 17.44 |
| 4.82 | GTO2005SU14 | SPARKLE TRIM CARDIGAN | 4 | 39.96 | 19.28 |
| 2.63 | LBA3642SU14 | PIRATE STRIPE BOOTIES | 4 | 27.96 | 10.52 |
| 3.47 | LBA4740SU24 | CRACKER PALM SUNHAT | 4 | 39.96 | 13.88 |
| 4.92 | LBB3393SPT4 | CRACKER FLEECE PANT | 4 | 31.96 | 19.68 |
| 3.93 | LBB4739SU24 | CRACKER PALM SHORT | 4 | 27.96 | 15.72 |
| 5.52 | LBG4169SU14 | PIRATE HIPPO APPLIQUE BG | 4 | 39.96 | 22.08 |
| 3.44 | BBA4299SU24 | POPLIN CRACKER HAT | 3 | 29.97 | 10.32 |
| 4.18 | BBA5656FL24 | BB FLANNEL CHK SHERPA HAT | 3 | 44.85 | 12.54 |
| 2.54 | BKA5019FL14 | BK STRIPED BEANIE | 3 | 20.97 | 7.62 |
| 8.5 | BKAS31SU23 | JORDAN ATHLETIC SANDAL | 3 | 29.97 | 25.5 |
| 6.1 | BBB4227SU14 | EWAIST LEAF CAMO SHORT | 3 | 29.97 | 18.3 |
| 5.16 | BBB4291SU24 | E WAIST YARN DYE SHORT | 3 | 29.97 | 15.48 |
| 8.21 | BBO4230SU14 | STRIPE SNOW WASH HOODY | 3 | 29.97 | 24.63 |
| 3.08 | BBT4516FLT4 | SS CLEVER PLANET TEE | 3 | 29.97 | 9.24 |
| 3.49 | BBT5301FL24 | ESS TRIBAL PRINT SLUB TEE | 3 | 27 | 10.47 |
| 3.56 | BBT958HLD3 | ESS WILD STRIPE THRM TEE | 3 | 17.97 | 10.68 |
| 4.67 | BBT965HLD3 | THERMAL BLEACH PRT HOODY | 3 | 29.97 | 14.01 |
| 5.42 | BKB121FL13 | ESS FLEECE PANT | 3 | 29.97 | 16.26 |
| 5.57 | BKB4296SU24 | YINGYANG BOARDSHORT | 3 | 29.97 | 16.71 |
| 4.11 | BKT152FL23 | ESS SLB CAMO ELEMENTS TEE | 3 | 29.97 | 12.33 |
| 4.06 | BKT3678SP24 | ESS SLB PENGUIN FLP TEE | 3 | 17.97 | 12.18 |
| 3.81 | BKT3681SP24 | ESS CMPS BAY TEE | 3 | 17.97 | 11.43 |
| 3.71 | BKT4190SU14 | ESS BLEACH PIRANHA TEE | 3 | 17.97 | 11.13 |
| 4.74 | BKT834SPT3 | UNI STRIPE HENLEY | 3 | 23.97 | 14.22 |
| 1.68 | GBA955FL23 | RAINDROP HEADBAND | 3 | 11.97 | 5.04 |
| 3.44 | GKA4156SU14 | SEABREEZE SUNHAT | 3 | 29.97 | 10.32 |
| 3.7 | GKA4444SU24 | MACAW FLORAL SUNHAT | 3 | 29.97 | 11.1 |
| 19.9 | GKAS39FLT3 | CALLA SHORTIE BOOT | 3 | 29.97 | 59.7 |
| 3.38 | GBB313WT13 | ESS 2X2 LEGWARMER LEGGING | 3 | 29.97 | 10.14 |
| 3.28 | GBB3764SP24 | ESS SWIRL CAPRI | 3 | 23.97 | 9.84 |
| 7.31 | GBB4161SU14 | BLEACH DENIM SHORT | 3 | 29.97 | 21.93 |

| | | | | | |
|---|---|---|---|---|---|
| 7.31 | GBB4163SU14 | BLEACH TWILL W/ ANGLAISE | 3 | 29.97 | 21.93 |
| 2.81 | GBB4392SU24 | ESS MACAW FLORAL SHORT | 3 | 23.97 | 8.43 |
| 3.79 | GBB577SP13 | SOLID CARPI/FLR ANG FRILL | 3 | 23.97 | 11.37 |
| 3 | GBB738SU13 | ESS SJ LACE TRIM KNTSHORT | 3 | 17.97 | 9 |
| 3.6 | GBB918FL13 | SPRNKL STP/FAWN PRNT PANT | 3 | 29.97 | 10.8 |
| 7.96 | GBD4370SU24 | EMB LAWN TROPIC DRESS | 3 | 29.97 | 23.88 |
| 5.58 | GBD4398SU24 | MIXED PRT TIERED SJ DRESS | 3 | 29.97 | 16.74 |
| 7.83 | GBO3272SPT4 | FRENCH TERRY VEST | 3 | 29.97 | 23.49 |
| 3.32 | GBT279HLD3 | ESS PINNY DOT SHORT TUNIC | 3 | 17.97 | 9.96 |
| 3.11 | GBT4105SU14 | ESS SLB-PEBBLE SLVS TUNIC | 3 | 17.97 | 9.33 |
| 3.23 | GBT4111SU14 | ESS FRILLY SLV SLB TUNIC | 3 | 17.97 | 9.69 |
| 4.27 | GBT4145SU14 | MERMAID OVRLAY TANK TUNIC | 3 | 29.97 | 12.81 |
| 4.54 | GBT4394SU24 | ORINOKO LAYER LOOK TUNIC | 3 | 29.97 | 13.62 |
| 3.79 | GKB303SP13 | ESS ASTON FLORAL CAPRI | 3 | 17.97 | 11.37 |
| 3.99 | GKB3124SPT4 | SOLID/SUKI FLRL PCD BELL | 3 | 23.97 | 11.97 |
| 9.03 | GKB3161SPT4 | CRUSHED DYE DENIM PANT | 3 | 29.97 | 27.09 |
| 4.92 | GKB3754SP24 | ESS MAZZY CANVAS SHORT | 3 | 23.97 | 14.76 |
| 6.2 | GKB3827SP24 | SPOTTED MESH SKIRT | 3 | 29.97 | 18.6 |
| 4.1 | GKB442SP23 | SOLID LEG/PAISLEY BUBBLE | 3 | 23.97 | 12.3 |
| 3.78 | GKB726FL13 | ESS 2/2 PANT/JEWEL BUTTON | 3 | 17.97 | 11.34 |
| 8.47 | GKB804FL23 | STRETCH CORD CARGO PANT | 3 | 29.97 | 25.41 |
| 7.69 | GKB879WT23 | FRENCH TERRY PANT/ LACE | 3 | 29.97 | 23.07 |
| 8.94 | GKB896WT13 | STRETCH CORD PANT W/ LACE | 3 | 17.97 | 26.82 |
| 7.27 | GKD3612SP14 | SS STP EMB DRESS W/FL RUF | 3 | 29.97 | 21.81 |
| 8.15 | GKO731FL13 | STRETCH FLEECE BLAZER | 3 | 29.97 | 24.45 |
| 4.03 | GKT435SP23 | ESS LACEY FLORAL TEE | 3 | 17.97 | 12.09 |
| 4.28 | GKT447SP23 | BLEACH/EMB V-NECK TUNIC | 3 | 23.97 | 12.84 |
| 7.55 | GKT878WT23 | FRENCH TERRY TUNIC W/LACE | 3 | 29.97 | 22.65 |
| 4.59 | GKT897WT13 | STUDDED APPLIQUE TOP | 3 | 29.97 | 13.77 |
| 4.41 | LBG494HLD3 | FOX TEE BODYSUIT | 3 | 29.97 | 13.23 |
| 5.52 | LBO4168SU14 | PIRATE STRIPE HOODY | 3 | 29.97 | 16.56 |
| 1.74 | LGA3977SU24 | MESH ROSE HEADBAND | 3 | 14.97 | 5.22 |
| 3.56 | LGT4736SU24 | PEACOCK MESH SLEEVE TUNIC | 3 | 26.97 | 10.68 |
| 3.52 | BBA4233SU14 | CRACKER DENIM SUNHAT | 2 | 19.98 | 7.04 |
| 3.52 | BKA4232SU14 | CRACKER DENIM SUNHAT | 2 | 19.98 | 7.04 |
| 5.42 | BBB3512SU14 | SOUTH COAST BOARDSHORT | 2 | 19.98 | 10.84 |
| 5.59 | BBB4289SU24 | E WAIST CRACKER PCD SHORT | 2 | 19.98 | 11.18 |
| 5.16 | BBB4293SU24 | E WAIST BALI CAVAS SHORT | 2 | 19.98 | 10.32 |
| 4.78 | BBB4297SU24 | YINYANG BOARDSHORT | 2 | 19.98 | 9.56 |
| 11.95 | BBO4544FLT4 | CANVAS FLAP JACKET | 2 | 59.98 | 23.9 |
| 4.58 | BBT356HLD2 | MTN THRML SUNGLASS HOODY | 2 | 3.98 | 9.16 |
| 3.44 | BBT4279SU24 | SURF 4 PRINT APPLIQUE TEE | 2 | 19.98 | 6.88 |
| 3.44 | BBT4283SU24 | CROSS SURF BOARD TEE | 2 | 19.98 | 6.88 |
| 8.37 | BKB3700SP24 | EWAIST RLLUP CRKR SHORT | 2 | 19.98 | 16.74 |
| 7.05 | BKB4222SU14 | ADJ WAIST BIRDS SHORT | 2 | 19.98 | 14.1 |
| 8.55 | BKO3324SPT4 | SNOW WASH FLC HOODY VEST | 2 | 19.98 | 17.1 |
| 4.22 | BKT031SU13 | MANTA RAY APPLIQUE TEE | 2 | 15.98 | 8.44 |

| | | | | | |
|---|---|---|---|---|---|
| 3.85 | BKT068SU23 | SLUB PALM SUNSET TEE | 2 | 15.98 | 7.7 |
| 3.6 | BKT079SU23 | ESS RG SURFBD STRIPE TEE | 2 | 11.98 | 7.2 |
| 5.62 | BKT194FL23 | CAMO PEEK HENLEY | 2 | 19.98 | 11.24 |
| 3.81 | BKT3340SP24 | ESS FLIP STRPE TEE | 2 | 11.98 | 7.62 |
| 3.81 | BKT3682SP24 | ESS SLB PCD TEE | 2 | 11.98 | 7.62 |
| 4.23 | BKT4286SU24 | WAIKIKI PATCH TEE | 2 | 19.98 | 8.46 |
| 1.63 | GBA4090SU24 | TEXTURED BOW HEADBAND | 2 | 9.98 | 3.26 |
| 1.64 | GBA4447SU24 | MACAW FLORAL WIDE HBAND | 2 | 9.98 | 3.28 |
| 1.71 | GKA332SP13 | LAWN ASTON FLRL HEADBAND | 2 | 7.98 | 3.42 |
| 3.45 | GKA418SP23 | 3D LACE BOW SUNHAT | 2 | 17.98 | 6.9 |
| 2.08 | GKA422SP23 | JIE JIE SPARKLY MESH HB | 2 | 7.98 | 4.16 |
| 3.72 | GKA5382FL24 | SOLID SWEATER BEANIE | 2 | 29.9 | 7.44 |
| 1.73 | GKA679FLT3 | SKETCH SPOT HEADBAND | 2 | 9.98 | 3.46 |
| 5.1 | GKA791FL23 | SWEATER SCARF W/ ROSETTES | 2 | 19.98 | 10.2 |
| 1.7 | GKAX63SP13 | CONTRAST LACE FANCY SOCK | 2 | 5.98 | 3.4 |
| 4.3 | GBB286HLD3 | ESS STRETCH TWILL PANT | 2 | 11.98 | 8.6 |
| 7.99 | GBB3162SPT4 | CRUSHED DYE DENIM PANT | 2 | 19.98 | 15.98 |
| 6.39 | GBB3275SPT4 | FRENCH TERRY ZIP FLY PANT | 2 | 19.98 | 12.78 |
| 5.96 | GBB3828SP24 | SPOTTED MESH SKRT W/ LEGS | 2 | 11.98 | 11.92 |
| 4.64 | GBB4361SU24 | TEXTURED SLD WOVEN PEDAL | 2 | 19.98 | 9.28 |
| 3.92 | GBB587SP13 | BOW CAPRI W/ PRINT RUFFLE | 2 | 15.98 | 7.84 |
| 3.53 | GBB818SU23 | EMB CAPRI W/ SIDE FRINGE | 2 | 15.98 | 7.06 |
| 3.24 | GBB863SU13 | LACE TRIM CAPRI | 2 | 15.98 | 6.48 |
| 3.29 | GBB890FL13 | ESS SPARKLE SPOT LEGGING | 2 | 19.98 | 6.58 |
| 6.56 | GBD754SU13 | CROCHET LACE/ZIGZAG DRESS | 2 | 19.98 | 13.12 |
| 3.41 | GBO4585SU14 | SPARKLE TRIM CARDIGAN | 2 | 19.98 | 6.82 |
| 2.82 | GBO4593SU24 | ESS SJ CARDI | 2 | 11.98 | 5.64 |
| 3.06 | GBT232WT13 | ESS PEPLUM TOP | 2 | 11.98 | 6.12 |
| 4.42 | GBT3301SPT4 | LS ZIP GRAPHIC TOP | 2 | 19.98 | 8.84 |
| 2.85 | GBT3777SP24 | ESS SLB HI-LO RUFFLE TUN | 2 | 11.98 | 5.7 |
| 3.8 | GBT4372SU24 | MACAW FLORAL TANK | 2 | 19.98 | 7.6 |
| 3.95 | GBT442SPT3 | APPLQ TREE TUNIC | 2 | 15.98 | 7.9 |
| 6.2 | GBT624SP23 | LACE OVERLAY TUNIC | 2 | 15.98 | 12.4 |
| 4.3 | GBT979FL23 | FUNTASIA RAINDROP TOP | 2 | 19.98 | 8.6 |
| 7.09 | GKB3280SPT4 | FR TERRY EMB TIERED SKIRT | 2 | 19.98 | 14.18 |
| 4.41 | GKB362SP13 | BOW CAPRI W/ PRINT RUFFLE | 2 | 15.98 | 8.82 |
| 3.88 | GKB4003SP14 | GYPSY CAPRI W/MOONRSE TRM | 2 | 11.98 | 7.76 |
| 7.69 | GKB415SP13 | E-WAIST JEAN W/ FLR APPLQ | 2 | 19.98 | 15.38 |
| 4.22 | GKB427SP13 | SOLID ANGLS FRILLED CAPRI | 2 | 15.98 | 8.44 |
| 5.91 | GKB445SP23 | ASYM PRINT PIECED SKIRT | 2 | 19.98 | 11.82 |
| 3.72 | GKB472FLT3 | MEOW STRIPE LEGGING | 2 | 19.98 | 7.44 |
| 7.08 | GKD326SPT3 | SS STRPE B/F DRS/FLR PKTS | 2 | 19.98 | 14.16 |
| 7.88 | GKD353SP13 | LAWN FLR DRESS/ANG RUFFL | 2 | 19.98 | 15.76 |
| 7.54 | GKD441SP23 | LACE OVRLAY BUBBLE DRESS | 2 | 19.98 | 15.08 |
| 7.32 | GKD449SP23 | TIERED PRINT DRESS W/ GML | 2 | 19.98 | 14.64 |
| 8.03 | GKO4354SU24 | TEXTURED U/B FLEECE HOODY | 2 | 19.98 | 16.06 |
| 4.39 | GKO553SU23 | SLUB LACE TRIM VEST | 2 | 15.98 | 8.78 |

| | | | | | |
|---|---|---|---|---|---|
| 16.42 | GKO789FL23 | SWEATER COAT W/ ROSETTES | 2 | 19.98 | 32.84 |
| 7.81 | GKT278SPT3 | SLB FRCH TRY HAPY SWTSHRT | 2 | 15.98 | 15.62 |
| 3.91 | GKT376SP13 | ESS RUFFLED TOP | 2 | 11.98 | 7.82 |
| 5.04 | GKT386SP23 | PIECED SQ NECK LAWN TUNIC | 2 | 15.98 | 10.08 |
| 4.08 | GKT723FL13 | ESS SPRINKLE/SPARKLE TOP | 2 | 19.98 | 8.16 |
| 4.82 | GKT729FL13 | LS LYC TUNIC/SPRINKLE STP | 2 | 19.98 | 9.64 |
| 4.94 | GKT732FL13 | LS LYCRA FIT TOP W/APPLIQ | 2 | 19.98 | 9.88 |
| 4.61 | GKT785FL23 | CONTRAST TOP WITH STRIPE | 2 | 19.98 | 9.22 |
| 9.17 | GTA049HLD3 | GT FAIRISLE SCARF | 2 | 19.98 | 18.34 |
| 4.87 | GTA050HLD3 | GK FAIRISLE BEANIE | 2 | 19.98 | 9.74 |
| 5.12 | GTB027WT13 | BOBBIN FLORAL CUFFED LEG | 2 | 19.98 | 10.24 |
| 7.72 | GTB029WT13 | VELOUR SKIRT | 2 | 19.98 | 15.44 |
| 4.85 | GTB1005SPT4 | SOLID/SUKI FLRL PCD BELL | 2 | 19.98 | 9.7 |
| 9.72 | GTO2033SU24 | TEXTURED U/B FLEECE HOODY | 2 | 19.98 | 19.44 |
| 5.98 | GTT1002SPT4 | LS ZIP GRAPHIC TOP | 2 | 19.98 | 11.96 |
| 2.43 | LBA4657FLT4 | BARNYARD STRIPE BOOTIE | 2 | 11.98 | 4.86 |
| 4.18 | LBB498HLD3 | CORD FLEECE PANT | 2 | 19.98 | 8.36 |
| 2.98 | LGA3663SU14 | ABBY FLORAL SUNHAT | 2 | 15.98 | 5.96 |
| 3.47 | LGA3974SU24 | PANEL HULA WAIKIKI SUNHAT | 2 | 17.98 | 6.94 |
| 2.43 | LGA482FL23 | JAS FLORAL BOOTIE | 2 | 11.98 | 4.86 |
| 2.97 | LGB3411SP24 | SHIRRED BOW SOLID PANT | 2 | 13.98 | 5.94 |
| 5.99 | LGG3958SU14 | HOUSE APPLQ SKRT BODYSUIT | 2 | 19.98 | 11.98 |
| 4.81 | LGO4568FLT4 | RUFFLE CARDIGAN | 2 | 19.98 | 9.62 |
| 3.35 | BBA319HLD2 | SPIKEY BEANIE | 1 | 7.99 | 3.35 |
| 2.47 | BKA035SU13 | BK WOVEN YARN DYE VISOR | 1 | 6.99 | 2.47 |
| 6.42 | BBB334SPT3 | E-WAIST TWILL CARGO PANT | 1 | 9.99 | 6.42 |
| 4.86 | BBB3699SP24 | EWAIST GEO JMP CRKR SHORT | 1 | 9.99 | 4.86 |
| 6.43 | BBB3703SP24 | EWAIST YARN DYE CK SHORT | 1 | 5.99 | 6.43 |
| 6.01 | BBB371SP13 | E-WAIST CRACKER PANT | 1 | 9.99 | 6.01 |
| 4.14 | BBB4195SU14 | ESS DENIM SHORT | 1 | 7.99 | 4.14 |
| 3.79 | BBB438SP13 | ESS FLEECE SHORT | 1 | 5.99 | 3.79 |
| 7.68 | BBB4536FLT4 | EWAIST CHECK ROLLUP PANT | 1 | 21.99 | 7.68 |
| 6.93 | BBB489SU23 | EWAIST MINI CHECKED SHORT | 1 | 9.99 | 6.93 |
| 6.39 | BBB968HLD3 | ADJ WST CORD PANT | 1 | 9.99 | 6.39 |
| 6.43 | BBB975WT13 | E-WST BELT CANVAS | 1 | 9.99 | 6.43 |
| 7.37 | BBO3325SPT4 | SNOW WASH FLC HOODY VEST | 1 | 9.99 | 7.37 |
| 9.75 | BBO4295SU24 | FRENCH TERRY STRIPE HOODY | 1 | 9.99 | 9.75 |
| 8.07 | BBO4542FLT4 | QUILTED FLEECE JACKET | 1 | 19.99 | 8.07 |
| 3.29 | BBT084SP12 | ESS RAW EDGE BADGE GR TEE | 1 | 1.99 | 3.29 |
| 7.68 | BBT3323SPT4 | FRENCH TERRY REVRSE HOODY | 1 | 9.99 | 7.68 |
| 3.52 | BBT3675SP24 | ESS PHTO PRNT TEE | 1 | 5.99 | 3.52 |
| 3.54 | BBT4215SU14 | LEAF BLOCK WITH GEIKO TEE | 1 | 5.99 | 3.54 |
| 2.83 | BBT4281SU24 | 3 COLOR PRINT TANK | 1 | 9.99 | 2.83 |
| 3.89 | BBT435SPT3 | LS VINTAGE TRVL TICKT TEE | 1 | 7.99 | 3.89 |
| 3.18 | BBT442SP13 | ESS CYCLE PANEL TEE | 1 | 5.99 | 3.18 |
| 4.45 | BBT598SU13 | PC STRIPE JERSEY SLB POLO | 1 | 7.99 | 4.45 |
| 3.56 | BBT910FL23 | ESS SLB CAMO ELEMENTS TEE | 1 | 9.99 | 3.56 |

| | | | | | |
|---|---|---|---|---|---|
| 3.44 | BBT959HLD3 | ESS SLB ARGYLE CHEST TEE | 1 | 5.99 | 3.44 |
| 4.18 | BBT960HLD3 | ESS THERMAL SLUB HOODY | 1 | 9.99 | 4.18 |
| 3.44 | BBT961HLD3 | ESS MIX FISH TEE | 1 | 7.99 | 3.44 |
| 6.83 | BKB003SP23 | EWAIST YARN DY CHK SHORT | 1 | 9.99 | 6.83 |
| 8.41 | BKB091FL23 | CORD WALE PANT | 1 | 9.99 | 8.41 |
| 8.1 | BKB101FL23 | CAMO RIPSTOP PANT | 1 | 9.99 | 8.1 |
| 5.31 | BKB139WT13 | ESS FLC SIDE CRACKER PANT | 1 | 5.99 | 5.31 |
| 8.47 | BKB213HLD3 | ADJ WST CORD PANT | 1 | 9.99 | 8.47 |
| 4.8 | BKB3684SP24 | ESS DOT STRP CRKR SHORT | 1 | 7.99 | 4.8 |
| 5.01 | BKB599SP12 | ESS TWILL SHORT | 1 | 9.99 | 5.01 |
| 4.45 | BKB940SP13 | ESS FLEECE SHORT | 1 | 5.99 | 4.45 |
| 6.67 | BKB943SP13 | SIDE PIECED FLEECE PANT | 1 | 9.99 | 6.67 |
| 8.95 | BKB975SP13 | KNIT WAIST RIPSTOP PANT | 1 | 9.99 | 8.95 |
| 6.45 | BKB976SP13 | ESS DENIM PANT | 1 | 5.99 | 6.45 |
| 12.8 | BKO870SPT3 | FLC ZIP HOODY/F/T PIECING | 1 | 7.99 | 12.8 |
| 3.99 | BKT025FLT3 | PIRATE ELEMENT TEE | 1 | 9.99 | 3.99 |
| 8.14 | BKT029SU13 | 2FER HOODY WOVEN SHIRT | 1 | 7.99 | 8.14 |
| 4.2 | BKT119FL13 | ESS SLUB HOODY | 1 | 9.99 | 4.2 |
| 4.11 | BKT202HLD3 | ESS THERMAL LIZARD TEE | 1 | 5.99 | 4.11 |
| 4.48 | BKT205HLD3 | ESS THERMAL SLUB HOODY | 1 | 9.99 | 4.48 |
| 3.81 | BKT3077SP14 | ESS SCOOTER MACHINE TEE | 1 | 5.99 | 3.81 |
| 7.45 | BKT3686SP24 | SLB DIP DYE WHLE POLO | 1 | 7.99 | 7.45 |
| 4.31 | BKT3696SP24 | PRKR STRPSPRYSCN PTCHTEE | 1 | 7.99 | 4.31 |
| 3.74 | BKT4269SU24 | ESS SUN SKY SAND TEE | 1 | 5.99 | 3.74 |
| 7.41 | BKT4284SU24 | SQUARE SOLID POCKET SHIRT | 1 | 9.99 | 7.41 |
| 12.63 | BKT872SPT3 | SLUB FRCH TERRY P/O HOODY | 1 | 7.99 | 12.63 |
| 3.6 | BKT944SP13 | ESS BIG CYCLE TEE | 1 | 5.99 | 3.6 |
| 3.6 | BKT946SP13 | ESS SIDE PANEL OPEN RD T | 1 | 5.99 | 3.6 |
| 3.63 | GBA229WT23 | GB SWEATER BEANIE | 1 | 9.99 | 3.63 |
| 1.95 | GBA315WT13 | GB STRIPE HBAND/3D FLOWER | 1 | 5.99 | 1.95 |
| 4.15 | GBA411WT22 | VELOUR EARFLAP HAT | 1 | 5.99 | 4.15 |
| 1.7 | GBA4694SU34 | CONTRAST FRILLED HBAND | 1 | 4.99 | 1.7 |
| 1.91 | GBA598SP13 | CARNIVL SPOT 3D FLR HBAND | 1 | 4.99 | 1.91 |
| 1.64 | GBA723SU13 | 3D LAWN LACE HEADBAND | 1 | 4.99 | 1.64 |
| 1.64 | GBA766SU23 | GB LAWN TROP ISLAND HBAND | 1 | 4.99 | 1.64 |
| 1.86 | GBA975SU22 | GB LACE 3D HEADBAND | 1 | 1.99 | 1.86 |
| 18.36 | GBAS56FL23 | LIL EMMA SLOUCH BOOT | 1 | 9.99 | 18.36 |
| 19.35 | GBAS69WT13 | LIL ELSIE BOOT WITH FUR | 1 | 9.99 | 19.35 |
| 0.95 | GBAX08COR1 | ESS SCALLOPED CORE SOCK | 1 | 0.99 | 0.63 |
| 4.15 | GBAX94WT13 | GB FLORAL ROSE DOT TIGHT | 1 | 7.99 | 4.15 |
| 2.01 | GKA380SP13 | CARNIVL SPOT 3D FLR HBAND | 1 | 4.99 | 2.01 |
| 1.94 | GKA3829SP24 | GK SPOT-SWIRL HEADBAND | 1 | 4.99 | 1.94 |
| 3.58 | GKA559SP23 | ELLY TRIBAL LAWN PURSE | 1 | 9.99 | 3.58 |
| 1.63 | GKA677SU33 | FLAMINGO HEADBAND | 1 | 3.99 | 1.63 |
| 4.87 | GKA801FL23 | MIXED KNITWEAR HAT | 1 | 9.99 | 4.87 |
| 13.01 | GKAS35FLT3 | PETRA HIGH TOP | 1 | 9.99 | 13.01 |
| 16.5 | GKAS45FL13 | FELICIA MOTO BOOT | 1 | 9.99 | 16.5 |

| | | | | | |
|---|---|---|---|---|---|
| 15.48 | GKAS66WT13 | MIRIAM MARYJANE | 1 | 9.99 | 15.48 |
| 3.5 | GKAX65SPT3 | GK DITSY BLC FTLESS TIGHT | 1 | 6.99 | 3.5 |
| 3.75 | GKAX67FLT3 | GK SPT DBLRFFL FTLS TIGHT | 1 | 8.99 | 3.75 |
| 4.15 | GKAX72FL13 | GK WHMSY ROSE FTLS TIGHT | 1 | 9.99 | 4.15 |
| 2.25 | GKAX76FL13 | GK WHMSY RUFFL TRIM SOCK | 1 | 4.99 | 2.25 |
| 2.06 | GTA1027SP24 | GT SPOT-SWIRL HEABAND | 1 | 2.99 | 2.06 |
| 3.66 | GBB249WT13 | BOBBN FLRL CUFFED LEGGING | 1 | 9.99 | 3.66 |
| 4.06 | GBB292HLD3 | EMB STRETCH FLEECE PANT | 1 | 9.99 | 4.06 |
| 8.62 | GBB294HLD3 | E-WAIST EMB PINTUCK JEAN | 1 | 9.99 | 8.62 |
| 3.32 | GBB3123SPT4 | ORIGAMI LEGGING | 1 | 7.99 | 3.32 |
| 6.39 | GBB3281SPT4 | FR TERRY EMB TIERED SKIRT | 1 | 7.99 | 6.39 |
| 3.4 | GBB3783SP24 | ESS FR TRRY RUF LONG SHRT | 1 | 7.99 | 3.4 |
| 6.33 | GBB4376SU34 | RUFFLED DENIM SHORTALL | 1 | 9.99 | 6.33 |
| 6.84 | GBB4396SU24 | E-WAIST EMB DENIM SHORT | 1 | 9.99 | 6.84 |
| 3.58 | GBB480SPT3 | FOND STRIPE LEGGING | 1 | 9.99 | 3.58 |
| 4.29 | GBB5543COR4 | ESS STRETCH SKINNY DENIM | 1 | 9 | 4.29 |
| 3.49 | GBB589SP13 | ESS CARNIVAL SPOT CAPRI | 1 | 4.99 | 3.49 |
| 3.79 | GBB633SP23 | STRIPED CAPRI/PRINT FRILL | 1 | 9.99 | 3.79 |
| 3 | GBB672SP23 | ESS SJ STRIPED SHORT | 1 | 5.99 | 3 |
| 3.47 | GBB791FLT3 | MOE SPOT PANT | 1 | 9.99 | 3.47 |
| 3.35 | GBB814SU23 | ESS SLD CAPRI/TROP FRILLS | 1 | 5.99 | 3.35 |
| 5.33 | GBB817SU23 | TROP KNIT HANKY SKRT/LEGS | 1 | 9.99 | 5.33 |
| 3.26 | GBB965FL23 | ESS RAINDROP LEGGING | 1 | 7.99 | 3.26 |
| 3.69 | GBB971FL23 | RUCHED STRIPE LEGGING | 1 | 9.99 | 3.69 |
| 3.44 | GBB981FL23 | RUFFLED FUNTASIA PANT | 1 | 7.99 | 3.44 |
| 3.18 | GBB993WT13 | ESS TEA STRIPE LEGGING | 1 | 9.99 | 3.18 |
| 3.32 | GBB995FL23 | ESS WIDE STRIPE LEGGING | 1 | 9.99 | 3.32 |
| 8.13 | GBD3289SPT4 | LS ORIGAMI HOODED DRS/PLT | 1 | 9.99 | 8.13 |
| 6.64 | GBD3932SP14 | 3/4 SLV DRESS W/FL MSH SK | 1 | 9.99 | 6.64 |
| 7.2 | GBD498SPT3 | EMBR DRESS/MIX STRPE SKRT | 1 | 9.99 | 7.2 |
| 6.48 | GBD551SPT3 | SS STRPE B/F DRS/FLR PKTS | 1 | 9.99 | 6.48 |
| 6.34 | GBD916FL13 | LS SPRNKL STP SPOT DRESS | 1 | 9.99 | 6.34 |
| 5.03 | GBD996FL23 | FUNTASIA CORD DRESS | 1 | 9.99 | 5.03 |
| 7.93 | GBO496SPT3 | SLB FRCH TER ASSY CWL JKT | 1 | 7.99 | 7.93 |
| 3.61 | GBO647SP13 | ESS SLUB CARDIGAN | 1 | 5.99 | 3.61 |
| 3.37 | GBT248WT13 | ESS STP/DOILY LACE TUNIC | 1 | 5.99 | 3.37 |
| 4.16 | GBT264WT13 | STUDDED APPLIQUE TOP | 1 | 9.99 | 4.16 |
| 3.12 | GBT271WT13 | ESS BOBBN FLRL/ASYM TUNIC | 1 | 7.99 | 3.12 |
| 4.42 | GBT290HLD3 | PINNY SPOT FLC APPLQ TUNI | 1 | 9.99 | 4.42 |
| 2.97 | GBT3769SP24 | ESS BIRDY TUNIC TOP | 1 | 5.99 | 2.97 |
| 3.28 | GBT3806SP24 | EMB MESH HI-LO TUNIC | 1 | 9.99 | 3.28 |
| 4.5 | GBT465SPT3 | SLUB STRIPED HOODY | 1 | 7.99 | 4.5 |
| 4.16 | GBT595SP13 | EMB FLR TRIM GRAPHI TUNIC | 1 | 7.99 | 4.16 |
| 3.92 | GBT649SP13 | SLUB TUNIC/ANGLAISE RUFFL | 1 | 7.99 | 3.92 |
| 3.53 | GBT734SU23 | NEON EMB BEACH BALL TUNIC | 1 | 5.99 | 3.53 |
| 3.54 | GBT852FL13 | JIE JIE TOP | 1 | 8.99 | 3.54 |
| 3.17 | GBT913FL13 | ESS SJ SOLID TOP/ BUTTONS | 1 | 9.99 | 3.17 |

| | | | | |
|---|---|---|---|---|
| 4.21 | GBT917FL13 | LS LYC TUNIC/SPRINKLE STP | 1 | 9.99 | 4.21 |
| 3.32 | GBT953FL23 | ESS FUNTASIA TUNIC | 1 | 9.99 | 3.32 |
| 3.44 | GBT967FL23 | ESS RAINDROP FLORAL TUNIC | 1 | 9.99 | 3.44 |
| 4.07 | GKB274SPT3 | NOSTLG FLR/SIDE STRPE LEG | 1 | 9.99 | 4.07 |
| 4.32 | GKB314SPT3 | SLD/STRPE BELL/STRPE BOW | 1 | 9.99 | 4.32 |
| 4.22 | GKB363SP13 | ESS CRISS CROS RUFFL PANT | 1 | 4.99 | 4.22 |
| 3.76 | GKB3762SP24 | ESS SWIRL CAPRI | 1 | 7.99 | 3.76 |
| 5.96 | GKB3811SP24 | LWN SKRT W PRNT FRLS | 1 | 9.99 | 5.96 |
| 4.25 | GKB411SP23 | STRIPED CAPRI/PRINT FRILL | 1 | 9.99 | 4.25 |
| 4.46 | GKB461SPT2 | AFRICAN SPOT LEGGING | 1 | 9.99 | 4.46 |
| 6.45 | GKB553SPT2 | AFRICAN SPOT SKIRT | 1 | 9.99 | 6.45 |
| 4.39 | GKB672SPT2 | PRT TRIM CAPRI W/ ANGLAIS | 1 | 5.99 | 4.39 |
| 3.96 | GKB730FL13 | SPRNKL STP/FAWN PRNT PANT | 1 | 9.99 | 3.96 |
| 5.42 | GKB733FL13 | MIXED PRINT KNIT SKIRT | 1 | 9.99 | 5.42 |
| 3.96 | GKB744FL13 | SPORTY MIX LEG SPOT PANT | 1 | 9.99 | 3.96 |
| 3.55 | GKB810WT13 | ESS TEA STRIPE LEGGING | 1 | 9.99 | 3.55 |
| 5.25 | GKB819SU12 | LAWN ETHNO DAISY PEDAL | 1 | 5.99 | 5.25 |
| 5.05 | GKB853SU12 | MISMATCHED PRINT SHORT | 1 | 1.99 | 5.05 |
| 6.87 | GKB871WT13 | VELOUR SKIRT | 1 | 5.99 | 6.87 |
| 6.02 | GKB881WT13 | PIECED PRINT SKIRT | 1 | 9.99 | 6.02 |
| 8.13 | GKD220WTR2 | DMND/HOODY DRSS/CRD SKRT | 1 | 9.99 | 8.13 |
| 7.56 | GKD267SPT3 | LS STRPE B/F DRS/FLR PKTS | 1 | 9.99 | 7.56 |
| 6.36 | GKD638FLT3 | SS LOVE SPOT DRESS | 1 | 9.99 | 6.36 |
| 9.49 | GKD869WT23 | HOODED LACE OVERLAY DRESS | 1 | 9.99 | 9.49 |
| 10.21 | GKO803FL23 | FLC CORD ZIP UP HOODY | 1 | 9.99 | 10.21 |
| 15.1 | GKO844WT13 | SPARKLY SWEATER CARDIGAN | 1 | 9.99 | 15.1 |
| 4.34 | GKT307SP13 | ESS STRIPED TUNIC | 1 | 4.99 | 4.34 |
| 3.84 | GKT358SP13 | ESS SPOT/ASTON FLR TUNIC | 1 | 5.99 | 3.84 |
| 3.91 | GKT367SP13 | JIE JIE ON A BIKE TEE | 1 | 7.99 | 3.91 |
| 3.78 | GKT374SP13 | ESS SWEET BIKE TUNIC | 1 | 5.99 | 3.78 |
| 4.59 | GKT378SP13 | EMB FLR TRIM GRAPHI TUNIC | 1 | 7.99 | 4.59 |
| 4.43 | GKT3815SP24 | SPOTTY NETTING TRM TOP | 1 | 9.99 | 4.43 |
| 6.46 | GKT3823SP24 | MIXED PRINT PIECED TUNIC | 1 | 9.99 | 6.46 |
| 7.57 | GKT401SP23 | LACE OVERLAY TUNIC | 1 | 7.99 | 7.57 |
| 3.77 | GKT4104SU14 | ESS SLB-PEBBLE SLVS TUNIC | 1 | 5.99 | 3.77 |
| 3.77 | GKT589FLT3 | SS MINU CAT TUNIC | 1 | 5.99 | 3.77 |
| 4.72 | GKT609SU23 | PRINT PATCHWORK TUNIC | 1 | 7.99 | 4.72 |
| 5 | GKT612SU23 | SS LAWN TEE W/SLUB RUFFLE | 1 | 7.99 | 5 |
| 3.69 | GKT702SU12 | ESS B-FLY GRAPHIC TUNIC | 1 | 7.99 | 3.69 |
| 3.58 | GKT725FL13 | ESS SJ SOLID TOP W/BUTTON | 1 | 9.99 | 3.58 |
| 3.83 | GKT736FL13 | ESS SLUB DEER TOP | 1 | 9.99 | 3.83 |
| 5.19 | GKT741FL13 | LS MIXED PRINT TUNIC | 1 | 9.99 | 5.19 |
| 3.69 | GKT746SU12 | ESS SLD TOP W/ FLRL FRILL | 1 | 7.99 | 3.69 |
| 4.33 | GKT832WT23 | ESS DOILY LACE TUNIC | 1 | 5.99 | 4.33 |
| 4.21 | GKT840WT23 | JIE JIE TEE | 1 | 9.99 | 4.21 |
| 5.04 | GKT938HLD3 | PIECED PRINT TUNIC | 1 | 9.99 | 5.04 |
| 4.31 | GTA2116FL24 | SOLID SWEATER BEANIE | 1 | 18.95 | 4.31 |

| | | | | | |
|---|---|---|---|---|---|
| 8.11 | GTB046HLD3 | SWTR TRIM LEGWARM LEGGING | 1 | 9.99 | 8.11 |
| 8.37 | GTD009FL23 | STRIPED SLV W/ ASSYM DRSS | 1 | 9.99 | 8.37 |
| 7.9 | GTT2004SU14 | SPLIT BODICE LAWN TUNIC | 1 | 9.99 | 7.9 |
| 8.29 | GTT2031SU24 | RUFFLED TUNIC W/ EMB | 1 | 9.99 | 8.29 |
| 2.31 | LBA3389SPT4 | EXPRESS STRIPE BOOTIES | 1 | 2.99 | 2.31 |
| 2.9 | LBA3391SPT4 | EXPRSS STP EARFLAP BEANIE | 1 | 5.99 | 2.9 |
| 2.42 | LBA503WT13 | FAUX TIE BOOTIES | 1 | 5.99 | 2.42 |
| 4.73 | LBB3416SP24 | DENIM CUFF PANT | 1 | 9.99 | 4.73 |
| 4.06 | LBB438FL23 | CORD WALE PANT | 1 | 9.99 | 4.06 |
| 6.16 | LBB4505SU14 | CAPTAINS PLAID DUNGAREE | 1 | 9.99 | 6.16 |
| 5.81 | LBG3382SPT4 | STP BOTTOM SUSPENDER BG | 1 | 9.99 | 5.81 |
| 5.81 | LBG3387SPT4 | SKTCH TRAIN STP PCKT BG | 1 | 9.99 | 5.81 |
| 6.3 | LBG3423SP24 | AZTEX GIRAFFE BG | 1 | 9.99 | 6.3 |
| 5.99 | LBG367FL13 | STRIPED HOODY BABYGROW | 1 | 9.99 | 5.99 |
| 4.44 | LBT080SPT3 | STRIPE POLO | 1 | 7.99 | 4.44 |
| 2.06 | LGA3177SP14 | SPLTR SPOT MSH BOW BEANIE | 1 | 4.99 | 2.06 |
| 2.43 | LGA3976SU24 | MESH ROSE BOOTIES | 1 | 5.99 | 2.43 |
| 2.4 | LGA4493SU14 | ABBY ZIGGY BOOTIES | 1 | 6.99 | 2.4 |
| 4.06 | LGB436FL23 | BOW PCKT WALE CORD PANT | 1 | 8.99 | 4.06 |
| 3.26 | LGB481FL23 | RUFFLE BACK PANT | 1 | 9.99 | 3.26 |
| 5.07 | LGD201SU13 | LAWN EMB DRESS | 1 | 9.99 | 5.07 |
| 6.3 | LGD3931SU14 | 2 IN 1 LAWN ZIGGY DRESS | 1 | 9.99 | 6.3 |
| 5.02 | LGD397FL23 | JAS FLORAL BUBBLE DRESS | 1 | 9.99 | 5.02 |
| 5.32 | LGG264SP23 | STRIPE DOT ANGLA RUFFL BG | 1 | 9.99 | 5.32 |
| 8.55 | LGG449WT13 | VLR HEART LACE SKIRT BG | 1 | 9.99 | 8.55 |
| 5.84 | LGG457WT13 | SNOWFALL SPOT MESH SKT BG | 1 | 9.99 | 5.84 |
| 4.92 | LGT3297SPT4 | FLR GARDEN APPQ FRL TUNIC | 1 | 9.99 | 4.92 |
| | | | 35051 | 526,065.67 | 197,026.86 |

# EXHIBIT 5.2(b)(2)

# In-Transit Merchandise:

# None

# EXHIBIT 8.1

## SALE GUIDELINES

1.     The Sale shall be conducted so that the Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

2.     The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

3.     On "shopping center" property, the Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; provided that Agent may solicit customers in the Stores themselves. On "shopping center" property, the Agent shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.     At the conclusion of the Sale, the Agent shall vacate the Stores and the Distribution Center in broom clean condition, and shall leave the locations in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, in accordance with Section 6 of the Agency Agreement, provided, however, the Merchant and the Agent hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Store or the Distribution Center.

5.     The Merchant and the Agent may advertise the Sale as a "going out of business", "store closing", "sale on everything", or similar themed sale.

6.     Agent shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Agent shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. Nothing contained herein shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, shall not be wider than the storefront of the Store, and shall not be larger than 4 feet x 40 feet. In addition, the Merchant and the Agent shall be permitted to utilize sign walkers and street signage in a safe and professional manner and in accordance with the terms of the Approval Order. Nothing contained herein shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, the Agent shall not make any alterations to the storefront or exterior walls of any Stores.

9.      The Agent shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Store.

10.      The Agent shall keep Stores' premises and surrounding areas clear and orderly consistent with present practices.

11.      Subject to the provisions of the Agency Agreement and the Approval Order, the Agent shall have the right to sell all Merchant-owned furniture, fixtures, and equipment located at the Stores and Distribution Center (the "Merchant FF&E"). The Agent may advertise the sale of the Merchant FF&E in a manner consistent with these Sale Guidelines. The purchasers of any Merchant FF&E sold during the Sale shall be permitted to remove the Merchant FF&E either through the back shipping areas at any time, or through other areas after store business hours. For the avoidance of doubt, as of the Sale Termination Date the Agent may abandon, in place and without further responsibility or obligation, any unsold Merchant FF&E located at a Store, the Distribution Center and/or corporate offices. Any abandoned Merchant FF&E left in a Store, the Distribution Center and/or the corporate offices after the underlying lease is rejected shall be deemed abandoned to the landlord, with the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.

12.      The Agent shall be entitled to include Additional Agent Merchandise in the Sale in accordance with the terms of the Approval Order and the Agency Agreement.

13.      At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases. The Merchant, the Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.

14.      Post-petition rents shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease. Agent shall have no responsibility therefor.

15.      The rights of landlords against Merchant for any damages to a Store or the Distribution Center shall be reserved in accordance with the provisions of the applicable lease.

16.      If and to the extent that the landlord of any Store affected hereby contends that the Agent or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and the Agent's counsel as follows:

If to the Merchant:

        Naartjie Custom Kids, Inc.
        3676 W California Ave., Suite D-100
        Salt Lake City, UT 84104
        Attn:   _____
        Tel:    _____
        Email: _____

        With a copy to (which shall not constitute notice):

        Dorsey & Whitney LLP
        136 South Main Street
        Suite 1000
        Salt Lake City, UT 84101-1655
        Attn:   Annette W. Jarvis, Esq.
        Tel:    (801) 933-7360
        Email: jarvis.annette@dorsey.com

If to the Agent:

        Great American Group, LLC
        21860 Burbank Blvd., Suite 300 South
        Woodland Hills, CA 91367
        Attn:   Mark P. Naughton
        Tel:    847 943 2086
        Email: mnaughton@greatamerican.com

      17.    To the extent there are any inconsistencies between these Sale Guidelines and the Agency Agreement, the terms of the Agency Agreement shall control. To the extent there are any inconsistencies between these Sale Guidelines and the Approval Order, the terms of the Approval Order shall control.

# EXHIBIT 10.1(b)

**The below described is SIGNED.**

Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 606
Michael F. Thomson (Utah State Bar
Jeffrey M. Armington (Utah State Bar
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685



**Dated: October 1, 2014**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

Tel:  (801) 933-7360
Fax:  (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Proposed Attorneys for Naartjie Custom Kids, Inc.*

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

---

**ORDER (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT,**
**(B) AUTHORIZING BID PROTECTIONS, (C) AUTHORIZING BIDDING**
**PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND**
**APPROVING NOTICE THEREOF AND (II) GRANTING RELATED RELIEF**

---

Upon consideration of the motion (the "Motion")[1] of Naartjie Custom Kids, Inc., debtor

and debtor in possession in the above-captioned case (the "Debtor"), for entry of an order (this

"Bidding Procedures Order") (I)(A) authorizing entry into that certain Agency Agreement (the

"Stalking Horse Agreement") with the joint venture comprised of Gordon Brothers Retail

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to such term in the
Motion or in the Stalking Horse Agreement, as applicable.

Partners, LLC and Hilco Merchant Resources, LLC (collectively, the "Stalking Horse Bidder");

(B) authorizing the proposed Bid Protections (as defined below) for the Stalking Horse Bidder;

(C) authorizing the bidding procedures (the "Bidding Procedures"), substantially in the form

attached hereto as Exhibit 1, and setting the time, date and place of the auction ("Auction") in

connection with the sale (the "Sale") of the Debtor's Assets free and clear of all claims (as

defined in section 101(5) of the Bankruptcy Code), as more fully described and except to the

extent identified in the Stalking Horse Agreement or the asset purchase agreement of any other

Successful Bidder (as defined in the Bidding Procedures), as applicable; (D) approving the form

of notice of the Auction (the "Auction Notice"), substantially in the form attached hereto as

Exhibit 2; (E) setting a hearing (the "Sale Hearing") for the Sale, to be held on October 3, 2014;

and (II) granting certain related relief; and it appearing that the relief requested is in the best

interests of the Debtor's estate, its creditors, and other parties-in-interest; and it appearing that

this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it

appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157; and proper and

adequate notice of the Motion and opportunity for objection having been given, with all

objections having been resolved, withdrawn, overruled, or sustained as the case may be; and it

appearing that no other notice need be given; and after due deliberation and sufficient cause

therefore;

### IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper in

---

[2]     Pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, findings of
fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as
appropriate.

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice of the Motion, including the proposed entry of the Bidding Procedures
Order, the Bidding Procedures, and the hearing to consider entry of this Bidding Procedures
Order (the "Bidding Procedures Hearing") has been provided as set forth in the Motion.  The
Debtor's notice of the Motion, the proposed entry of the Bidding Procedures Order, the Bidding
Procedures, and Bidding Procedures Hearing was appropriate and reasonably calculated to
provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001,
6004 and 6006, and no other or further notice of, or hearing on, the Motion or this Bidding
Procedures Order is required.

C.      Entry into the Stalking Horse Agreement with the Stalking Horse Bidder is in the
best interests of the Debtor, its estate, creditors, and other parties-in-interest and, based on the
information set forth in the Motion and presented to this Court, is an appropriate exercise of the
Debtor's business judgment. The Stalking Horse Agreement will enable the Debtor to secure an
adequate consideration floor for the Auction and will provide a clear benefit to the Debtor's
estate and all other parties-in-interest.

D.      The form of the Stalking Horse Agreement is hereby approved and is appropriate
and reasonably calculated to enable the Debtor and other parties-in-interest to easily compare
and contrast the differing terms of the bids presented at the Auction.

E.      The Debtor has demonstrated a compelling and sound business justification for
authorizing the payment of the Bid Protections set forth in Section 16.12 of the Stalking Horse
Agreement to the Stalking Horse Bidder, as follows:

        a.      the Bid Protections are the product of negotiations between the Debtor and
        the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking

3

Horse Agreement (including the Bid Protections) is the culmination of a process undertaken by the Debtor and its professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Debtor's assets to maximize the value of the Debtor's estate;

    b.    the Bid Protections are an actual and necessary cost and expense of preserving the Debtor's estate; and

    c.    the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale under the Stalking Horse Agreement, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtor, its estate and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the Debtor will receive the best possible price for its assets.

    F.    The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable and appropriate and are designed to maximize the value of the Debtor's estate.

    G.    The Auction Notice, substantially in the form attached hereto as Exhibit 2, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary), the Sale Hearing, and any and all objection deadlines, and such Auction Notice having been provided as set forth in the Motion, no other or further notice is required.

    H.    The Sale does not require the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) of the Bankruptcy Code.

I.      No finding or ruling is made in this Bidding Procedures Order as to the adequacy of any proposed transaction, it being intended that such approval will be sought at the Sale Hearing.

J.      The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate and creditors, and all other parties-in-interest in the Debtor's chapter 11 case.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED** as set forth below.

2.      All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived or settled as announced at the Bidding Procedures Hearing, or resolved by stipulation signed by the Debtor and filed with this Court, are resolved as provided in this Order.

3.      The Debtor is authorized to enter into the Stalking Horse Agreement and all of its terms (including the Bid Protections set forth in Section 16.12 of the Stalking Horse Agreement) are hereby APPROVED, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed Sale of the Assets.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Stalking Horse Agreement.

4.      The Bidding Procedures, in the form annexed hereto as Exhibit 1, are hereby APPROVED, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed Sale of the Assets.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

5.      The Secured Lender and the Stalking Horse Bidder are deemed Qualified Bidders under the Bidding Procedures and shall be permitted to participate and bid at the Auction.

6.       The Auction Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is deemed good and sufficient notice of the Bidding Procedures, the Auction and the Sale Hearing, and the associated objection periods are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction and Sale Hearing.

7.       The Debtor is authorized (i) to conduct the Auction with respect to all or some of the Assets. The Auction, if any, shall be conducted at the office of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685 (the "<u>Auction Site</u>") at 10:00 a.m. (prevailing Mountain time) on October 2, 2014 (the "<u>Auction Date</u>"), or at such other place and time or later date as determined by the Debtor, in consultation with Salus Capital Partners, LLC, Debtor's pre-petition and post-petition lender (the "<u>Secured Lender</u>"), and the Official Committee of Unsecured Creditors (the "<u>Committee</u>").  The Debtor shall notify each bidder that has submitted a Competing Bid and expressed its intent to participate in the Auction as set forth in the Bidding Procedures. The Debtor is authorized, subject to the terms of this Bidding Procedures Order, to take all actions necessary, in the discretion of the Debtor, and following consultation with the Secured Lender and the Committee, to conduct and implement such Auction.

8.       The Debtor, following consultation with the Secured Lender and the Committee, may (i) select, in its business judgment, pursuant to the Bidding Procedures, the highest and/or otherwise best offer(s) and the Successful Bidder(s), and (ii) reject any bid that, in the Debtor's business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtor and its estate, creditors, interest holders or parties-in-interest.

9.    The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

10.    The Bid Protections set forth in the Stalking Horse Agreement, including the (i) Break-Up Fee, (ii) Expense Reimbursement (including reimbursement of Signage Costs), and (iii) the Minimum Overbid Increment, ((i)-(iii) being collectively defined herein as the "Bid Protections"), are a reasonable inducement for the Stalking Horse Bidder's offer to serve as Debtor's exclusive agent to conduct the Sale on the terms set forth in the Stalking Horse Agreement and compensation for the risks and lost opportunity costs incurred by the Stalking Horse Bidder.

11.    Payment to the Stalking Horse Bidder of the Break-Up Fee and Expense Reimbursement (including reimbursement of Signage Costs) (i) is an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of section 503(b) of the Bankruptcy Code entitled to super-priority status, (ii) is of substantial benefit to the Debtor's estate, (iii) is reasonable and appropriate, including in light of the size and nature of the proposed Sale and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to higher or better offers, (iv) was negotiated on an arm's-length basis and in good faith, and (v) is necessary to ensure that Stalking Horse Bidder will continue to be bound to the offer contained in the Stalking Horse Agreement.

12.    The Bid Protections are hereby approved and, where applicable, shall be paid to the Stalking Horse Bidder as set forth in Section 16.12 of the Stalking Horse Agreement.

13.    Pursuant to sections 105, 363, 364, 503, 506 and 507 of the Bankruptcy Code, the Debtor is hereby authorized to pay, without further order of this Court, the Break-Up Fee and Expense Reimbursement (including reimbursement of Signage Costs), pursuant to the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures.

14.    The Break-Up Fee and Expense Reimbursement (including reimbursement of Signage Costs) shall be the sole remedy of the Stalking Horse Bidder if the Stalking Horse Agreement is terminated under circumstances where the Bid Protections are payable. Anything to the contrary notwithstanding, the Debtor shall not modify or amend the Bidding Procedures where the effect would be to waive any requirement that is included in the Bid Protections.

15.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment.

16.    The Debtor is authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

17.    A Sale Hearing to approve the Sale of the Assets to any Successful Bidder(s) shall be held on **October 3, 2014 at 10:00 a.m.** (prevailing Mountain Time), unless otherwise continued upon request by the Debtor (in consultation with the Secured Lender, the Stalking Horse Bidder, and the Committee) or otherwise ordered by the Court. Objections, if any, to the Sale must be filed by **October 2, 2014 at 4:00 p.m.** (prevailing Mountain Time) (the "Sale Objection Deadline") and served on: (a) counsel to the Stalking Horse, Reimer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq., email: sfox@riemerlaw.com; (b) counsel to the UCC, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4003 Attn:

8

Jeffrey N. Pomerantz, email: jpomerantz@pszlaw.com; (c) counsel for the Debtor, Stroock & Stroock & Lavan, LLP, 2029 Century Park East, Suite 1600, Los Angeles, CA 90067 Attn: Frank A. Merola, email: fmerola@stroock.com; (d) any Successful Bidder that is not the Stalking Horse; (e) the Office of the United States Trustee for the District of Utah; and (f) counsel to the Secured Lender.

18.    This Bidding Procedures Order shall be binding upon and inure to the benefit of the Stalking Horse Bidder, the Successful Bidder, and their respective affiliates, successors, and assigns, and the Debtor, including any trustee or other fiduciary appointed for the Debtor's estate, whether in this chapter 11 case or any subsequent bankruptcy case or upon dismissal of this chapter 11 case.

19.    The fourteen-day stay of effectiveness of this Order under Bankruptcy Rules 6004(h) and 6006(d) is hereby waived.  This Bidding Procedures Order shall be effective and enforceable immediately upon its entry on the docket in the Debtor's chapter 11 case.

20.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Break-Up Fee, the Stalking Horse Agreement, the Bidding Procedures and the implementation of this Bidding Procedures Order.

---

(END OF DOCUMENT)

# <u>EXHIBIT 1</u>

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the sale (the "**Sale**") of the following classes of assets (each, an "**Asset Class**" and collectively, the "**Assets**") of Naartjie Custom Kids, Inc., on behalf of itself and as debtor in possession (the "**Debtor**") in connection with the chapter 11 case pending in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**"), case number 14-29666: (i) Merchandise (as defined below) and (ii) Owned FF&E (as defined below).

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE DEBTOR'S ADVISORS, AS FOLLOWS:**

**Dorsey & Whitney LLP**, Annette W. Jarvis Esq. (jarvis.annette@dorsey.com); and **Stroock & Stroock & Lavan LLP**, Frank A. Merola (fmerola@stroock.com).

A.     **Agency Agreement and Sale**

In connection with the Sale, the Debtor and a joint venture comprised of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Stalking Horse") have entered into that certain Agency Agreement (the "Stalking Horse Agency Agreement"), pursuant to which the Stalking Horse will, among other things, serve as the Debtor's exclusive agent to sell the Debtor's Merchandise (as defined in the Stalking Horse Agency Agreement) located at (or to be shipped to) all of the Debtor's retail locations and distribution center located within the United States (collectively, the "Stores), by means of a "going-out-of business", "store closing" or similar themed sale at the Stores, and, if requested by the Stalking Horse, through its e-commerce platform (the "Sale"),  and (b) at the Debtor's election, dispose of any owned fixtures, furnishings and equipment (the "Owned FF&E").

The ability to undertake and consummate the Sale pursuant to the Stalking Horse Agency Agreement shall be subject to competitive bidding as set forth herein and approval by the Bankruptcy Court.  The Debtor may consider bids for all or a portion of the Assets in a single bid from a single bidder, or multiple bids from multiple bidders, including bids on individual Asset Classes.

B.     **The Bidding Procedures**

1.     *Provisions Governing Qualifications of Bidders*

Unless otherwise ordered by the Bankruptcy Court, prior to **4:00 p.m. prevailing Mountain Time on October 1, 2014** (the "**Bid Deadline**"), each party that wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (defined below):

(a)     a written disclosure of the identity of each party, including involvement in any joint venture, that will be bidding (or participating in a bid) on the Assets or certain Asset Classes;

(b)    adequate assurance information, including (i) adequate information (in the Debtor's reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed transaction;

(c)    an executed confidentiality agreement in form and substance satisfactory to the Debtor, which will inure to the benefit of any purchaser of the Assets or certain Asset Classes; and

(d)    a letter summarizing the key terms of the Bidders bid, and the terms and conditions of the Qualified Bidder Agreement being submitted simultaneously therewith.

A Potential Bidder that the Debtor determines in its reasonable business judgment, after consultation with Salus Capital Partners, LLC (the "**Secured Lender**"), and the official committee of unsecured creditors (the "**Committee**"), is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder**."  The Debtor will provide access to due diligence only to those parties it believes, in the exercise of its reasonable business judgment, are pursuing a proposed transaction in good faith.

### 2.    *Due Diligence*

The Debtor will afford any Qualified Bidder such due diligence access or additional information as the Debtor deems appropriate, in its reasonable discretion.

The due diligence period will extend through and include the date of the Auction (defined below); *provided*, *however*, that any Competing Bid (defined below) submitted will be irrevocable until the selection of the Successful Bidder (defined below) and the Back-Up Bidder (defined below) as described herein.

### 3.    *Provisions Governing Competing Bids*

A bid will be considered a competing bid (a "**Competing Bid**") only if the bid is submitted by a Qualified Bidder and complies with all of the following:

(a)    satisfies all of the requirements provided for in Section 16.12 of the Stalking Horse Agency Agreement, including that such bid must (i) be in an amount greater than (x) the Guaranty Percentage, plus (y) $105,000,[1] plus (z) an additional overbid amount equal to not less than 1.0% of the

---

[1]    The Stalking Horse will be permitted to credit bid the Bid Protections (in an amount not greater than $105,000) until such time as the Guaranty Percentage for the bids reaches 82%.  After the bidding reaches this 82% threshold then the Bid Protections will no longer be credited in the bidding process.

aggregate Cost Value of the Merchandise, and (ii) contain the agreement by the Qualified Bidder to reimburse the Debtor for the Signage Costs;[2]

(b)     is accompanied by (i) in the case of Bidders submitting a bid to serve as the Debtor's exclusive agent to conduct the Sale and, at the Debtor's election, dispose of the Owned FF&E, a mark-up of the Stalking Horse Agency Agreement; or (ii) in the case of a Bidder submitting a bid to purchase one or more of the Asset Classes, an asset purchase agreement, identifying with specificity the Asset Classes upon which such Bidder is submitting is bid and the liabilities and obligations to be assumed by the Bidder (as the case may be, the **"Qualified Bidder Agreement"**), including a copy of such Qualified Bidder Agreement marked to show all changes from the Stalking Horse Agency Agreement;

(c)     discloses any connection or agreements with the Debtor, the Stalking Horse, the Secured Lender, any other known Potential Bidder and/or any officer, director or equity security holder of the Debtor;

(d)     includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder; *provided that* if such Qualified Bidder is selected as the Successful Bidder or Back-Up Bidder, its offer will remain irrevocable until the date that is ten business days after the commencement of the Sale;

(e)     contains written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including, but not limited to, any additional due diligence, inventory evaluation or financing conditions, and that all necessary approvals have been obtained prior to the date of submission of the bid;

(f)     includes evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Stalking Horse Agency Agreement or Qualified Bidder Agreement;

(g)     includes a duly authorized and executed copy of a Qualified Bidder Agreement (including all exhibits and schedules thereto) and proposed Sale Order, together with copies marked to show any amendments and modifications to (a) the Stalking Horse Agency Agreement and (b) the Sale Order proposed by the Stalking Horse;

(h)     includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the Sale, that will allow the

---

[222] Unless otherwise defined in these Bidding Procedures, each capitalized term used in this Section 3.(a) has the meaning ascribed to such term in the Stalking Horse Agency Agreement.

Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the Sale;

(i)     includes an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the Assets or the completeness of any information provided except as expressly stated in the Stalking Horse Agency Agreement or Qualified Bidder Agreement; (d) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid and (e) has (i) consented and submitted to the core jurisdiction of the Bankruptcy Court, (ii) waived and released any and all disputes or objections relating to the marketing or solicitation process, the Auction and the construction and enforcement of such party's contemplated transaction documents, and (iii) consented to the jurisdiction of the Bankruptcy Court in all respects in connection with such matters included in clause (ii) and its bid;

(j)     is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, in an amount equal to ten percent of the value of such Qualified Bidder's Competing Bid (the "**Deposit**");

(k)     is accompanied by a letter (a) stating with specificity the Assets or Asset Classes such Qualified Bidder wishes to bid on and the liabilities and obligations to be assumed by such Qualified Bidder, (b) specifying all material terms of the bid that are substantially the same as or better than those of the Stalking Horse's bid pursuant to the terms of the Stalking Horse Agency Agreement (the "**Stalking Horse Bid**"), to the extent the bid is on the same terms and conditions as the Stalking Horse Bid, (c) stating that its offer is a *bona fide* offer that it intends to consummate if it is selected as the Successful Bidder and (d) stating that such Qualified Bidder has not engaged in any collusion with respect to the bidding process;

(l)     contains such other information as is requested by the Debtor in its sole business judgment; and

(m)     is received prior to the Bid Deadline.

The Debtor will notify each Qualified Bidder after the Bid Deadline as to whether or not *any* bids constitute Competing Bids with respect to any Asset Class and whether *such* Qualified Bidder's bid constitutes a Competing Bid.  The Debtor retains the right, after

consultation with the Secured Lender and the Committee, to waive or modify the terms of the Bidding Procedures when determining which bids may be deemed Competing Bids.

4.    *Bid Deadline*

A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**") so as to be actually received not later than the Bid Deadline of **4:00 p.m. prevailing Mountain Time on October 1, 2014**:

**Dorsey & Whitney LLP**
136 South Main Street
Suite 1000
Salt Lake City, UT 84101-1655
Attn: Annette W. Jarvis, Esq.
Email: jarvis.annette@dorsey.com
*Proposed Attorneys for Debtor Naartjie*
*Custom Kids, Inc.*


**Stroock & Stroock & Lavan LLP**
2029 Century Park East
Los Angeles, CA 90067-3086
Attn: Frank Merola, Esq.
Email: fmerola@stroock.com
*Proposed Special Counsel for Debtor Naartjie*
*Custom Kids, Inc.*

Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Attn:   Jeffrey M. Wolf, Esq.
Email: wolfje@gtlaw.com
*Attorneys for Salus Capital Partners, LLC*

Pachulski Stang Ziehl & Jones LLP
Jeffrey N. Pomerantz
Bradford J. Sandler
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA  90067-4003
Email: jpomerantz@psjlaw.com
*Proposed Counsel for the Official Committee*
*of Unsecured Creditors*

Office of The United States Trustee
Peter J. Kuhn
John T. Morgan
405 South Main Street, Suite 300
Salt Lake City, Utah 84111
Email: peter.j.kuhn@usdoj.gov
*Office of the United States Trustee*

The Bid Deadline may be extended by the Debtor, after consultation with the Secured Lender and the Committee.

**5.**    *Evaluation of Competing Bids*

A Competing Bid will be valued based upon several factors including, without limitation: (a) the amount of such bid; (b) the Assets included in such bid, (c) the risks and timing associated with consummating such bid; (d) any proposed revisions to the Stalking Horse Agency Agreement and/or the Sale Order proposed by the Stalking Horse; and (e) any other factors deemed relevant by the Debtor in its reasonable business judgment, after consultation with the Secured Lender and the Committee.

**6.**    *No Auction if No Competing Bids*

If the Debtor receives no Competing Bid, the Debtor will not hold the Auction and instead shall request at the Sale Hearing (defined below) that the Bankruptcy Court approve the Stalking Horse Agency Agreement.

**7.**    *Auction Process*

If the Debtor receives at least one Competing Bid for the Assets or any Asset Class, the Debtor will conduct an auction at **10:00 a.m. prevailing Mountain Time on October 2, 2014** (the "**Auction**") at the offices of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685, or such other location as will be timely communicated to all Qualified Bidders.    The Auction will be conducted in accordance with the following procedures:

(a)    Only the Debtor, the Committee, the Secured Lender, any Qualified Bidder that submitted a Competing Bid, and the respective advisors to each of the foregoing, will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any bids at the Auction.

(b)    Each Qualified Bidder will be required to confirm in writing that it has not engaged in any collusion with respect to the bidding at the Auction.

(c)    As soon as practicable prior to the Auction, each Qualified Bidder that timely submitted a Competing Bid must inform the Debtor whether it intends to attend the Auction; *provided that* in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's

6

Competing Bid nevertheless will remain fully enforceable until the selection of the Successful Bidder and the Back-Up Bidder.

(d)     As soon as practicable prior to the Auction, the Debtor, in its reasonable discretion, after consultation with the Secured Lender and the Committee, will determine which Competing Bid(s) are the highest and/or otherwise best Competing Bid(s) for (x) all of the Assets (the "**Highest and/or Best All Asset Bid**"), and/or (y) each Asset Class (each highest and/or best Competing Bid for an Asset Class, the "**Highest and/or Best Asset Class Bid**"), and will provide copies of the Highest and/or Best All Asset Bid and/or the Highest and/or Best Asset Class Bid to the other Qualified Bidders.

(e)     To the extent that there is at least one Competing Bid for an Asset Class, the bidding at the Auction will continue in increments of at least 0.10% over the Highest and/or Best Asset Class Bid (each successive bid, an "**Asset Class Overbid**"); *provided*, *however*, that the Debtor, after consultation with the Secured Lender and the Committee, may consider other economic factors when determining whether a Competing Bid for an Asset Class is a higher and/or better Competing Bid.  An Asset Class Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtor accepts an alternate Competing Bid as the Highest and/or Best Asset Class Bid.  During the course of the Auction, the Debtor shall, after submission of each Asset Class Overbid, promptly inform each Qualified Bidder which Asset Class Overbid reflects, in the Debtor's view, the Highest and/or Best Asset Class Bid.

(f)     When bidding on individual Asset Classes concludes, the Debtor, after consultation with the Secured Lender and the Committee, shall determine the Highest and/or Best Asset Class Bid with respect to each Asset Class (each Highest and/or Best Asset Class Bid, the "**Winning Asset Class Bid**").  To the extent a particular Asset Class did not receive at least one Competing Bid (and accordingly, was not subject to the auction procedures set forth above), the Highest and/or Best Asset Class Bid shall be deemed to be the Stalking Horse Bid for such Asset Class, subject to the provisions of these Bidding Procedures.

(g)     If there is a Highest and/or Best All Asset Bid, after determination of each Winning Asset Class Bid, the Debtor shall hold an auction for all of the Assets.  If the Winning Asset Class Bids, in the aggregate, or a Qualified Bidder for the all of the Assets, are selected as the Highest and/or Best All Asset Bid, the bidding at the Auction will continue in increments of at least 0.10% over the Highest and/or Best All Asset Bid (each successive bid, an "**All Assets Overbid**").  An All Assets Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtor accepts Competing Bid(s) as the Highest and/or Best All Asset Bid.  During the course of the Auction, the Debtor shall, after submission of each All

Assets Overbid, promptly inform each Qualified Bidder which All Assets Overbid reflects, in the Debtor's view, the Highest and/or Best All Asset Bid. For the avoidance of doubt, Asset Class bidders may make joint All Assets Overbids.

(h)     The Debtor, after consultation with the Secured Lender and the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided that* such rules are (a) not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in this case and (b) disclosed to each Qualified Bidder at or prior to the Auction.

(i)     Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by each Asset Class Overbid and/or All Assets Overbid, the Debtor will give effect to any additional costs to be assumed by a Qualified Bidder and any additional costs or risks which may be imposed on the Debtor by any such Asset Class Overbid and/or All Assets Overbid.

Each Qualified Bidder and the Stalking Horse shall be deemed to have (i) consented and submitted to the core jurisdiction of the Bankruptcy Court, (ii) waived and released any and all disputes or objections relating to the marketing or solicitation process, the Auction and the construction and enforcement of such party's contemplated transaction documents, and (iii) consented to the jurisdiction of the Bankruptcy Court in all respects in connection with such matters included in clause (ii) and its bid.

**8.**     *Selection of Successful Bid*

Prior to the conclusion of the Auction, the Debtor, after consultation with the Secured Lender and the Committee, will review and evaluate each Competing Bid in accordance with these Bidding Procedures and determine in its reasonable business judgment which offer is the highest and/or otherwise best offer from among the Competing Bids for all of the Assets or for each of the Asset Classes submitted at the Auction (each, a "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid(s). The determination of the Successful Bid(s) by the Debtor at the conclusion of the Auction will be final, subject only to approval by the Bankruptcy Court.

As soon as practicable after the Auction, (a) the Successful Bidder will complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions of the Successful Bids and (b) the Debtor will file a notice with the Bankruptcy Court identifying the Successful Bidder and the Successful Bids, which will include copies of the Stalking Horse Agency Agreement or applicable Qualified Bidder Agreement and proposed Sale Order, in each case in the forms agreed to between the Debtor and the Successful Bidder, and marked to show all amendments and modifications, if any, made to

8

the Stalking Horse Agency Agreement submitted by the Stalking Horse (the "**Successful Bidder Agreement**") and the Sale Order proposed by the Stalking Horse.

The Debtor will sell the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) as set forth in each Successful Bidder Agreement if and as approved by the Bankruptcy Court at the Sale Hearing. The presentation of a particular Competing Bid to the Bankruptcy Court as a Successful Bid for approval does not constitute the Debtor's acceptance of the Competing Bid. The Debtor will be deemed to have accepted a Competing Bid as a Successful Bid only after such bid has been approved by the Bankruptcy Court pursuant to entry of the Sale Order.

### 9.     *Return of Deposits*

All Deposits will be returned to each Qualified Bidder not selected by the Debtor as the Successful Bidder no later than ten business days after the commencement of the Sale.

### 10.    *Forfeit of Deposits*

A Successful Bidder that breaches any of its obligations under the applicable Successful Bidder Agreement shall forfeit its Deposit, which shall become property of the Debtor's estate without any further order of the Bankruptcy Court. The forfeiture of the Deposit shall be in addition to any other rights, claims and remedies that the Debtor and its estate may have against such Successful Bidder, including, but not limited to, the terms of any Successful Bidder Agreement and any orders entered by the Bankruptcy Court in connection therewith.

### 11.    *Back-Up Bidder*

If an Auction is conducted, the Qualified Bidder(s) with the second highest and/or otherwise best Competing Bid at the Auction for the Assets or for any Asset Class, as determined by the Debtor in the exercise of its business judgment, after consultation with the Secured Lender and the Committee, will be required to serve as a back-up bidder (a "**Back-Up Bidder**") and keep such bid open and irrevocable until the date that is ten business days after the commencement of the Sale. Following the Sale Hearing, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the applicable Back-Up Bidder will be deemed to be the new Successful Bidder for the Assets or applicable Asset Class, and the Debtor will be authorized, but not required, to consummate the Sale with such Back-Up Bidder without further order of the Bankruptcy Court.

## C.     **The Sale Hearing**

The Debtor will seek entry of an order (the "**Sale Order**") from the Bankruptcy Court approving the Sale at a hearing (the "**Sale Hearing**") no later than October 3, 2014 to request that the Bankruptcy Court approve and authorize the Sale on terms and conditions determined in accordance with these Bidding Procedures, the Auction and the executed form of the Stalking Horse Agreement or Qualified Bidder Agreement, as applicable.

# EXHIBIT 2

Annette W. Jarvis (Utah State Bar No. 01649)
Jeffrey M. Armington (Utah State Bar No. 14050)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>NAARTJIE CUSTOM KIDS, INC.,<br><br>Debtor. | Bankr. Case No. 14-29666<br><br>Chapter 11<br><br>The Honorable William T. Thurman |

**NOTICE OF HEARINGS REGARDING DEBTOR'S MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BID PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF, (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF**

**AND**

**AUCTION NOTICE**

**Objection Deadline: September 29, 2014 at 4:00 p.m. (Mountain Time)
Bidding Procedures Hearing Date: October 1, 2014 at 10:00 a.m. (Mountain Time)
Auction Date: October 2, 2014 at 10:00 a.m. (Mountain Time)
Sale Hearing Date: October 3, 2014 at 10:00 a.m. (Mountain Time)**

---

       **PLEASE TAKE NOTICE** that Naartjie Custom Kids, Inc., on behalf of itself and as debtor in possession in the above-captioned case (the "<u>Debtor</u>"), on September 22, 2014, filed a motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof, (II) Authorizing (A) Sale Of Assets And (B) Store Closing Sales and (III) Granting Related Relief [Docket No. 70] (the "<u>Motion</u>")[1].

       <u>**PLEASE TAKE FURTHER NOTICE THAT YOUR RIGHTS MAY BE AFFECTED.**</u> **You should read this Notice, as well as the Motion, and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

       **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing at <u>**10:00 a.m. (prevailing Mountain Time) on October 1, 2014**</u> to consider entry of an order (the "<u>Bidding Procedures Order</u>") approving, among other things, the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1, which Bidding Procedures Order governs selection of one or more Successful Bidders.

       **PLEASE TAKE FURTHER NOTICE** that the Motion also seeks Court approval to conduct the Store Closing Sales and liquidate its inventory and furniture, fixtures and equipment.

       **PLEASE TAKE FURTHER NOTICE** that any bidder that desires to make a bid in the Auction must deliver written copies of its bid to the Notice Parties (defined below) so as to be received by each of the Notice Parties not later than <u>**4:00 p.m. prevailing Mountain Time on October 1, 2014**</u> (the "<u>Bid Deadline</u>").

       **PLEASE TAKE FURTHER NOTICE** that the Auction will be held at <u>**10:00 a.m. prevailing Mountain Time on October 2, 2014**</u> at the offices of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685.

       **PLEASE TAKE FURTHER NOTICE** that objections to the Sale must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the Notice Parties so as to be received by each of the Notice Parties not later than <u>**4:00 p.m. prevailing Mountain Time on October 2, 2014**</u>.

       **PLEASE TAKE FURTHER NOTICE** that a hearing to consider, among other things, (i) the Agency Agreement and any agency transaction agreement with the parties submitting the highest and/or otherwise best bid at the Auction, as determined by the Debtor with the consent of the Secured Lender (each a "<u>Successful Bidder</u>") and (ii) the Transaction in relation to the Store Closing Sales and waiving the Debtor's compliance with state and local laws, statutes, rules, ordinances and/or lease provisions restricting the Store Closing Sales will be held at <u>**10:00 a.m. prevailing Mountain Time on October 3, 2014**</u> before The Honorable William T. Thurman, United States Bankruptcy Judge, in his courtroom, Room 376, 350 South

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Main Street, Salt Lake City, UT 84101, or as soon thereafter as the Debtor may be heard (the "Sale Hearing").

> PLEASE TAKE FURTHER NOTICE that objections to the Motion must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the "Notice Parties": (a) counsel to the Stalking Horse, Reimer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq., email: sfox@riemerlaw.com; (b) counsel to the UCC, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4003 Attn: Jeffrey N. Pomerantz, email: jpomerantz@pszlaw.com; (c) counsel to the Debtor, Stroock & Stroock & Lavan, LLP, 2029 Century Park East, Suite 1600, Los Angeles, CA 90067 Attn: Frank A. Merola, email: fmerola@stroock.com; (d) any Successful Bidder that is not the Stalking Horse; (e) the Office of the United States Trustee for the District of Utah; and (f) counsel to the Secured Lender (collectively, the "Notice Parties").

> PLEASE TAKE FURTHER NOTICE that if you do not want the Court to grant the relief requested in the Motion, or if you want the Court to consider your views on the Motion, then you or your attorney must do each of the following:

> (1)    On or before **4:00 p.m. prevailing Mountain Time on September 29, 2014** (the "Objection Deadline"), file a written objection specifically delineating the nature of your objection at:

> > Clerk of the Court
> > United States Bankruptcy Court
> > 350 South Main Street, Room 301
> > Salt Lake City, UT 84101

> If you mail your objection to the Court for filing, you must mail it early enough so that the Court will receive it on or before the Objection Deadline specified above. You must also serve a copy on the Notice Parties at the addresses specified above.

> (2)    Attend the hearings on the Motion at **10:00 a.m. prevailing Mountain Time on October 1, 2014** and at **10:00 a.m. prevailing Mountain Time on October 3, 2014,** respectively, before the Honorable William T. Thurman, in his courtroom, Room 376, of the Frank E. Moss United States Courthouse, 350 South Main Street, Salt Lake City, Utah 84101. Failure to attend the hearings will be deemed a waiver of your objection.

> **PLEASE TAKE FURTHER NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE BIDDING PROCEDURES ORDER AND BIDDING PROCEDURES MAY RESULT IN THE FAILURE OF THE COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE PROPOSED SALE TRANSACTION.**

> PLEASE TAKE FURTHER NOTICE that this Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtor encourages

parties-in-interest to review such documents in their entirety.  The Motion, Agency Agreement, Bidding Procedures Order, Bidding Procedures and any other pleadings may be found for a fee at the Court's website (http://www.utb.uscourts.gov/) for registered users of the Public Access to Court Electronic Records (PACER) System.

DATED this 24th day of September, 2014.

**DORSEY & WHITNEY LLP**

*/s/ Annette W. Jarvis*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Proposed Attorneys for Debtor Naartjie
Custom Kids, Inc.*

# EXHIBIT 10.1(c)

Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Tel:    (801) 933-7360
Fax:    (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Proposed Attorneys for Naartjie Custom Kids, Inc.*

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | : | Chapter 11 |
| | : | Hon. William T. Thurman |
| Debtor. | : | |

---

**ORDER PURSUANT TO SECTIONS 105(A), 363, 365 AND 554 OF THE
BANKRUPTCY CODE (I) APPROVING THE DEBTOR'S ENTRY
INTO AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTOR
TO SELL CERTAIN MERCHANDISE THROUGH GOING OUT OF
BUSINESS SALES, (III) AUTHORIZING THE DEBTOR AND
THE AGENT TO ABANDON UNSOLD PROPERTY, (IV)
AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
<u>AND INTERESTS, AND (V) GRANTING RELATED RELIEF</u>**

Naartjie Custom Kids, Inc., debtor and debtor in possession herein (the "Debtor"), having filed its "*Motion For Entry Of Orders (I) (A) Approving Auction Procedures, (B) Approving The Form And Manner Of Notice Of Sale, and (C) Scheduling an Auction and Sale Hearing; and (ii) (A) Approving The Sale Or Sale Of The Debtor's Assets, (B) Authorizing The Debtor To Abandon Unsold Property, and (C) Waiving Stay Provisions Pursuant To Bankruptcy Rules 6004(H) And 6006(D)*" [Docket No. 70] (the "<u>Sale Motion</u>"); and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over the matters raised by the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Sale Motion and the relief requested therein is a "core" proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Sale Motion having been given, and it appearing that no other notice need be given; and the Debtor and Great American Group, LLC (the "<u>Agent</u>") having agreed upon terms and conditions, as set forth in that certain Agency Agreement, dated as of October 2, 2014, substantially in the form attached hereto as <u>Exhibit "A"</u> (the "<u>Agency Agreement</u>"), for, <u>inter alia</u>, the Agent to act as the Debtor's exclusive agent to conduct "going out of business", "store closing", "sale on everything", "everything must go", or similarly themed sale  or other disposition (as further described below, the "<u>Sale</u>") of all of Debtor's Merchandise[1] located at (or to be shipped to) the Debtor's Stores and Distribution Centers, each as identified in the Agency Agreement (collectively defined herein as the "<u>Closing Locations</u>"), with each such sale to be free and clear of any and all liens, claims and encumbrances of any kind or nature, and further subject to the terms and provisions of the Agency Agreement and this

---

[1]     All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Sale Motion or the Agency Agreement, as applicable. In the event of a conflict between any of the terms and provisions of this Order, on the one hand, and any of the terms and provisions of the Agency Agreement, on the other hand, the terms and provisions of this Order shall control.

2

Order; and the transactions represented by the Agency Agreement having been determined to be the highest and best offer for the right to conduct the Sale; and a hearing having been held on October 1, 2014 (the "Bidding Procedures Hearing"), whereupon the Court entered its *Order (1)(A) Authorizing Entry Into Agency Agreement, (B) Auhtorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction (D) Scheduling Sale Hearing and Approving Notice Thereof and (II) Granting Related Relief* (the "Bidding Procedures Order") [Docket No. 107]; and the Debtor having conducted an auction on October 2, 2014 ("Auction") among Qualified Bidders (as defined in the Bidding Procedures Order); and an approval and sale hearing having been held on October 3, 2014 (the "Approval Hearing") to consider the relief requested in the Sale Motion and approval of the Agency Agreement and the transactions set forth therein (collectively, the "Transactions"); and appearances of all interested parties having been noted on the record of the Approval Hearing; and upon all of the proceedings had before the Court (including, but not limited to, the testimony and other evidence proffered or adduced at the Bidding Procedures Hearing, and the Approval Hearing); and the Court having found and determined that (i) the relief sought in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest, and (ii) that the legal and factual bases set forth in the Sale Motion establish good, sufficient and just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

   **FOUND AND DETERMINED THAT**[2]**:**

   A.   **Jurisdiction:** This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134. Approval of the Debtor's entry

---

[2]      The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

into the Agency Agreement, and the transactions contemplated thereby is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.   **Venue:** Venue of this chapter 11 case in this District is proper pursuant to 28 U.S.C. § 1409(a).

C.   **Statutory Predicates:** The statutory predicates for the approval of the Agency Agreement and Transactions contemplated therein are Sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.   **Notice:** Proper, timely, adequate and sufficient notice of the Sale Motion and the Approval Hearing has been provided in accordance with Sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 6006, and in compliance with the Bidding Procedures Order. No other or further notice is required.

E.   **Opportunity to be Heard:** A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and the Transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Official Committee of Unsecured Creditors (the "Committee"); (ii) Salus Capital Partners, LLC, as Debtor's pre-petition and post-petition senior secured lender (the "Lender"); (iii) the United States Trustee for the District of Utah; (iv) the Offices of the Attorney General for each state where the Debtor operates a Closing Location; (v) the Internal Revenue Service; (vi) the Agent; (vii) all landlords for the Closing Locations; (viii) all parties identified by the Debtor as potentially interested purchasers; (ix) all parties who are known to possess or assert an interest in the assets that are the subject of the Agency Agreement (collectively, the "Assets"); (x) all parties who are known to possess or assert a secured claim against the Assets; (xi) the relevant

4

taxing authorities having jurisdiction over any of the Assets; (xii) all related government entities that have an interest in regulating the Sale ((i) through (xii) collectively, the "Notice Parties"). The notice provided constitutes good and sufficient notice of the Sale Motion and the Approval Hearing, and no other or further notice of the Sale Motion or the Approval Hearing or the entry of this Order need be given.

F.     **Objections Resolved, etc.:**  Objections, if any, to the Sale Motion have been withdrawn, resolved or adjourned and, to the extent not withdrawn, resolved or adjourned, are hereby overruled.

G.     **The Bidding Procedures**: As set forth in the Bidding Procedures Orders, and as demonstrated at the Bidding Procedures Hearing, the best interests of the Debtor will be served by this Court granting the relief requested in the Sale Motion, including the approval of the Auction Procedures and the Bid Protections.

H.     **Marketing Process:** As demonstrated by: (i) testimony and other evidence proffered or adduced at the Bidding Procedures Hearing and the Approval Hearing, and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Approval Hearing, the Debtor having thoroughly marketed the Assets and having conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or who the Debtor believed may have an interest in acquiring or liquidating the Assets, to submit competing bids. The Debtor and the Agent have respectively negotiated and undertaken its roles leading to the Sale and the Transactions and entry into the Agency Agreement in a diligent, non-collusive, fair and good faith manner.

I.     **Highest and Best Offer:** The Agency Agreement, substantially in the form attached hereto as Exhibit "A", including the form and total consideration to be realized by the

Debtor pursuant to the Agency Agreement, is (i) the highest and best offer received by the Debtor for the Assets, (ii) fair and reasonable, and (iii) in the best interests of the Debtor, its estate, its creditors and all other parties in interest. There is no legal or equitable reason to delay entry into the Agency Agreement and the Transactions contemplated therein.

J.     **Business Judgment:** The Debtor's decisions to (i) enter into the Agency Agreement and (ii) perform under and make payments required by the Agency Agreement are reasonable exercises of the Debtor's sound business judgment consistent with its fiduciary duties and are in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

K.     **Personally Identifiable Information:**   The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing personally identifiable information).

L.     **Time of the Essence:** Time is of the essence in effectuating the Agency Agreement and proceeding with the Transactions contemplated therein without interruption. Based on the record of the Bidding Procedures Hearing and the Approval Hearing, and for the reasons stated on the record at the Approval Hearing, the conduct of the Sale in accordance with the terms of the Agency Agreement and this Order must be commenced rapidly following entry of this Order to maximize the value that the Agent may realize from the Sale and concomitantly the value that the Debtor may realize from entering into the Agency Agreement. Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h) and 6006(d) and permit the immediate effectiveness of this Order.

M.     **Sale Free and Clear:** The Debtor is the sole and lawful owner of the Merchandise and the Assets. The Merchandise and the Assets constitute property of the Debtor's

6

estate and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of

the Bankruptcy Code. A sale of the Merchandise and the Assets other than one free and clear

(subject to the terms of the Agency Agreement, and this Order) of liens, claims, encumbrances,

defenses (including, without limitation, rights of setoff and recoupment) and interests, including,

without limitation, security interests of whatever kind or nature, mortgages, conditional Sale or

title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances,

assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery,

judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes

(including foreign, state, local and ad valorem taxes), licenses, covenants, restrictions,

indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution,

indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter

ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the

law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in

Section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-

petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled,

perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or

unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,

matured or unmatured, legal or equitable (collectively, "Liens") and without the protections of

this Order would hinder the Debtor's ability to obtain the consideration provided for in the

Agency Agreement, and thus, would impact materially and adversely the value that the Debtor's

estate would be able to obtain for the sale of such Merchandise and Assets. But for the

protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would

not have offered to pay the consideration contemplated in the Agency Agreement. In addition,

each entity with a Lien or other encumbrance upon the Merchandise and/or the Assets, (a) has consented to the Sale, the sale and disposition of the Assets in the manner contemplated by the Agency Agreement and this Order or is deemed to have consented to the Sale, the sale of the Merchandise and Assets, (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (c) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens who did not object, or who withdrew its objections, to the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sale and the Transactions free and clear of Liens are appropriate pursuant to Section 363(f) of the Bankruptcy Code and are in the best interests of the Debtor's estate, its creditors and other parties in interest.

N.   **Arms-Length Sale:** The Guaranteed Amount and other consideration to be paid by the Agent under the Agency Agreement were negotiated at arm's-length and constitute reasonably equivalent value and fair and adequate consideration for the right to serve as the Debtor's exclusive agent to conduct the Sale of the Merchandise and other Assets, respectively, under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtor or its creditors under any applicable laws.

O.      **Good Faith:** The Debtor, its members, management and board of directors and,

the Agent, its members and its officers, directors, employees, agents and representatives actively

participated in the bidding process and acted in good faith. The Agency Agreement was

negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and

in good faith as that term is used in Section 363(m) of the Bankruptcy Code. The Agent shall be

protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or

modified on appeal. The Debtor was free to deal with any other party interested in buying or

selling on behalf of the Debtor's estate some or all of the Merchandise and/or the Assets. Neither

the Debtor nor the Agent have engaged in any conduct that would cause or permit the Sale or the

Transactions, the Agency Agreement or any related action or the transactions contemplated

thereby to be avoided under Section 363(n) of the Bankruptcy Code, or that would prevent the

application of Section 363(m) of the Bankruptcy Code. The Agent has not violated Section

363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in

a collusive manner with any person and was not controlled by any agreement among bidders.

The Agent's prospective performance and payment of amounts owing under the Agency

Agreement are each in good faith and for valid business purposes and uses.

P.      **Insider Status:** The Agent is not an "insider" or "affiliate" of the Debtor as those

terms are defined in Section 101(31) of the Bankruptcy Code. No common identity of directors

or controlling stockholders exists between the Agent and the Debtor.

Q.      **Security Interests:** The liens provided for in the Agency Agreement and this

Order to secure the obligations of the Debtor under the Agency Agreement to the Agent are

necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value

for the Debtor's estate. The absence of such protections would impact materially and adversely

the value available to the Debtor in the liquidation of Merchandise in partnership with a liquidation agent. But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtor the compensation provided for under the Agency Agreement. In addition, the secured lenders, which hold security interests in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in this Order.

R.    **Corporate Authority:** Subject to the entry of this Order, the Debtor (i) has full corporate or other power to execute, deliver and perform its obligations under the Agency Agreement and all other transactions contemplated thereby, and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) has all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) has taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby. No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtor to consummate such Transactions.

S.    **No Successor Liability:** No sale, transfer or other disposition of the Merchandise, the Assets or otherwise pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Liens asserted against the Debtor or the Debtor's interests in such Merchandise or Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtor or its estate.

10

**T.**     **No Sub Rosa Plan:** Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

**U.**     **Approval Order:** This Order shall constitute the Approval Order as contemplated under the Agency Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**A.**     **Sale Motion Granted; Objections Overruled**

1.     The relief requested in the Sale Motion is **GRANTED** as set forth herein.

2.     Any remaining objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

**B.**     **The Bidding Procedures and Bid Protections**

3.     The Bidding Procedures and Bid Protections are hereby ratified and approved on a final basis.

**C.**     **The Agency Agreement Is Approved and Authorized**

5.     Subject to the provisions of this Order, the Agency Agreement is approved pursuant to Sections 105 and 363 of the Bankruptcy Code. The Debtor is hereby authorized, empowered and directed to enter into and perform under the Agency Agreement and each of the transactions contemplated therein (including, without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement (following appropriate consultation with the Lender), which Agency Agreement and resolutions shall be binding on all parties (including, without limitation, the Debtor, the Committee, any successor

11

chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of the Court) is hereby approved in its entirety and is incorporated herein by reference. The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in its entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

6.      The Debtor is authorized, pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, to retain the Agent to conduct the Sale and to sell the Assets in the manner contemplated by the Agency Agreement.

7.      Each of the Transactions provided for under the Agency Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, but not limited to the laws of each state in which the Assets are located. The Transactions approved by this Order are not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

8.      All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

9.      Subject to the provisions of this Order, the Debtor and the Agent are hereby authorized, pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale and consummate the sale of the Assets in accordance with the Agency Agreement and the sale guidelines (the "Guidelines") attached hereto as Exhibit "B", which Guidelines are hereby approved in its entirety.

10.    Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor, the Agent and each of its respective officers, employees and agents are hereby authorized and directed to execute such documents and to take any and all such actions as may be necessary or desirable to carry out the Sale, consummate the sale of the Assets and effectuate or implement the Agency Agreement and each of the transactions and related actions contemplated or set forth therein. The Agent is specifically authorized to act on behalf of the Debtor in connection with the Sale and the sale of the Assets and no other consents or approvals are necessary or required for the Debtor to carry out the Sale, consummate the sale of the Assets, effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

11.    The Agent shall not assume, or in any way be liable or responsible for, any claim or liability against any of the Debtor, whether known or unknown, whether asserted or unasserted, whether accrued or unaccrued, whether contingent or not, whether at law or in equity or otherwise, whether existing on the Sale Commencement Date or arising thereafter and whether relating to or arising out of the Debtor's business, the Merchandise, the Assets, any excluded assets or otherwise (including, without limitation, (x) liabilities based on any successor liability theory and (y) liabilities relating to the pre-petition or post-petition operation of the Debtor's business, the Merchandise or the Assets (or the use of the Merchandise and/or the Assets). The Agent shall have no successor liability whatsoever with respect to any Liens or claims of any nature that may exist against the Debtor (or any predecessor or affiliate of any of the Debtor), including, without limitation, the Agent shall not be and shall not be deemed to be: (i) a successor in interest within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental product

13

line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtor, and except as may be provided in the Agency Agreement with regard to the payment of "expenses" of the Sale under Section 4.1 thereof, the Agent shall have no obligation to pay the Debtor's wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtor, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise; provided, that the foregoing shall in no way limit the indemnification obligations of the Agent under Section 13.2 of the Agency Agreement.

## D.    Conduct of the Sale and the Transaction

12.    Except as otherwise provided in the Agency Agreement, pursuant to Section 363(f) of the Bankruptcy Code the Agent shall be authorized to sell all of the Merchandise located or to be located at the Closing Locations and shall be entitled to sell the Assets, in each case free and clear of any and all Liens, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Lender (but only to the extent allowed in and pursuant to the Agency Agreement and this Order, as applicable) whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing Liens (including, but not limited to, the DIP Liens, the Prepetition Liens, and the Adequate Protection Liens) [3] encumbering all or any portion of the Merchandise, the Assets, or the Proceeds thereof attaching only to the Guaranteed Amount, and other amounts payable by Agent to the Debtor under the Agency Agreement, with the same validity, priority, force and effect as the same had with

---

[3] As such terms are defined in the Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (I) Approving Postpetition Financing, (Ii) Authorizing Use Of Cash Collateral, (Iii) Granting Liens And Providing Superpriority Administrative Expense Status, (Iv) Granting Adequate Protection, (V) Modifying Automatic Stay, And (Vi) Scheduling A Final Hearing entered by this Court on September 18, 2014, docket entry no. 66 (the "Interim DIP Financing Order").

14

respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.  For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to the Proceeds (as defined in the Agency Agreement) of the Sale.

13.	If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other documents or agreement evidencing liens on or interests in the Merchandise or the Assets shall not have delivered to the Debtor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Liens that the person or entity, except the Lender (subject to Paragraph 35 below), has with respect to the Merchandise and the Assets, each such person or entity is hereby directed to deliver all such statements, instruments, and releases and the Debtor and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same. The Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale, the sale of the Assets and the related transactions contemplated by the Agency Agreement.

14.	All entities that are presently in possession of some or all of the Merchandise, the Assets or other property in which the Debtor holds an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

15.	Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Order as

binding authority so as to authorize the Debtor and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency Agreement.

16.     During the Sale Term, Agent shall be granted a royalty-free license to use the Debtor's trade names, trademarks, logos, and customer, mailing and e-mail lists, websites and social media relating to and used in connection with the operation of the Closing Locations, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement; provided, however, the Agent shall not receive Personally Identifiable Information (as defined in Section 101(41A) of the Bankruptcy Code) from the Debtor.

17.     Pursuant to Section 554(a) of the Bankruptcy Code, the Debtor and the Agent, as applicable, are permitted to abandon property of the Debtor's estate in accordance with the terms and provisions of the Agency Agreement, without the Agent incurring liability to any person or entity that may claim an interest in such abandoned property; provided, however, that unless the Agent otherwise consents, the Debtor may only abandon property located in any Closing Location on or after the applicable Vacate Date. In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtor or other party in interest to object thereto.

18.     Before any sale, abandonment or other disposition of the Debtor's computers (including software) and/or cash registers and any other point of sale Owned FF&E located at the Closing Locations (collectively, "POS Equipment") which may contain customer lists,

identifiable personal and/or confidential information about the Debtor's employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtor (and not the Agent) shall take such steps as shall be necessary and/or appropriate to remove or cause to be removed the Confidential Information from the POS Equipment, and unless otherwise notified by Debtor in writing to the contrary, the Agent shall be entitled to assume and presume that the Debtor have satisfactorily completed such steps at or prior to the time of any such sale, abandonment or other disposition.

19.     Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtor to comply with environmental laws consistent with its rights and obligations as Debtor in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Further, nothing herein permits the Debtor or the Agent to conduct any Sale at a Closing Location beyond the stated expiration under the lease for such Closing Location or extends the term of the lease for such Closing Location. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in

17

this Order shall alter or affect the Debtor's and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

### E.    Disputes Between Government Units and the Debtor or the Agent

20.    To the extent that the conduct of the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation Sale, or bulk sale laws (each a "GOB Law", and together the "GOB Laws"), including certain fast pay laws and laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the Sale (collectively, the "Liquidation Laws"), the following provisions shall apply:

a. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtor and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to

18

conduct, advertise, post signs and banners, and otherwise promote the Sale as a "going out of business", "store closing", "sale on everything", "total liquidation", "everything must go", or similarly themed sale (including, without limitation, by means of media advertising, interior and exterior banners, A-frames, and similar signage and the use of sign walkers and street signage) without further consent of any person (other than the Debtor as expressly provided for in the Agency Agreement), in accordance with the terms and conditions of the Agency Agreement, the Guidelines and this Order and without further compliance with the GOB Laws and the Liquidation Laws, except those designed to protect public health and safety.

b.    Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to the provisions of this Order, are authorized to conduct the Sale in accordance with the terms of this Order and the Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

c.    Within five (5) business days of entry of this Order, the Debtor shall serve copies of this Order, the Agency Agreement and the Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, and (iii) the division of consumer protection for each state where the Sale will be held.

d.    To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the

19

Reserved Dispute. Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtor and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter. If the Debtor, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

     e.   In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtor, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtor's or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtor's or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent  further order of this Court. The Court grants authority for the Debtor and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency Agreement, and/or the Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

f.  If, at any time, a dispute arises between the Debtor and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

21.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner advertising and the Debtor and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

22.    Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtor and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" or similar provisions. The Agent and landlords of the Closing Locations are authorized to enter into separate agreements and/or side letters ("Side Letters") between themselves modifying the Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords; provided that nothing in such Side Letters affects the provisions of

21

Paragraphs 20-21; and provided, further, that nothing in any Side Letter shall impose any obligation or liability upon the Debtor or its estate that is not in accordance with the terms of the Agency Agreement or this Order without the express written agreement of the Debtor. In the event of any conflict between the Guidelines and any Side Letter, the terms of such Side Letter shall control. In the event of a dispute regarding the Guidelines or any Side Letter, counsel for each of the Debtor, the applicable landlord, and the Agent shall meet and confer to resolve the dispute. In the event that the parties are unable to resolve the dispute, any party seeking relief may request a prompt hearing before the Court to resolve such dispute.

23.    Except as expressly provided for herein or in the Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 20-21 shall apply), no person or entity, including but not limited to any utility company, internet service provider, landlord, licensor, creditor or other interested party or any person acting for or on behalf of the foregoing, shall take any action to directly or indirectly prevent, interfere with, impede or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor, the Agent, or the landlords at the Closing Locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other liquidation sales at the Closing Stores and/or seek to recover damages for

breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

24.     The Agent shall have the right to use the Closing Locations and all related services, furniture, fixtures, equipment and other assets of the Debtor for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the Guidelines, the Agency Agreement and this Order.

25.     The Agent shall be permitted to include in the Sale Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement. Any transactions relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from Agent to Debtor.   Debtor acknowledges that the Additional Agent Merchandise shall be consigned to Debtor as a true consignment under Article 9 of the Uniform Commercial Code in effect in the State of Utah (the "UCC").   Agent is hereby granted a first priority security interest (subject to the subordination provisions set forth below in Paragraph 35 of this Order) in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise Proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtor as the consignee therefor, and Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise Proceeds). Subject to the terms of the Agency Agreement, and solely to the extent applicable, the proceeds of the sales of Additional Agent

Merchandise sold at a particular Closing Location shall be taken into account when calculating any percentage rent due pursuant to the terms of the applicable lease agreement.

26.    Nothing in this Order shall (a) alter or affect the Debtor's obligations to comply with Section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtor to file an appropriate motion or otherwise seek appropriate relief if the Debtor fails to comply with Section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sale in accordance with the Guidelines shall not be a violation of Section 365(d)(3) of the Bankruptcy Code.

27.    The Agent shall accept as payment gift certificates, gift cards and store merchandise credits validly issued by the Debtor prior to the Sale Commencement Date in any transaction conducted in connection with the Sale pursuant to the provisions of Section 8.6 of the Agency Agreement; provided, however, the Agent shall not be required to accept any mall and/or landlord-issued gift cards, gift certificates, merchandise credits or other similar items unless satisfactory arrangements (as determined in the sole and exclusive discretion of Agent) are made between and among the Agent and the issuer of such items for reimbursement to the Agent for all such amounts honored during the Sale Term; provided, further, however, that notwithstanding anything to the contrary in this Order, the Debtor shall not be obligated to reimburse the Agent for any amounts honored in connection with any gift cards, gift certificates, merchandise credits or other similar items that were issued by any party other than the Debtor without the express written agreement of the Debtor.  The Debtor shall reimburse Agent for the amounts honored as part of the weekly reconciliation provided for and subject to the limitations set forth in Sections 8.6 and 8.7(a) of the Agency Agreement and this paragraph.

28.    The Agent shall accept returns of merchandise sold by the Debtor prior to the Sale

Commencement Date for the first ten (10) days of the Sale pursuant to the provisions of Section

8.5 of the Agency Agreement, provided that such return is otherwise in compliance with the

Debtor's return policies in effect as of the date such item was purchased and the customer is not

repurchasing the same item so as to take advantage of the sale price being offered by the Agent.

The Debtor shall reimburse Agent for the amounts honored as part of the weekly reconciliation

provided for and subject to the limitations set forth in Sections 8.5 and 8.7(a) of the Agency

Agreement.

29.    To the extent applicable, all state and federal laws relating to implied warranties

for latent defects shall be complied with and are not superseded by the sale of said goods or the

use of the terms "as is" or "final sale." The Debtor and/or the Agent shall accept return of any

goods purchased during the Sale that contain a defect which the lay consumer could not

reasonably determine was defective by visual inspection prior to purchase for a full refund,

provided that the consumer must return the merchandise within twenty-one (21) days of their

purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent"

defect. The Debtor shall promptly reimburse Agent in cash for any refunds Agent is required to

issue to customers in respect of any goods purchased during the Sale that contain such a latent

defect.

30.    Except as expressly provided for in the Agency Agreement, nothing in this Order

or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale, the sale

of the Assets or the transactions contemplated by the Agency Agreement shall be deemed to

constitute an assumption by the Agent of any of the Debtor's obligations relating to any of the

Debtor's employees. Moreover, the Agent shall not become liable under any collective

bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

31.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the collection, reporting and the payment of any and all sales taxes is the sole responsibility of the Debtor. The Debtor is directed to remit all taxes arising from the Sale to the applicable taxing authorities as and when due, provided that in the case of a bona fide dispute the Debtor is only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the taxing authority. For the avoidance of doubt, sales taxes collected and held in trust by the Debtor shall not be used to pay any creditor or any other party, other than the taxing authority for which the sales taxes are collected. The Agent shall collect, remit to the Debtor and account for sales taxes as and to the extent provided in the Agency Agreement. This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

32.     Subject to the terms set forth in the Agency Agreement, the Agent is authorized and empowered to transfer the Merchandise and Additional Agent Merchandise between and among the Closing Locations.

## F.     Superpriority Claims and Liens Granted To Agent

34.     Any amounts owed by Debtor to the Agent under the Agency Agreement shall be granted the status of superpriority claims in this case pursuant to Section 364(c) of Bankruptcy Code senior to all other superpriority claims.

35.     Pursuant to Section 364(d) of the Bankruptcy Code, the Agent shall have, effective upon payment by the Agent of the Initial Guaranty Payment on the Payment Date and

delivery of the Letter of Credit, a valid, duly perfected first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 of the Agency Agreement; (v) in the event the Debtor elect the FF&E Guaranty Option, the proceeds realized from the sale or other disposition of Owned FF&E after payment of the FF&E Guaranty Amount; or alternatively, the FF&E Commission; (vi) all "proceeds" (within the meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of the Debtor to the Agent under the Agency Agreement. For the avoidance of doubt, the Agent Collateral shall not include the Guaranteed Amount or any other amount payable by the Agent to the Debtor under the Agency Agreement or any proceeds thereof. Upon entry of this Order, payment of the Initial Guaranty Payment and delivery of the Letter of Credit, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation. Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Lender and the Debtor), the Agent's security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests; provided, however, that (x) until the Debtor receives payment in full of the Guaranteed Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and all other amounts due to the Debtor under the Agency Agreement, the security interest granted to the

27

Agent hereunder shall be junior and subordinate in all respects to the security interests of the

Lender in the Agent Collateral but solely to the extent and amount of the unpaid portion of the

Guaranteed Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the

Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and other amounts due

to the Debtor under the Agency Agreement and (y) upon payment in full of the Guaranteed

Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E

Commission) or the FF&E Guaranty Amount, as applicable, and all other amounts due to the

Debtor under the Agency Agreement, any security interest or lien of the Lender in the Agent

Collateral shall be junior and subordinate in all respects to the security interest and liens of the

Agent in the Agent Collateral. The Debtor shall cooperate with the Agent with respect to all

filings (including, without limitation, UCC-1 financing statements) and other actions to the

extent reasonably requested by the Agent in connection with the security interests and liens

granted under the Agency Agreement. In the event of a Default by any Debtor under the Agency

Agreement, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent

shall have, in addition to all other rights and remedies, the rights and remedies of a secured party

under the Uniform Commercial Code as the same may be in effect from time to time in the State

of Utah.

36.     During the Sale Term applicable to any Closing Location and for purposes of

conducting the Sale at such Closing Location, Agent shall have the right to the unencumbered

use and occupancy of, and peaceful and quiet possession of, such Closing Location and the

assets currently located at such Closing Location, in each case subject to the extent of the

Debtor's rights and entitlement to use the same, and the services provided at such Closing

Location to the extent the Debtor is entitled to such services, and, subject to the terms of the

28

Agency Agreement, the Debtor shall not assume and assign, reject or otherwise terminate any real property lease or vacate any Closing Location until the applicable Sale Termination Date or Vacate Date.

37.     The Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens of any kind against the Assets as such Liens may have been recorded or may otherwise exist, in accordance with the terms of this Order. Any liens, Liens, interests, liabilities, obligations, claims, charges and interests of any kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp, transfer tax or similar tax arising from the transfer of the Assets to the Agent shall be filed against the Debtor's estate and shall not be asserted against the Agent. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, all persons and Governmental Units (as defined in Sections 101(27) and 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Agent to recover any claim which such person or Governmental Unit has or may assert against the Debtor (as such claims exist immediately prior to the closing). The Agent has not assumed or otherwise become obligated for any of the Debtor's liabilities. Consequently, all holders of liabilities retained by the Debtor are hereby enjoined from asserting or prosecuting any claim, encumbrance or cause of action against the Agent to recover on account of any such liabilities. Pursuant to Sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, all parties holding any claim, encumbrance or cause of action against the Debtor, its estate or its  assets, the Debtor's employees, former employees and members, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, including such officials maintaining any authority relating to environmental, labor and health and safety laws, and its respective successors or assigns, are hereby permanently

and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind or the employment of any process or any act to collect, offset or recover such claim, encumbrance or cause of action against the Agent, or that seeks to impose liability upon the  Agent or any affiliate, successor or assign thereof, or against the Assets under the laws of the United States, any state, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee liability or any liability for pre- or post-petition claim, encumbrance or cause of action against the Debtor by reason of the disposition of the Assets in the manner contemplated by the Agency Agreement and this Order, including, without limitation, pre- and post-petition claims, Liens or causes of action of any federal, state or local governmental entities, of any current or former employee for claims arising out of employment and termination of employment, including, without limitation, claims for wages, bonuses, commissions, accrued vacation, severance, continuation of coverage under COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without limitation, obligations in respect of retiree medical coverage or benefits.

38.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agency Agreement and this Order.

39.     The provisions of this Order shall be self-executing, and neither the Debtor nor the Agent shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtor and the Agent and each of its respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any

and all documents and instruments that either the Debtor or the Agent deem necessary or appropriate to implement and effectuate the terms of the Agency Agreement and  this Order.

40.     The Agency Agreement and any related agreement may be waived, modified, amended, or supplemented by agreement of the Debtor, the Agent, and the Lender, without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates this Order and the Agency Agreement and any related agreement; provided further that the Sale Termination Date shall not be later than January 15, 2015, unless either: (a) extended by further order of the Court, or (b) the Debtor, Agent, the Lender, and the applicable landlord agree in writing to extend the Sale Termination Date at such landlord's location.

41.     The Agent shall not be obligated to (i) continue or maintain in effect, or assume any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreement to which any Debtor is a party or has any responsibility therefor, including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee pension plan or the termination of any such plan.

## G.     **Order Binding**

42.     This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of its office, or contract,

31

to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

43.     This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtor's creditors (whether known or unknown), the Debtor, the Agent and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Merchandise and the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of reorganization/liquidation for the Debtor or converting the Debtor's case from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding case and shall be binding upon the Debtor, the Agent and their respective successors and permitted assigns, including any trustees or other fiduciaries hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in the Debtor's case shall be and hereby is authorized  and directed to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and any such trustee shall be and hereby are authorized and directed to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

**H.**     **Good Faith.**

44.     Entry into the Agency Agreement is undertaken by the parties thereto in good

faith, as that term is used in Section 363(m) of the Bankruptcy Code, and Agent shall be

protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or

modified on appeal. The reversal or modification on appeal of the authorization provided herein

to enter into the Agency Agreement and consummate the transactions contemplated thereby shall

not affect the validity of such transactions, unless such authorization is duly stayed pending such

appeal. The Agent is entitled to all of the benefits and protections afforded by Section 363(m) of

the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject

to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

**I.      Other Provisions**

45.     The Agent is a party in interest and shall have the ability to appear and be heard

on all issues related to or otherwise connected to this Order, the various procedures contemplated

herein, any issues related to or otherwise connected to the Sale, the Transactions and the Agency

Agreement.

46.     Nothing contained in any plan confirmed in the Debtor's chapter 11 case or any

order of this Court confirming such plan or in any other order in these chapter 11 case (including

any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy

Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or this

Order.

47.     Except with respect to any Governmental Unit (as to which the provisions of

Paragraphs 20-21 shall apply), this Court shall retain exclusive jurisdiction with regard to all

issues or disputes relating to this Order or the Agency Agreement, including, but not limited to,

(i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any

way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtor, the landlords and/or the Agent for protection from interference with the Sale and the Transactions, (iii) any other disputes related to the Sale and the Transactions, and (iv) to protect the Debtor and/or the Agent against any assertions of Liens. No such parties or person shall take any action against the Debtor, the Agent, landlords of the Closing Locations, the Sale or the Transactions until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

48.     Notwithstanding Bankruptcy Rules 4001, 6004 and 6006, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Agent are free to perform under the Agency Agreement at any time, subject to the respective terms thereof.

49.     Any and all bulk sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Sale Motion and the jurisdiction of the Court.

50.     This Order constitutes an authorization of the conduct of the Debtor and the Agent in connection herewith.

51.     All utilities, landlords, creditors and all persons acting for or on its behalf shall not interfere with or otherwise impede the conduct of the Sale and the Transactions or institute any action in any court (other than in the Bankruptcy Court) or before any administrative body

which in any way directly or indirectly interferes with or obstructs or impedes the conduct of the Sale and the Transactions.

52.    The Debtor shall retain sufficient funds, or make other arrangements satisfactory to the Debtor and the Agent, to enable the Debtor to fully satisfy and perform its obligations under the Agency Agreement and this Order and the Debtor shall be authorized and directed to use those funds to fully satisfy and perform its obligations under the Agency Agreement and this Order.

53.    Immediately upon the Payment Date and on each other date on which payment is to be made by the Agent to or for the benefit of the Debtor, the Debtor is authorized and directed to repay, or cause to be repaid, the Lender's pre- and post-petition senior secured claims, indefeasibly and in cash, by making one or more payments to the Lender.

54.    Except as modified hereby, the Interim DIP Financing Order shall remain in full force and effect.

55.    Notwithstanding any provisions to the contrary in the any order of the Bankruptcy Court authorizing the Debtor's use of cash collateral order, amounts paid to the Debtor by the Agent in respect of Central Service Expenses may be used by Debtor solely to pay for Central Services.

56.    To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement, the Guidelines, or the Interim DIP Financing Order, this Order shall govern and control.

---

(END OF DOCUMENT)

# EXHIBIT 11.1(d)

# List of Pre-Existing Liens

- **Salus Capital**
- **New Series C Preferred Stock Convertible Promissory Notes**

# EXHIBIT 11.1(k) and (o)

# <u>List of Extraordinary POS Activity</u>

## None

# EXHIBIT 11.1(l)

# List of Pending Matters

## None

# EXHIBIT 11.1(u)

# <u>Promotions or Discounts</u>

- Nothing out of the ordinary course that is not part of Naartjie's internally published promotion program.

# EXHIBIT B

## SALE GUIDELINES

1.      The Sale shall be conducted so that the Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

2.      The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

3.      On "shopping center" property, the Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; provided that Agent may solicit customers in the Stores themselves. On "shopping center" property, the Agent shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.      At the conclusion of the Sale, the Agent shall vacate the Stores and the Distribution Center in broom clean condition, and shall leave the locations in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, in accordance with Section 6 of the Agency Agreement, provided, however, the Merchant and the Agent hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Store or the Distribution Center.

5.      The Merchant and the Agent may advertise the Sale as a "going out of business", "store closing", "sale on everything", or similar themed sale.

6.      Agent shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Agent shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. Nothing contained herein shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, shall not be wider than the storefront of the Store, and shall not be larger than 4 feet x 40 feet. In addition, the Merchant and the Agent shall be permitted to utilize sign walkers and street signage in a safe and professional manner and in accordance with the terms of the Approval Order. Nothing contained herein shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, the Agent shall not make any alterations to the storefront or exterior walls of any Stores.

9.      The Agent shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Store.

10.     The Agent shall keep Stores' premises and surrounding areas clear and orderly consistent with present practices.

11.     Subject to the provisions of the Agency Agreement and the Approval Order, the Agent shall have the right to sell all Merchant-owned furniture, fixtures, and equipment located at the Stores and Distribution Center (the "Merchant FF&E"). The Agent may advertise the sale of the Merchant FF&E in a manner consistent with these Sale Guidelines. The purchasers of any Merchant FF&E sold during the Sale shall be permitted to remove the Merchant FF&E either through the back shipping areas at any time, or through other areas after store business hours. For the avoidance of doubt, as of the Sale Termination Date the Agent may abandon, in place and without further responsibility or obligation, any unsold Merchant FF&E located at a Store, the Distribution Center and/or corporate offices. Any abandoned Merchant FF&E left in a Store, the Distribution Center and/or the corporate offices after the underlying lease is rejected shall be deemed abandoned to the landlord, with the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.

12.     The Agent shall be entitled to include Additional Agent Merchandise in the Sale in accordance with the terms of the Approval Order and the Agency Agreement.

13.     At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases. The Merchant, the Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.

14.     Post-petition rents shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease. Agent shall have no responsibility therefor.

15.     The rights of landlords against Merchant for any damages to a Store or the Distribution Center shall be reserved in accordance with the provisions of the applicable lease.

16.     If and to the extent that the landlord of any Store affected hereby contends that the Agent or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and the Agent's counsel as follows:

2

If to the Merchant:

        Naartjie Custom Kids, Inc.
        3676 W California Ave., Suite D-100
        Salt Lake City, UT 84104
        Attn: _____
        Tel: _____
        Email: _____

        With a copy to (which shall not constitute notice):

        Dorsey & Whitney LLP
        136 South Main Street
        Suite 1000
        Salt Lake City, UT 84101-1655
        Attn:   Annette W. Jarvis, Esq.
        Tel:    (801) 933-7360
        Email: jarvis.annette@dorsey.com

If to the Agent:

        Great American Group, LLC
        21860 Burbank Blvd., Suite 300 South
        Woodland Hills, CA 91367
        Attn:   Mark P. Naughton
        Tel:    847 943 2086
        Email: mnaughton@greatamerican.com

      17.    To the extent there are any inconsistencies between these Sale Guidelines and the Agency Agreement, the terms of the Agency Agreement shall control. To the extent there are any inconsistencies between these Sale Guidelines and the Approval Order, the terms of the Approval Order shall control.

3