Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Proposed Attorneys for Debtor Naartjie Custom Kids, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105, 327, 328 AND 363 AND FED. R. BANK. P. 2014(a), (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF SIERRACONSTELLATION PARTNERS, LLC AS RESTRUCTURING ADVISORS FOR THE DEBTOR AND (II) APPROVING, EFFECTIVE AS OF THE PETITION DATE, THE AGREEMENT WITH SIERRACONSTELLATION PARTNERS, LLC TO PROVIDE (A) JEFF NERLAND TO SERVE AS THE DEBTOR'S CHIEF RESTRUCTURING OFFICER AND (B) SERVICES RELATED THERETO**

Naartjie Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above

captioned bankruptcy case, by and through its proposed counsel, submits this application  (the

"Application") for entry of an order substantially in the form submitted herewith (the "Order")

pursuant to sections 105(a), 327(a), 328 and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), (I) authorizing the retention and employment of SierraConstellation Partners, LLC ("SCP") as restructuring advisors for the Debtor and (II) approving, effective as of the Petition Date, Naartjie's agreement with SCP dated August 4, 2014, a copy of which is attached hereto as **Exhibit A**, to provide (a) Jeff Nerland as the Debtor's Chief Restructuring Officer ("CRO") and (b) services related thereto. This Application is supported by the *Declaration of Jeff Nerland* (the "Nerland Declaration") a copy of which is attached hereto as **Exhibit B**. In further support of the Application, the Debtor states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 327, 328 and 363(b) of the Bankruptcy Code.

## BACKGROUND

3.      On September 12, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court") thereby commencing the above-captioned "Chapter 11 Case."

4.      No trustee or examiner has been appointed in this case. The Official Committee of Unsecured Creditors was formed on September 22, 2014. The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      Founded in Cape Town, South Africa in 1989, Naartjie is a children's clothing brand that embraces bright, colorful, kid-friendly clothes.  Naartjie designs, manufactures and sells children's clothing, accessories and footwear for ages newborn through 10 years old.

6.      Naartjie opened its first store in the United States in March 2001, currently owns and operates eighty-two retail stores in the United States and South Africa, and has a rapidly expanding e-commerce business serving customers in over thirty countries worldwide.  Today, Naartjie's corporate headquarters are located in Salt Lake City, Utah, with merchandising headquartered in Burlingame, California and the Naartjie Design Studios and South African retail operations in Cape Town, South Africa.  Naartjie's net sales for the fiscal year ended on February 1, 2014 were $54.4 million.

7.      On August 4, 2014, Naartjie entered into an engagement agreement with SierraConstellation Partners, LLC ("SCP") to provide services to Naartjie including employing Jeff Nerland as the Chief Restructuring Officer (the "CRO") of Naartjie, and assisting Naartjie with financial strategies and restructuring (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit A**.

8.      Naartjie provided SCP with an intital retainer fee in the amount of $40,000 to be applied towards SCP's final bill for fees and expenses incurred during the duration of the contract, according to the terms more fully set forth in **Exhibit A**.  Between August 4, 2014 and the Petition Date, SCP was paid an additional $283,496.28 and billed Naartjie $228,904.83 in fees and expenses.  There is $94,591.45 remaining from the funds paid by Naartjie to SCP which will be transferred to a post-petition retainer.

## RELIEF REQUESTED

9.      By this Application, the Debtor requests entry of an Order, pursuant to sections 105(a), 327(a), 328 and 363 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules, authorizing the retention and employment of SCP as restructuring advisors for the Debtor *nunc pro tunc* to the Petition Date and approving, effective as of the Petition Date, the Engagement Agreement, pursuant to which Mr. Nerland will serve as the CRO and SCP will perform services related thereto as contemplated by the Engagement Agreement.

## QUALIFICATIONS AND RETENTION OF SCP

10.      The Debtor respectfully requests the entry of an order pursuant to sections 327(a) and 328 of the Bankruptcy Code to employ SCP as its restructuring advisors to perform the services that are necessary in this Chapter 11 Case.

11.      On or about August 4, 2014, SCP began providing the Debtor with CRO and related restructuring services.  Effective as of August 4, 2013, Mr. Luis G. Nogales, a Naartjie board member, approved the appointment of Mr. Nerland as CRO, and the Debtor entered into the Engagement Agreement. In that period, Mr. Nerland and other personnel of SCP have become familiar with the Debtor, its business operations, its financial conditions and other matters that may be relevant to the Chapter 11 Case.

12.      SCP is a professional services firm, which provides interim management, advisory services, and strategic investment advisory services.  SCP has over 200 case experiences, covering a broad range of industry sectors, including: aerospace and defense manufacturing, apparel, automotive, business services and outsourcing, consumer packaged goods, contracting services, distribution, financial services and insurance, food processing and agriculture, gaming and sports, healthcare, manufacturing, media and entertainment, real estate,

4

retail, restaurant and hospitality, specialty chemicals, technology and software and telecommunications.

13.     Mr. Nerland has more than 30 years of senior financial management and advisory experience for underperforming companies, both domestically and internationally.  An experienced restructuring professional, he has successfully led numerous distressed clients to stability and profitability.  He has experience in a wide variety of industries, including aerospace, contracting, distribution, home furnishings, transportation, manufacturing, real estate, and retail. A copy of Mr. Nerland's biographical information is attached hereto as **Exhibit B**.

14.     The Debtor requires knowledgeable restructuring professionals to render restructuring services. As outlined above, based on his experience, knowledge, and familiarity with the Debtor's operations and financial condition, Mr. Nerland is well suited to serve as the Debtor's CRO.  Other personnel of SCP, who have already been assisting the Debtor with its restructuring efforts, are also experienced in providing restructuring services that are important to the Debtor during the Chapter 11 Case.  Accordingly, the Debtor submits that the employment of SCP and Mr. Nerland and the performance of related services should be approved.

## SCP IS DISINTERESTED AND HOLDS NO ADVERSE INTEREST

15.     SCP has stated its desire and willingness to act in this case and render the necessary professional services as restructuring advisor to the Debtor.  The Nerland Declaration details all presently known connections of SCP to the Debtor and its creditors.  To the best of the Debtor's knowledge, SCP does not have any connection with the Debtor, its creditors or other parties in interest or their respective attorneys, except as set forth in the Nerland Declaration and is a disinterested person as that term is used in section 101(14) of the Bankruptcy Code.

Therefore, SCP's retention by the Debtor under section 327(a) of the Bankruptcy Code is proper and appropriate.

## SCOPE OF SERVICES[1]

16.     SCP has assigned Mr. Nerland to serve as the Debtor's CRO and other personnel of SCP are performing services related thereto as set forth in the Engagement Agreement.

17.     The Engagement Agreement details the scope of services to be provided to the Debtor and breaks such services down into two distinct phases as described below:

- **Phase 1 – Bankruptcy Preparation and Evaluation of Alternatives**:
  - Preparation of a Company cash flow forecast and resultant financing requirements;
  - Assistance in identifying, negotiating, and closing Debtor in Possession (DIP) financing or other financing alternatives if feasible; and
  - Provide assistance in preparation of schedules and statements for possible bankruptcy filing.

- **Phase 2 – Support Execution of Restructuring (If Bankruptcy Filing Occurs)**:
  - Provide assistance in the management of schedules for filing in a court-based proceeding;
  - Provide management support related to the operations and cash flow management during the bankruptcy process;
  - Provide management support in evaluating and responding to parties during negotiation including landlords, vendors, and other key constituents;
  - Interact with the unsecured creditor committee (if one is formed) and assist in the preparation of management reports; and
  - Manage the plan-of-reorganization preparation and negotiation with counsel.

## COMPENSATION

---

[1]    This summary of the Engagement Agreement is qualified entirely by the Engagement Agreement.  In the event of any inconsistencies between the summary and the Engagement Agreement, the Engagement Agreement shall control.

18.    Pursuant to the terms and conditions contained in the Engagement Agreement, the

Debtor has agreed to pay compensation to SCP in consideration for the services provided by SCP

based on the following discounted hourly rates:

| Title | Posted 2014 Rates | Project Rates |
|---|---|---|
| Jeff Nerland as CRO | $500 | $450 |
| William White as Restructuring Manager | $400 | $360 |
| Director | $400 | $360 |
| Senior Associate | $275 | $250 |
| Para Professional | $130 | $117 |

19.    Naartjie paid a $40,000 retainer to SCP upon the execution of the Engagement

Agreement, which has been held by SCP and applied to SCP's final bill for fees and expenses.

There is $4,591.45 remaining on this retainer which will be added to $90,000 in retainer

provided to SCP prior to the Bankruptcy filing.

20.    SCP will be entitled to reimbursement of reasonable expenses incurred in

connection with its engagement by Naartjie, including but not limited to domestic coach-class

airfare, international business class airfare, travel, report preparation, delivery services,

photocopying and other costs included in providing the Services, provided all expenses in excess

of $1,500 individually shall require the prior written approval of Naartjie. In addition travel

expenses, SCP will invoice for travel time at the rate of 1/2 of the Project Rates.

21.    SCP understands that all of its fees and expenses are subject to Court approval.

SCP will abide by the Bankruptcy Code and its provisions and any order this Court may enter in

relation to fee application procedures.  SCP will also apply to the Court for allowance of any

compensation and reimbursement in this case and understands that its compensation in this case

is subject to the prior approval of this Court, after notice and a hearing, in accordance with 11

U.S.C. §§ 327, 330 and 331, Rule 2016 of the Bankruptcy Rules, applicable guidelines issued by the Office of the United States Trustee, and any other applicable order of the Court.

## BASIS FOR RELIEF REQUESTED

22.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ one or more professional persons to represent or assist the debtor in possession in carrying out its duties so long as those professional persons do not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which they are to be employed. *See* 11 U.S.C. § 327(a).  Moreover, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 . . . solely because of such person's employment by or representation of the debtor before the commencement of the case." *See* 11 U.S.C. § 1107(b).  For the reasons set forth in this Application and the Nerland Declaration, the Debtor submits that SCP's retention and employment satisfies section 327(a) and the Application should be approved.

23.     Further, section 363(b) of the Bankruptcy Code provides in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); *In re Phoenix Steel Corp.*, 82 B.R. 334, 336-36 (Bankr. D. Del. 1987).

24.     The proposed use, sale, or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. *See In re*

*Montgomery Ward*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. *See, e.g., Institutional Creditors of Continental Air Lines v. Continental Air Lines (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105 of the Bankruptcy Code, a court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets. *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986).

25.     Once a debtor articulates a valid business justification, the "business judgment" standard "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See id., In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

26.     The Debtor believes that it is necessary and in the best interest of its estate to continue to employ the CRO during the Chapter 11 Case.  Mr. Nerland has been involved in many facets of the Debtor's business since August 2014, and he has been significantly involved

the Debtor's day-to-day business operations and restructuring activities. His continued involvement throughout the post-petition period will be important to continuing the Debtor's post-petition operation and navigating the Debtor's proposed liquidation process.

27.    Additionally, the Debtor has been and will be required to complete various administrative tasks in connection with the administration of the Chapter 11 Case. These include preparing schedules of assets and liabilities and statements of financial affairs, meeting the Debtor's reporting obligations to the Office of the United States Trustee and responding to various documents and due diligence requests that may arise in the course of the Chapter 11 Case. Retaining the CRO and SCP, which are very familiar with the chapter 11 process, during these cases will bolster the Debtor's management in two ways. First, management will be augmented with individuals with a working knowledge of the chapter 11 process that can facilitate efficient compliance and completion of these bankruptcy-specific tasks. Second, the availability of outside personnel will help address the additional administrative burdens chapter 11 can place on the Debtor's limited existing personnel and allow the Debtor's employees to preserve the Debtor's value.

28.    Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. *See, e.g., In re Spheris Inc, et al.*, Case No. 10-10352 (KG) (Bankr. D. Del. Mar. 2, 2010); *In re Flying J, Inc.*, Case No. 08-13384 (MFW) (Bankr. D. Del. 2008); *In re Eddie Bauer Holdings, Inc.*, Case No. 09-12099 (MFW) (Bankr. D. Del. 2009); *In re Indalex Holdings Finance, Inc.*, Case No. 09-10982 (PJW) (Bankr. D. Del. 2009); *In re Fluid Routing Solutions*

*Bauer Holdings, Inc.*, Case No. 09-12099 (MFW) (Bankr. D. Del. 2009); *In re Indalex Holdings Finance, Inc.*, Case No. 09-10982 (PJW) (Bankr. D. Del. 2009); *In re Fluid Routing Solutions Intermediate Holding Corp.*, Case No. 09-10384 (CSS) (Bankr. D. Del. 2009); *In re SemCrude, L.P.*, Case No. 08-11525 (BLS) (Bankr. D. Del. 2008).

## CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 105(a), 327(a) and 363(b), and Fed. R. Bankr. P. 2014, the Debtor respectfully requests the entry of an Order authorizing the retention and employment of SCP as restructuring advisors for the Debtor, and authorizing and approving the Engagement Agreement. The Debtor also requests such other relief as is just and proper.

DATED this 6th day of October, 2014.


NAARTJIE CUSTOM KIDS, INC.


NAME: Jeff Nerland
TITLE: Chief Restructuring Officer

# <u>EXHIBIT A</u>



August 4, 2014

Mr. Keller Norris
Board of Directors
Naartjie Custom Kids, Inc.
3676 West California Avenue, Suite D-100
Salt Lake City, UT 84104

Re:   Terms of Engagement of SierraConstellation Partners LLC (SCP) as Chief Restructuring
      Officer

Dear Mr. Norris:

This letter sets forth the agreement between Naartjie Custom Kids, Inc. and its subsidiaries (the
"Client" or "Company" or "you") and SierraConstellation Partners LLC ("SCP" and "we"), effective
as of August 1, 2014, whereby SCP personnel will provide to Client the services described herein.
The General Business Terms & Conditions applicable to this engagement are attached to this letter
as Appendix A and are incorporated herein by reference.

You shall, by executing this letter of agreement, engage SCP for the purposes of providing business
advice and consultation to you regarding the Company's current challenges. We will also work with
you toward the implementation of whatever strategies are most appropriate to achieve the
Company's objectives. In delivering our services (the "Services"), our focus ("Scope") will include,
but not be limited to, the following areas:

- Jeff Nerland to serve as the Chief Restructuring Officer (CRO). The CRO and
  additional resources shall have such duties as the Company's board of directors, may
  determine in connection with the proposed restructuring including, but not limited
  to:

The Scope of our effort in the two phases as described below:

**Outline of Projects**
**Phase 1 – Bankruptcy Preparation and Evaluation of Alternatives**
- Preparation of a Company cash flow forecast and resultant financing requirements

Naartjie Custom Kids, Inc.
August 4, 2014

- Assistance in identifying, negotiating, and closing Debtor in Possession (DIP) financing or other financing alternatives if feasible
- Provide assistance in preparation of schedules and statements for possible bankruptcy filing

**Phase 2 – Support Execution of Restructuring (If Bankruptcy Filing Occurs)**

- Provide assistance in the management of schedules for filing in a court-based proceeding
- Provide management support related to the operations and cash flow management during the bankruptcy process
- Provide management support in evaluating and responding to parties during negotiation including landlords, vendors, and other key constituents
- Interact with the unsecured creditor committee (if one is formed) and assist in the preparation of management reports
- Manage the plan-of-reorganization preparation and negotiation with counsel.

The CRO will report to the board of directors or a sub-committee of the board of directors. SCP shall provide such other Services as may be agreed upon by SCP and the board of directors of the Client in writing based on discussions with you as the engagement progresses and additional information is obtained during the course of the engagement.

You acknowledge and agree that you are responsible for supplying complete and accurate information, representations, and books and records upon which we may rely, and we shall have no responsibility for mistakes or omissions on our part arising as a result of having relied upon information, representations, or books and records provided by you or on your behalf that were inaccurate or incomplete. In addition, in connection with the Services provided hereunder, we will not audit or otherwise verify the materials provided to us, nor will we provide any assurances concerning the reliability, accuracy, or completeness of any materials provided by or on behalf of you or any other party, and our Services cannot be relied on to disclose errors or fraud should they exist. We shall have no responsibility for updating our Services unless pursuant to a new engagement letter.

SCP's professional fees for the Services, including, without limitation, the services of Jeff Nerland as Chief Restructuring Officer will be at the rate of $450 per hour. This rate reflects a discount of 10% from his 2014 posted rate of $500 per hour. SCP will be paid by the Company for the services of any additional resources at the hourly Project Rates set forth below. All professional fees and expenses will be billed to you weekly and are payable upon receipt. There will be a $40,000 retainer paid to SCP at the execution of this contract (the "Retainer"). This Retainer will be held by SCP and applied to SCP's final bill for fees and expenses hereunder.

Naartjie Custom Kids, Inc.
August 4, 2014

| Title | Posted 2014 Rates: | Project Rate: |
|---|---|---|
| Jeffrey Nerland as CRO | $500 | $450 |
| William White as Restructuring Manager | $400 | $360 |
| Director: | $400 | $360 |
| Senior Associate | $275 | $250 |
| Para Professional | $130 | $117 |

We will provide you with a statement on a weekly basis showing the amount of fees and expenses incurred during such period. Upon presentation of any such statement, you agree to replenish the retainer to the original amount by wire transfer no later than three business days following receipt of the statement. Following completion of the engagement, we will return the unused portion of the retainer, if any, to you.

Payments made hereunder shall be made to:

Bank Name: WELLS FARGO BANK
ABA # : 121-000-248
Account Name: SierraConstellation Partners LLC
Account # : 217-131-2271

Because the Scope and depth of our Services to you may change, it is difficult to estimate our total fees in advance. We will endeavor to discuss changes in our Scope and activities with you before proceeding and, if you request, provide fee estimates for specific assignments.

As to expenses, SCP will be entitled to reimbursement of reasonable expenses incurred in connection with this engagement, including but not limited to domestic coach-class airfare, international business class airfare, travel, report preparation, delivery services, photocopying and other costs included in providing the Services, provided all expenses in excess of $1500 individually shall require the prior written approval of Client. In addition travel expenses, SCP will invoice for travel time at the rate of ½ of the Project Rates.

## DISCLOSURE OF RELATIONSHIPS

As you know, SCP is engaged by new clients every day. Therefore, we cannot assure that, following the completion of our internal conflict search, an engagement for or involving your creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SCP or its affiliates. Should any potential conflict come to the attention of SCP, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided.

Further, SCP and its affiliates may have provided professional services to, may currently provide professional services to, or may in the future provide such services to, the Client's creditors, other parties-in-interest, and their respective attorneys and accountants in unrelated matters. SCP agrees that (i) it will not use confidential Client information against Client, (ii) will not represent a party

3 | Page

Naartjie Custom Kids, Inc.
August 4, 2014

adverse to Client on a subject matter substantially related to the subject matter of this engagement, and (iii) SCP's professionals personally involved in representing Client will not personally be involved in representing parties adverse to Client, without Client's specific written consent.

## *LIMITATIONS OF THE SERVICES*

The Services will not result in the issuance of any written or oral communications by SCP to the Client or any third parties expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the Securities and Exchange Commission or the Public Company Accounting Oversight Board, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any other matters.

You understand that the Services may include access to the work of the Client's other professional advisors or to financial statements or financial information or data reported on by such other professional advisors. The Client agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards used by such other professional advisors. In this regard, we call your attention to the possibility that other professional advisors may perform procedures concerning the same information or data, and perhaps the same accounts and records, and reach different observations than SCP for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to SCP, that they might perform different procedures from SCP, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

The Services to be provided by SCP will not include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. By signing this letter, the Client expressly acknowledges that SCP does not guarantee, warrant, or otherwise provide any assurances that Client will restructure successfully.

## *OTHER MATTERS*

The Client agrees that, without SCP's prior written permission, any reports, schedules, documents, or other materials provided by SCP are not to be used, in whole or in part, by the Client for any purpose other than in connection with this matter.

This engagement letter, incorporating by reference the attached General Business Terms & Conditions, constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings among the parties, whether written or oral, with respect to the subject matter hereof.

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it to me; or if you have any questions, please call me at (213) 289-9060. By signing this letter, you represent and warrant that the Client has the authority to enter into this

4 | Page

Naartjie Custom Kids, Inc.
August 4, 2014

engagement letter on behalf of itself and its subsidiaries. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

SierraConstellation Partners LLC

By: _____

Lawrence R. Perkins, CEO

Agreed and Accepted by:
Naartjie Custom Kids, Inc.

By: _____

Name:      Luis G. Nogales

Title:      Board Member

Date:      August 4th, 2014

Naartjie Custom Kids, Inc.
August 4, 2014

## *Appendix A*

### GENERAL BUSINESS TERMS & CONDITIONS

1. **Services.**

   a)      The services (the "Services") provided by SierraConstellation Partners LLC ("SCP") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but SCP will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. For purposes of these terms and the Engagement Letter, "Client" shall mean Naartjie Custom Kids, Inc. and its subsidiaries. Naartjie Custom Kids, Inc. represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries.

   b)  The Deliverables (as defined below) are complete only when presented in their entirety and only for the purpose stated therein. Furthermore, (i) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (ii) SCP will not provide any legal advice or address any questions of law; and (iii) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB"), or other regulatory body.

2. **Payment.** Client will compensate SCP under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of termination of this engagement. SCP' invoices are due upon receipt. If payment is not received within thirty (30) days of receipt of an invoice (i) such invoice shall accrue a late charge equal to the lesser of (a) 1½% per month or (b) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law and (ii) SCP may also suspend or terminate the Services. Client shall be responsible for any taxes imposed on the Services or on this engagement, other than taxes imposed by employment withholding for SCP' personnel or on SCP's income or property. In addition, SCP will be compensated for any time and expenses (including, without limitation, reasonable legal fees and expenses) that SCP may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this engagement) as a result of or in connection with the Services or the Engagement Letter.

3. **Term.** Unless terminated sooner as set forth below, this engagement shall terminate upon the completion of the Services. Either party may terminate this engagement, with or without cause, by giving fifteen (15) days prior written notice to the other party. SCP may terminate this engagement upon written notice to Client if SCP determines that the performance of any part of the Services would be in conflict with law or independence or professional rules.

4. **SCP Technology, Property and Deliverables.**

   a) SCP has rights in, and may, in connection with the performance of the Services, use, create, modify, or acquire rights in, works of authorship, materials, information, and other intellectual property (collectively, the "SCP Technology").

   b) Upon full payment to SCP hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of Client, and (ii) SCP hereby grants Client a royalty-free, fully paid-up, worldwide, nonexclusive license to use the SCP Technology contained in the Deliverables in connection with the use of such Deliverables. Except for the foregoing license grant, SCP or its licensors retain all rights in and to all SCP Technology.

Naartjie Custom Kids, Inc.
August 4, 2014

   c) To the extent SCP Technology provided to Client hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such SCP Technology is licensed to Client by SCP as agent for SCP Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any SCP Technology that is subject to a separate license agreement between Client and any third party (including SCP' affiliates).

5. **Limitation on Warranties.** This is a services engagement. SCP warrants that it shall perform the Services in good faith and with due professional care. **SCP DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6. **Limitation on Damages and Indemnification.**

   a) SCP, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Client for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Client to SCP pursuant to this engagement, except to the extent resulting from the bad faith, gross negligence or intentional misconduct of SCP or its subcontractors. In no event shall SCP, its subsidiaries or subcontractors, or their respective personnel be liable to Client for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

   b) Client shall indemnify and hold harmless SCP, its subsidiaries and subcontractors, and their respective personnel from all Claims, except to the extent resulting from the bad faith, gross negligence or intentional misconduct of SCP or its subcontractors.

   c) In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, the aggregate liability of SCP, its subsidiaries and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that the conduct of SCP and its subcontractors bears to all other conduct giving rise to such Claim.

7. **Client Responsibilities, Third Party Information, and Assumptions.**

   a) Client shall cooperate with SCP in the performance of the Services, including providing SCP with reasonable facilities and timely access to data, information, and personnel of Client. If SCP is provided with access to or use of Client's facilities outside of the United States for the purpose of performing the Services, such facilities may not be dedicated solely for SCP's use and SCP will not be deemed a tenant of Client with respect to such facilities. Client shall be solely responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to SCP for purposes of the performance of the Services, (c) making all management decisions, performing all management functions, and assuming all management responsibilities, (d) designating a competent management member to oversee the Services, (e) evaluating the adequacy and results of the Services, (f) accepting responsibility for the results of the Services, and (g) establishing and maintaining internal controls, including monitoring ongoing activities. SCP's performance is dependent upon the timely and effective satisfaction of Client's responsibilities hereunder and timely decisions and approvals of Client in connection with the Services. SCP shall be entitled to rely on all decisions and approvals of Client.

   b) If SCP is provided with access to or use of Client's facilities outside of the United States for the purpose of performing the Services, such facilities may not be dedicated solely for SCP' use and SCP will not be deemed a tenant of Client with respect to such facilities.

   c) SCP may use information and data furnished by parties other than Client and its agents if SCP in good faith believes that such information and data is reliable. SCP, however, shall neither be responsible for, nor provide any assurance regarding, the accuracy or completeness of any such information or data.

   d) SCP shall be entitled to assume, without independent verification, the accuracy and completeness of any and all assumptions provided to SCP by or on behalf of Client for purposes of the performance of the

Naartjie Custom Kids, Inc.
August 4, 2014

Services.

8. **Force Majeure.** Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9. **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing such action.

10. **Independent Contractor.** Each party hereto is an independent contractor and neither party is, nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venture, or representative.

11. **Confidentiality and Internal Use.**

   a) All Services and Deliverables shall be solely for Client's benefit, and are not intended to be relied upon by any person or entity other than Client. Except for information otherwise available in the public domain, SCP shall not disclose the Services or the Deliverables, or refer to the Services or Deliverables in any communication, to any person or entity without the prior written consent of Client. SCP is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Client filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

   b) To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The disclosing party hereby consents to the receiving party disclosing such information: (i) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this Section 11(b); (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iii) to the extent such information (a) is or becomes publicly available other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a non-confidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. Nothing in this Section 11(b) shall alter the parties' obligations under Section 11(a). Notwithstanding the foregoing provisions of this Agreement, only if and after Client completes a bankruptcy filing, SCP and its affiliates and related entities shall have the right to use Client's name as part of a general client listing and as a specific citation in proposals or similar directed marketing efforts.

   c) No provision of these terms or the Engagement Letter is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice"). Notwithstanding anything herein to the contrary, no provision of these terms or the Engagement Letter shall place any limitation on Client's disclosure of any Subject Tax Planning Advice. The Services and Deliverables shall be solely for Client's benefit, and this engagement does not create privity between SCP and any person or party other than Client ("third party"). Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by SCP, no third party

Naartjie Custom Kids, Inc.
August 4, 2014

is entitled to rely in any manner or for any purpose on the Services or Deliverables. In the event of any unauthorized reliance on any Subject Tax Planning Advice, Client agrees to indemnify and hold harmless SCP, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs, and expenses.

12. **Survival and Interpretation.** All provisions which are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement. No affiliated or related entity of SCP, or such entity's personnel, shall have any liability hereunder to Client and Client will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement. Without limiting the foregoing, such affiliated and related entities are intended third-party beneficiaries of these terms, and may in their own right enforce such terms. **Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

13. **Assignment and Subcontracting.** Except as provided below, neither party may assign any of its rights or obligations hereunder (including interests or Claims) without the prior written consent of the other party. Client hereby consents to SCP subcontracting or assigning any portion of the Services to any affiliated entity (controlled by SCP), whether located within or outside of the United States. Services performed hereunder by SCP' subcontractors shall be invoiced as professional fees on the same basis as Services performed by SCP' personnel, unless otherwise agreed.

14. **Waiver of Jury Trial. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15. **Non-exclusivity.** SCP may (i) provide any services to any person or entity, and (ii) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, SCP complies with its obligations of confidentiality set forth hereunder.

16. **Entire Agreement, Amendment, and Notices.** These terms, and the Engagement Letter, including attachments, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by a written agreement signed by the parties. In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control. All notices hereunder shall be (a) in writing, (b) delivered to the representatives of the parties at the addresses set forth in the Engagement Letter, unless changed by either party by notice to the other party, and (c) effective upon receipt.

17. **Governing Law, Venue, Jurisdiction, and Severability.** These terms, the Engagement Letter, including attachments, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action based upon or arising out of this engagement or the Services shall be brought and maintained exclusively in any state or federal court, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of these terms or the Engagement Letter is unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

# **EXHIBIT B**



WHO WE ARE    WHAT WE DO    OUR VALUE    CASE STUDIES    NEWS    CONTACT US

WHO WE ARE

OUR PRINCIPLES

HOW WE DEFINE SUCCESS

TEAM APPROACH

OUR PROFESSIONALS

LAWRENCE PERKINS

JOHN BARGER

WINSTON MAR

REECE FULGHAM

TIMOTHY HASSENGER

JEFF NERLAND

MILES STAGLIK

WILLIAM WHITE

CHARLES GUMBERT

KARL PEARSON

ANGELA SUTHERLAND

COLE BETTLES

STEFANIE RUSSO



## JEFF NERLAND

Jeff Nerland has more than 30 years of senior financial management and advisory experience for underperforming companies, both domestically and internationally. An experienced restructuring professional, he has successfully led numerous distressed clients to stability and profitability.  He has experience in a wide variety of industries, including Aerospace, Contracting, Distribution, Home Furnishings, Transportation, Manufacturing, Real Estate, and Retail.

Representative engagements include:

- Led the strategic, financial and operational assessment of a $130 million apparel manufacturer for an international holding company
- Senior vice president/group president for a leading provider of interior components to the private aircraft industry where he led the acquisition team to acquire ten manufacturing companies within 18 months; His group was comprised of six manufacturing companies with combined 2004 revenue of $117 million, EBITDA of $17 million, and more than 1,000 employees
- Interim Chief Financial Officer (CFO)/Chief Restructuring Officer (CRO) for a 400-store chain of fabric stores; led a major operational restructuring that resulted in EBITDAR increasing from ($26 million) to +$5 million in one year by cutting costs and closing underperforming stores
- Prepared feasibility analysis for a $30 million manufacturer of traffic signals to consolidate four facilities into one and achieved $3 million in annual savings
- Prepared the analysis and assisted GE Capital in evaluating its strategic options with its senior loan to a $70 million manufacturing company.  Assisted the interim Chief Executive Officer (CEO) in identifying more than $5 million of cost reductions.
- CEO/CRO for a chain of 69 Greek restaurants in Chapter 11; completed 363 sale to private equity group

- CRO for a $130 million, multi-national distributor of cranes

Mr. Nerland received a bachelor's degree in business management from Indiana University. He earned a master's degree in finance, graduating with honors from the University of Southern California (USC). During his time at USC, he taught strategic planning in the Undergraduate School of Business.

☐ Download Jeff's vCard



400 SOUTH HOPE STREET, SUITE 2050 | LOS ANGELES, CALIFORNIA 90071
OFFICE: 213.289.9060 | FAX: 213.289.9061 | INFO@SIERRACONSTELLATION.COM

© 2014 SIERRACONSTELLATION PARNTERS LLC. ALL RIGHTS RESERVED. PRIVACY POLICY | TERMS OF USE | CONTACT US