**The below described is SIGNED.**

**Dated: November 3, 2014**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

*Prepared and Submitted by:*
Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Tel:     (801) 933-7360
Fax:    (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Naartjie Custom Kids, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

## ORDER GRANTING DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING BIDDING PROCEDURES AND AUCTION, (B) AUTHORIZING DEBTOR TO PROVIDE BID PROTECTIONS TO STALKING HORSE, (C) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[1] of Naartjie Custom Kids, Inc., debtor and debtor in possession in the above-captioned case (the "Debtor"), for entry of an order (this "Order") (a) authorizing and approving the bidding procedures substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures") and setting the time, date and place of the auction ("Auction") and approving the form of auction notice attached hereto as **Exhibit B** (the "Auction Notice"), (b) authorizing the Debtor to provide bid protections to a stalking horse, (c) scheduling a sale hearing for November 25, 2014 at 2:00 p.m. (the "Sale Hearing") to approve the sale of the Assets and approving notice thereof, and (d) granting related relief; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion and opportunity for objection having been given, with all objections having been resolved, withdrawn, overruled, or sustained as the case may be;[2] and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefore;

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Notice of the Motion, including the proposed entry of this Order, the Bidding

---

[1]    Docket No. 199. Each capitalized term used but not defined herein shall have the meaning ascribed to such term in the Motion or in the Bidding Procedures, as applicable.

[2]    In connection with any monthly operating report filed by the Debtor in this case, the Debtor will provide an accounting of the professional fees it has incurred, and, to the extent known, the professional fees incurred by the professionals employed by the Official Committee of Unsecured Creditors. The Debtor shall also file with the Court its projected 60-day budget by no later than November 21, 2014.

[3]    Pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as appropriate.

Procedures, and the hearing to consider entry of this Order (the "Bidding Procedures Hearing")
has been provided as set forth in the *Certificate of Service* [Docket No. 214]. The Debtor's
notice of the Motion, the proposed entry of this Order, the Bidding Procedures, and Bidding
Procedures Hearing was appropriate and reasonably calculated to provide all interested parties
with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004 and 6006, and no other
or further notice of, or hearing on, the Motion or this Order is required.

      C.      Entry into a Stalking Horse Agreement with an offeror for the Assets (the
"Stalking Horse") is in the best interests of the Debtor, its estate, creditors, and other parties-in-
interest and, based on the information set forth in the Motion and presented to this Court, is an
appropriate exercise of the Debtor's business judgment. A Stalking Horse Agreement will enable
the Debtor to secure an adequate consideration floor for the Auction and will provide a clear
benefit to the Debtor's estate and all other parties-in-interest.

      D.      The Debtor has demonstrated a compelling and sound business justification for
authorizing the negotiation of and payment of Bid Protections to a Stalking Horse as follows:

      a.      the Bid Protections are an actual and necessary cost and expense of
preserving the Debtor's estate; and

      b.      the Bid Protections are fair, reasonable and appropriate in light of, among
other things, the size and nature of the proposed sale of Assets, the substantial efforts that
will be expended by the Stalking Horse, notwithstanding that the proposed sale is subject
to higher or better offers, and the substantial benefits the Stalking Horse will provide to
the Debtor, its estate and creditors and all parties in interest herein, including, among
other things, by increasing the likelihood that the Debtor will receive the best possible
price for its Assets.

E.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit A**, are fair, reasonable and appropriate and are designed to maximize the value of the Debtor's estate.

F.      The Auction Notice, substantially in the form attached hereto as **Exhibit B**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary), the Sale Hearing, and any and all objection deadlines, and such Auction Notice having been provided as set forth in the Motion, no other or further notice is required.

G.      No finding or ruling is made in this Order as to the adequacy of any proposed transaction, it being intended that such approval will be sought at the Sale Hearing.

H.      The entry of this Order is in the best interests of the Debtor, its estate and creditors, and all other parties-in-interest in the Debtor's chapter 11 case.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED** as set forth below.

2.      All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived or settled as announced at the Bidding Procedures Hearing, are resolved as provided in this Order.

3.      The Bidding Procedures, in the form attached hereto as **Exhibit A**, are hereby **APPROVED**, and fully incorporated into this Order, and shall apply with respect to the proposed sale of the Assets.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The Debtor is **AUTHORIZED** to negotiate and enter into an agreement for Bid Protections and a Stalking Horse Agreement with a Stalking Horse, after consultation with  the

Official Committee of Unsecured Creditors (the "UCC" or "Committee"), which may include expense reimbursement and a break-up fee in a total amount up to 5.0% of the total purchase price for the Assets.

5.      The Auction Notice, substantially in the form attached hereto as **Exhibit B**, is deemed good and sufficient notice of the Bidding Procedures, the Auction and the Sale Hearing, and are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction and Sale Hearing.   The Auction Notice shall be sent to the Debtor's creditor matrix within two (2) business days of the entry of this Order.

6.      On or before **November 5, 2014**, the Debtor will notify the landlord for each of its real property leases in the United States (collectively, the "Landlords") of the Debtor's calculated cure amount with respect to such lease.  The Landlords will have until **November 21, 2014 at 4 p.m.** (prevailing Mountain time) to file an objection to the Debtor's proposed cure amount for such stores.

7.      The Debtor is authorized to conduct the Auction with respect to all or some of the Assets, including the Intellectual Property, the Debtor's stock in ZA One, any claims against ZA One, or other alternative sale structure for the Debtor's interests in ZA One (such as the exercise of its shareholder rights in ZA One to facilitate the sale of ZA One's assets and liabilities).  The Auction, if any, shall be conducted at the office of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685 (the "Auction Site") on **November 24, 2014 at 10:00 a.m.** (prevailing Mountain time) (the "Auction Date"), or at such other place and time or later date as determined by the Debtor, in consultation with the UCC.  The Debtor shall notify each bidder that has submitted a Competing Bid and expressed its intent to participate in the

Auction as set forth in the Bidding Procedures. The Debtor is authorized, subject to the terms of this Order, to take all actions necessary, in the discretion of the Debtor, and following consultation UCC, to conduct and implement such Auction.

8.      The Debtor, following consultation with UCC, may (i) select, in its business judgment, pursuant to the Bidding Procedures, the highest and/or otherwise best offer(s) and the Successful Bidder(s), and (ii) reject any bid that, in the Debtor's business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtor and its estate, creditors, interest holders or parties-in-interest.

9.      The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be **AUTHORIZED** and **APPROVED** in their entirety.

10.      A Sale Hearing to approve the sale of the Assets to any Successful Bidder(s) shall be held on **November 25, 2014 at 2:00 p.m.** (prevailing Mountain Time), unless otherwise continued upon request by the Debtor (in consultation with the Committee) or otherwise ordered by the Court. Objections, if any, to the Sale must be filed by **November 24, 2014 at 4:00 p.m.** (prevailing Mountain Time) (the "Sale Objection Deadline") and served on: (a) counsel to the UCC, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4003, Attn: Jeffrey N. Pomerantz, email: jpomerantz@pszlaw.com; (b) counsel for the Debtor, Dorsey & Whitney LLP, 136 S. Main St., Suite 1000, Salt Lake City, Utah 84101, Attn: Annette Jarvis, email: jarvis.annette@dorsey.com; (c) any Successful Bidder that is not the Stalking Horse; and (d) the Office of the United States Trustee for the District of Utah,

405 South Main St., Suite 300, Salt Lake City, Utah 84111, Attn: Peter J. Kuhn, email: peter.j.kuhn@usdoj.gov.

11.     This Order shall be binding upon and inure to the benefit of any Stalking Horse, the Successful Bidder(s), and their respective affiliates, successors, and assigns, and the Debtor, including any trustee or other fiduciary appointed for the Debtor's estate, whether in this chapter 11 case or any subsequent bankruptcy case or upon dismissal of this chapter 11 case.

12.     The fourteen-day stay of effectiveness of this Order under Bankruptcy Rules 6004(h) and 6006(d) is hereby waived.   This Order shall be effective and enforceable immediately upon its entry on the docket in the Debtor's chapter 11 case.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bid Protections, the Bidding Procedures and the implementation of this Order.

_____
(END OF DOCUMENT)

# EXHIBIT A

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the sale (the "**Sale**") of the following assets (each an "**Asset**" and collectively, the "**Assets**") of Naartjie Custom Kids, Inc., on behalf of itself and as debtor in possession (the "**Debtor**") in connection with the chapter 11 case pending in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**"), case number 14-29666: (i) all of the Debtor's stock in ZA One (Pty) Ltd. ("ZA One"),[1] and (ii) all of the Debtor's intellectual property assets including various trademarks, copyrights, domain names, customer lists, and related data including the right to acquire the Debtor's e-commerce platform after January 15, 2015, and related assets (the "Intellectual Property").[2]

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE DEBTOR'S ADVISORS, AS FOLLOWS:**

**Dorsey & Whitney LLP**, Annette W. Jarvis Esq. (jarvis.annette@dorsey.com) (801) 933-7360 and **Hilco Streambank**, David Peress (dperess@hilcoglobal.com) (781) 444-4940

**A.    Stalking Horse Agreement and Sale**

In connection with the Sale, the Debtor, after consultation with and approval by the Official Committee of Unsecured Creditors (the "Committee"),[3] may enter into a stalking horse agreement (a "Stalking Horse Agreement") with an offeror for the Assets (the "Stalking Horse"). The ability to undertake and consummate the Sale pursuant to a Stalking Horse Agreement shall be subject to competitive bidding as set forth herein and approval by the Bankruptcy Court. The Debtor may consider bids for all or a portion of the Assets in a single bid from a single bidder, or multiple bids from multiple bidders. Within two (2) business days after entering into a Stalking Horse Agreement, the Debtor shall file a Notice of Selection of Stalking Horse Agreement ("Stalking Horse Selection Notice") with the Bankruptcy Court, which Stalking Horse Selection Notice shall be in form and substance acceptable by the Committee. All Potential Bidders shall be informed of the Stalking Horse Agreement and provided a copy upon request.

**B.    The Bidding Procedures**

**1.    *Provisions Governing Qualifications of Bidders***

---

[1]    However, if there are no acceptable offers for the stock in ZA One, the Debtor may consider other sale structures. Further, the Debtor notes that if a buyer purchases the Debtor's interests in ZA One, without purchasing the Intellectual Property, such buyer will also acquire the trademarks, licenses and intellectual property required to continue to operate ZA One as a going concern

[2]    Similarly, if a buyer purchases the e-commerce platform without purchasing the Debtor's interests in ZA One, such purchaser will be required to negotiate a design share ability based on payment of a royalty or other cost sharing basis with the purchaser of ZA One.

[3]    In the event of a disagreement between the Debtor and the Committee over: (a) which agreement shall be designated the Stalking Horse Agreement; (b) whether a bid constitutes a higher and better offer; (c) which bid is deemed the Successful Bid; or (d) which bidder is deemed the Back-Up Bidder, the decision of Jeff Nerland, the Debtor's Chief Restructuring Officer, in consultation with David Peress, of Hilco Streambank, shall control.

Unless otherwise ordered by the Bankruptcy Court, prior to **4:00 p.m. prevailing Mountain Time on November 21, 2014** (the "**Bid Deadline**"), each party that wishes to submit a bid to acquire some or all of the Assets  must deliver the following to the Notice Parties (defined below):

    (a)    a written disclosure of the identity of each party, including involvement in any joint venture, that will be bidding (or participating in a bid) on the Assets;

    (b)    adequate assurance information, including (i) adequate information (in the Debtor's and Committee's reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtor's and Committee's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed transaction;

    (c)    an executed confidentiality agreement in form and substance satisfactory to the Debtor, which will inure to the benefit of any purchaser of the Assets; and

    (d)    a letter summarizing the key terms and conditions of the Potential Bidders bid.

A bidder that the Debtor and Committee determine, in their reasonable business judgment, is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder**."

    **2.**    *Due Diligence*

The Debtor will afford any potential bidder that the Debtor believes, in the exercise of its reasonable business judgment, is pursuing a proposed transaction in good faith such due diligence access or additional information as the Debtor deems appropriate, in its reasonable discretion after execution by such potential bidder of a non-disclosure agreement in form and substance satisfactory to the Debtor.

The due diligence period will extend through and include the date of the Bid Deadline, after which no bid may be contingent on any further due diligence; *provided further*, that any Competing Bid (defined below) submitted will be irrevocable until the selection of the Successful Bidder (defined below) and the Back-Up Bidder (defined below) as described herein.

    **3.**    *Additional Adequate Assurance*

In the event that any Potential Bidder intends to bid to assume any of the Debtor's real property leases in the United States, such Potential Bidder must provide adequate assurance to the landlord(s) of the real property leases that the Potential Bidder intends to bid to assume by **November 14, 2014**, and to provide such landlord(s) with the name and contact information of a

person that the landlord(s) can contact to discuss any issues related to such Potential Bidder's assumption and assignment of such real property leases.

**4.**     *Provisions Governing Competing Bids*

A bid will be considered a competing bid (a "**Competing Bid**") only if the bid is submitted by a Qualified Bidder and complies with all of the following:

(a)     must (i) be in an amount greater than (x) the Stalking Horse's Bid, plus an amount equal to the amount of any Bid Protections, plus (y) an additional overbid amount equal to not less than 1.0% above the stalking horse offer;[4]

(b)     is accompanied by a mark-up of the Stalking Horse Agreement; including in the case of a Bidder submitting a bid to purchase less than all of the Assets, identification with specificity the Assets  upon which such Bidder is submitting its bid and the liabilities and obligations to be assumed by the Bidder (as the case may be, the **"Qualified Bidder Agreement"**);

(c)     discloses any connection or agreements with the Debtor, the Stalking Horse, any other known Potential Bidder and/or any officer, director or equity security holder of the Debtor;

(d)     includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder; *provided that* if such Qualified Bidder is selected as the Successful Bidder or Back-Up Bidder, its offer will remain irrevocable until the date that is ten (10) business days after the  Sale;

(e)     contains written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including, but not limited to, any additional due diligence, inventory evaluation or financing conditions, and that all necessary approvals have been obtained prior to the date of submission of the bid;

(f)     includes evidence, in form and substance reasonably satisfactory to the Debtor and the Committee, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Stalking Horse Agreement or Qualified Bidder Agreement;

(g)     includes a duly authorized and executed copy of a Qualified Bidder Agreement (including all exhibits and schedules thereto) and proposed Sale Order, together with copies marked to show any amendments and

---

[4]     In calculating whether a Competing Bid is a higher and better offer, the Debtor may combine bids for individual Assets to create an aggregated Competing Bid between different bidders.

modifications to (a) the Stalking Horse Agreement and (b) any Sale Order proposed by the Stalking Horse;

(h)     includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the Sale, that will allow the Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the Sale;

(i)      includes an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the Assets or the completeness of any information provided except as expressly stated in the Stalking Horse Agreement or Qualified Bidder Agreement; (d) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid and (e) has (i) consented and submitted to the core jurisdiction of the Bankruptcy Court, (ii) waived and released any and all disputes or objections relating to the marketing or solicitation process, the Auction and the construction and enforcement of such party's contemplated transaction documents, and (iii) consented to the jurisdiction of the Bankruptcy Court in all respects in connection with such matters included in clause (ii) and its bid;

(j)      is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, in an amount equal to ten percent (10%) of the value of such Qualified Bidder's Competing Bid (the "**Deposit**");

(k)     is accompanied by a letter (a) stating with specificity the Assets such Qualified Bidder wishes to bid on and the liabilities and obligations to be assumed by such Qualified Bidder, (b) specifying all material terms of the bid that are better than those of the Stalking Horse's bid pursuant to the terms of the Stalking Horse Agreement (the "**Stalking Horse Bid**"), (c) stating that its offer is a *bona fide* offer that it intends to consummate if it is selected as the Successful Bidder and (d) stating that such Qualified Bidder has not engaged in any collusion with respect to the bidding process;

(l)      contains such other information as is requested by the Debtor in its sole business judgment; and

(m)    is received on or prior to the Bid Deadline.

The Debtor will notify each Qualified Bidder after the Bid Deadline as to whether or not *any* bids constitute Competing Bids with respect to any Assets and whether *such* Qualified Bidder's bid constitutes a Competing Bid (such Qualified Bidder shall be referred to as a "Competing Bidder").  The Debtor retains the right, after consultation with the Committee, to waive or modify the terms of the Bidding Procedures when determining which bids may be deemed Competing Bids.

    **5.**    ***Bid Deadline***

A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**") so as to be actually received not later than the Bid Deadline of **4:00 p.m. prevailing Mountain Time on November 21, 2014**:

**Dorsey & Whitney LLP**
136 South Main Street
Suite 1000
Salt Lake City, UT 84101-1655
Attn: Annette W. Jarvis, Esq.
Email: jarvis.annette@dorsey.com
*Attorneys for Debtor Naartjie Custom Kids, Inc.*

*With a copy to*
**Hilco Streambank**
74 Crescent Road, 2nd Floor
Needham, MA 02494
Attn: David Peress
Email: dperess@hilcoglobal.com

**Pachulski Stang Ziehl & Jones LLP**
Jeffrey N. Pomerantz
Bradford J. Sandler
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA  90067-4003
Email: jpomerantz@psjlaw.com
      bsandler@psjlaw.com
*Counsel for the Official Committee of Unsecured Creditors*

**Office of The United States Trustee**
Peter J. Kuhn
John T. Morgan
405 South Main Street, Suite 300

Salt Lake City, Utah 84111
Email: peter.j.kuhn@usdoj.gov
*Office of the United States Trustee*

The Bid Deadline may be extended by the Debtor, after consultation with the Committee.

**6.     *Evaluation of Competing Bids***

A Competing Bid may be valued based upon several factors including, without limitation: (a) the amount of such bid; (b) the Assets included in such bid, (c) the structure of the bid; (d) the risks and timing associated with consummating such bid; (e) any proposed revisions to a Stalking Horse Agreement and/or any Sale Order proposed by the Stalking Horse; and (f) any other factors deemed relevant by the Debtor in its reasonable business judgment, after consultation with the Committee.

**7.     *No Auction if No Competing Bids***

If the Debtor receives no Competing Bid, and receives a Stalking Horse Bid, the Debtor will not hold the Auction and instead shall request at the Sale Hearing (defined below) that the Bankruptcy Court approve the Stalking Horse Agreement.

**8.     *Auction Process***

If the Debtor receives at least one Competing Bid for the Assets or any Asset, the Debtor will conduct an auction at **10:00 a.m. prevailing Mountain Time on November 24, 2014** (the "**Auction**") at the offices of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685, or such other location as will be timely communicated to all Qualified Bidders.   The Auction will be conducted in accordance with the following procedures:

(a)     Only the Debtor, the Committee and its members, any Competing Bidder, and the respective advisors to each of the foregoing, will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any bids at the Auction.

(b)     Each Qualified Bidder will be required to confirm in writing that it has not engaged in any collusion with respect to the bidding at the Auction.

(c)     As soon as practicable prior to the Auction, but in no event no later than 24 hours prior to the Auction, each Competing Bidder shall inform the Debtor whether it intends to attend the Auction; *provided that* in the event a Competing Bidder elects not to attend the Auction, such Competing Bidder's Competing Bid nevertheless will remain fully enforceable until the selection of the Successful Bidder and the Back-Up Bidder.

(d)     As soon as practicable prior to the Auction, the Debtor and the Committee, in their reasonable discretion, shall determine which Competing Bid(s) are

6

the highest and/or otherwise best Competing Bid(s) for (x) all of the Assets (the "**Highest and/or Best All Asset Bid**"), and/or (y) each Asset (each highest and/or best Competing Bid for an Asset, the "**Highest and/or Best Individual Asset Bid**"), and will provide copies of the Highest and/or Best All Asset Bid and/or the Highest and/or Best Individual Asset Bid to the other Competing Bidders.

(e)     To the extent that there is at least one Competing Bid for an Asset, the bidding at the Auction will continue in increments of at least 0.10% over the Highest and/or Best Individual Asset Bid (each successive bid, an "**Individual Asset Overbid**"); *provided*, *however*, that the Debtor, after consultation with the Committee, may consider other economic factors when determining whether a Competing Bid for an Asset is a higher and/or better Competing Bid.  An Individual Asset Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtor accepts an alternate Competing Bid as the Highest and/or Best Individual Asset Bid.  During the course of the Auction, the Debtor shall, after submission of each Individual Asset Overbid, promptly inform each Qualified Bidder which Individual Asset Overbid reflects, in the Debtor's view, the Highest and/or Best Individual Asset Bid.

(f)     When bidding on individual Assets concludes, the Debtor, after consultation with the Committee, shall determine the Highest and/or Best Individual Asset Bid with respect to each Asset (each Highest and/or Best Asset Class Bid, the "**Winning Individual Asset Bid**").  To the extent a particular Asset did not receive at least one Competing Bid (and accordingly, was not subject to the auction procedures set forth above), the Highest and/or Best Individual Asset Bid shall be deemed to be the Stalking Horse Bid for such Asset, subject to the provisions of these Bidding Procedures.

(g)     If there is a Highest and/or Best All Asset Bid, after determination of each Winning Individual Asset Bid, the Debtor shall hold an auction for all of the Assets.  If the Winning Individual Asset Bids, in the aggregate, or a Competing Bidder for the all of the Assets, are selected as the Highest and/or Best All Asset Bid, the bidding at the Auction will continue in increments of at least 0.10% over the Highest and/or Best All Asset Bid (each successive bid, an "**All Assets Overbid**").  An All Assets Overbid shall remain open and binding on the Competing Bidder(s) until and unless the Debtor and Committee accepts Competing Bid(s) as the Highest and/or Best All Asset Bid.  During the course of the Auction, the Debtor shall, after submission of each All Assets Overbid, promptly inform each Competing Bidder which All Assets Overbid reflects, in the Debtor's and Committee's view, the Highest and/or Best All Asset Bid.  For the avoidance of doubt, Asset bidders may make joint All Assets Overbids.

(h)     The Debtor, after consultation with and approval by the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided that* such rules are (a) not inconsistent with any order of the Bankruptcy Court entered in this case and (b) disclosed to each Competing Bidder during or prior to the Auction.

(i)     Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by each Individual Asset Overbid and/or All Assets Overbid, the Debtor will give effect to any additional costs to be assumed by a Qualified Bidder and any additional costs or risks which may be imposed on the Debtor by any such Individual Asset Overbid and/or All Assets Overbid.

Each Competing Bidder and the Stalking Horse shall be deemed to have (i) consented and submitted to the core jurisdiction of the Bankruptcy Court, (ii) waived and released any and all disputes or objections relating to the marketing or solicitation process, the Auction and the construction and enforcement of such party's contemplated transaction documents, and (iii) consented to the jurisdiction of the Bankruptcy Court in all respects in connection with such matters included in clause (ii) and its bid.

## 9.     *Selection of Successful Bid*

Prior to the conclusion of the Auction, the Debtor, after consultation with and approval by the Committee, will review and evaluate each Competing Bid in accordance with these Bidding Procedures and determine in its reasonable business judgment which offer is the highest and/or otherwise best offer from among the Competing Bids for all of the Assets or for each of the individual Assets submitted at the Auction (each, a "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid(s).  The determination of the Successful Bid(s) by the Debtor at the conclusion of the Auction will be final, subject only to approval by the Bankruptcy Court.

As soon as practicable after the Auction, (a) the Successful Bidder will complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions of the Successful Bid and (b) the Debtor will file a notice with the Bankruptcy Court identifying the Successful Bidder(s) and the Successful Bid(s), which will include copies of the Stalking Horse Agreement or applicable Competing Bidder's agreement and proposed Sale Order, in each case in the forms agreed to between the Debtor and the Successful Bidder, and marked to show all amendments and modifications, if any, made to the Stalking Horse Agreement submitted by the Stalking Horse (the "**Successful Bidder Agreement**") and to any Sale Order proposed by the Stalking Horse.

The Debtor will sell the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) as set forth in each Successful Bidder Agreement if and as approved by the Bankruptcy Court at the Sale Hearing.  The presentation of a particular Competing Bid to the Bankruptcy Court as a Successful Bid for approval does not constitute the Debtor's acceptance

of the Competing Bid.  The Debtor will be deemed to have accepted a Competing Bid as a Successful Bid only after such bid has been approved by the Bankruptcy Court pursuant to entry of the Sale Order.

### 10.    *Return of Deposits*

All Deposits will be returned to each Competing Bidder not selected by the Debtor as the Successful Bidder no later than ten (10) business days after the Sale.

### 11.    *Forfeit of Deposits*

A Successful Bidder that breaches any of its obligations under the applicable Successful Bidder Agreement shall forfeit its Deposit, which shall become property of the Debtor's estate without any further order of the Bankruptcy Court.  The forfeiture of the Deposit shall be in addition to any other rights, claims and remedies that the Debtor and its estate may have against such Successful Bidder, including, but not limited to, the terms of any Successful Bidder Agreement and any orders entered by the Bankruptcy Court in connection therewith.

### 12.    *Back-Up Bidder*

If an Auction is conducted, the Competing Bidder(s) with the second highest and/or otherwise best Competing Bid at the Auction for the Assets or for any Individual Asset, as determined by the Debtor and the Committee in the exercise of their business judgment, shall be required to serve as a back-up bidder (a "**Back-Up Bidder**") and keep such bid open and irrevocable until the date that is ten (10) business days after the Sale.  Following the Sale Hearing, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the applicable Back-Up Bidder will be deemed to be the new Successful Bidder for the Assets or applicable Asset, and the Debtor will be authorized, but not required, to consummate the Sale with such Back-Up Bidder without further order of the Bankruptcy Court.

## C.    **The Sale Hearing**

The Debtor will seek entry of an order (the "**Sale Order**") from the Bankruptcy Court approving the Sale at a hearing (the "**Sale Hearing**") no later than November 25, 2014 to request that the Bankruptcy Court approve and authorize the Sale on terms and conditions determined in accordance with these Bidding Procedures, the Auction and the executed form of the Stalking Horse Agreement or Qualified Bidder Agreement, as applicable.

# EXHIBIT B

Annette W. Jarvis (Utah State Bar No. 01649)
Jeffrey M. Armington (Utah State Bar No. 14050)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
       hunt.peggy@dorsey.com
       thomson.michael@dorsey.com
       armington.jeff@dorsey.com

*Attorneys for Debtor Naartjie Custom Kids, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

**AUCTION NOTICE**

**AND**

**NOTICE OF SALE HEARING**

**Auction Date: November 24, 2014 at 10:00 a.m. (Mountain Time)**
**Sale Hearing Objection Deadline: November 24, 2014 at 4:00 p.m. (Mountain Time)**
**Sale Hearing Date: November 25, 2014 at 2:00 p.m. (Mountain Time)**

**PLEASE TAKE NOTICE** that on October __, 2014, the Court entered its *Order Granting Debtor's Motion for Order (A) Authorizing Bidding Procedures and Auction, (B) Authorizing Debtor to Provide Bid Protections to Stalking Horse, (C) Scheduling Sale Hearing and Approving Notice Thereof, and (D) Granting Related Relief* (the "Order"), which approved the *Debtor's Motion for Order (A) Authorizing Bidding Procedures and Auction, (B) Authorizing*

*Debtor to Provide Bid Protections to Stalking Horse, (C) Scheduling Sale Hearing and Approving Notice Thereof, and (D) Granting Related Relief* (the "Motion")[1] filed by Naartjie Custom Kids, Inc., on behalf of itself and as debtor in possession in the above-captioned case (the "Debtor").

**PLEASE TAKE FURTHER NOTICE THAT YOUR RIGHTS MAY BE AFFECTED. You should read this Notice, as well as the Motion, and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

PLEASE TAKE FURTHER NOTICE that the Order approved, among other things, the Bidding Procedures attached to the Order as Exhibit A, which governs selection of one or more Successful Bidders for the Assets through the Auction.

PLEASE TAKE FURTHER NOTICE that within two (2) business days after entering into a Stalking Horse Agreement, the Debtor shall file a Notice of Selection of Stalking Horse Agreement ("Stalking Horse Selection Notice") with the Bankruptcy Court and a motion to approve the sale of the Assets to the Stalking Horse (the "Sale Motion").

PLEASE TAKE FURTHER NOTICE that any bidder that desires to make a bid in the Auction must deliver written copies of its bid to the Notice Parties (defined below) so as to be received by each of the Notice Parties not later than **4:00 p.m. prevailing Mountain Time on November 21, 2014** (the "Bid Deadline").

PLEASE TAKE FURTHER NOTICE that the Auction will be held at **10:00 a.m. prevailing Mountain Time on November 24, 2014** at the offices of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685.

PLEASE TAKE FURTHER NOTICE that a hearing to consider, among other things, a sale agreement for the purchase of the Assets with the parties submitting the highest and/or otherwise best bid at the Auction, as determined by the Debtor with the consent of the UCC (each a "Successful Bidder") will be held at **2:00 p.m. prevailing Mountain Time on November 25, 2014** before The Honorable William T. Thurman, United States Bankruptcy Judge, in his courtroom, Room 376, 350 South Main Street, Salt Lake City, UT 84101, or as soon thereafter as the Debtor may be heard (the "Sale Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Sale Motion must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the "Notice Parties": (a) counsel to the UCC, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4003 Attn: Jeffrey N. Pomerantz, email: jpomerantz@pszlaw.com; (b) counsel to the Debtor, Dorsey & Whitney LLP, 136 South Main St. Suite 1000, Salt Lake City, Utah 84101 Attn: Annette Jarvis, email: jarvis.annette@dorsey.com; and (c) the Office of the United States Trustee for the District of Utah (collectively, the "Notice Parties").

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures as applicable.

**PLEASE TAKE FURTHER NOTICE** that if you want the Court to consider your views on the Sale Motion, then you or your attorney must do each of the following:

(1)     On or before **4:00 p.m. prevailing Mountain Time on November 24, 2014** (the "Objection Deadline"), file a written objection specifically delineating the nature of your objection at:

> Clerk of the Court
> United States Bankruptcy Court
> 350 South Main Street, Room 301
> Salt Lake City, UT 84101

If you mail your objection to the Court for filing, you must mail it early enough so that the Court will receive it on or before the Objection Deadline specified above. You must also serve a copy on the Notice Parties at the addresses specified above.

(2)     Attend the Sale Hearing on the Sale Motion at **2:00 p.m. prevailing Mountain Time on November 25, 2014**, before the Honorable William T. Thurman, in his courtroom, Room 376, of the Frank E. Moss United States Courthouse, 350 South Main Street, Salt Lake City, Utah 84101. Failure to attend the hearings will be deemed a waiver of your objection.

**PLEASE TAKE FURTHER NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE ORDER AND BIDDING PROCEDURES MAY RESULT IN THE FAILURE OF THE COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE PROPOSED SALE TRANSACTION.**

**PLEASE TAKE FURTHER NOTICE** that this Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety. The Motion, Order, Bidding Procedures and any other pleadings may be found for a fee at the Court's website (http://www.utb.uscourts.gov/) for registered users of the Public Access to Court Electronic Records (PACER) System.

DATED this ___ day of October, 2014.

**DORSEY & WHITNEY LLP**

*/s/ Annette W. Jarvis*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor Naartjie Custom Kids, Inc.*