Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
       hunt.peggy@dorsey.com
       thomson.michael@dorsey.com
       armington.jeff@dorsey.com

*Attorneys for Debtor Naartjie Custom Kids, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re:<br><br>NAARTJIE CUSTOM KIDS, INC.,<br><br>Debtor. | Bankr. Case No. 14-29666<br><br>Chapter 11<br><br>The Honorable William T. Thurman |

**DEBTOR'S MOTION FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 503(c)(3), APPROVING DEBTOR'S KEY EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES**

Naartjie Custom Kids, Inc. (the "Debtor"), the debtor in possession in the above-captioned bankruptcy case, by and through its counsel, moves the Court for entry of an Order pursuant to 11 U.S.C. §§ 363(b) and 503(c)(3) (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Rules"), approving the Debtor's key employee retention plan for the Debtor's two remaining non-insider employees (the "KERP") and authorizing the payments contemplated thereunder (this "Motion").  This Motion is supported by

-1-

the *Declaration of Jeff Nerland* (the "Nerland Declaration") filed concurrently herewith. In further support hereof, the Debtor states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 363(b) and 503(c)(3) of the Bankruptcy Code as well as Federal Rule of Bankruptcy Procedure 6004, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Utah, Central Division (the "Court").

## BACKGROUND

### *General*

5. On September 12, 2014, the Debtor filed a voluntary petition with the Court for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case. An official committee of unsecured creditors (the "Committee") was appointed in this case on September 22, 2014.

6. From the inception of this case, the Debtor has focused its efforts on selling its primary assets – the clothing and apparel located in the Debtor's 55 stores in the United States, the Debtor's interests in its wholly owned South African subsidiary, ZA One Proprietary Limited

("ZA One"), and the Debtor's intellectual property - in an effort to maximize the value of its estate for the Debtor's creditor constituents.

7. Accordingly, the Debtor held a Court-approved auction to sell the inventory in its stores in the United States and entered into an "Agency Agreement" with the professional liquidation firm, Great American, LLC ("Great American"), which generated enough money to pay off the Debtor's senior secured lender, Salus Capital, and a surplus that will inure to the benefit of the Debtor's other creditor constituents.

8. After entry into the Agency Agreement the Debtor focused its efforts on selling its other major assets – the Debtor's interests in ZA One and the Debtor's intellectual property assets. Those efforts culminated in the Court's approval of a sale of the Debtor's interests in ZA One and its intellectual property to Truworths Limited ("Truworths").[1]

9. On March 10, 2015, the Court entered an *Order Granting Joint Motion of the Debtor and Official Committee of Unsecured Creditors, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for the Entry of an Order Approving a Settlement with Target Ease International, Mid-America Overseas, Inc. and Secured Noteholders* [Docket No. 424], which approved the Debtor's entry into a settlement with each of the major creditor constituents in this case on the economic division of the Debtor's assets between the parties that will pave the way for a consensual resolution of this case either through a structured dismissal or a confirmed plan of liquidation.

---

[1] The sale of the Debtor's interests in ZA One to Truworths has been approved by South African regulatory authorities and the Debtor is currently working to facilitate closing the transaction.

4841-6451-6130\2

10. The Debtor slashed its employee roster following the conclusion of the liquidation sales at the Debtor's stores in the United States. The Debtor currently employs only four employees, all of whom are working at the Debtor's headquarters in Salt Lake City, Utah: (a) Glenn Wood, the Debtor's CEO; (b) Petro Wood, an accounting manager for the Debtor; (c) Stephen Ensign, the Debtor's controller ("Ensign"); and (d) Brian Anderson, a senior accounting manager for the Debtor ("Anderson" and together with Ensign, the "Non-Insider Employees").[2]

11. Because of the dramatic reduction in the Debtor's workforce, each of these four employees is essential to winding up the Debtor's affairs. In particular, the Debtor must: (a) complete its claims reconciliation process; (b) close the sale to Truworths of the Debtor's interests in ZA One and the Debtor's intellectual property assets; (c) file the Debtor's year end and final tax returns; and (d) wind up the Debtor's remaining affairs.[3]

*The Proposed Key Employee Retention Plan*

12. By this Motion, the Debtor seeks authority to implement the KERP to incentivize the Non-Insider Employees to remain employed with the Debtor until their efforts are no longer required.[4]

13. If approved, the KERP would pay the following amounts to Ensign and Anderson:

    a. *Ensign* - $10,000.00, payable only if Ensign remains employed with the Debtor until his services are no longer required; and

---

[2] Nerland Declaration at ¶ 3.

[3] *Id.* at ¶ 4.

[4] *Id.* at ¶ 5.

    b. *Anderson* - $5,000, payable only if Anderson remains employed with the Debtor until his services are no longer required.[5]

14. The Non-Insider Employees have not been appointed by Naartjie's board as officers, do not report directly to the board, and instead report to Naartjie's CEO, Glenn Wood.[6]

15. The amounts of compensation contemplated in the KERP were determined by the Debtor's CRO, Jeff Nerland, and are based on his business judgment and the Non-Insider Employees' level of compensation.[7]

## RELIEF REQUESTED

16. The Debtor requests entry of an Order granting the Motion and pursuant to Sections 363(b) and 503(c)(3) of the Bankruptcy Code and Rule 6004 authorizing the Debtor to implement the KERP and make payments thereunder on the terms described above.

## BASIS FOR RELIEF REQUESTED

17. Section 101(31)(B) defines "insider" for the purposes of a corporation and states:

    (31) The term "insider" includes—
        . . .
    (B) if the debtor is a corporation—
      (i) director of the debtor;
      (ii) officer of the debtor;
      (iii) person in control of the debtor;
      (iv) partnership in which the debtor is a general partner;
      (v) general partner of the debtor; or
      (vi) relative of a general partner, director, officer, or person in control
        of the debtor . . . .[8]

---

[5]   *Id.* at ¶ 6.

[6]   *Id.* at ¶ 7.

[7]   *Id.* at ¶ 8.

[8]   11 U.S.C. § 101(31)(B).

4841-6451-6130\2

18. The Non-Insider Employees are not directors, control persons, and have not been appointed as officers of the Debtor, nor are they related to any director, officer, or control persons.[9] Accordingly, the Non-Insider Employees are not "insiders" of the Debtor.

19. Section 503(c)(1) and (2) place restrictions on transfers or severance payments to a debtor's insiders, and are not applicable to the proposed KERP payments to the Non-Insider Employees.

20. Section 503(c)(3) governs payments to non-insider employees out of the ordinary course of business and states:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> . . .
>
> (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.[10]

21. Courts have found that the language "justified by the facts and circumstances of the case" is akin to the business judgment standard applied under Section 363(b).[11]

22. The Court in *In re Dana Corp. (Dana II)*, identified several factors to assess in determining whether a compensation proposal is an exercise of the debtor's sound business

---

[9] Nerland Declaration at ¶ 9.

[10] 11 U.S.C. § 503(c)(3).

[11] *See e.g.*, *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ; *In re Borders Group, Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) ; *In re Dana Corp. (Dana II)*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006).

judgment, which have been widely adopted by other courts.[12] Those factors include the following:

a. Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, *is the plan calculated to achieve the desired performance?* (emphasis added)

b. Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

c. Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

d. Is the plan or proposal consistent with industry standards?

e. What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

f. Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?[13]

---

[12] *See e.g.*, *In re Patriot Coal Corp.*, 492 B.R. 518 (Bankr. E.D. Mo. 2013) (approving both an insider incentive plan and a non-insider retention plan under section 503(c)(3)); *In re Residential Capital, LLC (ResCap II)*, 491 B.R. 73 (Bankr. S.D.N.Y. 2013) (applying *Dana II* factors in approving both a non-insider KERP and an incentive plan for insiders); *In re Global Aviation Holdings, Inc.*, 478 B.R. 142 (Bankr. E.D.N.Y. 2012) (approving non-insider KERP); *In re Velo Holdings, Inc.*, 472 B.R. 201 (Bankr. S.D.N.Y. 2012) (applying *Dana II* factors and concluding that debtors exercised sound judgment in their KERP plan); *In re Borders Group, Inc.*, 453 B.R. 459, 474-77 (Bankr. S.D.N.Y. 2011) (applying the *Dana II* factors in approving a key employee incentive plan under section 503(c)(3)).

[13] *Dana II*, 358 B.R. at 576-77 (internal citations omitted).

4841-6451-6130\2

23. Here, the KERP meets all of these factors. First, under the KERP, the Debtor will only pay the Non-Insider Employees if they stay until their services are no longer required by the Debtor.[14] Second, the modest amount paid to the Non-Insider Employees, $15,000 in total, is reasonable in light of the fact that if the Non-Insider Employees leave before their services are no longer needed, the Debtor will have to rely on estate professionals to complete the necessary work at a far greater expense to the Debtor's estate.[15] Third, the proposed KERP applies to all remaining Debtor employees who are not insiders.[16] Fourth, the KERP is consistent with industry standards.[17] Fifth, the Debtor's independent CRO investigated the need for a plan and determined that both Non-Insider Employees are essential to completing claims reconciliation, preparing tax returns, and winding up the Debtor's affairs.[18] Finally, the Debtor's independent CRO created the incentive compensation.[19]

24. Accordingly, the Debtor submits that the KERP is in the best interests of the Debtor's estate and the Debtor's creditor constituents.[20]

25. The Committee has been consulted about and supports the relief requested in this Motion.

---

[14] Nerland Declaration at ¶ 10.

[15] *Id.* at ¶ 11.

[16] *Id.* at ¶ 12.

[17] *Id.* at ¶ 13.

[18] *Id.* at ¶ 14.

[19] *Id.*

[20] *Id.* at ¶ 15.

4841-6451-6130\2

## CONCLUSION

WHEREFORE, the Debtor requests that the Court grant this Motion approving the KERP and authorizing the Debtor to make any payments thereunder.

DATED this 25th day of March, 2015.

**DORSEY & WHITNEY LLP**

*/s/ Jeffrey M. Armington*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor Naartjie Custom Kids, Inc.*

## CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)

   I hereby certify that on the 25th day of March, 2015, I electronically filed the foregoing **DEBTOR'S MOTION FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 503(c)(3), APPROVING DEBTOR'S KEY EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES** (the "Motion") with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF uses and will be served through the CM/ECF system.

- James W. Anderson jwa@clydesnow.com, aperdue@clydesnow.com
- Jeffrey M Armington armington.jeff@dorsey.com
- Darwin H. Bingham dbingham@scalleyreading.net, cat@scalleyreading.net
- Dustin P. Branch dustin.branch@kattenlaw.com, donna.carolo@kattenlaw.com;lora.anderson@kattenlaw.com
- Mona Lyman Burton mburton@hollandhart.com, ckelly@hollandhart.com;intaketeam@hollandhart.com;slclitdocket@hollandhart.com
- Kenneth L. Cannon kcannon@djplaw.com, khughes@djplaw.com
- Andrew S. Conway Aconway@taubman.com
- J. Gregory Hardman ghardman@snowjensen.com
- Tyler M. Hawkins hawkinst@ballardspahr.com, saltlakedocketclerk@ballardspahr.com;brownld@ballardspahr.com
- Annette W. Jarvis jarvis.annette@dorsey.com, smith.ron@dorsey.com;slc.lit@dorsey.com;brown.patricia@dorsey.com
- Michael R. Johnson mjohnson@rqn.com, dburton@rqn.com;docket@rqn.com
- Teddy M. Kapur tkapur@pszjlaw.com
- Peter J. Kuhn tr Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Bria E LaSalle Mertens blmertens@stoel.com, docketclerk@stoel.com
- Frank A. Merola fmerola@stroock.com, cgabriel@stroock.com;morozco@stroock.com;mmagzamen@stroock.com;ssiegel@stroock.com;dmohamed@stroock.com
- John T. Morgan tr john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- David L. Pollack pollack@ballardspahr.com
- Jeffrey N. Pomerantz jpomerantz@pszjlaw.com
- Robert S. Prince rprince@kmclaw.com, squilter@kmclaw.com
- Brian M. Rothschild brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- Bradford J. Sandler bsandler@pszjlaw.com
- Michael F. Thomson thomson.michael@dorsey.com, montoya.michelle@dorsey.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Gale K. x6Francis txbk@utah.gov

4841-6451-6130\2

*/s/ Jeffrey M. Armington*