Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 06060)
Michael F. Thomson (Utah State Bar No. 09707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor Naartjie Custom Kids, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

## DEBTOR'S MOTION TO USE PROPERTY OUT OF THE ORDINARY COURSE OF BUSINESS PURSUANT TO 11 U.S.C. § 363(B)(1) AND FOR THE ENTRY OF AN ORDER APPROVING DEBTOR'S ENTRY INTO LEASE REJECTION AGREEMENT AND LICENSE AGREEMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Naartjie Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above captioned bankruptcy case, by and through counsel, hereby submits this motion (the "Motion"), pursuant to Sections 105(a) and 363(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 9014 and 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking entry of an Order authorizing the entry into and

approving that certain: (a) Lease Rejection Agreement by and between SVN Nobbs East Sahara,

LLC, Wasatch, LLC, and BSFMT Wasatch, LLC on one hand (collectively, the "Landlord") and

the Debtor on the other hand, substantially in the form attached hereto as **Exhibit A** (the

"Rejection Agreement"); (b) License Agreement by and between the Landlord and the Debtor,

substantially in the form attached hereto as **Exhibit B** (the "Landlord License"); and (c) License

Agreement by and between the Debtor and Advanced Comfort Technologies, Inc. ("New

Tenant"), substantially in the form attached hereto as **Exhibit C** (the "New Tenant License" and,

together with the Rejection Agreement and the Landlord License, the "Agreements").[1]    This

Motion is supported by the *Declaration of Jeff Nerland* (the "Nerland Declaration") filed

concurrently herewith.  In support of this Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

On April 14, 2011, the Debtor and the Landlord entered into a Lease Agreement dated

April 14, 2011, as amended by that certain Correction Amendment dated August 2, 2012

(collectively, the "Lease"), governing approximately 28,000 square feet located at Suite D-100,

3676 W. California Avenue, Salt Lake City, Utah 84104 (the "Property").  The Debtor has

occupied the Property pursuant to the Lease and used it as Naartjie's corporate headquarters.

The Lease currently expires on June 30, 2018.   Recently, with the Debtor's workforce

diminished and this case approaching a final resolution, the Debtor has been in negotiation with

the Landlord regarding termination of the Lease and the transfer of the Property to the New

---

[1]    Final executed versions of the Agreements will be submitted to the Court prior to
consideration of this Motion.

Tenant.[2]   Accordingly, the Debtor seeks Court approval to enter into the Agreements and terminate the Lease, while allowing Naartjie's remaining employees to occupy a smaller portion of the Property to continue their work for the Debtor.  The Debtor also seeks authority to allow the New Tenant to use the portion of the Property that Naartjie no longer requires until the Debtor rejects the Lease pursuant to the Agreements.

Collectively, the Agreements will facilitate the Debtor's orderly and economically efficient transition out of its headquarters space and preserve estate value for the benefit of creditors.[3]   The Agreements will: (a) allow Naartjie's four remaining employees to continue to work in a portion of the Property rent-free through June 1, 2015, and through June 30, 2015 if necessary; (b) waive any rejection damages claim held by the Landlord; (c) require the Landlord to reimburse the Debtor for the full amount of rent paid by the Debtor for April 2015; (d) allow Naartjie to maintain its servers located on the Property through August 31, 2015 to allow the Debtor's employees to work from home if necessary; and (e) grant the New Tenant a license to use the portion of the Property that Naartjie no longer requires.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

---

[2]   Nerland Declaration at ¶ 3.

[3]   Nerland Declaration at ¶ 4.

2.      On September 12, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").

3.      No trustee or examiner has been appointed in this case.  The Official Committee of Unsecured Creditors was formed on September 22, 2014 (the "Committee").  The Debtor is operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4.      From the inception of this case, the Debtor focused its efforts on selling its primary assets – the clothing and apparel located in the Debtor's 55 stores in the United States, the Debtor's interests in its wholly owned South African subsidiary, ZA One Proprietary Limited ("ZA One"), and the Debtor's intellectual property - in an effort to maximize the value of its estate for the Debtor's creditor constituents.

5.      Accordingly, the Debtor held a Court-approved auction to sell the inventory in its stores in the United States and entered into an "Agency Agreement" with the professional liquidation firm, Great American, LLC ("Great American"), which generated enough money to pay off the Debtor's senior secured lender, Salus Capital, and a surplus that will inure to the benefit of the Debtor's other creditor constituents.

6.      By December 31, 2014, Great American liquidated the inventory in the Debtor's stores in the United States, and the Debtor and Great American have now completed their reconciliation of the amounts owed under the Agency Agreement.

7.      After entry into the Agency Agreement the Debtor focused its efforts on selling its other major assets – the Debtor's interests in ZA One and the Debtor's intellectual property

4

assets.  Those efforts culminated in the Court's approval of a sale of the Debtor's interests in ZA One and its intellectual property to Truworths Limited ("Truworths").[4]

8.     On March 10, 2015, the Court entered an *Order Granting Joint Motion of the Debtor and Official Committee of Unsecured Creditors, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for the Entry of an Order Approving a Settlement with Target Ease International, Mid-America Overseas, Inc. and Secured Noteholders* [Docket No. 424] (the "Settlement Order"), which approved the Debtor's entry into a settlement with each of the major creditor constituents in this case on the economic division of the Debtor's assets between the parties that will pave the way for a consensual resolution of this case either through a structured dismissal or a confirmed plan of liquidation.

9.     On March 26, 2015, the Court entered its *Order Granting Debtor's Motion for Entry of an Order Establishing Administrative Claims Bar Date* [Docket No. 448] (the "Administrative Claims Bar Date Order").  The Administrative Claims Bar Date Order established April 20, 2015 as the deadline for parties, other than retained professionals, to file motions seeking payment of administrative expenses.[5]

10.     The Debtor dramatically reduced its employee roster following the conclusion of the liquidation sales at the Debtor's stores in the United States.  The Debtor currently employs only four employees, all of whom are working at the Debtor's headquarters in Salt Lake City, Utah: (a) Glenn Wood, the Debtor's CEO; (b) Petro Wood, an accounting manager for the

---

[4]    The sale of the Debtor's interests in ZA One to Truworths has been approved by South African regulatory authorities and the Debtor is close to closing the transaction and upstreaming money from ZA One to the Debtor.

[5]    Administrative Claims Bar Date Order at pp. 2-3.

5

Debtor; (c) Stephen Ensign, the Debtor's controller; and (d) Brian Anderson, a senior accounting manager for the Debtor.[6]

11.     The Debtor's four remaining employees no longer need to occupy all 28,000 square feet of the Property.[7]

12.      However, the Debtor needs to continue to employ its remaining employees and provide them with space to work through the end of May 2015, and possibly through June 2015, and the employees will need access to the Debtor's servers through possibly August 2015 to allow the Debtor's employees to work remotely if necessary in order to resolve the Debtor's claims reconciliation process.[8]

## RELIEF REQUESTED

13.     By this Motion, the Debtor seeks entry of an Order approving the Debtor's: (a) entry into the Agreements pursuant to section 105(a) of the Bankruptcy Code and Rules 9014 and 9019 of the Bankruptcy Rules; and (b) the New Tenant's use of the unneeded portion of the Property pending the Debtor's rejection of the Lease pursuant to section 363(b)(1) of the Bankruptcy Code.

## AGREEMENTS

14.     The following chart more fully summarizes certain material provisions of the Agreements.  The chart is qualified by reference to the Agreements attached hereto as **Exhibits**

---

[6]    Nerland Declaration at ¶ 5.

[7]    Nerland Declaration at ¶ 6.

[8]    Nerland Declaration at ¶ 7.

**A**, **B**, and **C** and each capitalized term in the following chart that is not otherwise defined in this

Motion has the meaning ascribed to such term in the relevant Agreement.

| | Rejection Agreement |
|---|---|
| ***Lease Description:*** | **Recital A**.<br><br>Landlord and Tenant entered into a Lease Agreement dated April 14, 2011, as amended by that certain Correction Amendment dated August 2, 2012 (collectively, the "**Lease**"), for the Premises located at 3676 West California Avenue, Suite 100, Salt Lake City, UT 84104 being approximately 28,000 rentable square feet of space (the "**Premises**").  The security deposit currently held by Service Provider under the Lease is $0.00. |
| ***Lease Expiration:*** | **Recital C**.<br><br>The Lease currently expires on **June 30, 2018**. |
| ***Purpose:*** | **Recital C**.<br><br>Landlord and Tenant desire that (i) Tenant reject the Lease pursuant to 11 U.S.C Section 365 and 554, which will terminate the Lease, (ii) upon Lease rejection, Tenant immediately tender possession of the Premises to Landlord, (iii) Landlord and Tenant enter into a license agreement whereby certain employees of Tenant may remain in the Office Area (as defined below) portion of the Premises until June 1, 2015, or until June 30, 2015 if Tenant notifies Landlord of Tenant's need to extend prior to June 1, 2015, and may remain in the Server Room (as defined below) portion of the Premises until August 31, 2015, and (iv) pending rejection and termination of the Lease, and approval by the Court of this Agreement, Tenant grants to Advanced Comfort Technologies, Inc., a Utah corporation ("Advanced Comfort") a temporary license to enter and use a portion of the Premises, all upon the terms and conditions set forth in this Agreement. |
| ***Lease Rejection:*** | **Section 2**.<br><br>Upon execution of this Agreement, Tenant shall immediately file |

| | |
|---|---|
| | with the Court and each required party a Rejection Notice to reject the Lease.  The effective date of the rejection shall be the date the Court enters an order approving this Agreement.  Upon rejection of the Lease, (a) the Lease shall be deemed terminated, other than any obligations under the Lease which expressly survive termination and (b) Tenant shall be automatically deemed to have delivered possession of the entire Premises under the Lease to Landlord without any further action on the part of Landlord or Tenant (provided that Tenant shall confirm the same in writing if requested). |
| ***Naartjie License:*** | **Section 3**.<br><br>        Upon execution of this Agreement, to become effective upon the Lease rejection and termination, Landlord shall deliver to Tenant a License Agreement ("**Naartjie License**") which shall provide as follows:<br><br>        (a)        Naartjie shall be granted a license to use and occupy a portion of the Premises consisting of an existing computer server room (the "**Server Room**") and certain office area for up to four (4) employees (the "**Office Area**" and together with the Server Room, the "**License Area**"); the employees shall be located in a contiguous area, as further set forth in the License Agreement.<br><br>        (b)        The term of the Naartjie License to use the Office Area shall commence upon the Lease rejection and termination and shall end on **June 1, 2015**, or on **June 30, 2015** if Tenant notifies Landlord of Tenant's need to extend prior to **June 1, 2015**.<br><br>        (c)        The term of the Naartjie License to use the Server Room shall commence upon the Lease rejection and termination and shall end upon **August 31, 2015**<br><br>        (d)        No rent shall be payable by Tenant under the Naartjie License during the License Term.<br><br>        (e)        Upon expiration of the Naartjie License for the Office Area and Server Area respectively, Naartjie shall vacate the Office Area and Server Area respectively and remove all personal property therein. |
| ***Reimbursement of Rent:*** | **Section 4**. |

| | |
|---|---|
| | Upon Lease rejection and termination, Landlord shall reimburse to Tenant the Rent paid under the Lease for April 2015 in the amount of $17,451.20. |
| **Waiver of Post Rejection Damages:** | **Section 5**.<br><br>Effective and conditioned upon the Lease Rejection and Termination, Landlord waives all rights to file a claim in the Case for damages arising from rejection of the Lease. |
| **Advanced Comfort License:** | **Section 6**.<br><br>Upon execution of this Agreement, Tenant shall deliver to Advanced Comfort Technologies, Inc., a Utah corporation ("**Advanced Comfort**") a license ("**Advanced Comfort License**") which shall provide as follows:<br><br>(a)     Advanced Comfort shall be granted a license to use and occupy the entire Premises under the Lease (other than the Naartjie Office Area and Server Area) for office and warehouse purposes as further set forth in the Advanced Comfort License.<br><br>(b)     The term of the Advanced Comfort License shall commence on April 3, 2015 and shall end on the date that the Court enters a final Order either approving or denying the Debtor's entry into the Advanced Comfort License agreement.<br><br>(c)     No rent shall be payable under the Advanced Comfort License during the Advanced Comfort License term. |
| **Court Approval:** | **Section 7**.<br><br>Naartjie shall immediately file a motion with the Court to seek approval of the Debtor's entry into this Agreement, the Advanced Comfort License agreement, and the Naartjie License agreement. To the extent that the Court denies the motion seeking approval of the Debtor's entry into those agreements, this Agreement, the Advanced Comfort License agreement, and the Naartjie License agreement, shall be null and void and of no further force and effect. |
| **Releases:** | **Section 8.**<br><br>Upon obtaining Court approval of the Debtor's execution of this Agreement, to be effective as of the Lease rejection, and except for |

|  | obligations of Landlord arising out of this Agreement, Tenant on behalf of itself, its principals, shareholders, officers, directors, managers, members, employees and agents (each, a "**Tenant Party**") and each of their respective heirs, legal representatives, successors and assigns, hereby releases, acquits and forever discharges Landlord and its employees and agents, jointly and individually, of and from any and all claims, demands, causes of action, obligations, damages and liabilities, whether known or unknown, which Tenant and/or any Tenant Party has or may hereafter obtain or accrue arising out of the Lease and/or any fact, matter, incident, claim, personal injury, property damage, event, circumstance, happening, occurrence and/or thing of any kind or nature whatsoever which arose or occurred at any time in connection with the Lease, the Premises and/or the Project. Further, upon obtaining Court approval of the Debtor's execution of this Agreement, to be effective as of the Lease rejection, and except for (i) the Surviving Obligations (as defined below) and (ii) obligations of Tenant arising out of this Agreement, Landlord on behalf of itself, its principals, shareholders, officers, directors, managers, members, employees and agents (each, a "**Landlord Party**") and each of their respective heirs, legal representatives, successors and assigns, hereby releases, acquits and forever discharges Tenant and its employees and agents, jointly and individually, of and from any and all claims, demands, causes of action, obligations, damages and liabilities, whether known or unknown, which Landlord and/or any Landlord Party has or may hereafter obtain or accrue arising out of the Lease and/or any fact, matter, incident, claim, personal injury, property damage, event, circumstance, happening, occurrence and/or thing of any kind or nature whatsoever which arose or occurred at any time in connection with the Lease, the Premises and/or the Project. "Surviving Obligations" are Tenant's indemnity and other obligations under the Lease which by their terms survive Lease termination. |
|--|--|
|  | **Landlord License** |
| *Purpose:* | **Recital D.** <br><br> The Lease will be rejected and terminated by Naartjie effective as of the date the Court enters an Order approving Naartjie's entry into both the Lease Rejection Agreement and this Agreement. The parties desire to enter into this Agreement for the purpose of granting to Naartjie a license to continue to enter into, use and occupy the |

| | |
|---|---|
| | License Area as more particularly set forth herein below. |
| *License –* *License Area:* | **Section 2.**<br><br>Wasatch hereby grants to Naartjie a license to enter into, use and occupy the License Area, which consists of a portion of the Premises consisting of an existing computer server room (the "**Server Room**") and certain office area for up to four (4) employees (the "**Office Area**"), as further shown on Exhibit "A", for server room and office purposes, including the right to store personal property therein. Naartjie shall not use or permit the License Area to be used for any purposes prohibited by applicable law. Naartjie shall not commit, suffer or permit any nuisance, waste or damage to the License Area, Premises or the Building. Naartjie shall keep the License Area in neat and orderly condition at all times. |
| *Term:* | **Section 3.**<br><br>The term of the License for the Office Area ("**Office License Term**") shall commence on the date of Lease rejection and termination and end on **June 1, 2015**, or on **June 30, 2015** if Tenant notifies Landlord of Tenant's need to extend prior to **June 1, 2015** ("**Office License Expiration Date**").   The term of the License for the Server Room ("**Server License Term**" and together with the Office License Term, the "**License Term**") shall commence on the date of Lease rejection and termination and end on August 31, 2015 ("**Server License Expiration Date**"). |
| *Rent and* *Utilities:* | **Section 4.**<br><br>No rent shall be due for the License Term.  Naartjie is liable to pay for all telephone and cable charges used in the Licensed Area during the License Term. |
| *Termination:* | **Section 7.**<br><br>Immediately upon expiration or termination of Naartjie's rights to the Office Area and the Server Room respectively, Naartjie shall completely vacate and surrender the Office Area and the Server Room respectively to Wasatch in the condition in which it was delivered to Naartjie, ordinary wear and tear excepted, broom clean and empty of all personal property and other items placed therein by, through or on behalf of Naartjie. |

| | |
|---|---|
| *Indemnity:* | **Section 8.**<br><br>Naartjie will indemnify, defend and hold Wasatch, its officers, directors, employees, agents, property managers and representatives (each, a "**Wasatch Party**"), harmless for, from and against any claims, costs, suits, liabilities, expenses, losses and actions, including reasonable attorneys' fees (collectively, "**Losses**") arising out of (a) any injury to person or damage to property on or about the License Area, Premises, Building caused by Naartjie or its employees, agents or contractors, (b) Naartjie's use or occupancy of the License Area; or (c) any breach of this Agreement by Naartjie. Except to the extent arising from the willful misconduct or gross negligence (also known as wanton and willful negligence) of Wasatch or its employees or agents, Naartjie agrees that Wasatch is not liable for any death or injury to persons, theft or damage to any items or property in the License Area or Building, it being understood that Naartjie is using the License Area at its own risk. |
| *Insurance:* | **Section 9.**<br><br>Naartjie shall at its expense maintain  insurance coverage insuring against claims, demands or actions for personal injuries or death resulting from the use or occupancy of the License Area by Naartjie, its employees or agents, with limits of not less than One Million Dollars ($1,000,000) any one occurrence, in an aggregate amount of Two Million Dollars ($2,000,000), and for damage to property in an amount of not less than One Million  Dollars ($1,000,000). Naartjie shall provide a certificate of insurance naming Wasatch as an additional insured. |
| | **New Tenant License** |
| *License Area:* | **Recital B.**<br><br>Naartjie is the tenant under that certain Lease dated April 14, 2011, as amended ("**Lease**"). Pursuant to the Lease, Tenant has leased certain space in the Building currently containing approximately 28,000 rentable square feet known as Suite 100 ("**Premises**"). A portion of the Premises consists of office space and warehouse space and contains approximately 28,000 rentable square feet, as more particularly described in Exhibit "A" attached hereto ("**License Area**"). |

12

| | |
|---|---|
| ***Purpose:*** | **Recital D.**<br><br>The parties desire to enter into this Agreement for the purpose of granting to Advanced Comfort a license to enter into, use and occupy the License Area as more particularly set forth herein below. |
| ***License – License Area:*** | **Section 2.**<br><br>Naartjie hereby grants to Advanced Comfort a license to enter into, use and occupy the License Area for office and warehouse purposes, including the right to make alterations and improvements to the License Area and to store personal property therein.  Advanced Comfort shall not use or permit the License Area to be used for any purposes prohibited by applicable law. Advanced Comfort shall not commit, suffer or permit any nuisance, waste or damage to the License Area, Premises or the Building. Advanced Comfort shall keep the License Area in neat and orderly condition at all times. Naartjie will continue to use the Office Area and Server Room as shown on Exhibit "A".  Naartjie shall remove all personal property from the Premises (other than property in the Office Area and Server Room) on or before April 17, 2015. |
| ***Term:*** | **Section 3.**<br><br>The term of the License for the License Area ("**License Term**") shall commence on April 3, 2015 and end on the date that the Court enters a final Order either approving or denying the Debtor's entry into this Agreement ("**License Expiration Date**"). |
| ***Court Approval:*** | **Section 4.**<br><br>Naartjie shall immediately file a motion with the Court to seek approval of the Debtor's entry into this Agreement, the Lease Rejection agreement, and the Naartjie License agreement.   To the extent that the Court denies the motion seeking approval of the Debtor's entry into those agreements, this Agreement, the Lease Rejection agreement, and the Naartjie License agreement, shall be null and void and of no further force and effect. |
| ***Rent and Utilities:*** | **Section 5.**<br><br>No rent shall be due for the License Term.   Advanced Comfort is liable to pay for all utilities (power, water, gas) used in the Premises during the License Term (other than any cable charges which Naartjie |

| | |
|---|---|
| | has contracted for in the Premises, which shall remain the liability of Naartjie). |
| *As-Is Condition:* | **Section 6.**<br><br>Advanced Comfort shall accept the License Area in its as-is, where-is condition, without representation or warranty, subject to all applicable laws and regulations. |
| *Termination:* | **Section 8.**<br><br>Upon expiration or termination of Advanced Comfort's rights to the License Area, Advanced Comfort shall completely vacate and surrender the License Area to Naartjie in the condition in which it was delivered to Advanced Comfort, ordinary wear and tear excepted, broom clean and empty of all personal property and other items placed therein by, through or on behalf of Advanced Comfort. |
| *Indemnity:* | **Section 9.**<br><br>Advanced Comfort will indemnify, defend and hold Naartjie, its officers, directors, employees, agents, property managers and representatives (each, a "Naartjie Party"), harmless for, from and against any claims, costs, suits, liabilities, expenses, losses and actions, including reasonable attorneys' fees (collectively, "Losses") arising out of (a) any injury to person or damage to property on or about the License Area, Premises, Building caused by Advanced Comfort or its employees, agents or contractors, (b) Advanced Comfort's use or occupancy of the Licensed Area; or (c) any breach of this Agreement by Advanced Comfort. Except to the extent arising from the willful misconduct or gross negligence (also known as wanton and willful negligence) of Naartjie or its employees or agents, Advanced Comfort agrees that Naartjie is not liable for any death or injury to persons, theft or damage to any items or property in the License Area or Building, it being understood that Advanced Comfort is using the License Area at its own risk. |
| *Insurance:* | **Section 10.**<br><br>Advanced Comfort shall at its expense maintain insurance coverage insuring against claims, demands or actions for personal injuries or death resulting from the use or occupancy of the License Area by Advanced Comfort, its employees or agents, with limits of not less than One Million Dollars ($1,000,000) any one occurrence, in an |

| | aggregate amount of Two Million Dollars ($2,000,000), and for damage to property in an amount of not less than One Million Dollars ($1,000,000).   Advanced Comfort shall provide a certificate of insurance naming Naartjie as an additional insured. |
|---|---|

## **ARGUMENT**

### **A. New Tenant's Use of the Unneeded Portion of the Property Outside the Ordinary Course of Business is Warranted.**

15.     The Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate."

16.     In order to approve use of a debtor's assets outside the ordinary course of business, the Debtor must show that:

     a.   a sound business reason exists for the use;

     b.   there has been adequate and reasonable notice to interested parties, including full disclosure of the use terms and the Debtor's relationship with the user;

     c.   the use price is fair and reasonable; and

     d.   the proposed user is proceeding in good faith.[9]

17.     The Debtor has met all four parts of this test, and as such, respectfully requests that the Court grant the relief requested in this Motion and authorize the New Tenant to occupy the unneeded portion of the Property pending the Debtor's rejection of the Lease.

---

[9]   *See e.g., In re Med. Software Solutions*, 286 B.R. 431, 439–40 (Bankr. D. Utah 2002) (discussing 363(b)(1) requirements in sale context).

*Sound Business Purpose*

18.     Courts show great deference to a debtor-in-possession's decisions.[10] Additionally, a "presumption of reasonableness" attaches to the decisions of those controlling a debtor.[11]

19.     The Debtor submits that the proposed use of the unneeded portion of the Property by the New Tenant pursuant to the above terms and procedures is based on sound business judgment.[12]   The Debtor's four remaining employees no longer require use of the entire Property, and granting a license to New Tenant to use the unneeded portion of the Property does not disadvantage the Debtor.[13]   Further, the Landlord's refunding of Naartjie's $17,451.20 April rent payment and waiving Naartjie's obligation to pay rent for May 2015 will reduce the estate's administrative expenses by approximately $35,000.[14]

20.     Therefore, in the Debtor's business judgment, granting the New Tenant a license to use the unneeded portion of the Property is in the best interest of the Debtor's estate.[15]

*Notice of the Proposed Use Is Appropriate*

21.     Adequate and reasonable notice of the proposed use will be made to all interested parties in the Debtor's case.

---

[10]  *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

[11]  *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986).

[12]  Nerland Declaration at ¶ 8.

[13]  Nerland Declaration at ¶ 9.

[14]  Nerland Declaration at ¶ 10.

[15]  Nerland Declaration at ¶ 11.

22.     The Debtor will serve a Notice of Hearing (the "<u>Notice</u>") upon all creditors and parties-in-interest in the Debtor's bankruptcy case, which Notice shall provide, among other things, notice of the hearing on this Motion and a general description of the Agreements and the material terms of the proposed use.

23.     The Debtor asserts that the above notice procedures are fair, reasonable, and afford notice as required under the Bankruptcy Code.

*Fair and Reasonable Price*

24.     The Debtor believes that granting the New Tenant License as proposed herein is fair, reasonable and will allow the Debtor to recover its April rent and prevent the Debtor from incurring additional administrative expenses.[16]  While New Tenant is not paying the Debtor for the New Tenant License, entry into the Agreements will save the Debtor at least $35,000 in administrative expenses.[17]   Accordingly, in the Debtor's business judgment, the benefits obtained by entering into the Agreements are fair and reasonable.[18]

**B.  Entry Into the Agreements is in the Best Interests of the Debtor's Estate.**

25.     By this Motion, the Debtor respectfully asks the Court to enter an Order ratifying the Debtor's execution of the Agreements and approving the Agreements pursuant to Bankruptcy Rule 9019.

26.     The Agreements would accomplish three goals in the Case.  First, they will allow the Debtor to continue to occupy a sufficient portion of the Property through the end of May, and

---

[16]   Nerland Declaration at ¶ 12.

[17]   Nerland Declaration at ¶ 13.

[18]   Nerland Declaration at ¶ 14.

through the end of June if needed, to allow Naartjie's employees to devote their full efforts to complete the claims reconciliation process and wind up Naartjie's affairs.  Second, they will benefit the estate by allowing Naartjie to recoup the $17,451.20 that it has paid for rent in April and allow Naartjie to occupy the Property rent-free for the duration of the Landlord License. Third, they will allow Naartjie's servers to remain accessible to Naartjie's employees and the Debtor's professionals for the duration of the case without the Debtor incurring any additional costs.[19]

27.     Typically, in considering whether to approve compromise agreements entered into by the bankruptcy estate, courts consider the four factors outlined in *In re Kopexa Realty Venture Co.*[20]  Those factors are (a) the probability of success in the litigation, (b) the difficulties to be encountered in collection, (c) the complexities and expense of the litigation involved, and (d) the interests of creditors in proper deference to their reasonable views.

28.     Considering these factors, the Court should approve the Agreements as they are in the best interests of the Debtor and its creditors and are supported by sound business judgment.

a.      Probability of Success / Complexity & Expenses of Litigation / Difficulties to be Encountered in Collection.  Evaluation of the Agreements does not lend itself to a rote weighing of the *Kopexa* factors.  There is no pending or threatened litigation, or any

---

[19]   Nerland Declaration at ¶ 15.

[20]   213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997).

difficulties that could be encountered in collection.[21]    Instead, the Agreements facilitate a compromise between the Debtor, the Landlord and the New Tenant.[22]    The Debtor's four remaining employees do not require use of the entire Property, the New Tenant wishes to occupy the Property immediately and is willing to allow the Debtor to receive a license from the Landlord to the portion of the Property that the Debtor requires, and the Landlord wants to secure a new tenant for the Property and avoid having the Property remain vacant.[23] Accordingly, the Agreements effectuate a compromise between the three parties.    The Agreements resolve the Debtor's rejection of the Lease and prevent the Landlord from asserting any claim for rejection damages based on the Lease rejection, allow the Debtor to occupy a portion of the Property rent-free, allow the New Tenant to occupy the unneeded portion of the Property, and require the Landlord to refund Naartjie's April rent payment.[24]

        b.    <u>The Interests of Creditors</u>.    The Agreements serve the interests of creditors because they will allow the Debtor to continue to occupy a sufficient portion of the Property through the end of May or June to allow Naartjie's employees to devote their full efforts to complete the claims reconciliation process and wind up Naartjie's affairs.[25]    The Agreements will further benefit the estate by allowing Naartjie to recover the $17,451.20 that it has paid for rent in April and allow Naartjie to occupy the Property rent-free for the duration of

---

[21]   Nerland Declaration at ¶ 16.

[22]   Nerland Declaration at ¶ 17.

[23]   Nerland Declaration at ¶ 18.

[24]   Nerland Declaration at ¶ 19.

[25]   Nerland Declaration at ¶ 20.

the Landlord License.  The Agreements will also allow Naartjie's servers to remain accessible to

Naartjie's employees and the Debtor's professionals for the duration of the case to allow

completion of the claims reconciliation process without the Debtor incurring any additional

costs.[26]  Finally, pursuant to the Agreements, the Landlord has agreed to waive any rejection

damages claim, which will increase recovery for holders of allowed general unsecured claims.

The Debtor has discussed the terms of the Agreements with the Committee and the Committee

supports the Agreements.

29.    Based upon the foregoing, the entry into the Agreements is a proper exercise of

the Debtor's business judgment.[27]  Accordingly, the Debtor requests that the Court approve the

Motion.[28]

---

[26]   Nerland Declaration at ¶ 21.

[27]   Nerland Declaration at ¶ 22.

[28]   *See, e.g., In re George Love Farming, LC,* 2008 Bankr. LEXIS 680, at *18-19 (Bankr. D.
Utah March 6, 2008) (approving settlement compromise under *Kopexa* factors); *Shaw v.
Anderson (In re Anderson)*, 2006 Bankr. LEXIS 4420, at *23 (Bankr. D. Utah August 14,
2006) (noting that the a court's obligation under Rule 9019 is to canvass the issues and see
whether the settlement or compromise falls below the lowest point in the range of
reasonableness to determine whether the compromise is fair and equitable and in the best
interests of the estate) (citations omitted).

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of an Order approving the Debtor's: (a) entry into the Agreements pursuant to section 105(a) of the Bankruptcy Code and Rules 9014 and 9019 of the Bankruptcy Rules; and (b) the New Tenant's use of the unneeded portion of the Property pending the Debtor's rejection of the Lease pursuant to section 363(b)(1) of the Bankruptcy Code. The Debtor also requests such other relief as is just and proper.

DATED this 10th day of April, 2015.

**DORSEY & WHITNEY LLP**

   */s/ Jeffrey M. Armington*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor Naartjie Custom Kids, Inc.*

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on April 10, 2015, I electronically filed the foregoing **DEBTOR'S MOTION TO USE PROPERTY OUT OF THE ORDINARY COURSE OF BUSINESS PURSUANT TO 11 U.S.C. § 363(B)(1) AND FOR THE ENTRY OF AN ORDER APPROVING DEBTOR'S ENTRY INTO LEASE REJECTION AGREEMENT AND LICENSE AGREEMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** (the "Motion") with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case, as identified below, are registered CM/ECF users for this case.

- Jeffrey M Armington armington.jeff@dorsey.com
- Darwin H. Bingham dbingham@scalleyreading.net, cat@scalleyreading.net
- Dustin P. Branch dustin.branch@kattenlaw.com, donna.carolo@kattenlaw.com;lora.anderson@kattenlaw.com
- Mona Lyman Burton mburton@hollandhart.com, ckelly@hollandhart.com;intaketeam@hollandhart.com;slclitdocket@hollandhart.com
- Kenneth L. Cannon kcannon@djplaw.com, khughes@djplaw.com
- Andrew S. Conway Aconway@taubman.com
- J. Gregory Hardman ghardman@snowjensen.com
- Tyler M. Hawkins hawkinst@ballardspahr.com, saltlakedocketclerk@ballardspahr.com;brownld@ballardspahr.com
- Annette W. Jarvis jarvis.annette@dorsey.com, smith.ron@dorsey.com;slc.lit@dorsey.com;brown.patricia@dorsey.com
- Michael R. Johnson mjohnson@rqn.com, dburton@rqn.com;docket@rqn.com
- Teddy M. Kapur tkapur@pszjlaw.com
- Peter J. Kuhn tr Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Bria E LaSalle Mertens blmertens@stoel.com, docketclerk@stoel.com
- Frank A. Merola fmerola@stroock.com, cgabriel@stroock.com;morozco@stroock.com;mmagzamen@stroock.com;ssiegel@stroock.com;dmohamed@stroock.com
- John T. Morgan tr john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- David L. Pollack pollack@ballardspahr.com
- Jeffrey N. Pomerantz jpomerantz@pszjlaw.com
- Robert S. Prince rprince@kmclaw.com, squilter@kmclaw.com
- Brian M. Rothschild brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- Bradford J. Sandler bsandler@pszjlaw.com
- Engels Tejeda ejtejeda@hollandhart.com, tjones@hollandhart.com,slclitdocket@hollandhart.com,intaketeam@hollandhart.com
- Michael F. Thomson thomson.michael@dorsey.com, montoya.michelle@dorsey.com;koontz.jennifer@dorsey.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov

- Gale K. x6Francis txbk13@utah.gov

*/s/ Jeffrey M. Armington*

# EXHIBIT A

LEASE REJECTION AGREEMENT

THIS LEASE REJECTION AGREEMENT (this "**Agreement**") is made and entered into as of **April _,
2015**, by and between SVN NOBBS EAST SAHARA, LLC, a Delaware limited liability company, LM
WASATCH, LLC, a Utah limited liability company and BSFMT WASATCH, LLC, a Utah limited liability
company, as tenants-in-common ("**Landlord**") and NAARTJIE CUSTOM KIDS, INC., a Delaware corporation
("**Tenant**" or "**Debtor**").

A.      Landlord and Tenant entered into a Lease Agreement dated April 14, 2011, as amended by that
certain Correction Amendment dated August 2, 2012 (collectively, the  "**Lease**"), for the Premises located at 3676
West California Avenue, Suite 100, Salt Lake City, UT 84104 being approximately 28,000 rentable square feet of
space (the "**Premises**").  The security deposit currently held by Service Provider under the Lease is $0.00.

B.      Tenant filed a voluntary petition commencing a case under Title 11 of the United States Code
("**Bankruptcy Code**") in the United States Bankruptcy Court, District of Utah ("**Court**") on September 12, 2014 as
Case No. 14-29666 ("**Case**").

C.      The Lease currently expires on **June 30, 2018**.  Landlord and Tenant desire that (i) Tenant reject
the Lease pursuant to 11 U.S.C Section 365 and 554, which will terminate the Lease, (ii) upon Lease rejection,
Tenant immediately tender possession of the Premises to Landlord, (iii) Landlord and Tenant enter into a license
agreement whereby certain employees of Tenant may remain in the Office Area (as defined below) portion of the
Premises until June 1, 2015, or until June 30, 2015 if Tenant notifies Landlord of Tenant's need to extend prior to
June 1, 2015, and may remain in the Server Room (as defined below) portion of the Premises until August 31, 2015,
and (iv) pending rejection and termination of the Lease, and approval by the Court of this Agreement, Tenant grants
to Advanced Comfort Technologies, Inc., a Utah corporation ("**Advanced Comfort**") a temporary license to enter
and use a portion of the Premises, all upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, IN CONSIDERATION of the foregoing, the mutual covenants herein
contained, and other good and valuable consideration, the amount and sufficiency of which are hereby
acknowledged, the parties agree as follows:

1.      **Definitions and Recitals.**  The foregoing Recitals are hereby incorporated into this Agreement as
if set forth in their entirety.  All capitalized terms used herein not otherwise defined in this Agreement shall have the
meanings given them in the Lease.

2.      **Lease Rejection.**  Upon execution of this Agreement, Tenant shall immediately file with the
Court and each required party a Rejection Notice to reject the Lease.  The effective date of the rejection shall be the
date the Court enters an order approving this Agreement.  Upon rejection of the Lease, (a) the Lease shall be deemed
terminated, other than any obligations under the Lease which expressly survive termination and (b) Tenant shall be
automatically deemed to have delivered possession of the entire Premises under the Lease to Landlord without any
further action on the part of Landlord or Tenant (provided that Tenant shall confirm the same in writing if
requested).

3.      **Naartjie License.**   Upon execution of this Agreement, to become effective upon the Lease
rejection and termination, Landlord shall deliver to Tenant a License Agreement ("**Naartjie License**") which shall
provide as follows:

(a)      Naartjie shall be granted a license to use and occupy a portion of the Premises consisting
of an existing computer server room (the "**Server Room**") and certain office area for up to four (4) employees (the
"**Office Area**" and together with the Server Room, the "**License Area**"); the employees shall be located in a
contiguous area, as further set forth in the License Agreement.

(b)      The term of the Naartjie License to use the Office Area shall commence upon the Lease
rejection and termination and shall end on **June 1, 2015**, or on **June 30, 2015** if Tenant notifies Landlord of
Tenant's need to extend prior to **June 1, 2015**.

(c)      The term of the Naartjie License to use the Server Room shall commence upon the Lease rejection and termination and shall end upon **August 31, 2015**

(d)      No rent shall be payable by Tenant under the Naartjie License during the License Term.

(e)      Upon expiration of the Naartjie License for the Office Area and Server Area respectively, Naartjie shall vacate the Office Area and Server Area respectively and remove all personal property therein.

4.      **Reimbursement of Rent.**   Upon Lease rejection and termination, Landlord shall reimburse to Tenant the Rent paid under the Lease for April 2015 in the amount of $17,451.20.

5.      **Waiver of Post Rejection Damages**.   Effective and conditioned upon the Lease Rejection and Termination, Landlord waives all rights to file a claim in the Case for damages arising from rejection of the Lease.

6.      **Advanced Comfort License**.   Upon execution of this Agreement, Tenant shall deliver to Advanced Comforts Technologies, Inc., a Utah corporation ("**Advanced Comfort**") a license ("**Advanced Comfort License**") which shall provide as follows:

(a)      Advanced Comfort shall be granted a license to use and occupy the entire Premises under the Lease (other than the Naartjie Office Area and Server Area) for office and warehouse purposes as further set forth in the Advanced Comfort License.

(b)      The term of the Advanced Comfort License shall commence on April 3, 2015 and shall end on the date that the Court enters a final Order either approving or denying the Debtor's entry into the Advanced Comfort License agreement.

(c)      No rent shall be payable under the Advanced Comfort License during the Advanced Comfort License term.

7.      **Court Approval**.   Naartjie shall immediately file a motion with the Court to seek approval of the Debtor's entry into this Agreement, the Advanced Comfort License agreement, and the Naartjie License agreement. To the extent that the Court denies the motion seeking approval of the Debtor's entry into those agreements, this Agreement, the Advanced Comfort License agreement, and the Naartjie License agreement, shall be null and void and of no further force and effect.

8.      **Releases**.   Upon obtaining Court approval of the Debtor's execution of this Agreement, to be effective as of the Lease rejection, and except for obligations of Landlord arising out of this Agreement, Tenant on behalf of itself, its principals, shareholders, officers, directors, managers, members, employees and agents (each, a "**Tenant Party**") and each of their respective heirs, legal representatives, successors and assigns, hereby releases, acquits and forever discharges Landlord and its employees and agents, jointly and individually, of and from any and all claims, demands, causes of action, obligations, damages and liabilities, whether known or unknown, which Tenant and/or any Tenant Party has or may hereafter obtain or accrue arising out of the Lease and/or any fact, matter, incident, claim, personal injury, property damage, event, circumstance, happening, occurrence and/or thing of any kind or nature whatsoever which arose or occurred at any time in connection with the Lease, the Premises and/or the Project. Further, upon obtaining Court approval of the Debtor's execution of this Agreement, to be effective as of the Lease rejection, and except for (i) the Surviving Obligations (as defined below) and (ii) obligations of Tenant arising out of this Agreement, Landlord on behalf of itself, its principals, shareholders, officers, directors, managers, members, employees and agents (each, a "**Landlord Party**") and each of their respective heirs, legal representatives, successors and assigns, hereby releases, acquits and forever discharges Tenant and its employees and agents, jointly and individually, of and from any and all claims, demands, causes of action, obligations, damages and liabilities, whether known or unknown, which Landlord and/or any Landlord Party has or may hereafter obtain or accrue arising out of the Lease and/or any fact, matter, incident, claim, personal injury, property damage, event, circumstance, happening, occurrence and/or thing of any kind or nature whatsoever which arose or occurred at any time in connection with the Lease, the Premises and/or the Project. "Surviving Obligations" are Tenant's indemnity and other obligations under the Lease which by their terms survive Lease termination.

9.       **No Brokers**.  No brokers have represented either party in connection with this Agreement.

10.      **Miscelaneous** .  This Agreement shall be governed by the laws of the State of Utah, without regard to conflicts of laws principles.  This Agreement, the Naartjie License and the Advanced Comfort License constitutes the entire agreement between the parties as the subject matter hereof, and supersedes any prior agreements, negotiations and communications, oral or written.  This Agreement may only be amended in writing signed by all parties hereto.  This Agreement may be executed in counterparts, each of which shall be an original document, and all of which together shall constitute a single instrument.  This Agreement shall be binding on and shall inure to the benefit of the parties, their successors and assigns.  In the event that any term, provision, sentence or other portion of this Agreement shall become or is held by any arbitrator or court of competent jurisdiction to be illegal, null or void, or against public policy, for any reason, then the remaining portions of this Agreement shall not be affected thereby and shall remain in force and effect to the full extent permissible by law.  A party shall be in default under this Agreement if it fails cure any default applicable to it hereunder within three (3) days of receipt of written notice from a non-defaulting party.  In the event of any breach by a party of this Agreement, the non-breaching party shall have all rights and remedies available at law or in equity, including specific performance.  In the event any legal action is required to enforce this Agreement, the prevailing party in such action shall be entitled to an award of its reasonable legal fees and costs.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**LANDLORD**:

SVN NOBBS EAST SAHARA, LLC, a Delaware limited
liability company, BSMFT WASATCH, LLC, a Utah limited
liability company and LM WASATCH, LLC, a Utah limited
liability company

By:     SCY Equities, LLC, a California limited liability
        company, the Owner Representative

        By: _____
        Name:  Jack Carroll
        Title:  Principal and Director of Asset Management


Date: April ___, 2015


**TENANT**:

NAARTJE CUSTOM KIDS, INC., a Delaware corporation

By: _____
Name: _____
Title: _____

Date:  April  ___, 2015

# **EXHIBIT B**

LICENSE AGREEMENT

This License Agreement ("**Agreement**") is made and entered into as of April __, 2015 by and between SVN NOBBS EAST SAHARA, LLC, a Delaware limited liability company, LM WASATCH, LLC, a Utah limited liability company and BSFMT WASATCH, LLC, a Utah limited liability company, as tenants-in-common ("**Wasatch**" or "**Licensor**"), and NAARTJIE CUSTOM KIDS, INC., a Delaware corporation ("**Naartjie**" or "**Licensee**").

**W I T N E S S E T H :**

A.    Reference is made to that certain building (the "**Building**") known as Building D, 3676 W. California Avenue, Salt Lake City, Utah 84104.   Wasatch is the owner of the Building.

B.    Naartjie is the tenant under that certain Lease dated April 14, 2011, as amended ("**Lease**"). Pursuant to the Lease, Tenant has leased certain space in the Building currently containing approximately 28,000 rentable square feet known as Suite 100 ("**Premises**").  A portion of the Premises consists of office space and server room and contains approximately _____ rentable square feet, as more particularly described in Exhibit "A" attached hereto ("**License Area**").

C.    Naartjie filed a voluntary petition commencing a case under Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court, District of Utah ("**Court**") on September 12, 2014 as Case No. 14-29666 ("**Case**").

D.    The Lease will be rejected and terminated by Naartjie effective as of the date the Court enters an Order approving Naartjie's entry into both the Lease Rejection Agreement and this Agreement.  The parties desire to enter into this Agreement for the purpose of granting to Naartjie a license to continue to enter into, use and occupy the License Area as more particularly set forth herein below.

NOW, THEREFORE, for and in consideration of the premises contained herein, and other good and valuable consideration paid by the parties, the receipt and sufficiency of which are hereby acknowledged, Wasatch and Naartjie as follows:

1.    **Recitals and Definitions**.  All capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Lease.   The parties acknowledge that the Recitals set forth above are true and correct and are incorporated into this Agreement in their entirety by reference.

2.    **License – License Area.**   Wasatch hereby grants to Naartjie a license to enter into, use and occupy the License Area, which consists of a portion of the Premises consisting of an existing computer server room (the "**Server Room**") and certain office area for up to four (4) employees (the "**Office Area**"), as further shown on Exhibit "A", for server room and office purposes, including the right to store personal property therein. Naartjie shall not use or permit the License Area to be used for any purposes prohibited by applicable law. Naartjie shall not commit, suffer or permit any nuisance, waste or damage to the License Area, Premises or the Building. Naartjie shall keep the License Area in neat and orderly condition at all times.

3.    **Term.**  The term of the License for the Office Area ("**Office License Term**") shall commence on the date of Lease rejection and termination and end on **June 1, 2015**, or on **June 30, 2015** if Tenant notifies Landlord of Tenant's need to extend prior to **June 1, 2015** ("**Office License Expiration Date**").   The term of the License for the Server Room ("**Server License Term**" and together with the Office License Term, the "**License Term**") shall commence on the date of Lease rejection and termination and end on August 31, 2015 ("**Server License Expiration Date**").

4.    **Rent and Utilites**.  No rent shall be due for the License Term.  Naartjie is liable to pay for all telephone and cable charges used in the License Area during the License Term.

1

5.    **As-Is Condition**.  Naartjie shall accept the License Area in its as-is, where-is condition, without representation or warranty, subject to all applicable laws and regulations.

6.    **Assignment or Sublease**.   Naartjie shall not, without Wasatch's prior written consent, further assign, transfer or encumber the License or all or any portion of License Area.

7.    **Termination**.  Immediately upon expiration or termination of Naartjie's rights to the Office Area and the Server Room respectively, Naartjie shall completely vacate and surrender the Office Area and the Server Room respectively to Wasatch in the condition in which it was delivered to Naartjie, ordinary wear and tear excepted, broom clean and empty of all personal property and other items placed therein by, through or on behalf of Naartjie.

8.    **Indemnity**.  Naartjie will indemnify, defend and hold Wasatch, its officers, directors,  employees, agents, property managers and representatives (each, a "**Wasatch Party**"), harmless for, from and against any claims, costs, suits, liabilities, expenses, losses and actions, including reasonable attorneys' fees (collectively, "**Losses**") arising out of (a) any injury to person or damage to property on or about the License Area, Premises, Building caused by Naartjie or its employees, agents or contractors, (b) Naartjie's use or occupancy of the License Area;  or (c) any breach of this Agreement by Naartjie.  Except to the extent arising from the willful misconduct or gross negligence (also known as wanton and willful negligence) of Wasatch or its employees or agents, Naartjie agrees that Wasatch is not liable for any death or injury to persons, theft or damage to any items or property in the License Area or Building, it being understood that Naartjie is using the License Area at its own risk.

9.    **Insurance**.   Naartjie shall at its expense maintain  insurance coverage insuring against claims, demands or actions for personal injuries or death resulting from the use or occupancy of the License Area by Naartjie, its employees or agents, with limits of not less than One Million Dollars ($1,000,000) any one occurrence, in an aggregate amount of Two Million Dollars ($2,000,000), and for damage to property in an amount of not less than One Million  Dollars ($1,000,000).  Naartjie shall provide a certificate of insurance naming Wasatch as an additional insured.

10.    **Notices**.  All notices or other communications required or permitted hereunder shall be in writing, and shall be either (a) personally delivered, (b) sent by overnight mail (FedEx, DHL, or other reputable overnight carrier service), (c) sent by certified mail, postage prepaid, return receipt requested, or (d) sent by fax during normal business hours (between 9:00 AM to 5:00 PM PST time), with hard copy confirmation mailed; and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if sent by overnight delivery, upon receipt or refusal to accept delivery, (iii) if mailed, upon receipt or refusal to accept delivery, or (iv) if given by fax, when sent with confirmation of receipt.  The addresses of the parties are as follows:

Wasatch:  18881 Von Karman, Suite 800, Irvine, CA 92612. Fax No: 949-250-4015.

Naartjie:   Suite D-100, 3676 W. California Avenue,  Salt Lake City, Utah 84104.  Fax No. _____.

11.    **Miscellaneous**.   This Agreement shall be governed by the laws of the State of Utah, without regard to conflicts of laws principles.  This Agreement constitutes the entire agreement between the parties as the subject matter hereof, and supersedes any prior agreements, negotiations and communications, oral or written.  This Agreement may only be amended in writing signed by all parties hereto.   This Agreement may be executed in counterparts, each of which shall be an original document, and all of which together shall constitute a single instrument.  This Agreement shall be binding on and shall inure to the benefit of the parties, their successors and assigns.  In the event that any term, provision, sentence or other portion of this Agreement shall become or is held by any arbitrator or court of competent jurisdiction to be illegal, null or void, or against public policy, for any reason, then the remaining portions of this Agreement shall not be affected thereby and shall remain in force and effect to the full extent permissible by law.  A party shall be in default under this Agreement if it fails cure any default applicable to it hereunder within three (3) days of receipt of written notice from a non-defaulting party.  In the event of any breach by a party of this Agreement, the non-breaching party shall have all rights and remedies

available at law or in equity, including specific performance.  In the event any legal action is required to enforce this Agreement, the prevailing party in such action shall be entitled to an award of its reasonable legal fees and costs.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

**LICENSOR**:

SVN NOBBS EAST SAHARA, LLC, a Delaware limited liability company, BSMFT WASATCH, LLC, a Utah limited liability company and LM WASATCH, LLC, a Utah limited liability company

By:     SCY Equities, LLC, a California limited liability company, the Owner Representative

      By: _____
      Name:  Jack Carroll
      Title:  Principal and Director of Asset Management

Date: April _____, 2015


**LICENSEE**:

NAARTJIE CUSTOM KIDS, INC., a Utah corporation

By: _____
Print Name:_____
Title: _____

Date:  April _____, 2015

EXHIBIT "A"

LICENSE AREA

# **EXHIBIT C**

LICENSE AGREEMENT

This License Agreement ("**Agreement**") is made and entered into, by and between NAARTJIE CUSTOM KIDS, INC., a Delaware corporation ("**Naartjie**" or "**Licensor**"), and ADVANCED COMFORT TECHNOLOGIES, INC., a Utah corporation ("**Advanced Comfort**" or "**Licensee**").

**W I T N E S S E T H:**

A.      Reference is made to that certain building (the "**Building**") known as Building D, 3676 W. California Avenue,  Salt Lake City, Utah 84104.

B.      Naartjie is the tenant under that certain Lease dated April 14, 2011, as amended ("**Lease**"). Pursuant to the Lease, Tenant has leased certain space in the Building currently containing approximately 28,000 rentable square feet known as Suite 100 ("**Premises**").  A portion of the Premises consists of office space and warehouse space and contains approximately _____ rentable square feet, as more particularly described in Exhibit "A" attached hereto ("**License Area**").

C.      Naartjie filed a voluntary petition commencing a case under Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court, District of Utah ("**Court**") on September 12, 2014 as Case No. 14-29666 ("**Case**").

D.      The parties desire to enter into this Agreement for the purpose of granting to Advanced Comfort a license to enter into, use and occupy the License Area as more particularly set forth herein below.

NOW, THEREFORE, for and in consideration of the premises contained herein, and other good and valuable consideration paid by the parties, the receipt and sufficiency of which are hereby acknowledged, Naartjie and Advanced Comfort agree as follows:

1.      **Recitals and Definitions**.  All capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Lease.   The parties acknowledge that the Recitals set forth above are true and correct and are incorporated into this Agreement in their entirety by reference.

2.      **License – License Area.**   Naartjie hereby grants to Advanced Comfort a license to enter into, use and occupy the License Area for office and warehouse purposes, including the right to make alterations and improvements to the License Area and to store personal property therein.  Advanced Comfort shall not use or permit the License Area to be used for any purposes prohibited by applicable law. Advanced Comfort shall not commit, suffer or permit any nuisance, waste or damage to the License Area, Premises or the Building. Advanced Comfort shall keep the License Area in neat and orderly condition at all times.  Naartjie will continue to use the Office Area and Server Room as shown on Exhibit "A".  Naartjie shall remove all personal property from the Premises (other than property in the Office Area and Server Room) on or before _____, 2015.

3.      **Term.**  The term of the License for the License Area ("**License Term**") shall commence on April 3, 2015 and end on the date that the Court enters a final Order either approving or denying the Debtor's entry into this Agreement ("**License Expiration Date**").

4.      **Court Approval**.  Naartjie shall immediately file a motion with the Court to seek approval of the Debtor's entry into this Agreement, the Lease Rejection agreement, and the Naartjie License agreement.  To the extent that the Court denies the motion seeking approval of the Debtor's entry into those agreements, this Agreement, the Lease Rejection agreement, and the Naartjie License agreement, shall be null and void and of no further force and effect.

5.      **Rent and Utilites**.  No rent shall be due for the License Term.   Advanced Comfort is liable to pay for all utilities (power, water, gas) used in the Premises during the License Term (other than any cable charges which Naartjie has contracted for in the Premises, which shall remain the liability of Naartjie).

1

5.　　**As-Is Condition**.　Advanced Comfort shall accept the License Area in its as-is, where-is condition, without representation or warranty, subject to all applicable laws and regulations.

6.　　**Assignment or Sublease**.　Advanced Comfort shall not, without Naartjie's prior written consent, further assign, transfer or encumber the License or all or any portion of License Area.

7.　　**Termination**.　Upon expiration or termination of Advanced Comfort's rights to the License Area, Advanced Comfort shall completely vacate and surrender the License Area to Naartjie in the condition in which it was delivered to Advanced Comfort, ordinary wear and tear excepted, broom clean and empty of all personal property and other items placed therein by, through or on behalf of Advanced Comfort.

8.　　**Indemnity**.　Advanced Comfort will indemnify, defend and hold Naartjie, its officers, directors, employees, agents, property managers and representatives (each, a "Naartjie Party"), harmless for, from and against any claims, costs, suits, liabilities, expenses, losses and actions, including reasonable attorneys' fees (collectively, "Losses") arising out of (a) any injury to person or damage to property on or about the License Area, Premises, Building caused by Advanced Comfort or its employees, agents or contractors, (b) Advanced Comfort's use or occupancy of the License Area;  or (c) any breach of this Agreement by Advanced Comfort.  Except to the extent arising from the willful misconduct or gross negligence (also known as wanton and willful negligence) of Naartjie or its employees or agents, Advanced Comfort agrees that Naartjie is not liable for any death or injury to persons, theft or damage to any items or property in the License Area or Building, it being understood that Advanced Comfort is using the License Area at its own risk.

9.　　**Insurance**.　Advanced Comfort shall at its expense maintain  insurance coverage insuring against claims, demands or actions for personal injuries or death resulting from the use or occupancy of the License Area by Advanced Comfort, its employees or agents, with limits of not less than One Million Dollars ($1,000,000) any one occurrence, in an aggregate amount of Two Million Dollars ($2,000,000), and for damage to property in an amount of not less than One Million  Dollars ($1,000,000).  Advanced Comfort shall provide a certificate of insurance naming Naartjie as an additional insured.

10.　　**Notices**.　All notices or other communications required or permitted hereunder shall be in writing, and shall be either (a) personally delivered, (b) sent by overnight mail (FedEx, DHL, or other reputable overnight carrier service), (c) sent by certified mail, postage prepaid, return receipt requested, or (d) sent by fax during normal business hours (between 9:00 AM to 5:00 PM PST time), with hard copy confirmation mailed; and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if sent by overnight delivery, upon receipt or refusal to accept delivery, (iii) if mailed, upon receipt or refusal to accept delivery, or (iv) if given by fax, when sent with confirmation of receipt.  The addresses of the parties are as follows:

　　　　Naartjie:　Suite D-100, 3676 W. California Avenue,　Salt Lake City, Utah 84104. Fax No: _____.

　　　　Advanced Comfort: Suite D-100, 3676 W. California Avenue, Salt Lake City, Utah 84104. Fax No. _____.

11.　　**Miscellaneous**.　This Agreement shall be governed by the laws of the State of Utah, without regard to conflicts of laws principles.  This Agreement constitutes the entire agreement between the parties as the subject matter hereof, and supersedes any prior agreements, negotiations and communications, oral or written. This Agreement may only be amended in writing signed by all parties hereto.  This Agreement may be executed in counterparts, each of which shall be an original document, and all of which together shall constitute a single instrument.  This Agreement shall be binding on and shall inure to the benefit of the parties, their successors and assigns.  In the event that any term, provision, sentence or other portion of this Agreement shall become or is held by any arbitrator or court of competent jurisdiction to be illegal, null or void, or against public policy, for any reason, then the remaining portions of this Agreement shall not be affected thereby and shall remain in force and effect to the full extent permissible by law.  A party shall be in default under this Agreement if it fails cure any default applicable to it hereunder within three (3) days of receipt of written notice from a non-defaulting party.  In

the event of any breach by a party of this Agreement, the non-breaching party shall have all rights and remedies available at law or in equity, including specific performance.  In the event any legal action is required to enforce this Agreement, the prevailing party in such action shall be entitled to an award of its reasonable legal fees and costs.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

**LICENSOR**:

NAARTJIE CUSTOM KIDS, INC., a Delaware corporation

By: _____

Name: _____

Title: _____

Date: April _____, 2015

**LICENSEE**:

ADVANCED COMFORT TECHNOLOGIES, INC., a Utah corporation

By: _____

Print Name:_____

Title: _____

Date:  April _____, 2015

EXHIBIT "A"

LICENSE AREA