Annette W. Jarvis (Utah State Bar No. 01649)
Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor Naartjie Custom Kids, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankr. Case No. 14-29666 |
| NAARTJIE CUSTOM KIDS, INC., | Chapter 11 |
| Debtor. | The Honorable William T. Thurman |

### DEBTOR'S OBJECTION TO CERTAIN ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO 11 U.S.C. §§ 503 AND 507

**Reply Deadline: May 18, 2015**
**Hearing Date: May 26, 2015 at 3:00 p.m. (Mountain Time)**

**PLEASE TAKE NOTICE THAT your Administrative Expense Claim(s) in the above case is objectionable for the reasons stated herein and on <u>Exhibit A</u> attached to this Objection. Locate your name on <u>Exhibit A</u> to determine the basis of the Objection, and read this Objection in its entirety to understand the Objection and determine whether you want to respond to the Objection.**

Pursuant to 11 U.S.C. §§ 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§

101 et seq. (the "<u>Bankruptcy Code</u>") and Federal Rule of Bankruptcy Procedure 9014, Naartjie

Custom Kids, Inc. ("Naartjie" or "Debtor"), the debtor in possession in the above captioned bankruptcy case, by and through counsel, files this *Debtor's Objection to Certain Administrative Expense Claims Pursuant to 11 U.S.C. §§ 503 and 507* (this "Objection"). In support hereof, the Debtor states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

4.      On September 12, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").

5.      No trustee or examiner has been appointed in this case. The Official Committee of Unsecured Creditors was formed on September 22, 2014 (the "Committee"). The Debtor is operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6.      From the inception of this case, the Debtor focused its efforts on selling its primary assets – the clothing and apparel located in the Debtor's 55 stores in the United States, the Debtor's interests in its wholly owned South African subsidiary, ZA One Proprietary Limited ("ZA One"), and the Debtor's intellectual property - in an effort to maximize the value of its estate for the Debtor's creditor constituents.

7.      Accordingly, the Debtor held a Court-approved auction to sell the inventory in its stores in the United States and entered into an "Agency Agreement" with the professional liquidation firm, Great American, LLC ("Great American"), which generated enough money to

4850-3663-7219

pay off the Debtor's senior secured lender, Salus Capital, and a surplus that will inure to the benefit of the Debtor's other creditor constituents.

8.      On October 7, 2014 the Court entered an order [Docket No. 143] (the "Rejection Procedures Order"), which, among other things, approved procedures (the "Rejection Procedures") for the Debtor's rejection of unexpired leases of nonresidential real property (individually a "Lease" and collectively, the "Leases").

9.      By December 31, 2014, Great American liquidated the inventory in the Debtor's stores in the United States, and the Debtor and Great American have now completed their reconciliation of the amounts owed under the Agency Agreement.

10.     After entry into the Agency Agreement the Debtor focused its efforts on selling its other major assets – the Debtor's interests in ZA One and the Debtor's intellectual property assets.  Those efforts culminated in the Court's approval of a sale of the Debtor's interests in ZA One and its intellectual property to Truworths Limited ("Truworths").

11.     On March 10, 2015, the Court entered an *Order Granting Joint Motion of the Debtor and Official Committee of Unsecured Creditors, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for the Entry of an Order Approving a Settlement with Target Ease International, Mid-America Overseas, Inc. and Secured Noteholders* [Docket No. 424] (the "Settlement Order"), which approved the Debtor's entry into a settlement with each of the major creditor constituents in this case on the economic division of the Debtor's assets between the parties that will pave the way for a consensual resolution of this case either through a structured dismissal or a confirmed plan of liquidation.

4850-3663-7219

12.     The deadline for parties other than governmental entities to file proofs of clams in this case expired on January 14, 2015 (the "General Bar Date").

13.     The deadline for governmental entities to file proofs of claim in this case expired on March 11, 2015 (the "Governmental Bar Date").

14.     On March 26, 2015, the Court entered its *Order Granting Debtor's Motion for Entry of an Order Establishing Administrative Claims Bar Date* [Docket No. 448] (the "Administrative Expense Claims Bar Date Order").  The Administrative Expense Claims Bar Date Order established April 20, 2015 as the deadline for parties, other than retained professionals, to file motions seeking payment of administrative expenses (the "Administrative Claims Bar Date").[1]

15.     Only one party, SupplyOne Cleveland, Inc. ("SupplyOne"), complied with the Administrative Expense Claims Bar Date Order and filed a motion seeking allowance of its administrative expense claim,[2] prior to the expiration of the Administrative Claims Bar Date (the "Administrative Expense Allowance Motion").

16.     However, thirty-seven (37) other parties filed thirty-nine (39) proofs of claim against the Debtor asserting their entitlement to payment of administrative expenses prior to the expiration of the Administrative Claims Bar Date (collectively, the "Administrative Expense Proofs of Claim").

17.     On April 23, 2015, pursuant to the procedures ordered by this Court in the Administrative Expense Claims Bar Date Order, the Debtor sent a *Notice of Administrative*

---

[1]     *See* Administrative Expense Claims Bar Date Order at pp. 2-3.

[2]     *See* Docket No. 483.

4850-3663-7219

*Expense Allowance Motion and Proofs of Claim and Notice of Hearing* [Docket No. 489] (the

"Administrative Expense Hearing Notice") to all parties in interest identifying the amounts

sought by claimants through the Administrative Expense Allowance Motion and the

Administrative Expense Proofs of Claim and setting a deadline of May 11, 2015 to file

objections to such motion and proofs of claim.

18.      As of the date of filing this Objection, a total of 227 proofs of claim have been

filed in this case (collectively, the "Proofs of Claim").

## APPLICABLE LAW

Section 503(b) of the Bankruptcy Code establishes the categories of administrative

expenses that a court can allow against a Debtor's estate.[3]  If allowed, administrative expenses

allowed under Section 503(b) are granted priority treatment pursuant to Section 507(a)(2) of the

Bankruptcy Code.[4]   In bankruptcy court, the party claiming entitlement to administrative

expense priority has the burden of proof.[5]  Administrative expenses are specially favored post-

petition claims, given priority in asset distribution over most other claims against the bankruptcy

estate.[6]  For a claim to rise to the level of an administrative expense, it must fit within one of the

categories listed in Section 503(b) of the Bankruptcy Code.[7]  "To be deemed an administrative

expense, the expense must: (1) arise out of a transaction between the creditor and the bankrupt's

trustee or debtor-in-possession; and (2) benefit the debtor-in-possession in the operation of the

---

[3]    *See* 11 U.S.C. § 503(b).

[4]    *See* 11 U.S.C. § 507(1)(2).

[5]    *See In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988).

[6]    *See In re Mid-Region Petroleum, Inc.*, 1 F.3d 1130, 1132 (10th Cir. 1993).

[7]    *See id.*

4850-3663-7219

business."[8]  To be granted administrative expense status, the bankruptcy estate must benefit from

the use of the creditor's property.[9]

**THE OBJECTION**

**A. The Administrative Expense Proofs of Claim Should be Disallowed in their
Entirety.**

The Administrative Expense Claims Bar Date Order stated as follows:

> 3.  All parties (other than attorneys and other professionals whose
> retentions are approved by the Court pursuant to sections 327 or
> 1103 of the Bankruptcy Code (the "Retained Professionals") and
> who will be required to file applications for allowance of
> compensation and reimbursement of expenses pursuant to section
> 330 of the Bankruptcy Code) seeking allowance of a claim for an
> administrative expense must file an appropriate motion seeking
> payment of an administrative expense under section 503(b) of the
> Bankruptcy Code (an "Administrative Expense Allowance
> Motion") with the Court so as to be received by the Court by **April
> 20, 2015** (the "Administrative Claims Bar Date");

> 4.  Any party, other than Retained Professionals, which fails to file
> an Administrative Expense Allowance Motion prior to the
> expiration of the Administrative Claims Bar Date shall forever be
> barred from seeking the allowance of or any distribution on
> account of any administrative expense in this case, and any claim
> for an administrative expense in this case that might exist will be
> deemed to be barred and DISALLOWED in its entirety without
> further notice or hearing; . . .[10]

Accordingly and unambiguously, the Administrative Expense Claims Bar Date Order

required all parties seeking compensation and reimbursement of administrative expenses under

Section 503(b) of the Bankruptcy Code, other than Retained Professionals, to file an

---

[8]   *Id.* at 1133 (citing *Amarex*, 853 F.2d at 1530).

[9]   *See Mid-Region Petroleum*, 1 F.3d at 1133.

[10]   Administrative Expense Claims Bar Date Order at pp. 2-3 (emphasis in original).

Administrative Expense Allowance Motion and stated that any party who failed to file such a motion shall have its claim for administrative expenses "deemed to be barred and DISALLOWED without further notice or hearing."[11]  Despite this clear judicial directive, only SupplyOne filed an Administrative Expense Allowance Motion.  Accordingly, the Court should disallow all of the Administrative Expense Proofs of Claim in their entirety.

### B. The Administrative Expense Proofs of Claim are Also Objectionable Because They Have Been Overstated or Satisfied

The only way that the Administrative Expense Proofs of Claim could be considered to be properly before the Court is if they are deemed by the Court to be Administrative Expense Allowance Motions.  However, even if the Court is inclined to assess the merits of the Administrative Expense Proofs of Claim, despite the claimants' failure to file Administrative Expense Allowance Motions, the Court should nevertheless disallow or reduce the allowed amount of the Administrative Expense Proofs of Claim described below.  A list of all disputed Administrative Expense Proofs of Claim is attached hereto as **Exhibit A** (each a "Disputed Administrative Expense Claim" and, collectively, the "Disputed Administrative Expense Claims").  This Exhibit is organized as follows:

**Column 1**—states in alphabetical order the name of each holder of a Disputed Administrative  Expense Claim.

**Column 2**—states the Disputed Administrative Expense Claim number(s) as docketed.

**Column 3**—states the amount of the asserted Disputed Administrative Expense Claim.

**Column 4**—states the page number(s) of the Objection that pertains to such Disputed Administrative Expense Claim.

**Column 5**— states the amount to which the Debtor asserts the Disputed Administrative Expense Claim should be reduced and allowed (if applicable).

---

[11]   Administrative Expense Claims Bar Date Order at p. 3 (emphasis in original).

The Debtor has thoroughly reviewed its books and records and, based on that review, it objects to the Disputed Administrative Expense Claims for the following reasons:

- *Tennessee Department of Revenue* – Proof of Claim Number 21; $3,633.04 asserted 503(b) amount. Proof of Claim Number 21, filed by the Tennessee Department of Revenue ("Tennessee"), asserts an administrative expense claim in the amount of $3,633.04 for taxes, late charges, and interest, which is broken down as follows: $566.71 for 2014 county taxes; $566.71 for 2014 city taxes; and $2,499.62 for October and November 2014 sales and use taxes. In satisfaction of this administrative expense claim the Debtor made two electronic transfers of funds to Tennessee on November 5, 2014, in a total amount of $3,266.00. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense claim, the claimant is not entitled to an administrative expense claim for additional late fees or interest. Accordingly, the administrative expense portion of Proof of Claim Number 21 should be disallowed in its entirety.

- *Fashion Place, LLC* – Proof of Claim Number 106; $3,097.77 asserted 503(b) amount. Proof of Claim No. 106, filed by Fashion Place, LLC ("Fashion"), asserts an administrative expense claim in the amount of $80.30 for "base minimum rent" for November 2014 and $3,017.47 for "base minimum rent" for December 2014. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 29, 2014. In satisfaction of this administrative expense, the Debtor paid $2,753.58 to Fashion by check on December 23, 2014. The remaining $344.19 claimed by Fashion should be disallowed in its entirety because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 106 should be disallowed in its entirety.

- *Alderwood Mall, LLC* – Proof of Claim Number 107; $100.00 asserted 503(b) amount. Proof of Claim Number 107 does not attach any support for the allowance of an administrative expense. Accordingly, Proof of Claim Number 107 should be disallowed in its entirety.

- *Carolina Place, LLC* – Proof of Claim Number 109; $3,649.96 asserted 503(b) amount. Proof of Claim Number 109, filed by Carolina Place, LLC ("Carolina"), asserts an administrative expense claim in the amount of $3,649.96 for base minimum rent, common area maintenance charges, HVAC, electric, water, and real estate taxes. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 29, 2014. In partial satisfaction of this administrative expense, the Debtor paid $2,133.37 to Carolina by check on December 23, 2014. Further, an additional $306.92 claimed by Carolina should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number

109 should be reduced and allowed as an administrative expense in the amount of $1,209.67.

- *Glendale I Mall Associates, LP* – Proof of Claim Number 110; $4,895.79 asserted 503(b) amount. Proof of Claim Number 110, filed by Glendale I Mall Associates, LP ("Glendale"), asserts an administrative expense claim in the amount of $4,895.79 for "base minimum rent" for October, November, and December 2014. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 27, 2014. In partial satisfaction of this administrative expense, the Debtor paid $2,029.55 to Glendale by check on December 23, 2014. Further, an additional $1,741.83 claimed by Glendale should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 110 should be reduced and allowed as an administrative expense in the amount of $1,124.41.

- *Natick Mall, LLC* – Proof of Claim Number 111; $3,216.03 asserted 503(b) amount. Proof of Claim Number 111, filed by Natick Mall, LLC ("Natick"), asserts an administrative expense claim in the amount of $3,216.03 for "base minimum rent" for November and December 2014. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 22, 2014. In partial satisfaction of this administrative expense, the Debtor paid $2,709.32 to Natick by check on December 9, 2014. Accordingly, Proof of Claim Number 111 should be reduced and allowed as an administrative expense in the amount of $506.71.

- *North Point Mall, LLC* – Proof of Claim Number 112; $4,734.79 asserted 503(b) amount. Proof of Claim Number 112, filed by North Point Mall, LLC ("North Point"), asserts an administrative expense claim in the amount of $4,734.79 for base minimum rent, common area maintenance charges, HVAC, water, and real estate taxes. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 29, 2014. In partial satisfaction of this administrative expense, the Debtor paid $2,803.80 to North Point by check on December 23, 2014. Further, an additional $364.59 claimed by North Point should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 112 should be reduced and allowed as an administrative expense in the amount of $1,566.40.

- *North Star Mall, LLC* – Proof of Claim Number 113; $5,954.14 asserted 503(b) amount. Proof of Claim Number 113, filed by North Star Mall, LLC ("North Star"), asserts an administrative expense claim in the amount of $5,954.14 for base minimum rent, HVAC, and electric. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 22, 2014. In partial satisfaction of this administrative expense, the Debtor paid $2,433.76 to North

4850-3663-7219

Star by check on December 9, 2014. Further, an additional $3,242.72 claimed by North Star should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 113 should be reduced and allowed as an administrative expense in the amount of $277.66.

- *Hocker Oxmoor Mall, LLC* – Proof of Claim Number 114; $4,485.80 asserted 503(b) amount. Proof of Claim Number 114, filed by Hocker Oxmoor, LLC ("Oxmoor"), asserts an administrative expense claim in the amount of $4,485.80 for occupancy charges, HVAC, and water and sewer. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 26, 2014. In satisfaction of this administrative expense, the Debtor paid Oxmoor amounts of $2,616.72 and $1,869.07 by check. Accordingly, Proof of Claim Number 114 should be disallowed in its entirety.

- *Stonebriar Mall, LLC* – Proof of Claim Number 115; $6,000.27 asserted 503(b) amount. Proof of Claim Number 115, filed by Stonebriar Mall, LLC ("Stonebriar"), asserts an administrative expense claim in the amount of $6,000.27 for occupancy charges and base minimum rent. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 22, 2014. In satisfaction of this administrative expense, the Debtor paid Stonebriar by checks in the amounts of $2,470.72 on December 2, 2014, $2,470.72 on December 9, 2014, and $352.92 on December 19, 2014. Further, an additional $705.91 claimed by Stonebriar should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 115 should be disallowed in its entirety.

- *La Cantera Retail Limited Partnership* – Proof of Claim Number 116; $3,653.71 asserted 503(b) amount. Proof of Claim Number 116, filed by La Cantera Retail Limited Partnership ("La Cantera"), asserts an administrative expense claim in the amount of $3,653.71 for base minimum rent. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 29, 2014. In satisfaction of this administrative expense, the Debtor paid La Cantera by check in the amount of $3,247.76 on December 23, 2014. Further, an additional $405.95 claimed by La Cantera should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 116 should be disallowed in its entirety.

- *Southpoint Mall, LLC* – Proof of Claim Number 117; $4,889.61 asserted 503(b) amount. Proof of Claim Number 117, filed by Southpoint Mall, LLC ("Southpoint"), asserts an administrative expense claim in the amount of $4,889.61 for base minimum rent and common area maintenance charges.

Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 23, 2014. In satisfaction of this administrative expense, the Debtor paid Southpoint by check in the amount of $2,281.82 on December 9, 2014. Further, an additional $2,607.79 claimed by Southpoint should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 117 should be disallowed in its entirety.

- *Towson TC, LLC* – Proof of Claim Number 118; $2,570.87 asserted 503(b) amount. Proof of Claim Number 118, filed by Towson TC, LLC ("Towson"), asserts an administrative expense claim in the amount of $2,570.87 for base minimum rent. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 22, 2014. In satisfaction of this administrative expense, the Debtor paid Towson by check in the amount of $2,570.86 on December 9, 2014. Accordingly, Proof of Claim Number 118 should be disallowed in its entirety.

- *GGP Staten Island Mall, LLC* – Proof of Claim Number 119; $6,375.75 asserted 503(b) amount. Proof of Claim Number 119, filed by GGP Staten Island Mall, LLC ("Staten"), asserts an administrative expense claim in the amount of $6,375.75 for base minimum rent, HVAC, water, electric, and taxes. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 24, 2014. In satisfaction of this administrative expense, the Debtor paid Staten by checks in the amount of $2,958.50 on December 2, 2014 and $2,958.50 on December 9, 2014. Further, an additional $103.59 claimed by Staten should be disallowed because it improperly charges the Debtor for additional rent after the Debtor had vacated the leased premises. Accordingly, Proof of Claim Number 119 should be reduced and allowed as an administrative expense in the amount of $355.16.

- *Fairfax Company of Virginia, LLC* – Proof of Claim Number 135; $19,293.54 asserted 503(b) amount. Proof of Claim Number 135, filed by Fairfax Company of Virginia, LLC ("Fairfax"), asserts an administrative expense claim in the amount of $19,293.54 for "Percent Rent LYE 1/15" for the period from 2/1/14 – 1/31/15, minimum rent, common area maintenance, water and RNA. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 23, 2014. On November 22, 2013, the Debtor and Fairfax entered into a "Lease Reinstatement and First Modification of Lease Agreement," a copy of which is attached hereto as **Exhibit B** (the "Fairfax Lease Modification"). The Fairfax Lease Modification states, in relevant part: "[b]eginning on the date of this Agreement, but in no event later than December 1, 2013, and continuing through December 31, 2014, Tenant's minimum rent and percentage rent shall be

abated."[12]  Thus, pursuant to the Fairfax Lease Modification, the Debtor had no obligation to pay either minimum rent or percent rent during 2014.  Accordingly, Proof of Claim Number 135 should be disallowed in its entirety.

- *TJ Palm Beach Associates Limited Partnership* – Proof of Claim Number 137;[13] $1,665.24 asserted 503(b) amount.  Proof of Claim Number 137, filed by TJ Palm Beach Associates Limited Partnership ("TJ Palm"), asserts an administrative expense claim in the amount of $1,665.24 for minimum rent, common area maintenance, promotional charges, real estate taxes, insurance, electric, HVAC, RAD, RNA, and sales tax. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 10, 2014. In satisfaction of this administrative expense, the Debtor paid TJ Palm by check in the amount of $1,796.29 on November 25, 2014.  Accordingly, Proof of Claim Number 137 should be disallowed in its entirety.

- *Danbury Mall, LLC* – Proof of Claim Number 145; $2,509.81 asserted 503(b) amount.  Proof of Claim Number 145, filed by Danbury Mall, LLC ("Danbury"), asserts an administrative expense claim in the amount of $2,509.81 for percentage rent and interest for November and December 2014. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 27, 2014. Under the Lease between the Debtor and Danbury, the Debtor was obligated to pay percentage rent in the event that its sales in the Danbury store exceeded certain amounts.  In 2014, Danbury would have been entitled to percentage rent (in addition to base minimum rent) if the Debtor's sales in the Danbury store exceeded $1,069,233.  However, the Debtor's sales in the Danbury store in 2014 were only $683,661.08.  Accordingly, Danbury is not entitled to a claim for percentage rent and the $2,509.81 asserted by Danbury as an administrative expense should be disallowed in its entirety.

- *TM Wellington Green Mall LP* – Proof of Claim Number 159; $3,144.12 asserted 503(b) amount.  Proof of Claim Number 159, filed by TM Wellington Green Mall LP ("Wellington"), asserts an administrative expense claim in the amount of $3,144.12 for "rent and charges (12/1/14 – 12/10/14) short pay," and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 10, 2014. The supporting documentation for Wellington's claim only includes post-petition rent and charges in the amount of $1,562.64, and interest in the amount of $18.84.[14]  It appears that Wellington inadvertently

---

[12]  **Exhibit B** at ¶ 3.

[13]  The Administrative Expense Hearing Notice incorrectly identified this claim as Proof of Claim Number 136, but it correctly identified TJ Palm as the claimant and identified $1,665.24 as the asserted 503(b) amount.

[14]  Proof of Claim Number 159, Attachment at p. 3.

doubled the amount of the post-petition rent and charges to calculate the total amount of its claim at $3,144.12. Accordingly, the unsupported $1,562.64 that was added to Wellington's claim as a math error should be disallowed. In satisfaction of the remainder of this administrative expense, the Debtor paid Wellington by check in the amount of $1,796.29 on December 9, 2014. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense claim for any interest. Accordingly, the administrative expense portion of Proof of Claim Number 159 should be disallowed in its entirety.

- *Century City Mall, LLC* – Proof of Claim Number 160; $26,488.49 asserted 503(b) amount. Proof of Claim Number 160, filed by Century City Mall, LLC ("Century"), asserts an administrative expense claim in the amount of $26,488.49 for November and December 2014 rent and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 29, 2014. The supporting documentation for Century's claim only includes post-petition rent and charges in the amount of $13,144.51, and interest in the amount of $199.47.[15] It appears that Century inadvertently doubled the amount of the post-petition rent and charges to calculate the total amount of its claim at $26,488.49. Accordingly, the unsupported $13,144.51 that was added to Century's claim as a math error should be disallowed. In satisfaction of the remainder of this administrative expense, the Debtor paid Century by checks in the amounts of $3,754.23 on December 1, 2014, $3,754.23 on December 5, 2014, $3,754.23 on December 15, 2014, and $4,290.54 on December 29, 2014. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense claim for any interest. Accordingly, the administrative expense portion of Proof of Claim Number 160 should be disallowed in its entirety.

- *Roseville Shoppingtown, LLC* – Proof of Claim Number 161; $19,681.65 asserted 503(b) amount. Proof of Claim Number 161, filed by Roseville Shoppingtown, LLC ("Roseville"), asserts an administrative expense claim in the amount of $19,681.65 for rent short pay, pro-rated rent and charges and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 22, 2014. The supporting documentation for Roseville's claim only includes post-petition rent and charges in the amount of $9,787.96, and interest in the amount of $105.73.[16] It appears that Roseville inadvertently doubled the amount of the post-petition rent and charges to calculate the total amount of its claim at $19,681.65. Accordingly, the unsupported $9,787.96 that was added to Roseville's claim as a math error should be disallowed. In satisfaction of the

---

[15]  Proof of Claim Number 160, Attachment at p. 3.

[16]  *See* Proof of Claim Number 161, Attachment at p. 3.

remainder of this administrative expense, the Debtor paid Roseville by checks in the amounts of $2,908.23 on November 21, 2014, $2,189.01 on December 1, 2014, $2,189.01 on December 8, 2014, $2,189.01 on December 12, 2014, and $312.70 on December 24, 2014. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense claim for any interest. Accordingly, the administrative expense portion of Proof of Claim Number 161 should be disallowed in its entirety.

- *Sherman Oaks Fashion Associates, LP* – Proof of Claim Number 164; $16,382.59 asserted 503(b) amount. Proof of Claim Number 164, filed by Sherman Oaks Fashion Associates, LP ("Sherman"), asserts an administrative expense claim in the amount of $16,382.59 for rent short pay, pro-rated rent and charges and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 24, 2014. The supporting documentation for Sherman's claim only includes post-petition rent and charges in the amount of $8,132.94, and interest in the amount of $116.71.[17] It appears that Sherman inadvertently doubled the amount of the post-petition rent and charges to calculate the total amount of its claim at $16,382.59. Accordingly, the unsupported $8,132.94 that was added to Sherman's claim as a math error should be disallowed. In satisfaction of the remainder of this administrative expense, the Debtor paid Sherman by checks in the amounts of $2,271.33 on November 21, 2014, $1,709.64 on December 1, 2014, $1,709.64 on December 5, 2014, $1,709.64 on December 15, 2014, and $732.69 on December 24, 2014. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense claim for any interest. Accordingly, the administrative expense portion of Proof of Claim Number 164 should be disallowed in its entirety.

- *University Towne Centre, LLC* – Proof of Claim Number 165; $18,125.07 asserted 503(b) amount. Proof of Claim Number 165, filed by University Towne Centre, LLC ("UTC"), asserts an administrative expense claim in the amount of $18,125.07 for rent short pay, pro-rated rent and charges and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 27, 2014. The supporting documentation for UTC's claim only includes post-petition rent and charges in the amount of $9,008.24, and interest in the amount of $108.59.[18] It appears that UTC inadvertently doubled the amount of the post-

---

[17] *See* Proof of Claim Number 164, Attachment at p. 3.

[18] *See* Proof of Claim Number 165, Attachment at p. 3.

4850-3663-7219

petition rent and charges to calculate the total amount of its claim at $18,125.07.[19]
Accordingly, the unsupported $9,008.24 that was added to UTC's claim as a math
error should be disallowed.  In satisfaction of the remainder of this administrative
expense, the Debtor paid UTC by checks in the amounts of  $2,335.46 on
December 1, 2014, $2,335.46 on December 5, 2014, $2,335.46 on December 15,
2014, and $2,001.87 on December 29, 2014.  Further, as demonstrated by the
payment history, because the Debtor timely paid this administrative expense, the
claimant is not entitled to an administrative expense claim for any interest.
Accordingly, the administrative expense portion of Proof of Claim Number 165
should be disallowed in its entirety.

- *VF Mall, LLC* – Proof of Claim Number 166; $18,529.75 asserted 503(b) amount.
  Proof of Claim Number 166, filed by VF Mall, LLC ("VF"), asserts an
  administrative expense claim in the amount of $18,125.07 for rent short pay, pro-
  rated rent and charges and interest.  Pursuant to the Rejection Procedures, the
  Debtor rejected this Lease effective as of December 27, 2014.  In satisfaction of
  this administrative expense, the Debtor paid VF by checks in the amounts of
  $4,652.93 on November 24, 2014, $3,502.23 on December 1, 2014, $3,502.23 on
  December 5, 2014, $3,502.23 on December 15, 2014, and $3,001.92 on
  December 26, 2014.  Further, as demonstrated by the payment history, because
  the Debtor timely paid this administrative expense, the claimant is not entitled to
  an administrative expense claim for any interest.  Accordingly, the administrative
  expense portion of Proof of Claim Number 166 should be disallowed in its
  entirety.

- *Westfield Topanga Owner, LP* – Proof of Claim Number 167; $25,518.14 asserted
  503(b) amount.  Proof of Claim Number 167, filed by Westfield Topanga Owner,
  LP ("Topanga"), asserts an administrative expense claim in the amount of
  $25,518.14 for rent short pay, pro-rated rent and charges and interest.  Pursuant to
  the Rejection Procedures, the Debtor rejected this Lease effective as of December
  23, 2014.  The supporting documentation for Topanga's claim only includes post-
  petition rent and charges in the amount of $12,631.23, and interest in the amount
  of $255.68.[20]  It appears that Topanga inadvertently doubled the amount of the
  post-petition rent and charges to calculate the total amount of its claim at
  $25,518.14.   Accordingly, the unsupported $12,631.23 that was added to
  Topanga's claim as a math error should be disallowed.  In satisfaction of the
  remainder of this administrative expense, the Debtor paid Topanga by checks in
  the amounts of $3,636.86 on November 24, 2014, $2,737.41 on December 1,

---

[19]   UTC also failed to add its $3,102.84 claim for rent short pay to its total post-petition charge
       claim.  However, the Debtor satisfied this amount by check in the amount of $3,102.84 on
       November 21, 2014.

[20]   *See* Proof of Claim Number 167, Attachment at p. 3.

4850-3663-7219

2014, $2,737.41 on December 5, 2014, $2,737.41 on December 15, 2014, and $782.14 on December 29, 2014. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense claim for any interest. Accordingly, the administrative expense portion of Proof of Claim Number 167 should be disallowed in its entirety.

- *Westland Garden Plaza Limited Partnership* – Proof of Claim Number 168; $15,799.94 asserted 503(b) amount. Proof of Claim Number 168, filed by Westland Garden Plaza Limited Partnership ("Westland"), asserts an administrative expense claim in the amount of $15,799.94 for rent short pay, pro-rated rent and charges and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 27, 2014. In satisfaction of this administrative expense, the Debtor paid Westland by checks in the amounts of $3,991.43 on November 24, 2014, $3,004.27 on December 1, 2014, $3,004.27 on December 8, 2014, $3,004.27 on December 15, 2014, and $2,575.09 on December 26, 2014. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense claim for any interest. Accordingly, the administrative expense portion of Proof of Claim Number 168 should be disallowed in its entirety.

- *Montgomery Mall, LLC* – Proof of Claim Number 169; $14,090.58 asserted 503(b) amount. Proof of Claim Number 169, filed by Montgomery Mall, LLC ("Montgomery"), asserts an administrative expense claim in the amount of $14,090.58 for rent short pay, common area maintenance charges, pro-rated rent and charges and interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 22, 2014. In satisfaction of this administrative expense, the Debtor paid Montgomery by checks in the amounts of $2,191.22 on November 19, 2014, $2,817.29 on November 21, 2014, $2,120.52 on December 1, 2014, $2,120.52 on December 5, 2014, $2,120.52 on December 15, 2014, $302.99 on December 29, 2014, and $2,191.22 on January 9, 2015. Further, as demonstrated by the payment history, because the Debtor timely paid this administrative expense, the claimant is not entitled to an administrative expense portion of Proof of Claim Number 169 should be disallowed in its entirety.

- *Flatiron Property Holding, LLC* – Proof of Claim Number 171; $3,159.22 asserted 503(b) amount. Proof of Claim Number 171, filed by Flatiron Property Holding, LLC ("Flatiron"), asserts an administrative expense claim in the amount of $3,121.59 for rent and charges – short pay, and $37.63 in interest. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 23, 2014. Despite the Lease being rejected on December 23, 2014, Flatiron improperly asserted an administrative expense claim for the full amount of rent

16

for December 2014. The Debtor paid the full amount of December 2014 rent for the 23 days it occupied the Lease premises, and the $3,121.59 asserted by Flatiron as an administrative expense is the amount of rent for the remaining eight days in December after the Debtor had rejected the Lease. Further, because $3,121.59 is improperly claimed, any interest on that amount also is improperly claimed. Accordingly, the administrative expense portion of Proof of Claim Number 171 should be disallowed in its entirety.

- *Craig Realty Group-Anthem, LP* – Proofs of Claim Numbers 192 and 216; $2,409.12 asserted 503(b) amount for each claim. Proofs of Claim Numbers 192 and 216, filed by Craig Realty Group-Anthem, LP ("Craig"), both assert an identical administrative expense claim related to the same Lease in the amount of $1,680.00 for sign removal and façade repair and $729.12 for administrative rent. Pursuant to the Rejection Procedures, the Debtor rejected the Lease effective as of December 27, 2014. Despite the Lease being rejected on December 27, 2014, Craig improperly asserted an administrative expense claims for the full amount of rent for December 2014. The Debtor paid the full amount of December 2014 rent for the 27 days it occupied the Lease premises, and the $729.12 asserted by Craig as an administrative expense is the amount of rent for the remaining four days in December after the Debtor had rejected the Lease. Further, Craig's administrative expense claims for sign removal and façade repair are not allowable as an administrative expense claim, but rather should be included as part of Craig's general unsecured claim for damages resulting from the termination of the Lease.[21] Accordingly, the administrative expense portion of Proof of Claim Number 192 should be disallowed in its entirety, and Proof of Claim Number 216 should be disallowed in its entirety.

- *Town Square Ventures, LP* – Proof of Claim Number 194; $4,642.59 asserted 503(b) amount. Proof of Claim Number 194, filed by Town Square Ventures, LP ("TSV"), asserts an administrative expense claim in the amount of $305.09 for outstanding post-petition rent, $1,200.00 for sign removal and façade repair and $3,137.50 for post-petition attorneys' fees. Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 24, 2014. TSV's administrative expense claim for sign removal and façade repair is not an allowable administrative expense claim, but rather should be included as part of TSV's general unsecured claim for damages resulting from the termination of the Lease.[22] Similarly, TSV's claim for treatment of its attorneys' fees as administrative expenses is improper. The attorneys' fees incurred by TSV are

---

[21]   *See* Collier on Bankruptcy 502.03[7](a) (16th ed. 2015); *In re Energy Conversion Devices, Inc.*, 483 B.R. 119, 123-24 (Bankr. E.D. Mich 2012).

[22]   *See* Collier on Bankruptcy 502.03[7](a) (16th ed. 2015); *In re Bob's Sea Ray Boats, Inc.*, 143 B.R. 229, 231 (Bankr. N.D. 1992).

damages that resulted from the Debtor's termination of the Lease and are not actual and necessary expenses incurred by a creditor under section 503(b)(3) of the Bankruptcy Code.[23]  Finally, the Debtor paid TSV $305.09 on December 19, 2014, in full satisfaction of the outstanding post-petition rent.  Accordingly, Proof of Claim Number 194 should be disallowed in its entirety.

- *Tysons Corner Holdings, LLC* – Proof of Claim Number 218; $710.28 asserted 503(b) amount.  Proof of Claim Number 218, filed by Tysons Corner Holdings, LLC ("Tyson"), asserts an administrative expense claim in the amount of $710.28 for "Pro-rated Estimated 2014 Reconciliation (9/12/14 – 12/29/14)."  The Debtor objects to the allowance of this administrative expense claim because it is entirely based on estimated liability.  Accordingly, Proof of Claim Number 218 should be disallowed in its entirety.

- *Flatiron Property Holding, LLC* – Proof of Claim Number 219; $3,674.38 asserted 503(b) amount.  Proof of Claim Number 219, filed by Flatiron Property Holding, LLC ("Flatiron"), asserts an administrative expense claim in the amount of $3,121.59 for rent and charges – short pay, and $120.59 in interest, $196.06 for "Pro-rated 2014 Real Estate Tax Reconciliation (9/12/14 – 12/23/14)," and $236.14 for "Pro-rated 2014 Environmental Reconciliation (9/12/14 – 12/23/14)."  Pursuant to the Rejection Procedures, the Debtor rejected this Lease effective as of December 23, 2014.  As explained above in the context of Proof of Claim Number 171, filed by Flatiron, despite the Lease being rejected on December 23, 2014, Flatiron improperly asserted an administrative expense claim for the full amount of rent for December 2014.  The Debtor paid the full amount of December 2014 rent for the 23 days it occupied the Lease premises, and the $3,121.59 asserted by Flatiron as an administrative expense is the amount of rent for the remaining eight days in December after the Debtor had rejected the Lease.  Further, because $3,121.59 is improperly claimed, any interest on that amount also is improperly claimed.  The Debtor also objects to the allowance of the amounts asserted for "Pro-rated 2014 Real Estate Tax Reconciliation (9/12/14 – 12/23/14)," and "Pro-rated 2014 Environmental Reconciliation (9/12/14 – 12/23/14)," because those amounts are entirely based on estimated liability.  Accordingly, Proof of Claim Number 219 should be disallowed in its entirety.

- *Fashion Outlets of Chicago, LLC* – Proof of Claim Number 220; $3,770.88 asserted 503(b) amount.  Proof of Claim Number 220, filed by Fashion Outlets of Chicago, LLC ("Chicago"), asserts an administrative expense claim in the amount of $3,654.39 for "Pro-rated Estimated 2014 Tax Reconciliation (9/12/14 – 12/23/14)" and $116.49 for "Pro-rated Estimated 2014 Water Reconciliation (9/12/14 – 12/23/14)."  The Debtor objects to the allowance of this administrative

---

[23]  *See In re PPI Enterprises, Inc.*, 228 B.R. 339, 348-49 (Bankr. D. Del 1998).

expense claim because it is entirely based on estimated liability. Accordingly, Proof of Claim Number 220 should be disallowed in its entirety.

- *PSEGLI* – Proof of Claim Number 221; $417.08 asserted 503(b) amount. Proof of Claim Number 221, filed by PSEGLI, asserts an administrative expense claim in the amount of $417.08 for electric services. In satisfaction of this administrative expense, the Debtor paid PSEGLI by check in the amount of $417.08 on March 31, 2015. Accordingly, Proof of Claim Number 221 should be disallowed in its entirety.

- *Carroll Independent School District* – Proof of Claim Number 222; $4,062.33 asserted 503(b) amount. Proof of Claim Number 222, filed by Carroll Independent School District ("Carroll"), asserts an administrative expense claim in the amount of $1,238.60 for taxes owed for 2014 and $2,637.94 for taxes owed for 2015. The Debtor rejected the Lease for its store in Southlake, Texas effective as of December 24, 2014. Accordingly, Carroll's administrative expense claim in the amount of $2,637.94 for 2015 taxes should be disallowed. Historically, to pay amounts owed to Carroll, the Debtor writes checks to the Tarrant County assessor.[24] Tarrant County's tax year for 2014 runs on a fiscal year basis from July 1, 2014 through June 30, 2015. The Debtor leased space in Tarrant County for 176 days during that period, from July 1, 2014 through December 24, 2014. Accordingly, the Debtor recognized its obligation to pay Tarrant County taxes for the period when it occupied the store in Tarrant County. In satisfaction of its tax liability to Tarrant County, including its liability to Carroll, on January 27, 2015, the Debtor paid the Tarrant County assessor $2,073.42, which represents the total amount due to Tarrant County for the portion of the 2014 fiscal year that the Debtor leased its store in Tarrant County. Thus, Proof of Claim Number 222 should be disallowed in its entirety.

## RESERVATION OF RIGHTS

In making this Objection, the Debtor reserves all rights, claims and defenses that it may have relating to the Disputed Administrative Expense Claims, including the right to (1) modify, amend, or supplement this Objection as more evidence becomes available; or (2) seek a

---

[24] The amounts the Debtor pays to Carroll are one part of the taxes paid by the Debtor to Tarrant County, which also include Southlake city taxes, Tarrant County taxes, and Tarrant County hospital and college taxes.

reduction in the amounts of the Disputed Administrative Expense Claims asserted against the

Debtor as set forth on the attached **Exhibit A** through any subsequent objection or otherwise.

### <u>CONCLUSION</u>

For the reasons discussed herein, the Debtor respectfully requests that the Court sustain

this Objection and disallow or reduce the Disputed Administrative Expense Claims listed on

**<u>Exhibit A</u>**, as the case may be, as requested herein.

DATED this 11th day of May, 2015.

**DORSEY & WHITNEY LLP**

  */s/ Michael F. Thomson*
Annette W. Jarvis
Peggy Hunt
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor Naartjie Custom Kids,
Inc.*

## <u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>

I hereby certify that on the 11th day of May, 2015, I electronically filed the foregoing **DEBTOR'S OBJECTION TO CERTAIN ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO 11 U.S.C. §§ 503 AND 507** (the "<u>Objection</u>") with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case, as identified below, are registered CM/ECF uses and will be served through the CM/ECF system.

- Jeffrey M Armington     armington.jeff@dorsey.com, long.candy@dorsey.com;ventrello.ashley@dorsey.com
- Darwin H. Bingham     dbingham@scalleyreading.net, cat@scalleyreading.net
- Dustin P. Branch     dustin.branch@kattenlaw.com, donna.carolo@kattenlaw.com;lora.anderson@kattenlaw.com
- Mona Lyman Burton     mburton@hollandhart.com, ckelly@hollandhart.com;intaketeam@hollandhart.com;slclitdocket@hollandhart.com
- Kenneth L. Cannon     kcannon@djplaw.com, khughes@djplaw.com
- Andrew S. Conway     Aconway@taubman.com
- Joseph M.R. Covey     calendar@parrbrown.com
- Tim Dance     tdance@swlaw.com, docket_slc@swlaw.com;snielsen@swlaw.com
- Bonnie Glantz Fatell     fatell@blankrome.com
- J. Gregory Hardman     ghardman@snowjensen.com
- Tyler M. Hawkins     hawkinst@ballardspahr.com, saltlakedocketclerk@ballardspahr.com;lawsont@ballardspahr.com
- Annette W. Jarvis     jarvis.annette@dorsey.com, smith.ron@dorsey.com;slc.lit@dorsey.com;lalor.carol@dorsey.com;posada.monica@dorsey.com
- Michael R. Johnson     mjohnson@rqn.com, docket@rqn.com
- Teddy M. Kapur     tkapur@pszjlaw.com
- Peter J. Kuhn tr     Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Bria E LaSalle Mertens     blmertens@stoel.com, docketclerk@stoel.com
- Frank A. Merola     fmerola@stroock.com, cgabriel@stroock.com;morozco@stroock.com;mmagzamen@stroock.com;ssiegel@stroock.com;dmohamed@stroock.com
- John T. Morgan tr     john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- David L. Pollack     pollack@ballardspahr.com
- Jeffrey N. Pomerantz     jpomerantz@pszjlaw.com
- Robert S. Prince     rprince@kmclaw.com, squilter@kmclaw.com
- Brian M. Rothschild     brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- Bradford J. Sandler     bsandler@pszjlaw.com
- Engels Tejeda     ejtejeda@hollandhart.com, tjones@hollandhart.com,slclitdocket@hollandhart.com,intaketeam@hollandhart.com

4850-3663-7219

- Michael F. Thomson    thomson.michael@dorsey.com,
  montoya.michelle@dorsey.com;ventrello.ashley@dorsey.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Gale K. x6Francis    txbk13@utah.gov

I further certify that on May 11, 2015, the following parties were served with a copy of the Objection via U.S. Mail postage prepaid:

Tennessee Department of Revenue
c/o Attorney General
PO Box 20207
Nashville, TN 37202-0207

North Point Mall, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Fashion Place, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

North Star Mall, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Alderwood Mall LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Hocker Oxmoor, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Bridgewater Commons Mall II, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Stonebriar Mall, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Carolina Place LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

La Cantera Retail Limited Partnership
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Glendale I Mall Associates, LP
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Southpoint Mall, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Natick Mall, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Towson TC, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

4850-3663-7219

GGP Staten Island Mall, LLC
c/o GGP Limited Partnership
110 North Wacker Drive
Chicago, IL 60606

Fairfax Company of Virginia, LLC
c/o Andrew Conway
200 East Long Lake Road, Suite 300
Bloomfield Hills, Michigan 48304

TJ Palm Beach Associates Limited
Partnership
c/o Andrew Conway
200 East Long Lake Road, Suite 300
Bloomfield Hills, Michigan 48304

Mall of Georgia, LLC
c/o Simon Property Group, Inc.
225 W. Washington Street
Indianapolis, IN 46204

Danbury Mall, LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

TM Wellington Green Mall LP
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Century City Mall, LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Roseville Shoppingtown LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Sherman Oaks Fashion Associates, LP
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

University Towne Centre LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

VF Mall, LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Westfield Topanga Owner, LP
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Westland Garden State Plaza Limited
Partnership
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Montgomery Mall LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Flatiron Property Holding, LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

4850-3663-7219

Craig Realty Group-Anthem, LP
Attn: Leslie King
4100 MacArthur Boulevard, Suite 200
Newport Beach, CA 92660

Craig Realty Group-Anthem, LP
Attn: Tracy Swan
4100 MacArthur Boulevard, Suite 200
Newport Beach, CA 92660

Town Square Ventures, LP
c/o J. Gregory Hardman
Snow Jensen & Reece, P.C.
912 W 1600 S, Ste. B-200
St. George, UT 84770

PPR Washington Square LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Tysons Corner Holdings LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Fashion Outlets of Chicago LLC
c/o Dustin P. Branch, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

PSEGLI
c/o Suzanne Brienza, Esq.
15 Park Drive
Melville, NY 11747

Carroll Independent School District
c/o Perdue, Brandon, Fielder, Collins &
Mott, LLP
500 East Border St., Suite 640
Arlington, TX 76010

*/s/ Michael F. Thomson*

4850-3663-7219

# EXHIBIT A

**Naartjie -  Objection to Disputed Administrative Expense Claims**

| Claimant | Proof of Claim Number | Administrative Expense Proof of Claim Amount | Objection Page Number(s) | Proposed Allowed Amount of Administrative Expense Proof of Claim |
|---|---|---|---|---|
| Alderwood Mall, LLC | 107 | $ 100.00 | 8 | $ - |
| Carolina Place, LLC | 109 | $ 3,649.96 | 8, 9 | $ 1,209.67 |
| Carroll Independent School District | 222 | $ 4,062.33 | 19 | $ - |
| Century City Mall, LLC | 160 | $ 26,488.49 | 13 | $ - |
| Craig Realty Group-Anthem, LP | 192 | $ 2,409.12 | 17 | $ - |
| Craig Realty Group-Anthem, LP | 216 | $ 2,409.12 | 17 | $ - |
| Danbury Mall, LLC | 145 | $ 2,509.81 | 12 | $ - |
| Fairfax Company of Virginia, LLC | 135 | $ 19,293.54 | 11, 12 | $ - |
| Fashion Outlets of Chicago, LLC | 220 | $ 3,770.88 | 18, 19 | $ - |
| Fashion Place, LLC | 106 | $ 3,097.77 | 8 | $ - |
| Flatiron Property Holding, LLC | 171 | $ 3,159.22 | 16, 17 | $ - |
| Flatiron Property Holding, LLC | 219 | $ 3,674.38 | 18 | $ - |
| GGP Staten Island Mall, LLC | 119 | $ 6,375.75 | 11 | $ 355.16 |
| Glendale I Mall Associates, LLC | 110 | $ 4,895.79 | 9 | $ 1,124.41 |
| Hocker Oxmoor Mall, LLC | 114 | $ 4,485.80 | 10 | $ - |
| La Cantera Retail Limited Partnership | 116 | $ 3,653.71 | 10 | $ - |
| Montgomery Mall, LLC | 169 | $ 14,090.58 | 16 | $ - |
| Natick Mall, LLC | 111 | $ 3,216.03 | 9 | $ 506.71 |
| North Point Mall, LLC | 112 | $ 4,734.79 | 9 | $ 1,566.40 |
| North Star Mall, LLC | 113 | $ 5,954.14 | 9, 10 | $ 277.66 |
| PSEGLI | 221 | $ 417.08 | 19 | $ - |
| Roseville Shoppingtown, LLC | 161 | $ 19,681.65 | 13, 14 | $ - |
| Sherman Oaks Fashion Associates, LP | 164 | $ 16,382.59 | 14 | $ - |
| Southpoint Mall, LLC | 117 | $ 4,889.61 | 10, 11 | $ - |
| Stonebriar Mall, LLC | 115 | $ 6,000.27 | 10 | $ - |
| Tennessee Department of Revenue | 21 | $ 3,633.04 | 8 | $ - |
| TJ Palm Beach Associates Limited Partnership | 137 | $ 1,665.24 | 12 | $ - |
| TM Wellington Green Mall LP | 159 | $ 3,144.12 | 12, 13 | $ - |
| Town Square Ventures, LP | 194 | $ 4,642.59 | 17, 18 | $ - |
| Towson TC, LLC | 118 | $ 2,570.87 | 11 | $ - |
| Tysons Corner Holdings, LLC | 218 | $ 710.28 | 18 | $ - |
| University Towne Centre, LLC | 165 | $ 18,125.07 | 14, 15 | $ - |
| VF Mall, LLC | 166 | $ 18,529.75 | 15 | $ - |
| Westfield Topanga Owner, LP | 167 | $ 25,518.14 | 15, 16 | $ - |
| Westland Garden Plaza Limited Partnership | 168 | $ 15,799.94 | 16 | $ - |
| **Total** | | **$ 263,741.45** | | **$ 5,040.01** |

4826-7860-7127\1
4842-1686-8632\1

# EXHIBIT B

## LEASE REINSTATEMENT AND FIRST MODIFICATION OF LEASE AGREEMENT

THIS LEASE REINSTATEMENT AND FIRST MODIFICATION OF LEASE AGREEMENT (this "Modification") is made and entered into as of the 22nd day of November , 20 13 , by and between FAIRFAX COMPANY OF VIRGINIA L.L.C., a Virginia limited liability company ("Landlord") and NAARTJIE CUSTOM KIDS, INC., a Delaware corporation ("Tenant").

### STATEMENT OF BACKGROUND

A.      Landlord and Tenant are parties to that certain Lease Agreement dated as of May 5, 2009 (the "Lease"), for a retail business to be operated under the trade name "NAARTJIE KIDS", covering premises identified as Store Number "H230", in the regional retail development commonly known as FAIR OAKS, located in the County of Fairfax, State of Virginia, which premises are more particularly described in the Lease.

B.      Tenant sent a notice to Landlord on August 19, 2013 exercising its right to terminate the Lease pursuant to Section 1.02.

C.      Landlord and Tenant now desire to enter into this Modification for the purpose of reinstating the Lease, in accordance with the provisions of this Modification.

D.      The capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Lease (and any prior modifications to the Lease).

### STATEMENT OF AGREEMENT

For and in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by each of the parties hereto, the parties agree (for themselves and their successors and permitted assigns) as follows:

1.      **Reinstatement**.  The Lease (and any prior modifications to the Lease) is reinstated and binding on the parties in accordance with its terms and this Modification.  Landlord and Tenant hereby acknowledge and agree that the Tenant entity was inadvertently described as a Utah corporation in the Lease, but in actuality the Tenant entity is a Delaware corporation.

2.      **Data Sheet, Section 1.02:**  In paragraph 3, the reference to "thirty-seventh (37th) month through the forty-eighth (48th) month" shall be replaced with "forty-ninth (49th) month through the sixtieth (60th) month" and the reference to "forty-eighth (48th) month" shall be replaced with "sixtieth (60th) month".

In paragraph 4 the reference to "forty-eighth (48th) month" shall be replaced with "sixtieth (60th) month" and the reference to "thirty-seventh (37th) through the forty-eighth (48th) months" shall be replaced with "forty-ninth (49th) through the sixtieth (60th) months".

3.      **Data Sheet, Section 2.01 and 2.02(a):**  Beginning on the date of this Agreement, but in no event later than December 1, 2013, and continuing through December 31, 2014, Tenant's minimum rent and percentage rent shall be abated.

4.      **No Default**.  Landlord acknowledges that, as of the date of this Modification, Landlord has not sent a notice of default under the Lease which has not been cured.

5.      **Confidentiality**.  Tenant covenants that the contents of this Modification are strictly confidential between Landlord and Tenant and that Tenant will not disclose the contents hereof to any other person, firm or corporation, except for Tenant's auditors and any disclosure required by court order

month" and the reference to "forty-eighth (48th) month" through the sixtieth (60th) month" and the reference to "thirty-seventh (37th) through the forty-eighth (48th) months" shall be replaced with "forty-ninth (49th) through the sixtieth (60th) months".

3.   <u>Data Sheet, Section 2.01 and 2.02(a):</u>  Beginning on the date of this Agreement, but in no event later than December 1, 2013, and continuing through December 31, 2014, Tenant's minimum rent and percentage rent shall be abated.

4.   <u>No Default</u>.  Landlord acknowledges that, as of the date of this Modification, Landlord has not sent a notice of default under the Lease which has not been cured.

5.   <u>Confidentiality</u>.  Tenant covenants that the contents of this Modification are strictly confidential between Landlord and Tenant and that Tenant will not disclose the contents hereof to any other person, firm or corporation, except for Tenant's auditors and any disclosure required by court order.

6.   <u>Miscellaneous</u>.  Tenant and its successors, heirs, assigns and representatives hereby expressly release Landlord, the Taubman Company LLC and their respective past, present and future representatives, beneficial owners, agents, affiliates and related entities from any and all claims, actions, causes of action, demands, costs, losses, expenses and suits of every conceivable kind, character and nature whatsoever, which Tenant now has, has had, or may have, whether known or unknown, which have accrued through the date of this Modification relating to the Lease.  This Modification and any exhibits attached hereto and the Lease referenced above (and any prior modifications to the Lease), set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than those set forth in the Lease (and any prior modifications to the Lease) and as modified herein by this Modification.  Tenant has not relied upon any

1

representation of Landlord or its agents, other than any items contained in the Lease (and any prior modifications to the Lease) and modified by this Modification as an inducement to enter into this Modification.  Tenant specifically disclaims any reliance whatsoever upon public disclosures made by Landlord or Landlord's managing agent regarding any aspect of the regional retail development.  Except as expressly modified in this Modification, all of the terms, covenants and conditions of said Lease shall remain in full force and effect and are hereby ratified and confirmed.  The return to Landlord of Tenant-executed copies of this Modification shall not be binding upon Landlord, notwithstanding any preparation or anticipatory reliance or expenditures by Tenant or any time interval, until Landlord has in fact executed and actually delivered a fully-executed copy of this Modification to Tenant.  Each of the parties hereto severally agree that they have read this Modification, that they understand the contents thereof, and that each is signing this Modification as his or her own free act and deed, without any persuasion or coercion on the part of anyone, and with full advice of counsel.  Each party represents to the other that the person executing this Modification on its behalf is authorized to do so by all required corporate, partnership or limited liability company action, as appropriate.

[SIGNATURES LOCATED ON FOLLOWING PAGES]

IN WITNESS WHEREOF, the parties hereto have executed this Modification under seal as of the day and year first above written.

LANDLORD

Signed in the Presence of:

FAIRFAX COMPANY OF VIRGINIA L.L.C.,
a Virginia limited liability company

By: _____

Witness Name: _BRIAN WARL_

Its: Authorized Signatory

TENANT

Signed in the Presence of:

NAARTJIE CUSTOM KIDS, INC.,
a Delaware corporation

By: _____

Witness Name: _Jim McGuire_

Name: _Glenn Wood_
Its: _CEO_

ACKNOWLEDGMENT OF LANDLORD

STATE OF MICHIGAN          )
                           ) ss.
COUNTY OF OAKLAND          )

On this _18th_ day of _November_, 20_13_, before me personally appeared _Glenn Wood_ to me known to be the person who executed the foregoing Modification and acknowledged before me that he was duly authorized and did execute same on behalf of FAIRFAX COMPANY OF VIRGINIA L.L.C., a Virginia limited liability company.

KELLI TAPLEY
Notary Public
State of Utah
Comm. No. 649249
My Comm. Expires Nov 17, 2015

_Kelli Tapley_
Notary Public, _Salt Lake_ County, _____
My Commission expires: _11/17/2015_

ACKNOWLEDGMENT OF TENANT

STATE OF _____)
                                 ) ss.
COUNTY OF _____)

On this _____ day of _____, 20____, before me personally appeared _____, to me personally known, who, being by me duly sworn, did say