**This order is SIGNED.**



**Dated: July 13, 2015**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **In re:** | **Bankruptcy No. 14-29666** |
| **NAARTJIE CUSTOM KIDS, INC.,** | **Chapter 11** |
| Debtor. | **Chief Judge William T. Thurman** |

### MEMORANDUM DECISION

Naartjie Custom Kids, Inc. ("Naartjie" or the "Debtor"), joined by the Unsecured Creditor's Committee (the "Committee"), moves this Court to dismiss its Chapter 11 case (the "Motion to Dismiss"). Upon dismissal, however, the Debtor requests that the orders of this Court remain in full force and effect and that release and exculpation provisions be included in the order dismissing the case. Only the United States Trustee objected to the Motion to Dismiss, arguing that there is no statutory authority to grant the relief sought. The Court conducted a hearing on June 23, 2015, where it received evidence[1] and heard oral argument. Annette W. Jarvis, Michael F. Thomson, and Jeffrey M. Armington appeared on behalf of the Debtor. Michael R. Johnson, Bradford J. Sandler, and

---

[1] The only evidence offered was the testimony of Jeffrey Nerland, the Debtor's Chief Restructuring Officer.

Teddy M. Kapur appeared on behalf of the Committee, John T. Morgan appeared on behalf of the United States Trustee (the "Trustee"), and Engels Tejeda appeared on behalf of Target Ease International ("Target Ease"). Based on the evidence, the submissions of the parties, oral argument, and the Court's own independent research, the Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to these matters by Federal Rules of Bankruptcy Procedure 9014 and 7052.[2]

### I. JURISDICTION, NOTICE, AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor sent notice to all parties listed on the creditor matrix,[3] and the Court finds that notice was proper in all respects.

### II. BACKGROUND

Naartjie filed for Chapter 11 relief on September 12, 2014 (the "Date of Petition").[4] The Trustee appointed the Committee on September 22, 2014.[5] On its statement of financial affairs, the

---

[2] Any of the findings of fact herein are also deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law herein are also deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

[3] Case No. 14-29666, Docket 519. Hereinafter, any reference to the docket is to that in Case No. 14-29666.

[4] Docket 1.

[5] Docket 69.

Debtor lists $18,277,965.01 in liabilities and $10,199,003.64 in assets.[6] Prior to and on the Date of Petition, Naartjie intended to obtain approximately $8,500,000 in debtor in possession ("DIP") financing in an attempt to reorganize its business, but the expected financing did not come to fruition.[7] Naartjie quickly shifted from the prospect of reorganization to an orderly liquidation mode and obtained $1,000,000 in DIP financing from Salus Capital Partners, LLC ("Salus").[8] After appropriate notice and hearings, the Court subsequently approved three sales, which comprise substantially all of the Debtor's assets: (1) a "going out of business" sale;[9] (2) a sale of its intellectual property rights and shareholder rights in its South African subsidiary ZA One;[10] and (3) a sale of the Debtor's remaining IT equipment and furniture.[11]

The deadlines to file a proof of claim were January 14, 2015 for nongovernmental creditors and March 11, 2015 for governmental units.[12] As of May 4, 2015, two hundred and twenty-seven claims have been filed, many of which asserted administrative claims. Upon motion of the Debtor, the Court ordered that all parties seeking allowance of administrative claims, other than retained professionals, file a motion seeking such no later than April 20, 2015 (the "Bar Date").[13] On April

---

[6] Docket 89.

[7] *See* Docket 48.

[8] *See* Docket 66.

[9] Docket 132.

[10] Docket 290.

[11] Dockets 462 and 498.

[12] Docket 68.

[13] Docket 448.

23, 2015, the Debtor filed a Notice of Administrative Expense Allowance Motion and Proofs of Claim and Notice of Hearing, objecting to the administrative claims of all parties that had not met the Bar Date,[14] and the Court sustained the objections.[15]

Three of the more active creditors in this case are Target Ease, Mid-America, Overseas, Inc. ("MAO"), and the Secured Noteholders.[16] The Secured Noteholders claimed a second position lien against virtually all of the Debtor's assets in the amount of $8,884,959.91.[17] Target Ease filed a proof of claim in the amount of $7,081,991.61, which included an administrative claim of $2,157,968.50.[18] Target Ease also asserted a reclamation claim of $2,655,315.20, part of which was included in its administrative claim.[19] MAO filed a proof of claim in the amount of $339,923.47, asserting that its claim was secured by a maritime lien.[20] Early in the case and upon the sale of substantially all of the Debtor's assets, the Debtor and the Committee entered into settlement negotiations with Target Ease, MAO, and the Secured Noteholders.

---

[14] Docket 489.

[15] Docket 535.

[16] Collectively, the Secured Noteholders are Nogales Investors Fund II, L.P., Zions SBIC, L.L.C., The Brent L Bishop Trust under agreement dated February 8, 1995, Bishop Special Asset Management, LLC, and The B. Attitudes Foundation.

[17] *See* Docket 89, Schedule D. Salus, as the DIP financer, held the first position lien on virtually all of the Debtor's assets. Pursuant to the DIP Term Sheet, Docket 48, Exhibit A at 5, if there was a sale of substantially all of the Debtor's assets, Salus was to be paid in full. There was such a sale, and the Debtor paid Salus in full, which included pre-petition debt of approximately $3,490,000. *See infra* note 46. Accordingly, Salus was not a party to the Settlement Agreement as defined herein.

[18] Proof of Claim No. 47.

[19] *See* Proof of Claim No. 47 and Docket 104.

[20] Proof of Claim No. 44.

The parties reached an agreement (the "Settlement Agreement") whereby the Debtor will, subject to either a confirmed Chapter 11 plan or a structured dismissal,[21] distribute the estate assets as follows: (1) all allowed administrative claims, which are subject to the Settlement Budget,[22] and priority claims, not to exceed $382,000, will be paid in full; (2) MAO will receive $140,000 in full satisfaction of its claim; and (3) all remaining amounts will be distributed by the following percentages in full satisfaction of the Secured Noteholders and Target Ease's claims: (a) 45% to the Secured Noteholders; (b) 30.5% to Target Ease; and (c) 24.5% to allowed unsecured creditors.[23] The Settlement Agreement also provided that customary release and exculpation provisions will be included in the order resolving the case.[24] On February 25, 2015, the Court conducted a hearing on the Debtor's Motion to Approve the Settlement Agreement. Finding that notice was proper, there were no objections, and the Settlement Agreement satisfied the *Kopexa* factors,[25] the Court approved the Settlement Agreement.[26]

---

[21] Docket 424, Exhibit A at 1; Audio Transcript of Court Hearing February 25, 2015, 10:45:04 a.m.

[22] *See* Docket 424, Exhibit 1 of Exhibit A (showing an estimated incurred net balance of $1,292,700 and projected balance of $600,000 for professionals of the Debtor and the Committee, with a funded escrow amount of $1,524,000 as of December 13, 2014).

[23] Docket 424, Exhibit A.

[24] *Id.* at 3.

[25] *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997) (describing the factors necessary to approve a compromise and settlement under Rule 9019).

[26] Audio Transcript of Court Hearing February 25, 2015, at 10:51:02 a.m. (weighing the probability of success of the underlying litigation on the merits, the difficulty in collection, the complexity and expense of the litigation, and the best interest of creditors); *see also* Docket 424.

On May 1, 2015, the Court authorized the Debtor to enter into rejection agreements with certain real property lessors, i.e. SVN Nobbs East Saharah, LLC, LM Wasatch, LLC and BSFMT Wasatch, LLC.[27] Pursuant to the rejection agreements, Naartjie rejected the lease on its corporate headquarters in Salt Lake City, Utah, but was allowed to remain in a small portion of the property rent-free through June 1, 2015, or through June 30, 2015 if necessary, for its four remaining employees to address and supervise the claims reconciliation process.[28] As of June 30, 2015, objections to proofs of claim remain,[29] but the Debtor proposes that its Chapter 11 case not be dismissed until the completion of the claims reconciliation process.[30]

At this point in time, the Debtor is winding down and, pursuant to the Settlement Agreement and the sale of substantially all of its assets, the Debtor moves this Court to dismiss its case, but requests that certain provisions be included in the order of dismissal. These provisions include: (1) all of the Court's orders will remain in full force and effect upon dismissal; (2) the Court shall retain jurisdiction to review and approve professional fees of the Debtor and the Committee; (3) the Court shall retain jurisdiction over any dispute that arises from the interpretation or implementation of the proposed dismissal order; (4) exculpation clauses and general releases shall be included in the dismissal order as contemplated in the Settlement Agreement; and (5) the Debtor and the Committee shall be authorized to make distributions pursuant to the Settlement Agreement. The Debtor's

---

[27] Dockets 502.

[28] *See Id.* and Docket 474.

[29] *See, e.g.*, Dockets 546 and 560 (pending objection to claim number 81 filed by James A. McGuire and creditor's response).

[30] Docket 513, Exhibit B, ¶¶ 1 and 2.

requested relief is commonly referred to as a "structured dismissal."

The Debtor argues that the Court can grant a structured dismissal in this case for two reasons. First, citing to several cases throughout the country that have granted a structured dismissal, the Debtor argues that a structured dismissal is within this Court's authority pursuant to §§ 105(a), 305(a), and 349(b) and Rule 1017(a).[31] Second, the Debtor contends that a structured dismissal is appropriate in this case because there are no causes of action for the Debtor or Committee to prosecute, there are no pending adversary proceedings, the claims reconciliation process will be completed before the case is dismissed, the Debtor gave notice of the Motion to Dismiss to all parties in interest, and no party with an economic stake has objected. Further, the Debtor is joined in its Motion to Dismiss by the Committee, and Target Ease advocated for the relief requested. The Debtor asserts that its proposal is straightforward and is the most efficient and economical way to administer the estate assets. Accordingly, the Debtor contends that it is in the best interests of all parties for the Court to grant a structured dismissal.

The Trustee urges this Court to deny the Motion to Dismiss, arguing that the Bankruptcy Code does not authorize the Court to grant a "structured dismissal" and that the Debtor has a viable option of proposing and confirming a plan of reorganization. In advancing his argument, the Trustee

---

[31] The Trustee argues that a Chapter 11 case may only be dismissed pursuant to § 1112(b). In reply, the Debtor claims that the Court can also grant the Motion to Dismiss pursuant to § 1112(b) as there is no reasonable likelihood of rehabilitation and the estate is suffering a diminution of assets. Although it appears that § 1112(b) may have been an easier standard to meet than the standard required under § 305(a), because the Debtor elected not to move under that provision, the Court will not address it. *See* Local Rule 9013-1(e)(2) ("A reply memorandum is limited to rebuttal of matters raised in the response."); *see also E.E.O.C. v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) ("When a party puts forth new arguments in a reply brief, a court may avoid error by either: (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply.").

first explains that there are only three ways to exit a Chapter 11 case: (1) by confirmation of a plan pursuant to § 1129; (2) by dismissal of the case pursuant to § 1112(b); or (3) by conversion of the case pursuant to § 1112(b). Thus, as the Trustee argues, the Court would have to rely on its inherent authority under § 105(a) to approve the proposed relief, which, citing to *Law v. Siegel*,[32] the Trustee contends would amount to a "statutory work-around." The Trustee does not address the Debtor's argument under § 305(a), but claims that the proposed dismissal is contrary to Federal Rule of Bankruptcy Procedure 3021 and that the sale of substantially all of the Debtor's assets should not permit the Debtor to evade the requirements of Chapter 11. Lastly, despite the Debtor's contention that confirming a plan would cost the estate over $300,000, the Trustee asserts that confirmation would be straightforward and less costly based on the Settlement Agreement.

### III. DISCUSSION

There are two issues that the Court must address. First, whether this Court has the statutory authority to grant a structured dismissal, and, if so, whether the Debtor has met its burden in establishing cause for the Court to grant the requested relief.[33] In addressing these issues, the Court addresses for the first time the application of what appears to be a growing trend of structured dismissals.

---

[32] --- U.S. ----, 134 S. Ct. 1188, 1194–95 (2014) ("We have long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

[33] The Trustee and the Debtor both address conversion of the Chapter 11 case to one under Chapter 7, but neither party advocates that position. Further, § 305(a) provides for dismissal or abstention, not conversion. Accordingly, based on the Motion to Dismiss, the Court should either grant a structured dismissal, if possible, or the Debtor should continue with the confirmation process.

A.     *Structured Dismissal*

The Tenth Circuit Court of Appeals has not addressed the issue of whether a bankruptcy court can authorize a structured dismissal. Several courts throughout the nation have addressed the issue, the majority of which appear to agree that the bankruptcy court can grant a structured dismissal in appropriate circumstances.[34] In arguing that the Bankruptcy Code does not statutorily authorize a bankruptcy court to grant a structured dismissal, the Trustee relies, in part, on a report and recommendation of the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11[35] and the legislative history of § 349. Before addressing these arguments, however, the Court must begin its analysis with the plain language of the statute,[36] "with the understanding that Congress 'says in a statute what it means and means in a statute what it says."[37] If the statute's

---

[34] *See Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015) (affirming order granting structured dismissal); *In re Biolitec, Inc.*, 528 B.R. 261 (Bankr. D.N.J. 2014) (denying structured dismissal because the proposed dismissal sought to "alter parties' rights without their consent and lack[ed] many of the Code's most important safeguards"); *In re Buffet Partners, L.P.*, No. 14-30699-HDH-11, 2014 WL 3735804 (Bankr. N.D. Tex. 2014) (granting a structured dismissal pursuant to §§ 1112(b) and 105(a)).

[35] Am. Bankr. Inst., Comm'n to Study Reform of Chapter 11, 2012–2014 Final Report and Recommendations 269–73 (2014).

[36] *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989) ("[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (citation omitted).

[37] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citation and internal quotation marks omitted); *see also Wadsworth v. Word of Life Christian Ctr. (In re McGough)*, 737 F.3d 1268, 1276 (10th Cir. 2013) ("The words chosen by Congress are a restraint upon the courts . . . . If a party is unhappy with a statute's plain meaning, it may always seek an amendment from Congress.") (citations and internal quotation marks omitted).

language is clear and unambiguous, the Court's inquiry normally ends.[38]

The Trustee argues that dismissal of a Chapter 11 case is only permitted under § 1112(b). The Debtor does not dispute that § 1112(b) authorizes dismissal if cause is shown. However, the Debtor is not moving under § 1112(b), but rather § 305(a). Section 305(a) provides in relevant part that "[t]he court, after notice and a hearing, may dismiss a case under this title . . . at any time if — (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." The language of § 305(a) is plain: if dismissal of a case, no matter the chapter, would better serve the interests of creditors and the debtor, then the case may be dismissed at any time, whether a plan, if required, has been confirmed or not. There is no ambiguity in the statutory language. Accordingly, the Trustee's argument that a Chapter 11 case can only be dismissed pursuant to § 1112(b) does not withstand closer examination.

A case under Chapter 11 may be dismissed pursuant to §§ 305(a)(1) or 1112(b) if cause is shown, but does the Court have the statutory authority to grant a *structured* dismissal? In other words, may the Court alter the effect of dismissal? In answering this question, the Court looks to the plain language of § 349(b), which provides:

> Unless the court, for cause, orders otherwise, a dismissal of a case . . .
> (1) reinstates—
>     (A) any proceeding or custodianship superseded under section 543 of this title;
>     (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522 (i)(2), or 551 of this title; and
>     (C) any lien voided under section 506(d) of this title;
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

---

[38] *See State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1077 (10th Cir. 1996).

>(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

This subsection describes the effect of dismissal, but it qualifies the effect by providing that the Court may, for cause, order otherwise. It follows that, if cause is shown, a bankruptcy court may alter the effect of dismissal.[39] The statute's language is clear and unambiguous on this point.

Generally, the Court's inquiry ends if the language of the statute is clear, but the Trustee raises the concern that the plain language of § 349 is in direct conflict with the legislative intent. In *Ron Pair*, the Supreme Court explained that the plain language controls unless "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."[40] Citing to the legislative history, the Trustee argues that Congress intended the effect of dismissal to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case."[41] The selection relied upon, however, is taken out of context. Prior to the language quoted, the House Report enumerates the results of dismissal and explains that "[t]he court is permitted to order a different result for cause."[42] The House Report also states: "Where there is a question over the scope of [§ 349(b)], the court will

---

[39] *See In re Jevic Holding Corp.*, 787 F.3d at 181 ("And though § 349 of the Code contemplates that dismissal will typically reinstate the pre-petition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, it also explicitly authorizes the bankruptcy court to alter the effect of dismissal 'for cause'—in other words, the Code does not strictly require dismissal of a Chapter 11 case to be a hard reset.").

[40] *Ron Pair*, 489 U.S. at 242.

[41] H.R. Rep. No. 95–595, at 338 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6294.

[42] *Id.*

11

make the appropriate orders to protect rights acquired in reliance on the bankruptcy case."[43] Taking the legislative history as a whole, it is clear that the plain language of the statute is not contrary to, but rather consonant with, the intent of the drafters. The effect of dismissal is to put the parties, as much as practicable, back in the positions they occupied pre-bankruptcy. But, if cause is shown, such as when a structured dismissal will better serve the interests of the creditors and the debtor, the bankruptcy court may order otherwise and alter the effect of dismissal.[44] This interpretation is "coherent and consistent" with the statutory scheme.[45]

The Trustee also argues that Federal Rule of Bankruptcy Procedure 3021 does not allow a distribution to creditors until a Chapter 11 plan is confirmed.[46] Rule 3021 provides in part that "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed." This rule "assumes that distribution will occur only after a plan is confirmed."[47] Although Rule 3021

---

[43] *Id.*

[44] *See supra* note 34 and accompanying text. The Trustee also raises the concern that any reliance on § 105(a) would be an abuse of this Court's authority. The Court disagrees. Based on the Court's analysis, if cause is shown under §§ 305(a) or 1112(b), the Court may grant a structured dismissal pursuant to § 349. Unlike the bankruptcy court in *Law v. Siegel*, the Court is not providing relief contrary to an express provision in the Bankruptcy Code, but rather acting within the confines of it.

[45] *See Ron Pair*, 489 U.S. at 240.

[46] As stated in note 17, the DIP Term Sheet provided that Salus would be paid in full if substantially all of the Debtor's assets were sold. This included a pre-petition debt, which was paid prior to confirmation of a plan. *See supra* note 17. Notably, the Trustee endorsed the Debtor's proposed interim order authorizing the Debtor to enter into the DIP Term Sheet on September 19, 2014, but raised no concern about the application of Rule 3021.

[47] *State of Ohio Dept. of Taxation v. Swallen's, Inc. (In re Swallen's, Inc.)*, 269 B.R. 634, 637 (B.A.P. 6th Cir. 2001) (finding that the bankruptcy court erred in ordering distribution of estate assets over the objections of two creditors where no disclosure statement or plan had been filed). The Sixth Circuit BAP in *In re Swallen's, Inc.* discusses that a bankruptcy court cannot

requires plan confirmation before any distribution to creditors, courts recognize that a bankruptcy court may order otherwise in extraordinary circumstances.[48] The Court likens those extraordinary circumstances to those that are required in obtaining dismissal under § 305(a)(1).[49] As discussed below, § 305(a)(1) is an extraordinary remedy, and, if the Debtor can satisfy § 305(a)(1), the Court determines that such a showing in this case will suffice to allow a distribution outside of a confirmed plan.[50]

    B.       *Dismissal Under § 305(a)(1) and Cause Under § 349(b)*

Section 305(a)(1) is a narrower provision for dismissing a Chapter 11 case than § 1112(b).[51] Granting relief under § 305(a) is an "extraordinary remedy,"[52] and "should be invoked sparingly."[53]

---

bypass the requirements of Chapter 11 when parties object, but emphasizes that its ruling does not address when interested parties agree to such an order, *id*. at 638 n. 1, as is the case here.

[48] *See Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988) ("When a sale of all or substantial assets of the estate is proposed in a Chapter 11 case under the aegis of § 363(b)(1), there is the potential for circumventing the requirements attendant to the confirmation of a Chapter 11 plan."); *see also In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781, 784 (Bankr. W.D. Penn. 1988) ("It is within the discretion of the Bankruptcy Court to determine whether extraordinary circumstances exist so that sale proceeds may be paid to creditors outside the confines of a plan.").

[49] *Cf. In re Conroe Forge & Mfg. Corp.*, 82 B.R. at 786 (noting that under the Bankruptcy Act, a sale outside of a plan was allowed only in exigent circumstances, and thus determining that distribution outside of a confirmed plan would "require, at a minimum, a showing of similar immediate need").

[50] The Court questions whether Rule 3021 would be applicable when a bankruptcy court grants a structured dismissal. Here, the distribution will occur pursuant to the Settlement Agreement once the case is dismissed. If a case is dismissed, the Federal Rules of Bankruptcy Procedure do not apply unless otherwise specified in the order dismissing the case. No such provision is included in the Debtor's proposed order.

[51] *Cf. Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995) (comparing § 305(a)(1) to § 707(a)).

[52] *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008).

[53] *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1023 (Bankr. D. Utah 1982).

The design of § 305 itself calls for such a cautionary application because § 305(c) limits appellate review of any order granting relief under § 305(a).[54]

To obtain relief under § 305(a)(1), the Court must find that dismissal would "better serve" both "creditors and the debtor."[55] Determining whether to grant such relief is "more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief."[56] It is the moving party's burden to establish that such relief will better serve the interests of both.[57] "[A] bankruptcy court is not bound by a prescriptive template; it may consider any factors it deems relevant to the determination of whether it is in the best interests of the parties to the suit to seek dismissal. Reasoned judgment based on articulated facts is the only test which the statute itself requires."[58] That stated, courts generally consider seven factors in determining whether to dismiss under § 305(a)(1): (1) the economy and

---

[54] Section 305(c) provides: "An order under subsection (a) of this section dismissing a case . . . is not reviewable by appeal or otherwise by the court of appeals . . . or by the Supreme Court of the United States." *See In re Efron*, 529 B.R. 396, 404 (B.A.P. 1st Cir. 2015) ("[Section] § 305(c) imposes certain limitations on the appellate review available for abstention orders under § 305(a), [but] a bankruptcy court's order dismissing a case under § 305(a)(1) is subject to review by a bankruptcy appellate panel [or a district court]."); *see also In re Colonial Ford, Inc.*, 24 B.R. at 1018–19 ("[T]he Code encourages workouts outside, or concluded inside, Chapter 11. . . . [The limited appealability of § 305(a)(1)] insulates the workout from time-consuming and expensive litigation and thus underscores the role of Section 305(a)(1) in furthering out-of-court solutions to the rehabilitation of debtors.").

[55] § 305(a)(1); *see also In re Monitor Single Lift I, Ltd.*, 381 B.R. at 462.

[56] *In re Monitor Single Lift I, Ltd.*, 381 B.R. at 462 (addressing a motion to abstain under § 305(a)(1)).

[57] *See id.* at 462–63.

[58] *In re First Assured Warranty Corp.*, 383 B.R. 502, 530 (Bankr. D. Colo. 2008) (citation omitted).

efficiency of administration; (2) whether another forum is available to protect the interests of the parties; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditors can do an out-of-court work out; (6) whether a non-federal insolvency proceeding is far advanced; and (7) the purpose for which the bankruptcy jurisdiction has been sought.[59] Not all factors are given the same weight, and the inquiry is made on a case-by-case basis.[60]

Here, the sixth and seventh factors do not weigh heavily into the Court's decision: There were no previous non-federal insolvency proceedings, and the Debtor filed, in good faith, for bankruptcy relief to reorganize, which quickly shifted to an orderly liquidation. The first through fifth factors appear more significant for the Court to consider. As to the first factor, there is no dispute that the economy and efficiency of administration would be better served through a structured dismissal. The Debtor has sold substantially all of its assets, and the Court approved the Settlement Agreement, which lays out the structure of distribution. Further, the case will not be dismissed until the Debtor submits a certification that: (1) the claims reconciliation process is completed; (2) all proceeds from the sales have been transferred to the Debtor's estate; (3) the Debtor has given at least fourteen days' notice to all creditors of its estimated distribution funds and that any

---

[59] *See In re Zapas*, 530 B.R. 560, 572 (Bankr. E.D.N.Y. 2015) (considering seven factors in determining a motion to abstain) (citations omitted); *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009) (noting that all seven factors are considered in determining a motion to abstain); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 525 (Bankr. S.D.N.Y. 1996) (determining that four of the seven factors were relevant in deciding a motion to dismiss under § 305(a)(1)); *In re Picacho Hills Util. Co.*, No. 11-13-10742 TL, 2013 WL 1788298, at *9 (Bankr. D.N.M. Apr. 26, 2013) (applying seven factors in determining motion to abstain).

[60] *In re Monitor Single Lift I, Ltd.*, 381 B.R. at 464.

objections to the proposed distribution have been resolved; (4) the Trustee's fees are paid in full; and (5) the Court has entered orders with respect to final fee applications. There is a finite amount of assets, and to deny the request and have the Debtor move forward with confirmation would diminish the return to the general unsecured creditors, though likely not by $300,000.[61] It is clear and undisputed that the proposed structured dismissal is the most efficient and economic way to administer the case.

To the second factor, other forums are available to the Debtor and the creditors. The parties' rights will be protected and preserved with a structured dismissal as this Court's orders will remain in full force and effect. The parties can enforce those orders in this Court or another, just as they would if a Chapter 11 plan was confirmed. To the third factor, federal proceedings are not necessary to reach a just and equitable solution. The parties have already reached such a resolution through the Settlement Agreement, which this Court found to be in the best interests of creditors and the estate. There were no objections to the Settlement Agreement, and, based on the record, the Settlement Agreement will allow for a distribution to general unsecured creditors where there otherwise may not have been one. To the fourth and fifth factors, the Settlement Agreement is the out-of-court work out and the alternative means for an equitable distribution of estate assets. By dismissing the case, the creditors will be better served because they will receive a larger return faster, and the Debtor will be better served because it will be able to wind down its affairs more quickly. Even the Trustee agreed at oral argument that dismissing this case made sense.

---

[61] The Court received testimony from Mr. Nerland regarding the cost to confirm a Chapter 11 Plan. The Court finds Mr. Nerland's testimony to be credible, but questions whether the $300,000 figure that the firms estimated to Mr. Nerland would be found by this Court to be actual, reasonable, and necessary pursuant to § 330(a).

In weighing the above factors, the Court finds that the Debtor has met its burden under § 305(a), but only if the Court dismisses the case as provided in the requested relief, i.e. through a structured dismissal as allowed by § 349(b). Accordingly, the Court weighs three additional factors in determining whether cause exists to alter the effects of dismissal.[62] First, the Court considers the notice provided to parties in interest and, second, the objections filed. All parties in interest have received notice of the Motion to Dismiss. The Trustee objected, but no economic stakeholder has objected. Target Ease even appeared before the Court and expressed its support. The Committee, which has been active in the case, joins in the motion. On top of this, the order dismissing the case will require the Debtor to provide a minimum of fourteen days' notice for parties in interest to object to the estimated distribution of funds. Also, the Motion to Dismiss was not the first time that parties in interest had notice of the proposed distribution structure. The Debtor gave notice to all parties in interest when it sought the Court's approval of the Settlement Agreement, and no party objected. Notice being proper in all respects, support from a major creditor, and no economic stakeholder objecting all weigh in favor of finding cause to alter the effect of dismissal.

Lastly, the Court considers whether the Debtor is attempting to work around the protections of the Bankruptcy Code. The Court determines that the Debtor is not. Pursuant to the certification that the Debtor must file before the case is dismissed, there will be little left for the Debtor to do other than distribute the assets upon dismissal. There are no adversary proceedings pending, no causes of action that require prosecution, and the Motion to Dismiss is supported by the Committee and Target Ease. The Court's orders will remain in full force and effect, which will serve to protect

---

[62] *See, e.g.*, *In re Biolitec, Inc.*, 528 B.R. at 269–70 (denying a structured dismissal when creditor protections provided by the Bankruptcy Code were not present and all interested parties had not consented).

and preserve the rights of the parties, and the proposed structured dismissal is not a *sub rosa* plan. The Motion to Dismiss is not an attempt to work around the protections of § 1129; it is simply that rare case where cause is shown to alter the effect of dismissal. Had there been even a lone voice of a creditor arguing against this, the Court may have arrived at a different conclusion.

Accordingly, the Court determines that there is cause to alter the effect of dismissal and that both the creditors and the Debtor are better served if the case is dismissed.

## IV. CONCLUSION

The Court appreciates the attention that the Trustee has given this and the other cases in this District. The Trustee's arguments against the structured dismissal appear to be better suited to those cases where there are a myriad of loose ends, lack of unanimity of support from creditors, and a failure to address the needs of creditors. In this particular case, the Court is persuaded that the moving parties have carried their burden of persuasion.

As stated herein, the Court will overrule the Trustee's objection and grant the relief sought by the Debtor. The Debtor is to prepare the appropriate order for the Court's consideration, which should refer to this Memorandum Decision.